## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) | No. 11-cv-10230 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, | ) ) ) | No. 11-cv-12049 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, | ) ) ) ) | |
| Defendants. | ) ) | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, | ) ) ) ) | No. 12-cv-11698 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PROPOSED FORM AND MANNER OF CLASS NOTICE

## TABLE OF CONTENTS

Table of Authorities ......................................................................................................... iii

Preliminary Statement......................................................................................................... 1

Procedural Background........................................................................................................ 2

Summary of Terms of Class Settlement
and Proposed Settlement Schedule ...................................................................................... 5

   A.   Settlement Consideration ...................................................................................... 5

   B.   Plan of Allocation of the
       Net Class Settlement Fund ..................................................................................... 6

   C.   Proposed Preliminary Approval
       Order and Settlement Schedule .............................................................................. 7

ARGUMENT ....................................................................................................................... 9

   I.   STANDARDS FOR GRANTING
      PRELIMINARY SETTLEMENT APPROVAL ......................................................... 9

   II.   THE COURT SHOULD GRANT
       PRELIMINARY APPROVAL TO THE
       PROPOSED CLASS SETTLEMENT.................................................................... 10

       A.   A Strong Presumption of Fairness
           Applies to the Class Settlement ....................................................................... 10

       B.   The Proposed Settlement Recovery Falls
           Well-Within a Range of Reasonableness........................................................... 11

   III.   THE COURT SHOULD PRELIMINARILY
        CERTIFY THE PROPOSED SETTLEMENT CLASS ............................................ 12

       A.   Standards for Class Certification ..................................................................... 12

       B.   The Requirements of Rule 23(a) Are Met ......................................................... 13

           1.   The Settlement Class Is
               Sufficiently Numerous............................................................................. 13

           2.   The Settlement Class Has Many
               Common Questions of Law and Fact ....................................................... 13

3.     Plaintiffs' Claims Are Typical of Those
of Other Settlement Class Members ........................................................ 14

4.     Plaintiffs Will Continue to Fairly and Adequately
Protect the Interests of the Settlement Class ............................................. 15

C.    The Requirements of Rule 23(b)(3) Are Met ...................................................... 16

1.     Common Questions of Law and Fact
Predominate Over Any Individual Issues ................................................. 16

2.     A Class Action Is Superior to Other
Available Methods for the Fair and
Efficient Adjudication of This Controversy ............................................. 17

IV.   THE COURT SHOULD APPROVE THE FORM AND
MATTER OF NOTICE TO THE SETTLEMENT CLASS ...................................... 18

Conclusion ............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................13, 16

*Amgen Inc. v. Connecticut*
    *Retirement Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................................................16

*Aspinall v. Philip-Morris Companies*,
    442 Mass. 381 (2004) .................................................................................................17

*Board of Trustees of AFTRA Retirement*
    *Fund v. JPMorgan Chase Bank, N.A.*,
    269 F.R.D. 340 (S.D.N.Y. 2010) ...............................................................................17

*In re Cabletron Systems, Inc.*
    *Securities Litigation*,
    239 F.R.D. 30 (D.N.H. 2006) .....................................................................................20

*City Partnership Co. v. Atlantic*
    *Acquisition Ltd. Partnership*,
    100 F.3d 1041 (1st Cir. 1996) ....................................................................................10

*In re Credit Suisse-AOL Securities Litigation*,
    253 F.R.D. 17 (D. Mass. 2008) ..................................................................................15

*Disability Law Center v. Massachusetts*
    *Department of Corrections*,
    960 F. Supp. 2d 271 (D. Mass. 2012) ...................................................................10, 11

*Hochstadt v. Boston Scientfic Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ...............................................................10, 14, 15

*In re Ikon Office Solutions, Inc.*
    *Securities Litigation*,
    194 F.R.D. 166 (E.D. Pa. 2000) .................................................................................19

*In re Lupron Marketing &*
    *Sales Practices Litigation*,
    228 F.R.D. 75 (D. Mass. 2005) ..................................................................................13

*M. Berenson Co. v. Faneuil Hall
    Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) .........................................................................9

*In re M3 Power Razor System
    Marketing & Sales Practices Litigation*,
    270 F.R.D. 45 (D. Mass. 2010) ..................................................... *passim*

*National Association of Chain Drug Stores v.
    New England Carpenters Health Benefits Fund*,
    582 F.3d 30 (1st Cir. 2009) .........................................................................10

*New England Carpenters Health Benefits
    Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) ...............................................9, 10

*In re Pharmaceutical Industrial
    Average Wholesale Price Litigation*,
    588 F.3d 24 (1st Cir. 2009) .........................................................................10

*In re Prudential Securities Inc.
    Limited Partnerships Litigation*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................................20

*In re Relafen Antitrust Litigation*,
    231 F.R.D. 52, 69 (D. Mass. 2005) .........................................................................14

*In re Relafen Antitrust Litigation*,
    218 F.R.D. 337 (D. Mass. 2003) .........................................................................13, 16

*Smilow v. Southwestern Bell
    Mobile Systems, Inc.*,
    323 F.3d 32 (1st Cir. 2003) .........................................................................13

*In re Vivendi Universal, S.A.
    Securities Litigation*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .........................................................................14

## Statutes & Rules

Mass. Gen. L. ch. 93A §§ 2, 9, 11 ..................................................... *passim*

Fed. R. Civ. P. 23 .........................................................................1, 13, 20

Fed. R. Civ. P. 23(a) .........................................................................2, 8, 12

Fed. R. Civ. P. 23(a)(1) ................................................................................................13

Fed. R. Civ. P. 23(a)(2) ................................................................................................13

Fed. R. Civ. P. 23(a)(3) ................................................................................................14

Fed. R. Civ. P. 23(a)(4) ...........................................................................................15, 16

Fed. R. Civ. P. 23(b) ...................................................................................................13

Fed. R. Civ. P. 23(b)(3) ........................................................................................ *passim*

Fed. R. Civ. P. 23(b)(3)(A)-(C) .....................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................18, 19

Fed. R. Civ. P. 23(c)(3)(B) .............................................................................................18

Fed. R. Civ. P. 23(e) .......................................................................................................9

Fed. R. Civ. P. 23(e)(1) .......................................................................................18, 19, 20

Fed. R. Civ. P. 23(g)(1)(A) .............................................................................................15

Fed. R. Civ. P. 23(g)(3) ...................................................................................................2

**Preliminary Statement**

Plaintiff Arkansas Teacher Retirement System ("ARTRS") and Plaintiffs Arnold Henriquez, Michael T. Cohn, William R. Taylor, Richard A. Sutherland, The Andover Companies Employees Savings and Profit Sharing Plan, and James Pehoushek-Stangeland (collectively, the "ERISA Plaintiffs," and together with ARTRS, "Plaintiffs"), individually and on behalf of the proposed Settlement Class (herein, "Settlement Class" or "Class"), respectfully submit this memorandum of law in support of their assented-to motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlement of these Class Actions (the "Class Settlement" or "Settlement").[1]

These Class Actions arise from the allegedly unfair and deceptive practice of Defendant State Street Bank and Trust Company ("SSBT") of charging its custody and trust customers excessive rates and spreads in connection with certain foreign exchange transactions, known as "Indirect FX Transactions," in violation of SST's statutory, contractual, and fiduciary obligations.  Plaintiffs in the Class Actions collectively asserted claims under Sections 2, 9 and 11 of the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A, provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), and Massachusetts common law theories, seeking money damages and other relief on behalf of a class comprised essentially of all of SSBT's custodial clients between 1998 and 2009.

The Settlement, as set forth in the Stipulation and Agreement of Settlement, dated as of July 26, 2016 and filed concurrently herewith (the "Settlement Agreement"), provides that SSBT will make a gross payment of Three Hundred Million Dollars ($300,000,000.00) in cash for the benefit of the Settlement Class.

---

[1] Capitalized terms in this brief not separately defined herein have the same meanings described in the Settlement Agreement.

As further discussed below, Plaintiffs and their counsel submit that the Settlement falls well within the range of reasonableness, warranting notice to the Class and a hearing on final approval.  The Class readily meets the Rule 23(a) and (b)(3) class certification prerequisites for settlement purposes.  Because the Settlement is the product of protracted, arm's-length negotiations among highly experienced counsel, and Plaintiffs undertook substantial formal and informal discovery, a presumption of fairness applies, and there is nothing to rebut that presumption.  The Settlement provides a certain and robust recovery for the Class in light of the myriad risks, costs and duration of continued litigation.

Plaintiffs respectfully submit that this motion should be granted.

### Procedural Background

- ARTRS commenced its action, No. 11-CV-10230, on February 10, 2011 by filing a Class Action Complaint against Defendants State Street Corporation, SSBT, and State Street Global Markets, LLC ("SSGM, LLC"), alleging in substance that custodial clients were overcharged for Indirect FX Transactions and asserting, *inter alia*, claims under Chapter 93A, §§ 2 and 11 (ECF No. 1).

- On April 15, 2011, ARTRS filed an Amended Class Action Complaint, asserting, *inter alia*, claims under Chapter 93A, §§ 2, 9, and 11 (ECF No. 10).

- On June 3, 2011, Defendants filed a motion to dismiss (ECF Nos. 18-20, 29).

- On January 12, 2012, the Court designated Labaton Sucharow LLP, counsel for ARTRS, as Interim Lead Counsel for the proposed class pursuant to Rule 23(g)(3).  Thornton & Naumes, LLP was designated as liaison counsel for ARTRS and the proposed class, and Lieff Cabraser Heimann & Bernstein, LLP as additional attorneys for plaintiffs and the proposed class (ECF No. 28).

- On May 8, 2012, following briefing on the motion to dismiss and submissions of supplemental authority (ECF Nos. 22-24, 30, 31), the Court heard oral argument.  In a detailed bench ruling followed by a written Order, the Court denied the motion in its entirety as against SSBT, dismissed the claims as against State Street Corporation and, by agreement

of the parties, dismissed the claims as against SSGM, LLC without prejudice.  ECF Nos. 33 (Order), 36 (transcript).

- The May 8, 2012 Order also directed ARTRS and SSBT to discuss the possibility of settlement and participation in mediation, and to report back to the Court by July 13, 2012 (ECF No. 33).

- On July 13 and August 17, 2012, ARTRS and SSBT filed Joint Status Reports concerning the status of their settlement discussions and agreement to proceed before a private mediator (ECF Nos. 41-42).

- On November 13, 2012, ARTRS, SSBT, and the ERISA Plaintiffs (which asserted ERISA claims solely on behalf of ERISA Plans)[2] filed a Joint Status Report stating that they jointly attended a mediation with a private mediator on October 23 and 24, 2012 and did not reach a settlement, but did agree, subject to the Court's approval, on a framework for exchanging certain discovery and managing the cases.  The Parties requested a status conference to discuss, among other issues, the Parties' plan for exchanging certain document discovery (including extensive informational exchanges), and to obtain the assistance of the mediator to avoid disputes and to facilitate efficient information exchanges (ECF No. 56).

- The Court held a status conference on November 15, 2012.  The Parties presented and discussed the issues set forth in the November 13 Joint Status Report.  The Court generally endorsed the Parties' cooperative approach toward exploring a resolution of the Class Actions through mediation and extensive informational exchanges.  Tr. at 25:6-16, 26:9-10 (ECF No. 64).

- On November 19, 2012, the Court issued orders consolidating the Henriquez and Andover Actions with the ARTRS Action for pretrial purposes; approving a protective order governing confidential discovery information; and staying the Class Actions (except for formal document discovery where necessary and issuance of nonparty subpoenas) until December 1, 2013 (ECF Nos. 61-63).

- In order to enable the Parties to continue their mediation and settlement efforts, the Court subsequently extended the stay to June 1, 2014 and further to December 31, 2014 (ECF Nos. 70, 72).  On June 23, 2014, the Court issued an Order of Administrative Closing (ECF No. 73).

- Between October 2012 and June 2015, the Parties actively participated in sixteen (16) in-person mediation sessions in Boston, New York and Washington, D.C. facilitated by the private mediator, Jonathan B. Marks,

---

[2] The *Henriquez* action, No. 11-CV-12049, was commenced on November 18, 2011.  The *Andover Companies* action, No. 12-CV-11698, was commenced on September 12, 2012.

Esq. of MarksADR, LLC.  The Executive Director of ARTRS and the Chief Legal Officer of State Street Corporation attended certain of the mediation sessions.  Counsel for the Parties also engaged in a host of conference calls with the mediator in an effort to pursue a resolution of the Class Actions.  The Parties made multiple presentations during the mediation process concerning liability, class certification, and damages issues.

- During this time period, SSBT produced more than nine million pages of documents to Plaintiffs' counsel for review in response to Plaintiffs' counsel's requests.  These documents included, among other categories, e-mails, presentation decks and other internal communications concerning Indirect FX pricing strategy and policy; documents concerning State Street's revenue derived from Indirect FX; FX pricing summaries and breakdowns for custodial clients; Investment Manager Guides; Product and Services Manuals; marketing presentations to prospective custodial clients; State Street's responses to Requests for Proposal from prospective custodial clients; and inquiries from custodial clients and their representatives concerning Indirect FX and State Street's responses thereto.  Additionally, ARTRS produced more than 73,000 pages of documents in response to SSBT's requests.

- During the same general period, SSBT was engaged in discussions with representatives of the U.S. Department of Justice ("DOJ"), the U.S. Securities and Exchange Commission ("SEC"), and the U.S. Department of Labor ("DOL") concerning Indirect FX.

- On June 30, 2015, the Parties reached an agreement-in-principle to settle the Class Actions for $300 million in cash that was contingent upon resolution of SSBT's disputes with the various regulators.  The Parties negotiated a detailed Term Sheet, which was signed on September 11, 2015.

- The Parties then turned to negotiation and preparation of the formal settlement documentation, including the Settlement Agreement (with exhibits) dated as of July 26, 2016 and filed concurrently herewith.  Negotiation of the Settlement Agreement was lengthy and complicated considerably by SSBT's ongoing discussions with the DOJ, SEC and DOL, which impact this Settlement as explained below.

- On June 2, 2016, counsel for ARTRS and SSBT advised the Court's courtroom clerk that the Parties had reached a settlement, subject to resolution of the ongoing discussions with the various regulators, and that SSBT's discussions with DOJ, SEC and DOL were near conclusion, and requested a status conference.  Counsel indicated that they would make efforts to file the Settlement Agreement and motion for preliminary approval as soon as possible (ECF No. 76).

- On June 6, 2016, the Court scheduled a status conference for June 23, 2016 at 1:00 p.m., and directed the Parties to file a status report, joint if possible, by June 15, 2016 to update the Court as to any motion for preliminary approval of the Class Settlement (ECF No. 77).

- The Parties subsequently requested extensions of time to June 21, 2016 to file a Joint Status Report (ECF Nos. 79, 80), and filed the Joint Status Report that day (ECF No. 81).

- On June 23, 2016, the Court held a Status Conference to discuss the matters set forth in the Joint Status Report (ECF No. 82).

- On June 24, 2016, following the Status Conference, the Court issued an Order (1) directing the Parties to file, by July 27, 2016, a joint motion for class certification and preliminary approval of a proposed settlement or a motion for an extension of time to do so; (2) scheduling a hearing on that motion for August 8, 2016 at 3:00 p.m.; and (3) scheduling a hearing on final approval of a proposed settlement for October 25, 2016 at 2:00 p.m. (ECF No. 83).

### Summary of Terms of Class Settlement and Proposed Settlement Schedule

**A.     Settlement Consideration**

The Settlement provides that SSBT will pay or cause to be paid a total of $300 million into an interest-bearing escrow account for the benefit of the Settlement Class.  This Settlement consideration and any accrued interest, after the deduction of attorneys' fees, Litigation Expenses, and any Service Awards awarded by the Court, Notice and Administration Expenses, and Taxes and Tax Expenses (the "Net Class Settlement Fund"), will be distributed among Settlement Class Members pursuant to the Court-approved Plan of Allocation.

Payment of the $300 million Class Settlement Amount, and the allocations discussed below in the Plan of Allocation, will also satisfy conditions in two separate settlements with federal government agencies.  SSBT anticipates reaching a settlement with the SEC concerning Indirect FX that relates to Settlement Class Members that are Registered Investment Companies

("RICs").  SSBT has also reached a settlement with the DOL concerning Indirect FX that relates

to Settlement Class Members that are ERISA Plans.[3]

**B.      Plan of Allocation of the Net Class Settlement Fund**

Pursuant to the proposed Plan of Allocation, which is set forth in the proposed Notice,

A.B. Data, Ltd., an independent settlement and claims administrator recommended by Lead

Counsel, will calculate each Settlement Class Member's Recognized Claim using information

supplied by SSBT.

A Class Member's recovery will depend on, among other things, the Class Member's

volume of Indirect FX Transactions and whether or not the Class Member is:

> (i)      an ERISA Plan;
>
> (ii)     a Group Trust, which is essentially a Class Member that
>          has or had both ERISA-governed and non-ERISA assets;
>
> (iii)    a RIC, most of which are mutual funds; or
>
> (iv)     none of these, such as ARTRS and other public pension
>          funds, and other private customers ("Public and Other").

The ERISA Settlement Allocation is $60 million of the $300 million Class Settlement, on

a gross basis before the addition of accrued interest and the deduction of attorneys' fees,

Litigation Expenses, Service Awards, Notice and Administration Expenses, Taxes and Tax

Expenses.  The ERISA Settlement Allocation will be used to provide recoveries to Settlement

Class Members that are ERISA Plans, and also Group Trusts to the extent they, through a self-

certification process, establish that they include plans or assets governed by ERISA.[4]

---

[3] SSBT has reached a separate settlement with the DOJ concerning Indirect FX.  The monies paid by SSBT in the DOJ Settlement will not be distributed to Settlement Class Members.  SSBT is also paying a fine to the SEC as part of the SEC Settlement that will not be distributed to Settlement Class Members.

[4] SSBT will provide the Claims Administrator with the names and addresses of each of the fifty-five (55) Settlement Class Members that are Group Trusts or that manage funds that are Group Trusts.  Each such Class Member will receive a letter with the Notice explaining that it will need to self-certify in order to receive a payment

The $240 million balance of the Class Settlement Fund will be allocated to class members that are not ERISA Plans, specifically to class members that are Public and Other customers or RICs.  Based on information supplied by SSBT, the RIC Settlement Allocation will be approximately $142 million, on a gross basis before interest and the deductions enumerated above.[5]  The Public and Other Settlement Allocation will be approximately $98 million, similarly on a gross basis before interest and the deductions above.

Payments from these allocations to Class Members will be based on their Indirect FX Trading Volumes.  In addition to working with Group Trusts in connection with the self-certification process, before Lead Counsel files a motion to authorize a distribution of the Net Class Settlement Fund, each Class Member will receive a notice concerning its Recognized Claim and will have an opportunity to ask questions about that determination.

The ERISA Settlement Allocation, which relates to SSBT's settlement with the DOL, and payment of the Registered Investment Company Minimum Distribution, which relates to SSBT's settlement with the SEC, are essential conditions of this Class Settlement.  This Class Settlement accordingly differs from the mine run of class action settlements in that key elements of the Plan of Allocation are material terms of the Settlement.

**C.      Proposed Preliminary Approval**
**Order and Settlement Schedule**

Plaintiffs respectfully request that the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and

---

from the ERISA Settlement Allocation.  If such Class Member does not self-certify, it will be paid from the Public and Other Settlement Allocation.

[5]  The RIC Settlement Allocation, assuming payment of a certain amount of attorneys' fees, Litigation Expenses, Service Awards, and Notice and Administration Expenses, will be sufficient to meet certain conditions in the SEC Settlement; specifically, payment of the Registered Investment Company Minimum Distribution of $92,369,416.51.  *See* Settlement Agmt. ¶ 1(xx).

Setting Date for Hearing on Final Approval of Settlement (the "Preliminary Approval Order"),

annexed to the Settlement Agreement as Exhibit A and submitted herewith.[6]

Plaintiffs respectfully propose the following schedule for the remainder of the settlement

consideration and approval process:

- Mailing of individual Notice of Class Actions, Proposed Settlement, Settlement Hearing, Plan of Allocation, and any Motion for Attorneys' Fees and Payment of Litigation Expenses ("Notice") to all Settlement Class Members who can be identified through reasonable effort: ***Ten (10) business days after entry of the Preliminary Approval Order***.

- Publication of Summary Notice of Pendency of Class Actions, Proposed Settlement, Settlement Hearing, Plan of Allocation, and Motion for Attorneys' Fees and Payment of Litigation Expenses and Fairness Hearing ("Summary Notice") in *The Wall Street Journal* and transmitted over *PR Newswire*: ***Fourteen (14) calendar days after the Notice Date***.

- Deadline for submission of motion papers in support of approval of the proposed Class Settlement, the proposed Plan of Allocation, any requests for attorneys' fees, Litigation Expenses, and Service Awards: ***Thirty-five (35) calendar days prior to the Final Approval Hearing***.

- Deadline for submission of requests for exclusion from the Settlement Class or objections to the Class Settlement, Plan of Allocation, or application for attorney's fees and expenses: ***Twenty-one (21) calendar days prior to the Final Approval Hearing***.

- Final Approval Hearing: ***October 25, 2016, at 2:00 p.m., as previously ordered by the Court***.

- Postmark deadline for Settlement Class Members that are Group Trusts to submit certifications in compliance with the requirements set forth in the Notice: ***One hundred twenty (120) calendar days after the Notice Date***.[7]

---

[6] The Preliminary Approval Order, among other things: (i) grants preliminary approval to the Class Settlement; (ii) schedules a hearing (the "Final Approval Hearing" or "Settlement Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Class Settlement, the Plan of Allocation of the Net Class Settlement Fund ("Plan of Allocation" or "Plan"), and Lead Counsel's application, on behalf of Customer Counsel and ERISA Counsel, for an award of attorneys' fees and expenses; (iii) certifies the Settlement Class pursuant to Rules 23(a) and (b)(3) for purposes of the Class Settlement; (iv) approves the forms and methods of disseminating pre-hearing notice to the Settlement Class, and directs that such notice be issued; (v) appoints the claims administrator recommended by Lead Counsel to administer the Class Settlement and assist with its implementation; (vi) establishes procedures and the deadline for persons to request exclusion from the Settlement Class; (vii) establishes procedures and the deadline for Class Members to object to the terms of the Settlement Agreement, Plan of Allocation, or requested fees and expenses; and (viii) establishes procedures and the deadline for Settlement Class Members that are Group Trusts to submit a certification in order to receive a portion of the ERISA Settlement Allocation.

## ARGUMENT

### I.   STANDARDS FOR GRANTING PRELIMINARY SETTLEMENT APPROVAL

Rule 23(e) requires judicial approval of all class action settlements, which are generally encouraged as a policy matter. *See National Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

On preliminary review of a proposed class action settlement, the Court should "examine the settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Practices Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (citing Manual for Complex Litigation (Fourth) § 21.632)).[8] There is generally a presumption in favor of a settlement "[i]f the parties negotiated at arm's length and conducted sufficient discovery." *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

---

[7]  Settlement Class Members will not be required to submit claim forms to participate in this Settlement because SSBT knows the identities of the Class Members and their type and volume of Indirect FX Transactions. SSBT has agreed to provide the necessary data and information to the Claims Administrator.

[8]  In considering whether to grant final approval to the Settlement, courts in this Circuit generally consider the following factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendants risks of litigation." *E.g.*, *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280-81 (D. Mass. 2009) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *see also M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 823-24 (D. Mass. 1987) (Wolf, J.) (considering additional factors including arm's-length nature of settlement negotiations, whether named plaintiffs benefit more or differently than rest of class, adequacy of representation of all of the plaintiffs, and recommendations of class counsel).

"More specifically, a presumption of fairness attaches to the court's preliminary fairness determination when '(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" [9] *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)). This presumption applies where a class action settlement is negotiated and proposed as an alternative to extended litigation. *See M3 Power Razor*, 270 F.R.D. at 62 (granting preliminary approval to settlement presented by parties "in lieu of litigation").

## II.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED CLASS SETTLEMENT

### A.   A Strong Presumption of Fairness Applies to the Class Settlement

The Court should accord the Class Settlement a presumption of fairness and, in the absence of any facts or circumstances rebutting the presumption, grant preliminary approval.

*First*, the Court should have no doubt that the settlement negotiations were protracted and occurred at arm's-length. Over a period of years, the Parties participated in 16 in-person mediation sessions facilitated by a private mediator. *See Disability Law Ctr. v. Massachusetts Dep't of Corr.*, 960 F. Supp. 2d 271, 280-81 (D. Mass. 2012) (Wolf, J.) ("Generally, '[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.' This presumption applies here. The Agreement . . . was the result of years of arduous, arm's length negotiations by energetic and experienced counsel.") (quoting *Pharmaceutical Indus.*, 588 F.3d at 32-33)).

---

[9] The reaction of the class to the proposed settlement is not a relevant factor at the preliminary approval stage because notice has not yet been provided to absent class members. *See M3 Power Razor*, 270 F.R.D. at 63 ("[T]he only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out of the settlement class or object to its terms at the Final Fairness Hearing.").

*Second*, Plaintiffs entered into the Settlement on a well-informed basis as to the merits and value of the claims.  As part of the mediation process, SSBT produced and Customer Counsel reviewed more than 750,000 nonpublic documents and datafiles, exceeding nine million pages, concerning State Street's FX business and pricing practices.  SSBT also provided Plaintiffs' counsel with nonpublic data and other information in response to various inquiries made during the course of the mediation process.  *See id.* at 280 (applying presumption where settlement also reached "after the plaintiff received substantial formal and informal discovery"); *M3 Power Razor*, 270 F.R.D. at 63 (sufficient discovery undertaken where defendant produced roughly 100,000 pages of documents, "allowing the parties to acquire enough information rapidly to make serious settlement negotiations possible").  Additionally, Lead Counsel produced more than 3,500 documents, exceeding 73,000 pages, concerning the full scope of ARTRS's custodial relationship with SSBT, as well as its relationship with relevant investment managers ("IMs") and a consultant responsible for overseeing the IMs.

*Third*, Plaintiffs respectfully submit that the proponents of the Settlement, including Plaintiffs' counsel and Defendants' counsel, are experienced in similar litigation.  *See* Mem. and Order Granting Assented-to Mot. for Appointment of Interim Lead Counsel, at 4 (ECF No. 28, Jan. 11, 2012) (discussing qualifications of undersigned counsel); *see also* Part III.B.4 below.

**B.      The Proposed Settlement Recovery Falls
           Well-Within a Range of Reasonableness**

The $300 million Class Settlement falls well within a range of what may be considered fair, reasonable, and adequate, and indeed is an excellent result for the Settlement Class in light of the risks, costs and duration of continued litigation.

The fairness of the Settlement is supported at this stage by, among other things, comparing it to State Street's response to ARTRS's pre-suit demand letter required under

Section 9 of Chapter 93A.[10]  State Street chose not to make a settlement offer while denying

liability, as contemplated by the statute.  Rather, State Street took the position that "there was

nothing unfair or deceptive about State Street's foreign exchange business, including its rates and

its reporting of those rates," that ARTRS's demand letter was "conclusory, speculative, and

erroneous," and accordingly that "State Street ha[d] no basis to make any offer of settlement."

Ltr. of William H. Paine, Esq. dated Mar. 18, 2011, Exhibit A to accompanying supporting

Declaration of Lawrence A. Sucharow ("Counsel Decl."), at 5.

      The divergence between State Street's position that ARTRS had no claim "under Chapter

93A (or any other law)," *id.*, and SSBT's agreement here to pay $300 million to settle ARTRS's

Chapter 93A claim and the other claims asserted in the Class Actions, supports a finding that the

Settlement is within a range of reasonableness and should be preliminarily approved.  *Cf. M3*

*Power Razor*, 270 F.R.D. at 63 (looking to defendants' responses to pre-suit demand letters

under Chapter 93A; court found significant that settlement offer was revised to, among other

terms, establish $7.5 million minimum settlement fund and increase refund for affected razors

from $12 to $13).

## III.  THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED SETTLEMENT CLASS

### A.  Standards for Class Certification

      To obtain class certification, Plaintiffs must establish each of the four elements of Rule

23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the

---

[10] *See* Mass. Gen. L. ch. 93A § 9(3) ("At least thirty days prior to the filing of any . . . action [under ch. 93A], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relief upon and the injury suffered, shall be mailed or delivered to any prospective respondent.  Any person receiving such a demand for relief who . . . makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner.").

elements in Rule 23(b). *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

The fact that class certification is sought for settlement rather than litigation purposes presents no barrier to certification. *See, e.g.*, *M3 Power Razor*, 270 F.R.D. at 54 (citing *Amchem*, 521 U.S. at 619). Indeed, in assessing the Rule 23 factors in the settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). And while the Supreme Court has cautioned district courts to give heightened scrutiny to the other Rule 23 requirements to protect absent class members, *id.*, "[t]his cautionary approach notwithstanding, the law favors class action settlements." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *City P'ship*, 100 F.3d at 1043).

## B. The Requirements of Rule 23(a) Are Met

### 1. The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the Class be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally presumed at 40 class members. *See In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003) (finding a 60-member class sufficiently numerous). Information provided by SSBT indicates that there are approximately 1,300 members of the Settlement Class. The numerosity requirement is met.

### 2. The Settlement Class Has Many Common Questions of Law and Fact

The Rule 23(a)(2) commonality requirement is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mean that every class member must share every factual and legal predicate of the action; to the contrary, the Rule requires only that "one common issue of fact or law at the core of the action must shape the

class." *Hochstadt*, 708 F. Supp. 2d at 102 (quoting *Lupron*, 228 F.R.D. at 88).  Accordingly, the threshold for commonality "is not high."  *M3 Power Razor*, 270 F.R.D. at 54; *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005) (commonality threshold "not a difficult one to meet").

Many common questions of law and fact as to liability and damages lie at the heart of the Class Actions and bind the Settlement Class.  Above all, the claims of the Settlement Class Members "depend upon a common contention": whether SSBT's Indirect FX Methods were improper, because they violated Chapter 93A, ERISA, or Massachusetts common law.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also id.* at 2556 ("Even a single [common] question will do.").  And this common, overarching contention is "capable of classwide resolution," because "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 2545.  The commonality requirement is met.

### 3.      Plaintiffs' Claims Are Typical of Those of Other Settlement Class Members

To establish typicality under Rule 23(a)(3), Plaintiffs need only demonstrate that the claims of the class and the class representative "arise from the same event or pattern or practice and are based on the same legal theory."  *M3 Power Razor*, 270 F.R.D. at 54 (quoting *Lupron*, 228 F.R.D. at 89).  The inquiry is whether the interests of the class and the class representatives are sufficiently aligned.  The representative plaintiff's claims need not be identical to those of the absent class members, however.  *See Hochstadt*, 708 F. Supp. 2d at 103.

Typicality is shown here because, similar to commonality, the claims of Settlement Class Members and class representatives arise from the same essential set of facts regarding SSBT's liability and the damages suffered.  The Indirect FX Methods central to the Class Actions

involved a uniform pricing methodology that was applied to all Settlement Class Members in a common course of conduct through the Class Period.  The typicality requirement is met.

### 4. Plaintiffs Will Continue to Fairly and Adequately Protect the Interests of the Settlement Class

The Rule 23(a)(4) adequacy-of-representation requirement entails a two-pronged showing: "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Hochstadt*, 708 F. Supp. 2d at 103 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

With respect to potential intra-class conflicts, "the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (quoting *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.3 (1982)); *see also In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 22 (D. Mass. 2008) (noting that "[t]he requirements of typicality and adequacy tend to merge").  For the same reasons that Plaintiffs are typical of the Class, their interests do not fundamentally conflict with those of other Class Members.  Plaintiffs accordingly are adequate class representatives.

With respect to the qualifications of proposed class counsel, it is respectfully submitted that Labaton Sucharow LLP remains well-qualified to represent the Settlement Class here and should be appointed as Class Counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A).  The Court made certain findings in this respect in its January 12, 2012 Order (ECF No. 28), and there is no reason for the Court to depart from those findings at this stage.  *See M3 Power Razor*, 270 F.R.D. at 55 (finding

plaintiffs' counsel adequate under Rule 23(a)(4): "I have no reason to think the appointed

counsel have not been performing competently; to the contrary, the record shows that they have

been."); Counsel Decl. Ex. B (Labaton Sucharow firm resume).  The adequacy-of-representation

requirement is met.

### C.     The Requirements of Rule 23(b)(3) Are Met

#### 1.     Common Questions of Law and Fact
#### Predominate Over Any Individual Issues

Rule 23(b)(3) sets forth two requirements, the first being that the common issues of law

or fact "predominate" over any individual issues.  Fed. R. Civ. P. 23(b)(3).  The predominance

inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem*, 521 U.S. at 623.  "Predominance under Rule 23(b)(3) does not require

an entire universe of common issues, but rather 'a sufficient constellation' of them. *Relafen*, 218

F.R.D. at 343 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir.

2000)).  The Supreme Court recognized in *Amchem* that "[p]redominance is a test readily met in

certain cases alleging consumer or securities fraud or violations of the antitrust laws."  521 U.S.

at 625.  More recently, the Court has made clear that "Rule 23(b)(3) does ***not*** require a plaintiff

seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide

proof." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)

(emphasis and alterations in original).

As noted above, numerous common issues bear on SSBT's liability and Settlement Class

Members' damages.  The significance of these issues across the Settlement Class is not

outweighed by any issue peculiar to individual Class Members.  This is because the claims

asserted in the Class Actions turn principally on SSBT's conduct, and not the conduct or belief

of SSBT's custodial clients.  And the elements of the claims are governed largely by objective

standards, which are susceptible to generalized, classwide proof.  *See*, *e.g.*, *Aspinall v. Philip-Morris Cos.*, 442 Mass. 381, 394 (2004) ("Whether conduct is deceptive [under Chapter 93A] is initially a question of fact, to be answered on an objective basis and not by the subjective measure argued by the defendants.") (citing *Lowell Gas Co. v. Attorney Gen.*, 377 Mass. 37, 51 (1979)); *see also M3 Power Razor*, 270 F.R.D. at 56 (noting, in finding predominance satisfied, that "Chapter 93A of the Massachusetts General Laws provides a cause of action common to all class members against the defendant").  The predominance requirement is met.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy

Finally, Rule 23(b)(3) requires that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy.  In the settlement context, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.

Fed. R. Civ. P. 23(b)(3)(A)-(C).

The superiority of the class mechanism here is self-evident.  The "other available method" would be litigation by 1,300 individual Settlement Class Members that are custodial clients of SSBT.  Such a raft of litigation would demand enormous resources from the parties and the courts, and could produce inconsistent rulings and judgments.

Only three custodial clients have proceeded with individual claims, indicating that custodial clients as a whole are satisfied with litigation of their claims through these Class Actions.  *See Board of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) ("[T]he existence of large individual claims that are sufficient for

individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability."); Settlement Agmt. ¶ 1(hhh).  Indeed, two of the custodial clients' claims were brought as a *qui tam* action by the Attorney General of California, and the third custodial client settled its dispute with SSBT privately, without commencing litigation.

Last, it is plainly desirable to continue to maintain the Settlement Class Members' claims in this Court.  SSBT is headquartered and its FX business is based in Boston, and the Court has devoted time and resources to and has familiarized itself with these actions.  *See M3 Power Razor*, 270 F.R.D. at 56 ("The forum jurisdiction is familiar with Chapter 93A, the Massachusetts consumer protection statute, available to all plaintiffs challenging alleged misrepresentations . . . by a Massachusetts corporate defendant.").  The superiority requirement is met.  Accordingly, the Court should preliminarily certify the Settlement Class.

## IV.   THE COURT SHOULD APPROVE THE FORM AND MATTER OF NOTICE TO THE SETTLEMENT CLASS

Plaintiffs respectfully request that the Court approve the form and content of the proposed Notice and Summary Notice.  *See* Preliminary Approval Order Exs. A-1 and A-2.  The Notice is written in plain, straightforward language and features a "Q & A" format that clearly sets out the relevant information and answers the primary questions Settlement Class Members will have.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Settlement Class members of the nature of the action, the definition of the Class sought to be certified for purposes of the Settlement, the Settlement Class claims and issues, that Class members may enter an appearance through counsel if desired, that the Court will exclude from the Class any class member who requests exclusion (and sets forth the procedures and deadlines for doing so) and the binding effect of a class judgment on Class members under Rule 23(c)(3)(B).

The Notice also states the amount of attorney's fees and expenses that Plaintiffs' counsel will seek; the amount of Service Awards that may be requested; the proposed Plan of Allocation that will govern how Class members' recoveries will be determined; and the name, address, and toll-free telephone numbers of the Claims Administrator and Lead Counsel, who will be available to answer questions from Settlement Class members.

Additionally, the Notice discloses the date, time and location of the Final Approval Hearing and the procedures and deadlines for the submission of objections to any aspect of the Class Settlement, Plan of Allocation, or attorney's fees and expenses to be sought by Plaintiffs' counsel.  These disclosures are complete and should be approved by the Court.  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice that stated the settlement terms and plan of allocation, the maximum request for attorney's fees, and identified contact information of relevant attorneys).

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement, voluntary dismissal, or compromise.  Fed. R. Civ. P. 23(e)(1).  The proposed notice plan, which is set forth in the Preliminary Approval Order, readily meets these standards.  Plaintiffs, through an experienced and diligent Claims Administrator, will cause the Notice, including the Plan of Allocation and letters to Group Trusts, to be mailed by first-class mail to every Settlement Class Member, each of which is known to SSBT. Additionally, the Summary Notice, which summarizes the essential Class Settlement terms and informs readers how to obtain the long-form Notice, will be published once in *The Wall Street*

*Journal* and be disseminated over the internet using *PR Newswire,* a major national business-oriented wire service.

This notice program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court.  *See In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving notice program that distributed notice packets to individual investors and nominees and published summary notice in national newspaper and wire services); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210-11 (S.D.N.Y. 1995) (sending notice by first class mail is "best notice practicable," and publication in major newspaper "will have the broadest reach to inform those members of the Settlement Class who, for some reason, may not receive the mailed Notice").

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court issue the proposed Preliminary Approval Order annexed to the Settlement Agreement and submitted herewith, in accordance with the settlement schedule proposed above.

Dated:  July 26, 2016

Respectfully submitted,

LABATON SUCHAROW LLP

By:     */s/ Lawrence A. Sucharow*
Lawrence A. Sucharow *(pro hac vice)*
David J. Goldsmith *(pro hac vice)*
Michael H. Rogers *(pro hac vice)*
Nicole M. Zeiss *(pro hac vice)*
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
Tel:  (212) 907-0700
Fax:  (212) 818-0477

*Counsel for Plaintiff ARTRS and*
*Interim Lead Counsel and Proposed Class*
*Counsel for the Proposed Settlement Class*

Michael P. Thornton (BBO #497390)
Garrett J. Bradley (BBO #629240)
Michael A. Lesser (BBO #631128)
THORNTON LAW FIRM LLP
100 Summer Street, 30th Floor
Boston, Massachusetts  02110
Tel:  (617) 720-1333
Fax:  (617) 720-2445

*Liaison Counsel for Plaintiff ARTRS
and the Proposed Settlement Class*

Daniel P. Chiplock (*pro hac vice*)
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013
Tel:  (212) 355-9500
Fax:  (212) 355-9592

Robert L. Lieff (*pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, California  94111
Tel:  (415) 956-1000
Fax:  (415) 956-1008

*Attorneys for Plaintiff ARTRS
and the Proposed Settlement Class*