# Exhibit 3

```
 1                UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MASSACHUSETTS

 3                          No. 1:11-cv-10230-MLW

 4


 5    ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of
      itself and all others similarly situated,
 6              Plaintiffs

 7
      vs.
 8

 9
      STATE STREET CORPORATION, et al,
10              Defendants

11

12                      *********

13
                      For Hearing Before:
14               Chief Judge Mark L. Wolf

15
                      Motion to Dismiss
16

17                 United States District Court
                   District of Massachusetts (Boston)
18                 One Courthouse Way
                   Boston, Massachusetts 02210
19                 Tuesday, May 8, 2012

20
                        *******
21

22           REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
23              United States District Court
      One Courthouse Way, Room 5200, Boston, MA 02210
24                bulldog@richromanow.com

25
```

were decided under the laws of Massachusetts, and in none of those cases did the courts -- in *Mexico Money* and *McCann* there was no finding of breach of fiduciary duty.  Or to be more precise, there's no finding of the existence of a fiduciary duty.

I do recognize that *McCann* was dismissed, *Mexico Money* was a class action, and it's not even clear what the evidentiary basis for some of the factual conclusions were to me.  A motion to dismiss claims that are similar to the claims in this case was more recently denied in a federal court in California in *International Union*.

I find that the plaintiff has also stated a plausible claim for negligent misrepresentation, as the Mass. Appeals Court said in *Nota*, 45 Mass. Appeals Court 15 at 19.  That's usually an issue of fact.  As I described earlier, a half truth can be a negligent misrepresentation, as indicated by *Golber*.  The cost of the transactions in this case could plausibly be material.  Those costs could reasonably cause a large investor to change custodians or negotiate a more favorable rate with State Street.  It is also plausible that the plaintiff could have relied on being told that all of the defendants' compensation would be according to the fee schedule entered into between the parties.

```
 1    As I noted earlier, the 1998 fee schedule said there was
 2    no charge for FX transactions.
 3         I also find that the plaintiff has stated a
 4    plausible claim for a violation of Mass. General Law
 5    Chapter 93A.  However, it's -- it is not possible for
 6    me, at this point, to determine whether this case should
 7    proceed under Section 9 or Section 11.  That's going to
 8    require further factual development and argument to
 9    decide.
10         Judge Saris set out what I think are the
11    applicable standards in *In re Pharmaceutical Industry*,
12    491 F. Supp. 2d 20 at page 80.  If the facts demonstrate
13    the plaintiff is a nonprofit entity whose investment
14    activities were performed in accordance with its
15    legislative mandate in furtherance of its core mission,
16    Section 9, the consumer provision which provides for
17    treble damages in certain extreme cases, would apply.
18    If not, it would be viewed as a big business and Section
19    11 would be the applicable provision.
20         This may make a difference not just for whether
21    treble damages or up to treble damages are available,
22    but also for the applicable standard.  It appears to me
23    at the moment that under Section 9 a mere failure to
24    disclose a material fact may violate Chapter 93A.
25    That's how the First Circuit in *V.H.S Realty*, 757 F.2d
```

1   411 at 417, interpreted, and I think correctly
2   interpreted, the Supreme Judicial Court's decision in
3   *Slaney*, 366 Mass. 688 at 784.
4        In addition, even if we're under Section 11, it
5   appears that if as I had found is plausibly alleged
6   there is -- or State Street had a fiduciary duty to
7   disclose, then a material omission would violate Chapter
8   93A, Section 11.  This may or will need more work by all
9   of us, but as stated in 52 Mass. Practice Series,
10  Section 4.19 at Page 202, um, it may be that under
11  Massachusetts law, quote:  "There probably is a general
12  duty of disclosure in Section 9 cases and in Section 11
13  cases there probably must be a duty to speak before
14  disclosure is required."
15       Moreover -- although this hasn't been expressly
16  alleged as a separate count by the plaintiffs, um, for
17  Section 9 and 11, a violation of the implied covenant of
18  good faith and fair dealing violates Chapter 93A.  And
19  my colleague Judge Saylor discussed this in *Speakman*,
20  367 F. Supp. 2d 122 at 141, citing many cases.
21       I recognize that Sections 9 and 11 have been held
22  to be and are mutually exclusive.  However, the
23  defendants' claim that it's Section 11 that should apply
24  here rather than Section 9, or the plaintiffs' claim to
25  the opposite, turns on facts.  I have to know more about

1    Arkansas Teacher's business.  And I'm going to defer at
2    least until a motion for summary judgment and perhaps
3    trial deciding which applies here.  That's the approach
4    that was taken in *Lorazepam and Clorazepate*, which I'll
5    spell later for the Court Reporter, at 295 F. Supp. 2d
6    30 at 43 to 44, a 2003 District of Columbia case.
7         I also find that a plausible claim has been stated
8    for a breach of contract.  Arkansas law governs this
9    claim under the contract.  As I indicated earlier, I
10   must apply the plain meaning of the contract as a matter
11   of law if it's unambiguous.  If the Court finds the
12   contract is ambiguous, the meaning of it is a question
13   of fact for the jury, which can consider parol evidence
14   -- or the factfinder, which can consider parol
15   evidence.  That's *Keller* cited earlier.
16        In this case, the custodial case, State Street is
17   entitled to compensation for services as set forth in
18   the fee schedule.  The fee schedules, um, state that
19   State Street will receive no compensation for FX
20   transactions, or at least one of them in 1998 says that,
21   the rest were silent.  As I said earlier, I now
22   understand there may be an ambiguity as to whether that
23   covers the standing instruction FX transactions, um,
24   completely or only relates to administrative fees.
25   There seem to be competing sections of the fee

1   schedules, I assume probably drafted by State Street,
2   but taking undisclosed compensation could be found a
3   breach of an unambiguous agreement or if there is, and
4   I'm now inclined to think there may be, an ambiguity,
5   factual developments require it.  The one thing I can
6   conclude now is that the agreement does not
7   unambiguously provide that the fee schedules do not
8   cover standing instruction FX transactions.  If State
9   Street, you know, believed it was authorized to take the
10  kind of compensation it took, um, it could have spelled
11  it out clearly and we wouldn't be here today.
12        With regard to the statute of limitations issues,
13  Massachusetts law governs all but the breach of contract
14  claim.  The statute of limitations is three years for
15  all but the Chapter 93A claim, it's four years for the
16  93A claim, and five years for the breach of contract
17  claim under Arkansas law.  As I said, in this case the
18  plaintiff has adequately alleged violations of
19  Massachusetts law were fraudulently concealed in
20  violation of a fiduciary duty to disclose.  In view of
21  the fiduciary duty to disclose that's alleged, the
22  statute of limitations began running when the plaintiff
23  had actual knowledge of the injury, as the Supreme
24  Judicial Court held in *Demoulas*, 424 Mass at 519.  This
25  is generally a factual issue.