## UNITED STATE DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) | No. 11-cv-10230 MLW |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |
| ARNOLD HENRIQUEZ, *et al*, | ) ) | No. 11-cv-12049 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, | ) ) ) ) | |
| Defendants. | ) ) | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, *et al*, | ) ) ) | No. 12-cv-11698 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |

## UNOPPOSED MOTION FOR ADMISSION *PRO HAC VICE*

Pursuant to Massachusetts Local Rule 83.5.3(b), Ellen Rappaport Tanowitz of Newton, MA, a member in good standing of the Bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts, moves for the admission of Theodore H. Frank to

practice before this Court on behalf of the non-profit Competitive Enterprise Institute's Center for Class Action Fairness (CCAF), an amicus in the above-captioned matter, and states as follows:

1.      I am an attorney duly admitted to practice in the Commonwealth of Massachusetts and the United States District Court, District of Massachusetts.  I make this Affidavit in support of the Motion for Admission *pro hac vice*.

2.      Theodore H. Frank is a senior attorney at CEI and is founder and director of CCAF. His business address is 1310 L Street, NW, 7th Floor, Washington, DC 20005.  His telephone number is (202) 331-2263.

3.      Mr. Frank is a member of the Bars of the State of Illinois, the State of California, the District of Columbia, and several United States District Courts.  There are no disciplinary proceedings against him as a member of the bar in any jurisdiction.  *See* Declaration of Theodore H. Frank, attached hereto as Exhibit A.

4.      Mr. Frank is familiar with the applicable provisions of the Local Rules of the United States District Court for the District of Massachusetts.

WHEREFORE, the amicus CCAF respectfully requests that Theodore H. Frank be admitted to practice before this Court *pro hac vice* for the purpose of appearing as its counsel in the above-referenced proceeding in accordance with the Rules of this Court.


Dated: February 17, 2017          /s/ *Ellen Rappaport Tanowitz*
                                  Ellen Rappaport Tanowitz (BBO No. 630710)
                                  TANOWITZ LAW OFFICE, P.C.
                                  1340 Centre St., Suite 103
                                  Newton, MA 02459
                                  Telephone: 617-965-1130
                                  Email: ellen@tanowitzlaw.com
                                  *Attorney for Amicus Curiae*
                                  *Competitive Enterprise Institute*
                                  *Center for Class Action Fairness*

### Certificate of Compliance with Local Rule 7.1(a)(2)

I certify that CCAF counsel conferred with class counsel in good faith effort to narrow or resolve the issues raised in this motion. Class counsel consents to this motion.


Dated: February 17, 2017


_/s/ Ellen Rappaport Tanowitz_____
Ellen Rappaport Tanowitz

**Certificate of Service**

I hereby certify that on February 17, 2017, I caused a true and correct copy of the foregoing Motion for *Pro Hac Vice* and the attached Declaration of Theodore H. Frank to be served upon all counsel of record by electronic mail via the ECF system for the District of Massachusetts.

*/s/ Ellen Tanowtiz*
Ellen Tanowitz

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | |
| Plaintiffs, | No. 11-cv-10230 MLW |
| v. | |
| STATE STREET BANK AND TRUST COMPANY, | |
| Defendant. | |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, | |
| Plaintiffs, | No. 11-cv-12049 MLW |
| v. | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, | |
| Defendants. | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, | |
| Plaintiffs, | No. 12-cv-11698 MLW |
| v. | |
| STATE STREET BANK AND TRUST COMPANY, | |
| Defendant | |

**DECLARATION OF THEODORE H. FRANK IN SUPPORT OF
MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS*
AND MOTION FOR *PRO HAC VICE* ADMITTANCE**

# DECLARATION OF THEODORE H. FRANK

I, Theodore H. Frank, declare as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as witness, could and would testify competently thereto.

2.      I am an attorney licensed to practice law in the State of Illinois, the State of California, and the District of Columbia.

3.      I am a resident of the District of Columbia.

4.      I am a senior attorney at the Competitive Enterprise Institute (CEI), located at 1310 L Street, NW, 7th Floor, Washington, DC 20005.  The office telephone number is (202) 331-1010 and my direct line is (202) 331-2263.

5.      I was admitted to practice law in the State of Illinois on November 10, 1994.  My Illinois Bar Registration number is 06224948.

6.      I was admitted to practice law in the District of Columbia on April 1, 1996.  My DC Bar Registration number is 450318.

7.      I was admitted to practice law in the State of California on August 4, 1998.  My California Bar Registration number is 196332.

8.      I am authorized to practice law in the following federal district courts: United States District Court for the Northern District of California, United States District Court for the Central District of California, United States District Court for the Southern District of California, United States District Court for the Eastern District of Wisconsin, and United States District Court for the District of Columbia.

9.      I am a member of the bar in good standing to practice in each of the jurisdictions listed above, and in every jurisdiction in which I have been admitted to practice.

10.     I have never been suspended or disbarred in my jurisdiction, and there are no disciplinary actions pending against me in any federal or state court or in any jurisdiction in which I am a member of the bar.

11.     I have never had a *pro hac vice* admission to this court (or other admission for a limited purpose under this rule) revoked for misconduct.

12.     I have read and agree to comply with the Local Rules of the United States District Court for the District of Massachusetts.

13.     If the Court allows the Motion for me to appear *pro hac vice* in this matter, I will represent CEI in this proceeding until the final determination thereof, and with reference to all matters, incidents, or proceedings, I agree that I shall be subject to the orders and to the disciplinary action and the civil jurisdiction of this Court in all respects as if I were regularly admitted.

### The Center for Class Action Fairness

14.     I founded the non-profit Center for Class Action Fairness ("CCAF"), a 501(c)(3) non-profit public interest law firm based out of Washington, D.C., in 2009. In 2015, CCAF merged into the 501(c)(3) non-profit Competitive Enterprise Institute ("CEI") in Washington, D.C.

15.     Several CCAF attorneys including Frank Bednarz, Adam Schulman, Anna St. John, and Melissa Holyoak will be assisting me on this matter under my supervision. We have retained local counsel, Ellen Tanowitz, who bills us at her normal rates.

16.     CCAF litigates on behalf of class members against unfair class-action procedures and settlements. *See, e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner J.) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (Kethledge, J.) (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (Bates, J.) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification).

17.     CCAF has been successful, winning reversal or remand in fourteen federal appeals decided to date. *In re Target Corp. Customer Data Security Breach Litig.*, __F.3d__, 2017 U.S. App. LEXIS 1767 (8th Cir. Feb. 1, 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx. 274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

18.     CCAF has won more than a hundred million dollars for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. *See, e.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees, and thus increasing class recovery, by more than $26 million to account for a "significantly overstated lodestar"); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating *cy pres* and augmenting class fund by $2.5 million).

19.     Because settlement proponents often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are styled "professional objectors." A "professional objector" is a specific term referring to for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003) (public interest groups are not professional objectors). This is not CCAF's modus operandi. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12,

2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in quid pro quo settlements and does not extort attorneys; it has never withdrawn an objection in exchange for payment to CCAF. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. Indeed, tax law would not permit any employees of CEI to personally profit from this objection.

20.     Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *Pearson v. NBTY, Inc.*, No. 11-cv-7972 (N.D. Ill.); *see also* Jacob Gershman, *Lawsuits Allege 'Objector Blackmail' in Class Action Litigation*, Wall Street Journal Law Blog (Dec. 7, 2016).

21.     CCAF is interceding in good faith to encourage reconsideration of an inequitable fee award. To demonstrate such good faith, I would gladly stipulate to an injunction prohibiting myself from accepting compensation in exchange for walking away from the matter. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as best means of eliminating bad-faith objectors without discouraging good-faith ones).

22.     CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member involves the opportunity cost of not having time to pursue a meritorious objection in another case. That is especially true in this case, where CCAF time commitment may be especially intensive. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

23.     While I am often accused of being an "ideological objector," the ideology of the Center's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits

of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, including in testimony before state and federal legislative subcommittees, and I have never asked for an end to the class action, just proposed reforms for ending the abuse of class actions and class-action settlements; I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my certiorari petition filed in 2015 in *Frank v. Poertner*. I was elected to membership of the American Law Institute in 2008. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food.

24.     On October 1, 2015, after consultation with its board of directors and its donors, the Center merged with the much larger Competitive Enterprise Institute ("CEI"), to take advantage of the economies of scale realized by eliminating some of the enormous fixed costs required for bureaucratic administration of and regulatory compliance by non-profits. The Center was on financially sound footing, and consistently growing its assets faster than its spending, but a disproportionate amount of attorney time was taken up with non-litigation tasks, and we were not large enough to justify hiring full-time communications or fundraising or regulatory-compliance staff, which I felt was limiting our effect.

25.     Prior to its merger with CEI, the Center never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than the Center, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. In the event of a breach of this commitment, I am permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CEI has honored that commitment.

26.     None of the corporate donors to CEI have earmarked contributions to CCAF. I am unaware of whether there exist any corporate donors to CEI who take a position on the underlying litigation in this case, though it is possible one exists.

27.     For example, I am personally the objector-appellant in a pending Ninth Circuit appeal against the *cy pres* settlement of a corporate donor to CEI who has contributed substantially to CEI. No one at CEI has complained that I am currently prosecuting that appeal against the donor, sought to interfere with the pending appeal, or even told me that I was adverse to the donor. I only discovered that information by happenstance when looking at the corporate donor's website.

28.     Similarly, CEI represented an objector to the massive Volkswagen diesel MDL settlement, arguing that the settlement structure short-changed class members by hundreds of millions of dollars. I learned only after a plaintiffs' attorney opposed our motion for leave to file an *amicus* brief in that case that Volkswagen had previously donated to CEI. No one at CEI had told me Volkswagen was a donor, or asked me to refrain from litigating against a donor's interests.

29.     My understanding is that CEI's litigation history includes several lawsuits against the interests of some of its corporate donors. Based on this and based on my own experience working at CEI since 2015, I have every confidence that CCAF will continue to have the autonomy for which I negotiated.

## My involvement with the *Boston Globe* article

30.     On or about November 4, 2016, Andrea Estes of the *Boston Globe* contacted me and asked me several questions about the *State Street* fee request.

31.     I spent a great deal of time that day and over the next several weeks discussing with Ms. Estes class action fee requests and the tactics attorneys sometimes use to maximize their own recovery. I agreed to analyze the fee application. I provided Ms. Estes a memo identifying problems with the fee application on November 13, 2016. The report is necessarily incomplete because, though the fee request had hundreds of pages of exhibits, it was nevertheless opaque in many critical areas. A true and correct copy of that memo is attached as Exhibit 1.

32.     On November 23, 2016, Ms. Estes emailed me and told me that Labaton had requested that they be permitted to look at my memo. I gave her that permission. Ms. Estes told me that she provided the memo that day to Labaton's public-relations person, Diana Pisciotta. If this is

correct, Labaton and its agents have had access to the substance of CCAF's challenge to their fee request for nearly three months.

33.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 17, 2017, in Washington, DC.

_____
Theodore H. Frank

**Certificate of Service**

I certify that on February 17, 2017, I served a copy of the above on all counsel of record by filing a copy via the ECF system.

Dated: February 17, 2017

/s/ Ellen Rappaport Tanowitz
Ellen Rappaport Tanowitz



1310 L Street, NW, 7th Floor      202 331 1010 *main*
Washington, DC 20005             202 331 0640 *fax*
cei.org

Date:   November 13, 2016
From:   Ted Frank
To:     Andrea Estes
Re:     *ATRS v. State Street Bank & Trust Co.*, No. 11-cv-10230-MLW (D. Mass.)

## Executive Summary

Per your request, I have reviewed the fee request and associated papers in the *State Street* case. Had a class member contacted my organization and retained us to object on his or her behalf, we would have objected to the fee request as excessive in terms of lodestar, multiplier, and percentage of the fund requested. The Court awarded $75.8 million in fees and expenses. A more appropriate number would have been approximately $41 million, and perhaps as low as $27.5 million, and in no circumstances more than $55 million. In other words, class counsel received between $20 million and $48.3 million more than they should have.

This estimate is from the information disclosed in the fee request; relevant information that we have used in the past to object to a fee request was not disclosed, and we would have sought discovery of that information. Such discovery might have demonstrated additional grounds for fee reductions.

In a similar case with similar exaggerations, *In re Citigroup Securities Litigation*, our objections achieved a fee reduction of tens of millions of dollars that instead went to class members.

You also asked me whether there is any precedent for the post-judgment November 10 letter of David Goldsmith to Judge Wolf. I have never seen such a letter presented after a judge has already ruled upon a fee request. If discovery were permitted and taken, my strong suspicion is that it would show that the letter was prompted by your inquiries to the firms about the fee request.

## My Experience

In 2009, I founded the Center for Class Action Fairness in Washington, DC, which became part of the Competitive Enterprise Institute in 2015. Operating on a shoestring budget, we've won over $100 million for class members by challenging abusive settlement practices and fee requests, including several landmark rulings in federal appellate courts requiring stricter scrutiny protecting class members. I graduated the University of Chicago Law School in 1994, and am an elected member of the American Law Institute. Adam Liptak of the *New York Times* has written that I am the leading critic of abusive class-action settlements. I regularly speak before legislative committees, law schools, and lawyer groups about these issues.

## Scope of Review

I reviewed the following documents in full or in part:

8.     Memorandum for appointment of interim lead counsel (April 7, 2011)
71.    Stipulation and joint motion to continue stay (May 30, 2014)



1310 L Street, NW, 7th Floor    202 331 1010 main
Washington, DC 20005          202 331 0640 fax
cei.org

89.      Settlement (July 26, 2016)
97.      Preliminary Approval Order (August 11, 2016)
102.     Motion for Fees (September 15, 2016)
103-1.   Memorandum in support of motion for fees (September 15, 2016)
104.     Sucharow Declaration (September 15, 2016)
104-15.  Sucharow Declaration (September 15, 2016)
104-16.  Bradley Declaration (September 15, 2016)
104-17.  Chiplock Declaration (September 15, 2016)
104-24.  Master Chart (September 15, 2016)
104-31.  Fitzpatrick Article
108.     Reply in Support of Motion for Fees (October 21, 2016)
111.     Order (November 2, 2016)
116.     Letter (November 10, 2016)

You provided me with a spreadsheet partially summarizing staff attorney time, but I ultimately generated my own, which I attach.

## Fee Request

In a typical fee request, plaintiffs' attorneys justify the request by asking for a certain percentage of the fund, and cross-check it by presenting their hours expended on the case ("the lodestar"), or vice versa. Under either method, *State Street* class counsel substantially and objectionably exaggerated their request.

## Percentage of the Fund

Class counsel requested 24.85% of the $300 million fund plus expenses. They argued that this was appropriate because this was in line with the median award in all class action settlements (Dkt. 103-1 at 10-11, citing 104-31). But this claim is misleading for two reasons.

*First*, the appropriate comparison is not "all class-action settlements," but "megafund settlements," because fee awards as a percentage of the fund typically decline monotonically as the award to the class increases. The percentage of a $1 million settlement will be larger than the percentage of a $10 million settlement, which will be larger than the percentage of a $100 million settlement, and so on. Plaintiffs' own cited evidence shows that the mean fee award in a settlement of $250 million to $500 million is only 17.8%. (Dkt. 103-1 at 839.)

*Second*, this case appears to have been considerably less risky than the typical $300 million settlement. Percentages are higher if plaintiffs have litigated a case to trial or the eve of trial, or overcome summary judgment motions. None of that happened here. There was preliminary skirmishing with a motion to dismiss (something any non-frivolous complaint well grounded in law can overcome simply by making plausible factual allegations that are assumed by the court to be true for purposes of resolving the motion). Then, proceedings were immediately stayed so that the parties could engage in settlement negotiations for several years. (Dkt. 71; Dkt. 104 at ¶¶ 52-106.) While there was "confirmatory discovery" during these settlement negotiations, it is unclear the degree to which this

1310 L Street, NW, 7th Floor
Washington, DC 20005
cei.org

202 331 1010 main
202 331 0640 fax



was done to "churn" hours to increase the lodestar for a future fee request, and to what degree litigation continued after the defendant made an offer to pay the 20-cents-on-the-dollar of alleged damages that the case ultimately settled for. (Dkt. 104 at ¶ 109.) A higher contingent-fee percentage (and multiplier of lodestar) is designed to compensate class counsel for the risk that they will be unpaid in litigation, and if the defendant has made clear its willingness to settle rather than to win, class counsel is facing substantially smaller risk of being unpaid.

Assuming that this case was of average risk, an appropriate percentage would have been in the 17.8% range. If, as the record appears to indicate, class counsel faced little or no post-motion-to-dismiss risk because of the willingness of State Street to resolve the case in mediation once government investigations concluded, even an 17.8% figure would overcompensate class counsel. Asking for 24.85% while misrepresenting the Fitzpatrick report as class counsel did is, in my opinion, abusive and objectionable, though it is certainly true that some courts have chosen to award similarly oversized percentages of similarly-sized settlements. Others have not. For example, around the same time as this fee request, class counsel in *Dial Corp. v. News Corp.*, 2016 U.S. Dist. LEXIS 150528 (S.D.N.Y. Oct. 31, 2016) asked for 30% of a $244 million settlement fund. The court awarded 20%.

**Lodestar**

Class counsel also justified their fee request with a lodestar cross-check, claiming that they devoted 86,113.7 hours with a total lodestar of $41.3 million, asking for a multiplier of 1.8. The Court agreed to these amounts, an effective blended rate of over $860/hour for every partner, staff attorney, and paralegal. This is objectionable for several reasons.

*First*, if the case was destined to settle at an early stage, a 1.8 multiplier is excessive. An appropriate multiplier in a case where class counsel has a 75% chance of being paid is 1.33.

*Second*, as class counsel admitted in their November 10 letter, they double-counted over 9000 hours, exaggerating lodestar by over $4 million. Their letter claims this to be harmless error, because it merely reduces their multiplier to 2.0.

*Third,* the bulk of hours—about 49,000, over 63%—were performed by "staff attorneys" being billed for hundreds of dollars an hour, over half of the $37.3 million lodestar. These are temporary contract attorneys doing menial work reviewing documents, often with little supervision as to their efficiency or efficacy. The legal standard is that work should not be billed to the class for more than what a paying client would pay, and a paying client would pay $24 to $39/hour for this work. In practice, courts have either rubber-stamped fee requests with the 1000% markup or, as in *Citigroup*, reduced the hourly rate to $200/hour. (The *Dial Group* fee request was unusual in that class counsel admitted to using contract attorneys and asked for reimbursement at $39/hour.) We would argue for the $24 to $39/hour figure, which suggests that the correct lodestar should be reduced by over **$17.6 million** against the $37.3 million figure. This would suggest the real lodestar is **$19.7 million**, and the multiplier class counsel is requesting is actually **3.8**. With an appropriate multiplier between 1.33 and 2, the cross-check would suggest a fee of $26.2 million to $39.4 million is more



1310 L Street, NW, 7th Floor
Washington, DC 20005
cei.org

202 331 1010 *main*
202 331 0640 *fax*

appropriate, or between 8.7% and 13.1%. This analysis does not test whether paralegals were actually performing paralegal, rather than secretarial, work.

Note that in *Citigroup*, our objection obtained discovery demonstrating that there was thousands of hours of overbilling that the court ultimately eliminated from the lodestar figure. The data provided in this fee application does not permit us to analyze whether there was similar overbilling here, and whether the multiple law firms duplicated work or churned hours by having multiple attorneys perform tasks that a paying client would insist be performed by fewer attorneys. The *Dial Group* judge found substantial duplicative billing.

**Other Issues Possibly Meriting Fee Reduction**

Federal Rule of Civil Procedure 23(e) requires all agreements relating to the settlement be disclosed to the court. Paragraph 21 of the Settlement provides "Lead Counsel will in good faith promptly distribute any award of attorneys' fees and/or payment of Litigation Expenses among Plaintiffs' counsel." However, the agreement amongst the various law firms how to divvy up the lump sum awarded by the court was never disclosed to the court or the class. That undisclosed agreement may demonstrate that the law firms involved did not believe the case to be particularly risky if one or more firms was willing to accept a lower multiplier than other firms, and, if so, would be additional grounds for reducing the total award rather than accepting the 2.0 multiplier demanded by class counsel. If we had objected, we would have demanded disclosure of that agreement.

**Lack of Objections**

Class counsel makes much of the fact that no class member objected to the fee request, and the lack of objection may have encouraged the district court to avoid going through the hundreds of pages of the fee request looking for the discrepancies you and I found. (Courts that have the experience of knowing where overbilling is happening are rare; most rely upon adversarial presentation to learn of problems, and in the absence of objectors, the court only heard one side of the story.) It is worth noting that no class member had the incentive to object to the fee request. The problems with the fee request are buried deep in hundreds of pages of legal documents, and are not made clear by the notice to the class. Even though this settlement provided an average of $200,000 to class members, a successful objection reducing the fee request $20 million would have provided less than $20,000 of additional settlement funds to the objecting party—and there is no guarantee the objection would be successful. An investigation to determine whether an objection was worthwhile would have cost more than $20,000 if conducted by a private law firm, and very few private law firms have the experience of me and the non-profit attorneys who work for me what to look for, or would be willing to incur the wrath of powerful plaintiffs' firms like Lieff Cabraser.

There are barriers to objection even when a non-profit like mine can be involved. *In re Capital One TCPA Litigation* is a case where we caught Lieff Cabraser and other firms overbilling by millions of dollars and charging the class over $5,000/hour for nearly risk-free litigation. Though we achieved a $7 million reduction of fees at the district-court level, we believed we could win even more for the class on appeal. Lieff Cabraser paid my client $25,000 to drop his appeal. Legal ethics required us to



1310 L Street, NW, 7th Floor    202 331 1010 *main*
Washington, DC 20005          202 331 0640 *fax*
cei.org

follow our client's wishes, and Lieff Cabraser avoided having $10 million of excessive fees placed under appellate scrutiny.

**November 10 Letter to Court**

You also asked me whether there is any precedent for the post-judgment November 10 letter of David Goldsmith to Judge Wolf. I have never seen such a letter presented after a judge has already ruled upon a fee request. If discovery were permitted and taken, my strong suspicion is that it would show that the letter was prompted by your inquiries to the firms about the fee request. The double-counting was likely the result of sloppiness assuming that there would be no objectors' or court scrutiny of the fee request, and it wouldn't surprise me to learn that other fee requests contain similar inadvertent errors. The misrepresentation of the Fitzpatrick report and the hourly rates of the staff attorneys is, in my mind, less excusable, but class counsel would likely defend these actions by pointing to other instances where attorneys have done the same thing and were rewarded for it without consequence. Until courts sanction attorneys for overbilling, they have no incentive not to play "heads I win, tails don't count": if objectors or a court does not notice the overbilling, class counsel receives the full benefit of overbilling. Unfortunately, to date, when objectors do call overbilling to the court's attention, the only consequence is to reduce the fees to what they would have been if no overbilling had occurred. This incentivizes class counsel to "free roll" and overbill, which is precisely why everybody does it, especially since most fee requests do not receive objections at all.

My organization, with only five attorneys spending the majority of their time on this work, has many more opportunities to object to abusive class action practices than time to pursue every possible objection. We rely on the generosity of private charitable donors to pay our expenses. Furthermore, we cannot pursue an objection without a class-member client, and because of this, there are dozens of cases every year where we would wish to object, but are helpless to do anything to protect the class.

Please do not hesitate to contact me if you have any questions.

*Ted Frank*
ted.frank@cei.org
(703) 203-3848 cell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant | No. 12-cv-11698 MLW |

**CORPORATE DISCLOSURE STATEMENT OF THE COMPETITIVE ENTERPRISE INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS**

In accordance with Local Rule 7.3, *amicus curiae* Competitive Enterprise Institute's Center for Class Action Fairness discloses as follows. Competitive Enterprise Institute ("CEI") is an IRC § 501(c)(3) non-profit corporation incorporated under the laws of Washington, D.C., with its principal place of business in Washington, D.C. The Center for Class Action Fairness is a sub-unit within CEI. CEI does not issue stock and is neither owned by nor is the owner of any other corporate entity, in part or in whole. The corporation is operated by a volunteer board of directors.

Dated:  February 17, 2017          Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz (BBO No. 630710)
TANOWITZ LAW OFFICE, P.C.
1340 Centre St., Suite 103
Newton, MA 02459
Telephone: 617-965-1130
Email: ellen@tanowitzlaw.com
*Attorney for Amicus Curiae*
*Competitive Enterprise Institute*
*Center for Class Action Fairness*

**Certificate of Service**

I certify that on February 17, 2017, I served a copy of the above on all counsel of record by filing a copy via the ECF system.

Dated: February 17, 2017

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz