# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br> Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant | No. 12-cv-11698 MLW |

**THE COMPETITIVE ENTERPRISE INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS'S MOTION FOR LEAVE TO FILE *AMICUS CURIAE* RESPONSE TO COURT'S ORDER OF FEBRUARY 6 AND FOR LEAVE TO PARTICIPATE AS *GUARDIAN AD LITEM* FOR CLASS OR *AMICUS* IN FRONT OF SPECIAL MASTER**

In accordance with Local Rule 7.1, and in response to this Court's Memorandum and Order dated February 6, 2017 soliciting briefing on this matter (Dkt. 117), *amicus curiae* The Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF")[1] seeks leave of this Court (1) to file an *amicus* response to the February 6, 2017 order suggesting the appointment of a special master, and (2) to be permitted to participate during the proposed special master proceedings as either *guardian ad litem* for the class or as *amicus* for the Court.

In support of this motion, CCAF relies upon the accompanying memorandum of law, which explains why CCAF should be permitted to file a response to the Court's February 6 order and why CCAF should be permitted to participate during the proposed special master's proceedings that will reevaluate class counsel's billing records, and the declaration of Theodore H. Frank and its exhibit, attached to his motion for admission *pro hac vice*. CCAF's 13-page proposed *amicus* response to the February 6 order is also attached to this motion.

For reasons discussed in the accompanying memorandum, CCAF respectfully seeks the relief requested above.

### Request for Oral Argument

Under Local Rule 7.1(d), CCAF hereby requests that oral argument on this motion, if necessary, be held on March 7, 2017 at 10:00 am, contemporaneous with the hearing that the Court already scheduled for that time and date in its February 6 order. *Amicus's* counsel intends to attend the hearing in any event.

---

[1] Prior to October, CCAF was a standalone 501(c)(3) non-profit public-interest law firm. On October 1, 2015, the Competitive Enterprise Institute ("CEI") merged with CCAF. CCAF has become a division within CEI's law and litigation program.

Dated:  February 17, 2017

Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*

Ellen Rappaport Tanowitz
TANOWITZ LAW OFFICE, P.C.
1340 Centre St., Suite 103
Newton, MA 02459
Telephone: 617-965-1130
Email: ellen@tanowitzlaw.com

Theodore H. Frank (*pro hac vice* pending)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: 202-331-2263
Email: ted.frank@cei.org

*Attorneys for Amicus Curiae*
*Competitive Enterprise Institute*
*Center for Class Action Fairness*

**Certificate of Compliance with Local Rule 7.1(a)(2)**

I certify that on February 14, 2017 CCAF emailed counsel for Plaintiff Arkansas Teacher Retirement System and  the settlement class and counsel for Defendant State Street Corporation, in a good faith effort to narrow or resolve the issues raised in this motion.  CCAF received an email from Defendant that they did not feel the need to confer in light of the subject matter of the motion. Via telephone on the same day, CCAF attorneys conferred with class counsel in good faith effort to narrow or resolve the issues raised in this motion. Class counsel does not consent to this motion nor to the timing of its filing.


Dated: February 17, 2017


*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2017, I served a copy of the above on all counsel of record by filing a copy via the ECF system.

Dated: February 17, 2017

_/s/ Ellen Rappaport Tanowitz_
Ellen Rappaport Tanowitz

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant | No. 12-cv-11698 MLW |

## THE COMPETITIVE ENTERPRISE INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS'S *AMICUS* RESPONSE TO COURT'S ORDER OF FEBRUARY 6

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ II

TABLE OF AUTHORITIES ............................................................................... III

INTRODUCTION AND SUMMARY OF THE ARGUMENT .............................. 1

ARGUMENT ...................................................................................................... 2

I.    The role that the Court envisions for the special master is permissible under Fed. R. Civ. P.
       53. ................................................................................................................... 2

II.   The Court should appoint a guardian *ad litem* for the class, or, in the alternative, order that
       class members be notified of the current posture of the action ..................................... 3

III.  Even if there is no guardian *ad litem*, the special master's investigation scope should be
       expanded ......................................................................................................... 11

IV.   For several reasons, it is preferable to tax class counsel directly for the special master's costs,
       rather than taxing the fee fund ............................................................................. 11

CONCLUSION ................................................................................................... 14

CERTIFICATE OF SERVICE ........................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Aird v. Ford Motor Co.,*
    86 F.3d 216 (D.C. Cir. 1996) ........................................................................................13

*In re Baby Prods. Antitrust Litig,*
    708 F.3d 163 (3d Cir. 2013) ..........................................................................................9

*Bezdek v. Vibram USA, Inc.,*
    809 F.3d 78 (1st Cir. 2015) ............................................................................................5

*Bounds v. Smith,*
    430 U.S. 817 (1977) ........................................................................................................3

*Cardinal Chem. Co. v. Morton Int'l,*
    508 U.S. 83 (1993) ......................................................................................................3-4

*Cicippio-Puleo v. Islamic Republic of Iran,*
    353 F.3d 1024 (D.C. Cir. 2004) .....................................................................................4

*Commonwealth Electric Co. v. Woods Hole,*
    754 F.2d 46 (1st Cir. 1985) ..........................................................................................13

*In re Cmty. Bank of N. Va.,*
    418 F.3d 277 (3d Cir. 2005) ..........................................................................................8

*In re Continental Inc. Secs. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ...................................................................................10-11

*Cooter v. Gell & Hartmarx,*
    496 U.S. 384 (1990) ......................................................................................................10

*Dow v. Baird,*
    389 F.2d 882 (10th Cir. 1968) .......................................................................................9

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo,*
    465 F.3d 33 (1st Cir. 2006) ............................................................................................8

*Eisen v. Carlisle and Jacquelin,*
    417 U.S. 156 (1974) ......................................................................................................11

*Eubank v. Pella Corp.,*
    753 F.3d 718 (7th Cir. 2014) .........................................................................................3

*Fort Knox Music Inc. v. Baptiste,*
    257 F.3d 108 (2d Cir. 2001) ............................................................................8

*Fujiwara v. Sushi Yasuda Ltd.,*
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) ...............................................................5

*Goldberger v. Integrated Res.,*
    209 F.3d 43 (2d Cir. 2000) ..............................................................................4

*Golden Blount, Inc. v. Robert H. Peterson Co.,*
    438 F.3d 1354 (Fed. Cir. 2006) ........................................................................8

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ............................................................................6

*Haas v. Pittsburgh Nat'l Bank,*
    77 F.R.D. 382 (W.D. Pa. 1977) .......................................................................6

*In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
    517 F.3d 220 (5th Cir. 2008) ...........................................................................7

*Hill v. State St. Corp.,*
    794 F.3d 227 (1st Cir. 2015) ............................................................................4

*In re HP Inkjet Printer Litig.,*
    716 F.3d 1173 (9th Cir. 2013) ..........................................................................4

*Hoffman v. EMI Resorts, Inc.,*
    689 F. Supp. 2d 1361 (S.D. Fla. 2010) ............................................................3

*In re Johnson & Johnson Derivative Litig.,*
    2013 U.S. Dist. LEXIS 180822 (D.N.J. June 13, 2013) ...............................7-8

*Kaplan v. Rand,*
    192 F.3d 60 (2d Cir. 1999) ..............................................................................7

*Laffitte v. Robert Half Int'l,*
    376 P.3d 672 (Cal. 2016) ..................................................................................6

*Latin Am. Music Co. v. Archdiocese,*
    499 F.3d 32 (1st Cir. 2007) ............................................................................13

*Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.,*
    2015 U.S. Dist. LEXIS 125869 (E.D.N.Y. Sept. 21, 2015) .............................5

*Miller v. Mackey Int'l, Inc.,*
    70 F.R.D. 533 (S.D. Fla. 1976) ............................................................................... 6

*Morgan v. Kerrigan,*
    530 F.2d 401 (1st Cir. 1976) ................................................................................... 13

*McDowell v. Celebrezze,*
    310 F.2d 43 (5th Cir. 1962) ................................................................................... 8-9

*Mellott v. MSN Communications, Inc.,*
    492 Fed. Appx. 887 (10th Cir. 2012) ..................................................................... 10

*In re Mercury Interactive Secs. Litig.,*
    618 F.3d 988 (9th Cir. 2010) ..................................................................................... 9

*National Organization for Reform of Marijuana Laws v. Mullen,*
    828 F.2d 536 (9th Cir. 1987) ..................................................................................... 2

*Neslin v. Wells,*
    104 U.S. 428 (1882) ............................................................................................... 13

*In re Pearson,*
    990 F.2d 653 (1st Cir. 1993) ........................................................................ 2, 3, 8, 12

*Pearson v. First NH Mortg. Corp.,*
    200 F.3d 30 (1st Cir. 1999) ..................................................................................... 10

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014)) ................................................................................... 4

*Peterson v. Islamic Republic of Iran,*
    2016 U.S. Dist. LEXIS 174092 (D.D.C. Dec. 15, 2016) ......................................... 12

*Quincy V, LLC v. Herman,*
    652 F.3d 116 (1st Cir. 2011) ..................................................................................... 8

*Redman v. Radioshack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ................................................................................. 4, 9

*Rodriguez v. Disner,*
    688 F.3d 645 (9th Cir. 2012) ..................................................................................... 1

*Roger Edwards, LLC v. Fiddes & Son,*
    427 F.3d 129 (1st Cir. 2005) ................................................................................... 10

*Stauble v. Warrob, Inc.*,
     977 F.2d 690 (1st Cir. 1992) ........................................................................... 2-3

*UFCW Local 880-Retail Food v. Newmont Mining Corp.*,
     352 Fed. Appx. 232 (10th Cir. 2009) .................................................................. 7

*Ungar v. PLO*,
     599 F.3d 79 (1st Cir. 2010) ............................................................................. 10

*United States v. Northshore Mining Co.*,
     576 F.3d 840 (8th Cir. 2009) ............................................................................. 8

*United States v. Pauley*,
     321 F.3d 578 (6th Cir. 2003) ............................................................................. 9

*In re Volkswagen & Audi Warranty Extension Litig.*,
     784 F. Supp. 2d (D. Mass. 2011) ....................................................................... 7

*Weinberger v. Great Northern Nekoosa Corp.*,
     925 F.2d 518 (1st Cir. 1991) ...................................................................... 1, 4, 5

*In re World Trade Ctr. Disaster Site Litig.*,
     754 F.3d 114 (2d Cir. 2014) .......................................................................... 5-6

## Rules and Statutes

Fed. R. Civ. P. 11 ..................................................................................................... 10

Fed. R. Civ. P. 23(d)(1)(B) ..................................................................................... 2, 9

Fed. R. Civ. P. 23(h) ................................................................................................... 9

Fed. R. Civ. P. 53 ....................................................................................................... 2

Fed. R. Civ. P. 53(b)(2)(A) ........................................................................................ 2

Fed. R. Civ. P. 53(c)(1)(C) ........................................................................................ 2

Fed. R. Civ. P. 53(e) ................................................................................................... 2

Fed. R. Civ. P. 53(f) ................................................................................................... 2

Fed. R. Civ. P. 53(g)(2)(B) ...................................................................................... 12

Fed. R. Civ. P. 53(g)(3) ........................................................................................... 13

Fed. R. Civ. P. 60 ...................................................................................................................... 12

Fed. R. Civ. P. 60(b) ......................................................................................................... 8, 9, 10

Fed. R. Civ. P. 60(b)(3)............................................................................................................. 10

Fed. R. Civ. P. 60(b)(5)............................................................................................................... 3

Fed. R. Civ. P. 60(d)(3)............................................................................................................. 10

Rev. Proc. 92-59......................................................................................................................... 6

**Other Authorities**

Advisory Committee Notes to 2003 Amendments to Rule 53 ...................................... 2, 8, 13

Federal Judicial Center,
   *Manual for Complex Litigation (Fourth)* § 21.313 (2004) ................................................11

Henderson, William D.,
   *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*,
   77 TUL. L. REV. 813 (2003) ........................................................................................... 5-6

Wright, Charles Alan, *et al.*,
   *Federal Practice and Procedure*, (3d ed. 2005) ...................................................................9

*Amicus* Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF") submits this response to the February 6, 2017 memorandum and order (Dkt. 117) ("Order") suggesting the appointment of a special master, in order to voice recommendation on a few matters.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Class counsel have conceded they exaggerated the lodestar in the fee request by more than $4 million, but suggest this Court do nothing about it. Dkt. 116. As the Court noted, there are other discrepancies revealed by a *Boston Globe* story; furthermore, the memo CCAF attorney Theodore H. Frank wrote to *Boston Globe* reporter Andrea Estes about the fee request reveals still other problems. Declaration of Theodore H. Frank Exhibit 1 ("Frank Memo") (filed contemporaneously with Frank's motion for *pro hac vice* status). The questions become what can and should the Court do about this overbilling, and what can and should the Court do to investigate other potential excesses in counsel's proffered lodestar. The "should" half is easy: the Court should discharge its fiduciary obligations to exercise a "jealous regard" for class members' interest in the settlement fund, and that means conducting as rigorous as possible an examination of the proposed fee award. *Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *accord Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525-27 (1st Cir. 1991) (Selya, J).[1] Because of the current procedural posture, the "can" half is more difficult to navigate, though not insurmountable.

The Court's Order proposes to appoint former United States District Judge Gerald Rosen as a special master to investigate and then report concerning the accuracy and reliability of class counsel's representations made in the course of seeking fees last year, the reasonableness of the $74.5 million fee award and the $1.25 million expense award, and any related issues that emerge including whether any misconduct occurred and whether it should be sanctioned. Order 8, 10. The Court proposes to

---

[1] Theodore Frank's five-page single-spaced memorandum to Globe reporter Andrea Estes (attached as Exhibit 1 to Declaration of Theodore H. Frank in Support of Motion for Admission *Pro Hac Vice*) explains precisely why a reexamination of the fee award is necessary. Those reasons will not be repeated here.

confer upon the special master the power to subpoena documents, interview witnesses, and take testimony, while minimizing *ex parte* communication with the Court. Order 9. The Court proposes to pay the special master from the fee fund awarded to class counsel. Order 10.

CCAF largely endorses the Court's proposed path, with only a few substantive suggestions: 1) appointing a guardian *ad litem* to advocate to the class's interests during and after the special master proceedings; 2) charging the special master's fees to class counsel directly, in proportion to the fee they have received, rather than taxing the fee fund; 3) requiring notice to absent class members who filed claims on the common fund under the Court's Rule 23(d)(1)(B) authority if the court declines to appoint a guardian.

## ARGUMENT

**I.     The role that the Court envisions for the special master is permissible under Fed. R. Civ. P. 53.**

The Order outlines a dual role for the special master: investigating and then issuing a report and recommended disposition. Both the text of Rule 53—governing special master appointments— and the case law interpreting the rule would permit this type of assignment. Rule 53(c)(1)(C) contemplates that, even without an appointment order, the master has authority to conduct an evidentiary hearing, compel, take, and record evidence. Rule 53(b)(2)(A) allows the appointing order to specify particular "investigation or enforcement duties." The subsequent report and recommendation is an implicit expectation of most if not every special master under Rule 53(e) and (f).

The issue is slightly more complicated because the Court intends to appoint a special master post-judgment. A post-judgment "master's role in enforcement may extend to investigation in ways that are quite unlike the traditional role of judicial officers in an adversary system." Advisory Committee Notes to 2003 Amendments to Rule 53. In *National Organization for Reform of Marijuana Laws v. Mullen*, the Ninth Circuit held that it was a valid exercise of discretion for the district court to delegate to the special master "the power to act as investigator as well as hearing officer." 828 F.2d 536, 544-45 (9th Cir. 1987) (adopting the position of Fifth Circuit decisions).  Likewise, the First Circuit has upheld a "circumspect" post-judgment special master appointment for "limited

investigatory and advisory purposes." *In re Pearson*, 990 F.2d 653, 659 n.7 (1st Cir. 1993) (Selya, J.); *see also Stauble v. Warrob, Inc.*, 977 F.2d 690, 698 (1st Cir. 1992) (special master appointment would be warranted for "consummatory, remedy-related issues (such as, say, the performance of an accounting)"); *Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1366 (S.D. Fla. 2010) (appointment for investigation and recommendation).

*Pearson* is particularly significant because it ratified a district court's *sua sponte* decision to appoint a special master post-settlement to investigate whether an ongoing consent decree should be modified. 990 F.2d at 659. The referral for purposes of investigation and recommendation was permissible, even "concinnous," because it was "more akin to rendering mere assistance to the court" than to impermissibly abdicating the adjudicatory function. *Id.* Even though the district court in *Pearson* failed to provide advance notice of the special master appointment to the plaintiffs, that was not sufficient to constitute an abuse of discretion. *Id.* at 660. Moreover, *Pearson* affirmed the use of a special master without determining whether after the special master finished its investigation, the district court would have the *sua sponte* authority to modify the consent decree under Rule 60(b)(5). *Id.* at 659 n.7.

Thus, the Court has the authority to appoint a special master to conduct the necessary investigation of class counsel's fee petition and related issues.

## II.    The Court should appoint a guardian *ad litem* for the class, or, in the alternative, order that class members be notified of the current posture of the action.

Allowing CCAF to file an *amicus* response to the Court's February 6 order is a band-aid but it is not a permanent cure, because the lack of adversarialness will reemerge during any proceedings in front of the special master. Just like a district court evaluating a settlement without objectors, a judge revaluating fee submissions on an *ex parte* basis is put at an inherent "disadvantage." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). "Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation." *Bounds v. Smith*, 430 U.S. 817, 826 (1977). To reintroduce a thorough-going adversarial presentation of the issues, courts routinely appoint *amici* to argue on behalf of the unrepresented side. *See, e.g., Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 104 (1993) (Scalia, J., concurring) ("[W]hen faced with a complete lack of adversariness"

it is common practice for federal courts to "appoint[] an amicus to argue the unrepresented side." (listing Supreme Court cases); *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1030 (D.C. Cir. 2004).

Again, the lack of adversarial process is doubly problematic in the class action context where conflicts of interest between class counsel and class members are endemic. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("acute conflict of interest"); *Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) ("built-in conflict of interest"); *Inkjet*, 716 F.3d at 1178 ("the interests of class members and class counsel nearly always diverge."). Attorneys' fees disputes in an aggregate litigation context present a prototypical situation warranting third-party appointments. In certain cases, the parties negotiate "clear sailing" settlement clauses whereby the defendant agrees not to oppose class counsel's fee; thus "depriv[ing] the court of the advantages of the adversarial process." *Weinberger*, 925 F.2d 518, 525. Confronting an otherwise *ex parte* appeal from class counsel, the First Circuit in *Weinberger* granted the Maine Attorney General leave to file a brief and participate in oral argument as an amicus opposing class counsel's appeal. *Id.* at 525 n.8. The *Weinberger* opinion itself reflects the Maine AG's generalized "concern that that negotiated attorneys' fees in plaintiffs' class actions can be a potential source of abuse." *Id.*

But even without an explicit "clear sailing" clause, a common fund settlement structure results in the same "diluted—indeed, suspended" "adversary system." *Goldberger v. Integrated Res.*, 209 F.3d 43, 52 (2d Cir. 2000). After a common fund all-in sum has been negotiated, defendants care not how the settlement fund is divided, and individual class members lack the incentive to intervene simply in hopes of a "miniscule *pro rata* gain." *Id.* at 52-53 (citing *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992)); Frank Memo 4; *see also Hill v. State St.* Corp., 794 F.3d 227, 231 (1st Cir. 2015) ("it is hard to see why defendants would have cared very much how the money they paid was divided"). Lay class members were especially unlikely to object here because of the lack of adequate disclosure in the moving fee papers—especially ironic in a case complaining that class members were the victims of unfair and deceptive practices. "[T]he conflict between a class and its attorneys may be most stark

where a common fund is created and the fee award comes out of, and thus directly reduces, the class recovery." *Weinberger*, 925 F.2d at 524. Thus, recently the Second Circuit appointed *amicus* counsel to argue in support of the district court's decision to limit contingency fees. *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 121 n.4 (2d Cir. 2014). There, *amicus* counsel vindicated the district court's concern that "overcompensation of attorneys would take away money from needy plaintiffs, and…[its] rightful[] sensitiv[ity] to the public perception of overall fairness." *Id.* at 127.

Through its oversight responsibility, the court itself assumes a derivative fiduciary obligation as a "guarantor of fairness" to class members. *Weinberger*, 925 F.2d at 525 (1st Cir. 1991). That "obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services"; instead, it must exercise the "closest and most systematic scrutiny" *Id.* at 525-26. Too often though, an *ex parte* unopposed fee proceeding leads to a rubber stamping of class counsel's proposed fee order. *See, e.g., Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, 2015 U.S. Dist. LEXIS 125869, at *2 (E.D.N.Y. Sept. 21, 2015) ("Without the adversarial process, there is a natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs' counsel, and be done with the matter"). That in turn, leads to "proposed orders masquerading as judicial opinions" and ultimately, an entire self-sustaining jurisprudence that has become "so generous to plaintiffs' attorneys." *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014). There is no better time than now to break the deleterious cycle.

Just as "meritorious objectors can be of immense help to a district court in evaluating the fairness of a settlement," so too can an appointed class guardian aid in scrutinizing fee submissions. *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 n.3 (1st Cir. 2015). To avoid an unenlightening one-sided reexamination of the issues (to the detriment of absent class members), this Court should appoint a *guardian ad litem* to represent the class's interests in front of the special master. "Because the common-fund doctrine places the plaintiff's counsel in a position that is directly adverse to the class, a court can use its supervisory authority under Rule 23 to appoint a guardian ad litem to represent the class on the issue of attorneys' fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of*

*Collusion in Class Action Settlements*, 77 TULANE L. REV. 813, 817 (2003); *e.g., Gottlieb v. Barry*, 43 F.3d 474, 490 (10th Cir. 1994) (endorsing possibility of *guardian ad litem*, though holding it not required); *Miller v. Mackey Int'l, Inc.*, 70 F.R.D. 533, 535 (S.D. Fla. 1976) (appointing *guardian ad litem* to act on behalf of class members in conjunction with class counsel's fee motion); *Haas v. Pittsburgh Nat'l Bank*, 77 F.R.D. 382, 383 (W.D. Pa. 1977) (same). This enables a "genuinely adversarial process" and "serve[s] to enhance the accuracy and legitimacy of fee awards." *Laffitte v. Robert Half Int'l., Inc.*, 376 P.3d 672, 691 (Cal. 2016) (Liu, J., concurring).

This guardian *ad litem* need not be CCAF, but CCAF is willing to accept the responsibility and offers at least two distinct advantages. One concern about appointing a *guardian ad litem* is that doing so will encourage attorneys to stir up litigation for fees: who will watch the watchmen? CCAF is insulated from this concern by the inherent protection of tax law governing § 501(c)(3) non-profits. Tax law prohibits CEI from covering more than half of its long-term program expenses with attorneys' fees, or considering the receipt of fees in its case-selection decisions. Rev. Proc. 92-59. Thus, CCAF is willing to serve as guardian at whatever rate this Court sets in advance, be it lodestar, a blended court-appointed rate below lodestar, a single-digit percentage of any class recovery, or even, if the Court feels it to be the best course, *pro bono* without compensation.[2] *Second*, CCAF's experience—deriving from involvement in dozens of cases involving class action settlement and fee proceedings, and hours of review of the fee application in this case for the *Boston Globe*—can provide an illuminating background to supplement and situate the special master's inquiry. CCAF is prepared to direct the master to precedent involving excessive fee grabs (involving, *inter alia*, the overbilling of temporary

___

[2] Moreover, the issue of guardian costs should not sway the Court against appointing a guardian who (unlike CCAF) would require a fee. Simply put, the costs would "'pale in comparison to the significant amounts of money' to be divided between plaintiffs and counsel in high-value cases." *Laffitte v. Robert Half Int'l., Inc.*, 376 P.3d 672, 691 (Cal. 2016) (Liu, J., concurring) (quoting William Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. Rev. 1435, 1455 (2006)).

contract attorneys) and discuss the evolution of fee jurisprudence, justifying the realistic fear about awarding windfall compensation to class counsel. *E.g.*, Frank Memo.

One objection to a guardian's appointment may be that the special master doesn't need any support in serving the class's interests. But that ignores the foundational premise of the American legal system: the adversary system reaches better results than does a purely inquisitional Continental system of adjudication. An *ex parte* proceeding will make things more onerous and tedious for the special master, and inevitably will make review more costly as well. A guardian's presence would relieve some of the special master's burden, more easily enable him to complete his investigation within the six month proposed period, and effectively give the class a double security: two sets of eyeballs scrutinizing class counsel's billing records. If CCAF is appointed as that guardian, CCAF's willingness to perform its services *pro bono* or on a contingent basis means that the class stands to gain much in the best case, but lose nothing in the worst case.

It is far from unprecedented to introduce adversarial presentation into special master fee proceedings. *Kaplan v. Rand*, 192 F.3d 60, 65 (2d Cir. 1999) (noting objector participation in front of special master); *UFCW Local 880-Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232, 234 n.2 (10th Cir. 2009) (same); *In re Volkswagen & Audi Warranty Extension Litig.,* 784 F. Supp. 2d 35, 38 (D. Mass. 2011), *rev'd on other grounds*, 692 F.3d 4 (1st Cir. 2012) (noting that class members were permitted an opportunity to speak in front of special master regarding fees); *see generally In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 232 n.18 (5th Cir. 2008) ("Other guidelines for minimal procedural protections appear in the federal rules governing special masters and magistrate judges, who may be asked by a district court to oversee an attorneys' fee allocation. In either situation, all interested parties present their data to the deciding officer; have limited if any right to engage in ex parte contacts; and may, on a fully developed record, seek reconsideration or modification of the allocation by the district court.") (internal citations omitted). On one occasion, CCAF was granted permission, over the opposition of class counsel in the case, to represent an absent class member in adversarial fee proceedings in front of a special master. *See In re Johnson & Johnson Derivative Litig.*, 2013

U.S. Dist. LEXIS 180822 (D.N.J. June 13, 2013) (reducing proclaimed lodestar hours by more than 20%), *adopted by district court at* 2013 U.S. Dist. LEXIS 167066 (D.N.J. Nov. 25, 2013).  More generally than just the fee context, the Advisory Committee Notes recommend that "in most settings…*ex parte* communications [between the master and] the parties should be discouraged or prohibited." Advisory Committee Notes to 2003 Amendments to Rule 53; *cf. also In re Community Bank of N. Va.*, 418 F.3d 277, 319 (3d Cir. 2005) (criticizing *ex parte* determinations into settlement fairness that excluded objectors).

Adversarial presentation is especially helpful here, because the overbilling here involves systematic actions by class counsel common to class-action fee requests that the special master has no reason to be familiar with and may not notice in the course of an *ex parte* proceeding where he is only hearing one side of the issue. While the *Boston Globe* article superficially spots some issues with the fee request in a story written for its lay audience in the limited space of a Sunday newspaper, and this Court has demonstrated a willingness to require investigation of those issues, the Frank Memo demonstrates that there are other problems and potential problems with the fee request well beyond the scope of the *Boston Globe* article and the Court's proposal in Dkt. 117.

Maybe even more significantly, there is a fundamental procedural need for a guardian to represent the class's interests. As mentioned above, *In re Pearson* declined to answer whether the district court at the conclusion of a special master's could *sua sponte* reopen the judgment and modify the underlying consent decree. 990 F.2d at 659 n.7. Hewing to the same course as *Pearson*, more recent First Circuit decisions have also left unresolved the question of whether district courts may issue Rule 60(b) orders on their own initiative. *Quincy V, LLC v. Herman*, 652 F.3d 116, 121 (1st Cir. 2011); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 (1st Cir. 2006). While the majority consensus of other circuits is that that *sua sponte* orders are allowable, there is a contrary minority view. *Contrast United States v. Northshore Mining Co.*, 576 F.3d 840, 847 (8th Cir. 2009) (allowing a district court to grant Rule 60(b) relief *sua sponte*); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1359 n.1 (Fed. Cir. 2006) (same); *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001) (same); *McDowell v.*

*Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (same), *with United States v. Pauley*, 321 F.3d 578, 581 n.1 (6th Cir. 2003) (prohibiting the granting of relief under Rule 60(b) in the absence of a motion); *Dow v. Baird*, 389 F.2d 882, 884-85 (10th Cir. 1968) (same). Class members rights should not be wagered on the First Circuit following the majority rule of a circuit split if it can be helped.

Particularly if the Court declines to appoint a class guardian, the Court should strongly consider requiring class counsel to notify absent class members of the current status of the proceedings, thereby giving them an opportunity to voice their opinions and even to intervene. *See* Fed. R. Civ. P. 23(d)(1)(B)(i)-(iii). As a general matter, whenever a court is contemplating "material alterations to the settlement," "[c]lass members should be notified." *In re Baby Prods. Antitrust Litigation*, 708 F.3d 163, 176 n.10 (3d Cir. 2013). This principle applies to matters of class counsel's fees as well, because under Rule 23(h), class members are entitled to accurate, complete notice and a fair opportunity to object to counsel's fee requests. *See, e.g., In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *accord Redman v. Radioshack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014). Because class counsel's initial fee accounting and fee motion were admittedly inaccurate, to date class members still not received the adequate 23(h) notice that they are due. *See, e.g.* Charles Alan Wright *et al., Federal Practice and Procedure* § 1796.6 (3d ed. 2005) ("A proposed notice that is incomplete or erroneous or that fails to apprise the absent class members of their rights will be rejected as it would be ineffective to ensure due process."). As a salubrious byproduct of sending notice now, one or more class members might feel encouraged to retain counsel, to intervene for purposes of filing a 60(b) motion, or for other beneficial purposes. If CCAF is not appointed a formal guardian for the class, the class's notice could be used to alert class members to the possibility of *pro bono* representation from CCAF. At a minimum, the notice should reference the Boston Globe exposé, describe class counsel's confession of error, explain the Court's intentions for further proceedings, and invite class members to comment.

Without a 60(b) motion to modify the fee award, *sua sponte* disciplinary sanction and disgorgement would remain another option within the jurisdiction of the court.[3] Still, sanctions are a more severe remedy subject to more exacting appellate review due to the reputational harm they could inflict. Class counsel, for example, will likely defend against any potential disciplinary sanction by arguing that exaggerated billing practices are commonplace among practitioners, and countless courts have approved similar submissions in the past, albeit mostly in similar *ex parte* proceedings with similar lack of notice to the court. A 60(b)(3) motion undoing the fee award on the basis of "fraud," "misrepresentation," or "misconduct" appears to be the more ideal vehicle to remedy the harm to the class in this instance.[4] *See Roger Edwards, LLC v. Fiddes & Son*, 427 F.3d 129, 134 (1st Cir. 2005) ("fraud perpetrated in the course of litigation interferes with the process of adjudication, and it is this kind of litigation-related fraud that principally concerns Rule 60(b)(3)'s fraud provision."). Factual findings undergirding a 60(b) order are only reviewed on appeal for clear error,[5] in contrast to the mixed questions of law and fact regarding a typical Rule 11 sanction.

Pragmatic considerations counsel in favor of appointing a guardian *ad litem* and, if not, then sending supplemental notice to class members. "When lawyers request fees from a class settlement fund; they are not like adversaries in litigation; they are like artists requesting a grant from the National Endowment for the Arts." *In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). "If we are

---

[3] *See, e.g., Cooter v. Gell & Hartmarx*, 496 U.S. 384, 395 (1990) (district court retains jurisdiction to issue Rule 11 sanctions with respect to misconduct occurring before dismissal); *see also Mellott v. MSN Communications, Inc.*, 492 Fed. Appx. 887, 890 (10th Cir. 2012) (court retains jurisdiction to vindicate its inherent authority).

[4] CCAF does not mean to exclude the other subsection of Rule 60, as valid potential avenues to reopen the judgment. For example, Rule 60(d)(3) reserves the court's power to "set aside a judgment for fraud on the court." Fraud on the court is an "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter" or an "intentional deflecting of the Court from knowing all the facts necessary to make an appropriate judicial decision on the matter before it." *Pearson v. First NH Mortgage Corp.*, 200 F.3d 30, 37 (1st Cir. 1999) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) and *In re Pearson*, 210 B.R. 500, 501 (Bankr. D.N.H. 1997)).

[5] *Ungar v. PLO*, 599 F.3d 79, 83 (1st Cir. 2010).

asked to do nonadversary things, we need different procedures"; "the appointment of a special master to advise the court is an obvious possibility." *Id.* CCAF respectfully suggests that the Court also try to reintroduce adversary process through appointment of a class guardian or through sending notice to absent class members.

### III. Even if there is no guardian *ad litem*, the special master's investigation scope should be expanded.

The Court's order focuses on the issues identified by the *Boston Globe* story. That story was based in part on Theodore H. Frank's November 13 memorandum to *Boston Globe* Andrea Estes, written at her request. The Frank Memo (Exhibit 1 to the Declaration of Theodore H. Frank, filed contemporaneously) identifies several objectionable issues with the fee request that were not included in the *Boston Globe* story. *E.g., compare* Dkt. 103-1 at 10-11 (asserting empirical study found mean awards of 23.5% to 25.7%) *with* Dkt. 104-31 at 839 (17.8% mean for relevant comparison of megafund settlements) *and In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (same). Though class counsel has had access to the Frank Memo since November 23 (Frank Declaration ¶ 32), they did not flag any of its issues for the Court, and cannot be expected to flag them for the special master. The special master should be free to investigate issues identified as problems or potential problems in the Frank Memo.

### IV. For several reasons, it is preferable to tax class counsel directly for the special master's costs, rather than taxing the fee fund.

The Court's order proposes to compensate the special master "from the $74,542,250 awarded to plaintiffs' counsel." Order 10. For several reasons, CCAF recommends that instead of debiting the fee fund, the Court's appointment order should tax the master's costs to class counsel directly, divided amongst counsel in proportion to the funds they have received from the fee fund.[6] First, a fair reading

---

[6] As with the special master's fees, equity dictates that the costs of renoticing the class should be borne by class counsel: "[t]hose who made the misstatements should bear the costs of a notice to correct misstatements." Manual for Complex Litigation (Fourth) § 21.313 (2004). Equity aside, law also dictates that it is the plaintiffs who generally must bear the costs of notifying the class. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177-78 (1974).

of the settlement makes it seem doubtful that the fee fund currently has any funds in it at all. *See* Stipulation of Agreement and Settlement (Dkt. 89) ¶19, 21 ("Attorneys' fees, Litigation Expenses, and Service Awards, as awarded by the Court, shall be paid from the Class Escrow Account to the Lead Counsel Escrow Account immediately upon award by the Court…. Unless otherwise ordered by the Court, and subject to the provisions of the Lead Counsel Escrow Account, Lead Counsel will in good faith promptly distribute any award of attorneys' fees and/or payment of Litigation Expenses among Plaintiffs' Counsel"). Thus, although Fed. R. Civ. P. 53(g)(2)(B) allows the master's compensation to be paid "from a fund or subject matter of the action within the court's control," it is unclear whether there is a fee fund within the Court's control from which to draw.

Even if the fee fund has not yet been distributed, it is not certain that it is within the jurisdiction of the court to divert funds out of it. The February 6 Order notes that in the Court's final judgment it "retained jurisdiction over, among other things, the determination of attorneys' fees and other matters related or ancillary to them." Order 8 (citing Dkt. 110 at 10). But that final judgment preceded the final order on fees, which only retains jurisdiction "over the subject matter of the Class Actions and over all parties to the Class Actions, including the administration and distribution of the Net Class Settlement Fund to Settlement Class Members." Dkt. 111 at 5. While a colorable reading of this language could cover jurisdiction over the fee fund, but there we find still another issue.

The Fee Order of November 2nd is a final order from which no appeal was taken within the allotted 30 days. As one would expect, the settlement itself does not provide that the fee fund may be used to pay the special master. *See Peterson v. Islamic Republic of Iran*, 2016 U.S. Dist. LEXIS 174092 (D.D.C. Dec. 15, 2016) (declining to charge the master's fees to the qualified settlement fund when said fund did not provide for such charges). A special master appointing order that charges fees to that fund could effectively be construed as a reopening and modification of that final judgment. *Cf. In re Pearson*, 990 F.2d 653, 659 n.7 (1st Cir. 1993) (where defendant agreed to defray the master's fees, "we cannot say, on the record as it currently stands, that the district court's action is tantamount to a gratuitous modification of the consent decrees."). Again, this raises the specter of *sua sponte*

modifications, but is doubly problematic currently because it would be done before the necessary finding of any Rule 60 predicate.

Given the thicket of thorny issues surrounding ordering payment to originate from the fee fund, it is preferable to directly tax the costs of the master against class counsel. "A party whose unreasonable behavior has occasioned the need to appoint a master…may be charged all or a major portion of the master's fees." Advisory Committee Notes to 2003 Amendments to Rule 53. "The district court has broad discretion…in determining which of the parties to charge." *Morgan v. Kerrigan*, 530 F.2d 401, 427 (1st Cir. 1976); *accord Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 43 (1st Cir. 2007). Class counsel may be liable for these costs. *Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir. 1996) (affirming district court's decision to tax class counsel for special master's costs as the losing party in the case).

And so they should be liable here. It light of the fact that class counsel's admitted billing practices have occasioned the need for a special master, it is class counsel that should foot the bill. *Neslin v. Wells*, 104 U.S. 428, 437 (1882) ("equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned."); *c.f. also Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985) ("Outside-chance opportunity for a megabucks prize must cost to play."). The order regarding allocation of the master's payment may be subject to later modification should unforeseen circumstances arise. Fed. R. Civ. P. 53(g)(3). But at least for now, class counsel has already admitted $4 million of overbilling and nevertheless proposes no consequence. It is only fair to have them cover the fees of a master's services in recommending an appropriate consequence.

## CONCLUSION

For the foregoing reasons, in addition to appointing a special master, CCAF recommends appointing a guardian *ad litem*, and ordering class counsel directly responsible for the master's costs. If a guardian *ad litem* is not appointed, CCAF recommends supplemental notice to class members who have filed claims on the common fund.

Dated: February 17, 2017

Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz (BBO No. 630710)
TANOWITZ LAW OFFICE, P.C.
1340 Centre St., Suite 103
Newton, MA 02459
Telephone: 617-965-1130
Email: ellen@tanowitzlaw.com

Theodore H. Frank (*pro hac vice* pending)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: 202-331-2263
Email: ted.frank@cei.org

*Attorneys for Amicus Curiae*
*Competitive Enterprise Institute*
*Center for Class Action Fairness*

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2017, I served a copy of the above on all counsel of record by filing a copy via the ECF system.


Dated: February 17, 2017


/s/ Ellen Rappaport Tanowitz
Ellen Rappaport Tanowitz