**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant | No. 12-cv-11698 MLW |

**THE COMPETITIVE ENTERPRISE INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE *AMICUS CURIAE* RESPONSE TO COURT'S ORDER OF FEBRUARY 6 AND FOR LEAVE TO PARTICIPATE AS *GUARDIAN AD LITEM* FOR CLASS OR *AMICUS* IN FRONT OF SPECIAL MASTER**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................... II

**TABLE OF AUTHORITIES** .............................................................................................. III

**INTRODUCTION** ............................................................................................................... 1

**INTEREST OF AMICUS CURIAE** ................................................................................... 2

**ARGUMENT** ....................................................................................................................... 4

I.     CCAF should be permitted to file an *amicus* response to the Court's February 6 order ........... 4

II.    To fully remedy the adversarial deficit, CCAF should be permitted to participate as *guardian ad litem* for the class, or in the alternative as *amicus curiae*, during the proceedings in front of the special master. ...................................................................................................................... 8

**CONCLUSION** .................................................................................................................. 13

**CERTIFICATE OF SERVICE** ........................................................................................ 14

# TABLE OF AUTHORITIES

<u>Cases</u>

*Animal Prot. Inst. v. Martin,*
    2007 U.S. Dist. LEXIS 13378 (D. Me. Feb. 23, 2007) ................................................... 4

*In re Baby Prods. Antitrust Litig,*
    708 F.3d 163 (3d Cir. 2013) ......................................................................................... 3

*In re BankAmerica Corp. Secs. Litig.,*
    775 F.3d 1060 (8th Cir. 2015) ...................................................................................... 3

*Bethune Plaza, Inc. v. Lumpkin,*
    863 F.2d 525 (7th Cir. 1988) ....................................................................................... 5

*Bezdek v. Vibram USA, Inc.,*
    809 F.3d 78 (1st Cir. 2015) .......................................................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig,*
    654 F.3d 935 (9th Cir. 2011) ....................................................................................... 3

*Bounds v. Smith,*
    430 U.S. 817 (1977) ..................................................................................................... 7

*In re Capital One Tel. Consumer Prot. Act Litig.,*
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................... 3

*Cardinal Chem. Co. v. Morton Int'l,*
    508 U.S. 83 (1993) .................................................................................................... 7-8

*Cicippio-Puleo v. Islamic Republic of Iran,*
    353 F.3d 1024 (D.C. Cir. 2004) .................................................................................. 8

*In re Citigroup Inc. Secs. Litig.,*
    965 F. Supp. 2d 369 (S.D.N.Y) ................................................................................... 3

*In re Continental Inc. Secs. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ....................................................................................... 7

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................................ 4

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo,*
    465 F.3d 33 (1st Cir. 2006) ........................................................................................ 11

*In re Dry Max Pampers Litig,*
    724 F.3d 713 (6th Cir. 2013) ......................................................................................2

*Edwards v. Nat'l Milk Producers Fed'n.,*
    No. 11-cv-04766 (N.D. Cal.) .....................................................................................6

*Eubank v. Pella Corp.,*
    753 F.3d 718 (7th Cir. 2014) .....................................................................................7

*Fujiwara v. Sushi Yasuda Ltd.,*
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) ........................................................................9

*Goldberger v. Integrated Res.,*
    209 F.3d 43 (2d Cir. 2000) ........................................................................................8

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ................................................................................9-10

*Haas v. Pittsburgh Nat'l Bank,*
    77 F.R.D. 382 (W.D. Pa. 1977) ..............................................................................10

*Hill v. State St. Corp.,*
    794 F.3d 227 (1st Cir. 2015) ......................................................................................8

*In re HP Inkjet Printer Litig.,*
    716 F.3d 1173 (9th Cir. 2013) ...............................................................................6, 8

*In re Johnson & Johnson Derivative Litig.,*
    2013 U.S. Dist. LEXIS 167066 (D.N.J. Nov. 25, 2013) ..........................................3

*Laffitte v. Robert Half Int'l,*
    376 P.3d 672 (Cal. 2016) .....................................................................................1-2, 10

*Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.,*
    2015 U.S. Dist. LEXIS 125869 (E.D.N.Y. Sept. 21, 2015) .....................................9

*Miller v. Mackey Int'l, Inc.,*
    70 F.R.D. 533 (S.D. Fla. 1976) ...............................................................................10

*In re Mercury Interactive Secs. Litig.,*
    618 F.3d 988 (9th Cir. 2010) .....................................................................................6

*Neonatology Assocs., P.A. v. Comm'r,*
    293 F.3d 128 (3d Cir. 2002) ...................................................................................4, 7

*In re Neurontin Mktg. and Sales Practices Litig.*,
    58 F. Supp. 3d 167 (D. Mass. 2014) ..............................................1

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    No. 05-cv-11148-PBS,
    2009 WL 2408560 (D. Mass. Aug. 3, 2009) .............................1

*NOW, Inc. v. Scheidler*,
    223 F.3d 615 (7th Cir. 2000) ...........................................5

*Ocean City Costa Rica Inv. Group, LLC v. Camaronal Dev. Group, LLC*,
    571 Fed. Appx. 122 (3d Cir. 2014) .................................11

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014)) .....................................2, 9

*Portland Pipe Line Corp. v. City of S. Portland.*,
    No. 2:15-cv-00054-JAW
    2017 U.S. Dist. LEXIS 2592 (D. Me. Jan. 9, 2017) ...................4

*Quincy V, LLC v. Herman*,
    652 F.3d 116 (1st Cir. 2011) .......................................11

*Redman v. Radioshack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ........................................8

*Richardson v. L'Oreal USA, Inc.*,
    991 F. Supp. 2d 181 (D.D.C. 2013) ..................................2

*Ryan v. CFTC*,
    125 F.3d 1062 (7th Cir. 1997) .....................................5, 7

*Strasser v. Doorley.*,
    432 F.2d 567 (1st Cir. 1970) ........................................5

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F.2d 518 (1st Cir. 1991) ....................................2, 8-9

*In re World Trade Ctr. Disaster Site Litig.*,
    754 F.3d 114 (2d Cir. 2014) .........................................9

## Rules and Statutes

Fed. R. App. P. 29..............................................................4

Fed. R. Civ. P. 60(b) ...................................................................................................11

Fed. R. Civ. P. 60(b)(3)..............................................................................................11

Rev. Proc. 92-59.........................................................................................................10

## <u>Other Authorities</u>

Estes, Andrea,
   *Critics hit law firms bills after class-action lawsuits*,
   BOSTON GLOBE (Dec. 17, 2016)...............................................................................3

Federal Judicial Center,
   *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) .......................................6

Fisher, Daniel,
   *Judge Cuts Fees in Citigroup Settlement, Citing 'Waste and Inefficiency*,
   FORBES (Aug. 1, 2013) ...........................................................................................1

Flaherty, Scott,
   *Judge Slashes $10M in Fees Over Firm's Use of Temporary Associates*,
   NEW YORK LAW JOURNAL (Jan. 3, 2017) ...................................................................1

Henderson, William D.,
   *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*,
   77 TUL. L. REV. 813 (2003) .......................................................................................9

Liptak, Adam,
   *When Lawyers Cut Their Clients Out of the Deal*,
   N.Y. TIMES (Aug. 13, 2013) ....................................................................................2

Parloff, Roger,
   *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement*,
   FORTUNE (Dec. 15, 2015) .........................................................................................3

*Securities Class Action Settlements 2015 Review and Analysis*,
   CORNERSTONE RESEARCH (2016) ..............................................................................2

Third Circuit Task Force,
   Selection of Class Counsel, 208 F.R.D. 340 (2002)....................................................1

Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF") submits this memorandum in support of its motion for leave of this Court (1) to file an *amicus* response to the February 6, 2017 order suggesting the appointment of a special master, and (2) to be permitted to participate during the proposed special master proceedings as either *guardian ad litem* for the class or as *amicus* for the Court.

## INTRODUCTION

Class counsel sought and obtained the second largest non-securities attorneys' fee in First Circuit history (from the third largest non-securities common fund settlement). Dkts. 103-1, 111. Class counsel avoided any reduction in the request by attesting to a lodestar fee multiplier of 1.8, and by misrepresenting the empirical work of Brian Fitzpatrick. *Compare* Dkt. 103-1 at 10-11 *with* Dkt. 104-31 at 839 *and In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (noting Fitzpatrick found 17.8% mean for megafund settlements). After inquiries from the *Boston Globe* relating to questionable billing practices, class counsel only then acknowledged that their attestation was false; they had double counted $4 million worth of attorney hours in their earlier submissions to the Court. Dkt. 116. The best case scenario is extreme negligence.

But the import of the lodestar issues here transcend this case. Fee submissions like class counsel's here are emblematic of systematic overbilling practices in today's large scale class action environment. *See, e.g.,* Daniel Fisher, *Judge Cuts Fees in Citigroup Settlement, Citing 'Waste and Inefficiency'*, FORBES, Aug. 1, 2013; Scott Flaherty, *Judge Slashes $10M in Fees Over Firm's Use of Temporary Associates*, NEW YORK LAW JOURNAL, Jan. 3, 2017. Such practices reinforce "perception among a significant part of the non-lawyer population…that class action plaintiffs' lawyers are overcompensated for the work that they do." Third Circuit Task Force Report, Selection of Class Counsel, 208 F.R.D. 340, 343-44 (2002). Just last year, California Supreme Court Justice Goodwin Liu entreated courts to combat this perception by zealously scrutinizing fee requests, noting that "public confidence in the fairness of attorney compensation in class actions is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 688-92 (Cal. 2016) (Liu, J., concurring). Indeed, the First Circuit

requires the same: "a fee accord in a class action should be subject to the closest and most systematic scrutiny before gaining judicial approval." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526 (1st Cir. 1991) (Selya, J.). "[P]rivate fee agreements cannot substitute for the conscientious application of the court's informed judgment to the lawyers' detailed billing records." *Id.* at 527.

This Court has a real opportunity to make an economic difference by demonstrating that overbilling will not be tolerated. Given the size of the class action settlement industry,[1] such exaggeration likely costs consumers, investors and businesses billions.

### INTEREST OF AMICUS CURIAE

Established in 2009, CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (observing that CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive."); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement.").[2] CCAF's founder has been recognized as "the leading critic of abusive class action settlements."  Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12. CCAF attorneys have won numerous appeals, many of them landmark published decisions in support of the principles that settlement fairness requires that the primary beneficiary of a class-action settlement should be the

---

[1]  The securities class action settlement industry alone amounted to more than $3 billion in 2015, and over $80 billion between 1996-2014. *Securities Class Action Settlements 2015 Review and Analysis*, CORNERSTONE RESEARCH, at 3 (2016), *Available at* http://securities.stanford.edu/research-reports/1996-2015/Settlements-Through-12-2015-Review.pdf.

[2]  On October 1, 2015, CCAF merged with the Competitive Enterprise Institute ("CEI"). CCAF has become a division within CEI's law and litigation program.

class, rather than the attorneys or third party *cy pres* recipients; and that courts scrutinizing settlements should value them based on what the class actually receives, rather than on illusory measures of relief. *E.g.*, *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). CCAF was recently appointed by the Eighth Circuit to defend a district court's decision invoking Rule 11 sanctions against class counsel for forum shopping a questionable settlement into state court contrary to absent class members' interests. *Adams v. USAA et. al.*, Nos. 16-3382, 16-3482 (8th Cir.).

Another core aspect of CCAF's work is policing fee requests, including lodestar submissions, to ensure that class counsel does not claim a windfall at the expense of class member recovery. *E.g. In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees by more than $26 million to account for a "significantly overstated lodestar"); *In re Citigroup Inc. Secs. Litig.*, No. 07-cv-9901(SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) ("Frank's objections enhanced the adversarial process and played a not insignificant role in focusing the Court on instances of overbilling."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015) (finding class counsel's $22 million fee request to exceed the market rate; awarding 30% less); *In re Johnson & Johnson Derivative Litig.*, 2013 U.S. Dist. LEXIS 167066 (D.N.J. Nov. 25, 2013) (ultimately awarding $5.3 million of overbloated $10 million fee request); *see also* Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 (calling CCAF's founder "the nation's most relentless warrior against class-action fee abuse"). *Boston Globe* reporter Andrea Estes quotes CCAF head Theodore H. Frank extensively in her December 17, 2016 article "*Critics hit law firms' bills after class-action lawsuits*" and describes him too as a "leading national critic." Dkt. 117, Ex. B. Moreover, Mr. Frank provided Ms. Estes with an extensive report ("Frank Memo," attached as Exhibit 1 to Declaration of Theodore H. Frank in Support of Motion for Admission *Pro Hac Vice* (filed contemporaneously)) detailing likely excesses of class counsel's bills.

CCAF's interest lies in advancing the interests of absent class members and vouchsafing that Rule 23 operates in a systematically fair manner. An old Italian proverb warns that "[a] lawsuit is a

fruit tree planted in a lawyer's garden." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (internal quotation omitted). CCAF makes sure that the deed to that garden remains with the class, and that class counsel remains but a faithful gardener.

## ARGUMENT

I.     **CCAF should be permitted to file an *amicus* response to the Court's February 6 order.**

There are two principal schools of thought regarding acceptance of opposed *amicus curiae* briefs. The permissive school, expounded in a Third Circuit opinion by then-Judge Alito, would allow the brief to be filed as long as the movant can demonstrate an (a) an adequate interest, (b) desirability, and (c) relevance. *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 131 (3d Cir. 2002).[3] *Neonatology* disavowed any requirement that an *amicus* be impartial, as difficult if not impossible to reconcile with the textual requirement that *amicus* have an interest in the case. *Id.* Instead, *Neonatology* concluded that, for a number of reasons, "it is preferable to err on the side of granting leave." *Id.* at 133. First, there is the "eminently practical" reason that "if denied, the court may be deprived of the advantage of a good brief, but if granted, the court can readily decide for itself whether the brief is beneficial. If beneficial, the court will be edified; if not, the brief will be disregarded." *Animal Prot. Inst. v. Martin*, 2007 U.S. Dist. LEXIS 13378, at *10 (D. Me. Feb. 23, 2007) (following *Neonatology*). Second, "[a] restrictive policy with respect to granting leave to file may also create at least the perception of viewpoint discrimination" unless the court follows a blanket policy of denying any amicus." *Neonatology*, 293 F.3d at 133. Third, "[a] restrictive policy may also convey an unfortunate message about the openness of the court." *Id.*

Judge Posner, conversely, advocates for the restrictive school that would only permit an amicus filing "when a party is not represented competently or is not represented at all, when the

---

[3] Although *Neonatology* was interpreting Fed. R. App. P. 29, given the lack of a local rule regarding amicus participation, it is appropriate to import the *Neonatology* standard to district court proceedings. *See, e.g., Portland Pipe Line Corp. v. City of S. Portland*, 2:15-cv-00054-JAW, 2017 U.S. Dist. LEXIS 2592 (D. Me. Jan. 9, 2017) (granting leave to file); *Animal Prot. Inst. v. Martin*, 06-cv-128-B-W, 2007 U.S. Dist. LEXIS 13378 (D. Me. Feb. 23, 2007) (same).

amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997) (in chambers opinion); *accord NOW, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000). *Ryan* worries that *amicus* participation too often imposes unnecessary costs upon the court without concomitant benefit. *Id.*[4]

The First Circuit has not addressed the subject for nearly fifty years. There it recognized that "the acceptance of amicus briefs is within the sound discretion of the court" and that an amicus cannot be expected to be impartial. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970). Otherwise, *Strasser* takes a skeptical approach, aligned more with Judge Posner's camp. "[A] district court lacking joint consent of the parties should go slow in accepting…an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." *Id*. Nonetheless, *Strasser* implies that unsolicited *amicus* participation, focusing on legal questions, and in support of a previously unrepresented or underrepresented party can be beneficial. *Id.*

It matters little for this motion which of the above standards applies here, because CCAF satisfies all of them. Take the most restrictive standard, the disjunctive three-part test espoused by *Ryan.*

CCAF possesses a special interest in virtue of representing class members across the nation, for whom an equitable attorneys' fee jurisprudence matters. *See e.g., In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) (reversing for failure to comply with attorneys' fees limitations prescribed

---

[4] It is not clear that Judge Posner's view is the universal in the Seventh Circuit. *See Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988) (Easterbrook, J.) ("Participation as amicus curiae will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case is the strongly preferred option.")

by the Class Action Fairness Act of 2005). CCAF is currently representing clients in pending litigation regarding proposed exorbitant common fund fees. *Edwards v. National Milk Producers Fed'n*, No. 11-cv-04766 (N.D. Cal.). Circumscribing windfall fees is thus a highly important issue to CCAF's constituency. Second, because of CCAF's extensive experience and familiarity with complex class action fee issues, its response would aid this Court in evaluating its proposed course regarding appointment of a special master to investigate potential sanctions or reassess class counsel's attorneys' fees. As the Federal Judicial Center notes, "[i]nstitutional 'public interest' objectors may bring a different perspective...Generally, government bodies such as the FTC and state attorneys general, as well as nonprofit entities, have the class-oriented goal of ensuring that class members receive fair, reasonable and adequate compensation for any injuries suffered. They tend to pursue that objective by policing abuses in class action litigation." *Managing Class Action Litigation: A Pocket Guide for Judges*, 17 (3d ed. 2010).

CCAF's participation will be yet more helpful because neither the named plaintiffs, class counsel have or can reasonably be expected to adequately represent absent class members at this stage. In negotiations with the defendant over the size of the gross settlement, they likely protected class members' interests perfectly well. But during the fee-setting stage of a case, the relationship between class counsel and the class "turns adversarial," necessitating the Court's "jealous regard to the rights of those who are interested in the fund." *In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Class counsel has already explicitly taken the position that, despite a concession of error, their fee award should remain the same. Dkt. 116. The defendant, reasonably concerned only with its aggregate payment into the common fund, did not oppose class counsel's initial request (Dkt. 102 at 5), and has expressed no inclination to get involved now. Nor have any of the named class representatives interceded on the class's behalf.

Judge Posner himself is acutely cognizant of the "lack of adversary procedure" in this circumstance, where neither the defendant nor any individual absent class members have the incentive to resist class counsel's fee incursions. *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992)

As a result, absent class claimants' naturally-preferred position, one in favor of stringent special master review and disgorgement to the class of excess attorneys' fees, is currently unrepresented. As amicus, CCAF could provide proper support for this class-centric view. *See Ryan*, 125 F.3d at 1063; *see also Neonatology*, 293 F.3d at 132 ("To be sure, an amicus brief may be particularly helpful with the party supported is unrepresented or inadequately represented.").

CCAF's proposed response to the Court's February 6 order is attached to the contemporaneously-filed motion. CCAF requests that this Court either deem that version filed or allow CCAF leave to file it subsequently as a separate docket entry. CCAF intends to have an attorney attend the March 7, 2017 hearing to observe, and, if the Court so wishes, to discuss any ideas presented in CCAF's or the parties' responses.

Class counsel opposes this motion, claiming prejudice from the fact of the filing and the timing. This is wrong. Class counsel would not be unduly prejudiced by an *amicus* brief because they have no inherent right to avoid adversary presentation. Indeed, as a fiduciary for the class it is especially improper for them to resist efforts that provide a fair hearing to their clients. This is especially true here, because, on information and belief, class counsel's agents were given Frank's November 13 memorandum to Andrea Estes on November 23, 2016. Frank Decl. ¶ 32. We do not object if class counsel is given an opportunity to reply to CCAF's *amicus* response in addition to their February 20 filing, or if the March 7 hearing is continued to accommodate that response.[5]

We apologize in advance that this brief in support of CCAF's right to file an *amicus* brief is repetitive of many of the points we make in our proposed *amicus* brief; class counsel's insistence that they would oppose our motion to file anything requires us to make the points both in this paper and the response.

---

[5] If the March 7 hearing is rescheduled, please note that CCAF attorney Theodore H. Frank is required to be in California March 13 through March 16 for a Ninth Circuit oral argument and a series of speaking engagements arranged by the Competitive Enterprise Institute.

**II.     To remedy the adversarial deficit, CCAF should be permitted to participate as *guardian ad litem* for the class, or in the alternative as *amicus curiae*, during the proceedings in front of the special master.**

Allowing CCAF to file an *amicus* response to the Court's February 6 order is a band-aid but it is not a permanent cure, because the lack of adversarialness will reemerge during any proceedings in front of the special master. Just like a district court evaluating a settlement without objectors, a judge revaluating fee submissions on an *ex parte* basis is put at an inherent "disadvantage." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). "Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation." *Bounds v. Smith*, 430 U.S. 817, 826 (1977). To reintroduce a thorough-going adversarial presentation of the issues, courts routinely appoint *amici* to argue on behalf of the unrepresented side. *See, e.g., Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 104 (1993) (Scalia, J., concurring) ("[W]hen faced with a complete lack of adversariness" it is common practice for federal courts to "appoint[] an amicus to argue the unrepresented side." (listing Supreme Court cases); *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1030 (D.C. Cir. 2004).

Again, the lack of adversarial process is doubly problematic in the class action context where conflicts of interest between class counsel and class members are endemic. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("acute conflict of interest"); *Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) ("built-in conflict of interest"); *Inkjet*, 716 F.3d at 1178 ("the interests of class members and class counsel nearly always diverge."). Attorneys' fees disputes in an aggregate litigation context present a prototypical situation warranting third-party appointments. In certain cases, the parties negotiate "clear sailing" settlement clauses whereby the defendant agrees not to oppose class counsel's fee; thus "depriv[ing] the court of the advantages of the adversarial process." *Weinberger*, 925 F.2d 518, 525.   Confronting an otherwise *ex parte* appeal from class counsel, the First Circuit in *Weinberger* granted the Maine Attorney General leave to file a brief and participate in oral argument as an amicus opposing class counsel's appeal. *Id.* at 525 n.8. The *Weinberger* opinion itself reflects the

Maine AG's generalized "concern that that negotiated attorneys' fees in plaintiffs' class actions can be a potential source of abuse." *Id.*

But even without an explicit "clear sailing" clause, a common fund settlement structure results in the same "diluted—indeed, suspended" "adversary system." *Goldberger v. Integrated Res.*, 209 F.3d 43, 52 (2d Cir. 2000). After a common fund all-in sum has been negotiated, defendants care not how the settlement fund is divided, and individual class members lack the incentive to intervene simply in hopes of a "miniscule *pro rata* gain." *Id.* at 52-53 (citing *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992)); Frank Memo 4; *see also Hill v. State St. Corp.*, 794 F.3d 227, 231 (1st Cir. 2015) ("it is hard to see why defendants would have cared very much how the money they paid was divided"). Lay class members were especially unlikely to object here because of the lack of adequate disclosure in the moving fee papers—especially ironic in a case complaining that class members were the victims of unfair and deceptive practices. "[T]he conflict between a class and its attorneys may be most stark where a common fund is created and the fee award comes out of, and thus directly reduces, the class recovery." *Weinberger*, 925 F.2d at 524. Thus, recently the Second Circuit appointed *amicus* counsel to argue in support of the district court's decision to limit contingency fees. *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 121 n.4 (2d Cir. 2014).  There, *amicus* counsel vindicated the district court's concern that "overcompensation of attorneys would take away money from needy plaintiffs, and…[its] rightful[] sensitiv[ity] to the public perception of overall fairness." *Id.* at 127.

Through its oversight responsibility, the court itself assumes a derivative fiduciary obligation as a "guarantor of fairness" to class members. *Weinberger*, 925 F.2d at 525 (1st Cir. 1991). That "obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services"; instead, it must exercise the "closest and most systematic scrutiny" *Id.* at 525-26. Too often though, an *ex parte* unopposed fee proceeding leads to a rubber stamping of class counsel's proposed fee order. *See, e.g., Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, 2015 U.S. Dist. LEXIS 125869, at *2 (E.D.N.Y. Sept. 21, 2015) ("Without the adversarial process, there is a natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs'

counsel, and be done with the matter"). That in turn, leads to "proposed orders masquerading as judicial opinions" and ultimately, an entire self-sustaining jurisprudence that has become "so generous to plaintiffs' attorneys." *Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014). There is no better time than now to break the deleterious cycle.

Just as "meritorious objectors can be of immense help to a district court in evaluating the fairness of a settlement," so too can an appointed class guardian aid in scrutinizing fee submissions. *Bezdek v. Vibram USA, Inc.,* 809 F.3d 78, 84 n.3 (1st Cir. 2015). To avoid an unenlightening one-sided reexamination of the issues (to the detriment of absent class members), this Court should appoint a *guardian ad litem* to represent the class's interests in front of the special master. "Because the common-fund doctrine places the plaintiff's counsel in a position that is directly adverse to the class, a court can use its supervisory authority under Rule 23 to appoint a guardian ad litem to represent the class on the issue of attorneys' fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements,* 77 TULANE L. REV. 813, 817 (2003); *e,g., Gottlieb v. Barry,* 43 F.3d 474, 490 (10th Cir. 1994) (endorsing possibility of *guardian ad litem,* though holding it not required); *Miller v. Mackey Int'l, Inc.,* 70 F.R.D. 533, 535 (S.D. Fla. 1976) (appointing *guardian ad litem* to act on behalf of class members in conjunction with class counsel's fee motion); *Haas v. Pittsburgh Nat'l Bank,* 77 F.R.D. 382, 383 (W.D. Pa. 1977) (same). This enables a "genuinely adversarial process" and "serve[s] to enhance the accuracy and legitimacy of fee awards." *Laffitte v. Robert Half Int'l., Inc.,* 376 P.3d 672, 691 (Cal. 2016) (Liu, J., concurring).

This *guardian ad litem* need not be CCAF, but CCAF is willing to accept the responsibility and offers at least two distinct advantages. One concern about appointing a *guardian ad litem* is that doing so will encourage attorneys to stir up litigation for fees: who will watch the watchmen? CCAF is insulated from this concern by the inherent protection of tax law governing § 501(c)(3) non-profits. Tax law prohibits CEI from covering more than half of its long-term program expenses with attorneys' fees, or considering the receipt of fees in its case-selection decisions. Rev. Proc. 92-59. Thus, CCAF is willing to serve as guardian at whatever rate this Court sets in advance, be it lodestar, a blended

court-appointed rate below lodestar, a single-digit percentage of any class recovery, or even, if the Court feels it to be the best course, *pro bono* without compensation.[6] *Second*, CCAF's experience— deriving from involvement in dozens of cases involving class action settlement and fee proceedings, and hours of review of the fee application in this case for the *Boston Globe*—can provide an illuminating background to supplement and situate the special master's inquiry. CCAF is prepared to direct the master to precedent involving excessive fee grabs (involving, *inter alia*, the overbilling of temporary contract attorneys) and discuss the evolution of fee jurisprudence, justifying the realistic fear about awarding windfall compensation to class counsel. *E.g.*, Frank Memo.

Alternatively, CCAF is willing to participate as *amicus* in front of the special master on equivalent terms. CCAF's concern is not really the particular designation the class advocate would have, but what functional role it would be permitted. The advocate must have the ability to review class counsel's billing records, conduct discovery from class counsel, engage in and respond to motion practice and to brief relevant legal questions that arise. That said, appointing a formal guardian may be superior simply because in that event there should be no question that the class's advocate would have authority to file a motion on behalf of the class. In particular, after the special master concludes its commission, before November there will likely be a need for someone to file a Fed. R. Civ. P. 60(b)(3) motion on the class's behalf, to reopen and disgorge a portion of the final fee awarded to class counsel. In the First Circuit it is an open question whether the Court is allowed to make a Rule 60(b) motion *sua sponte. Quincy V, LLC v. Herman*, 652 F.3d 116, 121 (1st Cir. 2011); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 (1st Cir. 2006). Other circuits are divided on the question. *Ocean City Costa Rica Inv. Group, LLC v. Camaronal Dev. Group, LLC*, 571 Fed. Appx. 122, 127 (3d Cir. 2014)

---

[6] Moreover, the issue of guardian costs should not sway the Court against appointing a guardian who (unlike CCAF) would require a fee. Simply put, the costs would  "'pale in comparison to the significant amounts of money' to be divided between plaintiffs and counsel in high-value cases." *Laffitte v. Robert Half Int'l., Inc.*, 376 P.3d 672, 691 (Cal. 2016) (Liu, J., concurring) (quoting William Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. Rev. 1435, 1455 (2006)).

(cataloguing four circuits in favor and two against). Perhaps an absent class member would intervene to do so but that is not a prospect that can be counted on. The safest course is to appoint a guardian on behalf of the class who has the authority to make such motions on the class's behalf.

CCAF requests that the court appoint CCAF as a guardian to act on behalf of the class during the upcoming proceedings regarding the reevaluation of class counsel's attorneys' fees. If not, CCAF encourages the court to seek out a third-party to act as guardian or as a fee expert advocating on the class's behalf. If no guardian ad litem is presented, supplemental notice should be sent to claiming class members notifying them of these proceedings and notifying them of their right to retain counsel and intervene to seek review of the fee order.

## CONCLUSION

Based on the foregoing, CCAF respectfully moves this Court for leave to file the *amicus* response attached to this motion, and for leave to participate in any special master proceedings as guardian *ad litem* for the class or *amicus curiae*.

Dated: February 17, 2017

Respectfully submitted,

*/s/ Ellen Rappaport Tanowitz*
Ellen Rappaport Tanowitz (BBO No. 630710)
TANOWITZ LAW OFFICE, P.C.
1340 Centre St., Suite 103
Newton, MA 02459
Telephone: 617-965-1130
Email: ellen@tanowitzlaw.com

Theodore H. Frank (*pro hac vice* pending)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: 202-331-2263
Email: ted.frank@cei.org

*Attorneys for Amicus Curiae*
*Competitive Enterprise Institute*
*Center for Class Action Fairness*

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2017, I served a copy of the above on all counsel of record by filing a copy via the ECF system.


Dated: February 17, 2017

                                        /s/ Ellen Rappaport Tanowitz
                                        Ellen Rappaport Tanowitz