UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 12-cv-11698 MLW |

**MCTIGUE LAW LLP'S RESPONSE TO THE
COURT'S FEBURARY 6, 2017 MEMORANDUM AND ORDER**

McTigue Law LLP ("McTigue Law") is a firm representing plaintiffs who brought claims in this action pursuant to ERISA, 29 U.S.C. §1001 *et seq*. McTigue Law respectfully files this response to the Court's February 6, 2017 Memorandum and Order (Dkt. No. 117; "Order").[1]

McTigue Law does not object to the appointment of a special master, as discussed in the Court's Order. However, McTigue Law does request three modifications of the proposal in the Order.

## I. The Proposed Scope of the Special Master's Investigation is Too Broad

The Order proposes that the special master investigate "the accuracy and reliability of the representations that were made in connection with the request for an award of attorneys' fees and expenses, the reasonableness of the award of $74,541,250 in attorneys' fees and $1,257,697.94 in expenses, and any related issues that may emerge in the special master's investigation." (Order at 8).

McTigue Law believes the scope of the proposed investigation is too broad. All of the allegations of irregularities referenced in the Court's Order pertain exclusively to the three firms that served as co-counsel for non-ERISA Plaintiff Arkansas Teachers Retirement System: Labaton Sucharow LLP, Lieff Cabraser Heimann & Bernstein LLP, and the Thorton Law Firm LLP.[2] There have been no allegations of irregularities with respect to the fee petition of McTigue Law. McTigue Law had no co-counsel agreement with any of the three firms at issue, represented distinct clients in independently filed actions, did not employ any contract attorneys,

---

[1] Docket numbers refer to those in the captioned Arkansas Teacher Retirement System v. State Street Bank and Trust Company, No. 11-cv-10230 MLW.

[2] While the law firm of Labaton Sucharow LLP identified itself as Plaintiffs' Lead Counsel for the settlement, McTigue Law does not believe that position applies in these post settlement proceedings, especially where the firms involved clearly now have different interests.

included none in its lodestar report, did not engage in make-work document review, and had no knowledge of the alleged irregularities of the three firms at issue until after they became public. Moreover, McTigue Law's multiplier in the case is 0.90, likely far below the multipliers of the three firms at issue, and reflects that McTigue Law provided its services at a discount to the class in this case. McTigue Law thus requests that the terms of the special master's appointment be limited to an investigation of the accuracy and merit of the fee and expense petitions of the three firms at issue. Requiring McTigue Law to expend time and expenses to resolve irregularities in which it had no part, and of which it no knowledge, unnecessarily and unfairly burdens it.

## II. McTigue Law Objects to Judge Rosen and Suggests Judge Rosenbaum as an Alternative

McTigue Law objects to the appointment of Judge Rosen (ret.) as a special master in this case. McTigue Law believes the relationship between Judge Rosen and a partner, Ms. Elizabeth Cabraser, of one of the firms at issue, is of a nature that the special master's "impartiality might be reasonably questioned." See 28 U.S.C. § 455(a). Disqualification under §455(a) is appropriate where "the facts provide what an objective, knowledgeable member of the public would find to be a *reasonable* basis for doubting the judge's impartiality." *United States v. Salemme,* 164 F. Supp. 2d 49, 52 (D. Mass. 1998), quoting *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (emphasis in the original, citations omitted). "[A] reasonable person may question impartiality without the presence of any evidence that a judge is subjectively biased." *In re Bulger*, 710 F.3d 42, 46 (1st Cir. Mass. 2013) (reasonable to question the impartiality of a judge who had supervised prosecutorial actions in the same district and during some of the time of the events of the immediate criminal case, despite the court's belief in the judge's "sincerity"). The disqualification decision is balancing act that "must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to

3

prevent parties from too easily obtaining the disqualification of a judge. . . ."). *Salemme*, 164 F. Supp. 2d at 52, quoting *In re Allied-Signal*, 891 F.2d at 970 (emphasis omitted).

Ms. Cabraser worked on this case. (Dkt. #104-17, Exh A). Her firm's fee petition would be reviewed by the special master. (Dkt. #117, at 8, 11). Ms. Cabraser and the proposed special master are co-authors of a book which produces royalties semi-annually, and requires continuing collaboration. They have served on panels together at various legal events. (Dkt. #117, at Exh. D). Given these relationships, McTigue Law believes that an "objective, knowledgeable member of the public" would be justifiably concerned about the special master's ability to fairly assess the conduct of Ms. Cabraser's firm under these circumstances, despite no evidence of Judge Rosen's subjective bias. *Salemme*, 164 F. Supp. 2d at 52; *In re Bulger*, 710 F.3d at 46.

McTigue Law proposes Judge James M. Rosenbaum (ret.) be appointed as special master. See Judge Rosenbaum's biography, McTigue Declaration, Exhibit 1 ("Exh. 1"). Judge Rosenbaum is a retired federal district court judge for the District of Minnesota and a former U.S. Attorney for Minnesota. Judge Rosenbaum is a member of JAMS. McTigue Law has no personal, financial or contractual relationship with Judge Rosenbaum. (*Id.*) McTigue Law does not believe Judge Rosenbaum has any real or apparent conflicts in serving as the special master. McTigue Law believes that Judge Rosenbaum represents an unquestionable, alternate choice for special master.

### III. The Burden of Paying the Special Master's Compensation Should be Placed Solely on the Firms Whose Fee Petitions and Practices Gave Rise to the Investigation

The Order seeking comment states that the "court may order that up to $2 million [of the fee award to Plaintiffs' counsel] be returned to the Clerk of the District Court" for purposes of compensating the special master. McTigue Law respectfully requests that any such order specify that only the three firms whose fee petitions have required the investigation be liable and

4

responsible for returning these funds. As noted above, McTigue Law had no prior knowledge of or involvement with the alleged irregularities.

McTigue Law brings the following to the Court's attention. On November 21, 2016, two weeks after the Court issued its Order Awarding Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards (Dkt. #111), but before distribution, Lead Counsel Labaton Sucharow sent an email to McTigue Law and other Plaintiffs' firms. The email contained a draft agreement that purported to give Lead Settlement Counsel the right to claw back the attorney's fees, expenses and service awards previously awarded by the Court if the Court later reduced the award. It further stated that Lead Counsel would not distribute fees, expenses or service awards to any firm unless the agreement was signed by the recipient firm. McTigue Law LLP delayed and signed on December 7th when it was the only firm that had not signed. (See "Clawback Agreement", McTigue Decl., Exhibit 2.) The next day Lead Counsel distributed the funds.

McTigue Law is concerned that Lead Settlement Counsel, one of the three firms at issue, may attempt to utilize the Clawback Agreement as a means to force firms not involved in any irregularities to pay for fee reductions (or special master compensation) that result from the alleged irregularities in the fee petitions of the three firms at issue. Any attempt to do so would of course result in further litigation that would likely come before this Court. This is another reason why McTigue Law requests that the Court clarify that only the alleged defending firms will be responsible to pay the special master's compensation. McTigue Law also requests the same regarding any resulting reduction in attorney's fees that may ultimately be ordered.

Dated: February 20, 2017

Respectfully submitted,

McTIGUE LAW LLP

/s/ J. Brian McTigue
J. Brian McTigue
4530 Wisconsin Avenue, N.W.
Suite 300
Washington, DC 20036
Telephone: (202) 364-6900
Facsimile: (202) 364-9960
bmctigue@mctiguelaw.com

*Counsel for Arnold Henriquez, William Taylor, Michael Cohn, and Richard Sutherland*

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing document was filed through the ECF System on February 20, 2017 and accordingly will be served electronically upon all attorneys of record.

/s/ J. Brian McTigue