# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br> Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 12-cv-11698 MLW |

**MEMORANDUM OF LABATON SUCHAROW LLP IN OPPOSITION TO MOTION OF THE COMPETITIVE ENTERPRISE INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS FOR LEAVE TO FILE *AMICUS CURIAE* RESPONSE TO COURT'S ORDER OF FEBRUARY 6 AND FOR LEAVE TO PARTICIPATE AS GUARDIAN *AD LITEM* FOR CLASS OR *AMICUS* IN FRONT OF SPECIAL MASTER**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Preliminary Statement ................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      THE COURT SHOULD DENY CCAF LEAVE TO
        FILE ITS PROPOSED BRIEF AS *AMICUS CURIAE* ...................................... 3

        A.      Applicable Standards ............................................................................ 3

        B.      The Presence of a Special Master
                Obviates the Need for CCAF as *Amicus* ................................................ 4

        C.      CCAF Will Not Assist
                the Court as *Amicus Curiae* .................................................................. 5

II.     THE COURT SHOULD DENY CCAF LEAVE
        TO PARTICIPATE AS GUARDIAN *AD LITEM* ............................................. 6

III.    THE COURT SIMILARLY SHOULD DENY CCAF
        LEAVE TO PARTICIPATE AS *AMICUS CURIAE* ........................................ 12

IV.     CCAF'S ATTEMPT TO STITCH TOGETHER NEW
        ISSUES TO BE INVESTIGATED IS WITHOUT MERIT ............................... 13

V.      CCAF'S CONCERNS ABOUT THE TAXATION OF
        SPECIAL MASTER COSTS SHOULD BE DISREGARDED ...................................... 15

Conclusion ................................................................................................................... 16

## TABLE OF AUTHORITIES

### Cases

*Animal Protection Institute v. Martin*,
    No. CV-06-128, 2007 WL 647567
    (D. Me. Feb. 23, 2007)..................................................................................................3, 4

*In re Cabletron Systems, Inc.*
    *Securities Litigation*,
    239 F.R.D. 30 (D.N.H. 2006) ........................................................................... 8-9

*In re Continental Illinois*
    *Securities Litigation*,
    962 F.2d 566 (7th Cir. 1992) ...........................................................................5, 8

*Dewey v. Volkswagen of America*,
    728 F. Supp. 2d 546 (D.N.J. 2010),
    *rev'd on other grounds*,
    681 F.3d 170 (3d Cir. 2012)...................................................................................1

*In re Fidelity/Micron*
    *Securities Litigation*,
    167 F.3d 735 (1st Cir. 1999)..................................................................................7

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) .......................................................................2, 7, 8

*Haas v. Pittsburgh National Bank*,
    77 F.R.D. 382 (W.D. Pa. 1977) ...........................................................................7

*In re High Sulfur Content Gasoline*
    *Products Liability Litigation*,
    517 F.3d 220 (5th Cir. 2008) ..............................................................................10

*In re Johnson & Johnson*
    *Derivative Litigation*,
    No. 10-2033, 2013 WL 6163858
    (D.N.J. Nov. 25, 2013).........................................................................................11

*In re Johnson & Johnson*
    *Derivative Litigation*,
    No. 10-2033, 2013 WL 11228425
    (D.N.J. June 13, 2013) .........................................................................................11

*In re Johnson & Johnson*
  *Derivative Litigation*,
  900 F. Supp. 2d 467 (D.N.J. 2012) ............................................................... 10-11

*Lafitte v. Robert Half International, Inc.*,
  376 P.3d 672 (Cal. 2016) ......................................................................................7

*Lonardo v. Travelers Indemnity Co.*,
  706 F. Supp. 2d 766
  (N.D. Ohio 2010) ..................................................................................................1

*In re Lupron Marketing & Sales*
  *Practices Litigation*,
  No. 01-CV-10861, 2005 WL 2006833
  (D. Mass. Aug. 17, 2005).....................................................................................14

*McCarthy v. Fuller*,
  No. 08-cv-994, 2012 WL 1067863
  (S.D. Ind. Mar. 29, 2012).................................................................................. 5-6

*Miller v. Mackey International, Inc.*,
  70 F.R.D. 533 (S.D. Fla. 1976)............................................................................7

*In re Neurontin Marketing & Sales*
  *Practices Litigation*,
  58 F. Supp. 3d 167 (D. Mass. 2014) ............................................................ 13-14

*Portland Pipe Line Corp. v.*
  *City of South Portland*,
  No. 15-cv-00054, 2017 WL 79948
  (D. Me. Jan. 19, 2017) ..........................................................................................6

*In re Puerto Rican Cabotage*
  *Antitrust Litigation*,
  815 F. Supp. 2d 448 (D.P.R. 2011)......................................................................13

*Strasser v. Doorley*,
  432 F.2d 567 (1st Cir. 1970)............................................................................3, 5

*Voices for Choices v. Illinois*
  *Bell Telephone Co.*,
  339 F.3d 542 (7th Cir. 2003) ...............................................................................3

*In re Volkswagen & Audi Warranty*
  *Extension Litigation*,
  No. 07-md-1790, 2011 WL 322639
  (D. Mass. Jan. 10, 2011) ................................................................................. 7-8

*Wildearth Guardians v. Lane*,
   No. CIV 12-118, 2012 WL 10028647
   (D.N.M. June 20, 2012) ............................................................................................ 9-10, 12

## **Rules**

Fed. R. Civ. P. 53 ....................................................................................................2, 4, 8, 9

Fed. R. Civ. P. 53(b)(3)(A) ........................................................................................9

Fed. R. Civ. P. 53(g)(2)(B) ........................................................................................15

Fed. R. Civ. P. 60(b) .................................................................................................11

D. Mass. R. 7.1(b)(4) ................................................................................................4

## **Other Authorities**

Brian T. Fitzpatrick, *An Empirical Study of Class
   Action Settlements and Their Fee Awards,*
   7 J. EMPIRICAL LEGAL STUD. 811 (2010) ...............................................................14

<https://cei.org/about-cei> ........................................................................................6

<https://cei.org/issues/law-and-constitution> ...........................................................6

Labaton Sucharow LLP ("Labaton Sucharow" or the "Firm"), Lead Counsel for Plaintiff Arkansas Teacher Retirement System ("ARTRS") and the Settlement Class in the above-titled consolidated actions, respectfully submits this memorandum in opposition to the motion of the Competitive Enterprise Institute Center for Class Action Fairness ("CCAF") (1) for leave to file a response to this Court's February 6, 2017 Memorandum and Order as *amicus curiae*, and (2) for leave to participate in special master proceedings either as guardian *ad litem* for the Class or as *amicus* (ECF Nos. 126-127, 125-1, 125-2).

### Preliminary Statement

Federal courts have referred to CCAF's Senior Attorney and Director, Theodore H. Frank, as a "professional objector" in class actions.[1]  In class actions where CCAF has filed objections to proposed settlements and attorneys' fees, however, CCAF could at least claim that it had been retained by a member of the class to represent its interests before the court.

Here, CCAF does not represent a member of the Class or any other client.  When the Court held a hearing on November 2, 2016, on notice to the Class, to consider the reasonableness of the $74.5 million fee requested in connection with the $300 million Settlement, CCAF—for all of its professed commitment to "policing fee requests"—was nowhere to be found.  It appears that CCAF took no interest in the fee petition until the *Boston Globe* examined the petition and contacted Mr. Frank after the hearing.[2]

---

[1] *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785-86 (N.D. Ohio 2010) (describing Mr. Frank's brief as "long on ideology and short on law"); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 574-75 & nn.18-19 (D.N.J. 2010) (noting that "federal courts are increasingly weary of professional objectors") (quoting *O'Keefe v. Mercedes-Benz U.S.A., LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003)), *rev'd on other grounds*, 681 F.3d 170 (3d Cir. 2012)).

[2] *See* Decl. of Theodore H. Frank in Supp. of Mot. for Leave to Participate as *Amicus* and Mot. for *Pro Hac Vice* Admittance, ECF No. 125-1 ("Frank Decl."), ¶ 30.

This Court, in its February 6, 2017 Memorandum and Order ("Mem. & Order"), found that questions have been raised as to the accuracy and reliability of the submissions in support of the fee and expense petition, and determined to appoint a special master under Fed. R. Civ. P. 53 to investigate the matter and report to the Court.

CCAF now seeks to insert itself into this matter as a guardian *ad litem* or *amicus curiae*. CCAF does not object to the appointment of a special master, however, nor to Judge Rosen specifically. Nor does CCAF object to the range of powers the special master will have. Nor does CCAF contend that the special master and the Court are unable to conduct this proceeding as contemplated by Rule 53. Rather, CCAF contends that the special master and the Court would benefit from having CCAF's "class-centric" view.

Even in uncontested fee proceedings, guardians *ad litem* are rarely appointed by trial courts, and *amici* are virtually unheard of, because the court functions as a quasi-fiduciary of the settlement fund on behalf of the class. There is even less need for a guardian or *amicus* here, because the special master will protect the Class's interests and also insulate the Court from any potential conflict between its role as an impartial decision-maker and its fiduciary obligation to absent class members. CCAF does not and cannot show otherwise. As the Tenth Circuit has observed in a class action fee proceeding, "[i]t is up to the individual judge's preference as to whether he uses a disinterested observer (e.g., magistrate or master) *or* an interested advocate (e.g., guardian)."[3]

Because the Court has made clear its preference to use a special master, and no one has objected to that, CCAF's motion should be denied in its entirety.

---

[3] *Gottlieb v. Barry*, 43 F.3d 474, 490 (10th Cir. 1994) (emphasis added).

## ARGUMENT

I.   **THE COURT SHOULD DENY CCAF LEAVE TO FILE ITS PROPOSED BRIEF AS *AMICUS CURIAE***

A.   **Applicable Standards**

Although there are rules governing *amici curiae* in appellate courts, the Federal Rules of Civil Procedure are silent "as to the conditions under which a trial court should permit *amicus* appearances and the restrictions, if any, that should attend its appearance." *Animal Protection Inst. v. Martin*, No. CV-06-128 BW, 2007 WL 647567, at *1 (D. Me. Feb. 23, 2007) (citation omitted). Because an *amicus* is not, and does not represent, a party, and appears only for the benefit of the court, granting *amicus* status is a matter solely within the court's discretion. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *see also Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003) (granting *amicus* status is a matter of "judicial grace").

The First Circuit nonetheless cautioned in *Strasser* that a district court "should go slow in accepting, and even slower in inviting, an amicus brief unless . . . the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." 432 F.2d at 569. The court emphasized that "an amicus who argues facts should rarely be welcomed." *Id.*

Generally, *amicus* status is granted "only when there is an issue of general public interest, the *amicus* provides supplemental assistance to existing counsel, or the *amicus* insures a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Animal Protection*, 2007 WL 647567, at *2 (citation omitted). Among the concerns with allowing *amici* in the district courts are (1) inundating the judge with extraneous reading; (2) making an end-run around court-imposed limitations on the parties, including discovery

3

restrictions, the rules of evidence, and the length and timing of the parties' briefs; (3) increasing

the cost of litigation; (4) creating side issues not generated directly by the parties; and (5)

injecting interest group politics in the federal judicial process.  *See id.* (citing *Voices for Choices*,

339 F.3d at 544).

### B.    The Presence of a Special Master
####      Obviates the Need for CCAF as *Amicus*

CCAF argues that it should be granted leave to file an *amicus* response to the Court's

Memorandum and Order because the interests of absent Class members in "stringent special

master review and disgorgement to the class of excess attorneys' fees" are unrepresented.  CCAF

Mem. (ECF No. 127) at 7.[4]

An *amicus* is not needed to ensure "stringent review" by the special master any more than

an *amicus* would be needed to ensure "fair and impartial decision-making" by this Court.  The

special master, who is himself a retired federal judge,[5] will diligently perform his duties pursuant

to court order, and subject to the Court's direct supervision and oversight as set out in Rule 53.

Moreover, it is difficult to understand how CCAF advances a currently unrepresented interest in

the special master's qualifications and diligence given that CCAF has not objected to Judge

Rosen.  *See* CCAF Amicus Br. at 2 ("The role that the Court envisions for the special master is

permissible under Fed. R. Civ. P. 53.").

Regardless of the lack of objections at the settlement hearing, the interests of absent Class

members with regard to the final fee award will be protected by the special master.  In *In re*

---

[4] Both CCAF's moving brief and proposed *amicus curiae* brief (ECF No. 126-1) appear to have been prepared in order to evade the Court's page-length limitation.  *See* D. Mass. R. 7.1(b)(4) ("*Length of Memoranda*.  Memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed ***twenty (20) pages, double-spaced***.") (emphasis added).

[5] As is the Hon. Layn R. Phillips (Ret.), whom the Firm has proposed that the Court appoint as Co-Special Master here.  ECF No. 129, at 2-4 (submission of Labaton Sucharow); *see* ECF No. 131, at 1 (submission of Thornton Law Firm LLP, joining proposal).

*Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), on which CCAF relies,

Judge Posner observed:

> The appointment of a special master to advise the court is an obvious possibility, ***one frequently used in fee matters and especially appropriate in a case such as this that lacks an adversary setting***.  Of course the master is limited to assessing objective criteria of cost and performance.  The judge may have insights to add by virtue of having observed the lawyers in action.  But this would not deprive the special master's recommendation of its value to a prompt and accurate determination of the fee to which the class counsel are entitled.

*Id.* at 573-74 (emphasis added); *see* CCAF Mem. at 6.  Because protecting the Class's interests

fits hand-in-glove with the special master's responsibility, CCAF should be denied *amicus* status.

### C.      CCAF Will Not Assist the Court as *Amicus Curiae*

Further, allowing CCAF to appear as an *amicus* will not assist the Court, either at the

March 7, 2017 hearing or any future proceedings, for at least two reasons.

*First*, rather than restrict itself to arguments of law, CCAF attempts to introduce and

argue an array of new purported facts.  CCAF describes its extended involvement with the

*Boston Globe* and prior, detailed review of the fee submissions, and has submitted the analysis

referenced in the December 17, 2016 *Globe* article.  *See* Frank Decl. ¶¶ 30-32; Memorandum

dated Nov. 13, 2016 from Ted Frank to Andrea Estes, ECF No. 125-2 ("Frank Memo"); CCAF

Proposed Amicus Resp. (ECF No. 126-1, "CCAF Amicus Br.") at 1 & n.1, 6, 8, 11.

Especially in view of the First Circuit's admonition against *amici* that argue facts,

*Strasser*, 432 F.2d at 569, CCAF's self-promoting involvement in factual matters should be

disqualifying.  *See, e.g.*, *McCarthy v. Fuller*, No. 08-cv-994-WTL-DML, 2012 WL 1067863, at

*2 (S.D. Ind. Mar. 29, 2012) (denying *amicus* status to lawyer who proposes to "aid the court by

providing facts, insights and explanations," which "suggest[ed] the type of contribution a fact or

expert witness would offer"); *Portland Pipe Line Corp. v. City of S. Portland*, No. 15-cv-00054-JAW, 2017 WL 79948, at *6 (D. Me. Jan. 19, 2017) (party was "right to be concerned about whether the amici will infuse external facts into the Court's consideration").

*Second*, CCAF's participation needlessly risks injecting interest group politics into this matter.  CCAF is a law firm owned and funded by the Competitive Enterprise Institute ("CEI"), a Washington, D.C. public policy organization that describes itself as being "dedicated to advancing the principles of limited government, free enterprise, and individual liberty." <https://cei.org/about-cei>  CEI's basic legal philosophy is that "[g]overnment regulations are based on laws, and those laws in turn rest on the limited powers granted to government by the Constitution.  Whether these constitutional limits succeed in actually reining in government is one of the basic issues facing our country."  <https://cei.org/issues/law-and-constitution>

Particularly where CCAF does not represent a Class member, its private and political agenda, reflected in its history of seeking to block class settlements and "police" fee awards, makes its contribution inherently suspect.  CCAF's involvement could result in the solicitation of input from opposing groups to even the playing field.  Denying CCAF's motion will eliminate any concerns about partisanship or "side issues," however, because the Court has assured neutrality through its proposal—to which CCAF has not objected—to appoint a special master.

## II.     THE COURT SHOULD DENY CCAF LEAVE
## TO PARTICIPATE AS GUARDIAN *AD LITEM*

CCAF argues that it should be appointed as guardian *ad litem* for the Class so as to ensure that the Class's interests are protected and that the special master will have the "benefit" of adversarial presentation.  *See* CCAF Mem. at 8-11; CCAF Amicus Br. at 3-11.

Appointing CCAF as guardian *ad litem* will multiply and complicate these proceedings by granting CCAF powers already granted to the special master,[6] burden the special master and the Court, and needlessly increase costs.  The few courts that have appointed guardians *ad litem* to represent the interests of a class in fee award proceedings have done so to insulate themselves from the apparent conflict between protecting the interests of the class and exercising strict impartiality in evaluating the reasonableness of the fee.  *See*, *e.g.*, *Haas v. Pittsburgh Nat'l Bank*, 77 F.R.D. 382, 383 (W.D. Pa. 1977); *Miller v. Mackey Int'l, Inc.*, 70 F.R.D. 533, 535 (S.D. Fla. 1976); *see also Lafitte v. Robert Half Int'l, Inc.*, 376 P.3d 672, 691 (Cal. 2016) (describing issue generally) (Liu, J., concurring).  Guardians are rare in fee proceedings because the district court "functions as a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class."  *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 736 (1st Cir. 1999); *see also Gottlieb v. Barry*, 43 F.3d 474, 490 (10th Cir. 1994) ("While the need may indeed be compelling in some cases, we find few cases in which courts actually use guardians *ad litem*.").

Neither *Haas* nor *Miller*, nor any other case CCAF cites, involved the appointment of a special master on top of a guardian *ad litem* (or *amicus* in a similar role).  This is because a special master, a court-appointed officer with an investigative mandate and powers, himself serves to protect the class's interests while also enabling the judge to remain impartial.[7]  *See*, *e.g.*, *In re Volkswagen & Audi Warranty Extension Litig.*, No. 07-md-1790-JLT, 2011 WL

---

[6] *Compare* Mem. & Order at 9 ("If appointed, [the special master] would be empowered to, among other things, subpoena documents from plaintiffs' counsel and third parties, interview witnesses, and take testimony under oath.") *with* CCAF Mem. at 11 ("The advocate must have the ability to review class counsel's billing records, conduct discovery from class counsel, engage in and respond to motion practice and to brief relevant legal questions that arise.").

[7] This Court has taken care to ensure appropriate independence from the special master.  *See* Mem. & Order at 9 ("Judge Rosen would be authorized to communicate with the court *ex parte* on procedural matters, but encouraged to minimize *ex parte* communications, and to avoid them if possible.").

322639, at *3 (D. Mass. Jan. 10, 2011) ("[I]t is the significant roles of the Special Master and the

Court, much resembling that of fiduciaries, to insure that the settlement of this nationwide, multi-

district class action is fair and appropriate and does not compromise the rights of class

members.") (Van Gestel, Special Master).

In *Gottlieb v. Barry*, the district court approved the class action settlement and referred

the fee and expense applications to a special master pursuant to Rule 53.  The district court also

refused to appoint a guardian *ad litem* to represent the class in the fee award process.  *Gottlieb*,

43 F.3d at 490.  The Tenth Circuit affirmed, finding that the district court had fulfilled its duty to

act as a fiduciary for the class with regard to fees, and emphasizing that the district court

"initially referred the fee applications to a special master, an impartial observer ***who himself***

***could insure that the class' interests were protected***."  *Id.* (emphasis added).  The court

continued:

> Though the importance of safeguarding the class' interests cannot
> be underestimated, the Federal Judicial Center report [on
> attorney's fees in class actions] rightly questions whether such a
> function could be performed equally well by masters or
> magistrates.  ***It is up to the individual judge's preference as to***
> ***whether he uses a disinterested observer (e.g., magistrate or***
> ***master) or an interested advocate (e.g., guardian)***.

*Id.* (quoting Christopher P. Lu, *Procedural Solutions to the Attorney's Fee Problem in Complex*

Litigation, 26 U. RICH. L. REV. 41, 66 (1991)) (emphasis added); *see also Continental Ill.*, 962

F.2d at 573 (observing similarly that special master proceeding is "especially appropriate" in

absence of adversary setting).

In re Cabletron Systems, Inc. Securities Litigation, 239 F.R.D. 30 (D.N.H. 2006),

supports this approach.  At the final settlement hearing, the court raised concerns, in the context

of considering plaintiffs' counsel's fee petition, as to "apparent discrepancies" between affidavits

filed by confidential witnesses and certain claims by plaintiffs' counsel.  *Id.* at 32.  As a result,

after notice and a hearing, the court appointed a magistrate judge as a special master to

investigate the matter and issue a report.  After receiving the special master's report (which

found no misconduct), the court approved the settlement and awarded fees and expenses.  *Id.*  No

one had objected to the requested fee at the settlement hearing.  *Id.* at 35.  Despite there having

been "no adversary to challenge Plaintiffs' [fee] proposal," there is no indication that anyone

sought to participate as a guardian *ad litem* (or *amicus*), or that the court or special master

thought such participation might be beneficial to the proceedings.  *Id.* at 38.

This is not a case where a guardian (or *amicus*) conceivably may have a role in the

absence of a special master.  This Court has made a deliberate decision to appoint a special

master, and neither CCAF nor any of plaintiffs' counsel has objected to that decision.  *See* ECF

Nos. 119, 128, 129, 131, 138-142 (submissions of plaintiffs' counsel).  Indeed, CCAF and all but

one of plaintiffs' counsel have consented to the appointment of Judge Rosen as Special Master,

either alone or jointly with Judge Phillips.[8]  More importantly, no one has objected to the ***powers***

the special master will have, including the powers to "subpoena documents from plaintiffs'

counsel and third parties, interview witnesses, and take testimony under oath."  Mem. & Order at

9.  The Court having determined to take the special master route under Rule 53, there is no need

to add a guardian (or *amicus*) to the mix.[9]

---

[8] McTigue Law LLP objects to Judge Rosen and proposes the Hon. James M. Rosenbaum (Ret.) as an alternative candidate.  *See* ECF No. 138, at 3-4.  Labaton Sucharow will defer a substantive response to McTigue Law's submission to the March 7, 2017 hearing, but notes that Judge Rosenbaum's qualifications cannot be fully assessed until his required affidavit is filed.  *See* Mem. & Order at 12 n.4; Fed. R. Civ. P. 53(b)(3)(A).

[9] A district court's denial of a motion to participate as a guardian *ad litem* or *amicus* is not appealable.  *See Wildearth Guardians v. Lane*, No. CIV 12-118 LFG/KBM, 2012 WL 10028647, at *1 n.1 (D.N.M. June 20, 2012) (denying *amicus* motion) (citing *Association of Am. Sch. Paper Suppliers v. United States*, 683 F. Supp. 2d 1326, 1328 (Ct. Int'l Trade 2010)).

CCAF's proposal to "review class counsel's billing records" and "conduct discovery from class counsel," among other things (CCAF Mem. at 11), would either duplicate the work of the special master or needlessly multiply these proceedings and add costs.  CCAF all but admits as much.  *See* CCAF Amicus Br. at 7 ("A guardian's presence would . . . effectively give the class a double security: two sets of eyeballs scrutinizing counsel's billing records.").  And notwithstanding CCAF's lip service to acting *pro bono*, CCAF well knows that its involvement in this matter would require plaintiffs' counsel, the special master, and the Court to devote substantial additional resources, whether financial or otherwise.  *See* CCAF Mem. at 10-11; CCAF Amicus Br. at 7.

Just as none of the guardian cases CCAF cites involves a special master (*see* CCAF Mem. at 10; CCAF Amicus Br. at 6), none of the special master cases CCAF cites involves a guardian.  *See* CCAF Amicus Br. at 7-8.  Notably, in *In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 232 n.18 (5th Cir. 2008), which CCAF cites, the court took particular note of "[t]he transparency and completeness of special master and magistrate judge procedures" to work out fee disputes, and made no mention of the need for a guardian despite the absence of objections from the class.

CCAF's role in the *Johnson & Johnson* derivative litigation actually counsels against appointing a guardian.  *See* CCAF Amicus Br. at 7-8; CCAF Mem. at 3.  There, CCAF objected to the fee request on behalf of its shareholder client, Petri.  The court overruled Petri's objections and appointed a special master to review plaintiffs' counsel's billing records and recommend an appropriate lodestar amount.  (The court determined to use the lodestar method because the settlement terms involved difficult-to-value corporate governance reforms.)  *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 498-99 (D.N.J. 2012).  Subsequently, CCAF (as

counsel for Petri) contacted the special master directly, and, over plaintiffs' counsel's objection, received her authorization to participate to a limited extent. *In re Johnson & Johnson Derivative Litig.*, No. 10-2033 (FLW), 2013 WL 11228425, at *8-9 (D.N.J. June 13, 2013). CCAF's participation appears to have had little impact on the special master's report, however, *see id.*, and the court subsequently overruled Petri's objections to the report and adopted it in full. *In re Johnson & Johnson Derivative Litig.*, No. 10-2033 (FLW), 2013 WL 6163858, at *4-5 (D.N.J. Nov. 25, 2013). Here, particularly where no Class member has ever sought to retain CCAF as counsel, the Class is more than adequately represented by Plaintiff ARTRS and its attorneys, and the special master will protect the Class's interests under the Court's oversight, CCAF has no basis to participate in this matter.

CCAF's lengthy disquisitions regarding Rule 60(b) motions and the "fundamental" need for a guardian to be able to seek such relief (*see* CCAF Amicus Br. at 8-11; CCAF Mem. at 11-12) are a distraction. The Order and Final Judgment vests the Court with broad continuing jurisdiction over all matters related to the fee application and the disposition of the Class Settlement Fund. ECF No. 110, ¶ 18. The Order Awarding Attorneys' Fees provides similarly that the Court retains "exclusive" jurisdiction over the subject matter of the Class Actions and all parties thereto. ECF No. 111, ¶ 8. Finally, the Stipulation and Agreement of Settlement specifically provides for the repayment of funds if the fee and expense awards are reduced by the Court or on appeal by a final, non-appealable order. ECF No. 89, ¶ 19(b). There is no need for Rule 60(b) relief here.

Regardless of whether the Court appoints a guardian or grants *amicus* status (and the Court should do neither), there is no reason to send a supplemental notice to the Class. *See* CCAF Amicus Br. at 9; CCAF Mem. at 12. The Notice was not rendered deficient by any of the

issues discussed in the Court's Memorandum and Order.  The Settlement, class certification, and

Class members' opt-out rights are entirely unaffected here.  Because the special master will

protect Class members' interests in the course of discharging his duties, there is no reason to

invite them to move to intervene.  The fact that the fee award may be reduced does not trigger an

obligation to notify the Class that the Net Settlement Fund may be *larger* than expected; at the

appropriate time, subject to Court approval, the claims administrator will simply send larger

settlement payments.

### III. THE COURT SIMILARLY SHOULD DENY CCAF LEAVE TO PARTICIPATE AS *AMICUS CURIAE*

CCAF argues in the alternative that it should participate as *amicus* before the special

master "on equivalent terms" as a guardian *ad litem*, but then runs away from its own argument,

stating that "CCAF's concern is not really the particular designation the class advocate would

have, but what functional role it would be permitted."  CCAF Mem. at 11.

The Court should deny CCAF leave to participate as *amicus* substantially for the same

reasons that the Court should deny CCAF leave to file its proposed *amicus* brief and should

decline to appoint CCAF as a guardian.  With regard to the general standard applicable to

granting or denying *amicus* requests, "[t]his is neither a situation where a party is not represented

competently or not represented at all, nor where an *amicus* can present unique information to

help the Court in a way that is beyond the parties' attorneys' ability to provide."  *Wildearth*

*Guardians v. Lane*, No. CIV 12-118 LFG/KBM, 2012 WL 10028647, at *4 (D.N.M. June 20,

2012).  Here, the absent Class members are more than adequately represented and their rights are

protected by Plaintiff ARTRS and its attorneys, as well as by this Court in its fiduciary role and

the special master or masters appointed to assist the Court.

Ultimately, Labaton Sucharow respectfully submits that anyone (other than a judicial officer) that purports to represent the interests of absent Class members adversely to counsel for the Class should, at a minimum, (a) represent a client that would be affected by the outcome, and (b) not have a political agenda.  CCAF fails on both counts.

## IV.   CCAF'S ATTEMPT TO STITCH TOGETHER NEW ISSUES TO BE INVESTIGATED IS WITHOUT MERIT

The Court has proposed to authorize the special master to investigate "all issues relating to the award of attorneys' fees in this case."  Mem. & Order at 9.  Labaton Sucharow has not objected to this specific mandate.[10]  CCAF complains nevertheless that the December 17, 2016 *Boston Globe* article did not discuss certain aspects of the analysis in the Frank Memo.  The sole example CCAF offers is Lead Counsel's alleged "misrepresentation" of Professor Fitzpatrick's empirical findings.  CCAF Mem. at 1; CCAF Amicus Br. at 11.

This charge is baseless.  In arguing that the requested 24.85% attorneys' fee was reasonable when compared to percentage-of-fund ("POF") fees awarded in common fund settlements of comparable size within the First Circuit, Lead Counsel defined "comparable size" as settlements of $100 million or more.  *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 462 (D.P.R. 2011) (investigating "fees awarded in other, similar, individual cases within the First Circuit").  Lead Counsel used this threshold because it matched one that Judge Saris had used in *Neurontin*, and because it captured a sufficient number of court-approved settlements in this Circuit (eight) to enable the Court to consider the requested fee and multiplier in context.  *See In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167,

---

[10] The Firm has respectfully reserved its rights, however, with regard to the Court's reference to "any related issues that may emerge in the special master's investigation."  ECF No. 129, at 1 (quoting Mem. & Order at 8).  No plaintiffs' counsel has expressly objected to the scope of the special master's authority except for McTigue Law, which seeks to be excluded from the investigation.  ECF No. 138, at 2-3.

170 (D. Mass. 2014) (defining "so-called 'megafund' cases" as "those which yield settlement funds of over $100 million"); Fee Brief, ECF No. 103-1, at 6-7.

Professor Fitzpatrick's finding, cited by CCAF, that mean and median POF fees were 17.8% and 19.5% in class action settlements between $250 million and $500 million in 2006-2007 (8 of 444 cases), was less useful because it was not limited to the First Circuit and comprised a relatively small sample. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 839 (2010) (ECF No. 104-31).   Additionally, courts in this and other Circuits have rejected the principle that, as CCAF described it in the Frank Memo (ECF No. 125-2), "fee awards as a percentage of the fund typically decline monotonically as the award to the class increases."  *See*, *e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005) (adopting Ninth Circuit's conclusion that "the argument for a reduction of the percentage award as the size of a settlement fund increases reflects neither reality nor sound judicial policy") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4, 1052 (9th Cir. 2002)); *see also* Fee Brief, ECF No. 103-1, at 9 & n.15 (citing cases).

In *Neurontin*, Judge Saris observed that courts have variously "adopted a practice of lowering the fee award percentage as the size of the settlement increases" and "rejected the practice of lowering fees in megacases," and also cited the 17.8% mean fee from the Fitzpatrick study.  58 F. Supp. 3d at 170-72.  In the end, the court awarded fees and expenses of 28% (reduced from the 33-1/3% requested) of the $325 million settlement, yielding a multiplier of 3.32 (reduced from 3.97).  *Id.* at 172-73.

CCAF also asserts that the Frank Memo was provided to one of Labaton Sucharow's outside professionals on November 23, 2016, but that plaintiffs' counsel did not flag for the

Court unspecified issues in the Frank Memo that were not reported in the December 17, 2016 *Globe* article.  CCAF Amicus Br. at 11; CCAF Mem. at 7.  Regardless of whether Labaton Sucharow "had access to" the Frank Memo as of November 23 (Frank Decl. ¶ 32), nothing in it raised an issue that the Firm would have been obligated to bring to the Court's attention.

## V. CCAF'S CONCERNS ABOUT THE TAXATION OF SPECIAL MASTER COSTS SHOULD BE DISREGARDED

This Court has directed that "[t]he fees and expenses of the Special Master would be paid, *by the court*, from the $74,541,250 awarded to plaintiffs' counsel.  The court may order that up to $2,000,000 *be returned to the Clerk* of the District Court for this purpose."  Mem. & Order at 10-11 (emphasis added).  In its memorandum, Labaton Sucharow stated that the Firm, "as Lead Counsel, *is prepared to deposit funds with the Clerk* of the Court, in such sums and at such times as the Court may order, to be used to pay the fees and expenses of the Co-Special Masters."  ECF No. 129, at 4 (emphasis added).

CCAF suggests that special master costs should not be debited from the "fee fund"—apparently defined as a fund within the Court's control that holds amounts awarded to plaintiffs' counsel—but rather should be taxed directly to plaintiffs' counsel in proportion to the fees counsel received from the "fee fund."  CCAF Amicus Br. at 11-12.  The Court has directed, however, that the special master will be paid by the court, from monies deposited with the Clerk's Office by plaintiffs' counsel for this purpose.  *See* Fed. R. Civ. P. 53(g)(2)(B) (special master's compensation must be paid either by party or from fund "within the court's control").  Lead Counsel, which, like all plaintiffs' counsel, falls within the Court's jurisdiction while this matter is pending, has agreed to undertake this responsibility.  Given this, CCAF's concerns should be disregarded.

## <u>Conclusion</u>

For the foregoing reasons, Labaton Sucharow LLP respectfully submits that the Court should deny CCAF's motion in its entirety.

Dated:  February 27, 2017

Respectfully submitted,

*/s/ Joan A. Lukey*
Joan A. Lukey (BBO No. 307340)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel:  (617) 248-5000
joan.lukey@choate.com

*Attorneys for Labaton Sucharow LLP*

16

**Certificate of Service**

I certify that on February 27, 2017, I caused the foregoing Memorandum of Labaton Sucharow LLP in Opposition to Motion of the Competitive Enterprise Institute's Center for Class Action Fairness for Leave to File *Amicus Curiae* Response to Court's Order of February 6 and for Leave to Participate as Guardian *ad Litem* for Class or *Amicus* in Front of Special Master to be filed through the ECF system in above-captioned action No. 11-cv-10230, and accordingly to be served electronically upon all registered participants identified on the Notices of Electronic Filing.

*/s/ Joan A. Lukey*
Joan A. Lukey