**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant | No. 12-cv-11698 MLW |

**COMPETITIVE ENTERPRISE INSTITUTE'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE *AMICUS CURIAE* RESPONSE TO COURT'S ORDER OF FEBRUARY 6 AND FOR LEAVE TO PARTICIPATE AS *GUARDIAN AD LITEM* FOR CLASS OR *AMICUS* IN FRONT OF SPECIAL MASTER**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................ II

**TABLE OF AUTHORITIES** ............................................................................................... III

**INTRODUCTION** .................................................................................................................. 1

I.     Remarkably, in a brief arguing against the need for adversary presentation, Labaton misrepresents precedent in a baseless attack against CCAF. ........................................ 3

II.    CCAF should be permitted to participate as *amicus* or guardian. ................................ 6

III.   Nothing in *Gottlieb* or any other case precludes appointment of a guardian. .............. 9

IV.   The November 13 Frank Memo reveals multiple discrepancies in the fee request, which is further shown by ERISA counsel's February 20 responses. ....................................... 13

V.    Rule 23(h) entitles the class to either reasonable notice or a guardian. ...................... 16

VI.   CCAF objects to Layn Phillips as a co-special master. ............................................... 16

**CONCLUSION** ..................................................................................................................... 18

**CERTIFICATE OF SERVICE** ............................................................................................ 19

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aetna Life Ins. Co. v. Alla Medical Services, Inc.,*
  855 F.2d 1470 (9th Cir. 1988) ..................................................................................12

*Animal Prot. Inst. v. Martin,*
  No. CV-06-128, 2007 U.S. Dist. LEXIS 13378 (D. Me. Feb. 23, 2007) .....................9

*In re Bluetooth Headset Prods. Liab. Litig,*
  654 F.3d 935 (9th Cir. 2011) ......................................................................................4

*In re Continental Illinois Securities Litigation,*
  962 F.2d 566 (7th Cir. 1992) .............................................................................2, 8, 10

*Dewey v. Volkswagen of Am.,*
  728 F. Supp. 2d 546 (D.N.J. 2010), *rev'd on other grounds,* 681 F.3d 170 (3d Cir. 2012) ..........3, 5

*Dewey v. Volkswagen of Am.,*
  909 F. Supp. 2d 373 (D.N.J. 2012) ........................................................................ 3-4

*Gottlieb v. Barry,*
  43 F.3d 474 (10th Cir. 1994) ............................................................................2, 10-11

*Hansen v. U.S. Bank,*
  No. 4:15-cv-00085-BLW, 2016 U.S. Dist. LEXIS 168477 (D. Idaho Dec. 5, 2016)...............10

*In re Johnson & Johnson Derivative Litig.,*
  Dist. LEXIS 180822 (D.N.J. June 13, 2013) ...............................................................5

*Kokkonen v. Guardian Life Ins. Co. of America,*
  511 U.S. 375 (1994) ..................................................................................................13

*Lonardo v. Travelers Indemnity Co.,*
  706 F. Supp. 2d 766 (N.D. Ohio 2010)................................................................... 3-5

*Mars Steel Corp. v. Continental Bank N.A.,*
  880 F.2d 928 (7th Cir. 1989) .....................................................................................12

*McCarthy v. Fuller,*
  No. 08-cv-994-WTL-DML, 2012 WL 1067863 (S.D. Ind. Mar. 29, 2012)................................9

*In re Mercury Interactive Secs. Litig.,*
  618 F.3d 988 (9th Cir. 2010) .....................................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y.1998) ...............................................................................14

*Neonatology Assocs., P.A. v. Comm'r,*
    293 F.3d 128 (3d Cir. 2002) ...................................................................................6, 9

*In re Neurontin Mktg. & Sales Practices Litig.,*
    58 F. Supp. 3d 167 (D. Mass. 2014)........................................................................14

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014)) ....................................................................................4

*In re Puerto Rican Cabotage Antitrust Litig.,*
    815 F. Supp. 2d 448 (D.P.R. 2011) .........................................................................14

*In re Union Carbide Corp. Consumer Products Business Sec. Litigation,*
    724 F. Supp. 160 (S.D.N.Y. 1989)...........................................................................14

*Redman v. Radioshack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ...............................................................................8, 16

*Strasser v. Doorley,*
    432 F.2d 567 (1st Cir. 1970).......................................................................................8

*Varga v. Colvin,*
    794 F.3d 809 (7th Cir. 2015) ....................................................................................10

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002)..................................................................................14

*WildEarth Guardians v. Lane,*
    No. 12-cv-118, 2012 U.S. Dist. LEXIS 189661 (D.N.M. June 20, 2012) ..................9

*Wolfchild v. Redwood Cty,*
    824 F.3d 761 (8th Cir. 2016) ....................................................................................12

**Rules and Statutes**

Fed. R. App. P. 29 ........................................................................................................................ 6

Fed. R. Civ. P. 11 ................................................................................................................... 11-12

Fed. R. Civ. P. 23(e) ................................................................................................................ 6, 15

Fed. R. Civ. P. 23(h) ................................................................................................. 3, 6-7, 15-16

Fed. R. Civ. P. 60 ................................................................................................................... 11-12

Fed. R. Civ. P. 60(b) ................................................................................................................... 11

**Other Authorities**

Lester Brickman,
    LAWYER BARONS (Cambridge U. Press 2011) ............................................................ 1

Elizabeth Chamblee Burch,
    *Public Funded Objectors*,
    THEORETICAL INQUIRIES IN LAW (forthcoming 2017) ................................................ 5

Bryan A. Garner,
    GARNER'S DICTIONARY OF LEGAL USAGE (3d ed. 2011) ........................................ 10

Federal Judicial Center,
    *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) .................................. 6-7

## INTRODUCTION

The best reason for appointment of a guardian or an *amicus* is to ensure adversarial presentation. American judicial proceedings rely on adversary presentation by the parties to resolve legal and factual questions; courts have neither the experience nor the resources to act as inquisitors in *ex parte* proceedings. The very fact of the controversy in this case demonstrates the problem: class counsel misled the class and the court with its *de facto ex parte* filings that misstated the facts and the law, and would have gotten entirely away with it if not for investigation by the *Boston Globe* working with movant CCAF., Class counsel's opposition to CCAF's motion to participate in this case further demonstrates the problem: once again, class counsel's brief is misleading by misstating facts and law in an attempt to smear CCAF and to avoid adversary presentation. Given this track record, the Court should appoint an advocate to push back against potential misstatements, because the stakes are even higher. This Court's investigation of these law firms' billing petition practices puts at issue not just the tens of millions of dollars in this case, but an entire business model of overbilling class members that comprises a windfall of billions of dollars in future similar fee petitions if this Court ultimately endorses the practices used in this case. Lester Brickman, LAWYER BARONS 378-87 (Cambridge U. Press 2011) (documenting problem of systematic unethical billing of contract attorneys by class-action firms and failure of courts to protect class members from practice). Labaton claims the class needs no help because "Plaintiff ARTRS and its attorneys" already represent the class. But the very existence of this proceeding proves otherwise: Plaintiff ARTRS and its attorneys did not prevent excess fees charged against class interests. Plaintiff ARTRS and its attorneys did not protect the class from double-billing $4 million of contract attorney time; did not protect the class from billing $330/hour to $515/hour for tens of thousands of hours of menial work done by staff attorneys that no paying client would pay more than $25-$50/hour for; did not protect the class from class counsel claiming a 2.0 multiplier was appropriate without disclosing to this Court until ***after CCAF filed its motion*** that several law firms had agreed to restrict their recovery to a 0.9 multiplier; did not protect the class by insisting on an intellectually honest representation of empirical literature in this case; and did not

protect the class by disclosing to the Court the side-agreements class counsel law firms made with each other or (possibly) with third-party litigation funders.

Labaton argues that the class's interests are sufficiently protected by the existence of a special master—but never formally waives its rights to challenge on appeal the power of the Court to *sua sponte* issue sanctions or a Rule 60 order against it, and never contests CCAF's argument that class counsel will potentially be legally advantaged and the class legally disadvantaged if any firm challenges a ruling this Court makes *sua sponte* without a formal motion made on behalf of the class. Remarkably, Labaton simultaneously complains that the special master can protect the class's interests and that CCAF's presence in the case will create discovery burdens for them that would not exist if the special master simply performed an investigation. They cannot have it both ways: either CCAF will perform a more thorough investigation than a special master with no experience challenging an abusive fee request, or CCAF's presence will only reduce the burden on the special master through adversary presentation that will point out arguments and case law (and identify flaws in the testimony of the testifying experts that class counsel will almost certainly retain in this proceeding) that the special master would otherwise have to research from scratch. Labaton's complaint about CCAF demonstrates that its real concern is that CCAF will be an effective advocate for the class.

All *Gottlieb v. Barry* demonstrates is that this decision of first impression is ultimately within this Court's discretion; CCAF never stated otherwise, and will not appeal a denial of its motion. CCAF is here because it approves of this Court's February 2 order, and wishes to be a helpful friend of the Court and of the absent class members; the Court can readily determine whether CCAF's participation has been or will be helpful given class counsel's behavior in the *ex parte* proceedings to date—and even from the tellingly weak attacks class counsel makes on CCAF. If, for some reason, this Court finds these briefs and CCAF's experience with this case and with these issues unhelpful, CCAF has no desire to waste the Court's time. Labaton does not identify a single case where the appointment of a guardian was reversed, nor even a model case where a court investigated the sort of pervasive overbilling that infected class counsel's fee application here. The class should have representation going forward to

protect its interests, be that from *amicus* or, preferably, a formal guardian. Labaton's lamentation that no class member has formally retained CCAF (an issue thoroughly discussed by the Frank Memo, Dkt. 125-2, and by Judge Posner in *Continental Illinois*) are belied by Labaton's unwillingness to provide notice to the class that this proceeding is pending, that a misleading fee application was disclosed to the class in violation of the class's rights to reasonable notice under Rule 23(h), and that *pro bono* representation is available to class members who wish to challenge the fee petition in this case. All unrepresented class members have an interest in reducing excess attorneys' fees, which can be paid to class members in a second distribution if the first distribution has already happened. But leaving out the intermediate step and simply appointing a guardian, be it CCAF or another firm not dependent on Labaton for business, would save months of precious time, given that the clock is ticking on Rule 60 options.

I.   **Remarkably, in a brief arguing against the need for adversary presentation, Labaton misrepresents precedent in a baseless attack against CCAF.**

Citing *Lonardo* and *Dewey*, Labaton argues that these cases demonstrate that CCAF is inappropriate as *amicus* or guardian. But that Labaton makes this argument actually proves the exact opposite proposition.

In both *Lonardo* and *Dewey*, CCAF won additional money for class members and both courts eventually awarded CCAF attorneys' fees. Labaton acts as if *Dewey*'s description of Frank as a "professional objector" is damning, but Labaton fails to tell this Court that, on remand, the *Dewey* district court disavowed that any negative connotation should be drawn from its earlier use of the term "professional objector":

> The Court's use of the term "professional objector" did not intend to connote that the objections presented in 2010 or now were motivated by a desire to hold up the settlement for personal profit, even though some academic commentary assigns such a meaning to the term.… The phrase was not meant to be pejorative and this professional focus does not bar counsel from receiving an appropriate fee award where counsel has advocated for and helped secure an improved settlement to the benefit of the class.

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). The district court found that CCAF's clients had "improved the settlement" by "identif[ying] a deficiency in the adequacy of the representative plaintiffs and successfully pursu[ing] their argument on appeal, such that a new settlement was negotiated..." *Id.* at 396. Thereupon, Judge Shwartz (since appointed to the Third Circuit) awarded CCAF fees of "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery." *Id.* at 396.

*Lonardo* is similarly unhelpful to class counsel. They represent that that case "describ[ed] Mr. Frank's brief as 'long on ideology and short on law.'" Not so: in context, *Lonardo* complained that a single *policy argument* against reversionary clauses in Frank's brief, which forthrightly acknowledged was raising issues of first impression, was without precedent. CCAF was ultimately successful in the Seventh and Ninth Circuits on the single argument *Lonardo* criticized as supposedly "short on law." Even to the extent *Lonardo* was correct in 2010 that CCAF's policy-based argument was "short on law," it is no longer correct after *In re Bluetooth Headset Prod. Liab. Litigation*, 654 F.3d 935 (9th Cir. 2011) and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), agreed with CCAF that reversionary clauses are a problematic sign of self-dealing. In fact, *Lonardo* praised Frank: "the Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving." 706 F. Supp. 2d at 804. *Lonardo* ultimately awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2 million. *Id.* at 813-17. CCAF has won the majority of the appeals it has brought, something that would not be possible if it were really taking futile political positions contradicted by law. *See also* Frank Decl. (Dkt. 125-1) ¶ 23 ("the ideology of the Center's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members").[1]

Class counsel's reliance on *Lonardo* and *Dewey* is damning in two other ways. *First,* Frank founded CCAF in 2009. Yet in eight years of objections in dozens of cases with tens of appellate

---

[1] Labaton complains about CEI's non-profit mission, but fails to explain how its support of free markets would have any adverse effect on Frank's participation in this case—especially since Labaton does not dispute that Frank has independence from CEI in making legal arguments, even when litigating against CEI donors. Frank Decl. ¶¶ 24-29.

decisions, the best citations class counsel can come up with to smear Frank and CCAF are cases where the district court actually praised CCAF's work and good faith and where CCAF was ultimately successful in both winning money for class members and vindicating its policy arguments in appellate courts.[2]  Imagine how well CCAF has done in the cases Labaton chose not to cite!  *See also* Elizabeth Chamblee Burch, *Public Funded Objectors*, THEORETICAL INQUIRIES IN LAW, at 9 n.35 (forthcoming 2017), available at https://papers.ssrn.com/sol3/papers2.cfm?abstract_id=2923785 (listing CCAF as an organization "more likely to challenge the most egregious settlements [and that has] develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees.").

*Second*, class counsel's misleading use of *Lonardo* and *Dewey* demonstrates exactly why adversarial presentation is needed in this case. Frank's declaration predicted that class counsel would try to smear him as a "professional objector" in precisely this way. Frank Decl. ¶¶ 19-20. Yet class counsel blithely and unapologetically proceeded anyway. If class counsel cannot be trusted to play it straight with this Court even when they know there exists an experienced adversary prepared to refute a boilerplate argument that CCAF has literally refuted dozens of times (including in at least one case where Lieff Cabraser was lead counsel)—even when they know that the *Boston Globe*'s discovery of their lack of candor in the original Rule 23(h) request has put them in this situation in the first place— how can class counsel be trusted to be candid with the Court or special master in an *ex parte* proceeding? Having an adversary familiar with the fallacious arguments that class counsel and their

---

[2] Labaton also misleads about CCAF's role in *Johnson & Johnson* when it suggests that "CCAF's participation appears to have had little impact on the special master's report" because the district court overruled CCAF's objections to the report. Although CCAF's objections to the report were not adopted, the report itself was improved—and only existed—because of CCAF's participation. As the report itself notes, it was CCAF's objection to vague categories of block billing that necessitated appointment of special master in the first place. *See In re Johnson & Johnson Derivative Litig.*, 2013 U.S. Dist. LEXIS 180822, at *18 & n.6 (D.N.J. June 13, 2013). Moreover, the special master herself found that participation of CCAF would be beneficial over an objection that it represented "an ideologically driven objector to class and derivative litigation generally." *Id.* at *32. The special master and district court rejected some CCAF arguments, but credited others, once specifically crediting CCAF with identifying wasteful billing. *See id.* at *164 n.65. Furthermore, the special master rejected several arguments by plaintiffs' counsel in response to CCAF opposition, demonstrating the benefit of adversary presentation.

expert witnesses will use to rationalize their abusive fee request in this case will **save** the special master time, because he or she will not need to perform burdensome citechecks and factchecks of all of class counsel's claims from scratch, but can instead build off of the challenges made by the opposing party. In this case, class counsel submitted a phone-book sized fee application where it could and successfully did hide the problems with its fee request. A special master with the benefit of adversary presentation—either from a guardian, from *amicus*, or from class members who retain counsel because notice of this proceeding is provided the class—will not have that problem of having no help finding where the bodies are buried.

## II.    CCAF should be permitted to participate as *amicus* or guardian.

Labaton does not deny that multiple district courts in this circuit rely on Judge Alito's decision in *Neonatology* or that that analysis would permit CCAF to participate; indeed, it never mentions that decision. As Judge Alito noted, the view of an amicus as an impartial individual who advocates for no particular cause or view "became outdated long ago." *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 131 (3d Cir. 2002). "[I]t is not easy to envisage an amicus who is 'disinterested' but still has an 'interest' in the case [as required by Fed. R. App. P. 29]." *Id.* "[T]he fundamental assumption of our adversary system [is] that strong (but fair) advocacy on behalf of opposing views promotes sound decision making. Thus, an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Id.* "Parties with pecuniary, as well as policy, interests also appear as amici in our court." *Id.* at 132. The complaint that CCAF is too "political" to participate because it opposes abusive fee requests as part of its mission to protect class members from class-action abuse is essentially an argument that no one can ever be appointed *amicus* on behalf of the class: if they generally have experience arguing for absent class members' rights, they're too "political"; and if they do not, they do not have sufficient "interest" to participate. But CCAF's "political" interest is perfectly aligned with the class's here: CCAF wishes to maximize class recovery under Rule 23(h), and is not seeking to challenge the settlement's fairness under Rule 23(e). As the Federal Judicial Center notes,

"[i]nstitutional 'public interest' objectors may bring a different perspective...Generally, government bodies such as the FTC and state attorneys general, as well as nonprofit entities, have the class-oriented goal of ensuring that class members receive fair, reasonable and adequate compensation for any injuries suffered. They tend to pursue that objective by policing abuses in class action litigation." *Managing Class Action Litigation: A Pocket Guide for Judges*, 17 (3d ed. 2010). And as demonstrated by the lack of objection by the class representative, there is no one currently in the case representing that important interest. *Neonatology*, 293 F.3d at 132 ("To be sure, an amicus brief may be particularly helpful with the party supported is unrepresented or inadequately represented.").

The complaint about "political" interests infecting the case is especially ironic, because it is quite likely that class counsel have already retained or otherwise plan to use multiple law professors with their own ideological and pecuniary interests to provide putative expert testimony defending the fee applications in this case. The Court should inquire whether class counsel plans to present expert testimony to the special master, and whether any of the experts have taken "political" positions relating to class actions and class-action fees. CCAF has some educated guesses about which experts class counsel has retained or plans to retain, and can identify their political positions on these issues.

Class counsel complains that CCAF failed to object to the fee application before now. True: CCAF, as it stated in the Frank Memo (Dkt. 125-2 at 1), did not object because no class member contacted it to ask for representation. "Had a class member contacted my organization and retained us to object on his or her behalf, we would have objected to the fee request as excessive in terms of lodestar, multiplier, and percentage of the fund requested." Dkt. 125-2 at 1. Given CCAF's limited resources and the pervasiveness of the abusive practices it challenges, CCAF cannot possibly object to every abusive settlement and fee request, and has to make educated guesses where it can do the most good—which requires a client or a guardianship to have appellate standing. Frank Decl. ¶ 22. But it is "naïve" to assume class acquiescence to class-action abuse from the lack of objections. *Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (Posner, J.). In *Continental Illinois*, a case class

counsel repeatedly relies upon, Judge Posner expressly anticipates the problem demonstrated by this case:

> A word finally on the lack of adversary procedure in this case.…Since the defendants were out of the case by virtue of their settlement--it being agreed that the lawyers' fees were to come out of the settlement amount--they had no incentive to oppose the request for fees, and they did not. No class member objected either--but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule. So the lawyers had no opponent in the district court and they have none here. This put more work on the district judge and on us than in a case where there is an adversary to keep the plaintiff and appellant honest…. But judges in our system are geared to adversary proceedings. If we are asked to do nonadversary things, we need different procedures.

*In re Continental Illinois Sec. Litigation*, 962 F.2d 566, 573 (7th Cir. 1992). Labaton neglected to quote this portion of Judge Posner's decision, which absolutely supports the "different procedures" suggested by CCAF here—and again demonstrates the need for adversarial presentation in this case, both because of what *Continental Illinois* says and because of Labaton's failure to disclose to this Court what *Continental Illinois* says. We're here in this case raising these questions of first impression now because this Court is the first to suggest that the arguable perjury that regularly infects these fee requests merits investigation, and because this Court's order indicated an openness to innovative solutions to the problems raised by the combination of class counsel's behavior and the lack of incentive of any party currently in the case to police it.[3]

Labaton argues that *Strasser* counsels against *amicus* where it will introduce new facts into the case, but that hasn't happened here: the Frank Declaration describing Frank's interaction with the *Boston Globe* was simply context demonstrating CCAF's familiarity with the case and pointing out that

---

[3] Given that one reason no class member retained CCAF to object is because no class member had reasonable notice of the abusive fee application—and given that Labaton fervently opposes giving the class such notice about that and the availability of pro bono counsel—Labaton's complaint about the lack of class-member objections to their misleading *de facto ex parte* fee application is akin to the *chutzpah* of a criminal defendant who murders his parents and asks for mercy because he's an orphan.

CCAF was not making arguments that Labaton was unfamiliar with.[4] This Court's Order already anticipates that there will be discovery conducted. Nothing in *Strasser* precludes CCAF's participation in the case or suggests there will be extra burden.

*McCarthy* is not on point; there, the proposed *amicus* "had both confidential religious congregant-minister and confidential attorney-client communications with the plaintiffs in this matter. So neither the court nor the defendants would be in a position to explore all the bases, assumptions, and motivations underlying the facts, insights, and explanations he seeks to offer." *McCarthy v. Fuller*, No. 08-cv-994-WTL-DML, 2012 WL 1067863, at *2 (S.D. Ind. Mar. 29, 2012). And unlike *WildEarth*, CCAF's *amicus* briefing and Frank Memo are not "duplicative of the much more extensive briefing of the same issues by the parties." *WildEarth Guardians v. Lane*, 2012 U.S. Dist. LEXIS 189661, at *20 (D.N.M. June 20, 2012) (rejecting Safari Club International as proposed amicus where parties included United Sportsmen for Fish and Wildlife, Inc., New Mexico Trappers Association, and New Mexico Council of Outfitters & Guides, Inc.).

As discussed in our initial memo (Dkt. 127 at 4), more recent cases in this circuit such as *Animal Prot. Inst. v. Martin* follow the *Neonatology* standard and unquestionably counsel for permitting CCAF's participation. 2007 U.S. Dist. LEXIS 13378, at *10 (D. Me. Feb. 23, 2007). Class counsel acknowledges that *amicus* is appropriate where "the *amicus* insures a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Id.* at *8 (quoted by Dkt. 145 at 3). So too here. No party presently in the case will raise the issues and defend the class's interests like CCAF is offering to do.

III.     **Nothing in *Gottlieb* or any other case precludes appointment of a guardian.**

Class counsel notes that most district courts that appoint guardians in fee proceedings do so to insulate themselves from the apparent conflict between protecting the interests of the class and

---

[4] Of note: Labaton does not dispute that they had access to the Frank Memo as early as November, though they coyly fail to explicitly admit it.

exercising strict impartiality in evaluating the reasonableness of the fee. But the same apparent conflict faces the special master here: class counsel is ascribing to the special master a fiduciary duty to protect the class at the same time the special master will be adjudicating the reasonableness of class counsel's arguments and factual representations. Yes, there is not precedent for appointing both a special master and a guardian—but neither is there precedent rejecting such a procedure. It's a question of first impression, in part because there is usually already an adversary element in the proceeding through objectors—but also because the *Boston Globe* story that prompted this proceeding is unprecedented, and presents this Court with numerous questions of first impression. There's no precedent for what CCAF is asking, but there's also no precedent for a district court catching what class counsel has done in this case after the final fee order has issued. The matter is an issue of first impression, and CCAF's proposed solution is consistent with approaches suggested by *Gottlieb v. Barry* and *Continental Illinois.* Given that class counsel does not want to issue new notice to the class about the pendency of the special master proceedings, a guardian is an appropriate solution to create the benefits of an adversary proceeding without the delays and expense of recruiting a class member to formally retain the same counsel that this Court would likely appoint to the guardian role. And as discussed above, class counsel's cited case of *Continental Illinois* expressly recognized the need for innovative solutions to the unique conflicts of interest presented in the Rule 23 context.

Class counsel makes much of the "or" language in *Gottlieb v. Barry* describing how a district court may choose to appoint a special master or a guardian. Depending on context, the word "or" can be either inclusive (A or B, or both) or exclusive (A or B, but not both). *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) (citing BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 639 (3d ed. 2011); *Hansen v. U.S. Bank*, 2016 U.S. Dist. LEXIS 168477, at *11 (D. Idaho Dec. 5, 2016) ("When used in the inclusive disjunctive sense, 'or' indicates that one or more of the listed things can be true. The intended meaning must be interpreted from context."). Garner proposes in fact that the inclusive use is more prevalent in ordinary usage. DICTIONARY OF LEGAL USAGE 639.  For example, a hostess may ask whether a guest at her tea party takes his tea with "milk or sugar" in the inclusive sense; no

one looks askance if the guest responds that she wants both milk *and* sugar. Because *Gottlieb* likewise emphasizes the district court's discretion to decide such matters according to its "preference," the inclusive "or" is by far the better reading. As for why the district court did not appoint a guardian in *Gottlieb*, there was no real need for one given the fact that the objecting class members themselves provided the adversarial presentation in front of the master. CCAF agrees that a guardian would not be necessary if an objecting class member comes forward—assuming that that class member agrees to litigate fully on behalf of the class, and not settle his or her individual claim in exchange for dropping a Rule 60 motion or related appeal.[5] *Gottlieb* did not assert that a district court should not exercise its discretion to appoint a guardian.

    *Gottlieb* simply stands for the proposition that it's within the discretion of the district court to decide how to resolve issues relating to a fee request and that nothing requires a court to choose to appoint a guardian. But CCAF never claimed that this Court **must** appoint a guardian. CCAF simply argues that this Court **should** appoint a guardian, and that it would further the goals of this Court to do so.

    Class counsel effectively admits as much by failing to challenge the arguments made by CCAF. CCAF argued that appointing a guardian for the class (or giving the class sufficient notice to encourage an absent class member to come forward to challenge the fraudulent fee request) would help protect any reduction of fees from appellate challenge because (1) district courts have more discretion to award relief under Rule 60(b) than sanctions under Rule 11, especially here where class counsel will argue, in effect, as they did to the *Boston Globe*, that "everyone does this," and that the widespread fraud in this area demonstrates their putative good faith in submitting the fee motion and (2) there is unnecessary ambiguity in the law whether a district court has *sua sponte* authority to revisit its own final

---

[5] As discussed in the Frank Memo, Lieff Cabraser once persuaded a CCAF client to instruct CCAF to dismiss his appeal seeking to reduce fees by $10 million in exchange for a personal $25,000 payment. In the absence of a court injunction or other rule precluding such payment offers or acceptances, class counsel can always buy off individual class members who have less at stake than the class counsel—an advantage to appointing a guardian *ad litem* who will not have that conflict.

judgment that class counsel may attempt to exploit on appeal. Class counsel's putative defense of this Court's jurisdiction **entirely ignores both of these potential appellate issues**.

Class counsel does not deny that they will challenge even the mildest of sanctions on appeal on grounds that they would not be able to challenge a discretionary decision under Rule 60 to reduce fees. *Compare Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475-1476 (9th Cir. 1988) (a non-frivolous filing cannot be grounds for sanctions) *and Wolfchild v. Redwood Cty*, 824 F.3d 761, 771 (8th Cir. 2016) (a "colorable legal argument" precludes sanctions for frivolousness) *with Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 931-932 (7th Cir. 1989) (Rule 11(b)(1) permits sanctions for non-frivolous filings made for an improper purpose). Indeed, the words "sanctions" and "Rule 11" are entirely absent from their brief.

Labaton does not deny that they will challenge a *sua sponte* Rule 60 motion on appeal as *ultra vires*. Instead class counsel concedes only the obvious points that this Court has the jurisdiction over the class action and that the settlement gives the authority to the Court to award fees—but the latter has already happened. Dkt. 111.

Class counsel does not and cannot point to a published decision where a court's jurisdiction over a settlement has allowed a district court to award fees in a final decision, and then retroactively reduce the fee award months later without the mechanism of a Rule 60 motion, and nothing in Section 19(b) of the Settlement (which merely describes what happens in the counterfactual world where either this Court had failed to grant the full fee request or where an objector successfully reduced the fee award on appeal from that final decision) suggests otherwise. Dkt. 89. Class counsel's argument against the advantages of a guardian in helping this Court to realize its intended goals very carefully elides any discussion of the actual advantages CCAF identified, and very carefully and slyly preserves class counsel's rights to challenge on appeal any remedy this Court creates in the absence of a motion by a guardian or other representative of the class. Class counsel has not agreed that they will not argue at a future date that this Court's November 2 fee order (Docket No. 111) is a final order that can only be modified under Rule 60 given that this Court's order in Docket No. 110 dismissed

the underlying actions with prejudice. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994). Nor can class counsel ever give that assurance: the rule in *Kokkonen* is jurisdictional, and the limits of Article III jurisdiction supersede any arguments of judicial estoppel.

That negative pregnant—and class counsel's attempt to have it both ways by carefully describing their position on this Court's jurisdiction in a nonbinding way—demonstrates both the need for adversary presentation and the need for a guardian for the class's interests.

## IV.    The November 13 Frank Memo reveals multiple discrepancies in the fee request, which is further shown by ERISA counsel's February 20 responses.

The November 13 Frank Memo (Dkt. 125-2), which class counsel does not dispute was in their possession for months before the February 2 order issued, disclosed numerous issues not discussed in the *Boston Globe* story; the misrepresentation of the Fitzpatrick law review article is just one of those issues, and hardly the "sole example."[6] That class counsel now spends two full pages attempting to rationalize the fee request's representation of Fitzpatrick's findings only proves that that original one-sentence description was a wildly misleading oversimplification that lacked the rigor that a fair *ex parte* proceeding requires, and confirms the need for adversary presentation in this case. (And even that rationalization is self-refuting. Labaton argues that the most relevant 17.8% median in Fitzpatrick's work was "less useful" because it "comprised a relatively small sample." Dkt. 145 at 14.

---

[6] The Frank Memo also discusses, *inter alia*, the likely churning through contract attorneys, who billed 63% of the hours in this case; that documents filed in the case suggest the defendant had indicated a willingness to settle for a substantial amount at an early stage, making the hours invested in the case exceptionally low-risk and subject to inflated churn that could only be revealed through billing records the parties failed to disclose to the Court; the inappropriateness of the multiplier; the inappropriateness of the 24.85% percentage-of-the-fund request; and class counsel's failure to disclose the inter-firm agreements on fees that likely made the fee application misleading. As discussed later in this section, this last speculative subject requiring further investigation has been borne out by the ERISA firms' February 20 responses disclosing these inter-firm agreements in part. It likely will be borne out further by further investigation, but the *Boston Globe* story does not even hint at this issue.

But the original fee motion, as class counsel admits in the *preceding paragraph*, used an equally "small sample" of "eight" cases, just one that was gerrymandered in a more favorable way. *Id.* at 13-14.)

Class counsel's reliance on their cited cases is misplaced at best and affirmatively misleading at worst. For example, *Puerto Rican Cabotage* expressly recognizes that "[g]enerally speaking, there is an inverse relationship between an increase in the size of the settlement fund and the percentage fee award." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011) (citing *In re Union Carbide Corp. Consumer Products Business Sec. Litigation,* 724 F. Supp. 160, 166 (S.D.N.Y. 1989) ("Obviously, it is not ten times as difficult to prepare, and try or settle a ten million dollar case as it is to try a one million dollar case, although the percentage contingent fee will return ten times as much."); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("In many instances the increase [in the fund] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.")). *See also In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170-73 (D. Mass. 2014) (citing cases and Federal Judicial Center for proposition that megafund settlements generally merit lower percentages (while recognizing split in authority); citing Fitzpatrick's finding that that is how most courts rule; and holding that "sizes of fee awards in similar mega-cases suggest that 33 1/3% of the settlement fund is too high a percentage" to award, even though risky case had taken ten years and a bellwether trial to resolve); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1045-46 (9th Cir. 2002) (courts making fee awards must consider "all the circumstances of the case" including the "relevant circumstance" of "fund size"); *id.* at 1048-50 (holding district court did not abuse discretion in granting 28% award given the consideration of all of the relevant circumstances, including the "exceptional results," the "extremely risky" nature of a case that had to be resuscitated twice on appeal, the benefits beyond the cash settlement fund, and the burdens of eleven years of litigation). Once again, the difference between what Labaton says cases say and what those cases actually hold underscores the importance of adversarial presentation in this case. The difference between what class counsel risked and achieved to obtain the 28% award in *Vizcaino* and *Neurontin*

and a 24.85% award in this mega-fund case is especially dramatic—especially since an accurate lodestar calculation here would result in a higher multiplier than the substantially riskier *Vizcaino* and *Neurontin*.

Importantly, an issue anticipated by the November 13 Frank Memo—the undisclosed split in fee arrangements between the firms—has since partially come to light a few days after CCAF filed its motions on February 17. Several of the ERISA firms in this case have disclosed that they agreed (whether voluntarily or under duress) to arrangements with lead class counsel in this case to cap their fee recovery from the total Rule 23(h) award to 90% of their lodestar—and reduce even that capped amount *pro rata* if this Court reduces the fee award for the wrongdoing of other law firms. *Compare* Dkt. 138 (McTigue recovery capped at 90% of lodestar with threat of clawback in event of fee reduction) *with* Dkt. 104-24 (McTigue's entire lodestar included in total Rule 23(h) request lodestar without discount). The Rule 23(h) application created the false impression that McTigue would be compensated by over $4.7 million of the total fee award (1.8 multiplier times $2.625 million lodestar) when in fact they were to be paid less than half of that with other law firms collecting the undisclosed difference. This further means both that (1) class counsel received a much higher multiplier than the 1.8 they represented to the court in Dkt. 104 or the 2.0 they represented to the court in Dkt. 116; and (2) this case was sufficiently free of risk that firms such as McTigue were willing to participate on a contingent basis without collecting their full lodestar—even though their lodestar reflected actual attorney time without the artificial inflation of exaggerated contract-attorney rates. This suggests that the actual fee award in this case was inflated by well over $40 million more than that would have fairly compensated class counsel for their risk and time.

The Frank Memo—and McTigue's explosive February 20 disclosure that both the Rule 23(h) application and the "correction letter" misled this Court concerning lodestar multiplier—demonstrates that there is more to this story than discussed in the *Boston Globe* story this Court relied upon, that CCAF's participation in the case can be helpful to the Court and any special master, and that adversarial presentation is critical for the full truth to come out.

## V.      Rule 23(h) entitles the class to either reasonable notice or a guardian.

Class counsel argues that no new notice is required because the dispute over fees doesn't affect settlement rights or opt-out rights. But that confuses the requirement of notice under Rule 23(e) with the entirely separate right of notice under Rule 23(h).

Under Fed. R. Civ. Proc. 23(h), notice of a motion to award fees to class counsel must be "directed to class members in a reasonable manner." By definition, this requires giving class members a reasonable opportunity to object. *In re Mercury Interactive Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010); *Redman*, 768 F.3d at 638. Class counsel's letter to the Court seeking to retroactively modify their fee application (Dkt. 116) was not only well after the objection deadline, but after the final fee order was issued; class members never received notice of this letter, nor notice of this Court's February 2 order, nor notice of the hidden intra-firm fee agreements (which still have not been fully disclosed) and have not had a reasonable opportunity to object to the information these documents provided, or to the other information hidden (and in some cases still hidden) from the Court and the class in the fee application. The only way the class will not be unfairly and impermissibly prejudiced by the lack of reasonable Rule 23(h) notice is if a guardian is appointed to stand in the shoes of the absent class members. A guardian avoids the expense and delay of additional notice, and avoids the prejudice caused by the lack of notice.

## VI.     CCAF objects to Layn Phillips as a co-special master.

As an initial matter, Mr. Frank discloses that he worked closely with Judge Phillips as an associate when both were at Irell & Manella from 1997 to 2001. Judge Phillips was a mentor to Frank, second-chaired Frank's first appellate oral argument for a paying client, and persuaded Frank not to leave the legal profession.

Notwithstanding Mr. Frank's love, respect, and admiration for Judge Phillips, CCAF objects to Layn Phillips being appointed as special master or co-special master. Labaton has not shown any need, precedent, or rationale for appointing a co-special master. At best, such appointment would imposed duplicative costs without the benefit of adversarial advocacy. While class counsel argues that

appointing a *pro bono* guardian and special master with distinctive roles is somehow wasteful, it is silent about what benefit a second paid master brings to the investigation. Man cannot serve two special masters; only one impartial report and recommendation should issue. Moreover, as the Phillips declaration shows, Judge Phillips has engaged in extensive past business as a mediator with the law firms in this case. Phillips Decl. (Dkt. 129-2) ¶¶ 9-10.

## CONCLUSION

Thus, the Court should grant CCAF's motion for leave to file the *amicus* response (Dkt. 126), and for leave to participate in any special master proceedings as guardian *ad litem* for the class or *amicus curiae*. In the alternative, the Court should appoint another firm capable of litigating against the sophisticated counsel in this case as guardian *ad litem*, or provide additional notice to the class so that absent class members may retain counsel to protect interests that the class representative has failed to protect with respect to the fee application.

Dated: March 2, 2017

Respectfully submitted,

/s/ M. Frank Bednarz
M. Frank Bednarz (BBO No. 676742)
COMPETITIVE ENTERPRISE INSTITUTE
1145 E Hyde Park Blvd. Apt 3A
Chicago, IL 60615
Telephone: 202-448-8742
Email: frank.bednarz@cei.org

/s/ Theodore H. Frank
Theodore H. Frank (*pro hac vice*)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
Telephone: 202-331-2263
Email: ted.frank@cei.org

*Attorneys for Amicus Curiae*
*Competitive Enterprise Institute*
*Center for Class Action Fairness*

**CERTIFICATE OF SERVICE**

I certify that on March 2, 2017, I served a copy of the above on all counsel of record by filing a copy via the ECF system.


Dated: March 2, 2017

/s/ M. Frank Bednarz
M. Frank Bednarz