**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, ) ) )<br><br>Plaintiffs, ) )<br><br>v. ) )<br><br>STATE STREET BANK AND TRUST COMPANY, ) )<br><br>Defendant. ) | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, ) ) )<br><br>v. ) )<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, ) ) )<br><br>Defendants. ) | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, ) ) )<br><br>v. ) )<br><br>STATE STREET BANK AND TRUST COMPANY, ) )<br><br>Defendant. ) | No. 12-cv-11698 MLW |

**OBJECTING PLAINTIFFS' LAW FIRMS' OBJECTION TO SPECIAL MASTER'S
ORDER REGARDING RETENTION OF JOHN W. TOOTHMAN**

Pursuant to Federal Rule of Civil Procedure 53(f) and Paragraph 9 of the Court's March

8, 2017 Memorandum and Order (ECF No. 173, the "Order of Appointment"), Labaton

Sucharow LLP ("Labaton Sucharow"), Lieff Cabraser Heimann & Bernstein, LLP and the

Thornton Law Firm LLP (the "Objecting Plaintiffs' Law Firms"), respectfully submit this objection to the order of the Special Master regarding the retention of John W. Toothman (ECF No. 193) ("Toothman Order").[1]  As explained more fully below, Mr. Toothman is a partisan, with a long history of pre-existing opinions on the key issues involved in these proceedings, who has been retained in the past by Mr. Theodore Frank of the Competitive Enterprise Institute. According to the Toothman Order, the Special Master and his counsel, William F. Sinnott ("Mr. Sinnott"), have retained Mr. Toothman as a technical advisor "to assist and guide" the Special Master's "inquiry and investigation," and perhaps to issue a report to the Special Master. Toothman Order at 6, 10.  The Objecting Plaintiffs' Law Firms object to this retention, on the grounds that (a) it is inappropriate for the Special Master and his attorney to retain a partisan to provide opinions and assistance to the Special Master in this manner, and (b) such retention outside the scope of Fed. R. Evid. 706 ("FRE 706") deprives Objecting Plaintiffs' Law Firms of the protections to which they would be entitled under FRE 706.

## BACKGROUND

On March 8, 2017, this Court issued a Memorandum and Order appointing retired United States District Judge Gerald Rosen as a Special Master to investigate and submit a Report and Recommendation concerning issues that emerged regarding the Court's award of attorneys' fees, expenses, and service awards in this class action.  *See* Order of Appointment.  The following day, the Special Master advised undersigned liaison counsel by email that he had retained the services of Mr. Sinnott to attend all interviews, propound written discovery, and take any necessary depositions for the proceedings before the Special Master.  The Special Master also

---

[1] The complete name of the Toothman Order is "Special Master's Order Regarding the Law Firms' Objection to Retention of John W. Toothman as Advisor to Counsel to the Special Master."

indicated that he was considering "seek[ing] the assistance of a forensic accounting firm and/or an expert on legal billing practices," and that he had "received several unsolicited offers to assist" him and was also "interviewing recommended firms."  The Special Master added that any appointment he might make, either of a forensic accounting firm or a legal billing practices expert, would be "solely [in] his discretion," but that he would "consider any thoughts on any such appointments."  The Special Master then identified four individuals, including Mr. Toothman of The Devil's Advocate, the subject of this objection.

On March 23, 2016, the Special Master disclosed in a telephone conversation with undersigned liaison counsel that either he or his counsel had retained Mr. Toothman, who represents himself to be an expert on legal billing practices.  Because they believe Mr. Toothman to be partisan, with a long history of pre-existing opinions on the key issues involved in these proceedings, and because of his past business relationship with Theodore Frank of the Competitive Enterprise Institute, the Objecting Plaintiff's Law Firms voiced serious concerns about the appointment and the impact of Mr. Toothman's appointment on their due process right to a fair and impartial proceeding.  Undersigned liaison counsel asked the Special Master to reconsider his decision to appoint Mr. Toothman.  The Special Master, in communications between March 23 and March 28, declined to reconsider.

On March 28, the Objecting Plaintiffs' Law Firms transmitted a formal objection to the Special Master regarding the appointment of Mr. Toothman, asking that he be stricken as a FRE 706 expert[2] on the grounds of lack of independence, partisanship, and pre-conceived

---

[2] As explained in the objection, the Special Master had stated that Mr. Toothman was appointed not pursuant to Rule 706, but pursuant to authority granted by this Court in the Order of Appointment.  Order of Appointment at 6. As explained below, the Objecting Plaintiffs' Law Firms do not understand the Order of Appointment to provide standalone, independent authority to appoint an expert; thus, the objection was made pursuant to FRE 706.

determinations on key issues in this proceeding.[3]  On March 31, 2017, the Special Master issued

the Toothman Order, denying the objection.  The Special Master cited his Order of Appointment,

which allows him to "retain any firm, organization, or individual he deems necessary to assist

him in the performance of his duties."  Toothman Order at 5.  The Special Master went on to

explain that he and Mr. Sinnott had appointed Mr. Toothman as a technical advisor, not a Rule

706 expert, and conclude that there is "no basis to reconsider or withdraw Mr. Toothman's

retention, or otherwise disqualify him from serving as technical advisor to the Special Master in

this matter."  *Id.* at 4, 7-8.

        The Toothman Order states that Mr. Toothman's role will not be "to render a formal

expert opinion or to make factual findings in this case," but rather to "assist[] the Special Master

and his counsel in understanding the technical terms, concepts, and contexts that underlie legal

billing practices in the area of commercial class actions based upon his specialized knowledge in

this area, and how these relate to the specific billing practices in this case."  *Id.* at 7.  More

specifically, the Toothman Order describes Mr. Toothman's services and duties to include:

> assisting in the preparation and review of discovery and assisting in the
> investigation and analysis of billing and related data.  Mr. Toothman will further
> assist in the Special Master investigation by guiding the Special Master's inquiry
> into other relevant topics, including but not limited to Lodestar calculations in
> contingent fee cases, determination of regional billing rates, and best practices for
> recording and absorbing litigation-related expenses.

Toothman Order at 6-7.  Notwithstanding the foregoing, the order concludes by leaving open the

possibility that Mr. Toothman may issue a report to the Special Master, in which case,

---

[3] The objection was not initially filed on the docket, based on liaison counsel's understanding of
the Court's instruction, as set forth in the Order of Appointment, regarding filings before the
Special Master.  On March 31, 2017, however, the Court issued a Memorandum and Order (ECF
No. 192) directing, among other things, that all submissions to the Special Master be filed on the
docket.  Accordingly, on April 1, 2017, counsel filed the objection, which at that point the
Special Master already had overruled, on the docket.  *See* ECF No. 194.

"[a]lthough not required," the report "will be disclosed to the Law Firms and they will be given the opportunity to comment on it." *Id.* at 10. The "opportunity to comment" on any report falls well short of the parties' right to depose, call as a witness, and cross-examine an expert when the expert is appointed pursuant to FRE 706,[4] the only rule that authorizes an Article III court to appoint its own expert witness.

## ARGUMENT

Objecting Plaintiffs' Law Firms object to the Toothman Order and the decision of the Special Master to retain Mr. Toothman, pursuant to Federal Rule of Civil Procedure 53(f) and Paragraph 9 of the Order of Appointment. This Court reviews the procedural decision to retain Mr. Toothman for abuse of discretion. Fed. R. Civ. P. 53(f)(5). This Court reviews the Special Master's statements of law regarding the appropriate use of a technical advisor, pursuant to which the Special Master concludes that this appointment was appropriate, *de novo*. Fed. R. Civ. P. 53(f)(4).

Objecting Plaintiffs' Law Firms respectfully submit that under either and/or both standards, the retention of Mr. Toothman is not appropriate in connection with the investigation and report and recommendation being undertaken by the Special Master at the Court's direction.

**I.      Mr. Toothman is a Partisan, Whose Business is to Opine that Courts should Reduce Amounts Sought Via Fee Requests.**

Mr. Toothman is the President of a consulting company called "The Devil's Advocate," which provides "legal fee management and litigation consulting." On the Frequently Asked

---

[4] Under FRE 706, the Objecting Plaintiffs' Law Firms would have had the opportunity to show cause why Mr. Toothman should not be appointed (FRE 706(a)); had the right to a disclosure of the expert's duties in writing or orally at a conference in which the parties have an opportunity to participate (FRE 706(b)); been advised of any findings the expert makes (FRE 706(b)(1)); had the opportunity to depose the expert (FRE 706(b)(2)); had the right to call the expert to testify in any evidentiary proceedings (FRE 706(b)(3)); and had the right to cross examine the expert (FRE 706(b)(4)).

Questions page of Mr. Toothman's website, under the question "Is The Devil's Advocate 'anti-lawyer'?" Mr. Toothman's website states:  "Even when we 'support' a legal fee, we rarely find that 100% of the requested fee is reasonable by all standards.  Just as few things are perfect, so it is with legal bills."  http://www.devilsadvocate.com/faq.htm, last visited April 4, 2017 (internal quotation marks in original).  Consistent with this criticism, which assumes that no lawyer or law firm is capable of rendering bills that are "reasonable by all standards,"  The Devil's Advocate website viewed as a whole conveys Mr. Toothman's consistent opinion that fee requests are never (or virtually never) reasonable "by all standards" and should therefore be reduced, and that clients should retain his services to achieve a reduction in attorneys' fees, not for the purpose of seeking objective, expert advice on the "technical terms, concepts, and contexts that underlie legal billing practices."  Toothman Order at 7.

Indeed, although not discussed in the Toothman Order,[5] Mr. Toothman has been retained to argue in favor of reducing fee awards by Mr. Frank, who has already made his objection to the fee award in this case known and who, similarly, strongly holds the opinion that attorneys' fees should be reduced.  In the case in which Mr. Toothman worked with Mr. Frank, *In re Citigroup Inc. Securities Litigation*, No. 07-civ-9901 (S.D.N.Y.), Mr. Toothman opined on many of the issues that will be decided in this proceeding, concluding (predictably) that the fees charged for project or contract attorneys were unreasonable, based largely in Mr. Toothman's view of how law firms ought to bill for document review and deposition preparation.  *See, generally,* ECF No. 194-1 ("Declaration of John W. Toothman" in *In re. Citigroup Inc. Securities Litigation*).

For example, Mr. Toothman opined that document review should be done entirely electronically "by converting all the data into searchable databases (as with Google and so

---

[5] The Special Master disclosed this relationship in a conversation with Liaison Counsel but indicated that the relationship was not on-going.

forth)" rather than using attorneys. Mr. Toothman referred to this non-judgment based electronic review (generally known as predictive coding) as "normal." *Id.* at ¶ 42.[6] Predictive coding, the efficacy of which is largely limited to an initial responsiveness review, was not used by any of Objecting Plaintiffs' Law Firms in the State Street case, where attorney judgment was required in the document review and analysis process.

In addition, Mr. Toothman opined that document review is low-skilled, non-attorney work, and that "no fee-paying client" would pay for document review by personnel with law licenses. *Id.* at ¶ 43. He further belittled the work of document review attorneys with a demeaning metaphor, stating that a "lawyer cannot charge Michelangelo rates for painting a barn" and opining that "[c]lass counsel's contract lawyers were barn painters." *Id.* at ¶ 47. The Objecting Plaintiffs' Law Firms, like many sophisticated law firms in complex commercial litigation, employ fully licensed, but off-partnership track, attorneys to exercise legal judgment in the document review process, in such tasks as identifying and flagging so-called "hot" documents for use in depositions, in the settlement process, and, if necessary, at trial. "Fee-paying clients" not only pay for such review at non-contingent commercial law firms; they would resist the suggestion that the review be undertaken by a software program or low-skilled non-attorneys. Mr. Toothman is already committed to a different view.

---

[6] Objecting Plaintiffs' Law Firms disagree with these conclusions, as well as the others reached by Mr. Toothman in the referenced declaration. If Mr. Toothman is to serve any role in these proceedings (which he should not), due process dictates that any "advice" or opinions he provides to the Special Master should be disclosed, and that the Objecting Plaintiffs' Law Firms should have the full ability to challenge his assertions as provided in FRE 706. *See* Section II.B, *infra*.

Broadening his complaints, Mr. Toothman also opined that size and "prestige" of a law firm, and whether it is "highly respected"[7] should not be factors in the reasonableness of an attorney's hourly rate. *Id.* at ¶ 53. Objecting Plaintiffs' Law Firms contend that these statements, while facially supporting Mr. Toothman's opinion that the fees he was reviewing were "unreasonable," are contrary, not simply to the way billing is done in the legal profession, but also to the case law addressing lodestar factors,[8] and simply not credible.

Tellingly, the Objecting Plaintiffs' Law Firms could not find any publicly-docketed affidavits, testimony, or reports from Mr. Toothman in which he opined and concluded that requested fees were reasonable.[9] In the cases Objecting Plaintiffs' Law Firms were able to find, Mr. Toothman uniformly argued, consistent with his position on The Devil's Advocate website, that the attorneys' fees were unreasonable and should be reduced. These are but a few examples:

- *In re Natural Gas Royalties Qui Tam Litigation*, MDL Docket No. 99-MD-01293 (D. Wyo., submitted March 23, 2012) (ECF No. 194-3). Mr. Toothman was retained by the relator to review legal fees and expenses submitted by defendants, as a predicate for setting an amount to be found by the Court as a sanction. Mr.

---

[7] It is unclear whether Mr. Toothman rejects the 12 lodestar adjustment factors adopted by the United States Court of Appeals for the Fifth Circuit in a civil rights context in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and cited with approval by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.8 (1983), and by the United States Court of Appeals for the First Circuit in *Diaz v. Jiten Hotel Management, Inc.*, 741 F.3d 170, 177 and n.7, (1st Cir. 2013). Those factors include "the experience, reputation, and ability of the attorneys." *Id.*

[8] *See* n.7, *supra*.

[9] The Toothman Order cites three cases in which Mr. Toothman purportedly testified in support of an attorneys' fee award. Toothman Opinion, at 9 n.1. One is a case before the American Arbitration Association, that is not available to the Objecting Plaintiffs' Law Firms. The other two are federal cases from 1995. There is nothing available on the electronic dockets of these cases regarding Mr. Toothman, and to date, Objecting Plaintiffs' Law Firms have been unable to obtain any information regarding the opinions he apparently offered in them.

Toothman offers numerous criticisms regarding the fees and expenses claimed, identifying several categories that he opines should not be included.  His comments are not confined to a review of the papers before him, however; he attempts to support his opinions with sweeping, inappropriate generalizations about the profession as well.  *See, e.g.*, ¶ 34 ("One of the paradoxes of hourly rates is that lawyers who claim to be worth more per hour because of their experience and skill typically also travel in larger packs, requiring larger pyramids of comparatively expensive lawyers and others to support them."); ¶ 38 n.10 ("bet the company language is what law firms use to make small cases into huge ones by detaching clients' cost-effectiveness from reality").

- *FKI PCL and FKI Engineering, Ltd. v. Composite Technology Corp. et al.*, No. 09-cv-05975 (C.D. Cal., submitted November 19, 2009) (ECF No. 194-4).  Mr. Toothman was retained by defendants to review a fee petition submitted by plaintiffs and their counsel in connection with a motion for sanctions.  In support of his ultimate opinion that the requested fee should be reduced considerably, Mr. Toothman opines that billing for a first-year associate's work is "an example of a firm attempting to bill a junior lawyer's on the job training" because "if this is a matter for which a first year associate's expertise is sufficient, [plaintiffs' counsel] cannot suggest that this was in any way complex or novel." *Id.* ¶ 15(e).  Mr. Toothman also makes a disparaging analogy between law firms and fast food chains, opining that Mayer Brown LLP's comparison of its rates to other national law firms does not make its rates reasonable because "[t]he reasonable price of a

hamburger is not determined by polling Morton's, the Palm, and other 'leading'

restaurants – Carl's Jr. is closer to the standard for the locale." *Id.* ¶ 16(a).

- *Feesers, Inc. v. Michael Foods, Inc. et al.*, No. 04-cv-00576 (M.D. Penn.,
  submitted June 26, 2009) (ECF No. 194-5).  Mr. Toothman was retained by one
  of the defendants to review Plaintiffs' motion for attorneys' fees and costs.  Mr.
  Toothman offers his gratuitous opinion that "[c]alling the case 'complex,' 'hotly
  disputed,' or blaming the opposition is, unfortunately, what almost everyone says
  in every case," and ultimately concludes that he cannot present a final opinion or
  estimate a reasonable amount, but that he can opine "that the requested fees and
  expenses are unreasonable and excessive to a significant degree." *Id.* ¶¶ 16(a),
  33.

- *Kubbany et al. v. Trans Union LLC, et al.*, No. 08-cv-00320 (N.D. Cal., submitted
  February 5, 2009) (ECF No. 194-6).  Mr. Toothman was retained by defendant to
  review plaintiffs' motion for attorneys' fees and expenses.  Among other
  challenges, he opines that the rates charged are high, again belittling any
  suggestion by plaintiffs' counsel that the work performed was "complex":

> While there are, indeed, some inherently complex cases, when it
> comes time to justify their fees, every lawyer claims his or her case
> was "complex," which they also blame on the court, its rules, their
> opponents, and so on, just as here.  Typically, what makes cases
> "complex" is the inefficiency and denial of the labeling lawyer.
> Setting fees at many times the value of the case sends the wrong
> signal.

*Id.* ¶ 15(b) n.2.

As each of these examples shows, Mr. Toothman has a clear agenda that he expresses

time and time again when he is hired, by Mr. Frank and others, to hunt for ways to opine that

fees are unreasonable.  Mr. Toothman's description of his services and expertise on his public

website, his work on other cases, and his work with Mr. Frank, who has already opposed the fee

award in this case, make clear that Mr. Toothman is a partisan, who is uniquely inappropriate to

advise the Special Master or his counsel in an objective, neutral and fair manner.

## II.    Objecting Plaintiffs' Law Firms' Objection Should Be Sustained Because the Retention[10] of the Partisan Mr. Toothman is Improper.

As explained above, Objecting Plaintiffs' Law Firms objected to the retention of Mr.

Toothman as inappropriate under FRE 706.  In the Toothman Order, the Special Master says that

Mr. Toothman is not being appointed pursuant to Rule 706, but pursuant to the Order of

Appointment and the body of case law recognizing that a Court may retain a "technical advisor"

to assist the Court when facing complex issues.  Toothman Order at 5-6, 8-10.  Respectfully, the

different procedure now cited does not eliminate the unfairness or resolve the issue.   The

Objecting Plaintiffs' Law Firms submit that it makes Mr. Toothman's appointment even more

inappropriate.

### A.    Mr. Toothman Cannot Properly be Appointed as a Technical Advisor.

Federal Rule of Civil Procedure 53 allows the Court to delegate its judicial duties to a

master, subject to the requirements and procedural safeguards set forth in the rule.  "The use of

masters is to aid judges in the performance of specific judicial duties, as they may arise in the

progress of a cause, and not to displace the court." *La Buy v. Howes*, 352 U.S. 249, 256 (1957)

(internal citation and quotation marks omitted).  Thus, without displacing the district court, the

master may exercise certain of the Court's duties, subject to its later review.  *See* Fed. R. Civ. P.

---

[10] The Toothman Order says at one point that Mr. Sinnott has retained Mr. Toothman (*id.* at 3) but otherwise provides that the Special Master is responsible for the retention (*e.g., id.* at 6). Since it is clear that Mr. Toothman would be providing advice directly to the Special Master, the specifics of whether the Special Master or Mr. Sinnott retained him appear to be immaterial.

53(a)(1) and (f).  Necessarily, the Special Master's authority to perform these duties is circumscribed by the district court's own authority and the tools at the district court's disposal. *See* Fed. R. Civ. P. 53.  Accordingly, when the Order of Appointment allows the Special Master to retain persons to assist him, he must do so in a way that is consistent with the authority that the Court would have in these circumstances.

The Toothman Order disclaims FRE 706 as the basis for the appointment at issue here, and instead points to cases recognizing a court's inherent authority to appoint a technical advisor. *See, e.g., Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988).  An appointment of such an advisor, however, is "a near-to-last resort," that is only appropriate where the court "is faced with problems of unusual difficulty, sophistication and complexity."  *Reilly*, 863 F.3d at 156-57 (noting that appropriate instances for appointing a technical advisor are "hen's-teeth rare").  Moreover, Courts have recognized the need to be "extremely sensitive" to the risk that "the judicial decision-making function will be delegated to the technical advisor."  *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1379 (Fed. Cir. 2002).  Accordingly, in those rare cases where such an advisor is appropriate, the court must "establish[] safeguards to prevent the technical advisor from introducing new evidence and to assure that the technical advisor does not influence the district court's review of the factual disputes."  *Id.*; *see also Reilly*, 863 F.2d at 156 (recognizing that such an appointment is "reserved for truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role").

These proceedings involve the review of legal billings.  The Objecting Plaintiffs' Law Firms respectfully suggest that such a topic does not require the kind of technical expertise found in the "hen's-teeth rare" cases in which Courts have concluded that a technical advisor is

appropriate.  *Reilly*, 863 F.3d at 156-57.  For example, in *Reilly*, the First Circuit held that a technical advisor was appropriate because the case involved "esoterica:  complex economic theories, convoluted by their nature, fraught with puzzlement in their application, leading to a surpassingly difficult computation of damages" and the court needed a technical advisor "to help the court understand the theories which were bruited about."  863 F.2d at 157; *see also Amgen, Inc. v. F. Hoffmann La Roche Ltd.*, 581 F. Supp. 2d 160, 217 n.14 (D. Mass. 2008) (appointing Massachusetts Institute of Technology applied economics professor to serve as technical advisor on the economics of the Medicare reimbursement system in complex patent litigation); *Amgen, Inc. v. Hoescht Marion Rousel, Inc.*, 126 F. Supp. 2d 69, 78 n.3 (D. Mass 2001) (appointing Massachusetts Institute of Technology professor to serve as technical advisor on recombinant DNA technology in complex patent litigation), *vacated in part on other grounds*, 314 F.3d 1313 (Fed. Cir. 2003); *MediaCom Corp. v. Rates Tech.*, 4 F. Supp. 2d 17, 29 (D. Mass. 1998) (asking parties to agree on technical advisor in complex patent litigation involving telephone and network circuitry where Court acknowledged it was "without an adequate basis in skill or knowledge of the relevant art" and the patent "presents questions that are sufficiently complex and technical that the Court would be remiss to impose its lay understanding . . . without the benefit of expert guidance"); *Biogen, Inc. v. Amgen Inc.*, No. 95-10496-RGS, 1996 U.S. Dist. LEXIS 22617 (D. Mass. Dec. 10, 1996) (appointing Massachusetts General Hospital medical researcher to serve as technical advisor on production of human proteins in non-human host cells using recombinant DNA in complex patent litigation).  Here, there is neither esoterica nor complex or convoluted theories.  Moreover, courts – including the Special Master when serving as a district judge – routinely review and adjudicate fee petitions in class action and other cases. Review of the submissions in support of the fee award in this case does not require an

understanding of complicated economic theories or models outside the comprehension of the Special Master.

Moreover, even if a technical advisor were appropriate in this proceeding, the Special Master's appointment of Mr. Toothman would not be.  A technical advisor must be neutral and non-partisan, as his role is to be a technical guide to the court, not to support one side or the other with evidence or opinions.  *See, e.g., Reilly*, 863 F.3d at 158 (affirming district court's appointment of an economics professor from Brown University to provide "neutral technical advice"); *TechSearch L.L.C.*, 286 F.3d at 1379 (the court must use a "fair and open procedure" to appoint "a neutral technical advisor"); *MediaCom Corp.*, 4 F. Supp. 2d at 30 (ordering parties to select technical advisors "who reflect the generally accepted range of views" about technology); *Reilly v. United States*, 682 F. Supp. 150, 152 (D.R.I. 1988) (appointing "a neutral specialist"); *Biogen, Inc.*, 1996 U.S. Dist. LEXIS 22617, at *4 (requiring technical advisor to affirm "that he is a neutral third party in regard to this action" and "that he has no ideological, financial, or professional interest" in the litigation outcome).[11]  For the reasons explained above, Mr. Toothman is neither neutral nor non-partisan.

The Toothman Order also suggests that Mr. Toothman's responsibilities will not be limited to those of a technical expert who explains concepts, and that he will serve an evidentiary role.  For example, the Special Master explains that Mr. Toothman will "guid[e] the Special Master's inquiry into other relevant topics, including but not limited to Lodestar calculations in contingent fee cases, determination of regional billing rates, and best practices for recording and absorbing litigation-based expenses."  Toothman Order at 6-7.  Unless this evidence is already in

---

[11] The Toothman Order states that "[t]here are no mechanisms for a party to disqualify a judicial technical expert."  However, in *Reilly*, the First Circuit advised that the parties should be notified of the technical advisor's identity before the court makes the appointment and "be given an opportunity to object on grounds such as bias or inexperience."  863 F.2d at 159.

the record, this type of "guidance" is inappropriate for a neutral technical advisor who has no evidentiary function and who may not influence the Special Master's opinion. *See TechSearch*, 286 F.3d at 1381 (the court must exercise due care to avoid improper influence by its technical advisor).

The appointment of Mr. Toothman is also inappropriate because the appointment does not appear to include adequate procedural safeguards to protect the Objecting Plaintiffs' Law Firms from impermissible fact- or evidence-gathering.  These safeguards are especially important here where Mr. Toothman's partisanship is not reasonably subject to dispute.  In *Reilly*, the First Circuit held that, *at a minimum*, the parties must be given the opportunity to object to the proposed technical advisor on bias, inexperience, or other grounds, the Court should issue a written "job description" or issue "comprehensive verbal instructions to the advisor, on the record, in the presence of all counsel," and the advisor must submit an affidavit at the conclusion of the engagement attesting to his compliance with the job description.  863 F.2d at 159-60.

Consistent with these requirements, in *Biogen, Inc. v. Amgen, Inc.*, the Court ordered the technical advisor to submit an "Affidavit of Engagement" at the beginning of his engagement in which he affirmed under penalty of perjury that he:  (1) was a neutral party, with no ideological, financial, or professional interest in the litigation outcome; (2) would assist the Court "in a manner consistent with generally accepted knowledge in the relevant area"; and (3) would not engage in any independent investigation of the litigation or provide evidence to the Court.  1996 U.S. Dist. LEXIS 22617, at *9-12.[12]  The Court also ordered that it would identify for the parties

_____

[12] The technical advisor also affirmed in the Affidavit of Engagement that he had no financial, business, or personal interest in either party or any disclosed witness; that he would not acquire stock in either party until final resolution of the action; that he would not seek to benefit from

any materials used by the technical advisor in providing advice to the Court outside of the evidence in the record, or materials on which a person versed in the relevant technical field would reasonably be expected to rely.  *Id.* at *5.

At the conclusion of the technical advisor's appointment, the Court required that the technical advisor affirm under penalty of perjury that he had "acted neutrally without ideological, financial or professional interest in the outcome of this case" and had "consistent with the court's instructions, refrained from offering an opinion as to the ultimate issues of law raised by this case, and, in fact, have no such opinions."  *Biogen, Inc. v. Amgen Inc.*, No. 95-10496-RGS, 2000 U.S. Dist. LEXIS 16877, at *3 (D. Mass. Sept. 28, 2000).  Especially here, where Mr. Toothman has such strong and clear views about the unreasonableness of most attorneys' fee awards, and where Mr. Toothman primarily serves as an advocate to reduce attorneys' fees, the lack of procedural protections is problematic.

**B.**     **If Mr. Toothman is to Provide a Report, the Parties Must Be Permitted the Full Right to Cross-Examine and Challenge His Opinions**

At a minimum, if Mr. Toothman's appointment as a "technical expert" over objection stands, he must not be permitted to exceed the bounds of that role.  The Special Master notes in the Toothman Order that "Mr. Toothman has not been retained to render a formal expert opinion or to make factual findings in this case."  Toothman Order at 7.  However, the Special Master adds that "if Mr. Toothman does issue a report to the Special Master, it will be disclosed to the Law Firms and they will be given the opportunity to comment on it before the Special Master issues his Report and Recommendation."  *Id* at 10.  This latter statement suggests that Mr. Toothman is being considered for a role that would be improper, unless (at a minimum) the

---

confidential information he learned during the action; that he would inform the Court immediately of any conflict or potential conflict; and that he would inform the Court immediately if either party or any person sought to contact him about the litigation.  *Id.*

Objecting Plaintiffs' Law Firms are given a full opportunity to examine him and otherwise refute his testimony.

As a technical advisor, Mr. Toothman is not a witness and may not contribute evidence. *Reilly*, 863 F.2d at 157.  Mr. Toothman may do no independent fact-finding, and the Special Master may not rely on any evidence supplied to him by Mr. Toothman or unduly defer to Mr. Toothman in finding facts or arriving at conclusions of law. *Id.*; *see also TechSearch*, 286 F.3d at 1379.  If Mr. Toothman becomes an evidentiary source by submitting a formal expert report, the Plaintiffs' Law Firms are entitled to cross-examine him. *Reilly*, 863 F.2d at 159.  Moreover, if Mr. Toothman submits a formal expert report, he becomes a Federal Rule of Evidence 706 expert and not a technical advisor. *See FRE 706; see also Reilly*, 863 F.2d at 159-60 and n.8 ("the advisor is not permitted to bring new evidence into the case").  Objecting Plaintiffs' Law Firms respectfully submit that Mr. Toothman cannot be a Rule 706 expert because of his bias and clear partisanship.  However, if Mr. Toothman submits a formal report, the parties are entitled not merely to comment on Mr. Toothman's report, as the Special Master suggest in the Toothman Order, but to depose Mr. Toothman, cross-examine Mr. Toothman, and call him as a witness under Rule 706(b).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Objecting Plaintiffs' Law Firms respectfully request that

the Court sustain their objection to the retention of Mr. Toothman, and rule that Mr. Toothman

may not serve as an expert or consultant in the proceedings before the Special Master.


Dated:  April 6, 2017                                      Respectfully submitted,


                                                           */s/ Joan A. Lukey*
                                                           Joan A. Lukey (BBO No. 307340)
                                                           Justin J. Wolosz (BBO No. 643543)
                                                           CHOATE, HALL & STEWART LLP
                                                           Two International Place
                                                           Boston, MA  02110
                                                           Tel:  (617) 248-5000
                                                           joan.lukey@choate.com
                                                           jwolosz@choate.com

                                                           *Attorneys for Labaton Sucharow LLP*

8043521

## **Certificate of Service**

I certify that on April 6, 2017, I caused the foregoing document to be filed through the ECF system in above-captioned action No. 11-cv-10230, and accordingly to be served electronically upon all registered participants identified on the Notices of Electronic Filing.

*/s/ Joan A. Lukey*
Joan A. Lukey