```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2

 3     * * * * * * * * * * * * * * * * *
       *ARKANSAS TEACHER RETIREMENT      *
 4     SYSTEM, on behalf of itself and   *
       all others similarly situated     *
 5              Plaintiffs               *   CIVIL ACTION
                     vs.                 *   No. 11-10230-MLW
 6                                       *
       *STATE STREET CORPORATION,        *
 7     STATE STREET BANK AND TRUST       *
       COMPANY, AND STATE STREET GLOBAL  *
 8     MARKETS, LLC,                     *
                Defendants               *
 9     * * * * * * * * * * * * * * * * *

10

11                   SEALED TRANSCRIPT

12

13               Related cases: 11-cv-12049-MLW
                                12-cv-11698-MLW
14

15

16     BEFORE THE HONORABLE MARK L. WOLF
             UNITED STATES DISTRICT JUDGE
17            SEALED SIDEBAR CONFERENCE
                    May 30, 2018
18

19

20                         Courtroom No. 10
                           1 Courthouse Way
21                         Boston, Massachusetts 02210

22

23           JAMES P. GIBBONS, RPR/RMR
               Official Court Reporter
24        1 Courthouse Way, Suite 7205
          Boston, Massachusetts  02210
25            jmsgibbons@yahoo.com
```

APPEARANCES:

      DONOGHUE BARRETT & SINGAL, (By William F. Sinnott, Esq., and Amy McEvoy, Esq. ), One Beacon Street, Suite 1320, Boston, Massachusetts  02108-3106, on behalf of the Hon. Gerald E. Rosen, Special Master

      CHOATE, HALL & STEWART, LLP, (By Joan A. Lukey, Esq., and Justin J. Wolosz, Esq.), 100-150 Oliver Street, Boston, Massachusetts 02110, on behalf of Labaton Sucharow, LLP

      NIXON PEABODY, LLP, (By Brian T. Kelly, Esq.), 100 Summer Street, Boston, Massachusetts  02110, on behalf of the Thornton Law Firm, LLP

      LIEFF CABRASER HEIMANN & BERNSTEIN, (By Richard M. Heimann, Esq.), 275 Battery Street, 30th Floor, San Francisco, California 94111-3339, on behalf of Plaintiffs

      WILMER HALE, LLP, (By William H. Paine, Esq., and Daniel W. Halston, Esq.), 60 State Street, Boston, Massachusetts  02109, on behalf of Defendants

      McTIGUE LAW, LLP, (By J. Brian McTigue, Esq.), 4530 Wisconsin Ave., N.W., Washington, D.C. 20016, on behalf of various ERISA Funds

      ZUCKERMAN SPAEDER, LLP, (By Carl S. Kravitz, Esq.), 1800 M Street, N.W., Washington, D.C.  20036, on behalf of various ERISA Funds

      KELLER ROHRBACK, LLP, (By Laura R. Gerber, Esq., via phone), 1201 Third Avenue, Suite 3200, Seattle, Washington 98101, on behalf of The Andover Companies and James Pehoushek-Stangeland

ALSO PRESENT:   George Hopkins

```
 1    (Transcript of sidebar conference sealed per order of the
 2    Court.)
 3                        S E A L E D
 4    (SIDEBAR CONFERENCE AS FOLLOWS:
 5              THE COURT:  What would you like to say?
 6              MS. LUKEY:  I would like to say, your Honor, that
 7    the issue raised by the Special Master is whether a bare
 8    referral fee, or forwarding fee, was paid to the attorney
 9    who introduced Arkansas, and whether -- and the issue before
10    the Court is whether the failure to disclose that bare
11    referral fee was improper.
12              THE COURT:  Just so you understanding this, because
13    I think this may be where this conceivably goes eventually,
14    and I generally don't -- part of the motive for my
15    questioning, and, you know, he was -- I read that Report,
16    and I see that Mr. Chargois says that Labaton asked him to
17    introduce Labaton to institutional investors in Arkansas.
18        He didn't know it, but he had a partner, I think in
19    Arkansas, Mr. Herron, and he didn't know it either.  But he
20    knew a state Senator, apparently Mr. Faris, and Mr. Faris
21    introduced Labaton to Arkansas Teacher, and ever since then
22    Mr. Chargois has been entitled to 20 percent of Labaton's
23    fees, up to 20 percent, in Arkansas Teacher cases, didn't do
24    any work for it, and there was an assiduous effort to keep
25    that from counsel in the case and others.
```

1          And I think that -- and they may not be questions to

2    be resolved in this case, but I think it is foreseeable that

3    when the Report becomes public, there are going to be

4    questions about the origin of this relationship and whether

5    all those millions of dollars stopped with Mr. Chargois.

6          Mr. Kelly was a prosecutor, and Arkansas these days

7    is -- ears may perk up.

8          But that was part of the motive.

9          I don't know what Mr. Sinnott would say.

10         I do not object to you saying what you want to say, and

11   future proceedings will be what they'll be, but --

12         MS. LUKEY:  Your Honor, are you suggesting there

13   was an impropriety involving Senator Faris with the monies

14   being paid?  Because there is nothing.  I mean nothing.

15         THE COURT:  I'm suggesting that those questions --

16   yes, those questions occur to me when I read it.

17         I don't know that they will be resolved here, but I am

18   concerned that when the relationship between Arkansas

19   Teacher and Labaton is disclosed, and Arkansas Teacher's

20   going to be defending itself, and its interests are

21   different than the interest of the class.

22         MS. LUKEY:  I just have to tell you, your last

23   comment, I am really in shock because the evidence in this

24   case was, according to Mr. Chargois -- with whom we all

25   differed, but Judge Rosen chose to believe him over

1    everybody else -- was that Mr. Herron talked to Steve Faris

2    who said, Call Paul Doane, here's the phone number.

3        And a specific question was posed, in fact, more than

4    one, by Judge Rosen asking the individuals who were involved

5    from Labaton, "Were there ever campaign contributions or any

6    other form of benefit to Senator Faris or anyone else?  And

7    they said, No, of course not.

8        So the suggestion that that's at play here shocks me.

9        That's the kind of thing that causes the press to sit

10   up.

11       When you say -- you didn't say it publically, I

12   realize, you --

13       THE COURT:  No, but I think -- if you're shocked

14   because it occurred to me, then I've only prepared you for

15   the shock you're going to have when the Report and

16   Recommendation is public.

17       MS. LUKEY:  He doesn't say that.  Judge Rosen makes

18   no such suggestion.

19       THE COURT:  He doesn't reach that --

20       MS. LUKEY:  I don't know what to say.  He does not

21   make any such suggestion.

22       You're suggesting public corruption.  Honestly, your

23   Honor, I am appalled that that was even said.

24       But I would like the opportunity --

25       THE COURT:  I said it to you.

```
 1              MS. LUKEY:  I know.

 2         Because there is nothing in the record nor in Judge

 3    Rosen's Report to suggest that, nothing.  And it is not so.

 4         So I would like -- that having been said, I will have

 5    to consider what I think that says to me.

 6         But what I would like to say now --

 7              THE COURT:  I'll unseal the whole Report now.

 8              MR. KELLY:  No.

 9              MS. LUKEY:  No, because we haven't done the

10    redactions.

11              THE COURT:  Think about -- look, think.

12         So what do you want to say, if anything?

13              MS. LUKEY:  What -- I have a few other things I

14    would like to say to you, but what I would like to say to

15    the Court, your Honor -- I mean in the public court --

16              THE COURT:  Again, we're developing a process.

17         If you have any objections to anything I'm saying or

18    doing, say it.

19              MS. LUKEY:  I just did.

20              MR. HEIMANN:  I do.

21              THE COURT:  I was going to say, while I was

22    questioning him, we could have -- I could have done that

23    privately.

24         But the point is, look, this is a serious issue.  You

25    represent your firms, and you should.  And I have not
```

1    studied these things, but I can see why you are fighting

2    about these issues.  And I don't know how they are going to

3    come out.

4       But I can also see that the conduct of Arkansas

5    Teacher, both in him saying, Mr. Hopkins saying, You know, I

6    don't care how the fees -- I told Mr. Belfi, I don't care

7    how the fees are divided, you know, that's -- I understand

8    his position.  It may be right.  I will listen to all of

9    this.

10      But my concern, you know, is back to the most

11   fundamental level of this, and that is, Who is representing

12   the class?  Who is the plaintiff that's representing the

13   class?  Who is the law firm that's representing the class?

14      And I don't think a proper class representative at this

15   point would automatically take the position of the Special

16   Master and say that's a way to maximize a return to the

17   class.  But somebody should be in an independent, impartial

18   position, essentially, not have a dog in the fight.

19         MS. LUKEY:  Your Honor, I just have to ask you -- I

20   do want to say something in court, but I need to ask you

21   because it informs what we do next.  Have you formed an

22   opinion that there is something in this record that suggests

23   that some form of public corruption occurred?

24         THE COURT:  No.

25         MS. LUKEY:  Have you formed the opinion that money

1    was going back to Senator Faris or somebody else?

2              THE COURT:  No.

3         But I've formed the opinion that those are questions

4    that are raised, and they may well not be questions that

5    would be resolved or could be resolved in this case.  But I

6    can foresee the reasonable likelihood that the conduct of

7    Arkansas Teacher is going to become part of the controversy,

8    and it causes me to have questions about whether it's an

9    appropriate lead plaintiff.

10        Who is representing -- remember what this is about.

11   Who is representing the class?

12             MR. HEIMANN:  Can I speak to that, your Honor?

13             THE COURT:  Yes, please.

14             MR. HEIMANN:  First of all, this is not a lead

15   plaintiff situation.  This is not a PSLRA case, and that may

16   make a difference in terms of what the role of the class

17   representative is.

18        But setting that aside, as a practical matter, the

19   class representative at this point in this controversy has

20   no role to play.

21        He's told you, and I think it's appropriate, that he is

22   not speaking about how the fees should be allocated or the

23   propriety or impropriety of the payment to Mr. Chargois out

24   of the fees that were awarded by you on a fair basis to all

25   of the plaintiffs.

1          THE COURT:  See -- that's -- okay.

2       Look.  You do this all the time, and I've been doing a

3     lot of other things recently, too.  But I want to listen to

4     this.  But that sounds to me to be incorrect.  Why -- it may

5     have been totally reasonable to say, I don't care how you

6     divide the fees between yourselves.  But now that there is a

7     Report that says that there was misconduct by the lawyers

8     selected by Arkansas Teacher to represent the class, and a

9     recommendation that millions of dollars be returned to the

10    common fund for the benefit of the class --

11         MR. HEIMANN:  Most of which has nothing to do with

12    the Chargois issue, but go ahead.

13         THE COURT:  The whole thing --

14         MR. HEIMANN:  No, no.  They're very segregated.

15         THE COURT:  I didn't say it was the whole thing.

16    I'm talking about the whole Report and Recommendation.  I

17    don't know why there shouldn't be a plaintiff with a lawyer

18    telling me what's in the best interest of the class.

19         MR. HEIMANN:  You've got one in the adversary that

20    we're facing in the form of Judge Rosen.

21         MS. LUKEY:  He is being adversarial.

22         MR. HEIMANN:  He has been all along.

23         MS. LUKEY:  He has been throughout.

24         MR. SINNOTT:  I object.  That is simply inaccurate.

25         THE COURT:  Look.  I'm going to review what he -- I

1    never appointed a Special Master before, and I have his

2    Report, and you will have many objections, maybe just to

3    everything, and you will find me quite open-minded.

4        But that, again, raises the question in my mind -- it's

5    just a question, not an answer --

6             MR. HEIMANN:  I hear you.

7             THE COURT:  -- as to whether the class should be

8    represented -- I'll tell you something else.  This will help

9    me, because, as I say, you do this all the time.

10            MR. HEIMANN:  But let me say --

11            THE COURT:  Let me just finish, and then you can

12   speak.

13       It's like you take pride in your reputation, and he

14   takes pride in his reputation, and these things are painful.

15   And I want to make sure that you have a fair -- and you

16   will -- have a fair chance to present what you want to

17   present.  And I will listen, and the Special Master will

18   listen to your objections.

19       But it just occurred to me, and maybe I'm wrong, but

20   that the role of the lead plaintiff is not over.

21       But you can file something and --

22            MR. HEIMANN:  I don't want -- in a way I don't want

23   to get into this fight.  It's not my fight in a very

24   important way.

25       What my position is, very clearly, is that the lead

```
1    plaintiff, class representative, only one in this case,

2    hasn't any role to play in the issues that are now before

3    you.  But if I was wrong about that, who would you appoint?

4              MS. LUKEY:  Right.

5              MR. HEIMANN:  There isn't any class representative

6    available to represent this class.  None came forward

7    before.  Arkansas was the only one.  The ERISA class

8    representatives cannot represent this class.  They're

9    totally atypical.  They don't assert the same claims.  They

10   never have asserted the same claims.  So there will not be

11   any other class representative that your Honor can turn to.

12        So, as a practical matter -- can I go back to my view?

13   The class representative really doesn't have any role to

14   play in this.

15        And even if that's incorrect and you think there is

16   some role to play, who are you going to get to take his

17   place?

18             MR. McTIGUE:  Robert [sic], there are 1,200 plans

19   in the class  --

20             MR. HEIMANN:  Excuse me.  It's "Richard," by the

21   way.

22             MR. McTIGUE:  Richard.  I'm sorry.

23             THE COURT:  Wait.

24        Come around here.  You're going to have to tell

25   Mr. Gibbons what your name is because you're standing behind
```

```
 1    him, and even I can't keep it straight.
 2              MR. McTIGUE:  Brian McTigue.
 3              THE COURT:  Okay.
 4              MR. McTIGUE:  There are 1200 plans in the class,
 5    public plans, private plans, the pension plans.
 6              MR. HEIMANN:  But they're not -- we can brief this
 7    if you'd like, but they're totally atypical of the class.
 8         They are -- 10 percent or less of the class members are
 9    ERISA related.
10              MR. McTIGUE:  Then why are they any more atypical
11    than ATRS is?
12              MR. HEIMANN:  Because they never --
13              THE COURT:  Stop.  Stop.
14         Okay.
15              MS. LUKEY:  Can I say something?
16              THE COURT:  No. no.
17         You've got to address me, not each other, when you're
18    in court.
19         The attorney-client privilege, I think you agree, it's
20    the client's privilege, not the attorney's privilege.
21         The client is the class.  So somebody has to act for
22    the class, right?
23              MR. HEIMANN:  Well --
24              THE COURT:  So somebody has to decide whether to
25    assert the privilege.  And attorney-client privilege
```

1    protects important things, but it can be waived.  And if

2    somebody who is not typical of the class because of the

3    association with the lawyers or because their own conduct

4    has been called into in question, and they take pride in

5    their reputation, has to make these decisions, they may not

6    be made in the best interest of the class.

7         MR. HEIMANN:  I hear you on the attorney-client

8    privilege issue.

9         THE COURT:  But that's what prompted the thing for

10   me.

11        But, I'll tell you, when I look at that, I say, Why

12   are -- well, we'll just stop right there.

13        So what would you like to say?

14        MS. LUKEY:  What I would like to say, because I'm

15   afraid that from what you questioned, the inference would be

16   drawn of some impropriety involving Senator Faris because

17   there were a lot of questions about him, I would like to say

18   that the misconduct at issue in the Report involving Labaton

19   is that they paid a so called bare referral or origination

20   fee, as permitted under Massachusetts rules, professional

21   rules, and did not disclose it to the Court.

22        That's what I would like to say.

23        MR. SINNOTT:  Your Honor, if I might.

24        As the Court has seen in the Report, this was not a

25   referral fee.

1          But I think more to the heart of --

2              THE COURT:  I'm not prepared to decide that issue.

3              MS. LUKEY:  But you've left the impression of

4      misconduct.

5              THE COURT:  Let him go ahead.

6              MR. SINNOTT:  More to the heart of what we're

7      discussing here, the Court will be making decisions that are

8      of great import not only to the lawyers, not only to Labaton

9      and Lieff and Thornton and the ERISA firms, but to the

10     class.

11             THE COURT:  Excuse me.

12         No talking, please.

13             MR. SINNOTT:  And it is absolutely essential -- and

14     I understand from the Court's inquiry of Mr. Hopkins, who,

15     as you can tell, I have the greatest respect for, the Court

16     has articulated concerns not only as to the legal advisors

17     to the class, but to the class representative, and whether

18     that class representative will continue to represent the

19     interests of the class.  And that's why this issue was so

20     important.

21         So I think any characterization that this is an

22     exercise or a paper trail is just erroneous.  This is

23     critical to this case.  Who is representing the class going

24     forward?

25             THE COURT:  I'm sorry we're ending with this, but I

1    do think it's a serious question.

2         I think, Ms. Lukey, if you want to say what you just

3    said, and Mr. Sinnott wants to say something along the lines

4    of what he just said, say it, and I'll just say, you know, I

5    have no comment of either of your characterizations.

6         MS. LUKEY:  The reporters have all left, but I will

7    do it any way.

8         (Laughter.)

9         THE COURT:  You're more alert to media than I am.

10   You also have better eyes.

11        MS. LUKEY:  If you saw the press that came out this

12   weekend, you would understand why.  It was brutal.

13        That was not your intent, but that was the effect, and

14   the statements you made to him presumed in your questions

15   the misconduct of Labaton.  It presumed misconduct had

16   occurred.  You haven't even heard Labaton's side of the

17   story.

18        Beyond that, they are going to be left to believe it's

19   tied to Senator Faris, and I'm not even sure, on your

20   comments, whether you believe it's tied to Senator Faris,

21   which is really upsetting me.

22        Anyway, may we go make our statements?

23        THE COURT:  Yes.

24        MS. LUKEY:  Thank you.

25        (Whereupon, the sidebar conference was sealed per order

```
 1   of the Court.)
 2   END OF SIDEBAR CONFERENCE.)
 3
 4                    C E R T I F I C A T E
 5
 6        I, James P. Gibbons, Official Court Reporter for the
 7   United States District Court for the District of
 8   Massachusetts, do hereby certify that the foregoing pages
 9   are a true and accurate transcription of my shorthand notes
10   taken in the aforementioned matter to the best of my skill
11   and ability.
12
     /s/James P. Gibbons              June 1, 2018
13        James P. Gibbons
14
15
16
17            JAMES P. GIBBONS, CSR, RPR, RMR
                  Official Court Reporter
               1 Courthouse Way, Suite 7205
18              Boston, Massachusetts 02210
                  jmsgibbons@yahoo.com
19
20
21
22
23
24
25
```