# EXHIBIT A



June 25, 2018

*Via Hand Delivery*

The Honorable Mark L. Wolf
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re: **Special Master's Investigation**

*Arkansas Teacher Retirement System, on behalf of itself and all others similarly situated v. State Street Bank and Trust Company*
No. 11-cv-10230-MLW

Dear Judge Wolf,

    We write to again seek your guidance on a matter of increasing urgency in this post-Report stage of the State Street case: whether the Court wishes us to file a motion and supporting brief to remove Labaton as Lead Class Counsel and ATRS (or at least George Hopkins) as Class Representative. Although the Court has itself already identified the potential need and some potential bases for these actions, in light of the most recent filings made by Labaton, we believe there are now compelling reasons for us to more fully explain, by motion and brief, why removal is warranted.

    Since the beginning of our investigation, we have, of course, seen the potential for the developing of a conflict of interest between the individual institutional interests of Labaton as Lead Class Counsel and the separate and divergent interests of the class. As the investigation deepened, and especially once the payment to Mr. Chargois was discovered, the potential for conflict of interests between Labaton and its client class only continued to sharpen. We have, to date, refrained from bringing this matter to the Court primarily for two reasons: first, we were hopeful that the potential conflict might abate through the discovery process in which some alignment of Labaton's and the class's interests might manifest itself; and second, once it became apparent that Labaton's interests in protecting its own activities from scrutiny were -- far from aligning with the class's interests -- accelerating in their divergence, we hoped that

Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108-3106
T 617.720.5090
F 617.720.5092
www.barrettsingal.com



Labaton, on its own, might recognize its conflicted position as class counsel and move to resign – a hope that was further encouraged once the Court itself pointed out the potential for conflict. The same is true for the role of ATRS (and George Hopkins) as Class Representative.

Unfortunately, since the sealed filing of our Report, these and other potential conflicts have increased only further. In fact, with its recent flurry of motions proposing significant redactions from the record, as well as its motion to recuse the Court and its effort to limit or seek judicial confirmation that the Special Master's role has concluded, the potential for conflict has ripened into a clear and actual conflict of interest and attained a new level of urgency to the point where Labaton has become irretrievably conflicted. Quite simply, given Labaton's and ATRS's recent conduct and the positions they have taken as to the findings and recommendations in our Report, it is apparent that no one in this process is advocating for, and only for, the class. The class needs and deserves to have the benefit of a wholly independent, unconflicted counsel and class representative who will advocate for its interests and only its interests.

Although we are confident that the Court in its role as fiduciary for the class recognizes these conflicts of interest, and is able to act on its own, as it has to date, we believe there are two critical reasons why the Court may benefit from a more complete motion and briefing by us. First, although the Court no doubt will be as conversant as possible with the complete record, both filed and unfiled, it cannot possibly be expected to know the massive record, and in the limited time afforded, in the depth that the Special Master has gained over the fifteen months during which we developed it. Second, we believe the Court will be in a better position to fully exercise its role as gatekeeper and fiduciary for the class if it is given the opportunity to evaluate the factual and legal issues raised through the briefing process, as opposed to confined to its own initiative.

Some of the conflicts are obvious; others are perhaps less so. We set forth here just a sampling, both as to Labaton and ATRS:

- The most obvious conflict is the fact that the Report recommends that the class receive from Labaton (and, as to part of the reallocation, the other Class Counsel) a reallocation from the attorneys' fee award to the class of significant sums of money to remedy both the double-counting error and the undisclosed payment to Mr. Chargois, as well as sanctions against Garrett Bradley for his misrepresentations to the Court. It appears obvious that Labaton is intent upon opposing this reallocation. (The Lieff and Thornton firms may also oppose these remedies, thus conflicting them, but this is less clear.) Since this proposed

The Honorable Mark L. Wolf
June 25, 2018
Page 3



- reallocation would be a clear benefit to the class, Labaton's opposition puts it in a direct conflict with the class. ATRS's position on this point is less clear, but thus far it seems to have sided strongly with Labaton while it should be advocating for the class;

- Labaton has moved to strike from the record the phrase "from class funds" as to the ownership of the funds that were paid to Chargois in an effort to make the point that these funds were its own, rather than the class's funds. This goes to the heart of the conflict of interest. While Labaton is certainly free to advocate this position in defense of its fee and the propriety of its conduct, this position is hardly free from doubt and Labaton cannot do so to the detriment of its client class's independent interest. The class must have an independent, vigorous, and unconflicted advocate on this issue. ATRS's position on this point is unclear, but it has not stepped forward to assert an independent position on this critical point for the class;

- Labaton has also moved to redact from the Report names of all of the other cases in which Chargois was similarly paid with class funds that were not disclosed to the various courts (nor, apparently, to ATRS), as well as a pending case in which Labaton is currently serving as Lead Class Counsel and may have a continuing payment obligation to Chargois. The names of the cases are clearly relevant (at least as Rule 404(b) evidence of motive, intent, plan and other evidentiary purposes) to the propriety of such payments, and it is in the class's interest that this aspect of the Report remain intact;

- Labaton's motion to clarify that the Special Master's role has concluded, to which the Court has asked us to respond -- if granted -- would leave the proceeding with no one to advocate for those portions of the Report which would benefit the class, effectively rendering this post-filing stage a non-adversarial proceeding, much as the fee petition was, the problems from which have brought us to where we are today. (Beyond this, of course, it would leave the proceedings with no one to defend the Report against Labaton's myriad attacks.);

- Relatedly, Labaton has signaled that it wishes to cut off funding for the Special Master's investigation and support of the Report and Recommendations. While this is understandable since Labaton is currently in the unenviable position of having to fund what has become an investigation into its own conduct, this would

The Honorable Mark L. Wolf
June 25, 2018
Page 4



- leave the only possible source of funding for the remaining stages associated with the Report and recommended benefits to the class as the class funds themselves. This would be unfair to the class since it is wholly innocent here – it was not responsible for either the double-counting errors or the undisclosed payments to Chargois – and should not have to fund this stage of the case from its own funds;

- As to ATRS and George Hopkins, George Hopkins' puzzling position that he did not want to know about payments to counsel and his end-of-the investigation attempt, through his Declaration purporting to ratify post-hoc the payment to Chargois, seem to be directly antithetical to the interests of the class ATRS and Hopkins are supposed to be representing. In filing this Declaration, with at least some assistance of counsel for Labaton, ATRS and Hopkins seem to have cast their lot with Labaton and against the class they are purporting to represent. It surely is not in the class's interest generally to want to remain uninformed of substantial payments to attorneys and, more specifically, it is certainly not in the class's interest to attempt to ratify long after-the-fact an enormous payment to an attorney who never appeared, and did no work, in the case, particularly since the payment was based upon an undisclosed obligation Labaton incurred well before the case was even filed and which was unrelated to the class. By filing the Declaration and aligning itself with Labaton, ATRS and Hopkins appear to be hopelessly conflicted with the interests of the class they are supposed to be representing;

- The primary objective of virtually every position Labaton has taken during the investigation -- beginning with its position in the November 10, 2016 letter to the Court concerning the double-counting error, but nonetheless arguing it should retain its full attorneys fee; continuing forward to its retention of numerous experts attempting to defend Labaton's, but not the class's, position; and even more so during the post-Report filing stage of this case -- has been to defend its own institutional interests and not to advocate for the interests of its client class;

- Beyond this, Labaton may well assert redactions based upon the attorney-client privilege and the work product doctrine which could potentially be adverse to the class. Of course, the attorney-client privilege belongs to the class, and the class should have the benefit of independent counsel on such issues. Although the work product doctrine is the attorneys' to assert, the class should also have the benefit of independent counsel on these issues as well; and

The Honorable Mark L. Wolf
June 25, 2018
Page 5



- Finally, although we are, of course, attempting to vigorously present the class's interests in this stage of the proceedings, and will continue to do so, we are not sure that we are in a position to independently represent and advocate for the class, as at numerous junctures in our Report, we mitigated findings and recommendations as to Labaton's conduct, including in our recommended remedies, leaving Labaton in a position in which it would, despite its conduct, still retain a multiplier above even its adjusted (post-double-counting and Chargois) lodestar. As we point out at the conclusion of the Report, some -- including perhaps a vigorous independent advocate for the class -- may believe our recommendations did not go far enough in fully addressing and redressing Labaton's conduct.

These are only some of the manifest conflicts that have developed between Labaton and its client class, any one of which would be sufficient to remove Labaton and ATRS from their roles. It gives us no pleasure whatsoever to have to bring these issues to the Court, particularly since, as noted at numerous places in the Report, we believe Labaton, ATRS and Mr. Hopkins rendered laudable service to the class, and helped to procure for it a very good settlement, in the underlying case. But this history cannot justify or obscure the now hopelessly conflicted position Labaton and ATRS are in vis-à-vis the class, a set of conflicts which cannot now be remedied or waived.

In summary, we believe that both by their commendable service during the underlying case, but also by their highly questionable and patently conflicted conduct in the investigative and post-filing stages of the case, both Labaton and ATRS have earned their retirement as Lead Class Counsel and Class Representative, whether voluntarily or otherwise. We await the Court's guidance as to whether it wishes a full motion and briefing on these issues.

Respectfully submitted,

William F. Sinnott
Counsel to the Special Master