UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br>       Plaintiff <br><br>       v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br>    Defendants. | ) ) ) ) ) ) ) ) ) | C.A. No. 11-10230-MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN,WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br>       Plaintiff <br><br>       v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br>    Defendants. | ) ) ) ) ) ) ) ) ) | C.A. No. 11-12049-MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND and all others similarly situated, <br>       Plaintiff <br><br>       v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br>    Defendants. | ) ) ) ) ) ) ) ) ) ) | C.A. No. 12-11698-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                                    June 28, 2018

## I.   INTRODUCTION

On March 8, 2017, the court appointed Retired United States
District Judge Gerald Rosen as a Master to investigate and submit

a Report and Recommendation concerning issues relating to the court's award of more than $75,000,000 in attorneys' fees in this class action to the firms that served as counsel for the plaintiff class and its class representatives, which included Arkansas Teacher Retirement System ("ATRS").[1] Pursuant to an October 24, 2017 Order, on May 14, 2018, the Master filed his Report and Recommendation, with an Executive Summary and referenced exhibits, under seal.

The court provided the parties an opportunity to move for redactions to the versions of Master's submissions to be made public. In response, Labaton Sucharow, LLP ("Labaton") and State Street Bank and Trust Company and State Street Global Markets, LLC (collectively, "State Street") moved for redactions to the Report and its Executive Summary (together, the "Report" or "R&R").[2] They and the other counsel for the class, Thornton Law Firm

---

[1] ATRS represented the "Customer Class" of institutional investors. Other, individual plaintiffs and one employee-benefit plan represented the "ERISA Class." Labaton, Thornton, and Lieff represented the Customer Class and ATRS. McTigue, Keller, and Zuckerman represented the ERISA class and its representatives. Only the conduct of Customer Class counsel -- Labaton, Thorton, and Lieff -- raised the issues to be investigated by the Master.

[2] McTigue also moved to redact statements in the Report. See Docket No. 283 at 3. However, McTigue withdrew its requests for redactions from the Report after conferring with the Master regarding his objections to the proposed redactions. See June 22, 2018 Tr. at 13.

("Thornton"), Lieff, Cabraser, Heimann, and Bernstein, LLP ("Lieff"), Keller Rohrback, LLP ("Keller"), Zuckerman Spaeder, LLP ("Zuckerman"), and McTigue Law, LLP ("McTigue"), moved for redactions to the exhibits referenced in the Report.

On June 22, 2018, the court held a hearing that was closed to the public to permit argument on the motions for redaction from the Report. For the reasons described in this Memorandum, Labaton's motions for redactions from the Report are being denied. State Street's motion for redactions is being allowed in part and denied in part. The Report, with limited redactions concerning the hourly rates charged for certain attorneys for State Street, is being unsealed.

In addition, the parties are being ordered to confer and, to the extent they can agree, by July 10, 2018, file for the public record versions of exhibits to the Report which have redactions that are consistent with the decisions concerning issues addressed in this Memorandum. The June 13, 2018 proposed redactions (Docket No. 297) based on issues not addressed in this Memorandum, not including any redactions the parties no longer seek, shall be included in the exhibits to be unsealed pending any necessary future decisions by the court.[3]

---

[3] The court and the parties will have access to the complete, sealed exhibits, which are part of the record.

Pursuant to the May 16, 2018 Order at ¶4, any objections to the Report are due within seven days of the issuance of this Memorandum and Order.[4] In view of the July 4, 2018 holiday, any requests for a reasonable extension of this deadline will be granted.

## I. APPLICABLE LAW

As the First Circuit has written:

> In <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589 (1978), the Supreme Court acknowledged that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." <u>Id.</u> at 597 (footnotes omitted). The privilege extends, in the first instance, to "materials on which a court relies in determining the litigants' substantive rights." <u>Anderson v. Cryovac, Inc.</u>, 805 F.2d 1, 13 (1st Cir.1986).

<u>F.T.C. v. Standard Fin. Mgmt. Corp.</u>, 830 F.2d 404, 408 (1st Cir. 1987). This means that "the presumption that the public has a right to see and copy judicial records attaches to those documents which properly come before the court in the course of an adjudicatory proceeding and which are relevant to the adjudication." <u>Id.</u> at 412-13; <u>see also Anderson</u>, 805 F.2d at 13. Among other things,

---

[4] If the parties are unable to file redacted versions of the exhibits before filing their objections, the memoranda in support of objections to the Report may cite and quote any portion of an exhibit not proposed for redaction in the June 13, 2018 consolidated submission, Docket No. 297. They may also quote any information that was subject to a redaction request denied in this Memorandum and Order. Any references to other information redacted from an exhibit may be included in memoranda filed, at least temporarily, under seal.

"[p]ublic access to judicial records and documents allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." Id. at 410; Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011)(same).

Nevertheless, "the public's right to inspect such records is not absolute." Standard Fin. Mgmt. Corp., 830 F.2d at 410. The court may impound records to "prevent [the records] from being 'used to gratify private spite or promote public scandal,' or to prevent the[] records from becoming 'reservoirs of libelous statements for press consumption' or...'sources of business information that might harm a litigant's competitive standing.'" In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005)(quoting Nixon, 435 U.S. at 598). "[P]rivacy rights of participants and third parties are [also] among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." United States v. Kravetz, 706 F.3d 47, 62 (1st Cir. 2013). "[W]here the public's right of access competes with privacy rights, it is proper for the district court, after weighing the competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." Id. at 62.

However, in the "balancing of interests...the scales tilt decidedly toward transparency." Nat'l Org. for Marriage, 649 F.3d

5

at 70. Therefore, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." Id. (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 410). The First Circuit has repeatedly emphasized that "sealing of judicial documents 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" Kravetz, 706 F.3d at 60 (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 412; Anderson, 805 F.2d at 7).

III. LABATON'S MOTIONS

After considering any objections de novo, the court will decide whether to accept, reject, or modify the Master's findings, conclusions, and recommendations. See Fed. R. Civ. P. 53(f)(1), (3) & (4). Therefore, the Master's Report is a quintessential judicial record that the public has a presumptive right to see. See Nixon, 435 U.S. at 597; Standard Fin. Mgmt. Corp., 830 F.2d at 412-13; Anderson, 805 F.2d at 13. Labaton filed three motions seeking certain redactions. None present the compelling reasons required to overcome the presumption of public access to information in the Report that Labaton seeks to redact. Therefore, Labaton's requests for redactions from the Report are being denied.

A.   Motion to Redact and Retain under Seal (Docket No. 254)

A major and disputed part of the Master's Report concerns the payment made after the award of attorneys' fees of $4,100,000 to

Damon Chargois, a lawyer in Texas who did no work on this case.[5] This payment resulted from the role of Chargois, and his partner Tim Herron, in introducing Labaton to ATRS, and Labaton's related promise to pay Chargois 20% of the fee it received in every class action in which it represented ATRS as Lead Counsel. The payment to Chargois was not disclosed to the class, the court, or, the Master found, to ATRS. The Master recommends that Labaton be ordered to disgorge $4,100,000 because of the undisclosed payment to Chargois. The Master also recommends that Labaton, and particularly Laurence Sucharow of Labaton, be deemed to have breached their duties to the class and court by failing to disclose to the court the payment to Chargois. The Master also recommends that the court find that the payment to Chargois was an impermissible fee for solicitation in violation of the Massachusetts Rules of Professional Conduct. In addition, the Master characterizes ATRS's position concerning the payment to Chargois as a "dereliction" of its duty to the class and suggests that ATRS should be removed as the representative of the class. Report at 257-58, n.206.

---

[5] The "facts" in this Memorandum are drawn from the Master's Report. To the extent there are objections to these facts, the court will decide them de novo. The Master's version of the facts is recited here to explain the relevance of the information Labaton seeks to redact.

Labaton moved for redaction of all references to Labaton's agreement to pay Chargois 20% of its fee in every class action in which it represented ATRS. At the June 22, 2018 hearing, Labaton withdrew this request. See June 22, 2018 Tr. at 17.

Labaton continues to seek redaction of the references in the Report to its other clients who also served with ATRS as class representatives in cases for which Chargois was paid. In his Report, the Master wrote, among other things, that "the failure [of Chargois] to participate in any way in the State Street case --or any of the other eight cases for which Labaton paid Chargois a fee--is a fact of great significance" to his conclusion that Labaton's payment to Chargois was an impermissible fee for "solicitation" rather than a permissible "referral fee" for recommending a lawyer's service under the Massachusetts Rules of Professional Conduct. R&R at 270-72. The Master also relied on Labaton's efforts to keep ATRS from learning about its payments to Chargois in all eight cases to support his recommendations. Id. at 271.

Labaton argues, however, that the names of the plaintiffs it represented in addition to ATRS should be redacted because:

> these clients and cases are in no way involved with the matter at hand, [and the] references to the clients (or references to cases that can direct a reader to other clients), including their involvement in other litigation, could harm not only Labaton's relationship with the clients, but also cause unwarranted harm to the clients themselves, if their names arise in connection

8

with these proceedings. [Decl. of Jonathan] Gardner [at] ¶23. The press has paid considerable attention to this case, has scrutinized public filings, and has investigated information disclosed in those public filings. If a member of the press were to reach out to a client after reading about them in the Special Master's Report, it would needlessly burden that client with an obligation to respond to the press inquiry, and detract from that client's mission and responsibilities, as well as potentially seriously harm Labaton's relationship with the client. Id. at 24.

Docket No. 261-1 at 9-10. These arguments do not provide the compelling reasons necessary to overcome the presumption of public access to information the Master deemed important to his conclusions and which are, in any event, relevant to issues the court will have to decide.

The fact that the media is scrutinizing public filings in this case, investigating the information they contain, and reporting on them is a manifestation of the public interest in monitoring judicial proceedings that the transparency of judicial records is intended to promote. See Nat'l Org. for Marriage, 649 F. 3d at 70. It is not a factor that weighs in favor of redaction.

The "privacy rights of...third parties" can sometimes overcome the public's interest in disclosure of certain information in court records. Kravetz, 706 F.3d at 62. However, the identity of the Labaton clients who served with ATRS as lead plaintiffs in cases for which Chargois was paid is a matter of public record in those cases. Labaton's statement that the media might burden their clients with unwelcomed inquiries if they are

identified in the public version of the Report is a speculative and conclusory contention that does not justify impoundment of their identities. See Kravetz, 706 F.3d at 60; Standard Fin. Mgmt. Co., 830 F.3d at 412. No client of Labaton has expressed such a concern to the court. In any event, discussion of a matter that is already public does not justify impoundment. See United States v. Salemme, 978 F. Supp. 364, 372-74 (D. Mass. 1997).

The claim that Labaton's relationship with clients who served with ATRS as class representatives may be harmed by their inclusion in the public report is also conclusory and speculative. As the First Circuit has written, "[t]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." Siedle v. Putnam Inv., Inc., 147 F.3d 7, 10 (1st Cir. 1998). In addition, "[S]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983).

There are, however, particularly important reasons to honor the presumption of public access to the information concerning other cases in which Chargois was paid that Labaton seeks to have redacted. The Master raises serious questions concerning whether ATRS is an adequate representative of the class for the purpose of

10

the current proceedings. See, e.g., Report at 257-58 & n. 207. The questions are based in part on ATRS' position that Labaton's agreement with Chargois was not relevant to its duties as a class representative in this or other cases and, therefore, did not have to be disclosed to ATRS as representative of the class. See, e.g., May 30, 2018 Tr. at 72-73. A full understanding of this issue may be important to other class members in deciding whether they want to continue to be represented by ATRS, to seek to replace ATRS as class representative, or to advocate for disgorgement by Labaton for the benefit of the class.[6]

In any event, as the D.C. Circuit has written "even when there is "no question" that the class representative has adequately represented the class on the merits, "basic considerations of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment," including in post-judgment litigation over attorneys' fees. Nat'l Ass'n of Regional

---

[6] At the March 7, 2017 hearing at which the Master was appointed, Colorado Public Employees Retirement Association, which claimed to be a member of the class, asked "that the proceedings of the special master be posted to ECF for this case so the class members can observe and comment if permitted to do so by the special master." Mar. 7, 2018 Tr. at 27. This request is an indication of the interest of the class in carefully monitoring, and possibly participating in, those proceedings.

Med. Programs, Inc. v. Mathews, 551 F.2d 340, 344-45 (D.C. Cir. 1976)(emphasis added). In this case the court must decide whether ATRS remains an adequate class representative. See R&R at 257-58 n. 207; May 25, 2018 Order at ¶3; May 30, 2018 Tr. at 8, 77-80. A full public record will permit the monitoring of how the court discharges that duty. See Nat'l Org. for Marriage, 649 F.3d at 70; Standard Fin. Mgmt. Corp., 830 F.2d at 408.

In addition, redaction of information concerning other ATRS cases in which Labaton paid Chargois would mask information concerning possible ethical violations by Labaton that might otherwise be investigated in other jurisdictions. According to the Master, "Massachusetts has a more lenient division-of-fee rule than most other states, including that it permits 'bare referrals' to be paid to lawyers who perform no work on a case and never appear in the case." R&R at 332. The Master's finding that Labaton violated Massachusetts' "more lenient" rule, suggests that Labaton may have violated the stricter ethical rules in other jurisdictions, which may wish to consider that question if they are informed of the issue by the Master's Report.

Labaton also seeks to redact a reference to one case, Bristol County Retirement System v. HCC Insurance Holdings, Inc., C.A. No. 07-00801 (S.D. Tex. Filed Mar. 8, 2007), in which Chargois did not receive a payment. See R&R at 90. However, the case, and the fact that Labaton and Chargois were co-counsel for the plaintiffs, are

12

matters of public record. HCC Holdings was the first case in which Labaton worked with Chargois and, therefore, relevant to understanding how their relationship began.

In view of the foregoing, Labaton's request for redaction of information concerning other ATRS cases in which Labaton paid or worked with Chargois is not meritorious.

Labaton also requests redaction of information in the Report relating to how, by double-counting the hours worked by certain attorneys, it overstated in its fee petition the number of hours Class Counsel worked on this case by about 9,000, improperly inflating its lodestar by approximately $4,000,000. See Report at 219; Docket No. 116 at 2. The proposed redactions are to information on pages 222 to 223 of the Report. It concerns Labaton's practices in sharing the costs of staff attorneys with other firms in other class actions. Labaton asserts that the information, while not "proprietary information," is nevertheless "not related to the double-counting error that occurred in this case, and it should be redacted." Docket No. 313 at 7. The Master, however, views the information as "highly probative of the duplicative billing errors that gave rise to the Special Master's appointment." Docket No. 340 at 8.

Labaton does not cite any authority to support the redaction of information from a judicial record merely because it is alleged to be irrelevant. The presumption of public access to irrelevant

information in a judicial record may deserve less weight than
relevant information. See Oliver Wyman Inc. v. Eielson, 282 F.
Supp. 3d 684, 707 (S.D.N.Y. 2017); Refco Grp., Ltd., LLC v. Cantor
Fitzgerald, LP, 2015 WL 4298572, at *5 (S.D.N.Y. 2015). However,
Labaton does not cite any authority holding that the presumption
ceases to exist at all. In any event, Labaton's usual practice of
sharing staff attorneys' costs in other cases is relevant to
understanding how and why the lodestar was inflated in the fee
petition in this case, in which Labaton deviated from its usual
practices. It is not, therefore, being redacted from the Report.

B.   The Motion to Redact and/or Strike Statements Regarding
     Class Funds (Docket No. 255)

Labaton filed a Motion to Redact and/or Strike Statements in
the Special Master's Report Regarding Class Funds (Docket No. 255).
The Master asserts, in essence, that at least some of the
$4,100,000 that was paid to Chargois may have gone to the class if
ATRS, ERISA counsel, and the court had been informed of the planned
payment to Chargois, who performed no work on this case. Therefore,
the Master states throughout his Report that Labaton took money
from "class funds" to satisfy its pre-existing obligation to
Chargois, which the Master concludes was "the sole obligation" of
Labaton. See Exec. Summary at 2, 4, 28, 41, 44-45, 51; see also
R&R at 7, 114, 119, 258, 263, 277, 287, 299, 304-06, 308, 310,
314, 346, 356, 358.

Labaton argues that these statements are "groundless and inflammatory"; "[t]he payment to the Texas law firm...was paid from the share of reasonable attorneys' fees that the Court had already awarded," not from "class funds," and Labaton did not "use[] the funds to pay its own obligations." Docket No. 255-1 (under seal) at 2. Labaton characterizes the Master's statements as "virtually...an allegation of theft" from the class fund, id. at 2, which "constitutes an accusation of a crime," June 22, 2018 Tr. at 28. The Master states that he "is not making an accusation of a crime." Id. at 33. Nevertheless, Labaton argues that "[t]he Court should not permit these accusations to be disclosed publicly until the Court has determined whether they have any basis in law or fact." Docket No. 255-1 (under seal) at 2; Docket No. 261-4 at 2-3. "Labaton then requests that ultimately, the Court should strike these groundless and inflammatory assertions from the Special Master's Submission entirely, or order that they will be sealed permanently." Docket No. 255-1 (under seal) at 3.

The First Circuit has stated that "[r]aw, unverified information should not be as readily disclosed as matters that are verified." Kravetz, 706 F.3d at 62. However, "a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." Id. The Master's Report, while not submitted under oath, results from a lengthy investigation, by a former federal judge,

and cites evidence in the voluminous record to support its recommended findings. Labaton was allowed to obtain discovery, depose the witness on whom the Master primarily relies in characterizing the payment to Chargois as coming from "class funds," and to argue its position to the Master before the Report was filed. In addition, Labaton now has an opportunity to object to the characterization of the payment to Chargois as coming from "class funds." Therefore, the usual presumption of public access with regard to judicial records applies with regard to this issue.

Disputed allegations of misconduct are often made public in civil complaints, motions, and petitions for attorney discipline on the basis of no more than "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).[7] Indeed, in the complaint Labaton filed on the public record in this case, it was alleged that State Street "generated as much as $500 million in profits" though deceptive practices, and that "[t]his money is taken directly out of the pockets of State Street's customers," the class. Docket No. 1 at ¶4. As this court observed in In re Auerhahn:

> It is customary for motions to be filed before responses are submitted. To find temporary impoundment justified merely on the ground that the public record is at the moment incomplete would generally erode the presumption in favor of public access to judicial documents.

---

[7] Disputed allegations of criminal conduct are also regularly made public in indictments issued upon a finding of probable cause in criminal cases.

650 F. Supp. 2d 107, 113 (D. Mass. 2009).

In Auerhahn, this court temporarily sealed a petition for attorney discipline until a judge who was not involved in the underlying case made a determination of probable cause to support the allegations, but denied the attorney's motion to seal the petition and close the proceedings concerning it until the court decided its merits. See 650 F. Supp. 2d at 113. In doing so the court noted that it was providing more confidentiality than was usually allowed because in Massachusetts, "pursuant to S.J.C. Rule 4:01, §20(1)(c), once a petition for [attorney] discipline is filed, the petition and all subsequent proceedings are public." Id. at 110.

The Master's report is being made public and redacted versions of the exhibits to it will be unsealed. These exhibits will include reports from an expert on whom the Master relied, Professor Stephen Gillers. They will also include the deposition of one of Labaton's experts, Professor William Rubenstein, who testified:

> I think it's an important distinction in a big case like
> that that there are these two phases; that the fee is set
> in the aggregate in the first phase. That's the important
> phase 'cause that's when the class' money is being taken
> from the class. And that's the key to the whole thing in my
> opinion. And then once the Court has decided that's a fair
> fee to take from the client, then the question of how the
> lawyers divide that fee up among themselves is what I refer
> to as the allocation phase which I think has less pertinence
> for the class in most cases.

Rubenstein Dep. Tr. 23-24 (Ex. 235 under seal to Special Master's Report and Recommendation). The Master discusses Rubenstein's conclusions extensively in his Report. See R&R at 254-55, 278-80, 306, 341-43. The public will soon have access to Rubenstein's report and to those of six other experts retained by class counsel, which are all exhibits to the Report. Id. at 247 n. 188. Accordingly, contrary to Labaton's contention, the references to the payment coming from "class funds" does not make this case comparable to United States v. Amodeo, where unsealing a document would have aired "anonymous, unverified" accusations without disclosing the bases for them. 71 F.3d 1044, 1047 (2d Cir. 1995). Rather, the presumption of public access to judicial records has not been overcome on this issue.

C. Motion to Strike Supplemental Report of Professor Stephen Gillers and Related Portions of Master's Report and Recommendations, or, in the Alternative, to Allow Additional Expert Discovery (Docket No. 268).

Labaton also moves to strike the Supplemental Expert Report of Gillers, which is Exhibit 233 to the Report. The Master engaged Gillers as an expert on legal ethics to advise the Master on the implications of the Chargois agreement and what the Master characterizes as Labaton's failure to disclose it to ATRS, the class, and the court. The Master indicated during Gillers' March 21, 2018 deposition that he intended to ask Gillers to amend his expert report. See Mar. 21, 2018 Tr. (Docket No. 270-1) at 423. On

May 8, 2018, after being deposed and reading the reports of class counsel's rebuttal witnesses, "Gillers supplemented his Report to clarify previous opinions and identify new ones." R&R at 248 n. 188. His new opinions included, among other things, the conclusion that Labaton had violated Federal Rule of Civil Procedure 11. See R&R, Ex. 233 (Docket No. 224-238 under seal) at 94-96. However, Gillers completed the Supplemental Report more than two weeks after the Master wrote in an April 23, 2018 letter to the court, which was made part of the public record, that "[w]e were prepared to file under seal with the Court by today a hard copy of the Report and Recommendation, together with all exhibits," but needed until May 14, 2018 to finish the Executive Summary and put the submissions on a searchable disk. Docket No. 217-1. Therefore, class counsel did not have an opportunity to respond to Gillers' new opinions before the Master relied on them for some of his conclusions, including that Labaton may have violated Rule 11.[8] See Exec. Summary at 43-44; R&R at 4 (TOC), 309-318, 359.

---

[8] Gillers concluded that Lawrence Sucharow of Labaton violated Rule 11 because he listed the law firms that filed appearances in this case, but not Chargois, as "Plaintiffs' Counsel," in Labaton's fee petition. He opines that the omission implied the listed firms were the only ones being paid from the attorneys' fee award. Although the Master wrote that Sucharow's statement was "technically accurate" because "Chargois is not 'Plaintiffs' Counsel," the Master wrote that the statement "created a subterfuge to camouflage the fact that Chargois received $4.1 million from class funds and that this payment was not being disclosed." R&R at 311. Therefore, the Master concludes that it was a "material and

Therefore, Labaton moves to strike the portions of the Report that rely on Gillers' Supplemental Report. In the alternative, it requests:

> an opportunity to respond to Prof. Gillers' late-breaking, significant opinions, specifically by (1) allowing Labaton's experts to rebut the Supplemental Gillers Report in brief supplemental reports of their own; (2) allowing Labaton's counsel to cross-examine Prof. Gillers on his new and changed opinions, modifications and omissions in a deposition; and (3) allowing Labaton's counsel to present its experts and cross-examine Prof. Gillers in an evidentiary hearing before the Court.

Docket No. 272 at 13. Labaton asserts, however, that the court should strike the portions of the Report stating that Sucharow may have violated Rule 11 because of the potential damage to his reputation. See June 22, 2018 Tr. at 51.

As explained earlier, public access to judicial records and documents is important, in part, because transparency allows the public to "monitor the functioning of our courts, thereby insuring quality, honesty, and respect for our legal system." See Nat'l Org. for Marriage, 649 F.3d at 70 (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 410 and In Re Cont'l III Secs. Litig., 732 F.2d 1302, 1308 (1st Cir. 1987)). As the public will understand, the Master's recommendations are not findings of fact by the court. Labaton will have a full opportunity to contest Gillers' opinion

---

intentional omission from Sucharow's Declaration," but does not conclude it violated Rule 11 because of a lack of First Circuit case law holding that an omission may do so. Id. at 317.

that Labaton and Sucharow violated Rule 11, see Fed. R. Civ. P. 53(f), and will do so vigorously. They will be able to present any evidence previously provided to the Master. See Fed. R. Civ. P. 53(f)(1); May 31, 2018 Order (Docket No. 237), ¶12. It is in the interest of the administration of justice that the public be allowed to monitor the resolution of this dispute, among others.

The court questions whether it is necessary for Labaton to depose Gillers again or cross-examine him in an evidentiary hearing. The court did not appoint Gillers as an expert witness, and it doubts that his opinions--or those of class counsel's rebuttal experts--should be considered expert testimony under Federal Rule of Evidence 702. Most of Gillers' opinions provide interpretations of ethical rules. However, "[e]xpert testimony on...purely legal issues is rarely admissible." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997); see also Pelletier v. Main St. Textiles, LP, 470 F.3d 48, 55 (1st Cir. 2006); Gomez v. Rodriguez, 344 F.3d 103, 114 (1st Cir. 2003); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 512 (2d Cir. 1977). The "experts" on legal ethics may be more appropriately viewed as amici curiae or advisors whose views the parties may incorporate in their legal arguments. See Conservation Cong. v. U.S. Forest Serv., 2015 WL 300754, at *1 (E.D. Cal. 2015) ("District courts frequently welcome amicus briefs from nonparties concerning legal issues that have potential ramifications beyond the parties directly involved

or if the _amicus_ has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.").

Nevertheless, because the Master and the law firms have to date treated Gillers and the law firms' experts as fact witnesses, the court is allowing Labaton to depose Gillers again and to submit supplementary responses from its experts. The proper remedy, if any, for the late disclosure of Gillers' opinion concerning Rule 11 is not, however, redaction of the Report.

II.  STATE STREET'S MOTIONS (Docket Nos. 252 and 291-1)

State Street moves to redact references in the Report to statements it asserts its counsel made, and information it asserts was produced, during the mediation of the underlying case. The First Circuit has not decided whether to recognize a federal mediation privilege. However, assuming such a privilege exists, neither it nor the Massachusetts privilege would apply to the information State Street requests be deemed privileged and redacted.

In the underlying case, the parties hired a mediator, who held several mediation sessions between October, 2012 and January, 2015. While they were mediating the case, the parties conducted extensive discovery. _See_ R&R at 39-42. State Street requests redactions of statements on pages 33-34 of the Report that it "threatened...during the course of mediation" to "file contractual

counterclaims against [members of the class who were clients of State Street] based on indemnification clauses in their custody contracts."

There is a Massachusetts mediation privilege that protects "[a]ny communication made in the course of and relating to the subject matter of any mediation and which is made in the presence of such mediator by any participant, mediator or other person." Mass. Gen. Laws Chapter 233, §23C. The courts that have recognized a federal common-law mediation privilege have appropriately given it a scope similar to the Massachusetts privilege. They have held that the federal privilege applies to "communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation are protected by the federal [common law] mediation privilege." ACQIS, LLC v. EMC Corp., 2017 WL 2818984, at *2 (D. Mass. 2017); see also In re: RDM Sports Grp., Inc., 277 B.R. 415, 431 (Bankr. W.D. Ga. 2002)(applying the privilege to "communications made to the mediator, between the parties during the mediation, or in preparation for the mediation"). However, "[s]ettlement negotiations in which a mediator is not actively and directly involved that follow a formal mediation are not protected by the mediation privilege, even when they contain information learned during the mediation or where they occurred in light of

mediation, and such communications must therefore be produced barring any other applicable rules." Id.

State Street has provided no evidence or argument that the threat to file counterclaims against class members was made only "during a mediation session, with the mediator present," and not during a private settlement discussion or in other circumstances to which a Massachusetts or federal mediation privilege would apply. See ACQIS, 2017 WL 2818984, at *2; Mass. Gen. Laws Chapter 233, §23C. The statement in the Report that the threat occurred "during the course of mediation" is general and conclusory, not the particularized factual demonstration necessary to justify redacting relevant information from a judicial record. Kravetz, 706 F.3d at 60.

Based on another claim of mediation privilege, State Street also seeks redaction of the statement on page 46 of the Report that the "agreement [] to allocate 9% of the total fee awarded (if successful) to ERISA Counsel [] was based largely on the premise that the total ERISA case volume comprised five to nine percent of the total FX [or 'foreign exchange'] trading volume." District of Massachusetts Local Rule 16.4(c)(2)(F) states that:

> Any communication related to the subject matter of the dispute made during the mediation by any participant, mediator, or any other person present at the mediation shall be a confidential communication to the full extent contemplated by Fed. R. Evid. 408. No admission, representation, statement, or other confidential communication made in setting up or conducting the

<u>proceedings not otherwise discoverable or obtainable
shall be admissible as evidence or subject to discovery</u>.

<u>Id.</u> (emphasis added). The court in <u>Sheldone v. Pa. Tpk. Comm'n</u>,
relying on a similar local rule, determined that "the most
compelling reason for recognizing the mediation privilege is the
Plaintiffs' lack of entitlement to any admission of the Defendant
that, but for the mediation process, would not have come into
being," and "that the mediation privilege does not protect from
disclosure any evidence otherwise and independently discoverable
merely because it was presented in the course of the mediation."
104 F.Supp.2d 511, 517 (W.D. Pa. 2000). This principle is equally
applicable in this case.

While State Street contends in its unsworn memorandum that
the "percentages of [the ERISA] FX volume...was prepared and
communicated as part of a confidential mediation communication
during the mediation," Docket No. 312-2 (under seal) at 4, it
provides no evidence that the information was produced solely for
mediation, with the understanding that it would not be used for
litigation.[9] Rather, the parties agreed that information produced

---

[9] At the June 22, 2018, counsel for State Street stated that the
information was provided "as part of the mediation," but did not
state that it provided for a mediation session between plaintiffs
and State Street. He suggested it was provided to the Securities
and Exchange Commission and the Department of Labor, as well as
the plaintiffs, to devise the plan to allocate the agreed-upon
settlement fund among the class members. <u>See</u> June 22, 2018 Tr. at
78-80. In any event, his representations concerning the FX trading

in discovery would be used to litigate the case if the mediation was unsuccessful. See Nov. 19, 2012 Lobby Conf. Tr. (Docket No. 20) at 20-21; Nov. 19, 2012 Protective Order, ¶¶2, 11 (Docket No. 61)(providing that discovery would be used "for purposes of litigating" the case and "in any proceeding in [the case], including, if otherwise permissible, as evidence at any hearing or trial, in open court, or on appeal"). State Street has not shown, therefore, that this information was "not otherwise discoverable or obtainable." L.R. 16.4(c)(2)(F); Sheldone, 104 F.Supp.2d at 517. Therefore, it has not shown that any mediation privilege applies to it.

State Streets' threat to assert counterclaims is relevant to the Master's discussion of the challenges class counsel faced and the appropriate amount of the fee award. The FX trading volume is relevant to the Master's recommendation that a portion of Labaton's fee be given to counsel for the ERISA class instead. State Street has not identified any competitive disadvantage that will be caused if the information were made public. Therefore, State Street has not made the required "particular factual demonstration of [the] potential harm" flowing from disclosure of its threat to bring a

---

volumes were not supported by an affidavit as required by the May 31, 2018 Order, ¶2.

counterclaim or the FX trading volume information from the Report. Kravetz, 706 F.3d at 60.

In contrast, the request of State Street's counsel, Wilmer Cutler Pickering Hale and Dorr, LLP ("WilmerHale"), to redact the hourly rates it charges for partners, counsel, and associates at its firm, see R&R at 167 & 174, is meritorious. A firm's "confidential pricing information is routinely given trade secret protection" because its disclosure can put the firm at a competitive disadvantage when competing with other firms for clients. EMC Corp. v. Pure Storage, Inc., 2016 WL 7826662, at *6 (D. Mass. 2016); see also Bruno Int'l Ltd. v. Vicor Corp., 2015 WL 5447652, at *12 (D. Mass. 2015); Aggreko, LLC v. Koronis, 2013 WL 6835165, at *4 (D. Mass. 2013); Oliver Wyman, 282 F.Supp.3d at 706.

The Master relied in part on the range of rates State Street paid its attorneys in determining that "that the hourly rates billed on the [class counsel's] Fee Petition for partners and associates were reasonable." R&R at 176. The Master's counsel stated that "[o]ne of the best comparisons in a case such as this" for class counsel's hourly rates "is what the defense is paying its staff attorneys." June 22, 2018 Tr. at 74. The Master states in the Report that the ranges of hourly rates for WilmerHale attorneys is consistent with the ranges used by Class Counsel in their fee petition and the average hourly rates for Boston, New

27

York City, San Francisco, and Washington, D.C., which the Report recites.   See R&R at 167.   More precise information concerning WilmerHale's ranges is not necessary for the public to understand or evaluate the Master's findings.

WilmerHale has a legitimate interest in keeping information concerning its hourly rates confidential.  WilmerHale has provided an affidavit that states it keeps its rate information confidential and disclosure of it "would prejudice both WilmerHale and State Street by putting [them] at a disadvantage relative to other law firms when negotiating rates." Docket No. 291-3 at ¶3. The Master acknowledged that hourly rate information is "proprietary" to firms and not frequently disclosed. R&R at 162. The argument for redaction of WilmerHale's rates from the Report is enhanced by the interest of the public and judicial system in encouraging law firms to disclose such information to assist courts in determining reasonable hourly rates for the purpose of awarding fees. At the June 22, 2018 hearing, counsel for the Master explained that "finding ground truth on the rates is very, very difficult. We commissioned a NALFA survey; and to say that we did not get great participatory response would be an understatement." June 22, 2018 Tr. at 74. These considerations outweigh the public interest in disclosure of the exact ranges of rates WilmerHale charged State Street. Therefore, the request to redact this information is meritorious.

State Street also requests that parts of the depositions in these proceedings that are not relevant to the Master's findings or conclusions, or the parties' arguments concerning them, not be made part of the public record. As indicated earlier, the public's interest in the disclosure of information that "does not appear necessary or helpful in resolving" an issue is less weighty than its interest in information on which a court relies in resolving disputes. Refco Grp., 2015 WL 4298572, at *5; see also Oliver Wyman, 282 F. Supp. 3d at 707. Although irrelevance alone does not justify sealing information in a judicial record, State Street asserts that the irrelevant portions of the depositions contain sensitive information, such as information covered by the mediation privilege, and that it would be expensive and time consuming to redact it from the depositions.

It is customary to file only the relevant parts of a deposition transcript when requesting judicial action. See, e.g., L.R. 26.6 (requiring parties to file only "the pertinent parts" of a deposition transcript with a motion for summary judgment). In view of the volume of the deposition testimony produced in this case, line-by-line redactions would indeed be an expensive and protracted process.  Doing so would delay the public filing of the exhibits. Therefore, the court is ordering the parties to submit versions of the deposition transcripts for the public record that contain only the pages cited in the Report and their necessary

context, as well as any other excerpts the parties deem relevant to the resolution of the issues in these proceedings, with appropriate redactions. The complete transcripts of depositions that are exhibits to the Report will remain part of the record for decision.

### III. REQUESTS TO TEMPORARILY RETAIN THE MASTER'S SUBMISSIONS UNDER SEAL (Docket No. 229, ¶10, Docket No. 289, ¶5, and Docket No. 297, ¶8)

As indicated earlier, Customer Class counsel request that the Master's submissions remain under seal until the court decides whether to adopt, modify, or reject the Master's findings of facts and conclusions of law, see Fed. R. Civ. P. 53(f)(3) & (4), or at least until they file their objections, which are due seven days after the unsealing of the Report. See May 16, 2018 Order at ¶4. However, they have not provided any persuasive reason to depart in these proceedings from the "customary [practice that] motions [are] filed [publicly] before responses are submitted." Auerhahn, 650 F. Supp. 2d at 113. Moreover, "to find temporary impoundment justified merely on the ground that the public record is at the moment incomplete would...erode the presumption in favor of public access to judicial documents." Id. Accordingly, immediate disclosure of the redacted Report and Executive Summary is most appropriate. The court is also ordering the unsealing of the exhibits when appropriate redactions are made.

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Labaton's Motion to Redact and Retain under Seal (Docket No. 254) is DENIED with respect to the information it seeks to redact from the Report. Labaton's reply in support of the motion (Docket No. 313) is UNSEALED.

2.   Labaton's Motion to Redact and/or Strike Statement in the Special Masters Report Regarding Class Funds (Docket No. 255) is DENIED and UNSEALED.

3.   Labaton's Motion to Strike Supplemental Report of Professor Stephen Gillers and Related Portions of Master's Report and Recommendations, or, in the Alternative, to Allow Additional Expert Discovery (Docket No. 268) is DENIED in part and ALLOWED in part. Gillers' supplemental report and references to it in the Report shall not be sealed or struck. However, Labaton may depose Gillers again concerning the conclusions in his supplemental report and submit supplementary responses from its own experts. The redacted versions of the motion and Labaton's memoranda and affidavit in support of it (Docket Nos. 271, 272, 273, and 323) are UNSEALED.

4.   State Street's Motion to Seal (Docket No. 251-1) is ALLOWED in part and DENIED in part.  The information concerning WilmerHale's hourly rates shall be redacted from the version of the Report that is being unsealed.  State Street's redacted

31

memoranda in support of its motions (Docket Nos. 291-1 and 312-1) are UNSEALED.

5.   The Special Master's redacted responses to the foregoing motions (Docket Nos. 339-42) are UNSEALED.

6.   In the absence of a meritorious objection, the court will unseal the unredacted versions of the parties' memoranda and affidavits in support of their proposed redactions after they file the redacted exhibits to the Report for the public record. If a party contends that an unredacted submission should remain sealed, it shall explain its position when the redacted exhibits are filed.

7.   The June 26, 2018 Motion of Customer Class Counsel for Process Associated With Release of Report Before Release of Exhibits (Docket No. 349) is ALLOWED in part and DENIED in part. The request to defer unsealing the redacted Report and Recommendation to permit simultaneous filing of the objections to it is DENIED. The request to reference or quote in the objections information in the sealed exhibits as to which no party has requested redactions is ALLOWED.

8.   The Report and Recommendation with the redactions authorized by this Memorandum and Order shall be unsealed forthwith.

9.   The Master and the law firms shall promptly confer in an attempt to reach an agreement on a redacted form of the exhibits to the Report that conforms to the decisions in this Memorandum

and Order. The redacted form of exhibits shall include each of the June 13, 2018 proposed redactions (Docket No. 297) to information which: (a) the court has not ordered be made public; and (b) the parties have not agreed to make public. If the parties have reached an agreement, the Master shall, as soon as possible but in any event by July 10, 2018, file the redacted exhibits for the public record. If the Master and the law firms have not agreed on the redactions to any exhibit(s) that conform to this Memorandum and Order, they shall, by July 10, 2018, file under seal their respective versions of the proposed redactions and explain the reasons for their respective positions.

10.  If the parties are unable to file a redacted version of the exhibits before filing their objections, the memoranda in support of objections to the Report may cite and quote from any portion of an exhibit not proposed for redaction in the June 13, 2018 consolidated submission, Docket No. 297. The memoranda may also quote any information that was subject to a redaction request denied in this Memorandum and Order. Any references to other information redacted from an exhibit may be included in memoranda filed, at least temporarily, under seal.

11.  Class counsel may further depose Stephen Gillers, by Skype or its equivalent, or if deemed necessary by them in person at a location convenient for Gillers, for up to six hours on July 10, 11, 12, 16, or 18, 2018.

12.  Class  counsel  shall,  by  July  26,  2018,  file  any
supplement  to  their  objections  to  the  Report  and  include  with  it
any  supplemental  reports  of  their  experts  on  which  they  rely.


UNITED STATES DISTRICT JUDGE