## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ARKANSAS TEACHER RETIREMENT SYSTEM,
on behalf of itself and all others similarly situated,

                Plaintiff,

v.

STATE STREET BANK AND TRUST COMPANY,

                Defendant.

No. 11-cv-10230 MLW

ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R.
TAYLOR, RICHARD A. SUTHERLAND, and those similarly
situated,

                Plaintiff,

v.

STATE STREET BANK AND TRUST COMPANY, STATE
STREET GLOBAL MARKETS, LLC and DOES 1-20,

                Defendants.

No. 11-cv-12049 MLW

THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND
PROFIT SHARING PLAN, on behalf of itself, and JAMES
PEHOUSHEK-STANGELAND, and all others similarly
situated,

                Plaintiff,

v.

STATE STREET BANK AND TRUST COMPANY,

                Defendant.

No. 12-cv-11698 MLW

## LABATON SUCHAROW LLP'S SUPPLEMENTAL OBJECTIONS TO
## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

Labaton Sucharow LLP ("Labaton") hereby supplements its Objections filed early[1] on June 28, 2018 to the Master's Report and Recommendations.  *See* ECF 359.

I.     **Had There Been an Obligation to Disclose the Fee Paid to Chargois, Which There Was Not, that Obligation Would Have Fallen to All With Knowledge of the Payment; and the Master's Exclusive Focus on Labaton Is Irrational and Misplaced.**

As a matter of law, there was no obligation on the part of Labaton or the other Customer Class Counsel to disclose to the Court or to the class an allocation to another law firm made from attorneys' fees awarded by the Court, in the absence of a local rule or order of the Court requiring such a disclosure.  *See generally* Labaton's Objections (ECF 359); Fed. R. Civ. P. 54(d)(2)(B)(iv).

However, assuming solely for the purposes of argument that such a disclosure obligation existed, the Master's ruling that "Labaton is solely responsible for the non-disclosure of this relationship" to the various constituencies, including "the class, ERISA counsel and the Court," defies legal logic and is incorrect.  R&R at 368.  Hence the Master's recommendation that "the appropriate remedy for the Chargois payment be disgorgement[2] of [the] entire $4.1 million

---

[1]     As the Court is aware,  Labaton wished to file its Objections publicly at the same time that the Court filed the Special Master's Report and Recommendations ("Report" or "R&R") (ECF 357) publicly, to ensure that the two highly conflicting versions of events were made known to the public simultaneously.  *See* Moving Parties' Motion To Set Revised Schedule for Requested Redactions and the Unsealing of the Special Master's Report and Recommendation (May 24, 2018) (ECF 229) at 7; Motion of Customer Class Counsel for Process Associated with Release of Report Before Release of Exhibits (June 26, 2018) (ECF 349).  Instead, the Court chose to post the Report publicly on June 28 with no advance notice whatsoever.  *See* ECF 356 *and* ECF 357.  To minimize the irreparable damage caused by the Report, which Labaton contends is riddled with legal and factual errors, Labaton quickly filed in advance the Objections that were ready at that point.  Now, still timely with regard to the July 5 deadline for filing Objections, Labaton files these additional Objections.

[2]     Of course, Labaton cannot literally "disgorge" that which it has already paid to Chargois; only Chargois can disgorge that amount.  *See* Merriam-Webster Online, https://www.merriam-webster.com/dictionary/disgorge#legalDictionary.  To "disgorge" in a legal context is "to give up (as illegally gained profits) on request, under pressure, or by court order especially to prevent unjust enrichment."

Chargois amount, and that this disgorgement be solely the responsibility of Labaton," is also incorrect.  *See id.*

Again, Labaton wishes to be perfectly clear that none of the three Customer Class firms, all of whom were aware that a fee division occurred, had a disclosure obligation.  Nonetheless, Prof. Gillers, whom the Master reports that his Counsel retained "to opine on potential ethical and legal issues implicated by the [Chargois] Arrangement," R&R at 247 n.188, opined in his initial report that all three firms were obligated to disclose the Arrangement to the Court and to the class  Ex. 232 at 66, 75.[3]  He was in error as to all three firms; but, that error is instructive as to the lack of foundation for the Master's subsequent focus on Labaton alone.[4]

The Master's true concern throughout was with (a) the payment of a substantial fee to an attorney who did no work on the case, and (b) the failure to disclose that fee to the Court and class.  But, a division of a fee (including a referral fee) between lawyers is permissible in Massachusetts with the appropriate notice to a client, *even when the recipient of the fee performed no work*.  MRPC 1.5(e); *see also* Labaton's Objections (ECF 359) at 26-27.

---

[3]     The exhibits cited herein are the exhibits to the Master's Report and Recommendations.

[4]     The lack of rationale underlying the Master's disclosure findings is highlighted by his subsidiary findings.  For example, although he excuses Thornton from any obligation to disclose (as well he should as to all three firms) he finds that Thornton partner "Garrett Bradley had full knowledge of the Chargois Arrangement," R&R at 247 n.187; and that "Thornton had arrangements with Labaton similar to its arrangement with Chargois."  *Id*. at 108-109 n.90.  The Master appears to give Thornton a "pass" on any obligation to disclose, not because none of the firms had such an obligation, but because Labaton did not "disclose these critical details about Chargois and his role to Thornton law firm attorneys Mike Thornton, Mike Lesser, and Evan Hoffman."  *See id* at 247 n.187.  With regard to Lieff, the contention is that the firm was unaware that Chargois was receiving a "bare" fee division – i.e., a fee for no work – or that Labaton's obligation to Chargois predated the *State Street* case.  *See, e.g.*, *id.* at 109-110 ("Bob Lieff and Dan Chiplock, both recipients of the 'Dublin' email, testified that they understood Damon Chargois to be performing some substantive role as local counsel for Labaton in the *State Street* litigation, serving the class by assisting the ATRS client locally in Arkansas.").  The Master acknowledges that Lieff knew that, once the attorneys' fee award was made to Customer Class Counsel, the three firms would – and did – allocate $4.1 million of their awarded fee to Chargois.  What they reportedly did not know was that Chargois had not performed services to "justify" that fee division, which in Massachusetts is not required.

Therefore, the knowledge that Chargois received a division of a fee with no work performed, as opposed to serving as "local counsel," is irrelevant to the determination of which, if any, firm had a disclosure obligation.  Had there had been a duty to disclose to the Court the identity of all attorneys who were sharing in the fee award – which, to be clear, there was not – that duty fell to any firm that was aware of the payment to Chargois, not to any firm that was aware that the fee division was made without services being rendered.

The Court should reject altogether the Master's conclusion that any firm was obligated to disclose the agreement to pay Chargois.  *See generally* Labaton's Objections (ECF 359).  The Court should equally reject the Master's arbitrary finding that Labaton was solely responsible for disclosing the Chargois payment when all three firms knew about, and contributed to, that payment.  The Thornton Law Firm and Lieff did nothing wrong.  But, the same is true of Labaton.

## II.     The Master's Improper Use of Prof. Gillers Taints His Report and Recommendations.

In his Supplemental Report, Prof. Gillers describes himself as the "equivalent of a court appointed expert.  FRE 706."  Ex. 233 at 2.  The Master also treats Prof. Gillers as an expert. R&R at 137 ("The Special Master also retained . . . Professor Stephen Gillers as an expert on the ethical and professional conduct issues raised in this case."); *see also* June 28, 2018 Order (ECF 356) at 22 (noting that the Master has treated Prof. Gillers as a "fact witness[]").  Moreover, the Master relies heavily on Prof. Gillers' opinions and testimony.  In fact, the Master's Report largely mirrors Prof. Gillers' opinions, with similar conclusions regarding (among other topics): the interplay between MRPC 1.5(e) and 7.2(b); the fee disclosure obligations imposed by federal case law; the application of MRPC 3.3 and the role of Comment 14A; the general duty of candor

to the court; and the ethical obligations owed to class members.  *Compare* R&R at 246-327 *and* Ex. 233 at 66-103.  In short, Prof. Gillers' opinions are critical to the Master's Report.

However, the Master's reliance on Prof. Gillers as an expert – which he acknowledges doing – is improper.  Prof. Gillers is opining as to the law, which is not permissible.  As the Court noted, "[m]ost of Gillers' opinions provide interpretations of ethical rules."  ECF 356 at 21.  Prof. Gillers also opines extensively on the Federal Rules of Civil Procedure and the disclosure obligations purportedly imposed by principles of class action law.  *See, e.g.*, Ex. 233 at 76-97.  Despite Class Counsels' objections, the Master did not shy away from incorporating Prof. Gillers' purely legal work.  *See, e.g.*, R&R at 303 ("Case law, much of which is quoted in greater detail by Professor Gillers (pp. 79-83) -- including cases from within the District of Massachusetts -- recognizes the Court's responsibility to protect the class and the class's interests, and the Court's reliance on counsel to be forthcoming with the information needed in order to do so.").[5]

As this Court noted, expert testimony regarding the law, as opposed to facts or mixed questions of fact and law, is generally impermissible.  ECF 356 at 22; *see also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997); *Pelletier v. Main St. Textiles*, LP, 470 F.3d 48, 54-55 (1st Cir. 2006).  The preclusion of "expert" legal opinion extends to legal ethics "experts," including in connection with the Commonwealth's ethics rules.  *Fishman v. Brooks*, 396 Mass. 643, 650 (1986) ("Expert testimony concerning the fact of an ethical violation is not

---

[5]     Labaton objected to this use of Prof. Gillers shortly after receiving his first report, and – when this objection went unheeded – was then constrained to retain experts of its own to respond to Prof. Gillers.  Labaton suggested, to no avail, that all such testimony from both sides should be in written legal briefs, an approach that other courts have taken.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1246-47 n. 7 (N.D. Cal. 2000) ("The court notes that all three professors are respected scholars, and that their participation as *amici curiae* (or even as advocates for [a party]) might have been appropriate.").  Had this approach been taken at the outset, the parties could have saved substantial costs, and the Master's Report would not be inherently and irreparably flawed by his improper reliance.

appropriate . . . A judge can instruct the jury (or himself) concerning the requirements of ethical rules."); *see also, e.g., In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 66-67 (S.D.N.Y. 2001) (declining to accept legal ethics professors' opinions regarding recusal); *McNamara v. Bre-X Minerals, Ltd.*, No. 5:97-CV-159, 2003 U.S. Dist. LEXIS 25641, at *20 (E.D. Tex. Mar. 31, 2003) ("The Court is persuaded that Defendants' proffered expert opinion concerning alleged ethical violations is inadmissible, as it amounts to an interpretation of law."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1246-47 (N.D. Cal. 2000) (striking "three declarations from law professors opining on the ethical propriety of the various solicitation tactics that the firm employed, a purely legal question").  Accordingly, Prof. Gillers' legal opinions were impermissible here.

In sum, the Master's Report rests on a foundation of improper expert testimony on the law.  The Master has treated Prof. Gillers as an expert throughout the investigation and he relies extensively on his legal opinions.  Thus, the whole of the Master's legal conclusions are tainted by his substantial use of and reliance on improper expert testimony.  As such, the Master's Report must be stricken.

Dated: July 5, 2018                    Respectfully submitted,


                                       By: */s/ Joan A. Lukey*
                                           Joan A. Lukey (BBO No. 307340)
                                           Justin J. Wolosz (BBO No. 643543)
                                           Stuart M. Glass (BBO No. 641466)
                                           CHOATE, HALL & STEWART LLP
                                           Two International Place
                                           Boston, MA 02110
                                           Tel.: (617) 248-5000
                                           Fax: (617) 248-4000
                                           joan.lukey@choate.com
                                           jwolosz@choate.com
                                           sglass@choate.com


                                           *Counsel for Labaton Sucharow LLP*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to all counsel of record on July 5, 2018.

                                       */s/ Joan A. Lukey*
                                       Joan A. Lukey