# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, On behalf of itself and all others similarly situated, | § § § | No. 11-cv-10230 MLW |
| Plaintiffs, | § § | |
| v. | § | |
| STATE STREET BANK AND TRUST COMPANY, | § § | |
| Defendant. | § § | |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, | § § § | No. 11-cv-12049 MLW |
| Plaintiffs, | § § § | |
| v. | § § | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, | § § § § | |
| Defendants. | § § | |
| v. | § § | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, | § § § § § | No.  12-cv-11698 MLW |
| Plaintiffs, | § § | |
| v. | § § | |
| STATE STREET BANK AND TRUST COMPANY, | § § | |
| Defendant. | § § | |

## ZUCKERMAN SPAEDER LLP'S NOTICE OF EXCEPTION
### TO ECF 359, ECF 361, AND ECF 367 [REDACTED]

6475390.1

Zuckerman Spaeder LLP ("Zuckerman"), one of the ERISA Counsel, submits this response concerning the Special Master's Report dated May 14, 2018 ("Report"), excepting to one aspect of Customer Class Counsel's objections to it. The Report, at pp. 350, 368-69, recommends that Customer Class Counsel (Labaton, Thornton and Lieff) disgorge the $4.1 million payment made to Damon Chargois ("Chargois"), with $3.4 million being reallocated to ERISA Counsel (Zuckerman, Keller and McTique). *If* disgorgement is ordered, the recommended reallocation to ERISA Counsel should be adopted by the Court, and the objections to the reallocation should be overruled.

First, ERISA Counsel would not have agreed to file a joint fee petition with Customer Class Counsel, or to limit their fee to 9% of the total award on that joint petition, had the Chargois arrangement and payment been disclosed. Instead of a joint petition, ERISA Counsel would have filed *their own, separate* petition, seeking a reasonable fee based on the $60 million settlement they produced for the ERISA plans. Such a fee presumably would have been determined by standard common fund metrics.

Second, with the recommended reallocation of $3.4 million, ERISA Counsel's revised fee would be just under $10.9 million, or 18.167% of, the $60 million common fund produced for their clients. That fee would be reasonable by all applicable metrics, including a lodestar check.

### A.    Pertinent Background

In December 2013, ERISA and Customer Class Counsel agreed that they would file a joint petition for fees and that ERISA Counsel would receive 9% of the total fee awarded. ████

████████████████████████

████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████.[1]

On November 2, 2016, this Court approved a $300 million settlement, with $60 million of the total being allocated to the ERISA plans (the "ERISA Share"). It also granted counsel's joint fee petition and awarded a total attorney's fee of approximately $75 million. Of the total fee awarded, approximately $7.5 million was paid to ERISA Counsel. Report at 84-85.[2] Under the Plan of Allocation, however, $10.9 million of the total fee award was deducted from the $60 million ERISA Share for payment of attorneys' fees.[3] Thus, of $10.9 million deducted from the ERISA Share for fees, approximately $7.5 million went to ERISA Counsel, with the remaining $3.4 million going to Customer Class Counsel. Customer Class Counsel ultimately paid Chargois $4.1 million from the approximately $67.5 million of the total fee they received. Report at 88.[4]

---

[1] Labaton and Thornton now contend that the post-settlement claims administration process indicates an ERISA trading volume, including group trusts, of only 9-10%. Labaton Obj. at 95, Thornton Obj. at 94-95, 99. If accurate, that would underscore the exceptional premium obtained for the ERISA plans: 20% of the gross recovery based on 9-10% of the trading volume.

[2] ████████████████████████████████████████████████████████████
████████████████████.

[3] There was a cap of $10.9 million that could be deducted from the ERISA Share for fees, based on the insistence of the Department of Labor ("DOL"), and it was reached given the size of the overall fee awarded by the Court. The cap did not govern the allocation of fees within the cap as among counsel.

[4] Customer Class Counsel is correct that the $10.9 million cap, negotiated by and with the Department of Labor ("DOL"), was a cap on the amount of fees, from the overall fee award, that could be deducted from the ERISA share for fees, before distribution to the ERISA class members. It was not a directive as to what would amount would be payable to ERISA counsel. Nor does ERISA Counsel contend that the recommended reallocation should be approved for that reason.

6475390.1

ERISA Counsel had no knowledge of and did not participate in the alleged double counting or the arrangement with and payment to Chargois. Report at 115-18, 351-52.

> **B.      ERISA Counsel Would Not Have Entered Into The 9% Agreement Had They Known Of The Chargois Arrangement And Payment But Instead Would Have Filed Their Own Petition For A Reasonable Fee.**

Customer Class Counsel focus on the percentage of the ERISA volume to argue that the recommended reallocation to ERISA Counsel should be rejected. *E.g.*, Thornton Obj. at 93-99. But whether the ERISA trading volume is roughly 9% or more is not the principal reason that the recommended reallocation should be adopted. ███████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████. 

███████████████████████████████████████████████████████

███████████████████████████████████████████. The point is not whether the Chargois arrangement was proper or improper. The point we are making here is that knowledge of the arrangement with Chargois would have raised legal and ethical questions that would have had to be answered before ERISA Counsel would have agreed to file a joint petition from which Chargois would also be paid. There would have been no way to get all the facts needed to answer these questions, even if the Chargois arrangement had been disclosed, and therefore no realistic way for ERISA Counsel to have been comfortable filing a joint petition.[5]

As a result ERISA counsel would have filed their own fee petition, seeking a reasonable attorney's fee from the $60 million common fund produced for the ERISA class members.

---

[5]  Nor, in any event, would ERISA Counsel have agreed to receive less than Chargois in fees.The Special Master found that the amount of the payment to Chargois -- $4.1 million in this case – was significant with respect to ERISA Counsel's fee. Report at 300. That is true. Had ERISA Counsel known that a lawyer who did not work on this case was going to get substantially more than any of them individually, they would not have agreed to the 9%/joint petition deal for that additional reason as well. Report at 116-17.

6475390.1

### C.      $10.9 Million Is A Reasonable And Appropriate Fee For ERISA Counsel

With the recommended reallocation of the $3.4 million, ERISA Counsel's total fee will be $10.9 million, which is 18.167 % of the $60 million produced for the ERISA plans and would be a lower percentage than the 25% fee awarded by the Court on November 2, 2016, as "fair, reasonable and consistent with fee awards approved in cases within the First Circuit and other Circuits with similar recoveries." *See* [ECF 111], at page 4 of 5 (awarding approximately 25% on the entire $300 million settlement in this case). Without the reallocation, ERISA Counsel's fee is 12.5% of the $60 million.

In terms of lodestar, the reallocated fee of $10.9 million would be 1.628 times ERISA Counsel's total submitted lodestar of $6,694,333.75 (figure based on numbers submitted at the time of initial fee petition), which would be less than the lodestar multiple of 1.8 when the total fee was initially approved by the Court on the entire settlement. *See id.*, at pages 3 of 5 and 4 of 5 ($74,541,250 fee/$41,323,895.75 of total lodestar submitted by lead counsel).[6] Without the reallocation, ERISA Counsel will receive approximately a 1.12 multiple of their collective lodestar. Neither lodestar calculation accounts for the substantial time ERISA Counsel have been forced to expend in connection with the investigation of matters that had nothing to do with them.[7]

Further, there is no dispute that $60 million was an excellent result for the ERISA class members, making a fee percentage of 18.167% and a lodestar multiplier of 1.628 , after the recommended reallocation, all the more reasonable. Finally, the fees deducted from the $60 million ERISA Share would remain the same and within the $10.9 cap negotiated by the DOL.

---

[6] We are not vouching for these figures, but just noting the numbers recited and relied on by the Court in its November 2, 2016 Order on fees.

[7] The Special Master noted that one reason for the reallocation was to compensate ERISA Counsel for the time they were forced to spend in connection with the investigation. Report at 351-52.

6475390.1

\*\*\*\*\*

For these reasons the recommended reallocation of $3.4 million to ERISA Counsel

should be adopted by the Court.

Dated: July 13, 2018                            Respectfully submitted,

                                                */s/ Carl S. Kravitz*
                                                Carl S. Kravitz
                                                Michael R. Smith
                                                ZUCKERMAN SPAEDER LLP
                                                1800 M Street, NW
                                                Suite 1000
                                                Washington, D.C. 20036
                                                Telephone:  (202) 778-1800
                                                ckravitz@zuckerman.com
                                                msmith@zuckerman.com

                                                *Counsel for Arnold Henriquez*

6475390.1

7

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed via the ECF system will be sent electronically to

all counsel of record on July 13, 2018.

/s/ Carl S. Kravitz
Carl S. Kravitz

6475390.1