# EX. 1

1  EDMUND G. BROWN JR.
   Attorney General of California
2  MARK J. BRECKLER
   Senior Assistant Attorney General
3  LARRY G. RASKIN
   Supervising Deputy Attorney General
4  JEFFREY L. SIMPTON (SBN 166862)
   Deputy Attorney General
5  SYLVIA KELLER (SBN 197612)
   Deputy Attorney General
6  FREDERICK W. ACKER (SBN 208109)
   Deputy Attorney General
7  RAYMOND ROUSE (SBN 240916)
   Deputy Attorney General
8  Office of the Attorney General
   1300 I Street
9  P.O. Box 944255
   Sacramento, CA 94244-2550
10 Telephone: (916) 324-7871
   Fax: (916) 323-6882
11 E-mail: Jeffrey.Simpton@doj.ca.gov
   *Attorneys for People of the State of California*
12

13 |                          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14 |                                 COUNTY OF SACRAMENTO

15

16

17
   | **THE PEOPLE OF THE STATE OF** | Case No. 34-2008-00008457-CU-MC-GDS |
18 | **CALIFORNIA** *EX REL.* **EDMUND G.** | |
   | **BROWN JR.,** | **COMPLAINT IN INTERVENTION** |
19 | | |
   | v. | Violation of the California False Claims Act |
20 | | (Cal. Gov. Code, § 12651) |

21 | **STATE STREET CORPORATION, STATE** | Unlawful Business Practices |
   | **STREET CALIFORNIA INC., STATE** | (Bus. & Prof. Code § 17200) |
22 | **STREET BANK AND TRUST COMPANY,** | |
   | **STATE STREET GLOBAL MARKETS,** | |
23 | **AND DOES 1 THROUGH 100, INCLUSIVE.** | Demand for Jury Trial |

24

25

26

27

28

1

1    Plaintiff, the People of the State of California, by and through California Attorney General

2    Edmund G. Brown Jr., allege as follows:

3                                          **INTRODUCTION**

4    1.       This action is brought against State Street Corp., State Street California Inc.

5    ("State Street California"), State Street Bank and Trust Company ("State Street Bank"), and State

6    Street Global Markets ("Global Markets") (collectively "State Street"). For years, State Street,

7    led by a group of its internal "risk traders," raided the custodial accounts of California's two

8    largest public pension funds, in a total amount exceeding \$56 million, by fraudulently pricing

9    foreign currency ("FX") trades State Street executed for the pension funds. State Street Bank is

10   the custodial bank and fiduciary for the California Public Employees' Retirement System

11   (CalPERS) and the California State Teachers' Retirement System (CalSTRS) (collectively "the

12   Pension Funds"). State Street Bank executed FX trades for the Pension Funds when notified that

13   the Pension Funds required foreign currency to close foreign securities trades, or when the

14   Pension Funds requested that State Street convert foreign currency held in the Pension Funds'

15   custodial accounts into U.S. Dollars.

16   2.       Beginning in 2001, State Street Bank's contracts with the Pension Funds

17   guaranteed that the Pension Funds would receive the most competitive rates available for all FX

18   transactions, regardless of size, currency, or contract type because, as State Street represented, all

19   trades would be priced based upon the Interbank Rate ("Interbank Rate") at the time the trades

20   were executed. The Interbank Rate is the price at which major banks that operate within the

21   interbank market buy and sell currency. The Interbank Rate fluctuates throughout each day and is

22   tracked and published by various industry sources. However, rather than price the Pension

23   Funds' custody FX trades at the Interbank Rate, State Street consistently "marked-up" the prices

24   using rates far in excess of the Interbank Rate at the time State Street executed the trades.

25   Conversely, when State Street executed custody FX trades to convert or "repatriate" foreign

26   currency held in the Pension Funds' custodial accounts into U.S. Dollars, State Street "marked-

27   down" the price the Pension Funds received to an amount far below the Interbank Rate at the time

28   State Street executed the trades.

2

1    3.    State Street concealed its fraudulent pricing practices by entering false exchange
2  rates into its electronic trading databases, which automatically debited the Pension Funds'
3  custodial accounts, and by reporting false exchange rates in numerous documents, including FX
4  Spot Purchase Activity Reports and account statements submitted to the Pension Funds and the
5  Pension Funds' outside investment managers. State Street also entered false exchange rates into
6  its on-line reporting database, MyStateStreet.com, from which the Pension Funds obtained reports
7  detailing their account activity. State Street further disguised its fraudulent scheme by pricing the
8  FX trades within the interbank high and low rate of the day and by failing to provide time stamp
9  data for the trades that would reveal when State Street actually executed the trades.

10    4.    State Street's concerns about revealing its fraudulent custody FX pricing practices
11  are reflected in its internal e-mails. When discussing inquiries by the Pension Funds about
12  providing "transparency" in FX execution costs, one Senior Vice President with State Street
13  California commented to other State Street executives that, "[i]f providing execution costs will
14  give [CalPERS] any insight into how much we make off of FX transactions, I will be shocked if
15  [a State Street V.P.] or anyone would agree to reveal the information." Another State Street
16  California executive sought help from State Street executives in formulating a strategy to deflect
17  the Pension Funds' attention away from custody FX "transparency," writing, "[a]ny help you can
18  offer would be appreciated. The FX question is touchy and if we can't provide any further
19  information, we have to somehow get [CalPERS] comfortable with that since our RFP response
20  indicated we could provide execution cost transparency."

21    5.    State Street's false claims for unauthorized custody FX "mark-ups" and their
22  concealment of their obligation to pay the Interbank Rate for repatriation trades, which began in
23  2001 and persist to the present day, have resulted in damage to the Pension Funds in an amount
24  exceeding $56 million.

25    6.    On April 14, 2008, Associates Against FX Insider Trading, filed this action
26  pursuant to the *qui tam* provisions of the California False Claims Act. (Gov. Code § 12652, subd.
27  (c).) The People have filed this Complaint in Intervention pursuant to the Attorney General's

28

3

1  Notice of Election to Intervene and proceed with the action as authorized by Government Code

2  Section 12652, subdivision (c)(6)(A).

3                                               **PARTIES**

4       7.      Attorney General Edmund G. Brown Jr. is the Chief Law Officer of the State of

5  California. He brings this action in the name of the People of the State of California as Plaintiff

6  and real party in interest (hereinafter "the People").

7       8.      Associates Against FX Insider Trading is the *qui tam* and a Delaware general

8  partnership.

9       9.      Defendant State Street Corporation is a financial holding company, incorporated in

10  Massachusetts and headquartered in Boston. It provides custodial banking and FX services to the

11  Pension Funds through several of its subsidiaries. It touts itself and its subsidiaries as the "No. 1

12  servicer of U.S. pension plans," and as of mid-2009, had $16.4 trillion in assets under custody and

13  $1.6 trillion under management.

14       10.      Defendant State Street California, a subsidiary of State Street Corp., is

15  incorporated in California, is headquartered in California and has an office in the CalPERS

16  headquarters in Sacramento. It provides custodial banking and FX services to the Pension Funds.

17  State Street California maintains an office in Alameda, which services the Pension Funds'

18  accounts for State Street Bank and Global Markets. State Street California is the entity

19  responsible for the overall business relationship, including client satisfaction, service delivery,

20  quality standards, business profitability and business growth with the Pension Funds.

21       11.      Defendant State Street Bank and Trust Company, a subsidiary of State Street Corp,

22  is incorporated in Massachusetts, is headquartered in Boston, Massachusetts and has offices in

23  California. It also provides custodial banking and FX services to the Pension Funds and is the

24  signatory to the custodial agreements with the Pension Funds.

25       12.      Defendant State Street Global Markets, LLC, a subsidiary of State Street Corp., is

26  incorporated in Delaware and is headquartered in Boston, Massachusetts. It provides specialized

27  investment research and trading in foreign exchange, equities, fixed income and derivatives for

28  the Pension Funds.

                                                     4

1    13.    The true names and capacities, whether corporate, associate, individual,

2 partnership or otherwise of Defendants Does 1 through 100, inclusive, are unknown to the People,

3 which therefore sues said Defendants by such fictitious names. The People will seek leave of

4 court to amend this Complaint to allege their true names and capacities when the same are

5 ascertained.

6    14.    At all relevant times each of the Defendants, including Doe defendants, was and is

7 the agent, employee, employer, joint venturer, representative, alter ego, subsidiary, and/or partner

8 of one or more of the other defendants, and was, in performing the acts complained of herein,

9 acting within the scope of such agency, employment, joint venture, or partnership authority,

10 and/or is in some other way responsible for the acts of one or more of the other defendants.

11    15.    CalPERS is an agency of the State of California and the nation's largest public

12 pension fund, providing benefits to more than 1.6 million public employees, retirees, and their

13 families.

14    16.    CalSTRS is an agency of the State of California and the nation's second largest

15 public pension fund, providing retirement related benefits to over 800,000 members and

16 beneficiaries.

17                          **JURISDICTION AND VENUE**

18    17.    Venue is proper in this Court because Defendant State Street California maintains

19 an office in Sacramento County, and because State Street engaged in conduct directed at the State

20 of California and residents of the State of California.

21    18.    Furthermore, much of State Street's misconduct took place in this county, and the

22 acts complained of, including the submission of false statements and records, occurred in and

23 were directed at government offices and officials located within this county.

24                       **STATE STREET'S FRAUDULENT SCHEME**

25                          **Contracts with CalPERS/CalSTRS**

26    19.    State Street has served as master custodian over CalPERS' assets since 1992 and

27 over CalSTRS' assets since 1986.

28

5

1     20.     In 2000, CalPERS issued a Request for Proposal ("RFP") soliciting responses

2 from various banking institutions interested in becoming CalPERS' master custodian. In 2001,

3 CalPERS re-selected State Street as its custodial bank. The 2001 contract took effect on

4 September 1, 2001, and incorporated by reference State Street's 2000 RFP response (the contract

5 and RFP response are collectively referred to as "the CalPERS contract"). This contract expired

6 on June 30, 2006.

7     21.     Also in 2000, CalSTRS issued an RFP soliciting responses from various banking

8 institutions interested in becoming CalSTRS' master custodian. In 2001, CalSTRS re-selected

9 State Street. The 2001 contract took effect on July 1, 2001, and incorporated by reference State

10 Street's 2000 RFP response (the contract and RFP response are collectively referred to as "the

11 CalSTRS contract"). This contract is currently in effect.

12     22.     Collectively, the CalPERS and CalSTRS contracts are referred to as "the Pension

13 Fund Contracts."

14     23.     The Pension Fund Contracts explicitly controlled how State Street could charge

15 the Pension Funds for custody FX transactions stating that all "trades are priced based on the

16 Interbank Rates at the time the trade is executed." The Interbank Rate is tracked and published

17 by industry sources, such as Reuters.

18                             **State Street's Processing of FX Orders**

19     24.     The Pension Funds initiated FX trades with State Street in one of two ways:

20 directly or indirectly.

21     25.     With direct FX trades, the Pension Funds or their outside investment managers

22 ("OIMs") communicated the trade information to a State Street salesperson who quoted a rate that

23 the Pension Fund or the OIM could choose to accept or reject. If the rate was accepted, the trade

24 was executed at the agreed upon price.

25     26.     With indirect FX trades, also called custody FX trades, neither the Pension Funds

26 nor their OIMs negotiated rates with State Street and State Street did not quote rates. Instead, the

27 Pension Funds or their OIMs instructed their custody group representative within State Street to

28 execute FX transactions for the Pension Funds. When a security trade included a request to

6

Case 1:11-cv-10230-MLW   Document 401   Filed 07/23/18   Page 8 of 15


1    execute the required FX to fund the transactions, or repatriate foreign currency, the FX trade

2    request was routed electronically via State Street's Market Order Management System (MOMS)

3    from the custody side of State Street for execution and pricing by a group of "risk traders"

4    working at State Street's FX trading desk.

5        27.    After receiving custody FX requests through the MOMS system, at some time

6    during the trading day State Street's risk traders executed the custody FX trades by entering the

7    trade information, including the false exchange rates into the MOMS system.  The MOMS system

8    automatically fed the trading data into State Street's former accounting network called the IBS

9    system which was later upgraded to a system called Wall Street Systems ("WSS").  IBS/WSS

10   automatically released the custody FX trades to State Street's Multi-Currency Horizon system

11   which debited or credited the Pension Funds' custodial accounts utilizing the false exchange rates

12   entered into MOMS by State Street's risk traders.  Sometime in 2005, State Street created a new

13   business group that relieved State Street's risk traders of responsibility for executing and pricing

14   custody FX trades with the Pension Funds.  However, State Street's new business group

15   continued the same scheme of executing and pricing custody FX trades with the Pension funds

16   utilizing false exchange rates.

17       28.    State Street derived its false exchange rates by taking the Interbank Rate at the

18   time the trades were executed and adding or subtracting "basis points" or "pips" from the rate

19   depending upon whether the Pension Funds were acquiring or repatriating foreign currency.  A

20   basis point, or pip, is a unit equal to 1/100th of a percentage point.  For example, the smallest

21   move the USD/CAD (U.S. Dollar/Canadian Dollar) currency pair can make is 1/100 of a penny

22   ($0.0001), or one basis point.  When the Pension Funds acquired currency through State Street's

23   custody FX program, State Street's false exchange rates often ranged 25 pips above or below the

24   Interbank Rate and, in some cases exceeded the Interbank Rate by 144 pips.  The cumulative

25   effect of these overcharges and underpayments by State Street resulted in over $56 million in

26   damages to the Pension Funds.

27

28

7

1

**State Street's False Claims, Records, and Statements**

2      29.     As the custodian bank for the Pension Funds, State Street had direct access to the

3   Pension Funds' custodial accounts.  With the Pension Funds' money on account with State Street,

4   State Street routinely made false claims for payment from the Pension Funds' custodial accounts

5   by entering fictional FX exchange rates into State Street's MOMS, IBS, WSS and Multi-Currency

6   Horizon System.

7      30.     These claims were false because, despite the language in the Pension Funds

8   Contracts, State Street claimed funds using fictional exchange rates substantially outside the

9   prevailing Interbank Rates at the time State Street executed the trades.

10      31.     State Street provided both Pension Funds with monthly "FX Spot Purchase/Sale

11   Activity Reports," detailing all custody FX transactions executed for the Pension Funds in order

12   to settle any underlying securities transactions, including repatriation.  State Street also

13   downloaded custody FX trading detail onto its on-line reporting database, MyStateStreet.com.

14   These reports and database identified each FX transaction executed by State Street for the

15   Pension Funds.  The reports and trading detail were false because the exchange rate they

16   identified and recorded was not the Interbank Rate at the time State Street executed the trades but,

17   rather, an inflated and fictional rate disguising State Street's undisclosed and unauthorized "mark-

18   up" or a reduced rate disguising State Street's undisclosed and unauthorized "mark-down"

19   depending on whether the transaction was a purchase or a sale of foreign currency.

20      32.     State Street used these false reports and fraudulent reporting systems for the

21   purpose of obtaining payment or approval of State Street's withdrawal of funds from the Pension

22   Funds' custodial accounts and for the purpose of avoiding payment of the Interbank Rate to the

23   Pension Funds when State Street repatriated the Pension Funds' foreign currency holdings into

24   U.S. Dollars.

25      33.     The fraudulent requests, false reports and fraudulent reporting systems alleged

26   herein concealed millions of dollars in State Street's overcharges and underpayments to the

27   Pension Funds, and were material to the Pension Funds' payment and approval of State Street's

28

8

1  false claims and material to State Street avoiding its obligation to pay the Pension Funds at the

2  Interbank Rate when converting foreign currency to U.S. Dollars.

3  **The State Street Conspiracy**

4      34.    State Street has, through their agents, subsidiaries, and/or associated companies,

5  participated in a common law conspiracy to violate Government Code Section 12651, subdivision

6  (a)(7), and a conspiracy in violation of Government Code Section 12651, subdivision (a)(3), by,

7  among other things, creating, servicing, maintaining, and participating in a fraudulent custody FX

8  trading system that State Street used to: (1) generate false claims to funds held in the Pension

9  Funds' custodial accounts; (2) generate false documents to obtain payment and/or approval of

10  debits from the Pension Funds' custodial accounts;  (3) generate false documents and records to

11  avoid State Street's obligation to pay the Interbank Rate at the time they executed repatriation

12  trades to convert foreign currency held in the Pension Funds' accounts into U.S. Dollars; and (4)

13  conceal State Street's use of fictitious custody FX rates when executing FX trades for the Pension

14  Funds.

15      35.    State Street agreed among themselves that: (1)  State Street would route all

16  custody FX trade requests State Street received from the Pension Funds through Global Markets

17  for execution; (2) Global Markets would "mark-up" the custody FX exchange rate above the

18  Interbank Rate at the time it executed custody FX trades with the Pension Funds; (3)  Global

19  Markets would "mark-down" the custody FX exchange rates below the Interbank Rate when it

20  executed repatriation trades converting foreign currency held in the Pension Funds' custodial

21  accounts into U.S. Dollars; and (4) Global Markets would enter these false exchange rates into

22  State Street Bank's MOMS system and other electronic trading platforms.

23      36.    State Street further knew, intended and agreed that, in direct violation of Pension

24  Fund Contracts, their fraudulent pricing scheme generated false claims for funds held in the

25  Pension Funds' custodial accounts and improperly debited those accounts for custody FX trades

26  using exchange rates substantially outside the Interbank Rate at the time State Street executed the

27  trades.  State Street further knew, intended and agreed that, in direct violation of Pension Fund

28  Contracts, their fraudulent pricing scheme generated false records and reports that State Street

9

1 submitted to the Pension Funds and used to avoid paying the Interbank Rate when State Street
2 executed repatriation trades converting foreign currency held in the Pension Funds' custodial
3 accounts into U.S. Dollars.

4     37.    State Street further knew, understood and agreed that this fraudulent pricing
5 scheme would have a material effect on the Pension Funds' decision to continue paying the false
6 claims alleged herein and that the purpose of the scheme was to get the Pension Funds to pay
7 and/or approve State Street's false claims. State Street thereby conspired to, intended and did,
8 defraud the Pension Funds by getting false claims allowed and paid by the Pension Funds in
9 violation of Government Code section 12651, subdivision (a)(3). State Street thereby also
10 conspired to, intended and did, create and use false statements, records and reports to conceal,
11 avoid and decrease their obligation to pay the Pension Funds in violation of Government Code
12 Section 12651, subdivisions (a)(7) and (a)(3).

13 **FIRST CAUSE OF ACTION**

14 **False Claims Act - Government Code § 12651, subd. (a)(1)**

15 **(Against All Defendants)**

16     38.    The People incorporate herein by reference the allegations in paragraphs 1 through
17 33 of this complaint.

18     39.    This is a claim for treble damages and penalties brought by the People under the
19 California False Claims Act, Government Code Section 12650 *et seq*.

20     40.    State Street knowingly presented or caused to be presented to the Pension Funds
21 false claims for payment of money and false claims to approve debits from the Pension Funds'
22 custodial accounts.

23     41.    As a proximate result of the State Street's actions, the Pension Funds suffered
24 damages in a specific amount to be determined at trial.

25

26

27

28

10

COMPLAINT IN INTERVENTION (34-2008-00008457-CU-MC-GDS)

1

**SECOND CAUSE OF ACTION**

2

**False Claims Act - Government Code § 12651, subd. (a)(2)**

3

**(Against All Defendants)**

4       42.    The People incorporate herein by reference the allegations in paragraphs 1 through

5 33 of this complaint.

6       43.    This is a claim for treble damages and penalties brought by the People under the

7 California False Claims Act, Government Code Section 12650 *et seq*.

8       44.    State Street knowingly made, used, or caused to be made or used false records and

9 statements to get false claims for funds from the Pension Funds' custodial accounts paid and

10 approved by the Pension Funds.

11       45.    As a proximate result of the State Street's actions, the Pension Funds suffered

12 damages in a specific amount to be determined at trial.

13

**THIRD CAUSE OF ACTION**

14

**False Claims Act - Government Code § 12651, subd. (a)(7)**

15

**(Against All Defendants)**

16       46.    The People incorporate herein by reference the allegations in paragraphs 1 through

17 33 of this complaint.

18       47.    This is a claim for treble damages and penalties brought by the People under the

19 California False Claims Act, Government Code Section 12650 *et seq*.

20       48.    State Street knowingly made, used, and caused to be made or used false FX Spot

21 Purchase/Sale Activity Reports, false MyStateStreet.com database entries, false statements in

22 their electronic custody FX trading platforms and accounting databases, and other false

23 documents and statements to conceal, avoid and decrease their obligations to pay the Interbank

24 Rate when State Street executed repatriation trades converting foreign currency held in the

25 Pension Funds' custodial accounts into U.S. Dollars in violation of Government Code Section

26 12651, subdivision (a)(7).

27       49.    As a proximate result of the State Street's actions, the Pension Funds suffered

28 damages in a specific amount to be determined at trial.

11

1        **FOURTH CAUSE OF ACTION**

2    **False Claims Act Conspiracy - Government Code § 12651, subds. (a)(7) and (a)(3)**

3                        **(Against All Defendants)**

4        50.    The People incorporate herein by reference the allegations in paragraphs 1 through

5    37 of this complaint.

6        51.    This is a claim for treble damages and penalties brought by the People under the

7    California False Claims Act, Government Code Section 12650 *et seq*.

8        52.    Defendants, and each of them, conspired to conceal, avoid and decrease an

9    obligation to pay the State in violation of Government Code Section 12651, subdivisions (a)(7)

10   and (a)(3).

11       53.    Defendants, and each of them, intended to defraud the People, and acted in

12   furtherance of the conspiracy to defraud the People by participating in the schemes, set forth

13   above, to falsely report the Interbank Rate at the time State Street executed custody FX

14   transactions with the Pension Funds and to conceal State Street's fraudulent custody FX pricing

15   scheme.

16       54.    As a proximate result of the above-described acts, the Pension Funds have been

17   injured and suffered damages in a specific amount to be determined at trial.

18                        **FIFTH CAUSE OF ACTION**

19           **Violation of Business & Professions Code §17200, et seq.**

20                        **(Against All Defendants)**

21       55.    The People incorporate herein by reference all the allegations in paragraphs 1

22   through 37 of this complaint.

23       56.    The above described acts by State Street constitute unfair competition within the

24   meaning of Business & Professions Code Section 17200, in that they include, but are not limited

25   to the following fraudulent business practices:

26           a.    State Street falsely represented that custodial FX trades executed by State

27   Street for the Pension Funds would be priced at the Interbank Rate at the time the trades were

28   executed;

                                    12

1            b.      State Street executed tens of thousands of custody FX trades for the

2 Pension Funds at rates other than the contractually-allowed Interbank Rate at the time that the

3 transactions were executed, reaping an undisclosed profit.

4            c.      State Street knowingly presented or caused to be presented to the Pension

5 Funds false claims for payment of money and false claims to approve debits from the Pension

6 Funds' custodial accounts by falsely reporting Interbank Rates to the Pension Funds;

7            d.      State Street knowingly made, used, or caused to be made or used false

8 records and statements to get false claims for funds from the Pension Funds' custodial accounts

9 paid and approved by the Pension Funds.

10            e.      State Street knowingly made, used, and caused to be made or used false FX

11 Spot Purchase/Sale Activity Reports, false MyStateStreet.com database entries, false statements

12 in their electronic custody FX trading platforms and accounting databases, and other false

13 documents and statements to conceal, avoid and decrease their obligation to pay the Interbank

14 Rate when State Street executed repatriation trades converting foreign currency held in the

15 Pension Funds' custodial accounts into U.S. Dollars.

16       57.      These acts and practices constitute unfair competition within the meaning of

17 Business & Professions Code section 17200 in that they violate Government Code Section 12650,

18 *et seq.* as more particularly described in paragraphs 1 through 37.

19       58.      As a proximate result of State Street's unlawful business practices, State Street

20 obtained and wrongfully retained monies that rightfully belonged to the Pension Funds in a

21 specific amount to be determined at trial.

22                              **PRAYER FOR RELIEF**

23       Wherefore, Plaintiff, the People pray for relief against all Defendants as follows:

24       1.      Three times the damages which the Pension Funds sustained as a result of

25 Defendants' false claims in an amount to be determined;

26       2.      Civil penalties in the amount of $10,000 for each false claim pursuant to

27 Government Code Section 12651, subdivision (a);

28

13

3.   Civil penalties in the amount of $2,500, pursuant to Business & Professions Code Section 17206, for each act by Defendants in violation of Business & Professions Code Section 17200;

4.   For a permanent injunction pursuant to Business & Profession Code Section 17203 restraining and enjoining Defendants, and each of them, and all those acting under, by through or on behalf of them, from engaging in or performing directly or indirectly, any or all of the following:

a.   Making, or conspiring to make, any false claim as set forth in paragraphs 1 through 37;

b.   Making, conspiring, using, or causing to be made or used false statements, documents or records to avoid the obligation to pay the Pension Funds amounts owed for repatriation of foreign currency as set froth in paragraphs 1 through 37;

c.   Engaging in any acts of unfair competition described in paragraphs 1 through 37, or any other act of unfair competition.

5.   That Defendants be ordered to make full restitution, pursuant to Business & Professions Code Section 17203, of any money that may have been acquired and/or wrongfully retained by means of their violation of Business and Professions Code Section 17200;

6.   For costs of suit incurred herein.

7.   Such further or additional relief as the Court deems proper.

Dated: October 20, 2009

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
MARK J. BRECKLER
Senior Assistant Attorney General
LARRY G. RASKIN
Supervising Deputy Attorney General

JEFFREY L. SIMPTON
Deputy Attorney General
*Attorneys for the People of the State of California*

14