# EX. 25

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3    - - - - - - - - - - - - - - -x
 4    ARKANSAS TEACHER       :
 5    RETIREMENT SYSTEM,     :
 6    et al.,                :
 7         Plaintiffs,       :   CA No. 11-10230-MLW
 8      v.                   :
 9    STATE STREET BANK      :
10    AND TRUST COMPANY,     :
11         Defendant.        :
12    - - - - - - - - - - - - - - -x
13                                    July 6, 2017
                                      Washington, D.C.
14
15
16    Deposition of:
17                    ALAN KOBER,
18    called for oral examination by Counsel to the
19    Special Master, pursuant to notice, at JAMS,
20    1155 F Street, Northwest, Suite 1150, Washington,
21    D.C. 20004, before Christina S. Hotsko, RPR, of
22    Veritext, a Notary Public in and for the District
23    of Columbia, beginning at 8:32 a.m., when were
24    present on behalf of the respective parties:
25
```

Page 6



Page 7
1  disability program for the member companies. And,
2  well, in my tenure there, we got put in a 401(k)
3  for the employees.
4      In 2000, late 1999, I was offered a job
5  with the Andover Companies. And I had met with
6  the president of the Andover Company on numerous
7  occasion because, as I said, they were the largest
8  member of the association.
9      The Andover Company, in my opinion, had a
10 very fine reputation. I will give you the -- as
11 an aside, I will say that two or three months
12 after I went to work there, my wife asked
13 something about what my vacation policy was. And
14 my daughter, who was a CPA, married to a CPA, they
15 were at the house. And I said, I have no idea
16 what the vacation -- what I have for vacation.
17      My son said, well, go get your offer
18 letter. And I said, offer letter? What's that?
19 I don't have an offer letter.
20      He said, well, what do you have? I said,
21 I have a handshake with the president of the
22 company, Bill Nichols. And, I mean, that's the
23 culture of this company.
24      And I stayed -- well, I had a guaranteed
25 ten years. I was 63 at the time. I had a

Page 8
1  guaranteed ten years, and I ended up staying 14
2  and a half years.
3      Q.  So Mr. Kober, you were asked to run the
4  three subsidiary companies in approximately 2000.
5      A.  2000.  Yes.
6      Q.  And --
7      A.  And --
8      Q.  Go ahead, sir.
9      A.  Well, I forgot one thing.  When I was in
10 New Jersey, I finally got smart enough to say I
11 should go to college.  So Fairleigh Dickinson
12 University was in a campus in the town that I
13 lived at in Madison, New Jersey.  So I went nights
14 for six years and got a BS in business.
15     Q.  And sir, how old were you when you were
16 appointed vice-president and trustee?
17     A.  63.
18     Q.  All right.  And you said that you served
19 for approximately 14 years before retiring.  When
20 did you retire?
21     A.  June 1st of 2014.
22     Q.  And three years later, you still have
23 some involvement in the company.  I would imagine
24 your wife's questioning as to why you're doing
25 this has continued; is that correct?

Page 9



Veritext Legal Solutions
212-267-6868        www.veritext.com        516-608-2400

Page 10

1  there with State Street's lawyers.
2      So what else?
3   Q.  In addition to giving the deposition in
4  that prior case, did you compile any documents or
5  do anything else?
6   A.  Yes.  We supplied all the documents that
7  they requested.  I kept abreast with what was
8  going on with various phone conversations with
9  Laura and e-mails.
10     Yes.  I was very active in that one.
11  Q.  And when you left your position at
12  Andover Companies on June 1, 2014, did you have a
13  successor?
14  A.  Yes, I did.  Janet Wallace, who is here
15  with me now.
16  Q.  And did you recommend Ms. Wallace for the
17  position?
18  A.  I did.
19  Q.  And when you transitioned with Janet, did
20  you give her any kind of an overview as to the
21  State Street case?
22  A.  Yes.  Well, she was pretty much aware of
23  as to what was going on because a lot of the
24  documents that were -- well, all of the documents
25  that were being requested channeled through

Page 11

[redacted]

Page 12

[redacted]

Page 13

[redacted]



Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

Page 34

1  Q.  All right, sir.  Any other reaction?
2  A.  No.  And there was a follow-up story
3  recently in the Globe talking about Garrett
4  Bradley.  And I sort of forget the gist of the
5  whole article, but it appears that he's not
6  someone I would put my trust in.
7  Q.  Now, sir, you've been involved in
8  financial services for many years.  Based on your
9  familiarity with this case, do you have any
10 recommendations as to how the problems that have
11 been alleged in this case might be avoided?
12 A.  I -- actually, I really can't think of
13 any recommendations except that perhaps when
14 different law firms bill you, they should all give
15 you a list of everybody that's involved so that
16 you would know that, gee, John Jones worked for
17 all three law firms?  That doesn't seem likely to
18 me.
19 Q.  All right, sir.  And what was your
20 reaction to the -- strike that.
21     Thank you for that recommendation.
22     And how many hours in total do you think
23 you spent on this most recent State Street case?
24 A.  I have no idea.  As I previously said, I
25 wished I had kept a logbook or a journal.  Not

Page 35

1  only my hours.  Janet's hours.  Joline Pomerleau,
2  who gathered all the documents and stuff.  You
3  know, there's a lot of hours involved and a lot of
4  different pay rates, too.
5  Q.  And is that part of your reasoning for
6  believing that $10,000 service award does not
7  compensate the company for the amount of time that
8  it allocated for you and Janet and others to work
9  on the case?
10 A.  That is the reasoning.  Yes.
11 Q.  And sir, one final question on the Globe
12 article.  Do you recall the reference to
13 Mr. Michael Bradley in that story?
14 A.  I do.
15 Q.  And what was your reaction to the
16 allegations against Michael Bradley?
17 A.  Well, as a public defender, he's billing
18 the state for $53 an hour, and they're charging
19 $500 an hour for his services.  Something is way
20 off somewhere.  Maybe public defenders should get
21 more money.  I don't know.  But in the initial
22 article -- or maybe it was in the subsequent
23 article.  They pointed out that his brother,
24 Garrett Bradley, got through a -- a bill through
25 the state government to increase their -- the pay



Pages 36 and 37 [redacted]