# EX. 53

# Exhibit 5

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                                  )
ARKANSAS TEACHER RETIREMENT SYSTEM,               )
on behalf of itself and all others similarly      )     Case No. 11-cv-10230 MLW
situated,                                         )     Case No. 11-cv-12049 MLW
                                                  )     Case No. 12-cv-11698 MLW
                          Plaintiffs,             )
                                                  )
v.                                                )
                                                  )
STATE STREET BANK AND TRUST COMPANY,              )
                                                  )
                          Defendant.              )
_____         )

## DECLARATION OF JONATHAN B. MARKS

I, Jonathan B. Marks, declare as follows pursuant to 28 U.S.C. § 1746:

1.       I am Jonathan B. Marks, a Mediator and Arbitrator at MARKSADR, LLC, in Bethesda, Maryland.

2.       I received my B.A. *Cum Laude* from Harvard College in 1966 and my J.D. *Cum Laude* from Harvard Law School in 1972. At Harvard Law School, I was an editor and then President of the Harvard Law Review.

3.       I began my legal career as an Assistant United States Attorney for the District of Columbia. Following this, I was an Associate and Partner and Munger, Tolles & Olson in Los Angeles. My practice primarily involved corporate and commercial litigation. I left private practice in 1979 to serve as Counsel and Associate Director for Planning and Evaluation for the Peace Corps, and then as General Counsel of the United States International Development Cooperation Agency.

4.      In 1981, I co-founded and served as Chairman of Endispute, Incorporated, which provided mediation, arbitration and other dispute resolution services. In August, 1994, Endispute merged with Judicial Arbitration and Mediation Services to form J·A·M·S/Endispute. I served as Vice-Chairman of the Board of Directors of J·A·M·S/Endispute and Chairman of the firm's Executive Committee, which oversaw professional practice issues, until September, 1999, when I formed MARKSADR, LLC. I devote all my professional time to serving as a mediator and arbitrator.

5.      I have extensive experience in mediation, arbitration and other dispute resolution assistance in litigation or pre-litigation disputes arising out of, for example, disputes involving the sale and acquisition of businesses; commercial activities; all aspects of construction; professional malpractice; securities disputes; consumer and other class actions; ERISA-related disputes; claims against officers and directors of financial institutions and other corporations; insurance coverage; environmental claims; government contract claims; and high stakes personal injury and product liability claims and lawsuits.

6.      On August 2, 2012, I was retained by the Parties in the above-captioned consolidated action (the "Action") to act as mediator in an attempt by the Parties to reach a resolution of the Action. It is my understanding that my retention followed an Order of the Court directing the Parties to discuss the possibility of settlement and mediation.

7.      The mediation process was confidential, but all Parties have authorized me to inform the Court of the matters presented in this Declaration. I make this Declaration based on personal knowledge and am competent to testify to the matters set out herein.

2

8.     The purpose of the mediation was to work with the Parties to explore whether they could reach a settlement of this matter, based on a joint and separate evaluation of the risks and costs each side faced in continued litigation.

9.     On August 7, 2012, I conducted a conference call with the Parties to obtain a general overview of the Action, including the identity and background of Parties, status of the litigation, principal claims and defenses, and nature and status of any previous attempts at resolution.

10.     On August 15, 2012, I was provided pre-existing materials jointly agreed to by the Parties, including the operative complaint and motion to dismiss briefing, oral argument transcript, and Order on the motion to dismiss.

11.     On September 6, 2012, I conducted a half-day, in-person pre-mediation session in New York City, attended by attorneys and client representatives for the Defendant.

12.     On September 13, 2012, I conducted a half-day, in-person pre-mediation session in New York City, attended by numerous attorneys for Plaintiffs.

13.     On October 9, 2012, I conducted a full-day, in-person pre-mediation session in New York City, attended by lead counsel for both sides.

14.     On October 23-25, 2012, I conducted an in-person mediation in Boston, attended by numerous attorneys and Party representatives.

15.     It is my understanding that on November 15, 2012, the Parties attended a status conference before the Court and proposed a mediation and discovery plan by which the Parties would continue to explore resolution of the Action through mediation before me, that the Parties would exchange documents and information in furtherance of these

3

efforts, and that I would be called upon to facilitate these exchanges and, if necessary, to resolve any disputes between the Parties. It is my further understanding that the Court generally endorsed this mediation and discovery plan.

16.     Thereafter, I conducted 14 additional in-person mediation sessions in Boston, New York City, and Washington, D.C., some of which were *ex parte* and some were joint. The dates of these sessions were January 24, 2013; July 9, 2013; September 17, 2013; November 13, 2013; March 4, 2014; May 9, 2014; January 5, 2015; February 4, 2015; February 26, 2015; April 30, 2015; June 2, 2015; June 9, 2015; June 26, 2015; and June 30, 2015. Party representatives attended several of these mediation sessions.

17.     During the course of the mediation, and between mediation sessions, I conducted numerous, often lengthy, telephone calls with counsel for the Parties to better understand the perspectives of the Parties and to try to gauge the distance between the Parties' respective positions, in an effort to resolve the Action. Additionally, I was involved in hundreds of e-mail exchanges.

18.     Ultimately, the formal mediation sessions and follow-up mediated telephonic negotiations resulted in an agreement-in-principle to a monetary settlement of $300 million on June 30, 2015. The agreement-in-principle was subject to State Street's final resolution of investigations by governmental authorities, specifically the U.S. Department of Labor ("DOL"), U.S. Department of Justice ("DOJ"), and U.S. Securities and Exchange Commission ("SEC").

19.     The mediation session on June 30, 2015 included participation by representatives of DOL. DOL's presence added an additional layer of complexity to the negotiations.

4

20.     The June 30, 2015 session included negotiations, in which the DOL representatives participated, concerning the amount of settlement recovery that would be allocated to ERISA claimants. These discussions resulted in an agreement to allocate $60 million of the class settlement recovery to ERISA claimants.

21.     The agreement-in-principle to a total class settlement of $300 million was reached before the agreement to allocate $60 million of the settlement recovery to ERISA claimants was reached.

22.     After June 30, 2015, other details of the settlement were worked out by counsel without my involvement.

23.     The settlement effort at the mediation sessions and in follow-up interactions between and after the sessions, included extensive exchanges of views on the merits and difficult arm's-length negotiations, in which each side worked to persuade the other to modify positions based on reevaluation of risks faced if the case did not settle.

24.     These extensive exchanges of views included presentations by both sides on certain class certification, liability and damages issues, as well as a detailed presentation by a cost accounting expert engaged by the Defendant.

25.     The terms of the settlement represented a compromise of the Parties' initial positions, but in my view these compromises were the product of the Parties' assessment of the perceived relative strengths and weaknesses of their positions, and the risks inherent in continued litigation and the defendants' desire to reach finality with respect to their ongoing negotiations with the government regulators as well.

26.     The settlement reached by the Parties is consistent with the judgments I reached about the strengths and weaknesses of the Parties' cases.

5

27.     In my view, counsel for each Party were effective advocates for their clients and effective participants in the effort to reach a settlement that fairly valued the risks and opportunities of each Party in the litigation.

28.     Further, it was clear to me throughout the entire mediation process that each of the Parties was represented by experienced and competent counsel, willing, if necessary, to litigate the matter to conclusion.

29.     I observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any Party. In fact, it was apparent that this was not the case.

30.     I respectfully suggest that the Parties and their counsel should be commended for the professionalism and tenacity with which they approached the mediation process and ultimately reached the settlement, under circumstances that were protracted and often challenging. The mediation process here appears to have saved both sides substantial litigation costs and avoided unnecessary judicial intervention.


I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct. Executed on September 13, 2016.

_____
Jonathan B. Marks