# EX. 104

Page 1

1

2   JAMS, Inc.

3   Reference No. 1345000011

4   ------------------------------------x

5   In Re State Street Attorneys Fees

6   ------------------------------------x

7                   June 6, 2017

8                   2:58 p.m.

9

10  BEFORE:

11  Special Master Hon. Gerald Rosen, United

12  States District Court, Retired

13

14              Deposition of KELLY GRALEWSKI,

15  taken by Counsel to the Special Master,

16  held at JAMS, Inc., 620 Eighth Avenue, New

17  York, New York, before Jineen Pavesi, a

18  Registered Professional Reporter,

19  Registered Merit Reporter, Certified

20  Realtime Reporter and Notary Public of the

21  State of New York.

22

23

24

25      Job No. CS2629875

Page 6

1
2 whether it should be sanctioned.
3        So that is why we're here, and
4 Attorney Gralewski, or Kelly, I would ask
5 at this point that you raise your right
6 hand and be sworn in by the court
7 reporter.
8 K E L L Y   G R A L E W S K I,
9 having first been duly sworn by a Notary
10 Public of the State of New York, was
11 examined and testified as follows:
12 EXAMINATION BY
13 MR. SINNOTT:
14    Q.    Thanks for being here, Kelly.
15        Can you tell us your background
16 beginning with your undergraduate
17 education.
18    A.    I went to California State
19 University, Chico, and got a double major
20 in international business and French.
21        And then I went to California
22 Western School of Law in San Diego.
23    Q.    When did you graduate from law
24 school?
25    A.    1997.

Page 8

1        GRALEWSKI
2    Q.    How long did you work on that
3 particular case for?
4    A.    Oh, gosh, I can't remember,
5 maybe a year, a year-and-a-half.
6    Q.    Was there an interruption in
7 your employment at Lieff or did you roll
8 into another case?
9    A.    No, I would automatically roll
10 into another case, but I did stop working
11 in fall of 2011 by choice.
12    Q.    How long did you stop working
13 for?
14    A.    Just a year, and then I was
15 called and asked to be on another case.
16    Q.    When you came back in 2012,
17 what was the case that you were called
18 back for?
19    A.    BoNY Mellon.
20    Q.    Were your duties in the Mellon
21 case as primarily a document reviewer?
22    A.    Correct.
23    Q.    When you were brought in for
24 that, did you receive an onboarding
25 orientation or training?

Page 7



Page 9

Veritext Legal Solutions

800-567-8658                                           973-410-4040



Page 10

Page 11

Page 12

Page 13

1          GRALEWSKI
2     Q.     Do you remember what the
3  documents that you were shown in the State
4  Street case were?
5     A.     The amended complaint and I
6  believe it was the opposition to motion to
7  dismiss.
8     Q.     Your training on Catalyst, was
9  that by Lieff personnel or by vendors?
10    A.     We had one training with the
11 Catalyst and then we had a Leiff
12 Cabraser-only training as well.
13    Q.     Were you working out of Lieff's
14 offices or remotely?
15    A.     Remotely.
16    Q.     Was your training also
17 conducted remotely or did you report to
18 the San Francisco office?
19    A.     It was remotely.
20    Q.     Was that pretty seamless and
21 uneventful, as far as you were concerned?
22    A.     Yes.
23    Q.     You didn't have any problems
24 with the database or running the database?
25    A.     No.

4 (Pages 10 - 13)

Page 18



Page 20

```
 1          GRALEWSKI
 2    A.    No.
 3    Q.    How did the State Street case
 4 compare to the Mellon case as far as the
 5 difficulty of your work?
 6    A.    Are you asking was it a
 7 difficult --
 8    Q.    Was it as difficult, more
 9 difficult, less difficult?
10    A.    I imagine that they are pretty
11 similar as far as understanding what was
12 going on.
13    Q.    Did you find that working on
14 the Mellon case had better prepared you
15 for the State Street case or made you more
16 efficient or effective?
17    A.    I'm sure it did.
18    Q.    Why do you think so?
19    A.    From my understanding, and
20 again, I haven't looked at the BoNY Mellon
21 documents since I got off that case, or
22 State Street, I think they were very
23 similar claims, so I think it definitely
24 helped me.
25    Q.    Specifically working on a
```

Page 19

```
 1          GRALEWSKI
 2 complaint.
 3    Q.    Did you also look for things
 4 that were adverse or might undermine the
 5 firm's case?
 6    A.    I don't remember if we were
 7 asked to do that in this case.
 8    Q.    Do you ever remember
 9 identifying any documents that were
10 adverse or undermined the case?
11    A.    I don't remember.
12    Q.    When you evaluated a document,
13 did you just do it once and move on or
14 were there occasions when you would look
15 at a document more than once?
16    A.    Specifically I don't know if I
17 did that, but that's typically what I
18 would do; if I'm unsure or it is more
19 interesting and I want to go back, I'll
20 leave it and make a note of it and then
21 move on to the next one and then go back
22 to it.
23    Q.    Were you tasked with drafting
24 any memoranda related to any specific
25 topics in the case?
```

Page 21



6 (Pages 18 - 21)



Page 26

1          GRALEWSKI
2    A.    No.
3    Q.    Do you have any idea what
4  amount the firm billed you out at for the
5  State Street case?
6    A.    No.
7    Q.    You don't know today?
8    A.    Oh, I do know today; I didn't
9  know then.
10   Q.    How much was it?
11   A.    I think it was $400.
12   Q.    How much were you paid per
13 hour?
14   A.    At that time it was $45 an
15 hour.
16   Q.    What is it now?
17   A.    $60.
18          JUDGE ROSEN:  You did no legal
19 memoranda, anything like that?
20          (Continued on next page.)
21
22
23
24
25

Page 27

17
18
19
20
21
22
23
24
25

Page 28

25

Page 29

Veritext Legal Solutions

800-567-8658                                    973-410-4040