# EX. 123

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 12-cv-11698 MLW |

**LABATON SUCHAROW LLP'S RESPONSE TO SPECIAL MASTER HONORABLE GERALD E. ROSEN'S (RET.) SUPPLEMENTAL INTERROGATORIES TO LABATON SUCHAROW LLP**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Labaton Sucharow LLP ("Labaton Sucharow" or the "Firm") responds as follows to the Special Master Honorable Gerald E. Rosen's (Ret.) Supplemental Interrogatories to Labaton Sucharow LLP ("Supplemental Interrogatories").

Labaton Sucharow's answers are based solely on the facts and contentions presently known. To the extent Labaton Sucharow answers any Interrogatory, it does so without waiving any rights or objections and expressly reserves all rights and objections. Labaton Sucharow's answers to the Interrogatories are made without waiving the right to: (i) amend, modify or supplement the answers and objections stated herein, if necessary; (ii) rely on any facts, documents or other evidence which may develop or come to Labaton Sucharow's attention at a later date; and (iii) rely upon, reference or put into evidence additional expert information, testimony or reports.

## GENERAL OBJECTIONS

The following General Objections are incorporated by reference into each response to the Supplemental Interrogatories, whether or not they are referenced in a specific response below.

1. Labaton Sucharow objects to Definition No. 1 as overbroad, irrelevant, and lacking in proportionality. Consistent with the agreement reached with counsel to the Special Master in connection with prior sets of Interrogatories, Labaton Sucharow will construe the term "you", "your", "the Firm", and "the Law Firm" to refer to Labaton Sucharow LLP, and its employees.

2. Labaton Sucharow objects to the Supplemental Interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or information that otherwise is privileged, protected or exempt from discovery. To the extent that Labaton Sucharow has provided any answers below that may include information that is

privileged or protected as work product, the Firm provides such answers pursuant to the Limited Protective Order of the Special Master Relating to Attorney/Client Privileged and Work Product Documents and Information Being Provided to the Special Master (ECF No. 191). Pursuant to this protective order, the provision of information to the Special Master does not constitute a waiver of the attorney-client privilege or work product protection.

3. Labaton Sucharow objects to the Supplemental Interrogatories to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure, particularly Rule 33, and by any court decisions interpreting those Rules.

4. Labaton Sucharow objects to the Supplemental Interrogatories to the extent they seek information beyond the scope of, or not relevant to, the Courts' February 6, 2017 Memorandum and Order in the above-referenced cases.

5. In responding to the Supplemental Interrogatories, Labaton Sucharow has made reasonable efforts to respond based on its understanding and interpretation of each Interrogatory. If the Special Master subsequently asserts a reasonable interpretation of an Interrogatory which differs from that of Labaton Sucharow, Labaton Sucharow reserves the right to supplement its responses.

6. Labaton Sucharow reserves the right to supplement its answers should additional responsive information be discovered following the designated dates for responses.

7. Capitalized terms shall have the meanings set forth in the Supplemental Interrogatories, subject to any objections asserted herein. All other capitalized but undefined terms used in this response have the same meanings as set forth in the Stipulation and Agreement of Settlement (ECF No. 89).

## LABATON SUCHAROW'S OBJECTIONS AND ANSWERS

**INTERROGATORY 1(a):**

Describe in detail the nature of the relationship and/or partnership between and among Labaton, Lieff and/or Thornton, on the one hand, and Damon Chargois, Esq. (or any firm represented by Mr. Chargois), whether past or present. In your answer, please include the following:

    a. The origins of the relationship, including a detailed description of any past legal, financial, and/or professional affiliations between the Firm, on the one hand, and Mr. Chargois or any firm represented by Mr. Chargois, on the other, and if applicable a case caption or description of the matter;

**RESPONSE TO INTERROGATORY 1(a):**

The Firm incorporates the General Objections set forth above. Labaton Sucharow further objects to this Interrogatory (and to the other subsections of Interrogatory 1) on the grounds that it is overbroad, unduly burdensome, lacking in proportionality, and beyond the scope of the Court's February 6, 2017 Memorandum and Order in the above-referenced cases. Subject to those objections, the Firm responds as follows:

Labaton Sucharow partner Eric Belfi first came to know Mr. Chargois in approximately 2004, when Mr. Belfi was at his prior firm, Murray, Frank & Sailer LLP. Mr. Chargois practices in Houston, Texas, and his firm, Chargois & Herron, LLP[1], previously had an office in Little Rock, Arkansas. Mr. Chargois and Tim Herron, a partner in the Little Rock office, introduced Labaton Sucharow to Paul Doane, then Executive Director of ARTRS, in 2007. In October 2008, ARTRS, with full knowledge that Labaton Sucharow was working with Chargois & Herron, selected Labaton Sucharow as one of its "monitoring counsel." Because Chargois & Herron facilitated the introduction that led to that selection, Chargois & Herron and Labaton

---

[1] Over time, the firm name and composition has changed but Mr. Chargois has been a named partner throughout.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- 4 -

Sucharow reached an agreement that, if the Firm represents ARTRS and obtains a settlement or judgment, Chargois & Herron will receive a referral fee. The referral fee is 20% of any net fee award to Labaton Sucharow that relates to ARTRS (pro rata if there are multiple parties represented by the Firm), unless otherwise negotiated in specific cases.

Pursuant to this arrangement, Chargois & Herron has received referral fees in the following cases:

- *In Re A10 Networks, Inc. ShareholderLitigation*, No. 2015-1-CV-276207 (Cal. Super. Ct. Jan. 29, 2015)

- *Brado v. Vocera Communications, Inc.*, No. 13-cv-3567 (N.D. Cal. Aug. 1, 2013)

- *Perry v. Spectrum Pharmaceuticals, Inc.*, No. 13-cv-0433 (D. Nev. Mar. 14, 2013)

- *Hoppaugh v. K12, Inc.*, No. 12-cv-0103 (E.D. Va. Jan. 30, 2012)

- *In re Hewlett-Packard Company Securities Litigation*, No. 11-cv-1404 (C.D. Cal. Sept. 13, 2011)

- *Arkansas Teacher Retirement System v. State Street Corporation*, No. 11-cv-10230 (D. Mass. Feb. 10, 2011)

- *In Re Beckman Coulter, Inc. Securities Litigation*, No. 10-cv-1327 (C.D. Cal. Sept. 3, 2010)

- *In re Colonial BancGroup, Inc. Securities Litigation*, No. 09-cv-0104 (M.D. Ala. Feb. 9, 2009)

- *In Re Capacitors Antitrust Litigation*, No. 14-cv-3264-JD (N.D. Cal.)

Additional information regarding the referral relationship and agreement can be found in documents being produced in response to the Special Master Honorable Gerald E. Rosen's (Ret.) Supplemental Request for the Production of Documents to Labaton Sucharow LLP ("Supplemental Request for Production").

The Firm has also worked with Mr. Chargois as local counsel in matters pending in courts in Texas, and has worked with Mr. Chargois on other business development opportunities.

**INTERROGATORY 1(b):**

    b. Whether the Plaintiffs' Firms intended to pay a portion of the Fee Award to Mr. Chargois, whether or not said payment was made, and if so, the total amount of the intended (or actual) payment, date(s) of any payments made, and the basis therefore;

**RESPONSE TO INTERROGATORY 1(b):**

The Firm incorporates the General Objections set forth above. Subject to those objections, the Firm responds as follows:

In April 2013, the Plaintiffs' Law Firms discussed Labaton Sucharow's obligation to pay a referral fee to Chargois & Herron, and agreed that if the SST Litigation resulted in a settlement or judgment, the amount owed to Chargois & Herron (20% of Labaton Sucharow's share of any fee award) would be calculated as a percentage "off the top" of the total fee award. For example, if the Plaintiffs' Law Firms decided that Labaton Sucharow should receive 25% of the total fee award, Chargois & Herron's share would be 5% of the total fee award (which is 20% of Labaton Sucharow's 25%). The Plaintiffs' Law Firms agreed that the payment to Chargois & Herron would come out of the portion of the Fee Award allocated to the three Plaintiffs' Law Firms. More specifically, the allocations from the Fee Award to Labaton Sucharow, Lieff and Thornton would each be reduced by 1/3 of the total owed to Chargois & Herron, in order to "fund" the referral payment. Accordingly, this shared obligation would affect neither the amount of the settlement flowing to the Class nor the amount of fees flowing to the ERISA counsel.

Once the parties reached a settlement in principle, the Plaintiffs' Law Firms again discussed the referral fee with Mr. Chargois, and agreed that it would be calculated as 5.5% of

the total Fee Award in the case. As they had agreed in 2013, the amount of the fee, $4,102,549.43 (which includes $2,780.68 in interest for the period 11/3/2016 through 12/8/2016), was deducted in equal parts from the portion of the award otherwise payable to the three Plaintiffs' Law Firms. The money was transmitted to Chargois & Herron on December 8, 2016, after Mr. Chargois signed an undertaking promising to return his firm's pro rata share of a reduction in the Fee Award, should the Court order one in the future.

Additional responsive information is included in documents being produced in response to the Supplemental Request for Production.

**INTERROGATORY 1(c):**

    c. To the extent Mr. Chargois was involved in the SST Litigation, or contributed in any way to the investigation, litigation, mediation and/or settlement of the Litigation, describe in detail the nature of his involvement, the dates of any work performed, and any individuals and/or firms with knowledge of said involvement;

**RESPONSE TO INTERROGATORY 1(c):**

The Firm incorporates the General Objections set forth above. Subject to those objections, the Firm responds as follows:

Mr. Chargois was not substantively involved in the investigation, litigation, mediation, and/or settlement of the SST Litigation. To the best of the recollection of Labaton Sucharow attorneys involved, he was not involved in any in-person meetings with ARTRS regarding the matter, although he may have been present on one or more telephone calls early in the process. Labaton Sucharow attorneys, principally Eric Belfi, spoke to or emailed with Mr. Chargois occasionally and apprised him of the status of the matter. Additional responsive information is included in documents being produced in response to the Supplemental Request for Production.

**INTERROGATORY 1(d):**

    d. The nature of any proposed or actual agreements, whether informal or formal, between and among Labaton, Lieff, and/or Thornton, on the one hand, and Mr. Chargois, to compensate Mr. Chargois a percentage of the total attorney's fees awarded in the SST Litigation, regardless of the total amount of that aggregate fee;

**RESPONSE TO INTERROGATORY 1(d):**

The Firm incorporates the General Objections set forth above. Subject to those objections, the Firm responds as follows:

The agreement between Labaton Sucharow and Chargois & Herron, discussed in response to Interrogatory 1(a) above, was not finalized in writing. Several times, Labaton Sucharow partners Christopher Keller and Eric Belfi have exchanged emails and drafts with Mr. Chargois attempting to memorialize the terms, but they never finalized a signed, written agreement.

The agreement between Mr. Chargois and the Plaintiffs' Law Firms, discussed in response to Interrogatory No. 1(b) above, was confirmed in email correspondence, which is being produced in response to the Supplemental Request for Production.

**INTERROGATORY 1(e):**

    e. The significance of Larry Sucharow's email to David Goldsmith, Garrett Bradley, Christopher Keller and Eric Belfi, dated November 22, 2016 (Exhibit A), including references to "Damon's percentage [] off top" and the basis for stating that there is "no reason for ERISA to see Damon's split";

**RESPONSE TO INTERROGATORY 1(e):**

The Firm incorporates the General Objections set forth above. The Firm further objects because the phrase "[t]he significance" is vague and ambiguous. Subject to those objections, the Firm offers the following additional information regarding the referenced email:

The amount that a law firm pays in a referral fee is highly sensitive, and the Firm did not wish to disclose the obligation to Chargois & Herron if it was not necessary or required. Although the Firm shared information about the obligation with Lieff and Thornton, that was in the context of seeking contribution from those firms to assist in paying the fee, since ARTRS served as the sole named Plaintiff in the SST Litigation. The Firm did not otherwise disclose the payment to Chargois & Herron in connection with the SST Litigation, because it was based upon an obligation internal to Labaton Sucharow that did not affect the lodestar submission (there being no time for Mr. Chargois or his firm included) or Fee Petition. Moreover, the Court never asked the Plaintiffs' Law Firms or the ERISA firms to detail how the Fee Award would be distributed among the various lawyers, so there was no reason or occasion to inform the Court of the referral obligation, which did not reduce the amount paid to the class or impact the class in any way.

There also was no reason to share information regarding the referral fee with the ERISA firms, because it did not impact the portion of the Fee Award allocated to those firms. Specifically, the award to ERISA counsel was calculated as 10% off the total Fee Award, paid from that total. The payment to Chargois & Herron was calculated as 5.5% off the total Fee Award, but was paid from the balance of the award payable to the three Plaintiffs' Law Firms. Because the existence of the referral fee had no bearing on anything relating to the ERISA firms or the portion of the Fee Award paid to them, Mr. Sucharow asked in the referenced email that separate correspondence be sent, so that the ERISA firms were not provided this piece of irrelevant, confidential, information.

### INTERROGATORY 1(f):

    f. The significance of Bob Lieff's email to Garrett Bradley, Michael Thornton, Eric Belfi, 'cc Damon Chargois, Christopher Keller, and Daniel Chiplock, dated April 24, 2013 (Exhibit B), corresponding with Garrett Bradley concerning an obligation to pay "local counsel" assisting Labaton in matters involving the Arkansas Teachers Retirement System 20% of the net fee to Labaton; and

### RESPONSE TO INTERROGATORY 1(e):

The Firm incorporates the General Objections set forth above. The Firm further objects because the phrase "[t]he significance" is vague and ambiguous. The Firm further objects because Labaton Sucharow cannot testify as to the meaning behind communications written by others. Subject to those objections, the Firm offers the following additional information regarding the referenced email:

Labaton Sucharow believes that the "obligation" referenced in this string of emails refers to the obligation discussed in response to Interrogatory 1(a) above and discussed further in response to the other sub-parts of this Interrogatory. The reference to Mr. Chargois and his firm as "local counsel" is sometimes used in this context, because it was Mr. Chargois' partner – an Arkansas lawyer – who introduced Labaton Sucharow to ARTRS. Mr. Chargois and his firm were at times referred to with the shorthand "local counsel" because of the Arkansas presence that Chargois & Herron had when it facilitated that introduction.

### INTERROGATORY 1(g):

    g. Explain why the nature of this relationship and any intention to pay Mr. Chargois was not disclosed to Judge Wolf prior to submitting the Fee Petition nor to the Special Master during the course of his investigation.

**RESPONSE TO INTERROGATORY 1(g):**

The Firm incorporates the General Objections set forth above. Subject to those objections, the Firm responds as follows:

The Court did not ask Plaintiffs' Law Firms or the ERISA firms to explain how the Fee Award would be distributed or split, and Chargois & Herron had recorded no substantive attorney time to be included on the lodestar, so there was no occasion to raise the Chargois & Herron referral obligation with Judge Wolf. Labaton Sucharow had no affirmative obligation outside of an order imposing such a requirement to disclose this private referral arrangement to the Court. *See, e.g.,* William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 15:12 (5th ed.); *see also* response to Interrogatory No. 1(e) above.

With respect to the proceedings before the Special Master, Labaton Sucharow does not read the prior interrogatories or requests for production as requesting this or other information regarding the fee allocation, nor is Labaton Sucharow aware of any question at deposition that would have called for reference to this relationship. Request for Production No. 22, which appears geared toward discovering information regarding the portion of the Fee Award paid to ERISA counsel, might arguably be read to encompass such information; but that request was struck in connection with the conferral process.

Accordingly, Labaton Sucharow and its counsel who assisted in this portion of the document search and review, Mayer Brown LLP, did not design keyword searches or conduct a responsiveness review geared toward finding documents regarding the Fee Award allocation or the referral fee paid to Chargois & Herron. To the extent that Mayer Brown did come across some documents that mention Chargois & Herron or Mr. Chargois, they were designated as non-responsive.

**INTERROGATORY 2:**

Describe in detail all allocations of the Fee Award deposited by the Court into the Labaton Trust Account made to date. Please include the amount and recipient of each individual allocation, the date, and the brief description of the services rendered warranting payment. To the extent any money was not distributed and remains in the Labaton Trust Account at this time, please indicate how much, if any, of the sum now remaining has been earmarked, and the reason for the payment. Altogether, your answer to this interrogatory should account for the entirety of the $75,541,250.00 award.

**RESPONSE TO INTERROGATORY 2:**

The Firm incorporates the General Objections set forth above. Subject to and without waiving the foregoing objections, the Firm provides the following information:

The Fee Award was not deposited by the Court into an attorney trust account. Pursuant to the terms of the Stipulation and Agreement of Settlement approved by the Court, the Class Settlement Amount was deposited by State Street into an escrow account. In December 2016, after the Court entered the Fee Award, and after the Settlement reached its Effective Date, the Court-awarded attorneys' fees, Litigation Expenses, and Service Awards were paid out of the Class Settlement Amount.

Additionally, the Court awarded interest on the attorneys' fees, which totaled $50,557.88 at the time of payment. Accordingly, the total amount of attorneys' fees awarded, including accrued interest, was $74,591,807.88 ($74,541,250.00 + $50,557.88). Further, although the Court awarded $1,257,697.94 in Litigation Expenses, this amount included $1,800 in estimated travel costs for Labaton Sucharow attorneys to attend the November 2, 2016 hearing. *See* Firm individual fee declaration, ECF No. 104-15, at page 11. The Firm's travel costs in connection with the hearing were $1,642.25, *i.e.*, less than $1,800. Accordingly, total Litigation Expenses were $1,257,540.19, slightly less than the $1,257,697.94 amount referenced in the Fee Award.

Below are the amounts that were disbursed for attorneys' fees and Litigation Expenses:

| Firm | Fees | Interest on Fees | Expenses | Total |
|---|---|---|---|---|
| Labaton Sucharow | $29,604,057.44 | $20,079.07 | $258,666.85 | $29,882,803.36 |
| Thornton Law Firm | $18,266,333.31 | $12,389.21 | $295,315.50 | $18,574,038.02 |
| Lieff Cabraser | $15,116,965.50 | $10,253.14 | $271,944.53 | $15,399,163.17 |
| Keller Rohrback | $2,484,708.33 | $1,685.26 | $342,766.63 | $2,829,160.22 |
| McTigue Law | $2,484,708.34 | $1,685.26 | $50,176.39 | $2,536,569.99 |
| Zuckerman Spaeder | $2,484,708.33 | $1,685.26 | $38,670.29 | $2,525,063.88 |
| Damon Chargois | $4,099,768.75 | $2,780.68 | - 0 - | $4,102,549.43 |
| **TOTAL** | **$74,541,250.00** | **$50,557.88** | **$1,257,540.19** | **$75,849,348.07** |

The attorneys' fees and expenses paid to Labaton Sucharow includes $300,000 in fees and $2,158.33 in expenses that were paid by the Firm in December 2016 to the law firm of Goldman Scarlato & Penny, P.C. in consideration for services rendered by Paul J. Scarlato, Esq. At Labaton Sucharow's request, Mr. Scarlato assisted with research and drafting for the April 2011 Amended Complaint and July 2011 submissions in opposition to State Street's motion to dismiss. At the time, Mr. Scarlato was Of Counsel to Labaton Sucharow as well as a partner of the Goldman Scarlato firm. Mr. Scarlato's time was reported in the Firm's individual fee declaration, ECF No. 104-15, at page 7.

Below are the Court-approved Services Awards that were disbursed:

| | |
|---|---|
| Arkansas Teacher Retirement System | $25,000.00 |
| Arnold Henriquez | $10,000.00 |
| Michael Cohn | $10,000.00 |
| William Taylor | $10,000.00 |
| Richard Sutherland | $10,000.00 |
| The Andover Companies Employee Savings and Profit Sharing Plan | $10,000.00 |
| James Pehoushek-Stangeland | $10,000.00 |

The services rendered warranting payment of the above amounts are set forth in the Fee Petition (ECF No. 104), including their individual declarations annexed thereto, and the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- 13 -

Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs (ECF No. 103). With respect to Damon Chargois, Esq., the Firm respectfully refers the Special Master to its Response to Supplemental Interrogatory 1 above.

As of July 31, 2017, the balance of the Class Settlement Fund was $224,394,977.36, which is primarily invested in U.S. Treasury Bills. None of this balance has been "earmarked" for additional attorneys' fees or Litigation Expenses. The Claims Administrator is owed certain Notice and Administration Expenses, which are incurred on an ongoing basis.

Dated: August 11, 2017

*/s/ Joan A. Lukey*
Joan A. Lukey (BBO No. 307340)
Justin J. Wolosz (BBO No. 643543)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel:  (617) 248-5000
joan.lukey@choate.com
jwolosz@choate.com

*Attorneys for Labaton Sucharow LLP*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## VERIFICATION

On behalf of Labaton Sucharow LLP, I have read Labaton Sucharow LLP's Response to Special Master Honorable Gerald E. Rosen's (Ret.) Supplemental Interrogatories to Labaton Sucharow LLP. The Response was prepared with the assistance of the employees, representatives, and counsel of Labaton Sucharow LLP, and the information provided is not fully within my personal knowledge. I reserve the right to make changes or additions to these responses if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. To the extent that these responses are within my personal knowledge, I certify them to be true. To the extent that these responses are not within my personal knowledge, I have no reason to believe that they are not true.

Signed under oath under the penalties of perjury this __ day of August, 2017.

_____
Eric J. Belfi

- 16 -

## CERTIFICATE OF SERVICE

I, Justin J. Wolosz, hereby certify that on this 11th day of August I have caused a copy of the foregoing Labaton Sucharow LLP's Response To Special Master Honorable Gerald E. Rosen's (Ret.) Supplemental Interrogatories to Labaton Sucharow LLP to be served via email and overnight mail upon William F. Sinnott, Donoghue Barrett & Singal, P.C., One Beacon Street, Suite 1320, Boston, MA 02108.

_____
Justin J. Wolosz

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER