# EX. 166

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 12-cv-11698 MLW |

**SPECIAL MASTER HONORABLE GERALD E. ROSEN'S (RET.) FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO THORNTON LAW FIRM, LLP**

Pursuant to Rule 53(c) of the Federal Rules and the Court's March 8, 2017 Order (pp. 3-4), Special Master Honorable Gerald E. Rosen (Retired), by his undersigned counsel, hereby requests that Thornton Law Firm, LLP produce the documents described below for inspection and copying at the offices of Donoghue Barrett & Singal, P.C., One Beacon Street, Suite 1320, Boston, Massachusetts 02108, within fourteen (14) days from the date of service hereof.

**DEFINITIONS**

1. The terms "you", "your", "the Firm", "the Law Firm", or "Thornton" refer to Thornton Law Firm, LLP, formerly known as Thornton & Naumes, LLP, and all of its employees, contractors, affiliates, agents, counsels, and representatives.

2. The term "Lieff" refers to Lieff Cabraser Heimann & Bernstein, LLP, and all employees, agents, counsels, attorneys, and representatives.

3. The term "Labaton" or "Labaton Sucharow" refers to Labaton Sucharow LLP, and all of its employees, contractors, affiliates, agents, counsels, and representatives.

4. The term "Plaintiffs' Law Firms" refers to Labaton, Lieff, and/or Thornton, and their respective employees, contractors, affiliates, agents, counsels, and representatives, collectively and/or individually.

5. The term "ERISA firms" or "ERISA counsel" refers to Brian McTigue and/or the McTigue Law Firm, the Law Offices of Keller Rohrback, LLP, Zuckerman Spaeder, LLP, Beins Alexrod, P.C., and any firms retained by one or more of the above, and all employees, agents, counsels, attorneys, and representatives.

6. The term "ARTRS" refers to the Arkansas Teacher Retirement System and/or its Executive Director, George Hopkins, Esq.

7. The term "State Street Litigation", "SST Litigation" or "Litigation" refers to *Arkansas Teacher Retirement System, et al. v. State Street Corporation, et al.*, C.A. No. 1:11-cv-10230-MLW, pending in the United States District Court for the District of Massachusetts.

8. The term "State Street Document Review", "SST Document Review" or "Document Review" refers to the review of hard copy and electronic documents produced as part of discovery in *Arkansas Teacher Retirement System, et al. v. State Street Corporation, et al.*, C.A. No. 1:11-cv-10230-MLW, pending in the United States District Court for the District of Massachusetts.

9. The term "State Street" refers to State Street Bank and Trust Company and/or State Street Global Markets, defendants in the SST Litigation.

10. The term "settlement in principle" refers to the settlement agreement reached in substance between counsel by and through mediation.

11. The term "Court" refers to the United States District Court for the District of Massachusetts.

12. The term "Fee Petition" or "Fee Application" refers to the *Declaration of Lawrence A. Sucharow in Support of Plaintiffs' Assented-To Motion for Final Approval of Proposed Class Settlement and Plan of Allocation and Final Certification of Settlement Class and Lead Counsel's Motion for An Award of Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs* (Docket #104), and Exhibits 1-32 attached thereto, filed with the Court in the State Street Litigation. In particular, "Fee Petition" in conjunction with one or more of the individual firms, refers to the respective Exhibit (and exhibits attached thereto) in which an individual law firm sought approval for payment of its respective fee and expenses

incurred in the SST Litigation, including all declarations, affidavits, and/or the Lodestar reports filed therewith.

13. The term "Motion for Attorneys' Fees" refers to Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Litigation Expenses, including the Memorandum in Support and exhibits, filed with the Court on or about September 15, 2016 and October 21, 2016, respectively (Docket #102, 108).

14. The term "Final Settlement" refers to the Stipulation and Agreement of Settlement dated July 26, 2016 (Docket #89).

15. The term "Fee Award" refers to a certain award of attorneys' fees of $74,541,250.00 and expenses and costs of $1,257,697.94, as approved by the Court in the Lawsuit by Order dated November 2, 2016.

16. The term "November 10, 2016 Letter" refers to the letter from David Goldsmith to Judge Wolf dated November 10, 2016 (Exhibit A to Docket #117), advising the Court of inadvertent errors in the Fee Petitions and Fee Order.

17. The term "December 17, 2016 Article" refers to the Boston Globe article entitled *Critics hit law firms' bills after class-action lawsuits*, published on or about December 17, 2016.

18. The term "hourly rates charged" refers to the hourly billing rates corresponding to work of an individual attorney or staff member of the firm, appearing on a fee petition submitted to the Court or otherwise charged to a client for work performed on a legal matter, including the rates listed on the Fee Petitions submitted in the SST Litigation.

19. The term "Staff Attorneys" refers to licensed attorneys working on a part-time or full-time basis for Lieff/Labaton or other firm, but who are not deemed "associates" or otherwise on a traditional partnership track.

20. The term "hourly clients" refers to all past, present, and prospective clients who agree to pay and/or are charged for legal services rendered on an hourly basis, notwithstanding the actual amount paid or collected.

21. The term "non-hourly clients" refers to all past, present, and prospective clients who do not pay for legal services on an hourly rate, such as clients paying a flat fee, retained through a contingency arrangement and/or class action litigation, or other non-hourly fee structure, notwithstanding the actual amount paid or collected.

22. Any word written in the singular also includes the plural and vice-versa.

23. In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," or "every," the intended meaning is inclusive rather than exclusive.

24. The term "any" and the term "all" are intended to mean "any and all."

25. As used herein, the term "or" and the term "and" shall mean "and/or" and vice-versa.

26. As used herein, the terms "relating to" or "referring to" or "concerning" or "constituting" or the like mean and include all documents that in any manner or form are relevant in any way to or bear upon the subject matter in question, including, without limitation, all documents which contain, record, reflect, summarize, evaluate, comment upon, transmit, refer to, or discuss that subject matter or that in any manner state the background of, or were the basis or bases for, or that record, evaluate comment upon, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at, your conclusions, opinions, estimates, calculations, positions, decisions, beliefs, assertions or allegations, that undermine, contradict, or conflict with your conclusions, opinions, calculations, estimates, positions, beliefs, assertions, or allegations, concerning the subject matter in question.

27. The term "date" means the exact day, month, and year, if ascertainable, or the best approximation thereof if not.

28. The term "communication" as used herein includes, without limitation, the following: conversations, telephone conversations, e-mails, text messages, social media communications, and other electronic transmissions of any kind, statements, discussions, debates, arguments, disclosures, interviews, consultation and every other manner of oral utterance, correspondence, or electronic or written transmittals of information or messages of any kind.

29. The term "document" shall mean those things described in Rule 34(a) of the Federal Rules of Civil Procedure. The terms "document" and "documents" are used herein in the broadest possible sense and mean written, typed, printed, recorded or graphic matter, however produced or reproduced of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to, e-mails, papers, notes, accounts, books, advertisements, letters, memoranda, notes of conversations, contracts, agreements, drawings, telegrams, tape recordings, communications (as defined in paragraph 28 hereof), including inter-office and intra-office memoranda reports, studies, working papers, corporate records, minutes of meetings, notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings or any type of personal or telephone conversations or negotiations, meetings or conferences, or things similar to any of the foregoing, and to include any data, information or statistics contained within any data storage modules, tapes, discs or other memory device, or other information retrievable from storage systems, including but not limited to, computer-generated reports and printouts. If any document has been prepared in multiple copies which are not identical, each modified copy or

non-identical copy is a separate "document." The word "document" also includes data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices in a reasonably usable form.

30. The term "draft" shall mean any earlier, preliminary, preparatory, proposed, or tentative version of all or part of a document, whether or not such draft was superseded by a later draft or final document and whether or not the terms of the draft are the same or different from the terms of the final document.

## INSTRUCTIONS

A. Unless otherwise specified, these requests seek documents for the period from January 1, 2010 until the present.

B. This document request ("Request") requires you to produce all documents called for herein that were created or originated by you, or that came into your possession, custody or control, from all files or other sources that contain responsive documents, wherever located and whether active, in storage, or otherwise.

C. This Request shall be deemed to include any document now or at any time in your possession, custody, or control. A document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you: (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (iv) as a practical matter, have been able to use, inspect, examine, or copy such document when you sought to do so. If any requested document was, but no longer is, in your control, state the disposition of each such document.

D. The obligation to produce the documents specified below is of a continuing nature; your production is to be supplemented if at any time you acquire possession, custody, or control of any additional responsive documents, or otherwise discover additional responsive documents, between the time of initial production and conclusion of the investigation, to the fullest extent required by the Federal Rules of Civil Procedure, the March 8, 2017 Court order, and the Local Rules of this Court.

E. Where only a portion of a document relates or refers to the subject indicated, the entire document is to be produced nevertheless, along with all attachments, appendices and exhibits.

F. Each document produced in response to the Requests below should be clearly categorized to indicate which Request(s) it is responsive to.

G. If any document or portion thereof is withheld under a claim of privilege, you shall produce so much of the document as is not subject to the possible claim of privilege, and shall furnish a statement, signed by an attorney representing you, which identifies each document or portion thereof for which a privilege is claimed, including the following information:

    (i) The date of the document;

    (ii) The name and title of the person who sent, authored, prepared, signed, or originated the document, or of the person who knows about the information contained therein;

    (iii) The name and title of the recipient of the document;

    (iv) All persons to whom copies of the document were furnished, along with such persons' job titles or positions;

    (v) A brief description of the subject matter or nature of the document sufficient to assess whether the assertion of privilege is valid;

    (vi) The specific basis upon which the privilege is claimed;

  (vii) With respect to any claim of privilege relating to an attorney, or action or advice or work product of an attorney, the identity of the attorney involved; and

(viii) The paragraphs of this request to which such document responds.

H. All documents shall be produced as they are kept in the ordinary course of business and in their original file folders with any identifying labels, file markings, or similar identifying features. If there are no documents responsive to a category specified below, you shall so state in a writing produced at the time and place that documents are demanded to be produced by this request.

I. Documents created or stored electronically must be produced in their original electronic format, and not printed to paper or PDF. All electronically stored information ("ESI") shall be produced in electronic form (the "production set"). Each document will have its own unique identifier ("Bates number"), which must be consistently formatted across the production, comprising of an alpha prefix and a fixed length number of digits (e.g., "PREFIX0000001"). The production set shall consist of, and meet, the following specifications:

1. Image Files. All ESI will be rendered to single-page, black and white, Group IV *tagged image file* (".tif" or ".tiff") images with a resolution of 300 dpi, the file name for each page is named after its corresponding Bates number. Records in which a color copy is necessary to interpret the document (e.g., photographs, presentations, AUTOCAD, etc.) will be rendered to higher resolution, single-page *joint photographic experts group* (".jpg" or ".jpeg") format. Endorsements must follow these guidelines:

    a. Bates numbers must be stamped on the lower right hand corner of all images.

    b. Confidentiality must be stamped on the lower left hand corner of all images.

    c. Other pertinent language may be stamped on the bottom center, or top of the images, as deemed necessary.

2. Load Files. All ESI must be produced with appropriate data load files, denoting logical document boundaries. The following files should be included within each production set.

    a. A Concordance delimited ASCII text file (".dat").

      i. The .dat file will contain metadata from the original native documents, wherein the header row (*i.e.*, the first line) of the .dat file must identify the metadata fields.

ii. The .dat file must be delimited with the standard Concordance delimiters (the use of commas and quotes as delimiters is not acceptable):

ASCII 020 [¶] for the comma character;
ASCII 254 [þ] for the quote character; and
ASCII 174 [®] for new line.

iii. All attachments, or *child* records, should sequentially follow the *parent* record.

iv. The following fields and metadata will be produced:

Beginning Bates; Ending Bates; Beginning Bates Attachment; Ending Bates Attachment; Custodian; File Name; From; Recipient; CC; BCC; Subject; Date Sent; Time Sent; Last Modified Date; Last Modified Time; Author; Title; Date Created; Time Created; Document Extension; Page Count; MD5Hash; Text Path; and Native File Path.

b. Image cross-reference files, *Opticon* image file (".opt") and *IPRO View Load* file (".lfp"), which link images to the database and identifies appropriate document breaks.

J. If any document requested herein has been lost, discarded, or destroyed, that document so lost, discarded, or destroyed shall be identified in writing (produced at the time and place that documents are demanded to be produced by this request) as completely as possible, together with the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

**DOCUMENTS REQUESTED**

1. The Catalyst and Relativity document databases created or used in the SST Litigation, as annotated, compiled and used in the course of the litigation and/or document review, including instructions, software, and anything else necessary to access and analyze the data therein. **[JULY 10]**

2. All so-called "hot docs," as understood or identified by the Law Firm, ~~and any other documents or information identified during the SST Litigation bearing on the material issues in the Litigation, including but not limited to liability and damages~~. **[JUNE 9]**

3. All engagement letters, fee agreements, retention letters, and/or other documents referring to, relating to, or evidencing terms of the Law Firm's participation in the SST Litigation and/or representation of class representatives. **[JUNE 9]**

4. All engagement letters, fee agreements, retention letters, RFPs, and/or other documents referring to, relating to, or evidencing terms and/or hourly rates associated with the Law Firm's representation of hourly clients, from ~~2008 to the present~~ ***2009-2011***. **[JULY 10]**

5. All engagement letters, fee agreements, retention letters, RFPs, and/or other documents referring to, relating to, or evidencing terms and/or hourly rates associated with the Law Firm's representation of non-hourly clients, from ~~2008 to the present~~ ***2009-2011***. **[JULY 10]**

~~6. All documents and/or communications relating to how the Law Firm records, accounts for and/or seeks reimbursement for hours billed by Staff Attorneys for whom is shared the costs in other class action or contingency cases, including the hourly rates the Law Firm would charge if successful, from 2010 to the present.~~

7. Copies of all billing rate tables, spreadsheets, fee binders, or other collection of the Law Firm's annual billing rates, from 2010 to the present.

8. All minutes, notes, recordings, memoranda or other documents relating to or created by the Law Firm during meetings to determine annual billing rates, from ~~2008 to the present~~ ***2010-2011 and 2015-2016***. **[JUNE 9]**

9. All documents and/or communications relating to Firm's review and adjustment of annual billing rates, from ~~2008 to the present~~ ***2010-2011 and 2015-2016***. **[JUNE 9]**

10. All documents and/or communications relating to the Law Firm's internal classification of costs and expenses, including but not limited to any ethical, legal, or factual opinions solicited by the firm by third parties regarding the classification of Staff Attorneys as fees vs. expenses. **[JUNE 1]**

~~11. A complete set of time records for all attorneys, including Staff Attorneys allocated to the Firm, and other Law Firm staff who worked on or contributed to the SST Litigation, including but not limited to hand-written time sheets/ledgers, emails, electronic entries, pre-bills, and/or client bills, including the hourly rate billed and/or corresponding to the hours recorded.~~

12. A complete set of time records for Michael Bradley's work performed on the SST Litigation, including hand-written notes, emails, ledgers or other notations reflecting hours worked.

~~13. All documents referring to, relating to, evidencing or constituting the basis for and amounts of any costs and expenses billed, incurred or charged by the Law Firm for legal or other services rendered as part of the SST Litigation including but not limited to documents pertaining to the terms under which Staff Attorneys and/or third parties provided services to the Law Firm in the Lawsuit.~~

~~14. All documents and/or communications relating to or evidencing the Law Firm's use of Catalyst in connection with the SST Document Review, including all records of time spent in the Catalyst database, costs incurred, and coding of electronic documents.~~

15. All documents and/or communications relating to or evidencing Michael Bradley's use of Catalyst in connection with the SST Document Review, including all records of time spent in the Catalyst database, costs incurred, and coding of electronic documents.

~~16. All W-2s, 1099s, paystubs, or other documentation of payments made to the Firm attorneys and non-legal staff assigned to or who contributed to the SST Litigation, for work performed on the Litigation.~~

17. All W-2s, 1099s, paystubs, or other documentation of payments made directly to Staff Attorneys assigned to Thornton under the cost-sharing agreement with Lieff and/or Labaton, for work performed on the Litigation. **[JUNE 1]**

18. All documents referring to, relating to, evidencing or constituting discussions between the Law Firm and the Plaintiffs' Law Firms relating to sharing costs and/or expenses of the SST Document Review/SST Litigation, including but not limited to sharing the cost of Staff Attorneys, hosting costs for Catalyst database, and other expenses consistent with conducting voluminous document review. **[JUNE 9]**

19. All agreements, contracts, and/or memorialization of an arrangement to share the costs of certain Staff Attorneys allocated to the Firm by Labaton and/or Lieff, including the compensation, reimbursement, and/or invoicing of costs associated with the same. **[JUNE 9]**

20. All documents referring to, relating to, evidencing or constituting discussions with Labaton regarding the Firm's plan or intention to include Staff Attorney time as part of the Firm's Fee Petition and/or Lodestar calculation. **[JUNE 9]**

21. All documents referring to, relating to, evidencing or constituting discussions with Lieff regarding the Firm's plan or intention to include Staff Attorney time as part of the Firm's Fee Petition and/or Lodestar calculation. **[JUNE 9]**

22. All expert reports, factual or legal opinions, or other work product solicited from a third-party by the Law Firm in connection with factual and/or legal issues arising in the SST

Litigation, including but not limited to the foreign-exchange market, foreign-exchange trading practices, and custodial management of retirement funds. **[JULY 10]**

~~23.    All documents and/or communications relating to or evidencing discussions between and among the Law Firm, the Plaintiffs' Law Firms, and/or ERISA counsel regarding the allocation of a certain percentage of the Fee Award among counsel, including but not limited to agreements to pay ERISA counsel a fixed percentage of the total Fee Award.~~

24.    All written guidance, training manuals, policies/procedures, search criteria, other documents provided by the Firm to any Staff Attorneys for whom it shared the costs, relating to the SST Document Review, including but not limited to materials related to use of Catalyst database. **[JUNE 1]**

25.    All other documents relating to the SST Litigation, other than those responsive to Request No. 24 above, that the Law Firm provided to any Staff Attorneys for whom it shared the costs, including but not limited to case pleadings, mediation reports, legal memoranda. **[JUNE 1]**

26.    All written work product produced by Staff Attorneys allocated to the Firm for the SST Litigation/Document Review, including all memoranda, factual summaries, deposition preparation, written analyses, witness kits, summaries. **[JUNE 1]**

27.    A complete copy of all binder(s) containing discursive memoranda pertaining to the SST Litigation/SST Document Review, including all attachments. **[JUNE 1]**

~~28.    All presentations, memoranda, or other submissions, including potential exhibits, any plaintiffs' counsel prepared for or submitted to the mediator, including all exhibits thereto.~~

~~29.    All communications between the Law Firm and counsel for State Street relating to the SST Litigation, including but not limited to document productions, mediations, and settlement.~~

30.    All communications with the U.S. Department of Labor, including all local field offices, the U.S. Attorney's Office, the U.S. Department of Justice, and/or the U.S. Securities and Exchange Commission relating to the SST Litigation. **[JULY 10]**

~~31.    All documents relating to, referring to or evidencing a secondary review or quality control process of the SST Document Review performed by Staff Attorneys allocated to the Firm.~~

32. All documents and/or communications between and among the Law Firm and its accounting and/or billing personnel relating to the accounting for, recording, and/or invoicing of Staff Attorneys for whom the Firm shared the costs. **[JUNE 1]**

~~33. All invoices, requests for payment, paystubs, proof of payment, and/or similar documents sent to or received from Labaton pursuant to the cost-sharing agreement between Labaton and Thornton to share the costs of certain Staff Attorneys, including all emails or other communications related to the same.~~

~~34. All invoices, requests for payment, paystubs, proof of payment, and/or similar documents sent to or received from Lieff pursuant to the cost-sharing agreement between Lieff and Thornton to share the costs of certain Staff Attorneys, including all emails or other communications related to the same.~~

35. All documents relied upon by the Law Firm in preparing and filing the Firm's Fee Petition, including but not limited to expense reports, billing records, emails, invoices, and/or other records. **[JUNE 9]**

36. All documents, other than those requested in Request No. 35 above, reviewed or considered by the Law Firm in calculating the Firm's Lodestar calculation. **[JUNE 9]**

37. All documents relating to, referring to, or constituting the Law Firm's Fee Petition, including all drafts, spreadsheets, outlines, notes, emails. **[JUNE 9]**

~~38. All documents relating to, referring to, or constituting the Motion for Attorneys' Fees, including all drafts, spreadsheets, outlines, notes, emails.~~

~~39. All communications between and among the Law Firm, the Plaintiffs' Law Firms, and the ERISA firms, relating to preparation of the Motion for Attorneys' Fees and/or the Fee Petitions filed in the SST Litigation.~~

40. All documents and/or communications relating to the discovery of billing errors disclosed in the November 10, 2016 Letter filed with the Court, including but not limited to communications between and among you, the Plaintiffs' Law Firms, class representatives, and/or the ERISA firms. **[JUNE 9]**

~~41. All documents, including notes, outline, drafts and exhibits, explaining or attempting to correct any part of the Fee Petition(s).~~

~~42. All documents illustrating, demonstrating, or establishing any errors you or anyone identified in any part of the Fee Petition(s).~~

43. All documents relating to, referring to, evidencing, or constituting the November 10, 2016 Letter, including all drafts, outlines, notes, and communications relating to the filing of that correspondence. **[JUNE 9]**

~~44. All documents and/or communications relating to, referring to or evidencing corrective actions or subsequent review taken by the Law Firm after discovery of the billing errors disclosed in the November 10, 2016 Letter.~~

45. All documents and/or communications relating to the December 17, 2016 Article, including but not limited to communications between and among the Law Firm, the Plaintiffs' Law Firms, class representatives, and/or the ERISA firms. **[JUNE 9]**

46. All documents relating to, reflecting, or evidencing an agreement between the Firm and Michael Bradley to participate in the SST Litigation/Document Review. **[JUNE 9]**

47. All documents relating to, reflecting, or evidencing an agreement to pay Michael Bradley $500/hour for all work performed by Michael Bradley in the SST Litigation/Document Review. **[JUNE 9]**

48. All documents and/or communications relating to Michael Bradley's work on the SST Document Review between January 2009 and November 2016. **[JUNE 9]**

~~49. All documents and/or communications relating to the Firm's agreement to compensation Michael Bradley at an hourly rate of $500/hour for his work in the SST Litigation/Document Review.~~

50. All 1099s, W-2s, paystubs, or similar documents evidencing payments made to Michael Bradley for his work on the SST Litigation/SST Document Review. **[JUNE 9]**

51. All documents and/or communications relating to, reflecting, or evidencing all other instances in which Michael Bradley performed work for or on behalf of the Firm, other than in the SST Litigation, including the hourly rates charged, the total hours billed, and the total compensation paid to Michael Bradley, if any. **[JUNE 9]**

52. All written work product produced by Michael Bradley as part of his involvement in the SST Litigation/SST Document Review, including all memoranda, factual summaries, deposition preparation, written analyses, witness kits, summaries. **[JUNE 9]**

53. All documents you may contend support your Fee Petition for reimbursement of fees and/or expenses, which you have not produced thus far. **[JUNE 9]**

Date: May ____, 2017

**SPECIAL MASTER HONORABLE GERALD E. ROSEN (RETIRED),**

By his Attorneys,

______________________________

William F. Sinnott (BBO #547423)
Elizabeth J. McEvoy 9BBO #683191)
DONOGHUE BARRETT & SINGAL, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108
(617) 720-5090
(617) 720-5092 Facsimile
wsinnott@dbslawfirm.com
emcevoy@dbslawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this ____ day of May, 2017 a copy of the foregoing document was sent by first class mail to the following counsel of record.

______________________________
William F. Sinnott