# EX. 174

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) | No. 11-cv-10230 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |
| ARNOLD HENRIQUEZ, et al., | ) ) | No. 11-cv-12049 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, | ) ) ) ) | |
| Defendants. | ) ) | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, et al., | ) ) ) | No. 12-cv-11698 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |

**LABATON SUCHAROW LLP'S RESPONSE TO SPECIAL MASTER HONORABLE GERALD E. ROSEN'S (RET.) FIRST SET OF INTERROGATORIES TO LABATON SUCHAROW LLP – JUNE 9 RESPONSE**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Labaton Sucharow LLP ("Labaton Sucharow" or the "Firm") responds as follows to the Special Master Honorable Gerald E. Rosen's (Ret.) First Set of Interrogatories to Labaton Sucharow LLP ("First Interrogatories").  This response addresses those interrogatories that, following conferral with counsel to the Special Master, are to be provided on June 9, 2017.

Labaton Sucharow's answers are based solely on the facts and contentions presently known.  To the extent Labaton Sucharow answers any Interrogatory, it does so without waiving any rights or objections and expressly reserves all rights and objections.  Labaton Sucharow's answers to the Interrogatories are made without waiving the right to: (i) amend, modify or supplement the answers and objections stated herein, if necessary; (ii) rely on any facts, documents or other evidence which may develop or come to Labaton Sucharow's attention at a later date; and (iii) rely upon, reference or put into evidence additional expert information, testimony or reports.

## GENERAL OBJECTIONS

The following General Objections are incorporated by reference into each response to the First Interrogatories, whether or not they are referenced in a specific response below.

1.      Labaton Sucharow objects to Definition No. 1 as overbroad, irrelevant, and lacking in proportionality.  Per agreement of counsel to the Special Master, Labaton Sucharow will construe the term "you", "your", "the Firm", and "the Law Firm" to refer to Labaton Sucharow, LLP, and its employees.

2.      Labaton Sucharow objects to the First Interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or information that otherwise is privileged, protected or exempt from discovery.  To the extent that Labaton Sucharow has provided any answers below that may include information that is privileged or

protected as work product, the Firm provides such answers pursuant to the Limited Protective

Order of the Special Master Relating to Attorney/Client Privileged and Work Product

Documents and Information Being Provided to the Special Master (ECF No. 191).  Pursuant to

this protective order, the provision of information to the Special Master does not constitute a

waiver of the attorney-client privilege or work product protection.

3.     Labaton Sucharow objects to the First Interrogatories to the extent they purport to

impose obligations that differ from or exceed those imposed by the Federal Rules of Civil

Procedure, particularly Rule 33, and by any court decisions interpreting those Rules.

4.     Labaton Sucharow objects to the First Interrogatories to the extent they seek

information beyond the scope of, or not relevant to, the Courts' February 6, 2017 Memorandum

and Order in the above-referenced cases.

5.     In responding to the First Interrogatories, Labaton Sucharow has made reasonable

efforts to respond based on its understanding and interpretation of each Interrogatory.  If the

Special Master subsequently asserts a reasonable interpretation of an Interrogatory which differs

from that of Labaton Sucharow, Labaton Sucharow reserves the right to supplement its

responses.

6.     Labaton Sucharow reserves the right to supplement its answers should additional

responsive information be discovered following the designated dates for responses.

7.     Capitalized terms shall have the meanings set forth in the First Interrogatories,

subject to any objections asserted herein.  All other capitalized but undefined terms used in this

response have the same meanings as set forth in the Stipulation and Agreement of Settlement

(ECF No. 89).

## LABATON SUCHAROW'S OBJECTIONS AND ANSWERS

### INTERROGATORY 16:

Describe in detail all agreements between the Firm/Plaintiffs' Law Firms, on the one hand, and the ERISA firms, on the other, to allocate to the ERISA firms a fixed percentage of the total Fee Award rendered by the Court in the SST Litigation. As to any agreement that did not represent the final agreement for allocation of the Fee Award, explain the reason for modifying a previous agreement, including all persons involved in these discussions and their affiliation/firm.

### RESPONSE TO INTERROGATORY 16:

The Firm incorporates the General Objections set forth above. Subject to and without

waiving the foregoing objections, the Firm states the following: In December 2013, Labaton

Sucharow, Lieff Cabraser, and Thornton entered into the "Agreement Between Counsel for

Consumer and ERISA Plaintiffs Regarding Division of Attorneys' Fees," dated as of December

11, 2013, with: McTigue Law LLP; Zuckerman Spaeder LLP; Beins, Axelrod, P.C.; Richardson,

Patrick, Westbrook & Brickman; and Keller Rohrback L.L.P ("ERISA Fee Agreement"). The

ERISA Fee Agreement provided that the parties thereto agreed that any attorneys' fees awarded

by the Court in connection with the Class Actions would be divided 91% to Plaintiffs' Law

Firms and 9% to ERISA counsel. The ERISA Fee Agreement contained various other provisions

concerning, among other things, that the division of fees applied regardless of whether the Court

awarded a single sum for all claims or not, that each counsel remained responsible for

representing their own clients, and that the agreement did not relate to expenses.

Subsequently, at some point prior to the Final Approval Hearing on November 2, 2016,

Lawrence Sucharow of Labaton suggested to Garrett Bradley of Thornton Law, and Daniel

Chiplock and Robert Lieff of Lieff Cabraser, that in light of (i) the efforts of ERISA counsel in

assisting with achieving the global settlement of the Class Actions and (ii) that the Indirect FX

Trading Volume of class members that are ERISA Plans or eligible Group Trusts was greater

than what was understood to be the case at the time of the execution of the ERISA Fee

Agreement, that the 9% contractual commitment should be voluntarily supplemented by the

Plaintiffs' Law Firms by an additional 1%, thus increasing the allocation to ERISA counsel to

10%.  The Thornton and Lieff Cabraser firms agreed.  There is no written agreement with

ERISA counsel concerning this voluntary supplement.

## INTERROGATORY 36:

Explain what knowledge, if any, the Firm had about the existence of a cost-sharing agreement(s) (formal or informal) between Lieff Cabraser and Thornton to allocate and/or share costs for certain of Lieff's Staff Attorneys assigned to work on the SST Litigation.

## RESPONSE TO INTERROGATORY 36:

The Firm incorporates the General Objections set forth above, and construes this

interrogatory to refer to the period during the SST Litigation.  Subject to and without waiving the

foregoing objections, the Firm states the following:

Some attorneys at Labaton Sucharow, including Michael Rogers and David Goldsmith

but not including Nicole Zeiss, generally knew that certain of Lieff Cabraser's Staff Attorneys

assigned to work on the SST Litigation would be paid for by Thornton.  By implication, the Firm

generally knew of the existence of a cost-sharing agreement between Lieff and Thornton to

allocate and/or share costs for those Staff Attorneys assigned to work on the SST Litigation.  The

Firm had no knowledge of the specific terms of such cost-sharing agreement.

## INTERROGATORY 40:

Describe what knowledge, if any, the Firm had in early 2015 about Michael Bradley's involvement in the SST Litigation, including any knowledge of Thornton's agreement to pay Mr. Bradley an agreed-upon rate of $500/hour.

**RESPONSE TO INTERROGATORY 40:**

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm states the following: Based on a review of documents in connection with the Special Master's investigation, the Firm has identified an email dated May 20, 2014, from Michael Lesser of Thornton to David Goldsmith of Labaton Sucharow, which set forth Thornton's "document review hours, excluding mine [Mr. Lesser's]."  The e-mail listed four document reviewers: "Mike Bradley (attorney)"; "Andrea Carruth (paralegal)"; "Jotham Kinder (attorney)"; and "Evan Hoffman (attorney)".  The e-mail did not indicate hourly rates for these four persons.  The names Mike Bradley, Andrea Carruth, and Jotham Kinder had no particular significance to Mr. Goldsmith at the time.

**INTERROGATORY 41:**

Identify and describe all communications relating to Michael Bradley's participation in the SST Litigation/SST Document Review from 2010 through November 2016, including relating to compensation or an hourly billing rate that Thornton would charge for Mr. Bradley's time spent on the matter.

**RESPONSE TO INTERROGATORY 41:**

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm identifies the following communications and sets of communications relating to Michael Bradley's participation in the SST Litigation/SST Document Review from 2010 through November 2016, including relating to compensation or an hourly billing rate that Thornton would charge for Michael Bradley's time spent on the matter:

(a)     The May 20, 2014 e-mail described in the Answer and Objections to Interrogatory No. 40 above.

(b)     E-mail communications between Thornton and Labaton Sucharow during September 2016 attaching draft and final Thornton lodestar reports.  The lodestar reports listed Michael Bradley as a Staff Attorney at an hourly

billing rate of $500. His listing was not noticed by the Firm and to the best of available recollections there were no discussions about it during the process of finalizing the Fee Petition.

(c)     An e-mail dated November 1, 2016 from Garrett Bradley of Thornton to Nicole Zeiss of Labaton Sucharow, asking: "How many hours did my brother put in on state street and how much was his rate?" Ms. Zeiss forwarded the e-mail internally to David Goldsmith and asked: "Do you have any idea what he is talking about?" Ms. Zeiss separately replied to Mr. Bradley and asked: "Who is your brother?" Mr. Goldsmith replied to Ms. Zeiss: "Garrett's lodestar report shows Michael Bradley did 406.4 hrs at $500/hr. I have a feeling he was one of the STAs here who was assigned to Thornton." Ms. Zeiss then further replied to Mr. Goldsmith and stated "Ya, I just saw that and told him." Ms. Zeiss does not recall whether she communicated the number of hours and hourly rate to Mr. Bradley by e-mail or by telephone.

(d)     A telephone conversation on November 8, 2016 between Garrett Bradley and David Goldsmith. On that date, Mr. Bradley called Mr. Goldsmith and told Mr. Goldsmith that a reporter from the *Boston Globe* had called Mr. Bradley earlier that day with questions about, among other things, Michael Bradley's involvement in the SST Litigation and his hourly rate. Garrett Bradley's reference to "my brother" during the call led Mr. Goldsmith to understand that Michael Bradley is Garrett Bradley's brother.

(e)     An e-mail dated November 16, 2016 from Andrea Estes, a reporter with the *Boston Globe*, to David Goldsmith and Brian Kelly and Jim Vallee of Nixon Peabody. Ms. Estes's e-mail referenced Thornton's fee affidavit and asked Mr. Goldsmith, among other questions, if he knew "that Garrett Bradley's brother, who does district court defense work, was included at $500 an hour?" Mr. Goldsmith promptly forwarded the e-mail internally to the Firm's Executive Committee, Michael Stocker (a partner who serves as the Firm's General Counsel), and the internal team responsible for media relations.

Answering further, pursuant to Fed. R. Civ. P. 33(d), the Firm references its production in response to Special Master Honorable Gerald E. Rosen's (Ret.) First Request for the Production of Documents, Request Nos. 52-55.

**INTERROGATORY 44:**

Explain how the Law Firm determines annual billing rates for all attorneys, including Staff Attorneys.  Please identify and describe all factors considered and/or resources relied upon in making these determinations.

**RESPONSE TO INTERROGATORY 44:**

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm states the following:  On an annual basis, the Firm does a comprehensive nationwide analysis of comparable law firm billing rates thru many public sources of information.  The first step in the process involves compiling a list of law firms to research, based (among other things) on previous reports.  The list is populated with firms that Labaton Sucharow typically litigates with, on the plaintiff side, and against, on the defense side.

The billing rates data is then collected from various filings that are available on PACER. Generally, defense lodestars come from monthly and interim fee applications filed during bankruptcy proceedings.  Once this data is gathered in PDF format, it is manually input into Microsoft Excel, where it is organized and further exported to Microsoft Access.  The Firm then uses Excel to assemble the comparative portions of its report, and Access to generate formatted representations of the individual billing rates retrieved from the lodestars (the "raw data").  The Firm then breaks down, by firm, the billing rates of employees in various positions (by title) in order to view the lowest, highest, and average rates charged under each title, as well as where the rates rank (by percentile) as compared to the entire cohort of firms.  Each firm's data is then compared to its data from previous years.

The results of this exercise are presented to the Billing Rate Sub-Committee. The Sub-Committee reviews the research and makes recommendations on changes for each individual Firm attorney, including staff attorneys, generally in response to changes in market rates

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

revealed by the data collected, as well as increased seniority and promotions.  Once all of the

changes are finalized, the recommendation of the Sub-Committee is submitted to the Executive

Committee for approval.  Generally the Sub-Committee meets in December and makes

recommendations for rates to be used in the following calendar year.

Once the Executive Committee approves the rates, they are submitted to the Firm's

accounting department so that rate change adjustments can be made on the Firm's accounting

system, with an effective date of January 1st of the following year.

**INTERROGATORY 45:**

Please explain how the process described above does or does not vary in determining
billing rates charged to hourly clients and why.

**RESPONSE TO INTERROGATORY 45:**

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  The Billing rates approved are

the standard billing rates in the uncommon circumstance when we have hourly clients who pay

by invoice.

**INTERROGATORY 51:**

Explain how the Firm adjusts its hourly rates for cases brought outside of New York.  If
the Firm does not adjust its rate, explain why not.

**RESPONSE TO INTERROGATORY 51:**

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  The Firm does not have a

practice of adjusting its standard hourly rates for cases brought outside of New York.  The Firm

does not adjust is standard hourly rates for cases outside of New York, because our practice areas

and cases are complex civil litigations that are typically national in scope.  The defendants in our

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

cases are represented by many of the largest and most prominent law firms in the world, with billing rates that match their experience and the complexity of their practices.  The Supreme Court has explained that a fee applicant should show that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience—as the prevailing market rate."  *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984).  Based on the Firm's annual review as discussed in response to Interrogatory No. 44 above, including its annual review of bankruptcy fee petitions filed nationwide and the rates in those fee petitions, the Firm believes that its rates are commensurate with the rates used by national peer plaintiff and defense-side law firms litigating matters of a similar magnitude.

## INTERROGATORY 54:

Describe in detail how the Firm prepared the Fee Petition and identify all individuals who assisted in the preparation and the nature of their contribution(s).

## RESPONSE TO INTERROGATORY 54:

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm states the following:  The Firm prepared the Fee Petition essentially as follows.  The 47-page Declaration of Lawrence A. Sucharow (ECF No. 104), or "Omnibus Declaration," was drafted by David Goldsmith of Labaton Sucharow.  Nicole Zeiss of the Firm prepared an initial framework, which Mr. Goldsmith took from there through filing.  Internally, Mr. Goldsmith invited comments from Lawrence Sucharow (Chairman of the Firm), Eric Belfi (the relationship partner for ARTRS), and Ms. Zeiss.  A draft was provided to George Hopkins of ARTRS as well.  Externally, Mr. Goldsmith invited comments from Michael Thornton, Garrett Bradley, Michael Lesser, and Evan Hoffman of Thornton; Robert Lieff, Daniel

Chiplock, and Michael Miarmi of Lieff Cabraser; Lynn Sarko and David Copley of Keller

Rohrback; Carl Kravitz of Zuckerman Spaeder; and Brian McTigue and Regina Markey of

McTigue Law.  The draft Omnibus Declaration included information and drafting contributed by

Mr. Lesser, Mr. Chiplock, and Mr. Copley concerning damages issues, the similar *Bank of New*

*York Mellon* FX litigation, and aspects of the ERISA claims, and these three attorneys provided

comments on the draft submission.  Finally, as a courtesy, Mr. Goldsmith provided a near-final

version of the Omnibus Declaration to William Paine, Daniel Halston, and Timothy Perla of

WilmerHale, counsel for State Street.

With respect to relevant exhibits to the Omnibus Declaration, Mr. Goldsmith prepared the

Declaration of George Hopkins (Ex. 1, ECF No. 104-1) for his approval and signature after

seeking certain factual information and comments and approval internally.  Mr. Goldsmith also

had a role in the preparation of the Declaration of Jonathan B. Marks, the mediator (Ex. 5, ECF

No. 104-5), to which Mr. Chiplock also contributed.  The Firm had no role in the preparation of

the declarations of the ERISA Plaintiffs (Exs. 7-12, ECF Nos. 104-7 to 104-12).

Ms. Zeiss was responsible for preparing the individual fee and expense Declaration of

Lawrence Sucharow (Ex. 15, ECF No. 104-15), and for soliciting and coordinating the receipt of

comparable fee and expense declarations from Thornton, Lieff Cabraser, Keller Rohrback,

Zuckerman Spaeder, McTigue Law, Beins Axelrod, Feinberg Campbell, and Richardson Patrick

(Exs. 16-23, ECF Nos. 104-16 to 104-23).  Howard Goldberg, Labaton Sucharow Litigation

Coordinator, assisted Ms. Zeiss in these tasks.

With respect to the Firm's individual fee and expense declaration, Ms. Zeiss first worked

with Mr. Goldberg to complete the template for the Firm.  Mr. Goldsmith, Mr. Rogers, and Mr.

Sucharow contributed to the narrative discussion of the Firm's role in the litigation.

To prepare the lodestar exhibit (Exhibit A), consistent with her standard practice when preparing a fee petition, Ms. Zeiss requested that Mr. Goldberg provide her with an Excel spreadsheet containing all time entries recorded by the Firm's timekeepers in the SST Litigation. Ms. Zeiss reviewed the time entries generally to confirm that the work billed to the SST Litigation related to the litigation and was reasonable.  As a result of this review, some time entries, and their associated lodestars, were written-off.  (Please see the Firm's answer to Interrogatory No. 60 for additional information.)  After the review was complete, Mr. Goldberg prepared Exhibit A to the Firm's individual declaration.

To prepare the expense exhibit (Exhibit B) and the litigation fund exhibit (Exhibit C), Mr. Goldberg provided Ms. Zeiss with Excel spreadsheets containing each of expenses billed to the litigation.  Ms. Zeiss reviewed the spreadsheets and raised questions with Mr. Goldberg as needed.  As a result of this review, some expenses were written-off.  (Please see the Firm's answer to Interrogatory No. 60 for additional information.)  After the review, Mr. Goldberg prepared drafts of Exhibits B and C, which Ms. Zeiss also reviewed and commented on.  When Ms. Zeiss's review was complete, Mr. Goldberg prepared final versions of Exhibits B and C, which were included in the Firm's individual declaration.

With respect to the individual fee and expense declarations other than the Firm's own, Ms. Zeiss began by e-mailing a shell, or template, declaration and exhibits to Thornton, Lieff Cabraser, Keller Rohrback, Zuckerman Spaeder, and McTigue Law, with instructions.  Ms. Zeiss asked ERISA Counsel to share the template with Beins Axelrod, Feinberg Campbell, and Richardson Patrick.  During a period of approximately one week before the Fee Petition was filed, drafts of each firm's declaration, with draft exhibits, were provided to Ms. Zeiss.  Ms.

Zeiss reviewed all of the declarations and lodestar reports for form, and provided comments to

each of the firms, either directly or, in some instances, through McTigue Law.

Ms. Zeiss reviewed all of the expense reports for form and substance, and communicated

with counsel so that the expense categories were consistent across the expense reports, and that

the reported expenses were clear and reasonable.  As a result of these discussions, some expenses

were reduced.  Ms. Zeiss also discussed the drafts internally with Mr. Goldsmith and Mr. Rogers,

particularly the descriptions of each firm's role in the litigation.

Ms. Zeiss prepared the Master Lodestar and Expense Chart (Ex. 24, ECF No. 104-24)

from the data in the final fee and expense declarations.  Exhibit 25 (ECF No. 104-25), a

compilation of defense law firms' billing rates gathered from bankruptcy court filings in 2015,

was not prepared for the Fee Petition in this action.  Rather, Exhibit 25 was prepared by the Firm

in connection with the Firm's Rate Sub-Committee's annual review of billing rates.

## INTERROGATORY 55:

Describe in detail any review or steps taken to scrutinize or verify the time reported by
the Law Firm prior to submitting the Firm's Fee Petition/Lodestar calculation.  If the answer is
none, explain why.

## RESPONSE TO INTERROGATORY 55:

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  Prior to submitting the Firm's

Fee Petition/Lodestar calculation, and consistent with her standard practice when preparing a fee

petition, Nicole Zeiss requested that Howard Goldberg provide her with an excel spreadsheet

containing all time entries recorded by the Firm's timekeepers in the SST Litigation.  Ms. Zeiss

reviewed the time entries generally to confirm that the work billed to the SST Litigation related

to the litigation and was reasonable.  As a result of this review, some time entries, and their

associated lodestars, were removed from the Firm's Fee Petition.  (Please see the Firm's answer to Interrogatory No. 60 for additional information.)

## INTERROGATORY 56:

Describe what, if any, steps the Law Firm took to review, verify, or compare the Fee Petitions and/or Lodestar calculations prepared by the Plaintiffs' Firms or ERISA firms with the Firm's Fee Petition prior to filing its Fee Petition with the Court.  If no action was taken, explain why not.

## RESPONSE TO INTERROGATORY 56:

The Firm incorporates the General Objections set forth above and its answer to Interrogatory No. 54 above.  Subject to and without waiving the foregoing objections, the Firm states the following:  It was not Ms. Zeiss' practice, at the time, to engage in any detailed review of the lodestar supplied in fee and expense declarations from other firms, because she in general had no access to the time records of other firms and thus no means of "checking" reported lodestar in another firm's fee declaration. To that extent, Ms. Zeiss relies in large part on the diligence performed by the other firms submitting fee declarations in connection with a fee petition.  Similarly, Ms. Zeiss did not have a usual practice of *comparing* lodestars reported in other firms' individual fee declarations, because ordinarily there is no reason to believe that there should be any overlap between employees of different firms.  In this instance, Ms. Zeiss was not informed by anyone internal to Labaton, nor anyone from the Thornton or Lieff firms, that there was the potential for attorney time to be reported on more than one fee declaration.

Accordingly, she did not compare the various lodestar reports to each other.

## INTERROGATORY 57:

Identify and describe all communication the Firm had with the Plaintiffs' Law Firms and/or ERISA counsel relating to the Firm's preparation of the Fee Petition, including but not limited to preparation of the Lodestar calculation, the inclusion of Staff Attorneys for whom Thornton had paid costs, calculation of a Lodestar multiplier, and reasonableness of attorneys' fees.

**RESPONSE TO INTERROGATORY 57:**

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm states the following:  The firm incorporates by reference its answer to Interrogatory No. 54 above.  The Firm does not recall any communications with other counsel in connection with preparation of the Fee Petition concerning the specifics of calculating the lodestar or the lodestar multiplier.  No one at the Firm has any recollection of receiving any communication from the Thornton firm concerning its intention to include the shared Staff Attorney time in its fee declaration.  The calculations are straightforward and a function of the final lodestar numbers and fee request.  The final numbers were not known until September 14, 2016, the day before the Fee Petition was filed.  Multiple drafts of the fee brief, which included a section discussing the lodestar cross-check, were circulated among the Plaintiffs' Law Firms and ERISA counsel.

The Firm does not recall any communications with other counsel in connection with the preparation of the Fee Petition concerning the reasonableness of the attorneys' fees.  Prior to the preparation of the Fee Petition, within the context of discussing the percentage fee that would be requested at the time of approval of the Settlement and reported in the "Notice of Pendency of Class Actions, Proposed Class Settlement, Settlement Hearing, Plan of Allocation, and any Motion for Attorneys' Fees, Litigation Expenses, and Service Awards" (the "Notice"), there were discussions concerning the overall reasonableness of a 25% attorneys' fee in the SST Litigation.

Answering further, pursuant to Fed. R. Civ. P. 33(d), the Firm references its production in response to Special Master Honorable Gerald E. Rosen's (Ret.) First Request for the Production of Documents, Request Nos. 42, 45.

**INTERROGATORY 58:**

Identify all individuals at the Firm who reviewed, assisted or contributed to the preparation and submission of Thornton's Fee Petition and describe the nature of their contributions.

**RESPONSE TO INTERROGATORY 58:**

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  The firm incorporates by

reference its answer to Interrogatory No. 54.  Ms. Zeiss was the principle person that reviewed

the Thornton Fee Petition, with some limited review done by Mr. Goldsmith and Mr. Rogers.

The collective Fee Petition, including the Thornton Fee Petition, was physically filed using the

Court's CM/ECF system by a paralegal at Labaton.

**INTERROGATORY 60:**

Identify all billing entries, costs and/or expenses incurred by the Firm during the SST Litigation that the Firm did <u>not</u> include in its Fee Petition/Lodestar calculation, and the reasons therefor.

**RESPONSE TO INTERROGATORY 60:**

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states that it is its normal practice to reduce or

eliminate certain expenses, including charges for airfare, meals, and related items.  Similarly, the

Firm in normal practice routinely excludes certain billed time in a fee petition, such as when less

than five hours of work was performed, when the work performed was by a very junior

employee, and when the work may have related to another litigation.

In this case, the following costs/expenses were not included in the Firm's Fee Petition:

| Cost/Expense | Total Amount | Reason |
|---|---:|---|
| In-House Catering | $245.00 | Practice of Not Requesting |
| CD Duplication | $100.00 | Minimal |
| Local Working Meals | $2,130.45 | Expenses were removed or reduced either because: (1) charge related to a regular team meeting lunch; (2) charge was above Labaton's cap for out-of-office working meals; or (3) charge related to another case. |
| Airfare | $4,895.35 | Expenses were removed or reduced either because: (1) first-class airfare was reduced to economy; (2) charge related to another case; or (3) charge incurred by Garrett Bradley as of counsel to Labaton and was written-off to avoid potential duplication. |
| Local and Overtime Transportation | $1,172.03 | Expenses were removed because: (1) charge related to another case; or (2) charge incurred by Garrett Bradley as of counsel to Labaton and was written-off to avoid potential duplication. |
| Hotel | $3,148.05 | Expenses were removed because they related to another case |
| Out-of-Town Working Meals | $349.70 | Expenses were removed or reduced either because: (1) charge was above Labaton's cap for out-of-office working meals; (2) charge appeared to be more personal in nature than work-related; or (3) charge incurred by Garrett Bradley as of counsel to Labaton and was written-off to avoid potential duplication. |
| Miscellaneous Travel | $413.86 | Expenses were removed because they appeared to be more personal in nature than work-related. |
| **TOTAL** | **$12,454.44** | |

The following billing entries were not included in the Firm's Fee Petition, for one of several reasons: (1) the time-keeper had fewer than five hours or more than five hours but very minimal involvement in the case; (2) the time related to a different case; or (3) the time-keeper was a student.  These entries total 196.8 hours and have a lodestar value of $97,502.50.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Moy, Edward | RA | 11/04/2009 | 2.5 | State Street analysis , ███ analysis |
| Moy, Edward | RA | 11/12/2009 | 0.5 | State Street ███ analysis |
| Green, Jordan | PL | 11/13/2009 | 2.7 | Met with Javier Bleichmar and Stephanie Sundel; Research financial statements. |
| Cooper, Stuart H. | I | 11/16/2009 | 1.5 | Office conference; review amended complaint. |
| Green, Jordan | PL | 11/16/2009 | 5.4 | Research financial. |
| Cooper, Stuart H. | I | 11/17/2009 | 1.0 | Review amended complaint and notes. |
| Green, Jordan | PL | 11/17/2009 | 3.3 | Research financials and custodian agreements. |
| Moy, Edward | RA | 11/17/2009 | 2.0 | Analysis of ███ state street for D. Auld |
| Chan, Victor | RA | 01/21/2010 | 1.0 | Loss Analysis. |
| Chan, Victor | RA | 02/02/2010 | 1.0 | Analyzed data received from ███ and estimated recognized losses and payments. |
| Avan, Rachel A. | OC | 05/11/2010 | 4.8 | Reviewed securities lending agreement cases. Westlaw research for Arkansas law re standards and trends for fiduciary duties; negligence; and breach of contract; worked on same with SJS |
| Dolgoff, Mindy S. | A | 09/15/2010 | 0.1 | Attorney meeting to discuss status of investigation and possible allegations |
| Goldman, Mark | OC | 09/15/2010 | 0.1 | Meetings of Counsel - Attorney meeting to discuss status of investigation and possible allegations |
| Nguyen, Angelina | OC | 09/15/2010 | 0.1 | Attorney meeting to discuss status of investigation and possible allegations. |
| Smith, Phillip | A | 09/15/2010 | 0.1 | Attorney meeting to discuss status of investigation and possible allegations. |
| Dolgoff, Mindy S. | A | 09/22/2010 | 0.1 | Attorney meeting to discuss legal theories and status of investigation |
| Nguyen, Angelina | OC | 09/22/2010 | 0.1 | Attorney meeting to discuss legal theories and status of investigation |
| Smith, Phillip | A | 09/22/2010 | 0.1 | Attorney meeting to discuss legal theories and status of investigation. |
| Goldman, Mark | OC | 09/23/2010 | 0.1 | Meetings of Counsel - Attorney meeting to discuss legal theories and status of investigation |
| Gardner, Jonathan | P | 09/24/2010 | 0.9 | Research for Mellon Bank claims; conversation with P. Scarlato. |
| Gardner, Jonathan | P | 09/27/2010 | 1.1 | Confer with P. Scarlato and C. Martin re: Mellon Bank claims for PA. |
| Gardner, Jonathan | P | 09/28/2010 | 1.1 | Attend to research for claims against Mellon Bank; confer with C. Martin and P. Scarlato. |
| Nguyen, Angelina | OC | 09/28/2010 | 0.2 | Attorney meeting to discuss foreign exchange fees and possible legal theories. |
| Smith, Phillip | A | 09/28/2010 | 0.2 | Attorney meeting to discuss foreign exchange fees and possible legal theories. |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Villegas, Carol C. | P | 09/28/2010 | 0.2 | Attorney meeting to discuss foreign exchange |
| Gardner, Jonathan | P | 09/29/2010 | 1.1 | Attend to research for claims against Mellon |
| Gardner, Jonathan | P | 09/30/2010 | 1.2 | Prepare memo on claims against Mellon Bank. |
| Gardner, Jonathan | P | 10/01/2010 | 1.6 | Prepare memo on BNY; correspond with |
| Gardner, Jonathan | P | 10/04/2010 | 1.1 | Research SOL for claims against BNY Mellon. |
| Goldman, Mark | OC | 10/06/2010 | 0.2 | Meetings of Counsel - Attorney meeting to |
| Nguyen, Angelina | OC | 10/06/2010 | 0.2 | Attorney meeting to discuss complaint, legal |
| Smith, Phillip | A | 10/06/2010 | 0.2 | Attorney meeting to discuss complaint, legal |
| Villegas, Carol C. | P | 10/06/2010 | 0.2 | Attorney meeting to discuss complaint, legal |
| Gardner, Jonathan | P | 10/12/2010 | 1.5 | Prepare memo on tolling for statute of limitations |
| Goldman, Mark | OC | 10/12/2010 | 0.1 | Meetings of Counsel - Attorney meeting to |
| Nguyen, Angelina | OC | 10/12/2010 | 0.1 | Attorney meeting to discuss legal theories |
| Smith, Phillip | A | 10/12/2010 | 0.1 | Attorney meeting to discuss legal theories. |
| Villegas, Carol C. | P | 10/12/2010 | 0.1 | Attorney meeting to discuss legal theories. |
| Goldman, Mark | OC | 11/08/2010 | 0.1 | Meetings of Counsel - Attorney meeting to discuss status of client search and complaint |
| Hallowell, Serena | P | 11/08/2010 | 0.1 | Attorney meeting to discuss status of client search and complaint. |
| Nguyen, Angelina | OC | 11/08/2010 | 0.1 | Attorney meeting to discuss status of client search and complaint. |
| Smith, Phillip | A | 11/08/2010 | 0.1 | Attorney meeting to discuss status of client search and complaint. |
| Villegas, Carol C. | P | 11/08/2010 | 0.1 | Attorney meeting to discuss status of client search and complaint. |
| Penn-Taylor, Margo | PL | 11/10/2010 | 0.1 | Copy memos from firm system for Amy Greenbaum. |
| Penn-Taylor, Margo | PL | 11/12/2010 | 2.0 | Worked on preparing binders for Amy Greenbaum. |
| Goldman, Mark | OC | 11/18/2010 | 0.2 | Meetings of Counsel - Attorney meeting to discuss status of investigation, possible clients and qui tam actions |
| Hallowell, Serena | P | 11/18/2010 | 0.2 | Attorney meeting to discuss status of investigation, possible clients and qui tam actions. |
| Nguyen, Angelina | OC | 11/18/2010 | 0.2 | Attorney meeting to discuss status of investigation, possible clients and qui tam actions |
| Penny, Brian D | OC | 11/18/2010 | 0.2 | Meetings of Counsel - Attorney meeting to discuss status of investigation, possible clients and qui tam actions |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Smith, Phillip | A | 11/18/2010 | 0.2 | Attorney meeting to discuss status of investigation, possible clients and qui tam actions. |
| Villegas, Carol C. | P | 11/18/2010 | 0.2 | Attorney meeting to discuss status of investigation, possible clients and qui tam |
| Hallowell, Serena | P | 40511 | 2.0 | Meeting regarding case; research regarding qui tam actions |
| Goldman, Mark | OC | 11/30/2010 | 0.1 | Meetings of Counsel - Attorney meeting to discuss clients, status of investigation and qui tam issues |
| Goto, Yoko | A | 11/30/2010 | 0.1 | Lit Group weekly meeting. |
| Hallowell, Serena | P | 11/30/2010 | 6.5 | Research regarding qui tam actions and relators and memo regarding relators and editing of same and email regarding same; meeting regarding state street and qui tam |
| Hallowell, Serena | P | 11/30/2010 | 0.1 | Attorney meeting to discuss clients, status of investigation, and qui tam issues. |
| Nguyen, Angelina | OC | 11/30/2010 | 0.1 | Attorney meeting to discuss clients, status of investigation, and qui tam issues |
| Penny, Brian D | OC | 11/30/2010 | 0.1 | Meetings of Counsel - Attorney meeting to discuss clients, status of investigation and qui tam issues |
| Smith, Phillip | A | 11/30/2010 | 0.1 | Attorney meeting to discuss clients, status of investigation, and qui tam issues. |
| Villegas, Carol C. | P | 11/30/2010 | 0.1 | Attorney meeting to discuss clients, status of investigation, and qui tam issues. |
| Dolgoff, Mindy S. | A | 12/14/2010 | 0.2 | Attorney meeting to discuss legal theories and status of investigation |
| Goldman, Mark | OC | 12/14/2010 | 0.2 | Meetings of Counsel - Attorney meeting to discuss legal theories and status of investigation |
| Nguyen, Angelina | OC | 12/14/2010 | 0.2 | Attorney meeting to discuss legal theories and status of investigation. |
| Penny, Brian D | OC | 12/14/2010 | 0.2 | Meetings of Counsel - Attorney meeting to discuss legal theories and status of investigation |
| Smith, Phillip | A | 12/14/2010 | 0.2 | Attorney meeting to discuss legal theories and status of investigation. |
| Villegas, Carol C. | P | 12/14/2010 | 0.2 | Attorney meeting to discuss legal theories and status of investigation. |
| Dolgoff, Mindy S. | A | 01/05/2011 | 0.2 | Attorney meeting to discuss status of investigation and complaint |
| Goldman, Mark | OC | 01/05/2011 | 0.2 | Meetings of Counsel - Attorney meeting to discuss investigation and complaint |
| Nguyen, Angelina | OC | 01/05/2011 | 0.2 | Attorney meeting to discuss status of investigation and complaint. |
| Dolgoff, Mindy S. | A | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Evans, Iona M. | A | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Gardner, Jonathan | P | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Goldman, Mark | OC | 01/25/2011 | 0.1 | Meetings of Counsel - Attorney meeting to discuss Mellon Bank qui tam case and client issues |
| Greenbaum, Amy N. | I | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Hector, Nicholas R. | A | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Malonzo, Francisco R. | PL | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Nguyen, Angelina | OC | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Scarlato, Paul | OC | 01/25/2011 | 0.1 | Meetings of Counsel - Attorney meeting to discuss Mellon Bank qui tam case and client issues |
| Smith, Phillip | A | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Villegas, Carol C. | P | 01/25/2011 | 0.1 | Attorney meeting to discuss the Mellon Bank qui tam case and client issues. |
| Fonti, Joseph | P | 02/01/2011 | 1.8 | Conference regarding case strategy. Review memo to client and draft complaint. |
| Fonti, Joseph | P | 02/03/2011 | 4.5 | Strategy meeting regarding GMP with J. Gardner and P. Scarlato.  Conference regarding RFP process.  Further analysis. |
| Fonti, Joseph | P | 02/04/2011 | 4.8 | Further analysis of claims.  Correspondence with team and co-counsel.  Strategy on filing CMP. |
| Fonti, Joseph | P | 02/05/2011 | 1.8 | Correspondence.  Review/revise complaint. Provide draft to team. |
| Moehlman, Mathew C. | A | 02/05/2011 | 3.5 | Research unjust enrichment law in Mass.; draft count for complaint for same. |
| Fonti, Joseph | P | 02/06/2011 | 1.5 | Correspondence regarding complaint and strategy. |
| Fonti, Joseph | P | 02/07/2011 | 1.8 | Correspondence regarding complaint substance/strategy. |
| Stocker, Michael W. | P | 02/07/2011 | 2.3 | Legal research regarding claims. |
| Stocker, Michael W. | P | 02/07/2011 | 0.8 | Review and edit 23(g) motion. Also did additional research. |
| Fonti, Joseph | P | 02/08/2011 | 0.8 | Correspondence regarding filing complaint. |
| Moehlman, Mathew C. | A | 02/08/2011 | 2.1 | Research re verified complaint; discuss same w/ J. Gardner. |
| Fonti, Joseph | P | 02/10/2011 | 1.0 | Correspondence regarding transition to Joel. Correspondence regarding CMP. |
| Cordoba-Riera, Diana M. | PL | 03/18/2011 | 1.0 | Assist with filing procedures; draft documentation regarding rules for filing in the D. MA. |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Stocker, Michael W. | P | 03/22/2011 | 0.4 | Interim lead papers review. |
| McDonald, Christopher J. | P | 03/24/2011 | 0.2 | Conference with Eric Belfi. Reviewing complaint and background materials. |
| Cordoba-Riera, Diana M. | PL | 03/25/2011 | 0.7 | Research procedures on pro hac vice admission in the D. MA. |
| Stocker, Michael W. | P | 03/30/2011 | 2.5 | Meeting with client and Eric Belfi. Prepare for client meeting. |
| Avan, Rachel A. | OC | 04/01/2011 | 0.9 | Prepared fee agreement; worked on same with Christopher J. Keller. |
| Avan, Rachel A. | OC | 04/05/2011 | 0.3 | Revised letter agreement with Christopher J. Keller's comments. |
| Avan, Rachel A. | OC | 04/07/2011 | 0.4 | Worked on letter agreement with Christopher J. Keller; revised same. |
| Cordoba-Riera, Diana M. | PL | 04/22/2011 | 0.6 | Follow-up with the clerk at D. MA regarding Pro Hac Vice Status. |
| Alex, Martis | P | 04/29/2011 | 0.8 | Meeting re: litigation status |
| Wattenberg, Steven | PL | 05/26/2011 | 0.5 | Research and register Paul Scarlato, Mike Rogers and Joel Bernstein for ECF in USDC - Massachusetts. |
| Giles, Matthew | RA | 06/03/2011 | 0.5 | Read through complaint and related documents. |
| Appenfeller, Mathew | LC | 06/08/2011 | 2.0 | Pulling pertinent cases from case and defendant's Motion to Dismiss. |
| Bliss, Jean H. | PL | 06/08/2011 | 2.0 | Pulling and indexing 93 cases cited in Defendants' Memo in Support of their Motion to Dismiss. Printed, bindered and saved to shared drive as well. |
| Zhang, Kan | LC | 06/08/2011 | 3.6 | Research complaint and motion to dismiss. Meeting with Mike Rogers. |
| Appenfeller, Mathew | LC | 06/09/2011 | 7.0 | Briefing analysis and researching issues presented in cases mentional above. |
| Bliss, Jean H. | PL | 06/09/2011 | 3.0 | Pulling and indexing 93 cases cited in Defendants' Memo in Support of their Motion to Dismiss. Printed, bindered and saved to shared drive as well. |
| Zhang, Kan | LC | 06/09/2011 | 3.0 | Research on Nullum Tempus. |
| Appenfeller, Mathew | LC | 06/10/2011 | 2.0 | Researching details of Breach of Contract argument in defendant's Motion to Dismiss. |
| Appenfeller, Mathew | LC | 06/15/2011 | 6.0 | Breach of contract research on State Street. |
| Appenfeller, Mathew | LC | 06/16/2011 | 4.0 | Breach of Contract research for State Street. |
| Appenfeller, Mathew | LC | 06/21/2011 | 4.0 | Breach of Contract research for State Street. |
| Appenfeller, Mathew | LC | 06/22/2011 | 5.0 | Breach of Contract research for State Street. |
| Appenfeller, Mathew | LC | 06/30/2011 | 2.0 | Research on 'ambiguity held against the drafter' law in Arkansas.Salvage of GoLive Time |
| Giles, Matthew | RA | 06/30/2011 | 1.5 | Read through and re-formatted client documents on the shared drive.Salvage of GoLive Time |

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Wattenberg, Steven | PL | 07/11/2011 | 0.4 | Research J. Bernstein ECF login info for USDC-MASS and to arrange to obtain new one.Salvage of GoLive Time |
| Alex, Martis | P | 07/12/2011 | 0.5 | Litigation stratgey meeting |
| Appenfeller, Mathew | LC | 07/12/2011 | 4.0 | Research on custodial contracts that discuss fee schedule mergers. |
| Appenfeller, Mathew | LC | 07/12/2011 | 3.0 | Research on AR courts definition of "free of charge." |
| Salzman, Hollis L. | P | 07/13/2011 | 0.1 | Analyze litigation control issues |
| Appenfeller, Mathew | LC | 07/14/2011 | 3.0 | Research on overlapping class action claims in CA. |
| Fonti, Joseph | P | 07/14/2011 | 0.3 | Prep and attend lit control discussion.Salvage of GoLive Time |
| Wattenberg, Steven | PL | 08/08/2011 | 0.2 | Research proper category to file a Notice of Supplemental Authority under in the USDC-MASS. |
| Muchmore, Edward | I | 10/13/2011 | 3.3 | Review complaint. |
| Alexander, Jeffrey R. | A | 12/02/2011 | 5.5 | Research and prepare documents for application for special master. |
| Joyner, Rodney | PL | 12/16/2011 | 1.0 | State Street (Maryland Erisa) -  Searched and Pulled dockets from PACER (050) 1hrs |
| Good, Katie | PL | 01/23/2012 | 0.5 | Review case docket and pull recent filings for BNY (SEPTA). |
| Good, Katie | PL | 01/23/2012 | 0.3 | Review case docket and pull recent filings for BNY (SEPTA). |
| Good, Katie | PL | 01/24/2012 | 0.7 | Review case docket and pull recent filings for BNY (SEPTA). |
| Evans, Iona M. | A | 04/17/2012 | 2.4 | Meeting re depositions. |
| Good, Katie | PL | 08/17/2012 | 1.0 | Pull documents from docket and save to shared drive. |
| Fernando, Terrence D. | SA | 12/20/2012 | 2.3 | Reviewed documents to be produced to defendants in order to identify those that are privileged. |
| Kosa, John | SA | 12/20/2012 | 3.0 | Reviewed documents in the non consecutive Bates range SST-ARTRS 0008420 to SSR-ARTRS 0012744 to search for relevant names mentioned in documents. |
| Tzall, Robert | SA | 12/20/2012 | 6.0 | Investigation Selected guided searches of potentially privilege documents to insure privledged documents would to be released to Plaintiffs |
| Kosa, John | SA | 12/21/2012 | 1.0 | Reviewed documents to search for relevant names mentioned in documents. |
| Murro, Daniel | SA | 02/01/2013 | 1.0 | Investigation Conference call and Catalyst Insight document review software training. |
| Einstein, Joseph H. | OC | 03/06/2013 | 0.7 | Review Precision Agreement and correspondence. |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Bleichmar, Javier | P | 04/12/2013 | 0.1 | Litigation Strategy and Analysis. |
| Fonti, Joseph | P | 04/12/2013 | 0.1 | Update and strategy discussion. |
| Chan, Victor | RA | 01/03/2014 | 4.5 | Researched whether monitored clients with custodian bank State Street traded foreign exchange currencies, the time of each trade, and highlighted transactions that are within 5 minutes of the hour or at the 4PM London time. |
| Bradley, Garrett | OC | 05/14/2015 | 0.1 | Reviewing settlement outline. |
| Bradley, Garrett | OC | 05/26/2015 | 0.1 | Reviewing mediation strategies. |
| Dubbin, Jeffrey | A | 06/17/2015 | 1.0 | Researched CAFA notice and settlement schedule; conference with Lou Gottlieb re: the same.  Prepared settlement schedule proposal. |
| Dubbs, Thomas A. | P | 06/17/2015 | 1.9 | Conference C. Keller; conference L. Gottlieb regarding CAFA issues; work on CAFA memo. |
| Dubbs, Thomas A. | P | 06/18/2015 | 2.2 | Work on CAFA memo. |
| Potts, Marissa | LC | 06/18/2015 | 3.5 | Researched to determine when the 90 day waiting period begins for CAFA |
| Goldsmith, David J. | P | 10/13/2015 | 2.8 | Review settlement approval and fee briefs in BNY Mellon settlement; strategy for fee request |
| Tse, Victoria | RA | 10/20/2015 | 0.5 | Account listing for all State Street state clients |
| Tse, Victoria | RA | 10/23/2015 | 2.0 | Custodial checking all accounts for State Street Clients for custodial emails |
| Bradley, Garrett | OC | 05/03/2016 | 1.0 | Review Documents re State Street. |
| Bradley, Garrett | OC | 05/24/2016 | 2.0 | State Street. |
| Arisohn, Mark S. | P | 06/27/2016 | 0.1 | Attend team meeting re: litigation strategy. |
| Crevier, Jonathan | LC | 06/27/2016 | 0.1 | Attend team meeting re: litigation strategy. |
| Hrutkay, Matthew | A | 06/27/2016 | 0.1 | Attend team meeting re: litigation strategy. |
| Okun, Barry | OC | 06/27/2016 | 0.1 | Attend team meeting re: litigation strategy. |
| **TOTALS** | | | **196.8** | **$97,502.50** |

In the "status" column of this chart, "P" represents a partner, "OC" represents of counsel,

"A" represents associate, "RA" represents research analyst, "I" represents investigator, "PL"

represents paralegal, and "LC" represents law clerk.

**INTERROGATORY 61:**

Explain the significance of the statement made in Paragraph 7 of Exhibit A to the *Declaration of Lawrence A. Sucharow* (Docket #104-15), affirming that the hourly rates included in Exhibit A are the Firm's "regular rates charged for their services, which have been accepted in other complex class actions." Please describe any other instances in which the Firm has submitted a Fee Petition with the same or similar language.

**RESPONSE TO INTERROGATORY 61:**

The Firm incorporates the General Objections set forth above. Subject to and without waiving the foregoing objections, the Firm states the following: It is typical in class action fee declarations to include a statement characterizing the billing rates reported. Different firms use different statements, as evidenced by the individual fee and expense declarations submitted with the Fee Petition (ECF No. 104-15 to 104-23). The intent of the statement used by Labaton, as set forth above, was to convey to the Court that the rates in Exhibit A are the firm's regular standard rates, which were not applied for a specific case or depending on the nature of the type of work performed, and that other Courts had found them reasonable when charged to a class in other litigation. Moreover, as reflected in the Firm's responses to Interrogatory 45 above, the rates are the standard billing rates in the uncommon circumstance when the Firm has hourly clients who pay by invoice. (Please see the Firm's answer to Interrogatory No. 71 for additional information.)

Labaton submitted fee petitions with similar language in at least 10 other cases (see below). The phrase "complex class actions" was used in the Firm's Fee Petition in the SST Litigation, rather than the "securities or shareholder litigations" used below, because the Class Actions were not securities or shareholder litigations.

| Case | Language from Labaton's Individual Fee and Expense Declaration | Dated Filed |
|---|---|---|
| *In re Amgen Inc. Sec. Litig.*, No. 07-cv-2536 (C.D. Cal.) | "The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as my firm's regular rates charged for their services, which have been accepted in other securities or shareholder litigations." (ECF No. 591-5) | 9/20/2016 |
| *Van Noppen* v. *InnerWorkings, Inc.*, No. 14-cv-01416 (N.D. Ill.) | "The hourly rates for the attorneys and professional support staff of my firm included in Exhibit A are the same as my firm's regular rates charged for their services, which have been accepted in other securities or shareholder litigations." (ECF No. 100-4) | 9/6/2016 |
| *In re Nu Skin Enterprises, Inc. Sec. Litig.*, No. 14-cv-00033 (D. Utah) | "The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as my firm's regular rates charged for their services, which have been accepted in other securities or shareholder litigations." (ECF No. 140-4) | 8/31/2016 |
| *In re: Spectrum Pharmaceuticals, Inc., Sec. Litig.*, No. 13-cv-00433 (D. Nev.) | "The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as my firm's regular rates charged for their services, which have been accepted in other securities or shareholder litigations." (ECF No. 152-4) | 5/9/2016 |
| *In re Neustar, Inc. Sec. Litig.*, No. 14-cv-00885 (E.D. Va.) | "The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as my firm's regular rates charged for their services, which have been accepted in other securities or shareholder litigations." (ECF No. 60-5) | 10/29/2015 |
| *Freedman v. Weatherford Int'l, Ltd.*, No. 12-cv-2121 (S.D.N.Y.) | "The hourly rates for the attorneys and professional support staff of my firm included in Exhibit A are my firm's usual and customary billing rates, and are consistent with the rates accepted in other securities or shareholder litigations." (ECF No. 202-6) | 9/29/2015 |

| Case | Language from Labaton's Individual Fee and Expense Declaration | Dated Filed |
|------|--------------------------------------------------------------|-------------|
| *In re ViroPharma Inc. Sec. Litig.,* No. 12-2714 (E.D. Pa.) | "The hourly rates for the attorneys and professional support staff of my firm included in Exhibit B are my firm's usual and customary billing rates, which have been accepted in other securities or shareholder litigations." (ECF No. 91-6) | 9/25/2015 |
| *In re Celestica Inc. Sec. Litig.,* No. 07-cv-00312 (S.D.N.Y.) | "The hourly rates for the attorneys and professional support staff of my firm included in Exhibit B are my firm's usual and customary billing rates, which have been accepted in other securities or shareholder litigations." (ECF No. 262-1) | 6/23/2015 |
| *In re Colonial BancGroup, Inc. Sec. Litig.,* No. 09-cv-00104 (M.D. Ala.) | "The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as the regular rates charged for their services and have been accepted in other securities or shareholder litigation." (ECF No. 557-7) | 5/14/2015 |
| *In re Fannie Mae 2008 Sec. Litig.,* No. 08-cv-7831 (S.D.N.Y.) | "The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are the same as the regular rates charged for their services in other securities or shareholder litigations." (ECF No. 539-9) | 1/16/2015 |

**INTERROGATORY 62:**

Do you contend that the rates listed in the Firm's Fee Petition represent the prevailing rates in the community for similar services performed by lawyers of reasonably comparable skill, experience and reputation for each of the respective tasks performed?  Why or why not?

**RESPONSE TO INTERROGATORY 62:**

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  Yes, the Firm does contend that

the rates listed in the Firm's Fee Petition represent the prevailing rates in the community for

similar services performed by lawyers of reasonably comparable skill, experience and reputation

for each of the respective tasks performed.  As explained in the Fee Petition, Plaintiffs'

Counsel's hourly billing rates in the SST Litigation ranged from $350 to $1,000 for Partners[1],

$455 to $1,000 for Of Counsel, and $325 to $725 for other attorneys. (*See* ECF 104 at ¶177.)  As

explained in response to Interrogatory No. 44, the Firm does an annual review of fee petitions

submitted in bankruptcy court filings nationwide by law firms that specialize in complex

commercial litigation, as Labaton Sucharow and the other Plaintiffs' Counsel do.  The 2015 data

set, summarized in Ex. 25 to the Fee Petition and the most recent available at the time of the Fee

Petition, showed that these defense-side firms' billing rates were either comparable to the rates

of Plaintiffs' Counsel or exceed Plaintiffs' Counsel's rates.

## INTERROGATORY 64:

Describe when and how the Law Firm first learned about the Boston Globe's inquiry into
the Fee Award, and underlying billing practices employed by the Firm and other counsel in the
SST Litigation, that preceded the publication of the December 17, 2016 Article.

## RESPONSE TO INTERROGATORY 64:

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  The Firm first learned about the

*Boston Globe*'s inquiry into the Fee Award, and underlying billing practices employed by the

Firm and other counsel in the SST Litigation, that preceded the publication of the December 17,

2016 Article, on November 8, 2016.  On that date, Garrett Bradley of Thornton called David

Goldsmith of Labaton Sucharow and advised him that he had received a telephone call earlier

that day from a reporter at the *Boston Globe* concerning the Fee Petition.  Also on that date,

Garrett Bradley and Evan Hoffman of Thornton called Nicole Zeiss of Labaton Sucharow

separately and advised her that a journalist had made inquiries concerning Staff Attorney time

reported in the Fee Petition.

---

[1] Elizabeth Cabraser, Richard Heimann, and Robert Lieff of the Lieff Cabraser firm were the
only attorneys with rates of $1,000 per hour.

**INTERROGATORY 65:**

Describe when and how the Law Firm first identified duplicative billing entries reflected in the Firm's Fee Petition and describe all actions taken by the Firm to review, confirm and/or correct those errors.

**RESPONSE TO INTERROGATORY 65:**

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm states the following:  The Firm first identified duplicative billing entries reflected in the Firm's Fee Petition on November 8, 2016, after the telephone communications from Garrett Bradley and Evan Hoffman of Thornton described in the Answers and Objections to Interrogatory No. 64 above.  Promptly after these telephone calls, David Goldsmith, Howard Goldberg, and Nicole Zeiss compared the Labaton Sucharow and Thornton lodestar reports, and recognized for the first time that certain Staff Attorneys who appeared on both lodestar reports were listed as having worked precisely the same number of hours.  Mr. Goldsmith and Ms. Zeiss promptly spoke with Michael Lesser and Evan Hoffman of Thornton and received information from the Thornton Firm.  Mr. Goldsmith also notified Joel Bernstein, a senior partner of the Firm and then a member of the Executive Committee, Michael Stocker, a partner who serves as the Firm's General Counsel, and Michael Rogers, a partner of the Firm who worked on the action.  (Lawrence Sucharow, Chairman of the Firm, could not be notified in person because he was on vacation overseas; he returned to work on November 14 and was promptly briefed.)

Mr. Goldsmith and Ms. Zeiss also notified internal personnel involved in the SST Document Review, Staff Attorney hiring and coordination, accounting, and litigation coordination, and convened one or more in-person meetings to discuss the issue.  Finally, Mr. Goldsmith spoke with Daniel Chiplock of Lieff Cabraser while he was out of town on unrelated

business.  Mr. Goldsmith alerted Mr. Chiplock to the issue and asked him to perform a detailed

review of the Thornton and Lieff Cabraser lodestar reports, even if only as a due diligence

measure.  The Firm's investigation and communications with Thornton and Lieff Cabraser, and

later with ERISA Counsel, culminated in the disclosures set forth in the November 10, 2016

Letter filed with the Court.

## INTERROGATORY 66:

Describe in detail how the Law Firm drafted the November 10, 2016 Letter, including the
full names of all individuals who contributed to the Letter, the nature of any internal review by
the Firm, and all individuals outside the firm who reviewed and/or contributed to the Letter and
the nature of their contribution(s).

## RESPONSE TO INTERROGATORY 66:

The Firm incorporates the General Objections set forth above.  Subject to and without

waiving the foregoing objections, the Firm states the following:  The November 10, 2016 Letter

was drafted by David Goldsmith of Labaton Sucharow on November 8-10, 2016.  Mr. Goldsmith

shared the initial draft with Nicole Zeiss of Labaton Sucharow on November 8, 2016.  Drafts

were then shared internally beginning on November 9, 2016 with Ms. Zeiss and Labaton

Sucharow partners Joel Bernstein, Michael Stocker, and Eric Belfi (the relationship partner for

ARTRS and a member of the Firm's Executive Committee), then Daniel Chiplock of Lieff

Cabraser, then Garrett Bradley and Evan Hoffman of Thornton, with responsive markups shared

with Mr. Stocker and Mr. Chiplock.  Further drafts were circulated internally to the Firm's

Executive Committee, and finally with Keller Rohrback, Zuckerman Spaeder, and McTigue Law

(*i.e.*, ERISA Counsel) together with Thornton and Lieff Cabraser.  Additional drafts circulated

among this full counsel group, with certain drafts also circulated internally to the Executive

Committee or certain members thereof.  The effective working group ultimately narrowed on

November 10, 2016 to Mr. Goldsmith, Michael Lesser of Thornton, Mr. Chiplock, and Carl

Kravitz of Zuckerman Spaeder, leading to final signoff and submission of the Letter to the Court.

*Individuals who contributed to the Letter, listed alphabetically (the Firm interprets "contributed" to exclude individuals who generally approved the Letter but did not provide edits or comments):*

Garrett Bradley; Daniel Chiplock; Howard Goldberg (Labaton Sucharow Litigation

Coordinator, who assembled relevant data); David Goldsmith; James Johnson (partner at

Labaton Sucharow and member of the Executive Committee); Christopher Keller (same); Carl

Kravitz; Michael Lesser; Brian McTigue (McTigue Law); Nicole Zeiss.

*Individuals outside the Firm who reviewed and/or contributed to the Letter, listed alphabetically (the Firm interprets "reviewed" here to include each individual who appears to have received at least one draft of the Letter, regardless of whether he or she actually reviewed the draft(s)):*

Jonathan Axelrod (Beins Axelrod); Garrett Bradley; Daniel Chiplock; Brooke Edwards

(McTigue Law); Evan Hoffman; Carl Kravitz; Michael Lesser; Robert Lieff (Lieff Cabraser);

Regina Markey (McTigue Law); Brian McTigue; James Moore (McTigue Law); Lynn Sarko

(Keller Rohrback).

*Nature of internal review by the Firm,* i.e., *partners of the Firm who received drafts of the Letter, listed alphabetically:*

Martis Alex (then a member of the Executive Committee); Eric Belfi; Joel Bernstein;

Thomas Dubbs (member of the Executive Committee); David Goldsmith; James Johnson;

Christopher Keller; Edward Labaton (former member of the Executive Committee); Michael

Stocker; Lawrence Sucharow; Nicole Zeiss.

## INTERROGATORY 67:

Identify and describe all documents relied upon by the Law Firm in drafting the November 10, 2016 Letter.

**RESPONSE TO INTERROGATORY 67:**

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm states the following:  David Goldsmith of Labaton Sucharow relied upon the following documents and categories of documents in drafting the November 10, 2016 Letter:

(a) [Proposed] Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs, ECF No. 103-1.

(b) Labaton Sucharow Lodestar Report, ECF No. 104-15, at 7-9.

(c) Thornton Lodestar Report, ECF No. 104-16, at 7-8.

(d) Lieff Cabraser Lodestar Report, ECF No. 104-17, at 8-9.

(e) Keller Rohrback Lodestar Report, ECF No. 104-18, at 6-7.

(f) McTigue Law Lodestar Report, ECF No. 104-19, at 11.

(g) Zuckerman Spaeder Lodestar Report, ECF No. 104-20, at 7.

(h) Feinberg Campbell Lodestar Report, ECF No. 104-21, at 6.

(i) Beins Axelrod Lodestar Report, ECF No. 104-22, at 8.

(j) Richardson Patrick Lodestar Report, ECF No. 104-23, at 6.

(k) Master Chart, ECF No. 104-24.

(l) Order Awarding Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs, ECF No. 111.

(m) November 2, 2016 Hearing Transcript.

(n) Excel file titled "State Street Doc Review Time by date," showing number of hours billed on a daily basis by Staff Attorneys common to Labaton Sucharow and Thornton, prepared internally by Howard Goldberg (Labaton Sucharow Litigation Coordinator) on November 8, 2016.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

(o)   Excel file titled "Labaton/Thornton Hour Comparison," showing rates, hours and billings by Staff Attorneys common to Labaton Sucharow and Thornton, prepared internally by Howard Goldberg on November 8, 2016.

(p)   E-mail dated November 9, 2016 from Daniel Chiplock (Lieff Cabraser) to David Goldsmith, copying Evan Hoffman and Michael Lesser (both of Thornton), concerning discrepancies between Lieff Cabraser and Thornton Lodestar Reports.

(q)   Various markups of draft Letter, received on November 9 and 10, 2016 internally from Nicole Zeiss and James Johnson and from Michael Lesser, Daniel Chiplock, Carl Kravitz (Zuckerman Spaeder), and Brian McTigue (McTigue Law).

(r)   Various e-mails concerning subject matter and language of the Letter, received on November 9 and 10, 2016 internally from Christopher Keller and others and from Michael Lesser, Daniel Chiplock, and Carl Kravitz.

## INTERROGATORY 70:

Identify, in detail, any additional errors in your any communication with the Court or with the Special Master, since filing of the Fee Petition(s) and explain each step or action taken to correct each error, including all documents or information consulted or relied upon in making the correction(s).

## RESPONSE TO INTERROGATORY 70:

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm has no further response to this Interrogatory.

## INTERROGATORY 71:

Identify and explain any mistakes you have identified in the Fee Petition, Motion for Attorneys' Fees, and/or Fee Award, not described above.

## RESPONSE TO INTERROGATORY 71:

The Firm incorporates the General Objections set forth above.  Subject to and without waiving the foregoing objections, the Firm responds that, although it does not consider it to have been a "mistake," the Firm is now aware that some have interpreted Paragraph 7 of the Declaration of Lawrence A. Sucharow on Behalf of Labaton Sucharow LLP in Support of Lead

Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (ECF No. 104-15)

in a manner other than as intended.  That sentence, a version of which appears in declarations

submitted by other Plaintiffs' firms and has appeared in Labaton Sucharow's fee petitions for

several years, says:

> The hourly rates for the attorneys and professional support staff in my firm
> included in Exhibit A are the same as my firm's regular rates charged for their
> services, which have been accepted in other complex class actions.

Labaton Sucharow now understands that some interpreted that sentence to mean that the Firm's

rates submitted with the referenced declaration are billed to clients that pay for the Firm's

services on an hourly basis.  In fact, although in limited circumstances the Firm has had hourly

clients who were actually billed at the rates to which this language has made reference, the

overwhelming majority of the Firm's clients retain Labaton Sucharow's services on a

contingency basis.  The language was intended to impart that the same annual rates are used in

the lodestar reports for all fee petitions in the given year and are not project specific, nor do they

apply only to specific cases or depend on the nature of the type of work performed.  Given the

apparent ambiguity, Labaton Sucharow now believes it would be preferable going forward to

provide additional explanation so that the Court understands that the rates being used by Labaton

Sucharow in connection with the lodestar check of the fee award, although fully supported,

customary in the industry, and (as stated) accepted in other complex class actions, are used for all

lodestar reports in a given year but are not typically billed to clients of the Firm inasmuch as

clients do not typically pay an hourly rate.

In addition, during the course of responding to the Special Master's discovery requests,

Nicole Zeiss identified two additional types of errors in the Firm's Fee Petition.

In preparing a response to Interrogatory No. 60 relating to fees and expenses not included

in the final fee submission, and responding to other interrogatories, Ms. Zeiss consulted the

Firm's time records previously produced to the Special Master.  While she was referring to the

time records, she noticed several entries related to the Fee Petition, which ordinarily would have

been removed from the Firm's lodestar report.  She asked Howard Goldberg to create the report

of the Firm's written-off time, reported above in the response to Interrogatory No. 60, and to

create a report of the Firm's time entries potentially related to the Fee Petition, reported below.

(This process also revealed an entry for Joel Bernstein on 4/25/16 that should have been removed

because this was time spent by David Goldsmith.)  Unfortunately, the time entries below were

mistakenly included in the Firm's Fee Petition.  These entries total 108.1 hours and have a

lodestar value of $80,330.00.  This time did not represent the entirety of the Firm's time spent

preparing the Fee Petition, in that the lodestar reports have a cut-off date of August 30, 2016 and

a significant amount of time was spent on the Fee Petition after August 30, 2016 – time that was

not included in the Firm's Fee Petition.

Ordinarily, these types of entries would and should have been removed from the Firm's

lodestar report prior to submission with a fee motion.  In its ordinary practice, the Firm searches

its time entries for the word "fee" in order to catch such entries, but that practice was either not

performed here or was incomplete.  Going forward, to ensure that such entries are indeed

removed from fee applications, both Ms. Zeiss and Mr. Goldberg will each identify time entries

related to the preparation of the fee motion at issue, by searching for entries related to "fee",

"expenses, and "lodestar," and will confer about their removal.  Before a lodestar report is

finalized, Mr. Goldberg will prepare a report of all written-off time and Ms. Zeiss will confirm

that the time has indeed been removed.

The following billing entries were mistakenly included in the Firm's Fee Petition:

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Joel Bernstein | P | 04/25/16 | 4.0 | Review/markup Plan of Allocation; e-mails with Nicole Zeiss and co-counsel re same; e-mails with Nicole Zeiss and Mike Rogers re co-counsel expenses issues; review markup of Settlement Agreement and Nicole Zeiss comments; prepare for Tuesday call. |
| David Goldsmith | P | 08/16/16 | 1.5 | Research for fee and expense brief. |
| Roger Yamada | SA | 08/16/16 | 1.5 | Began preparing a table to add to the brief, or attach as an appendix, reporting class action settlements (consumer and securities) ranging from $200 M to $400 M as well as the awarded fee. |
| David Goldsmith | P | 08/17/16 | 2.5 | Research re fee brief issues |
| Nicole Zeiss | P | 08/17/16 | 1.0 | Dealt with fee issues. |
| Roger Yamada | SA | 08/17/16 | 3.0 | Narrowed westlaw results for "common fund" and "class action" in preparing a table to add to the brief, or attach as an appendix, reporting class action settlements (consumer and securities) ranging from $200 M to $400 M as well as the awarded fee. |
| Roger Yamada | SA | 08/17/16 | 3.0 | Began preparing a table to add to the brief, or attach as an appendix, reporting class action settlements (consumer and securities) ranging from $200 M to $400 M as well as the awarded fee. |
| David Goldsmith | P | 08/19/16 | 2.5 | Review research materials for fee brief |
| David Goldsmith | P | 08/22/16 | 8.8 | Research/draft fee brief |
| Roger Yamada | SA | 08/22/16 | 1.0 | Created a table reporting class action settlements (consumer and securities) ranging from $200 M to $400 M and the awarded fee, and began populating the table by running a common fund search on Westlaw. |
| David Goldsmith | P | 08/23/16 | 14.0 | Research/draft fee brief; e-mails with M. Miarmi and D. Chiplock; e-mails with Nicole Zeiss |
| David Goldsmith | P | 08/24/16 | 10.2 | Research/draft fee brief; e-mails with D. Chiplock; disc strategy with G. Bradley. |
| Roger Yamada | SA | 08/24/16 | 3.0 | Referenced Westlaw to obtain multiplier and fee information for Tyco, Raytheon, First Databank, Neurontin, Lupron, and CVS cases for David Goldsmith. |
| Roger Yamada | SA | 08/24/16 | 3.0 | Reviewed the $100+ million settlement cases and determined fee and multiplier information for the settlements table; discussed with David Goldsmith. |
| David Goldsmith | P | 08/25/16 | 9.4 | Research/draft fee brief; e-mails with Roger Yamada. |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Timekeeper Name | Status | Date | Hours | Narrative |
|---|---|---|---|---|
| Roger Yamada | SA | 08/25/16 | 3.0 | Continued reviewing the $100+ million settlement cases and determined fee and multiplier information for the settlements table; discussed with David Goldsmith. |
| Roger Yamada | SA | 08/25/16 | 2.0 | Reviewed outlier cases encountered in the search for $100+ million settlement cases; discussed with Nicole Zeiss and included in the settlements chart. |
| David Goldsmith | P | 08/26/16 | 9.9 | Research/draft fee brief; review co-counsel draft settlement brief; e-mails re same |
| David Goldsmith | P | 08/27/16 | 7.7 | Research/draft fee brief |
| David Goldsmith | P | 08/28/16 | 11.1 | Research/draft fee brief; send draft to co-counsel and internally. |
| David Goldsmith | P | 08/29/16 | 2.0 | Revise fee brief per Larry Sucharow comments and recirculate |
| David Goldsmith | P | 08/30/16 | 2.5 | Review/address Mike Lesser comments on fee brief; review Nicole Zeiss draft firm fee/expense. |
| Nicole Zeiss | P | 08/30/16 | 1.5 | Worked on fee declaration. |
| **TOTALS** | | | **108.1** | **$80,330.00** |

Second, the firm has identified the following expense items, which should not have been

included with the Firm's Fee Petition:

| Cost/Expense | Total Amount | Reason |
|---|---|---|
| Local Transportation | $242.28 | Expenses applied to a different case or were already reimbursed. |
| Hotel Charge | $426.42 | Expense was already reimbursed. |
| **TOTAL** | **$668.70** | |

## INTERROGATORY 72:

Identify any other individuals, not listed above, who have knowledge of the Interrogatories and/or the SST Litigation and explain the general nature of such knowledge.

## RESPONSE TO INTERROGATORY 72:

The Firm incorporates the General Objections set forth above.  The Firm further objects

to the Interrogatory as vague and overbroad, inasmuch as it could be read to require identifying

any person anywhere who knows anything at all about the SST Litigation.  Labaton Sucharow

will construe this Interrogatory as a request that the Firm identify (to the extent not otherwise identified in its response to the Interrogatories) the principal Labaton Sucharow attorneys or staff who worked on, or have unique knowledge regarding, the topics being reviewed by the Special Master.  Construed in that fashion, and subject to the foregoing objections, the Firm states the following:

The foregoing Interrogatory responses identify the principal Labaton Sucharow attorneys and staff members who worked on, or have unique knowledge regarding, the topics that the Firm understands are being reviewed by the Special Master.  Should the Special Master want a more fulsome list that includes all timekeepers who recorded more than five hours to the SST Litigation, Labaton Sucharow refers the Special Master to the list of attorneys, research analysts, investigators and paralegals set forth on the Labaton Sucharow Lodestar Report (ECF No. 104-15, at 7-9).

Dated: June 9, 2017

Joan A. Lukey (BBO No. 307340)
Justin J. Wolosz (BBO No. 643543)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel: (617) 248-5000
joan.lukey@choate.com
jwolosz@choate.com

*Attorneys for Labaton Sucharow LLP*

## **VERIFICATION**

On behalf of Labaton Sucharow LLP, I have read Labaton Sucharow LLP's Response to Special Master Honorable Gerald E. Rosen's (Ret.) First Set of Interrogatories to Labaton Sucharow LLP – June 9 Response.  The Response was prepared with the assistance of the employees, representatives, and counsel of Labaton Sucharow LLP, and the information provided is not fully within my personal knowledge.  I reserve the right to make changes or additions to these responses if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available.  To the extent that these responses are within my personal knowledge, I certify them to be true.  To the extent that these responses are not within my personal knowledge, I have no reason to believe that they are not true.

Signed under oath under the penalties of perjury this __ day of June, 2017.

_____
Lawrence A. Sucharow, Chairman

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I, Justin J. Wolosz, hereby certify that on this Ninth day of June I have caused a copy of the foregoing Labaton Sucharow LLP's Response To Special Master Honorable Gerald E. Rosen's (Ret.) First Set of Interrogatories to Labaton Sucharow LLP – June 9 Response to be served via email and overnight mail upon William F. Sinnott, Donoghue Barrett & Singal, P.C., One Beacon Street, Suite 1320, Boston, MA  02108.

Justin J. Wolosz

8150824

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER