# EX. 175

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br>                 Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br>                 Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br>                 Defendant. | No. 12-cv-11698 MLW |

## LIEFF CABRASER HEIMANN & BERNSTEIN LLP'S RESPONSES TO SPECIAL MASTER HONORABLE GERALD E. ROSEN'S (RET.) FIRST SET OF INTERROGATORIES DUE ON JUNE 9, 2017

In accordance with the Federal Rules of Civil Procedure, Lieff Cabraser Heimann & Bernstein, LLP ("LCHB" or the "Firm") hereby responds to Special Master Honorable Gerald E. Rosen's (Ret.) First Set of Interrogatories (the "Interrogatories"), propounded on LCHB on May 18, 2017, as revised on May 23, 2017, and due on June 9, 2017.

## GENERAL OBJECTIONS

LCHB makes the following general objections, which are incorporated by reference into each Interrogatory response, whether or not a specific further objection is made with respect to a specific Interrogatory.  Each Interrogatory response incorporates, is subject to and does not waive the general objections.

1.      LCHB objects to the Interrogatories and Instructions to the extent they seek information protected by the attorney-client privilege, the attorney work product doctrine, or that otherwise is privileged, protected or exempt from discovery.

2.      LCHB objects to the Interrogatories and Instructions to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure, particularly Rule 33, and by any court decisions interpreting those Rules.

3.      LCHB objects to the Interrogatories and Instructions to the extent they seek information beyond the scope of, or not relevant to, the Courts' February 6, 2017 Memorandum and Order in the above-referenced cases.

4.      In responding to the Interrogatories, LCHB has made reasonable efforts to respond based on its understanding and interpretation of each Interrogatory.  If the Special Master subsequently asserts a reasonable interpretation of an Interrogatory which differs from that of LCHB, LCHB reserves the right to supplement its responses.

1351938.2

5.      LCHB will make all reasonable efforts to respond to the Interrogatories on or before the dates specified in the Special Master's May 23, 2017 revised Interrogatories.  LCHB, however, reserves the right to supplement its responses should it require additional time, and/or should responsive information be discovered following the designated dates for the responses.

6.      LCHB objects to Definition No. 1 and Instruction B, to the extent they seek Interrogatory responses from any source other than the Law Firm, its partners, associates, of counsel, employees and contractors.  LCHB has no "affiliates," and no "agents" or "representatives" that are or would be in the possession of responsive information.

## RESPONSES TO THE INTERROGATORIES

## INTERROGATORY NO. 17:

Describe in detail all agreements between the Firm/Plaintiffs' Law Firms, on the one hand, and the ERISA firms, on the other, to allocate to the ERISA firms a fixed percentage of the total Fee Award rendered by the Court in the SST Litigation. As to any agreement that did not represent the final agreement for allocation of the Fee Award, explain the reason for modifying a previous agreement, including all persons involved in these discussions and their affiliation/firm.

## RESPONSE TO INTERROGATORY NO. 17:

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that it is vague and seeks information that is not relevant to the subject matter of this proceeding.  Subject to and without waiving those objections, LCHB responds as follows:

A written agreement dated on or about December 11, 2013 was entered into by Plaintiffs' Law Firms and the ERISA firms to allocate 9 percent of the total Fee Award rendered by the Court in the SST Litigation to the ERISA firms.  On or about August 30, 2016, Plaintiffs' Law Firms agreed amongst themselves to increase the percentage of the total Fee Award to be

allocated to the ERISA firms to 10 percent.  Mr. Chiplock believes that this was done at the

suggestion of Lawrence Sucharow at Labaton, to which counsel from the other Plaintiffs' Law

Firms (Michael Thornton, Daniel Chiplock, and Robert L. Lieff) agreed, and that the increase

was to recognize the role that certain counsel from the ERISA firms (in particular, Lynn Sarko

and Carl Kravitz) played in the mediation and in liaising with the DOL.

Daniel P. Chiplock, LCHB Partner, and Robert L. Lieff, LCHB Of Counsel, have

knowledge of the information provided in this Response.

**INTERROGATORY NO. 37:**

Explain what knowledge, if any, the Firm had about the existence of a cost-sharing

agreement(s) (formal or informal) between Labaton and Thornton to allocate and/or share costs

for certain of Labaton's Staff Attorneys assigned to work on the SST Litigation.

**RESPONSE TO INTERROGATORY NO. 37:**

LCHB incorporates the general objections stated above.  LCHB further objects to this

Interrogatory on the grounds that it is burdensome to the extent it seeks information LCHB has

provided in other Interrogatory responses, or in the production of documents in this proceeding.

Subject to and without waiving those objections, LCHB responds as follows:

The Firm was aware that beginning in or shortly after January 2015, both Labaton and

LCHB would be either hosting or sharing costs for certain Staff Attorneys with Thornton in

order to try to equitably share such costs for the SST Document Review with Thornton.  The

Firm was not aware of any similar arrangement between Labaton and Thornton prior to that date.

Daniel P. Chiplock, LCHB Partner, has knowledge of the information provided in this

Response.

1351938.2

**INTERROGATORY NO. 43:**

Describe what knowledge, if any, the Firm had in early 2015 about Michael Bradley's involvement in the SST Litigation, including any knowledge of Thornton's agreement to pay Mr. Bradley an agreed-upon rate of $500/hour.

**RESPONSE TO INTERROGATORY NO.43:**

LCHB incorporates the general objections stated above.  Subject to and without waiving those objections, LCHB responds as follows:

In early 2015, LCHB had no knowledge of Michael Bradley's involvement in the SST Litigation or Thornton's agreement to pay Mr. Bradley an agreed-upon rate of $500/hour.

Daniel P. Chiplock, LCHB Partner, has knowledge of the information provided in this Response.

**INTERROGATORY NO. 44:**

Identify and describe all communications relating to Michael Bradley's participation in the SST Litigation/SST Document Review from 2010 through November 2016, including relating to compensation or an hourly billing rate that Thornton would charge for Mr. Bradley's time spent on the matter.

**RESPONSE TO INTERROGATORY NO. 44:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that it is overbroad and burdensome to the extent it seeks information not in the possession of LCHB.  Subject to and without waiving those objections, LCHB responds as follows:

LCHB was not part of any communications at all relating to Mr. Bradley's participation in the SST Litigation/SST Document Review from 2010 through November 10, 2016.  After that

date, LCHB received several emails from attorneys at Labaton and Thornton inquiring whether it was possible to document through the Catalyst database or user data any time that Mr. Bradley spent on the Catalyst database.  Mr. Dugar of our Firm confirmed that this was not possible due to the Catalyst database having been taken offline more than a year prior (2015).  LCHB was not part of any communications at any time relating to compensation or an hourly billing rate that Thornton would charge for Mr. Bradley's time spent on the matter, and accordingly can identify no such communications.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.  Kirti Dugar, Litigation Support Manager, has knowledge of some of the information provided in this Response.

## INTERROGATORY NO. 47:

Explain how the Law Firm determines annual billing rates for all attorneys, including Staff Attorneys.  Please identify and describe all factors considered and/or resources relied upon in making these determinations.

## RESPONSE TO INTERROGATORY NO. 47:

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that it is vague and overbroad and that it provides no timeframe for the information sought.  LCHB further objects to this Interrogatory on the grounds that it is burdensome in that this information was or could have been elicited during the deposition of Steven E. Fineman in this proceeding.  Subject to and without waiving those objections, LCHB responds as follows:

LCHB determines annual billing rates for all Firm attorneys, including Staff Attorneys, in January-February of each calendar year.  In recent years, as reflected in documents produced by

LCHB in this proceeding, LCHB's billing rates have increased modestly on an annual basis. These annual adjustments are consistent with our understanding of the market rates for other plaintiff-side firms that handle complex and class litigation in the San Francisco and New York markets, where the vast majority of LCHB's attorneys, including Staff Attorneys, practice.

The process by which LCHB's annual billing rates are adjusted includes initial communication between the Firm's Managing Partner, Steven E. Fineman, and the Firm's Director of Operations, Joseph Dragicevic. During that initial communication (or communications), Mr. Fineman and Mr. Dragicevic discuss the changes in the relevant market places for legal services, the accessibility of publicly available information concerning the hourly rates of comparable plaintiff-side law firms and of "big law" firms in the New York and San Francisco markets. Such publicly available information may include publicly filed fee applications or published salary surveys. Based on the Firm's historical hourly rates, the collection of any new and instructive publicly available information about billable rates, and most importantly, based on what courts have said in the preceding year or years about the Firm's rates, Mr. Fineman makes a recommendation to the Firm's Executive Committee on adjustments to the Firm's billable rates for that calendar year. That recommendation is then typically discussed and approved at an Executive Committee meeting or as a result of subsequent e-mail communications or telephone conversations by and among members of the Executive Committee.

With respect to Staff Attorneys specifically, for a number of years prior to 2016, hourly rates were set to be consistent with the rates of "on-track" Firm attorneys with the same or comparable levels of experience. However, as our Staff Attorneys became increasingly experienced and senior, that approach began to result in rates the Firm felt were too high.

Therefore, beginning in 2016, all Firm Staff Attorneys who continued to work at the Firm billed

at a rate of $415 per hour (the equivalent of a fourth year "on-track" associate).  This rate was

determined based on the Firm's understanding of the market for Staff Attorneys performing

document review, coding and analysis, and the preparation of issue and witness memoranda in

the kind of large complex cases handled by LCHB.  The Firm determined this to be a fair and

appropriate rate, even though LCHB's Staff Attorneys, by and large, have many more than four

years of relevant experience (in the SST litigation, for example, five of the Staff Attorneys have

more than 15 years of experience, six have between 10 and 15 years of experience, and six have

between 5 and 10 years of experience).  The Firm determined to set the same rate for all Staff

Attorneys (including attorneys on LCHB's payroll and hired via agencies) beginning in 2016 as

the functions of the Staff Attorneys are primarily the same and do not appreciably vary year to

year (though the rates may gradually increase as the relevant market dictates).  Thus far, courts

that have considered our Staff Attorneys' rates have found them appropriate for purposes of

lodestar crosscheck or lodestar fee payment.

Steven E. Fineman, LCHB's Managing Partner, has knowledge of the information

provided in this Response.

## INTERROGATORY NO. 48:

Please explain how the process described above does or does not vary in determining

billing rates charged to hourly clients and why.

## RESPONSE TO INTERROGATORY NO. 48:

LCHB incorporates the general objections stated above.  LCHB further objects to this

Interrogatory on the grounds that it is vague and overbroad and that it provides no timeframe for

the information sought.  LCHB further objects to this Interrogatory on the grounds that it is

burdensome in that this information was or could have been elicited during the deposition of

Steven E. Fineman in this proceeding.  Subject to and without waiving those objections, LCHB

responds as follows:

Although LCHB is normally compensated for legal services on a contingent fee basis, the

Firm has occasionally represented plaintiffs on an hourly basis.  In those instances, the Firm has

charged its customary hourly rates (*see* Response to Interrogatory No. 47, above) unless

otherwise agreed to by LCHB and a specific client.  On occasion, the Firm has discounted its

hourly rates in negotiation with specific hourly clients.

Steven E. Fineman, LCHB's Managing Partner, has knowledge of the information

provided in this Response.

## INTERROGATORY NO. 53:

Explain how the Firm adjusts its hourly rates to reflect the geographic region in which a

matter is filed/pending.  If the Firm does not adjust its rates, explain why not.

## RESPONSE TO INTERROGATORY NO. 53:

LCHB incorporates the general objections stated above.  LCHB further objects to this

Interrogatory on the grounds that it is vague and overbroad and that it provides no timeframe for

the information sought.  Subject to and without waiving those objections, LCHB responds as

follows:

LCHB does not adjust its hourly rates to reflect the geographic region in which a matter

is filed/pending.  All of the Firms' "hourly" representations have taken place in California or

New York – the principal places of the firm's business.  In the vast majority of the Firm's class

action cases, fees are provided for on a contingent, percentage of the recovery basis (subject to

court approval), and therefore hourly rates are not an essential part of the representation.  In

those instances in which a court in a class action case performs a lodestar crosscheck against a

percentage of the recovery fee, or awards a fee based on lodestar, the Firm relies on its

customary rates (*see* Response to Interrogatory No. 47, above).  The Firm has never been advised

by a court that its rates are inappropriate or unacceptable because they were not expressly

predicated on the market rates in a jurisdiction other than California or New York.[1]

Steven E. Fineman, LCHB's Managing Partner, has knowledge of the information

provided in this Response.

**INTERROGATORY NO. 56:**

Describe in detail how the Firm prepared the Fee Petition and identify all individuals who

assisted in the preparation and the nature of their contribution(s).

**RESPONSE TO INTERROGATORY NO. 56:**

LCHB incorporates the general objections stated above.  LCHB further objects to this

Interrogatory on the grounds that it vague and overbroad, and seeks information that is not

relevant to the subject matter of this proceeding.  LCHB further objects to the Interrogatory to

the extent it seeks attorney work product.  Subject to and without waiving those objections,

LCHB responds as follows:

Daniel Chiplock prepared the individual Fee Petition for the Firm, which was submitted

as an exhibit to the Declaration of Lawrence A. Sucharow in Support of Plaintiffs' Assented-to

Motion for Final Approval of Proposed Class Settlement and Plan of Allocation and Final

Certification of Settlement Class and Lead Counsel's Motion for an Award of Attorneys' Fees,

---

[1]     A meaningful portion of the Firm's business involves representation of plaintiffs in
federal multidistrict litigation proceedings based in jurisdictions throughout the United States.  In
such proceedings, to the extent the Firm's lodestar is relevant, it is always submitted as it is
maintained in the normal course of business by the Firm.  The same is true for all other plaintiff-
side firms in MDL proceedings.

Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs ("Sucharow

Declaration").  Much of the language in the Firm's individual Fee Petition (particularly, the

language in paragraph 5) was provided via template by Labaton.  Staff in the Firm's Accounting

Department supplied lodestar and cost reports for the duration of the SST Litigation to Mr.

Chiplock.  While drafting and finalizing the Firm's Fee Petition, Mr. Chiplock corresponded

with Nicole Zeiss and David Goldsmith at Labaton, who provided edits and requests for

formatting changes in the Firm's Fee Petition to Mr. Chiplock.  Mr. Chiplock also supplied a

small handful of edits to the Sucharow Declaration on or about September 13, 2016, mostly

addressing the scope of the Staff Attorneys' work in the SST Litigation and specific questions

concerning the settlement in the BNY Mellon Action.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided

in this Response.

## INTERROGATORY NO. 57:

Describe in detail any review or steps taken to scrutinize or verify the time reported by

the Law Firm prior to submitting the Firm's Fee Petition/Lodestar calculation.  If the answer is

none, explain why.

## RESPONSE TO INTERROGATORY NO. 57:

LCHB incorporates the general objections stated above.  LCHB further objects to this

Interrogatory on the grounds that the phrases "scrutinize or verify" is vague.  Subject to and

without waiving those objections, LCHB responds as follows:

Prior to submitting the Firm's Fee Petition/Lodestar calculation, on at least two separate

occasions, Mr. Chiplock examined the Firm's timekeeping records with a particular eye toward

ensuring that no time exclusively devoted to unrelated or separate matters (such as time spent on

individual *qui tam* cases or the California Action) was included in the time submitted with the Firm's Fee Petition.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 58:**

Describe what, if any, steps the Law Firm took to review, verify, or compare the Fee Petitions and/or Lodestar calculations prepared by the Plaintiffs' Firms or ERISA firms with the Firm's Fee Petition prior to filing its Fee Petition with the Court. If no action was taken, explain why not.

**RESPONSE TO INTERROGATORY NO. 58:**

LCHB incorporates the general objections stated above. LCHB further objects to this Interrogatory on the grounds that the word "verify" is vague. Subject to and without waiving those objections, LCHB responds as follows:

The Firm was not privy to the individual Fee Petitions (whether in draft or final form) and/or complete Lodestar calculations prepared by the other Plaintiffs' Firms or ERISA firms prior to the filing of each Fee Petition with the Court, and thus was not able to review, verify, or compare them with the Firm's Fee Petition. To the best of the Firm's knowledge, only Labaton had access to all of the Plaintiffs' Law Firms Fee Petitions and complete Lodestar calculations before they were filed with the Court on September 15, 2016.

During the life of the SST Litigation, LCHB circulated its then-current lodestar reports to Labaton and/or Thornton on at least three occasions—on or about 12/9/13, 5/15/14, and 5/21/15—each time at the request of either Labaton or Thornton. LCHB reciprocally received Labaton's lodestar reports on at least two occasions—5/27/14 and 6/29/15. However, LCHB

1351938.2

never received a complete and/or current lodestar report from Thornton (with Staff Attorney names and hours identified) before the Fee Petitions were filed with the Court.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 59:**

Identify and describe all communication the Firm had with the Plaintiffs' Law Firms and/or ERISA counsel relating to the Firm's preparation of the Fee Petition, including but not limited to preparation of the Lodestar calculation, the inclusion of Staff Attorneys for whom Thornton had paid costs, calculation of a Lodestar multiplier, and reasonableness of attorneys' fees.

**RESPONSE TO INTERROGATORY NO. 59:**

LCHB incorporates the general objections stated above. LCHB further objects to this Interrogatory on the grounds that it is vague, overbroad and seeks information that is not relevant to the subject matter of this proceeding. LCHB further objects to this Interrogatory to the extent it seeks attorney work product. LCHB further objects to this Interrogatory on the grounds that it is burdensome to the extent responsive communications have been or will be produced in this proceeding. Subject to and without waiving those objections, LCHB responds as follows:

The Firm communicated principally with attorneys at Labaton relating to the Firm's preparation of its Fee Petition, which took place between August 31 and September 15, 2016, and these communications (principally between Mr. Chiplock of LCHB and Mr. Goldsmith and Ms. Zeiss at Labaton) related primarily to (a) the circulation of a template for the Fee Petition by Labaton, (b) making minor lodestar adjustments requested by Labaton (such as removing any timekeepers with fewer than 5 hours), (c) confirming the Firm's litigation fund contributions and

expert costs during the SST Litigation, (d) the inclusion of Robert L. Lieff's costs and lodestar in the Firm's Fee Petition, (e) presenting time and cost information in a uniform format, and (f) one email received by LCHB late in the evening on 9/14/16 (the evening before the Fee Petitions were filed) in which Labaton provided the total lodestar number (and resulting multiplier when compared to the requested 25% fee) for all Plaintiffs' Firms and ERISA firms.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 60:**

Identify all individuals at the Firm who reviewed, assisted or contributed to the preparation and submission of Thornton's Fee Petition and, if appropriate, describe the nature of their contributions.

**RESPONSE TO INTERROGATORY NO. 60:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that it lacks foundation.  LCHB further objects to this Interrogatory that it is burdensome to the extent it seeks information not in the possession of LCHB.  Subject to and without waiving those objections, LCHB responds as follows:

No individuals at the Firm reviewed, assisted or contributed to the preparation and submission of Thornton's Fee Petition.

Daniel P. Chiplock, LCHB Partner, has knowledge of the information provided in this Response.

**INTERROGATORY NO. 62:**

Identify all billing entries, costs and/or expenses incurred by the Firm during the SST Litigation that the Firm did <u>not</u> include in its Fee Petition/Lodestar calculation and the reasons therefor.

**RESPONSE TO INTERROGATORY NO. 62:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that it seeks information that is not relevant to the subject matter of this proceeding.  Subject to and without waiving those objections, LCHB responds as follows:

Time entries for any personnel who worked minimal (fewer than 5) hours in the SST Litigation were not included in the Firm's Fee Petition/Lodestar calculation.  This is a fairly routine modification to lodestar reports in complex class cases such as this.  The deleted attorney time and lodestar for the Firm included the following:  0.5 hours by Robert J. Nelson totaling $437.50, 1.6 hours by Kathryn E. Barnett totaling $1,200.00, 0.7 hours by Rachel J. Geman totaling $490.00, 0.1 hours by Roger Heller totaling $62.50, 0.8 hours by Sharon E. Lee totaling $480.00, 3.3 hours by Nancy Chung totaling $1,617.00, 2 hours by Pamela Owens totaling $830.00, and 2.8 hours by Bruce W. Leppla totaling $1,918.00.  The deleted staff-level time and lodestar entries (predominantly for paralegals and research associates) included a combined 19.8 hours by 11 timekeepers, totaling $6,094.50.

The Firm also did not include any time entries for time expended preparing the Firm's Fee Petition/Lodestar calculation, for the final approval hearing on November 2, 2016, or on time otherwise expended on settlement issues between August 30, 2016 and November 8, 2016. This time and lodestar totaled 43.7 hours (37 hours by Daniel Chiplock, 2.8 hours by Robert L.

Lieff, 3.8 hours by Michael J. Miarmi, and 0.1 hours by Paralegal Alexander Zane), or $32,011.00 (at current rates).

With respect to costs and expenses, any unreimbursed costs incurred by the Firm in connection with the SST Litigation are minimal.  In responding to this Interrogatory, the Firm is not including any time or expense associated with the Special Master's inquiry.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

## INTERROGATORY NO. 63:

Explain the significance of the statement made in Paragraph 5 to the *Declaration of Daniel P. Chiplock on Behalf of Lieff Cabraser Heimann & Bernstein, LLP In Support of Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Expenses* (Docket #104-17), affirming that the hourly rates included in Exhibit A to the Declaration are the Firm's "regular rates charged for their services, which have been accepted in other complex class actions." Please describe any other instances in which the Firm has submitted a Fee Petition with the same or similar language.

## RESPONSE TO INTERROGATORY NO. 63:

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that the word "significance" and the phrase "…or similar language" are vague and overbroad.  LCHB further objects to this Interrogatory on the grounds that it is vague and overbroad and seeks information not relevant to the subject matter this proceeding in that no timeframe is placed on the request for a description of fee applications in other LCHB cases.  LCHB further objects that it would be unduly burdensome to collect and review every Firm fee petition, without regard to a specific timeframe, to determine instances in which the

Firm submitted a fee petition with "similar language" to that used in the *Declaration of Daniel P. Chiplock* in the SST litigation.  Subject to and without waiving those objections, LCHB responds as follows:

The language quoted in this Interrogatory was intended to signify that the rates reflected in the Firm's Fee Petition are the Firm's regular rates which have been routinely accepted in other complex class actions for purposes of a lodestar cross-check.  LCHB has also charged the same or comparable rates to paying clients of the Firm in non-contingent fee cases.  The Firm submitted a Fee Petition in the BNY Mellon Action with language that conveyed the same information, and has done the same in fee petitions in other complex class actions.

Daniel P. Chiplock, LCHB Partner, has knowledge of the information provided in this Response as it relates to his Declaration in the SST litigation.  Steven E. Fineman, LCHB's Managing Partner, has knowledge of the information provided in this Response regarding "other instances" in which the firm has submitted a fee petition with "the same or similar language" to that used in the *Declaration of Daniel P. Chiplock* in the SST litigation.

## INTERROGATORY NO. 64:

Do you contend that the rates listed in the Firm's Fee Petition represent the prevailing rates in the community for similar services performed by lawyers of reasonably comparable skill, experience and reputation for each of the respective tasks performed? Why or why not?

## RESPONSE TO INTERROGATORY NO. 64:

LCHB incorporates the general objections stated above. Subject to and without waiving those objections, LCHB responds as follows:

For the reasons stated in Response to Interrogatory No. 47, above, LCHB answers this Interrogatory in the affirmative.  Most fee awards in the Firm's class action cases have been

1351938.2

awarded on a percentage of the recovery basis.  In recent years, some courts have conducted a

"lodestar cross-check" to determine that the percentage of the recovery award is not excessive.

And, in rare cases, courts have determined our class action fees on a lodestar basis.  In both the

cross-check and lodestar fee award contexts, LCHB's hourly rates, including those of our Staff

Attorneys, are routinely included and approved in class action fee awards.  For example:

- *In re Bank of New York Mellon Corp. Forex Transactions Litigation*, 12-md-2335
  LAK (S.D.N.Y.) – Over 28,000 hours of Staff Attorney time, involving many of
  the same Staff Attorneys at issue here and at roughly the same hourly rates
  applied in the SST Litigation, were included as part of the lodestar cross-check
  conducted by Judge Kaplan in approving class counsel's requested attorneys'
  fees.  At the final fairness and attorney fee hearing, Judge Kaplan of the Southern
  District of New York said, in part:  "This was an outrageous wrong committed by
  the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit
  for taking it on, for running the risk, for financing it and doing a great job.  I
  accept the lodestar.  I accept as fair, reasonable and accurate everything that went
  into it."

- *Allagas, et al. v. BP Solar International, Inc., et al.*, 3:14-cv-00560-SI (N.D. Ca.)
  – In 2016, Judge Illston of the Northern District of California approved a
  percentage of the recovery fee for LCHB and co-class counsel but also conducted
  a lodestar cross-check. Judge Illston concluded that the Firm's "hourly rates, used
  to calculate the lodestar here, are in line with prevailing rates in this District and
  have recently been approved by federal and state courts."  Judge Illston's lodestar

cross-check included two LCHB Staff Attorneys billed at $415 per hour, the same as most of the Staff Attorneys in the SST Litigation.

- *In re High Tech Employee Antitrust Litigation*, No. 11-cv-02509-LHK (N.D. Ca.) – In this complex antitrust class action in 2015, Judge Koh of the Northern District of California awarded LCHB and its co-lead counsel attorneys' fees based on the lodestar methodology.  Judge Koh found:

> Having reviewed the billing rates for the attorneys, paralegals, litigation support staff at each of the firms representing Plaintiffs in this case [including co-lead counsel LCHB], the Court finds these rates are reasonable in light of prevailing market rates in this district and that counsel for Plaintiffs have submitted adequate documentation justifying those rates.

Judge Koh further found in *High Tech* that the "billing rates submitted vary appropriately based on experience," and found that the "billing rates for non-partner attorneys, including senior counsel, counsel, senior associates, associates and staff attorneys, range from about $310 to $800, with most under $500." (Emphasis added.).  LCHB's lodestar submission included a number of Staff Attorneys whose hourly rates were consistent with the rates submitted in the SST Litigation a year later.

- *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 3:07-md-1827 SI (N.D. Ca.) – In 2011, Judge Illston approved a percentage of the fee recovery for LCHB and its co-lead counsel "and confirmed" the fee by a lodestar cross-check. Included in LCHB's lodestar submission was the time of several Staff Attorneys whose rates ranged from $385 to $475 per hour in 2011 when the fee submission was made.

Steven E. Fineman, LCHB's Managing Partner, has knowledge of the information provided in this Response.

**INTERROGATORY NO. 66:**

Describe when and how the Law Firm first learned about the Boston Globe's inquiry into the Fee Award, and underlying billing practices employed by the Firm and other counsel in the SST Litigation, that preceded the publication of the December 17, 2016 Article.

**RESPONSE TO INTERROGATORY NO. 66:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that it lacks foundation in that the firm is not aware that the Boston Globe is engaged in an inquiry into the "underlying billing practices employed by the Firm." LCHB further objects to this Interrogatory on the grounds that the suggestion in the Interrogatory that the Boston Globe is inquiring into the "underlying billing practices employed by the Firm" is argumentative.  LCHB further objects to this Interrogatory on the ground that it seeks information that is not relevant to the subject matter of this proceeding.  Subject to and without waiving those objections, LCHB responds as follows:

The Firm first learned about the Boston Globe's inquiry into the Fee Award by way of a telephone call from David Goldsmith at Labaton to Daniel Chiplock of LCHB on November 8, 2016.  The Boston Globe has not, to the Firm's knowledge, questioned LCHB's "billing practices," and notably omitted to report (as disclosed at the March 7, 2017 hearing before Judge Wolf, at which the Boston Globe was present) that LCHB has charged paying clients regular market rates that are the same or comparable to those reported in LCHB's Fee Petition.  The Firm has never been contacted by the Boston Globe in this matter, either before the December 17, 2016 Article or afterwards.

1351938.2

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 67:**

Describe when and how the Law Firm first identified duplicative billing entries reflected in the Firm's Fee Petition and describe all actions taken by the Firm to review, confirm, and/or correct those errors.

**RESPONSE TO INTERROGATORY NO. 67:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that the phrase "duplicative billing entries" lacks foundation and is argumentative in that LCHB did not "bill" any client in this case.  LCHB submits the proper inquiry should be when and how LCHB first identified duplicative "time" entries reflected in the *Declaration of Daniel P. Chiplock.*  Subject to and without waiving those objections, LCHB responds as follows:

The Firm first identified duplicative time entries reflected in the Firm's Fee Petition on November 9, 2016.  Mr. Chiplock identified the duplicative time entries (a) by re-tracing prior email correspondence between and among Firm personnel and personnel from the other Plaintiffs' Law Firms during the early to mid-2015 timeframe, (b) through confirmatory emails from Mr. Diamand, the Firm's Accounting Department, and counsel at Thornton, (c) by re-reviewing the detailed lodestar reports for the Staff Attorneys whom LCHB either shared with or hosted for Thornton, and (d) reviewing Thornton's Fee Petition.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 68:**

Describe in detail how the Law Firm participated in the drafting of the November 10, 2016 Letter, including the full names of all individuals who contributed to the Letter, the nature of any internal review by the Firm, and all individuals outside the firm who reviewed and/or contributed to the Letter and the nature of their contribution(s).

**RESPONSE TO INTERROGATORY NO. 68:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that the "how" and phrase "internal review" are vague.  LCHB further objects to this Interrogatory on the grounds that the requests for information concerning individuals "outside the firm who reviewed and/or contributed to the Letter" lacks foundation. Subject to and without waiving those objections, LCHB responds as follows:

Mr. Chiplock reviewed and contributed edits to the November 10, 2016 Letter during its drafting.  Robert L. Lieff, Of Counsel to the Firm, also reviewed and contributed some edits to the November 10, 2016 Letter.  A draft of the November 10, 2016 Letter also was circulated to Steven E. Fineman, the Firm's Managing Partner, and to the Firm's Executive Committee prior to its submission to the Court.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.  Richard M. Heimann, LCHB Partner, Steven E. Fineman, LCHB Managing Partner, and Robert L. Lieff, LCHB Of Counsel, also have some knowledge of some of the information provided in this Response.

**INTERROGATORY NO. 69:**

Identify and describe all documents relied upon by the Law Firm in the drafting of the November 10, 2016 Letter.

1351938.2

**RESPONSE TO INTERROGATORY NO. 69:**

LCHB incorporates the general objections stated above.  Subject to and without waiving those objections, LCHB responds as follows:

In reviewing and contributing edits to the November 10, 2016 Letter, the Firm relied upon the same documents identified in response to Interrogatory No. 67 above.

Daniel P. Chiplock, LCHB Partner, has knowledge of the information provided in this Response.

**INTERROGATORY NO. 72:**

Identify, in detail, any additional errors in your any communication with the Court or with the Special Master, since filing of the Fee Petition(s) and explain each step or action taken to correct each error, including all documents or information consulted or relied upon in making the correction(s).

**RESPONSE TO INTERROGATORY NO. 72:**

LCHB incorporates the general objections stated above.  LCHB further objects to this Interrogatory on the grounds that the phrase "additional" errors is vague.  LCHB understands the question to be whether we have identified errors in the Fee Petition, specifically the *Declaration of Daniel P. Chiplock*, in addition to or other than those described in the November 10, 2016 Letter.   Subject to and without waiving those objections, LCHB responds as follows:

Since filing the corrective letter on November 10, 2016, the Firm has identified the inadvertent and erroneous inclusion in the firm's Lodestar total for the SST Litigation of 4 hours on 5/11/14 by Michael J. Miarmi, LCHB Partner, for an unrelated matter with a similar internal LCHB timekeeping number.  We believe this time was included in the firm's Lodestar total for the SST Litigation due to keystroke error, and it has since been moved over to the appropriate

matter.  This error was disclosed in a communication to Counsel for the Special Master on March 23, 2017, and corrected at that time.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 73:**

Identify and explain any mistakes you have identified in the Fee Petition, Motion for Attorneys' Fees, and/or Fee Award, not described above.

**RESPONSE TO INTERROGATORY NO. 73:**

LCHB incorporates the general objections stated above.  Subject to and without waiving those objections, LCHB responds that it has not identified any other mistakes in its Fee Petition or the Motion for Attorney's Fees not described above or in the November 10, 2017 Letter.  The Firm does not believe there was a mistake in the Fee Award.

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information provided in this Response.

**INTERROGATORY NO. 74:**

Identify any other individuals, not listed above, who have knowledge of the Interrogatories and/or the SST Litigation and explain the general nature of such knowledge.

**RESPONSE TO INTERROGATORY NO. 74:**

LCHB incorporates the general objections stated above.  Subject to and without waiving those objections, LCHB responds that there are no individuals at the Firm with knowledge material to the Firm's Responses to the Interrogatories that are not otherwise mentioned or identified in these Responses (including those Responses that were served previously or those to be served on July 10).  As for other individuals at the Firm with knowledge of the SST Litigation

generally, the firm refers to the Firm's Fee Petition and the timekeepers listed therein as having

knowledge specific to their assignments or involvement in the SST Litigation, as reflected in

their detailed timekeeping entries (which have been produced).

Daniel P. Chiplock, LCHB Partner, has the most knowledge of the information

provided in this Response.


Dated: June 9, 2017

Respectfully submitted,

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
415-956-1000

By: _____
    Richard M. Heimann
    Attorney for Lieff Cabraser Heimann &
    Bernstein, LLP

1351938.2