# EX. 182

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br> Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 12-cv-11698 MLW |

## SPECIAL MASTER'S ORDER REGARDING THE LAW FIRMS' OBJECTION TO RETENTION OF JOHN W. TOOTHMAN AS ADVISOR TO COUNSEL TO THE SPECIAL MASTER

# I. INTRODUCTION

This matter is before the Special Master on Labaton Sucharow LLP's, Lieff Cabraser Heimann & Bernstein, LLP's, and Thornton Law Firm LLP's (collectively the "Law Firms") Objection to the retention of the firm of TFL Consulting and John W. Toothman ("Mr. Toothman") by the Special Master's counsel.

The Law Firms received more than $75,000,000 in attorneys' fees and expenses awarded in connection with their representation of Plaintiffs in in the *Arkansas Teacher Retirement System, et. al. v. State Street Bank and Trust Co.*, No. 12-cv-10230-MLW ("State Street Litigation") class action matter, which concluded with a settlement of $300,000,000. Relying upon Fed. R. Evid. 706, the Law Firms object to the retention of Mr. Toothman by counsel for the Special Master and move to strike Mr. Toothman from participating in the Special Master's investigation. The basis of their objection is, the Law Firms argue, that Mr. Toothman's historical declarations in other cases concerning fee petitions evince a predisposition to reach a view adverse to the Law Firms on the award of attorneys' fees, one of the primary topics the Special Master is charged with investigating in this matter.

On February 6, 2017, Senior United States District Court Judge Mark Wolf issued a Memorandum and Order ("February 6, 2017 Order") proposing the appointment of the Special Master to investigate and submit a Report and Recommendation addressing concerns that had very recently emerged through media reports regarding the more than $75,000,000 award to the Law Firms as part of the settlement entered in the State Street Litigation. The Law Firms, filing individual pleadings with the Court in response to the February 6, 2017 Order, each consented to the appointment of the Special Master as well as to the Special Master's authority, as set forth in the Court's Order. (*See* Docket Nos. 128, 129, 131.) In their responses and at a March 7, 2017

hearing on the appointment of a Special Master, the Law Firms—and all of the other plaintiffs'
law firms in the case—each consented both to the appointment of a Special Master generally and
to the appointment of the undersigned Special Master in particular. The Special Master was
appointed by the Court on March 8, 2017 pursuant to the Court's Order of Appointment ("Order
of Appointment").

On March 9, 2017, the Special Master appointed William F. Sinnott, Esq., of Donoghue,
Barrett & Singal, P.C., as Counsel to the Special Master to assist the Special Master in
discharging his responsibilities under the Order of Appointment. The Special Master informed
counsel for the Law Firms of this appointment by email dated that same day.

In that same March 9 email, the Special Master notified counsel for the Law Firms that
he was actively considering obtaining further technical support from a forensic accounting firm
and/or an expert on legal billing practices whom he would appoint "solely in [his] discretion," as
part of his investigation. The Special Master provided counsel with the names and affiliations of
four individuals whom he was considering, including Mr. Toothman. The Special Master
received no objections from the Law Firms to any of the named individuals.

On March 23, 2017, during a conversation with Attorney Lukey, who was participating
on behalf of the Law Firms, the Special Master confirmed that his Counsel had recently retained
Mr. Toothman to advise them on legal billing practices and other issues arising under his Order
of Appointment. In a March 24, 2017 email, and as reiterated in a subsequent conversation,
Attorney Lukey advised the Special Master and the Special Master's counsel that the Law Firms'
reaction to the Toothman retention was "immediate, angry, and distraught." In that same email,
Attorney Lukey indicated that "it would be difficult to imagine an 'expert' who would enter the
fray with greater bias against plaintiffs' commercial class action law firms." On March 28, 2017,

3

the Law Firms filed a formal Objection to the retention of Mr. Toothman, challenging his appointment as a court-appointed expert under Fed. R. Evid. 706.

For the reasons that follow, the Special Master finds no basis to reconsider or withdraw Mr. Toothman's retention, or otherwise disqualify him from serving as technical advisor to the Special Master in this matter, and dismisses the Law Firms' Objection.

## II.  ANALYSIS

Procedurally, the Law Firms ground their Objection on the premise that the only avenue for retaining a third-party with specialized knowledge to assist in a court-appointed Special Master investigation is through the procedural framework of Fed. R. Evid. 706. This view is incorrect. Fed. R. Civ. P. 53, as cited in the Order of Appointment, grants considerable discretion to a Special Master to "take all necessary measures to perform the assigned duties fairly and efficiently." Fed. R. Civ. P. 53(c)(1)(B). Here, the Special Master has exercised his discretion to retain legal counsel. That counsel has retained a third-party with expertise in legal billing practices, the central topic at issue in the pending investigation.

Significantly, the Law Firms do not question Mr. Toothman's experience or expertise in the area. Rather, they allege he is biased and not objective, and therefore, cannot serve as an independent court-appointed expert under Fed. R. Evid. 706. That absence of criticism about Mr. Toothman's qualifications is likely because Mr. Toothman is objectively qualified to provide guidance on legal billing practices. After receiving a Juris Doctor *cum laude* from Harvard Law School in 1981, Mr. Toothman spent twelve years as a trial attorney handling complex commercial litigation in the both the private and public sectors, including as a trial lawyer with the Department of Justice. During that time, Mr. Toothman performed extensive work representing plaintiffs in contingent fee cases and participated in over fifty civil trials, as well as

4

appeals in both the federal and state courts. Throughout his career, Mr. Toothman has also served as a court-appointed receiver, including in one instance on behalf of the U.S. Small Business Administration, and as counsel to bankrupt companies during bankruptcy proceedings. Mr. Toothman has consulted on the topic of legal fees with major corporations and various federal entities and agencies, including the General Accountability Office, the U.S. Department of Justice, and the U.S. Departments of Energy, Transportation, and Labor, and has served a six-year term as an Arbitrator for the Virginia State Bar's Fee Dispute Resolution Program. In his work as a consultant, Mr. Toothman has testified in federal and state courts across the country on more than fifty occasions, both in support of and against the award of fees, and has published numerous articles and co-authored a book, *Legal Fees: Law and Management*, focusing on legal billing practices. He has also served as an arbitrator of legal fee disputes.

Consistent with the broad discretion afforded to the Special Master under Fed. R. Civ. P. 53, the Order of Appointment specifically allows the Special Master to "retain any firm, organization, or individual he deems necessary to assist him in the performance of his duties." 3/8/17 Order of Appointment at 2. This wide degree of latitude is especially necessary in this case, where the Court has appointed the Special Master to conduct a thorough and fact-intensive investigation into the billing practices of the Law Firms in connection with a complex, multi-year class action case. More specifically, the Court, through its Order of Appointment, has mandated the Special Master to investigate and prepare a Report and Recommendation "concerning *all* issues relating to attorneys' fees, expenses, and services awards previously awarded in this case" (emphasis added). *Id.* The Court, moreover, did not in any way limit this review to a straightforward mathematical calculation of hourly fees. Rather, under the Order of Appointment, the Special Master must also opine as to the accuracy and reliability of the

representations made by the Law Firms with respect to a number of legally unsettled billing issues, including but not limited to the reasonableness of fees incurred by temporary or "staff" attorneys, the reasonableness of related expenses, and whether reductions should be made. *See id.*, 2-3. To address these nuanced—and, in some respects, novel—billing issues, the Special Master has discretion to obtain advice from a qualified individual with specialized knowledge such as Mr. Toothman to assist and guide his inquiry and investigation.

Mr. Toothman's appointment in this case falls squarely within the authority delegated to the Special Master by the Court in its March 8, 2017 Order of Appointment as well as within the Special Master's discretion under Fed. R. Civ. P. 53. As conceded by the Law Firms in their Objection, the Order of Appointment makes no reference to the appointment of an expert under Fed. R. Evid. 706. Rather, the Order authorizes the Special Master to retain *any* person who has specialized knowledge, including experts recognized in their field, who would inform the investigation.

Perhaps the Law Firms' Objection to Mr. Toothman arises, at least in part, out of some confusion as to what Mr. Toothman's role is in this case. For the sake of clarity at this juncture, it is important to delineate precisely what Mr. Toothman's role will be going forward. Mr. Toothman will be generally responsible for providing consulting services to assist the Special Master and his counsel in fulfilling the duties set forth in both the February 6, 2017 Order and the March 8, 2017 Order of Appointment. The Special Master expects these services to include, among other things, assisting in the preparation and review of discovery and assisting in the investigation and analysis of billing and related data. Mr. Toothman will further assist in the Special Master investigation by guiding the Special Master's inquiry into other relevant topics, including but not limited to Lodestar calculations in contingent fee cases, determination of

regional billing rates, and best practices for recording and absorbing litigation-based expenses. Finally, Mr. Toothman will also serve as a resource to the Special Master and his counsel throughout their drafting and writing of the Report and Recommendations.

In juxtaposition to the duties described above, the Law Firms' argument appears to be two-fold. First, that by appointing Mr. Toothman—a recognized expert in the field of legal billing practices—the Special Master improperly bypassed the procedural requirements of Fed. R. Evid. 706; and second, that the Special Master must strike Mr. Toothman's appointment because he is not an independent or neutral expert.

Both arguments—which appear to be an attempt to bootstrap Mr. Toothman's retention by the Special Master's counsel under the Special Master's Order of Appointment into the paradigm created by Fed. R. Evid. 706— are without merit. First, Fed. R. Evid. 706, by its terms, expressly governs only the appointment of court-appointed "expert witnesses." As explained above, neither the Special Master nor his counsel has retained Mr. Toothman as an "expert witness" under Fed R. Evid. 706. Furthermore, neither the March 8, 2017 Order nor Fed. R. Evid. 53 limit the Special Master to availing himself of only that single avenue for seeking third-party assistance. To the contrary, as noted, Mr. Toothman has not been retained to render a formal expert opinion or to make factual findings in this case. Rather, under the Order, the responsibility for rendering such factual and legal opinions remains solely that of the Special Master, as informed by his counsel. *See* Fed. R. Civ. P. 53(c)(1)(B). Mr. Toothman's role, as noted, is confined to assisting the Special Master and his counsel in understanding the technical terms, concepts, and contexts that underlie legal billing practices in the area of commercial class actions based upon his specialized knowledge in this area, and how these relate to the specific billing practices in this case.

Federal courts, beginning with the First Circuit, have recognized the importance of technical advisors in assisting the Court where, as here, it is faced with "complex issues well beyond the regular questions of fact and law with which judges routinely grapple." *Reilly v. U.S.*, 863 F.2d 149, 156-157 (1st Cir. 1988). See also *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 590–91 (9th Cir. 2000) (Court's decision not to require technical expert to prepare a report or be subject to cross-examination was not error where technical advisor did not serve as a court-appointed expert witness under Fed. R. Evid. 706); *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1377 (Fed. Cir. 2002) (approving the use of technical advisors for understanding complex scientific and technical factual issues); *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, No. 2:16 MD 1203, 2007 WL 2579620, at *2, n.11 (E.D. Pa. Aug. 27, 2007) (approving the use of a technical expert to reconcile conflicting expert opinions and to help educate the judge on the technical theories at issue); *In re Joint E. & S. Districts Asbestos Litig.*, 830 F. Supp. 686, 694 (E.D.N.Y. 1993) (distinguishing the roles of court-appointed experts under Fed. R. Evid. 706 from that of a technical advisor).

Technical advisors of this nature are particularly helpful where, as here, the record evidence before the Court, as it now exists on the issue of attorneys' fees, is understandably not the product of the adversary testing process, but is instead based solely on the submission of one side's application for fees—the Law Firms'. Moreover, the Court and the Special Master recognize that that there is no single, accepted method for calculating the fees of hundreds of attorneys in a large contingency case such as this. For that reason, among others, the Court clearly expects the Special Master to fully understand the different theories put forth by the Law Firms, as well as to inquire into other possible methods. *See Reilly*, 863 F.2d at 157.

8

The Special Master is well within his discretion in obtaining assistance from Mr. Toothman, whose role is akin to that of a judicial technical expert retained to educate and guide the Special Master and his counsel in this area in their work under the Order of Appointment. *See, e.g., Sibley v. Sprint Nextel Corp.*, 298 F.R.D. 683, 684 (D. Kan. 2014) (Court authorized Special Master to enlist technical advisor to report to the Court on technical issues of commission reconciliation raised in the litigation); *In re: Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, No. 1203, 2016 WL 1381776, at *4 (E.D. Pa. Apr. 6, 2016) (Special Master had authority under Audit Rules to appoint a technical advisor to review claims made for payment from class fund).

Finally, there are no mechanisms for a party to disqualify a judicial technical expert. *See Trustees of Boston Univ. v. Everlight Elecs. Co.*, No. CIV. 12-11935-PBS, 2014 WL 345241, at *2 (D. Mass. Jan. 17, 2014). But even if there were a method to challenge Mr. Toothman's retention, the Law Firms cannot point to any evidence that Mr. Toothman is inherently biased or otherwise unqualified to render technical expertise in the area of commercial legal billing practices. In support of their claim of partisanship, the Law Firms rely exclusively on statements made by Mr. Toothman as part of several past representations in cases involving reviews of fee petitions. There is no dispute that Mr. Toothman has previously served as an expert on the issue of reasonableness of legal fees.[1] But rather than show partisanship, these cases more aptly

---

[1] The Special Master further recognizes that the concepts of "plaintiff" and "defendant" are not easily applied to challenges to fee-shifting or post-settlement award of attorney's fees. Thus, one cannot easily characterize Mr. Toothman's past representations as pro-plaintiff or pro-defendant. The more accurate way to delineate Mr. Toothman's prior representations is by whether he testified in support of, or against, a given fee award. To that end, the Special Master notes that Mr. Toothman has testified both in support of fees and against awarding fees, including testifying in support of fees in several public matters. *See, e.g., Lewis & Trattner v. Krikorian* (American Association of Arbitration); *Alcan Aluminum Corp. v. Prudential Assurance Co., et al.* (C.D. Cal.); *U.S. Fire v. Aetna* (E.D. Pa.).

In fact, the Special Master is confident that even if Mr. Toothman were appointed pursuant to Fed. R. Evid. 706, by virtue of his experience and expertise he would no doubt qualify to serve in that role.

demonstrate Mr. Toothman's extensive experience in reviewing complex fee cases.[2] Furthermore, the Court is not relying on Mr. Toothman to render the final legal opinion as to whether the fees awarded to the Law Firms were reasonable or not. As described above, Mr. Toothman's assignment is—based on his expertise— to educate and guide the Special Master and his counsel about the pertinent billing practices, theories, processes, and factors that bear on the ultimate calculation of attorneys' fees, a task that Mr. Toothman is eminently qualified to perform.

Although not required to, if Mr. Toothman does issue a report to the Special Master, it will be disclosed to the Law Firms and they will be given the opportunity to comment on it before the Special Master issues his Report and Recommendation.

### III.    CONCLUSION

For these reasons, Plaintiffs' Law Firms' Objection to the Appointment of Mr. Toothman is DENIED.

_____
Hon. Gerald E. Rosen (Ret.)
Special Master

---

[2] At least one of the cases cited by the Plaintiffs' Law Firms, *M.H. Fox et. al., v. Tyson Foods, Inc.,* No. 99-cv-1612 (M.D. Ala), involved a case where attorneys for the petitioning law firm recorded more than 24 hours by a single timekeeper for a single day. *See* Exhibit G, ¶ 9 (d). Mr. Toothman's opinion that the fees charged were "unreasonable," therefore, is hardly evidence of bias.