# EX. 189

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BANK OF NEW YORK MELLON CORP. FOREX TRANSACTIONS LITIGATION | No. 12-MD-2335 (LAK) (JLC) |
| THIS DOCUMENT RELATES TO: | |
| *Southeastern Pennsylvania Transportation Authority v. The Bank of New York Mellon Corporation, et al.* | No. 12-CV-3066 (LAK) (JLC) |
| *International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund v. The Bank of New York Mellon Corporation, et al.* | No. 12-CV-3067 (LAK) (JLC) |
| *Ohio Police & Fire Pension Fund, et al. v. The Bank of New York Mellon Corporation, et al.* | No. 12-CV-3470 (LAK) (JLC) |
| *Carver, et al. v. The Bank of New York Mellon, et al.* | No. 12-CV-9248 (LAK) (JLC) |
| *Fletcher v. The Bank of New York Mellon, et al.* | No. 14-CV-5496 (LAK) (JLC) |

## DECLARATION OF J. BRIAN MCTIGUE IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF MCTIGUE LAW LLP

I, J. Brian McTigue, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am a partner of the law firm, McTigue Law LLP.  I submit this declaration in support of Lead Settlement Counsel's motion for an award of attorneys' fees and reimbursement of expenses.  Unless otherwise stated herein, I have personal knowledge of the facts set forth herein and, if called upon to testify, could and would testify competently thereto.

2.     McTigue Law LLP is located in Washington, D.C. and focuses its practice on ERISA retirement plan class actions.  The Firm has litigated class actions in the Southern District

of New York and in other courts around the country. A copy of the Firm's resume is attached hereto as Exhibit A.

3. I personally rendered legal services and was responsible for coordinating and supervising the activity carried out by attorneys and professional staff at McTigue Law LLP in this Action. In its capacity as lead ERISA Plaintiffs' Counsel in *Carver v. The Bank of New York Mellon*, 12-cv-09248-LAK and *Fletcher v. The Bank of New York Mellon*, 12-cv-05496-LAK, and as co-Lead Settlement Class Counsel, McTigue Law LLP contributed to this Action and performed valuable work on behalf of and for the benefit of the Class.

### McTigue Law's Efforts in This Litigation

4. The overall contributions of ERISA counsel to the litigation are summarized in the concurrently filed "Declaration of J. Brian McTigue on Behalf of ERISA Counsel and in Support of Motion for Attorneys 'Fees and Reimbursement of Expenses." Below is a summary of the work McTigue Law LLP performed and/or participated in.

5. In addition to serving as one of the Lead Settlement Class Counsel in this litigation, McTigue Law LLP also serves as co-lead ERISA counsel. The work performed by McTigue Law LLP includes the initial representation conferences with, and drafting attorney-client agreements for, all the named plaintiffs in the *Carver* and *Fletcher* actions, who collectively represent four large employee benefit plans with more than 490,000 participants and beneficiaries. In addition, the firm was one of the principal drafters of, and researched and developed the ERISA legal theories and facts employed in, the complaints in each of those actions.

6. After the actions were filed, the firm zealously litigated its clients' claims. It drafted interrogatories and document requests seeking additional information to support its

clients ERISA claims, and drafted responses to Defendants' interrogatories and document requests. After Defendants attacked the standing of some of the named plaintiffs in their motion to dismiss, the firm initiated and participated in a special jurisdictional discovery period, including drafting document requests, reviewing documents, and deposing two of Defendants' employees. The firm then drafted amended pleadings incorporating the results of jurisdictional discovery. In addition, in both the *Carver* and *Fletcher* cases it drafted opposition motions to Defendants' subsequently filed motions to dismiss, as well as successfully opposing "Defendants' Emergency Motion for Pretrial Order Governing Jurisdictional Discovery and Briefing." The firm also devoted significant amounts of time and resources to reviewing, and locating relevant ERISA evidence within, more than 25 million pages of documents.

7. McTigue Law LLP prepared for and took part in eleven merits depositions. Firm representatives also took part in the mediation process and personally attended the mediation sessions.

8. McTigue Law LLP conferred with an expert consultant who assisted in developing a strategy for making loss estimates for ERISA class members. McTigue Law LLP also participated with co-counsel in reviewing and filing two expert reports on ERISA issues, and reviewing and analyzing the other expert reports filed by defendants and other plaintiffs in this case.

9. In its role as co-Lead Settlement Counsel, the firm has reviewed and revised all settlement documents, filings, and agreements, including all agreements with settlement service providers such as settlement administrators and escrow agents. It has also participated in numerous telephone conferences with co-Lead Settlement Counsel and with the escrow agents.

Case 1:21-cv-02230-MKV   Document 401-2   Filed 07/23/18   Page 5 of 17
Case 1:11-cv-02350-AKH   Document 162-5   Filed 07/23/15   Page 5 of 17

**Billing and Lodestar Details**

10. Based on my work performed in this Action as well as my receipt and review of the billing records reflecting work performed by attorneys and staff at McTigue Law LLP in this Action ("Timekeepers") as reported by the Timekeepers, I directed the preparation of the chart set forth as Exhibit B hereto. This chart (i) identifies the names and positions (*i.e.*, titles) of the firm's Timekeepers who undertook litigation activities in connection with the Action and who expended 10 hours or more on the Action; (ii) provides the total number of hours each Timekeeper expended in connection with work on the Action, from the time when potential claims were being investigated through June 30, 2015; (iii) provides each Timekeeper's current hourly rate, as noted in the chart; and (iv) provides the total billable amount, in dollars, of the work by each Timekeeper and the entire firm.[1] For Timekeepers who are no longer employed by the Firm, the hourly rate used is the billing rate in his or her final year of employment by the Firm. The Firm's billing records, which are regularly prepared from contemporaneous daily time records, are available at the request of the Court. Time expended in preparing any papers for this motion for fees and reimbursement of expenses has not been included in this request. Additionally, time expended in preparing any papers for prior motions for reimbursement of expenses has not been included in this request.

11. The hourly rates charged by the Timekeepers are the Firm's regular rates for contingent cases and those generally charged to clients for their services in non-contingent/hourly matters.[2] Based on my knowledge and experience, these rates are also within the range of rates normally and customarily charged in their respective cities by attorneys and

---

[1] The information concerning each Timekeeper's hours and hourly rate is not based on my personal knowledge, but on the information reported by each such Timekeeper or the files and records of McTigue Law LLP, as well as my familiarity with the work undertaken by McTigue Law LLP in the Action.

[2] On occasion and for a specific type of representation, the Firm may offer a discount on its hourly rates to longstanding clients.

paraprofessionals of similar qualifications and experience in cases similar to this litigation, and have been approved in connection with other class action settlements.

12. The total number of hours expended by McTigue Law LLP on this Action, from investigation through June 30, 2015, is 5,503.35. The total lodestar for the Firm is $2,784,375.73, consisting of $2,381,348.13 for attorney time and $403,027.60 for professional support staff time.

13. In my judgment, the number of hours expended and the services performed by the attorneys and staff at McTigue Law LLP were reasonable and expended for the benefit of the Settlement Class in this Action.

14. McTigue Law LLP's lodestar figures are based on the Firm's billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the Firm's billing rates.

15. As set forth in Exhibit C, McTigue Law LLP has incurred a total of $142,864.22 in unreimbursed expenses in connection with this Action from inception to August 1, 2015. In my judgment, these expenses were reasonable and expended for the benefit of the Settlement Class in this Action.

16. These expenses are reflected on the books and records of the Firm. It is the Firm's policy and practice to prepare such records from expense vouchers, check records, credit card records, and other source materials. Based on my oversight of McTigue Law's work in connection with this litigation and my review of these records, I believe them to constitute an accurate record of the expenses actually incurred by the Firm in connection with this litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

-- 5 --

Executed this 14th day of August, 2015 in Washington, DC.

_____
J. Brian McTigue

# Exhibit A

> **MCTIGUE LAW LLP**
> 4530 Wisconsin Ave, NW
> Suite 300
> Washington, DC 20016

**McTigue Law LLP** represents participants in traditional pension plans, 401(k) salary deferral plans, savings plans, and Employee Stock Ownership Plans (ESOPs). The firm confines itself to the litigation of complex class actions, the majority of which are brought under the federal Employee Retirement Income Security Act (ERISA). We represent and protect employees in pension plans when those plans have lost assets because the employer-fiduciaries, trustees and investment managers fail to meet their obligations under ERISA.

We are likely the first law firm, years before the Enron, WorldCom, and Global Crossing scandals, to recognize the need for lawyers focused on litigation to protect plan participants against the growing risks of imprudently-invested 401(k) plans. Participants in these plans directly bear the investment risks of plan investments.

The Firm's representative cases include the following in which the firm served as lead or co-lead class counsel and secured multimillion dollar awards for ERISA plans and their participants:

- *Figas v. Wells Fargo & Co.* (Wells Fargo ERISA Litig.), No. 08-04546 (D. Minn.). This litigation involved allegations of breaches of ERISA fiduciary duties and prohibited transactions where defendants invested retirement plan savings in proprietary mutual funds with high fees and poor performance. A $17.5 million award was recovered for the plan.

- *Ellen Stoody Broser v. Bank of America, et al.*, 08-cv-2705-JSW, This case involved allegations that Bank of America breached its fiduciary duties as trustee of thousands of small, family trusts by imprudently choosing to uniformly place trust assets in its own high-fee proprietary mutual funds.

- *Presley v. CHH, et al.*, 97-cv-04316 (SC) (N.D. Cal.) (bankrupt plan sponsor). CHH, was the Los Angeles holding company for the Broadway, Emporium, Capwells, and Weinstocks department stores, with more than 24,000 employees in its 401(k) plan. More than half of the plan's assets were invested in CHH stock when the chain filed for bankruptcy. Nearly $39 million was recovered for the plan from defendants.

- *Blyler v. Agee, et al.*, CV97-0332-(BLW) (D. Idaho) (bankrupt plan sponsor). This litigation involved pension plans with 8,000 employees sponsored by Morrison Knudsen Corporation which declared bankruptcy in 1996.

- *Koch v. Dwyer, et al.*, 98-cv-5519 (RPP) (S.D.N.Y.) (bankrupt plan sponsor). This litigation involved JWP, Inc., a S&P 500 company that declared bankruptcy. A $6.4 million settlement was reached in 2002 on behalf of JWP's pension plan.

| MCTIGUE LAW LLP |
|---|

- *In re CMS Energy ERISA Litig.*, 02-cv-72834 (GCS) (E.D. Mich.). This litigation, on behalf of more than 10,000 pension plan participants, involves a former Detroit based utility. A $28 million settlement was reached in this litigation.

- *In Re McKesson HBOC, Inc. ERISA Litig.*, C 00-20030 (RMW) (N.D. Cal.). Plan with 8,000 participants. $23 million settlement.

- *Sherrill v. Federal Mogul Corp. Ret. Programs Committee, et al.,* 04072949 (E.D. Mich.) (plan sponsor bankruptcy with asbestos liability). Plan with 12,000 participants. $12.75 million settlement.

Overall, the firm has prosecuted cases on behalf of hundreds of thousands of plan participants recovering more than $150 million. Many lawsuits involved allegations of fiduciary breaches with respect to a pension plan sponsored by a S&P 500 or similar company.

The firm currently litigates numerous other cases throughout the United States on behalf of thousands of other pension plan participants, in both public and private sector plans, who have lost retirement assets due to a trustee's or fiduciary's breach of fiduciary duty. These cases include the following ERISA actions:

- *Henriquez v. State Street Bank and Trust Company et al*, (DMA), Case No. 1:11-cv-12049-MLW: Alleging breaches of fiduciary duty related to defendants' pricing and execution of foreign exchange transactions for funds invested in by plan participants.

- *Leber v. CitiGroup*, 07-09329 (S.D.N.Y.): Alleging breaches of fiduciary duty where defendants invested retirement plan savings in proprietary mutual funds with high fees and poor performance.

- *Brown v. Suntrust Banks, Inc., et al.*, 14-029565 (N.D. Ga.): Alleging breaches of fiduciary duty where defendants invested retirement plan savings in proprietary mutual funds with high fees and poor performance.

The Defendants in these cases include fiduciaries and administrators of 401(k) Plans, corporate boards which appointed and failed to monitor the fiduciaries and administrators. The lawsuits allege a variety of federal pension law violations, including that fiduciaries of these pension plans failed to perform fiduciary duties to the funds and their pension plan members as required by federal law, participated in others breaches of fiduciary duty, and engaged in prohibited transactions, involving conflicts-of-interest, under federal pension law.

The events beginning in late 2001 and the first half of 2002, including the financial collapse and bankruptcy filings by ENRON, WorldCom, and Global Crossing confirmed the risks that participants in defined contribution pension plans are exposed to because of large portfolios of Company Stock. The nature of this risk to 401(k) plan participants was brought to

[2]

| MCTIGUE LAW LLP |
|---|

the attention of the United States Department of Labor in 1997 by Mr. McTigue when he was invited to testify before the Department's pension fund Advisory Council.

**PRINCIPAL ATTORNEYS**

*J. Brian McTigue*

Mr. McTigue founded McTigue Law LLP. Prior to private practice, Mr. McTigue was counsel to committees of the United States House of Representatives and Senate. His legislative work included investigations and legislation pertaining to federal pension law and pension fund investment.

As a Senate Legal Counsel for Special Projects, Mr. McTigue was responsible 1996 for initiating the first legislative proposal to reduce the percentage of sponsoring corporation stock permitted in the portfolios of 401(k) and similar defined contribution pension plans. The bill represented the first congressional recognition of problems with the typical pension plan of the baby boom generation. Although opposed by many employers and employer groups, several of the concepts embodied in the bill became law. Since, then, Mr. McTigue has assisted congressional offices with draft legislation which would give ERISA fiduciary breach claims greater protection when companies sponsoring plans file for bankruptcy.

Mr. McTigue's congressional investigation of Michael Milken, Drexel Burnham Lambert and the junk bond market was a basis for *FDIC v. Milken, et al.* brought by the Federal Deposit Insurance Corporation and settled for $1.3 billion. His congressional investigations of the funding of pension plans through annuities issued by the California-based Executive Life Insurance Company identified issues giving rise, when Executive Life later became insolvent several years later, to a plethora of private class actions and United States Department of Labor litigation alleging violations of federal pension law, the Labor Department's adoption of new fiduciary standards for pension plan termination annuities, and to the passage of the Pension Annuitants Protection Act.

Prior to his legislative work, Mr. McTigue was an investigative reporter and television news producer for ABC and NBC News. Before working in television he reported from Europe and Africa. His investigative reporting has been awarded Emmys and a George Polk Award.

Mr. McTigue is a graduate of Notre Dame and the Golden Gate University Law School, San Francisco, California. Mr. McTigue is a member of the District of Columbia Bar and the State Bar of California. He is also a member of the Bars of the United States District Courts for the District of Columbia, Northern District of California, and the Eastern District of Michigan.

Mr. McTigue is from Fort Dodge, Iowa.

| McTigue Law LLP |
|---|

*James A. Moore*

Mr. Moore is a senior litigation partner with nearly two decades of experience in class action cases in federal and state courts, including, in particular, ERISA retirement plan, health benefit, insurance, and consumer fraud cases. He is regularly quoted in news articles on cutting-edge ERISA litigation issues.

Mr. Moore has played a major role in securing multimillion dollar awards for 401(k) and pension plan participants in numerous cases, including *Figas v. Wells Fargo & Co.*, No. 08-04546 (D. Minn.); *Dickerson v. Feldman* (Solutia Corp. ERISA Litig.), No. 1:04-CIV-07935 (S.D.N.Y.); *In re RCN Corp. ERISA Litig.*, No. 04-5068 (D.N.J.); *Koch v. Dwyer* (EMCOR Corp. ERISA Litig.), No. 98CIV5519 (S.D.N.Y.); and *Blyler v. Agee* (Morrison Knudsen Corp. ERISA Litig.), No. 97-00332 (D. Idaho).

Mr. Moore is a 1994 graduate of the University of Michigan Law School, where he served as an Associate and Article editor for the *Michigan Journal of International Law*. He is admitted to practice in the District of Columbia, Pennsylvania, the United States District Court for the District of Columbia, the U.S. Court of Appeals for the Second Circuit, the U.S. Court of Appeals for the Fourth Circuit, and the U.S. Court of Appeals for the Eleventh Circuit. He serves on the Board of Directors of the Maryland Ornithological Society, and is chair of its investment committee.

Prior to his law career, Mr. Moore earned a Ph.D. in philosophy from the University of Pittsburgh. The Pitt philosophy department has been ranked among the top five in the country. He was awarded the prestigious Mellon Pre-Doctoral Fellowship in his first year of study, and was awarded a Teaching Fellowship to teach logic and philosophy during the remainder of his studies. He earned his Bachelor of Arts from Indiana University-Bloomington, graduating Phi Beta Kappa and with honors.

Prior to joining McTigue Law LLP, Mr. Moore was an attorney with Malakoff, Doyle, & Finberg, P.C., which, together with McTigue Law LLP, pioneered the pursuit of class action suits on behalf of employees who lost retirement savings due to their pension plan fiduciary's imprudent investment in their employer's stock.

Mr. Moore's publications include "Taking Legal Action to Protect Policyholders' Ownership Rights in the Wake of the Continuing Trend Toward Insurance Company Demutualization," ATLA Insurance Law Section Newsletter, Fall 2000 (co-author with Ellen M. Doyle), and publications in scholarly journals including the *Harvard International Law Journal*.

| MCTIGUE LAW LLP |
|---|

*Regina M. Markey*

Since beginning her law practice in 2001, Ms. Markey has concentrated on employment, employee benefit, and labor law.  She has argued as a federal appellate advocate, developed a successful ERISA claim against a National Football League benefit plan, pursued and settled employment claims, represented a prominent environmental whistleblower, advised the U.S. Congress on public safety officer benefit legislation, and was instrumental in a class action charging the U.S. Environmental Protection Agency and its former administrator with Constitutional and statutory violations following 9/11 terrorist attacks on behalf of New York City residents, office workers, and students.  Ms. Markey is admitted to practice in the District of Columbia and Pennsylvania, before the United States Court of Appeals for the District of Columbia, the U.S. District Court for the District of Columbia, the U.S. District Court in Maryland, and the U.S. Supreme Court.  Ms. Markey is a member of the District of Columbia Bar Association, the American Bar Association, the AFL-CIO Lawyers Coordinating Committee, and the Metropolitan Washington Employment Lawyers Association.  She graduated from the Columbus School of Law at Catholic University of America, Washington, D.C., J.D. (1992), and earned a B.A. in Economics from the University of Connecticut.

Prior to private practice, for more than a decade Ms. Markey's primary professional focus was policies to protect ERISA and public employee pension funds, during which time she advised plans, trustees, labor organizations, and financial companies on related governance and programmatic investment issues.  For seven years Ms. Markey co-authored the leading labor union publication covering pension participant and investment issues, *Labor and Investments*. She analyzed domestic and foreign retirement systems, and actively promoted best practices for retirement funds through strategic advice, writing and presentations.

Ms. Markey has served as the AFL-CIO Staff Retirement Plan's representative to the Council of Institutional Investors; as an observer to the National Conference of Commissioners on Uniform State Law Drafting Committee on the Public Employee Retirement Fund Act; as a founder and coordinator of the Industrial Heartland Labor Investment Forum, a grassroots consortium examining private and public sector pension investment practices; and as an advisor in corporate shareholder accountability actions.

Ms. Markey has spoken on retirement funds and ethics before numerous groups, including the National Coalition of Public Safety Officers; the National Association of Public Pension Attorneys; the California Public Employee Retirement System Board of Trustees; the Communications Workers of America; the Connecticut Treasurer's Stakeholders Conference; the AFL-CIO; and the Super 2000 Pension Conference in Sydney, Australia.  Ms. Markey was raised in Emerson, New Jersey and Ridgefield, Connecticut as one of eleven siblings.

\* \* \*

[5]

# Exhibit B

Case 1:21-cv-02335-MKV-JLC Document 61-2 Filed 07/23/18 Page 14 of 17

### In re Bank of New York Mellon Forex Transactions Litigation, Master File No. 12-MD-2335 (LAK)
### McTigue Law LLP - Hours from Inception to June 30, 2015

| Name | Title | Billing Categories | | | | | | | | | | Total | Rate | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | | | |
| **Attorneys** | | | | | | | | | | | | | | |
| J. Brian McTigue, Esq. | Partner | 68.85 | 10.95 | 133.36 | 194.8 | 867.43 | 387.1 | | 498.7 | 258.3 | 48.45 | 2467.90 | $625.00 | $1,542,439.38 |
| James Moore, Esq. | Partner | 0.33 | | 12.33 | 163.8 | 28.48 | 915.9 | 12 | 180.4 | 14.7 | | 1327.89 | $625.00 | $829,931.25 |
| Regina Markey, Esq. | Partner | | | | | 4.6 | | | 6.22 | 6.28 | | 17.10 | $525.00 | $8,977.50 |
| | | | | | | | | | | | | | | |
| **Attorney Total** | | | | | | | | | | | | 3812.89 | | $2,381,348.13 |
| | | | | | | | | | | | | | | |
| **Staff** | | | | | | | | | | | | | | |
| David T. Bond | Case Manager | 70.02 | 31.7 | 472.822 | 11.2 | 429.03 | 8.46 | | 19.65 | 1.33 | 2.177 | 1046.40 | $250.00 | $261,599.00 |
| Rachel Kaplan | Law Clerk | 13.68 | | 17.39 | 9.45 | 29.43 | 20.79 | | 161.6 | | | 252.34 | $250.00 | $63,085.00 |
| Cinthia Razakalalao | Legal Assistant | 18.15 | 7.266 | | | 15.733 | | | | | | 41.15 | $200.00 | $8,229.60 |
| Sarah McGuane, M.B.A | Analyst/Research | 39.86 | | 41.58 | | 11.15 | | | 257.3 | | 0.7 | 350.57 | $200.00 | $70,114.00 |
| | | | | | | | | | | | | | | |
| **Staff Total** | | | | | | | | | | | | 1690.45 | | $403,027.60 |
| | | | | | | | | | | | | | | |
| **Firm Total** | | | | | | | | | | | | 5503.35 | | $2,784,375.73 |

**Key to Billing Categories:**

1) Investigations and Fact Research
2) Plaintiff-side Document Review
3) Defendant/Third Party Document Review
4) Other Discovery Work – Memos, Correspondence, Meet and Confers
5) Depositions; Preparation, Document Review and Support For Same
6) Legal Research and Writing, Pleadings, Briefing.
7) Court Appearances and Prep/Follow-Up.
8) Litigation Strategy and Case Management
9) Mediation/Settlement, Settlement Administration
10) Expert Work/Consultations

# Exhibit C

**In re Bank of New York Mellon Corp. Forex Transactions Litigation**
**Master File No. 12-MD-2335 (LAK)**
**EXPENSE REPORT**

FIRM NAME: McTigue Law LLP
REPORTING PERIOD: INCEPTION TO AUGUST 1, 2015

| DESCRIPTION | CUMULATIVE TOTAL |
|---|---|
| External Reproduction | $4,104.52 |
| Internal Reproduction/Printing (includes 77,735 pages @ $0.09/page) | $7,819.15 |
| Court Fees (Filing costs etc.) | $800.50 |
| Court Reporters/Transcripts | $645.25 |
| Computer Research | |
| Electronic Database | $30,418.85 |
| Teleconferences/Fax | $506.89 |
| Postage/Express Delivery/Messenger | $990.92 |
| Experts/Consultants | $75,394.28 |
| Witness/Service Fees | |
| Meals, Hotels and Transportation | $22,065.91 |
| Publications | $117.95 |
| MDL Litigation Fund Contributions/Assessments | |
| **TOTAL EXPENSES** | **$142,864.22** |