# EX. 193

**ABA Comm. on Ethics and Professional Responsibility, Formal Op. 93-379**
**American Bar Association**

**BILLING FOR PROFESSIONAL FEES, DISBURSEMENTS AND OTHER EXPENSES**

**December 6, 1993**

**Copyright (c) 1993 by the American Bar Association**

Consistent with the Model Rules of Professional Conduct, a lawyer must disclose to a client the basis on which the client is to be billed for both professional time and any other charges. Absent a contrary understanding, any invoice for professional services should fairly reflect the basis on which the client's charges have been determined. In matters where the client has agreed to have the fee determined with reference to the time expended by the lawyer, a lawyer may not bill more time than she actually spends on a matter, except to the extent that she rounds up to minimum time periods (such as one-quarter or one-tenth of an hour). A lawyer may not charge a client for overhead expenses generally associated with properly maintaining, staffing and equipping an office; however, the lawyer may recoup expenses reasonably incurred in connection with the client's matter for services performed in-house, such as photocopying, long distance telephone calls, computer research, special deliveries, secretarial overtime, and other similar services, so long as the charge reasonably reflects the lawyer's actual cost for the services rendered. A lawyer may not charge a client more than her disbursements for services provided by third parties like court reporters, travel agents or expert witnesses, except to the extent that the lawyer incurs costs additional to the direct cost of the third-party services.

The legal profession has dedicated a substantial amount of time and energy to developing elaborate sets of ethical guidelines for the benefit of its clients. Similarly, the profession has spent extraordinary resources on interpreting, teaching and enforcing these ethics rules. Yet, ironically, lawyers are not generally regarded by the public as particularly ethical. One major contributing factor to the discouraging public opinion of the legal profession appears to be the billing practices of some of its members.

It is a common perception that pressure on lawyers to bill a minimum number of hours and on law firms to maintain or improve profits may have led some lawyers to engage in problematic billing practices. These include charges to more than one client for the same work or the same hours, surcharges on services contracted with outside vendors, and charges beyond reasonable costs for in-house services like photocopying and computer searches. Moreover, the bases on which these charges are to be assessed often are not disclosed in advance or are disguised in cryptic invoices so that the client does not fully understand exactly what costs are being charged to him.

The Model Rules of Professional Conduct provide important principles applicable to the billing of clients, principles which, if followed, would ameliorate many of the problems noted above. The Committee has decided to address several practices that are the subject of frequent inquiry, with the goal of helping the profession adhere to its ethical obligations to its clients despite economic pressures.

The first set of practices involves billing more than one client for the same hours spent. In one illustrative situation, a lawyer finds it possible to schedule court appearances for three clients on the same day. He spends a total of four hours at the courthouse, the amount of time he would have spent on behalf of each client had it not been for the fortuitous circumstance that all three cases were scheduled on the same day. May he bill each of the three clients, who otherwise understand that they will be billed on the basis of time spent, for the four hours he spent on them collectively? In another scenario, a lawyer is flying cross-country to attend a deposition on behalf of one client, expending travel time she would ordinarily bill to that client. If she decides not to watch the movie or read her novel, but to work instead on drafting a motion for another client, may she charge both clients, each of whom agreed to hourly billing, for the time during which she was traveling on behalf of one and drafting a document on behalf of the other? A third situation involves research on a particular topic for one client that later turns out to be relevant to an inquiry from a second client. May the firm bill the second client, who agreed to be charged on the basis of time spent on his case, the same amount for the recycled work product that it charged the first client?

The second set of practices involves billing for expenses and disbursements, and is exemplified by the situation in which a firm contracts for the expert witness services of an economist at an hourly rate of $200. May the firm bill the client for the expert's time at the rate of $250 per hour? Similarly, may the firm add a surcharge to the cost of computer-assisted research if the per-minute total charged by the computer company does not include the cost of purchasing the computers or staffing their operation? The questions presented to the Committee require us to determine what constitute reasonable billing procedures; that is, what are the services and costs for which a lawyer may legitimately charge, both generally and with regard to the specific scenarios? This inquiry requires an elucidation of the Rule of Professional Conduct 1.5, [FN1] and the Model Code of Professional Responsibility DR 2-106. [FN2]

**Disclosure of the Bases of the Amounts to Be Charged**

At the outset of the representation the lawyer should make disclosure of the basis for the fee and any other charges to the client. This is a two-fold duty, including not only an explanation at the beginning of engagement of the basis on which fees and other charges will be billed, but also a sufficient explanation in the statement so that the client may reasonably be expected to understand what fees and other charges the client is actually being billed.

Authority for the obligation to make disclosure at the beginning of a representation is found in the interplay among a number of rules. Rule 1.5(b) provides that when the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

The Comment to Rule 1.5 gives guidance on how to execute the duty to communicate the basis of the fee: In a new client-lawyer relationship ... an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that renders an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.

This obligation is reinforced by reference to Model Rule 1.4(b) which provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

While the Comment to this Rule suggests its obvious applicability to negotiations or litigation with adverse parties, its important principle should be equally applicable to the lawyer's obligation to explain the basis on which the lawyer expects to be compensated, so the client can make one of the more important decisions "regarding the representation."

An obligation of disclosure is also supported by Model Rule 7.1, which addresses communications concerning a lawyer's services, including the basis on which fees would be charged. The rule provides: A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.

It is clear under Model Rule 7.1 that in offering to perform services for prospective clients it is critical that lawyers avoid making any statements about fees that are not complete. If it is true that a lawyer when advertising for new clients must disclose, for example, that costs are the responsibility of the client, Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626 (1985), it necessarily follows that in entering

into an actual client relationship a lawyer must make fair disclosure of the basis on which fees will be assessed.

A corollary of the obligation to disclose the basis for future billing is a duty to render statements to the client that adequately apprise the client as to how that basis for billing has been applied. In an engagement in which the client has agreed to compensate the lawyer on the basis of time expended at regular hourly rates, a bill setting out no more than a total dollar figure for unidentified professional services will often be insufficient to tell the client what he or she needs to know in order to understand how the amount was determined. By the same token, billing other charges without breaking the charges down by type would not provide the client with the information the client needs to understand the basis for the charges.

Initial disclosure of the basis for the fee arrangement fosters communication that will promote the attorney-client relationship. The relationship will be similarly benefited if the statement for services explicitly reflects the basis for the charges so that the client understands how the fee bill was determined.

### Professional Obligations Regarding the Reasonableness of Fees

Implicit in the Model Rules and their antecedents is the notion that the attorney-client relationship is not necessarily one of equals, that it is built on trust, and that the client is encouraged to be dependent on the lawyer, who is dealing with matters of great moment to the client. The client should only be charged a reasonable fee for the legal services performed. Rule 1.5 explicitly addresses the reasonableness of legal fees. The rule deals not only with the determination of a reasonable hourly rate, but also with total cost to the client. The Comment to the rule states, for example, that "[a] lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures." The goal should be solely to compensate the lawyer fully for time reasonably expended, an approach that if followed will not take advantage of the client.

Ethical Consideration 2-17 of the Model Code of Professional Responsibility provides a framework for balancing the interests between the lawyer and client in determining the reasonableness of a fee arrangement:

The determination of a proper fee requires consideration of the interests of both client and lawyer. A lawyer should not charge more than a reasonable fee, for excessive cost of legal service would deter laymen from utilizing the legal system in protection of their rights. Furthermore, an excessive charge abuses the professional relationship between lawyer and client. On the other hand, adequate compensation is necessary in order to enable the lawyer to serve his client effectively and to preserve the integrity and independence of the profession.

The lawyer's conduct should be such as to promote the client's trust of the lawyer and of the legal profession. This means acting as the advocate for the client to the extent necessary to complete a project thoroughly. Only through careful attention to detail is the lawyer able to manage a client's case properly. An unreasonable limitation on the hours a lawyer may spend on a client should be avoided as a threat to the lawyer's ability to fulfill her obligation under Model Rule 1.1 to "provide competent representation to a client." Competent representation requires the legal knowledge, skill, thoroughness and preparation necessary for the representation." Model Rule 1.1. Certainly either a willingness on the part of the lawyer, or a demand by the client, to circumscribe the lawyer's efforts, to compromise the lawyer's ability to be as thorough and as prepared as necessary, is not in the best interests of the client and may lead to a violation of Model Rule 1.1 if it means the lawyer is unable to provide competent representation. The Comment to Model Rule 1.2, while observing that "the scope of services provided by a lawyer may be limited by agreement," also notes that an agreement "concerning the scope of representation must accord with the Rules.... Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1...." [FN3]

On the other hand, the lawyer who has agreed to bill on the basis of hours expended does not fulfill her ethical duty if she bills the client for more time than she actually spent on the client's behalf. [FN4] In

addressing the hypothetical regarding (a) simultaneous appearance on behalf of three clients, (b) the airplane flight on behalf of one client while working on another client's matters and (c) recycled work product, it is helpful to consider these questions, not from the perspective of what a client could be forced to pay, but rather from the perspective of what the lawyer actually earned. A lawyer who spends four hours of time on behalf of three clients has not earned twelve billable hours. A lawyer, who flies for six hours for one client, while working for five hours on behalf of another, has not earned eleven billable hours. A lawyer who is able to reuse old work product has not re-earned the hours previously billed and compensated when the work product was first generated. Rather than looking to profit from the fortuity of coincidental scheduling, the desire to get work done rather than watch a movie, or the luck of being asked the identical question twice, the lawyer who has agreed to bill solely on the basis of time spent is obliged to pass the benefits of these economies on to the client. The practice of billing several clients for the same time or work product, since it results in the earning of an unreasonable fee, therefore is contrary to the mandate of the Model Rules. Model Rule 1.5.

Moreover, continuous toil on or overstaffing a project for the purpose of churning out hours is also not properly considered "earning" one's fees. One job of a lawyer is to expedite the legal process. Model Rule 3.2. Just as a lawyer is expected to discharge a matter on summary judgment if possible rather than proceed to trial, so too is the lawyer expected to complete other projects for a client efficiently. A lawyer should take as much time as is reasonably required to complete a project, and should certainly never be motivated by anything other than the best interests of the client when determining how to staff or how much time to spend on any particular project.

It goes without saying that a lawyer who has undertaken to bill on an hourly basis is never justified in charging a client for hours not actually expended. If a lawyer has agreed to charge the client on this basis and it turns out that the lawyer is particularly efficient in accomplishing a given result, it nonetheless will not be permissible to charge the client for more hours than were actually expended on the matter. When that basis for billing the client has been agreed to, the economies associated with the result must inure to the benefit of the client, not give rise to an opportunity to bill client phantom hours. This is not to say that the lawyer who agreed to hourly compensation is not free, with full disclosure, to suggest additional compensation because of a particularly efficient or outstanding result, or because the lawyer was able to reuse prior work product on the client's behalf. The point here is that fee enhancement cannot be accomplished simply by presenting the client with a statement reflecting more billable hours than were actually expended. On the other hand, if a matter turns out to be more difficult to accomplish than first anticipated and more hours are required than were originally estimated, the lawyer is fully entitled (though not required) to bill those hours unless the client agreement turned the original estimate into a cap on the fees to be charged.

### Charges Other Than Professional Fees

In addition to charging clients fees for professional services, lawyers typically charge their clients for certain additional items which are often referred to variously as disbursements, out-of-pocket expenses or additional charges. Inquiries to the Committee demonstrate that the profession has encountered difficulties in conforming to the ethical standards in this area as well. The Rules provide no specific guidance on the issue of how much a lawyer may charge a client for costs incurred over and above her own fee. However, we believe that the reasonableness standard explicitly applicable to fees under Rule 1.5(a) should be applicable to these charges as well.

The Committee, in trying to sort out the issues related to these charges, has identified three different questions which must be addressed. First, which items are properly subject to additional charges? Second, to what extent, if at all, may clients be charged for more than actual out-of-pocket disbursements? Third, on what basis may clients be charged for the provision of in-house services? We shall address these one at a time.

A. General Overhead

When a client has engaged a lawyer to provide professional services for a fee (whether calculated on the

basis of the number of hours expended, a flat fee, a contingent percentage of the amount recovered or otherwise) the client would be justifiably disturbed if the lawyer submitted a bill to the client which included, beyond the professional fee, additional charges for general office overhead. In the absence of disclosure to the client in advance of the engagement to the contrary, the client should reasonably expect that the lawyer's cost in maintaining a library, securing malpractice insurance, renting of office space, purchasing utilities and the like would be subsumed within the charges the lawyer is making for professional services.

B. Disbursements

At the beginning of the engagement lawyers typically tell their clients that they will be charged for disbursements. When that term is used clients justifiably should expect that the lawyer will be passing on to the client those actual payments of funds made by the lawyer on the client's behalf. Thus, if the lawyer hires a court stenographer to transcribe a deposition, the client can reasonably expect to be billed as a disbursement the amount the lawyer pays to the court reporting service. Similarly, if the lawyer flies to Los Angeles for the client, the client can reasonably expect to be billed as a disbursement the amount of the airfare, taxicabs, meals and hotel room.

It is the view of the Committee that, in the absence of disclosure to the contrary, it would be improper if the lawyer assessed a surcharge on these disbursements over and above the amount actually incurred unless the lawyer herself incurred additional expenses beyond the actual cost of the disbursement item. In the same regard, if a lawyer receives a discounted rate from a third-party provider, it would be improper if she did not pass along the benefit of the discount to her client rather than charge the client the full rate and reserve the profit to herself. Clients quite properly could view these practices as an attempt to create additional undisclosed profit centers when the client had been told he would be billed for disbursements.

C. In-House Provision of Services

Perhaps the most difficult issue is the handling of charges to clients for the provision of in-house services. In this connection the Committee has in view charges for photocopying, computer research, on-site meals, deliveries and other similar items. Like professional fees, it seems clear that lawyers may pass on reasonable charges for these services. Thus, in the view of the Committee, the lawyer and the client may agree in advance that, for example, photocopying will be charged at $.15 per page, or messenger services will be provided at $5.00 per mile. However, the question arises what may be charged to the client, in the absence of a specific agreement to the contrary, when the client has simply been told that costs for these items will be charged to the client. We conclude that under those circumstances the lawyer is obliged to charge the client no more than the direct cost associated with the service (i.e., the actual cost of making a copy on the photocopy machine) plus a reasonable allocation of overhead expenses directly associated with the provision of the service (e.g., the salary of a photocopy machine operator).

It is not appropriate for the Committee, in addressing ethical standards, to opine on the various accounting issues as to how one calculates direct cost and what may or may not be included in allocated overhead. These are questions which properly should be reserved for our colleagues in the accounting profession. Rather, it is the responsibility of the Committee to explain the principles it draws from the mandate of Model Rule 1.5's injunction that fees be reasonable. Any reasonable calculation of direct costs as well as any reasonable allocation of related overhead should pass ethical muster. On the other hand, in the absence of an agreement to the contrary, it is impermissible for a lawyer to create an additional source of profit for the law firm beyond that which is contained in the provision of professional services themselves. The lawyer's stock in trade is the sale of legal services, not photocopy paper, tuna fish sandwiches, computer time or messenger services.

**Conclusion**

As the foregoing demonstrates, the subject of fees for professional services and other charges is one that is fraught with tension between the lawyer and the client. Nonetheless, if the principles outlined in this opinion are followed, the ethical resolution of these issues can be achieved.

FN1. Rule 1.5 states in relevant part:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

FN2. DR 2-106 contains substantially the same factors listed in Rule 1.5 to determine reasonableness, but does not require that the basis of the fee be communicated to the client "preferably in writing" as Rule 1.5 does.

FN3. Beyond the scope of this opinion is the question whether a lawyer, with full disclosure to a sophisticated client of the risks involved, can agree to undertake at the request of the client only ten hours of research, when the lawyer knows that the resulting work product does not fulfill the competent representation requirement of Model Rule 1.1.

FN4. Rule 1.5 clearly contemplates that there are bases for billing clients other than the time expended. This opinion, however, only addresses issues raised when it is understood that the client will be charged on the basis of time expended.

ABA Formal Op. **93-379**
END OF DOCUMENT

Copr. (C) 2004 West. No Claim to Orig. U.S. Govt. Works.