# EX. 7

| | |
|---|---|
| **From:** | Chiplock, Daniel P. |
| **To:** | Lynn Sarko; Laura Gerber |
| **CC:** | lsucharow@labaton.com; Rogers, Michael H. (MRogers@labaton.com); 'Michael Thornton'; dgoldsmith@labaton.com; Michael Lesser; Lieff, Robert L. |
| **Sent:** | 9/11/2013 12:23:26 PM |
| **Subject:** | FW: State Street - Fee agreement |
| **Attachments:** | LCHB_iManage_1129455_2.DOCX |

Lynn/**Laura** (corrected):

Attached are redlines to the proposed fee agreement you circulated.  Let us know if you have additional comments or care to discuss.

Thanks,

Dan

**Lieff**
**Cabraser**
**Heimann**&
**Bernstein**
Attorneys at Law

**Daniel P. Chiplock**
dchiplock@lchb.com
t 212.355.9500
f 212.355.9592
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
www.lieffcabraser.com

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

CONFIDENTIAL

**AGREEMENT BETWEEN COUNSEL**
**FOR CONSUMER AND ERISA PLAINTIFFS**
**REGARDING DIVISION OF ATTORNEYS' FEES**

This Agreement Between Counsel For Consumer And ERISA Plaintiffs Regarding Division Of Attorneys' Fees (the "Agreement") is made and entered into by and between: Labaton Sucharow LLP, Thornton & Naumes, LLP, and Lieff Cabraser Heimann & Bernstein, LLP (collectively, "Counsel for Consumer Plaintiffs"), on the one hand, and McTigue Law LLP, Zuckerman Spaeder LLP, Beins, Axelrod, P.C., Richardson, Patrick, Westbrook & Brickman, and Keller Rohrback L.L.P. (collectively, "Counsel for ERISA Plaintiffs"), on the other hand (the "Parties"). This Agreement shall be effective as of _____, 2013.

**RECITALS**

WHEREAS, Counsel for Consumer Plaintiffs have filed the lawsuit captioned *Arkansas Teacher Retirement System vs. State Street Corporation, et. al., No. 11-cv-10230 MLW* ("*ARTRS*"), in the United States District Court for the District of Massachusetts, alleging state and common law claims against State Street Corporation, State Street Bank and Trust Company, and others, on behalf of their client, the Arkansas Teacher Retirement System ("ARTRS"), and a putative class of all institutional investors in foreign securities, including public and private pension funds, ERISA-qualified plans, mutual funds, endowment funds and investment manager funds, for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis alleging state law claims against State Street Corporation, State Street Bank and Trust Company, and others, but no claims under ERISA.

1. WHEREAS, Counsel for ERISA Plaintiffs have filed two lawsuits captioned *Arnold Henriquez, et. al., vs. State Street Bank and Trust Company,, et. al., No. 11-cv-*

12049 MLW ("*Henriquez*"), and *Andover Companies, et. al., vs. State Street Bank and Trust Company*, No. 12-cv-11698 MLW ("*Andover*"), in the United States District Court for the District of Massachusetts, alleging on behalf of their clients, Arnold Henriquez (as a participant and beneficiary of the Waste Management Retirement Savings Plan), Michael T. Cohn (as a participant and beneficiary of the Citigroup 401(k) Plan), William R. Taylor and Richard A. Sutherland (each as participants and beneficiaries of the Retirement Plan of Johnson & Johnson), Alan Kober as a Trustee of The Andover Companies' Savings and Profit Sharing Plan, and James Pehoushek-Stangeland, as a participant and beneficiary of The Boeing Company Voluntary Investment Plan), and putative classes of private (ERISA) pension plans for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis, alleging breaches of federal ERISA law against State Street Bank and Trust Company, and others, but none of the other state or common law claims alleged by ARTRS.

WHEREAS, the *ARTRS, Andover* and *Henriquez* cases are all pending before the same judge and are being mediated and litigated together and the Parties believe that it is in the best interests of their respective clients and the putative classes that they are seeking to represent that, where appropriate and consistent with their obligations to advocate for their respective clients, they work cooperatively in the litigation against State Street Corporation and the other defendants, and further, that agreeing to a division of attorneys' fees, as set forth below, is in the best interests of their respective clients.

2

NOW, THEREFORE, for good and valuable consideration, including the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. The Parties agree that any attorneys' fee agreed to, awarded and/or approved by the Court in connection with ~~the~~any collective or joint resolution of the *ARTRS, Andover and/or Henriquez* cases ~~, whether the product of settlement or litigated resolution of the cases,~~ shall be divided 91 % to Counsel for Consumer Plaintiffs and 9 % to Counsel for ERISA Plaintiffs (the "Division of Fees").

2. The Parties agree that the Division of Fees shall apply whether the attorneys' fees agreed, awarded and/or approved by the Court is a single sum for all claims and cases or otherwise.

3. The Parties agree that they will each remain responsible for representing the interests of their respective clients and that nothing herein limits in any way their obligations to represent and exercise independent judgment on behalf of their respective clients.

**Formatted:** Indent: First line:  0.5",  No bullets or numbering

4. The Parties agree that the terms of this Agreement may be disclosed to the Court, if any of them believes it appropriate to do so.

5. The Parties represent that they have disclosed and explained this Agreement to their respective clients and that their clients have consented to the Division of Fees and other terms herein.

6. This Agreement does not impact or change the Parties' rights and ability to seek the reimbursement of litigation expenses; nor does it contain any agreement on the sharing of expenses.

3

KR00000013

7.   This Agreement is governed by the substantive law of the Commonwealth of

Massachusetts.

Formatted: Indent: Left: 0.5", No bullets or numbering

4

KR00000014

## AGREEMENT BETWEEN COUNSEL
## FOR CONSUMER AND ERISA PLAINTIFFS
## <u>REGARDING DIVISION OF ATTORNEYS' FEES</u>

This Agreement Between Counsel For Consumer And ERISA Plaintiffs Regarding Division Of Attorneys' Fees (the "Agreement") is made and entered into by and between: Labaton Sucharow LLP, Thornton & Naumes, LLP, and Lieff Cabraser Heimann & Bernstein, LLP (collectively, "Counsel for Consumer Plaintiffs"), on the one hand, and McTigue Law LLP, Zuckerman Spaeder LLP, Beins, Axelrod, P.C., Richardson, Patrick, Westbrook & Brickman, and Keller Rohrback L.L.P. (collectively, "Counsel for ERISA Plaintiffs"), on the other hand (the "Parties"). This Agreement shall be effective as of _____, 2013.

## <u>RECITALS</u>

WHEREAS, Counsel for Consumer Plaintiffs have filed the lawsuit captioned *Arkansas Teacher Retirement System vs. State Street Corporation, et. al., No. 11-cv-10230 MLW* ("*ARTRS*"), in the United States District Court for the District of Massachusetts, alleging state and common law claims against State Street Corporation, State Street Bank and Trust Company, and others, on behalf of their client, the Arkansas Teacher Retirement System ("ARTRS"), and a putative class of all institutional investors in foreign securities, including public and private pension funds, ERISA-qualified plans, mutual funds, endowment funds and investment manager funds, for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis ~~alleging state law claims against State Street Corporation, State Street Bank and Trust Company, and others, but no claims under ERISA.~~

~~1.~~     WHEREAS, Counsel for ERISA Plaintiffs have filed two lawsuits captioned *Arnold Henriquez, et. al., vs. State Street Bank and Trust Company,, et. al.*, No. 11-cv-

> **Formatted:** Indent: Left: 0.5", No bullets or numbering

12049 MLW ("*Henriquez*"), and *Andover Companies, et. al., vs. State Street Bank and Trust Company*, No. 12-cv-11698 MLW ("*Andover*"), in the United States District Court for the District of Massachusetts, alleging on behalf of their clients, Arnold Henriquez (as a participant and beneficiary of the Waste Management Retirement Savings Plan), Michael T. Cohn (as a participant and beneficiary of the Citigroup 401(k) Plan), William R. Taylor and Richard A. Sutherland (each as participants and beneficiaries of the Retirement Plan of Johnson & Johnson), Alan Kober as a Trustee of The Andover Companies' Savings and Profit Sharing Plan, and James Pehoushek-Stangeland, as a participant and beneficiary of The Boeing Company Voluntary Investment Plan), and putative classes of private (ERISA) pension plans for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis, alleging breaches of federal ERISA law against State Street Bank and Trust Company, and others, but none of the other state or common law claims alleged by ARTRS.

WHEREAS, the *ARTRS, Andover* and *Henriquez* cases are all pending before the same judge and are being mediated and litigated together and the Parties believe that it is in the best interests of their respective clients and the putative classes that they are seeking to represent that, where appropriate and consistent with their obligations to advocate for their respective clients, they work cooperatively in the litigation against State Street Corporation and the other defendants, and further, that agreeing to a division of attorneys' fees, as set forth below, is in the best interests of their respective clients.

2

KR00000016

NOW, THEREFORE, for good and valuable consideration, including the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.  The Parties agree that any attorneys' fee agreed ~~to~~, awarded and/or approved by the Court in connection with ~~the~~any collective or joint resolution of the *ARTRS, Andover* ~~and~~or *Henriquez* cases ~~, whether the product of settlement or litigated resolution of the cases,~~ shall be divided 91 % to Counsel for Consumer Plaintiffs and 9 % to Counsel for ERISA Plaintiffs (the "Division of Fees").

2.  The Parties agree that the Division of Fees shall apply whether the attorneys' fees agreed, awarded and/or approved by the Court is a single sum for all claims and cases or otherwise.

3.  The Parties agree that they will each remain responsible for representing the interests of their respective clients and that nothing herein limits in any way their obligations to represent and exercise independent judgment on behalf of their respective clients.

**Formatted:** Indent: First line: 0.5", No bullets or numbering

4.  The Parties agree that the terms of this Agreement may be disclosed to the Court, if any of them believes it appropriate to do so.

5.  The Parties represent that they have disclosed and explained this Agreement to their respective clients and that their clients have consented to the Division of Fees and other terms herein.

6.  This Agreement does not impact or change the Parties' rights and ability to seek the reimbursement of litigation expenses; nor does it contain any agreement on the sharing of expenses.

3

**Formatted:** Indent: Left:  0.5",  No bullets or numbering

7. This Agreement is governed by the substantive law of the Commonwealth of

Massachusetts.

4

CONFIDENTIAL

KR00000018

# EX. 8

## AGREEMENT BETWEEN COUNSEL
## FOR CONSUMER AND ERISA PLAINTIFFS
## <u>REGARDING DIVISION OF ATTORNEYS' FEES</u>

This Agreement Between Counsel For Consumer And ERISA Plaintiffs Regarding Division Of Attorneys' Fees (the "Agreement") is made and entered into by and between: Labaton Sucharow LLP, Thornton & Naumes, LLP, and Lieff Cabraser Heimann & Bernstein, LLP (collectively, "Counsel for Consumer Plaintiffs"), on the one hand, and McTigue Law LLP, Zuckerman Spaeder LLP, Beins, Axelrod, P.C., Richardson, Patrick, Westbrook & Brickman, and Keller Rohrback L.L.P. (collectively, Counsel for ERISA Plaintiffs), on the other hand (the "Parties"). This Agreement shall be effective as of _____, 2013.

## <u>RECITALS</u>

WHEREAS, Counsel for Consumer Plaintiffs have filed the lawsuit captioned *Arkansas Teacher Retirement System vs. State Street Corporation, et. al., No. 11-cv-10230 MLW* (*"ARTRS"*), in the United States District Court for the District of Massachusetts, alleging on behalf of their client, the Arkansas Teacher Retirement System ("ARTRS"), and a putative class of all institutional investors in foreign securities, including public and private pension funds, ERISA-qualified plans, mutual funds, endowment funds and investment manager funds, for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis alleging state law claims against State Street Corporation, State Street Bank and Trust Company, and others, but no claims under ERISA.

1.     WHEREAS, Counsel for ERISA Plaintiffs have filed two lawsuits captioned *Arnold Henriquez, et. al. vs. State Street Bank and Trust, et. al.*, No. 11-cv-12049 MLW (*"Henriquez"*), and *Andover Companies, et. al., vs. State Street Bank and Trust Company*, No. 12-cv-11698 MLW (*"Andover"*), in the United States District Court for the District of

KR00000003

Massachusetts, alleging on behalf of their clients, Arnold Henriquez (as a participant and beneficiary of the Waste Management Retirement Savings Plan), Michael T. Cohn (as a participant and beneficiary of the Citigroup 401(k) Plan), William R. Taylor and Richard A. Sutherland (each as participants and beneficiaries of the Retirement Plan of Johnson & Johnson), Alan Kober as a Trustee of The Andover Companies' Savings and Profit Sharing Plan, and James Pehoushek-Stangeland, as a participant and beneficiary of The Boeing Company Voluntary Investment Plan), and putative classes of private (ERISA) pension plans for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis, alleging breaches of federal ERISA law against State Street Bank and Trust Company, and others, but none of the other state law claims alleged by ARTRS.

WHEREAS, the *ARTRS, Andover* and *Henriquez* cases are all pending before the same judge and are being mediated and litigated together and the Parties believe that it is in the best interests of their respective clients and the putative classes that they are seeking to represent that, where appropriate and consistent with their obligations to advocate for their respective clients, they work cooperatively in the litigation against State Street Corporation and the other defendants, and further, that agreeing to a division of attorneys' fees, as set forth below, is in the best interests of their respective clients.

NOW, THEREFORE, for good and valuable consideration, including the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. The Parties agree that any attorneys' fee agreed, awarded and/or approved by the Court in connection with the *ARTRS, Andover* ~~and~~ or *Henriquez* cases, whether the

2

KR00000004

product of settlement or litigated resolution of the cases, shall be divided ___ % to Counsel for Consumer Plaintiffs and ___ % to Counsel for ERISA Plaintiffs (the "Division of Fees").

2. The Parties agree that the Division of Fees shall apply whether the attorneys' fees agreed, awarded and/or approved by the Court is a single sum for all claims and cases or otherwise.

3. The Parties agree that they will each remain responsible for representing the interests of their respective clients and that nothing herein limits in any way their obligations to represent and exercise independent judgment on behalf of their respective clients.

4. The Parties agree that the terms of this Agreement may be disclosed to the Court, if any of them believes it appropriate to do so.

5. The Parties represent that they have disclosed and explained this Agreement to their respective clients and that their clients have consented to the Division of Fees and other terms herein.

6. This Agreement does not impact or change the Parties' rights and ability to seek the reimbursement of litigation expenses; nor does it contain any agreement on the sharing of expenses.

7. This Agreement is governed by the substantive law of the Commonwealth of Massachusetts.

3

# EX. 9

| | |
|---|---|
| **From:** | Cate Brewer |
| **To:** | Laura Gerber |
| **Sent:** | 12/10/2013 9:35:28 AM |
| **Subject:** | SSFX |
| **Attachments:** | FEEAGREEMENT082913.docx; FeeAgreement083013.docx |


FeeAgreement083013.docx


FEEAGREEMENT082913.docx

----------------------------
Cate R. Brewer
Legal Assistant/Paralegal
to Gretchen Cappio, Laura Gerber and Harry Williams

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
Email: cbrewer@kellerrohrback.com

CONFIDENTIALITY NOTE: This e-mail contains information belonging to the law firm of Keller Rohrback L.L.P., which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

CONFIDENTIAL

KR00000024

## AGREEMENT BETWEEN COUNSEL
## FOR CONSUMER AND ERISA PLAINTIFFS
## REGARDING DIVISION OF ATTORNEYS' FEES

This Agreement Between Counsel For Consumer And ERISA Plaintiffs Regarding Division Of Attorneys' Fees (the "Agreement") is made and entered into by and between: Labaton Sucharow LLP, Thornton & Naumes, LLP, and Lieff Cabraser Heimann & Bernstein, LLP (collectively, "Counsel for Consumer Plaintiffs"), on the one hand, and McTigue Law LLP, Zuckerman Spaeder LLP, Beins, Axelrod, P.C., Richardson, Patrick, Westbrook & Brickman, and Keller Rohrback Law Offices L.L.P. (collectively, Counsel for ERISA Plaintiffs), on the other hand (the "Parties").  This Agreement shall be effective as of _____, 2013.

### RECITALS

WHEREAS, Counsel for Consumer Plaintiffs have filed the lawsuit captioned *Arkansas Teacher Retirement System vs. State Street Corporation, et. al., No. 11-cv-10230 MLW* ("ARTRS"), in the United States District Court for the District of Massachusetts, alleging on behalf of their client, the Arkansas Teacher Retirement System ("ARTRS"), and a putative class of all institutional investors in foreign securities, including public and private pension funds, ERISA-qualified plans, mutual funds, endowment funds and investment manager funds, for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis alleging public and private (ERISA) pension plans federal and state law claims against State Street Corporation, State Street Bank and Trust Company, and others and others, but no claims under ERISA.

1. WHEREAS, Counsel for ERISA Plaintiffs have filed two lawsuits captioned *Arnold Henriquez, et. al. vs. State Street Bank and Trust, et. al., No. 11-cv-12049 MLW*

("Henriquez"), and *Andover Companies, et. al., vs. State Street Bank and Trust Company*, No. ⟶ ⟶ [ Formatted: Font: Italic ]

12-cv-11698 MLW ("Andover"), ~~and Arnold Henriquez, et. al. vs. State Street Bank and Trust,~~
~~et. al., No. 11-cv-12049 MLW ("Henriquez"),~~ in the United States District Court for the District

of Massachusetts, alleging on behalf of their clients, ~~the Andover Companies and~~ Arnold

Henriquez (as a participant and beneficiary of the Waste Management Retirement Savings Plan),

Michael T. Cohn (as a participant and beneficiary of the Citigroup 401(k) Plan), William R.

Taylor and Richard A. Sutherland (each as participants and beneficiaries of the Retirement Plan

of Johnson & Johnson), Alan Kober as a Trustee of The Andover Companies' Savings and Profit

Sharing Plan, and James Pehoushek-Stangeland, as a participant and beneficiary of The Boeing

Company Voluntary Investment Plan), and putative classes of private (ERISA) pension plans for

which State Street served as the custodial bank and executed FX trades on an "indirect,"

"standing-instruction," or "non-negotiated" basis, ~~claims under~~ alleging breaches of federal

ERISA law ~~ERISA~~ against State Street ~~Corporation~~ Bank and Trust Company, and others, but

none of the other ~~federal and~~ state law claims alleged by ARTRS.

WHEREAS, the *ARTRS, Andover* and *Henriquez* cases are all pending before the same

judge and are being mediated and litigated together and the Parties believe that it is in the best

interests of their respective clients and the putative classes that they are seeking to represent that,

where appropriate and consistent with their obligations to advocate for their respective clients,

they work cooperatively in the litigation against State Street Corporation and the other

defendants, and further, that agreeing to a division of attorneys' fees, as set forth below, is in the

best interests of their respective clients.

2

                                                      KR00000026

~~WHEREAS, State Street Corporation and the other defendants have produced data, on a confidential basis, in the mediation of the *ARTRS, Andover* and *Henriquez* cases regarding volume of FX trading by public and ERISA pension plans.~~

NOW, THEREFORE, for good and valuable consideration, including the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. The Parties agree that any attorneys' fee agreed, awarded and/or approved by the Court in connection with the *ARTRS, Andover* and *Henriquez* cases, whether the product of settlement or litigated resolution of the cases, shall be divided __ % to Counsel for Consumer Plaintiffs and __ % to Counsel for ERISA Plaintiffs (the "Division of Fees").

2. ~~The~~ The Parties agree that the Division of Fees shall apply whether the attorneys' fees agreed, awarded and/or approved by the Court is a single sum for all claims and cases or otherwise.

2.

3. ~~Notwithstanding Paragraphs 1 and 2 above, the Division of Fees does not apply in the event that there is no recovery in the *ARTRS* case or if there is no recovery in both the *Andover Company* and *Henriquez* cases. [CSK Comment: this is a difficult issue. If ARTRS loses, we win, and the division applies, then ARTRS counsel gets virtually the entire fee. On the other hand, if it went the other way, then we get shut out. On balance, I think we want this provision, but it is definitely not perfect either way.]~~

3

CONFIDENTIAL

4. ~~The Parties agree that the Division of Fees is consistent with the relative volume of FX trading by ERISA and non-ERISA plans as reflected in the data produced by State Street and the prospects of recovery on the various claims alleged, and is therefore reasonable and appropriate.~~

5. The Parties agree that they will each remain responsible for representing the interests of their respective clients and that nothing herein limits in any way their obligations to represent and exercise independent judgment on behalf of their respective clients.

3.

6. The Parties agree that the terms of this Agreement may be disclosed to the Court, if any of them believes it appropriate to do so.

4.

7. The Parties represent that they have disclosed and explained this Agreement to their respective clients and that their clients have consented to the Division of Fees and other terms herein.

5.

8. This Agreement does not impact or change the Parties' rights and ability to seek the reimbursement of litigation expenses; nor does it contain any agreement on the sharing of expenses.

6.

9.7.   This Agreement is governed by the substantive law of the Commonwealth of Massachusetts.

4

CONFIDENTIAL

KR00000028

# EX. 10

**AGREEMENT BETWEEN COUNSEL**
**FOR CONSUMER AND ERISA PLAINTIFFS**
**REGARDING DIVISION OF ATTORNEYS' FEES**

This Agreement Between Counsel For Consumer And ERISA Plaintiffs Regarding Division Of Attorneys' Fees (the "Agreement") is made and entered into by and between: Labaton Sucharow LLP, Thornton & Naumes, LLP, and Lieff Cabraser Heimann & Bernstein, LLP (collectively, "Counsel for Consumer Plaintiffs"), on the one hand, and McTigue Law LLP, Zuckerman Spaeder LLP, Beins, Axelrod, P.C., Richardson, Patrick, Westbrook & Brickman, and Keller Rohrback L.L.P. (collectively, "Counsel for ERISA Plaintiffs"), on the other hand (the "Parties"). This Agreement shall be effective as of December 11, 2013.

**RECITALS**

WHEREAS, Counsel for Consumer Plaintiffs have filed the lawsuit captioned *Arkansas Teacher Retirement System vs. State Street Corporation, et. al., No. 11-cv-10230 MLW* ("*ARTRS*"), in the United States District Court for the District of Massachusetts, alleging state and common law claims against State Street Corporation, State Street Bank and Trust Company, and others, on behalf of their client, the Arkansas Teacher Retirement System ("ARTRS"), and a putative class of all institutional investors in foreign securities, including public and private pension funds, ERISA-qualified plans, mutual funds, endowment funds and investment manager funds, for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis.

WHEREAS, Counsel for ERISA Plaintiffs have filed two lawsuits captioned *Arnold Henriquez, et. al., vs. State Street Bank and Trust Company,, et. al.*, No. 11-cv-12049 MLW ("*Henriquez*"), and *Andover Companies, et. al., vs. State Street Bank and Trust Company*, No. 12-cv-11698 MLW ("*Andover*"), in the United States District Court for the District of

KR00000045

Massachusetts, alleging on behalf of their clients, Arnold Henriquez (as a participant and beneficiary of the Waste Management Retirement Savings Plan), Michael T. Cohn (as a participant and beneficiary of the Citigroup 401(k) Plan), William R. Taylor and Richard A. Sutherland (each as participants and beneficiaries of the Retirement Plan of Johnson & Johnson), Alan Kober as a Trustee of The Andover Companies' Savings and Profit Sharing Plan, and James Pehoushek-Stangeland, as a participant and beneficiary of The Boeing Company Voluntary Investment Plan), and putative classes of private (ERISA) pension plans for which State Street served as the custodial bank and executed FX trades on an "indirect," "standing-instruction," or "non-negotiated" basis, alleging breaches of federal ERISA law against State Street Bank and Trust Company, and others, but none of the other state or common law claims alleged by ARTRS.

WHEREAS, the *ARTRS, Andover* and *Henriquez* cases are all pending before the same judge and are being mediated and litigated together and the Parties believe that it is in the best interests of their respective clients and the putative classes that they are seeking to represent that, where appropriate and consistent with their obligations to advocate for their respective clients, they work cooperatively in the litigation against State Street Corporation and the other defendants, and further, that agreeing to a division of attorneys' fees, as set forth below, is in the best interests of their respective clients.

NOW, THEREFORE, for good and valuable consideration, including the mutual promises contained herein, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. The Parties agree that any attorneys' fee agreed to, awarded and/or approved by the Court in connection with any collective or joint resolution of the *ARTRS, Andover*

CONFIDENTIAL                                                     KR00000046

*and Henriquez* cases shall be divided 91 % to Counsel for Consumer Plaintiffs and 9% to Counsel for ERISA Plaintiffs (the "Division of Fees").

2. The Parties agree that the Division of Fees shall apply whether the attorneys' fees agreed, awarded and/or approved by the Court is a single sum for all claims and cases or otherwise.

3. The Parties agree that they will each remain responsible for representing the interests of their respective clients and that nothing herein limits in any way their obligations to represent and exercise independent judgment on behalf of their respective clients.

4. The Parties agree that the terms of this Agreement may be disclosed to the Court, if any of them believes it appropriate to do so.

5. The Parties represent that they have disclosed and explained this Agreement to their respective clients and that their clients have consented to the Division of Fees and other terms herein.

6. This Agreement does not impact or change the Parties' rights and ability to seek the reimbursement of litigation expenses; nor does it contain any agreement on the sharing of expenses.

7. This Agreement is governed by the substantive law of the Commonwealth of Massachusetts.

8. This Agreement may be signed in counterpart, and faxed or emailed signatures will have the force of original signatures.

3

CONFIDENTIAL
KR00000047

DATED: __12/11/13__

Lawrence A. Sucharow
Labaton Sucharow LLP

DATED: __12/11/13__

Michael P. Thornton
Thornton & Naumes, LLP

DATED: __12/11/13__

Daniel P. Chiplock
Lieff Cabraser Heimann & Bernstein, LLP

DATED: _____

J. Brian McTigue
McTigue Law LLP

DATED: _____

Carl S. Kravitz
Zuckerman Spaeder, LLP

DATED: _____

Jonathan G. Axelrod
Beins, Axelrod, P.C.

DATED: _____

Michael J. Brickman
Richardson, Patrick, Westbrook & Brickman
LLC

DATED: _____

Lynn Lincoln Sarko
Keller Rohrback L.L.P.

4

CONFIDENTIAL

KR00000048

DATED: _____

Lawrence A. Sucharow
Labaton Sucharow LLP


DATED: _____

Michael P. Thornton
Thornton & Naumes, LLP


DATED: 12 | 11 | 13

Daniel P. Chiplock
Lieff Cabraser Heimann & Bernstein, LLP


DATED: _____

J. Brian McTigue
McTigue Law LLP


DATED: _____

Carl S. Kravitz
Zuckerman Spaeder, LLP


DATED: _____

Jonathan G. Axelrod
Beins, Axelrod, P.C.


DATED: _____

Michael J. Brickman
Richardson, Patrick, Westbrook & Brickman
LLC


DATED: 12/11/13

Lynn Lincoln Sarko
Keller Rohrback L.L.P.


4

CONFIDENTIAL

KR00000049

DATED: _____

Lawrence A. Sucharow
Labaton Sucharow LLP

DATED: _____

Michael P. Thornton
Thornton & Naumes, LLP

DATED: 12/11/13

Daniel P. Chiplock
Lieff Cabraser Heimann & Bernstein, LLP

DATED: _____

J. Brian McTigue
McTigue Law LLP

DATED: _____

Carl S. Kravitz / DWIGHT BOSTWICK
Zuckerman Spaeder, LLP

DATED: 12/13/13

Jonathan G. Axelrod
Beins, Axelrod, P.C.

DATED: _____

Michael J. Brickman
Richardson, Patrick, Westbrook & Brickman
LLC

DATED: _____

Lynn Lincoln Sarko
Keller Rohrback L.L.P.

4

CONFIDENTIAL

# EX. 11

| From: | Lynn Sarko <lsarko@KellerRohrback.com> |
|---|---|
| Sent: | Wednesday, November 23, 2016 10:22 AM |
| To: | Kravitz, Carl S. <ckravitz@zuckerman.com> |
| Subject: | Fwd: SST - ERISA Fee and Expense Allocations |
| Attach: | image009.jpg; ATT00001.htm; image010.jpg; ATT00002.htm; image011.jpg; ATT00003.htm; image012.jpg; ATT00004.htm; SST - Fee and Expense Allocation for ERISA Actions (1668269_1).DOC; ATT00005.htm |

So I spoke with the Labaton folks yesterday. They didn't want to put it in the formal letter but agreed to send us an email putting the numbers in and confirming the 10 percent. Here it is

Lynn

Sent from my iPhone

Begin forwarded message:

From: "Zeiss, Nicole" <NZeiss@labaton.com<mailto:NZeiss@labaton.com>>
Date: November 23, 2016 at 7:17:24 AM PST
To: Lynn Sarko <lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>>, 'David Copley' <dcopley@KellerRohrback.com<mailto:dcopley@KellerRohrback.com>>, 'Brian McTigue' <bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>, "Kravitz, Carl S.'" <ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>
Cc: "Sucharow, Lawrence" <LSucharow@labaton.com<mailto:LSucharow@labaton.com>>, "Goldsmith, David" <dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>>

Subject: SST - ERISA Fee and Expense Allocations

Dear all,

Attached and below are tables showing the ERISA fee and expense allocations. Please let us know if you have any questions or changes.  Thanks

FEES AND LITIGATION EXPENSES:

Total Fee Awarded: $74,541,250.00, plus accrued interest to be calculated
ERISA Fee Allocation 10%: $7,454,125.00,[1] plus accrued interest to be calculated
Total ERISA Expenses Awarded: $431,613.31, without interest

FEE ALLOCATION

Firm

Fee

Keller Rohrback LLP

$2,484,708.33

McTigue Law LLP

$2,484,708.34

Zuckerman Spaeder LLP

$2,484,708.33

CONFIDENTIAL

ZS000027

TOTAL

$7,454,125.00


EXPENSE ALLOCATION

Firm


Expenses


Keller Rohrback LLP, on behalf of itself and
-Hutchings Barsamian Mandelcorn LLP


$342,270.63
$496.00

McTigue Law LLP, on behalf of itself and
- Beins Axelrod PC
- Richardson Patrick Westbrook & Brickman LLC
- Feinberg Campbell & Zack PC


$41,412.90
$1,306.83
$7,456.66
$0.00

Zuckerman Spaeder LLP


$38,670.29

TOTAL

 $431,613.31


1  Although the fee agreement with ERISA Counsel provides for a 9% allocation from the awarded fee, counsel in the ARTRS Action have
determined to increase the allocation to 10% in light of the excellent work and contribution of ERISA Counsel.


<https://urldefense.proofpoint.com/v2/url?u=http-
3A__labaton.com_&d=DgIFAg&c=kWwxgxBGq8MXL6t_SoviyQ&r=EFKDQsqQzO6nTYTa8RwS5Q9M2leSqI2v4EMjMy0k2eA&m=LIDDE2W-
og6r1H24vdfZGej1nAzDuuCcFGQ0L4IzkwI&s=fEvwAfJB3Bc44abxskTbAGK3ooX9Okbd8Z85QHGKadA&e=>


CONFIDENTIAL                                                                                          ZS000028

# EX. 12

| | |
|---|---|
| **From:** | Kravitz, Carl S. <csk1@zuckerman.com> |
| **Sent:** | Wednesday, November 23, 2016 2:56 PM |
| **To:** | Brian McTigue <bmctigue@mctiguelaw.com> |
| **Subject:** | Fwd: SST - ERISA Fee and Expense Allocations |
| **Attach:** | image009.jpg; ATT00001.htm; image010.jpg; ATT00002.htm; image011.jpg; ATT00003.htm; image012.jpg; ATT00004.htm; SST - Fee and Expense Allocation for ERISA Actions (1668269_1).DOC; ATT00005.htm |

At least we got the numbers up a bit!!

Sent from my iPhone

Begin forwarded message:

> **From:** "Zeiss, Nicole" <NZeiss@labaton.com>
> **Date:** November 23, 2016 at 10:17:24 AM EST
> **To:** Lynn Sarko <lsarko@kellerrohrback.com>, 'David Copley' <dcopley@KellerRohrback.com>, 'Brian McTigue' <bmctigue@mctiguelaw.com>, "'Kravitz, Carl S.'" <ckravitz@zuckerman.com>
> **Cc:** "Sucharow, Lawrence" <LSucharow@labaton.com>, "Goldsmith, David" <dgoldsmith@labaton.com>
> **Subject: SST - ERISA Fee and Expense Allocations**
>
> Dear all,
>
> Attached and below are tables showing the ERISA fee and expense allocations. Please let us know if you have any questions or changes. Thanks

**FEES AND LITIGATION EXPENSES:**

**Total Fee Awarded:** $74,541,250.00, plus accrued interest to be calculated

**ERISA Fee Allocation 10%:** $7,454,125.00,[1] plus accrued interest to be calculated

**Total ERISA Expenses Awarded:** $431,613.31, without interest

**FEE ALLOCATION**

| Firm | Fee |
|---|---|
| Keller Rohrback LLP | $2,484,708.33 |
| McTigue Law LLP | $2,484,708.34 |
| Zuckerman Spaeder LLP | $2,484,708.33 |
| **TOTAL** | **$7,454,125.00** |

**EXPENSE ALLOCATION**

| Firm | Expenses |
|---|---|
| Keller Rohrback LLP, on behalf of itself and -Hutchings Barsamian Mandelcorn LLP | $342,270.63 $496.00 |

ZS000029

| | |
|---|---|
| McTigue Law LLP, on behalf of itself and | $41,412.90 |
| - Beins Axelrod PC | $1,306.83 |
| - Richardson Patrick Westbrook & Brickman LLC | $7,456.66 |
| - Feinberg Campbell & Zack PC | $0.00 |
| Zuckerman Spaeder LLP | $38,670.29 |
| **TOTAL** | **$431,613.31** |

1 Although the fee agreement with ERISA Counsel provides for a 9% allocation from the awarded fee, counsel in the ARTRS Action have determined to increase the allocation to 10% in light of the excellent work and contribution of ERISA Counsel.

ZS000030

# EX. 13

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**

**MEMORANDUM**

From:   Maritza Bolano,

To:     Files

CC:     Todd S. Kussin

Re:     Contracts/RFPs Topic - ATRS vs. State Street Class Action, No. 11-CV-10230 (MLW)

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



Confidential: Produced Pursuant to Court Order.

**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



**ATTORNEY-CLIENT PRIVILEGE – ATTORNEY WORK PRODUCT**



# EX. 14

| | |
|---|---|
| **From:** | Michael Lesser |
| **Sent:** | Wednesday, March 11, 2015 1:44 PM |
| **To:** | Garrett Bradley |
| **Cc:** | Michael Thornton; Evan Hoffman |
| **Subject:** | Re: State street |

He's looking into it.


On Mar 11, 2015, at 12:53 PM, Garrett Bradley <GBradley@tenlaw.com> wrote:

Ask Rodgers

**From:** Michael Lesser
**Sent:** Wednesday, March 11, 2015 12:43 PM
**To:** Garrett Bradley
**Cc:** Michael Thornton; Evan Hoffman
**Subject:** RE: State street

The invoice and email date are 2/6.  The invoice shows billing through 2/28. Did they bill for time before it was incurred?

**From:** Garrett Bradley
**Sent:** Wednesday, March 11, 2015 12:42 PM
**To:** Michael Lesser
**Cc:** Michael Thornton; Evan Hoffman
**Subject:** Re: State street

double count for what?

Garrett

On Mar 11, 2015, at 11:54 AM, Michael Lesser <MLesser@tenlaw.com> wrote:

Garrett:  Just following up on the doc review recordkeeping.  The attached invoice is dated 2/6/2015 (and was sent by e-mail on 2/6 as well)  but includes billables through 2/28.  Can you ask them to confirm whether these hours were billed for 2/6 – 2/28?  I don't want us to double-count anything.

Thanks,

M

**From:** Garrett Bradley
**Sent:** Friday, February 06, 2015 3:48 PM
**To:** Michael Thornton
**Cc:** Michael Lesser
**Subject:** Fwd: State street

1

Confidential: Produced Pursuant to Court Order.

First month bill. I have not heard a thing from Chiplock on how he is doing....He has not been playing nice in the sand box lately. I emailed him yesterday asking for a call with Belfi to discuss this. No response.

This is the best way to jack up the loadstar though.

Garrett

Begin forwarded message:

> **From:** "Ng, Cindy" <CNg@labaton.com>
> **Date:** February 6, 2015 at 3:44:56 PM EST
> **To:** "Garrett J. Bradley" <gbradley@tenlaw.com>
> **Cc:** Anastasia Maranian <AMaranian@tenlaw.com>, "Stroock, Naomi" <nstroock@labaton.com>, "Politano, Ray" <rpolitano@labaton.com>
> **Subject: RE: State street**
>
> Garrett,
>
> Attached is the invoice regarding State Street document review.



**Cindy Ng | Senior Accountant**
140 Broadway, New York, New York 10005
T: (212) 907-0657 | F: (212) 883-7556
E: cng@labaton.com | W: www.labaton.com



\*\*\*Privilege and Confidentiality Notice\*\*\*

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

2

Confidential: Produced Pursuant to Court Order.                                        TLF-SST-011125

&lt;State Street - 1020347 (Feb 2015).pdf&gt;

3

Confidential: Produced Pursuant to Court Order.

# EX. 15

Message

| From: | Ng, Cindy [CNg@labaton.com] |
|---|---|
| Sent: | 4/9/2015 3:49:35 PM |
| To: | Garrett J. Bradley [gbradley@tenlaw.com] |
| CC: | 'Anastasia Maranian' [AMaranian@tenlaw.com]; Stroock, Naomi [nstroock@labaton.com]; Politano, Ray [rpolitano@labaton.com] |
| Subject: | RE: State street |
| Attachments: | State Stree - 1020423 (April 2015).pdf |

Garrett,

Attached is the April invoice regarding State Street document review.

## Labaton Sucharow

**Cindy Ng | Senior Accountant**
140 Broadway, New York, New York 10005
T: (212) 907-0657 | F: (212) 883-7556

E: cng@labaton.com | W: www.labaton.com



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                        LBS003775

# Labaton
# Sucharow

Mr. Garrett Bradley
Thornton Law Firm LLP
100 Summer Street, 30th Floor
Boston, MA 02110

April 9, 2015
ID: 016576.0001
Invoice # 1020423

RE: State Street Corporation-Class Action

For Document Reviewer Services Rendered from April 1, 2015 through April 30, 2015.

| Total Hours | Rates | Amount |
|---|---|---|
| 1600.00 | $50.00 | $80,000.00 |

Adjustment - March 2015 (150.0 Hours)       $ 7,500.00

Invoice Amount                                    $87,500.00

Past Due Invoice#1020393 - 03/09/2015             $45,710.00

Total Amount Due                                 **$133,210.00**

*Please make checks payable to Labaton Sucharow LLP*

Expenses and disbursements, if any, recorded after date
of statement will appear on a later statement
Tax Identification Number 13-1987846

www.labaton.com      LABATON SUCHAROW LLP  | 140 BROADWAY | NEW YORK, NY 10005 | T 212-907-0700 | F 212-818-0477

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                    LBS003776

# EX. 16

Christopher J. Keller
Partner
212 907 0853 direct
212 883 7053 fax
email ckeller@labaton.com

May 4, 2011

**<u>VIA ELECTRONIC MAIL</u>**
Michael P. Thornton, Esq. (MThornton@tenlaw.com)
Garrett J. Bradley, Esq. (GBradley@tenlaw.com)
Thornton & Naumes LLP
100 Summer Street, 30th Floor
Boston, MA  02110

Steven E. Fineman, Esq. (sfineman@lchb.com)
Daniel P. Chiplock, Esq. (dchiplock@lchb.com)
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413

Richard M. Heimann, Esq. (rheimann@lchb.com)
Lexi J. Hazam, Esq. (lhazam@lchb.com)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

Re:     *Arkansas Teacher Retirement System v. State Street Corporation*
          Civil Action No. 11-cv-10230-MLW (D. Mass.)

Dear Counsel:

I am pleased we were able to come to terms and will be working together in this matter.  I have outlined below the terms of the agreement we have reached.

Arkansas Teacher Retirement System ("Arkansas Teacher") will be represented in the action by Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel, and Thornton & Naumes LLP ("Thornton & Naumes") and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") will serve as additional counsel for Arkansas Teacher in this action.

Arkansas Teacher has made an application to the Court for appointment of its selection of Labaton Sucharow as Interim Lead Counsel.  In the event that the Court appoints Labaton Sucharow as interim Lead Counsel and subsequently as Lead Counsel, we agree as follows:

May 4, 2011
Page 2

We agree that our firms will act in good faith to divide the work so that each of the firms performs at least 20% of the work and each will receive at least 20% of the fees awarded in this matter.  The remaining 40% of the fees awarded shall be allocated in good faith at the conclusion of the case based on each firms' actual time spent on this matter..

There is an "off the top" obligation to referring counsel of 6% of the fees awarded.  In addition, we agree to exchange on a quarterly basis our then current lodestar reports showing quarterly and aggregate billings in this matter.

We also agree that any dispute arising under this agreement or in this case may not be litigated in court and that all such disputes or claims shall be resolved, upon election of any party, through binding arbitration conducted pursuant to the applicable rules of the American Arbitration Association in any jurisdiction in which any of the firms reside.

Please sign below indicating your agreement to these terms.

Very truly yours,


Christopher Keller, Esq.


Accepted and agreed by:


Thornton & Naumes LLP


_____          Date: _____
Michael P. Thornton, Esq.



Lieff Cabraser Heimann & Bernstein, LLP

Confidential: Produced Pursuant to Court Order.

May 4, 2011
Page 3

_____      Date: _____
Steven E. Fineman, Esq.

Confidential: Produced Pursuant to Court Order.                                                    TLF-SST-033913

# EX. 17

| From: | Chiplock, Daniel P. <DCHIPLOCK@lchb.com> |
|---|---|
| Sent: | Friday, August 28, 2015 7:04 PM |
| To: | Sucharow, Lawrence |
| Cc: | Garrett J. Bradley; Michael Thornton; Lieff, Robert L. |
| Subject: | Re: SST--Proposed Revision to Term Sheet for DOL Deal |

Not to be difficult, but I don't see how that matters. It would seem that the respective lodestars, contributions, etc. are not terribly divergent. And not a skeptical judge, as far as we can tell. A very different situation, in other words, from BNYM (which I know doesn't involve you, Larry, but seems to be coloring this discussion).

On Aug 28, 2015, at 6:27 PM, Sucharow, Lawrence <LSucharow@labaton.com<mailto:LSucharow@labaton.com>> wrote:

For one thing, we will know the actual fees awarded by the court.

Sent from my iPhone

On Aug 28, 2015, at 2:21 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:

I guess I don't understand the reluctance to square up the percentages. What don't we understand about the firm's respective contributions that we will understand better 3-4 months from now?

From: Garrett Bradley [mailto:GBradley@tenlaw.com]
Sent: Friday, August 28, 2015 2:11 PM
To: Chiplock, Daniel P.
Cc: Sucharow, Lawrence; Michael Thornton; Lieff, Robert L.
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

I see no need for that at this time. It can even be done after final approval.

Garrett

On Aug 28, 2015, at 2:00 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
Those were the contours as I understood them, yes – after costs, 20% of the fee to be allocated to each of the three firms, with the remaining 40% to be allocated based on contributions to the outcome. I don't think anyone would dispute that Labaton as lead counsel should get more of that 40% than the other two firms. But it may be beneficial to figure out what the breakdown is going to be and get it down in writing now.

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Friday, August 28, 2015 1:50 PM
To: Chiplock, Daniel P.
Cc: Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

Dan, agreement among our three firms it's that after payment of all of the council I was three firms show each receive 20% with the 40% balance to be determined at a later date. If this is the understanding you are referring to but I can't confirm it. Please advise.

1

Confidential: Produced Pursuant to Court Order.

Sent from my iPhone

On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
Mike, Garrett – Hope you're well – please see below.  If we can figure this out early next week that may help speed the process.

Thanks,

Dan

From: Chiplock, Daniel P.
Sent: Friday, August 28, 2015 1:33 PM
To: 'Sucharow, Lawrence'
Cc: Zeiss, Nicole; Lieff, Robert L.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

The purpose of my email was just to get your reaction, Larry, since these are your drafts.  Thank you for responding quickly, and for giving me your reaction.  I would love to include them so we can move forward promptly.  I'll re-send.

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Friday, August 28, 2015 1:28 PM
To: Chiplock, Daniel P.
Cc: Zeiss, Nicole; Lieff, Robert L.
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

I don't know why you left the Thornton firm off this email since they are party to any understanding we have and are therefore he sensual to any memorialization of that understanding.  If you more willing to resend your email and include them,we can see if there is any disagreement as to what our understanding is/was.
Larry

Sent from my iPhone

On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
Larry and Nicole:

Attached are my redlines to the preliminary approval order and final judgment.  These edits are consistent with the Court's January 2012 order concerning leadership structure.

I'm emailing just you (and copying Bob) so as to try not to make a big thing over this, but I do think it's appropriate to memorialize what the fee allocation amongst customer class counsel is going to be (consistent with the understanding that the firms have been operating under for a couple years now) before we proceed much further.  I think we'd be willing to support Lead Counsel having final authority over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united front against a perpetual troublemaker like McTigue—which should be in everyone's interest--provided we had some basic written comfort ourselves.  I don't think it's too early for that, given the interest in seeing the funds come in this year.

Thanks,
Dan

From: Zeiss, Nicole [mailto:NZeiss@labaton.com]
Sent: Friday, August 28, 2015 9:53 AM

2

Confidential: Produced Pursuant to Court Order.                                              TLF-SST-040632

To: Chiplock, Daniel P.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Thank you!

<image001.jpg><http://labaton.com/>
Nicole M. Zeiss | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0867  |  F: (212) 883-7067
E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://labaton.com/>

<image002.gif><http://www.linkedin.com/company/labaton-sucharow-llp>
<image003.gif><https://twitter.com/LabatonSucharow> <image004.gif><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

From: Chiplock, Daniel P. [mailto:DCHIPLOCK@lchb.com]
Sent: Friday, August 28, 2015 9:29 AM
To: Sucharow, Lawrence
Cc: Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com<mailto:rlieff@lieff.com>; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

OK, sounds good.  I will also get you whatever edits I have to the settlement docs by noon.

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Friday, August 28, 2015 9:28 AM
To: Chiplock, Daniel P.
Cc: Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com<mailto:rlieff@lieff.com>; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

I am speaking to Paine today at around 10 AM to both report to him and get his update.
I'll report back and advise whether we should send the revised term sheet. I expect we should but let's hold off for another hour.

Sent from my iPhone

On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
This looks OK to me, thanks.  I'm happy to send it (after you've done the other redline) to Paine, if you like.  Or someone else can, no matter.

From: Zeiss, Nicole [mailto:NZeiss@labaton.com]
Sent: Thursday, August 27, 2015 3:27 PM
To: Lynn Sarko; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Chiplock, Daniel P.; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Rogers, Michael H.; Sucharow, Lawrence; Goldsmith, David

3

Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Dear all,

We've had some additional exchanges about the term sheet and, specifically, para 8(n).  I believe the attached draft resolves those issues and that there is consensus that the attached accurately reflects the basic DOL fee deal.  If you disagree, please let us know asap.

When someone wants to send this to Paine, or the DOL, I will need a run a different redline for them.

Thanks

<image001.jpg><http://labaton.com/>
Nicole M. Zeiss | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0867  |  F: (212) 883-7067
E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>

<image002.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image003.jpg><https://twitter.com/LabatonSucharow> <image004.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

From: Zeiss, Nicole
Sent: Wednesday, August 26, 2015 5:09 PM
To: Sucharow, Lawrence; Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Attached is the term sheet showing the changes discussed below, plus one additional change to para 8(n) that might help.

Thanks

<image005.jpg><http://labaton.com/>
Nicole M. Zeiss | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0867  |  F: (212) 883-7067
E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>

4

Confidential: Produced Pursuant to Court Order.                                      TLF-SST-040634

<image006.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image007.jpg><https://twitter.com/LabatonSucharow> <image008.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

From: Sucharow, Lawrence
Sent: Wednesday, August 26, 2015 4:34 PM
To: Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Zeiss, Nicole; Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Then we can probably forget my proposed changes.

From: Lynn Sarko [mailto:lsarko@KellerRohrback.com]
Sent: Wednesday, August 26, 2015 4:26 PM
To: Sucharow, Lawrence; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Zeiss, Nicole; Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Sure.   If it works for them – its fine with me

Lynn Lincoln Sarko
Managing Partner

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Wednesday, August 26, 2015 1:25 PM
To: Lynn Sarko <lsarko@KellerRohrback.com<mailto:lsarko@KellerRohrback.com>>; Goldsmith, David <dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>>; 'rlieff@lieff.com<mailto:rlieff@lieff.com>' <rlieff@lieff.com<mailto:rlieff@lieff.com>>; Daniel P. Chiplock <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>>; Michael Thornton <MThornton@tenlaw.com<mailto:MThornton@tenlaw.com>>; Garrett J. Bradley <gbradley@tenlaw.com<mailto:gbradley@tenlaw.com>>; Michael Lesser <MLesser@tenlaw.com<mailto:MLesser@tenlaw.com>>; 'Evan Hoffman' <EHoffman@tenlaw.com<mailto:EHoffman@tenlaw.com>>; 'Kravitz, Carl S.' <ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>; 'Brian McTigue' <bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>
Cc: Zeiss, Nicole <NZeiss@labaton.com<mailto:NZeiss@labaton.com>>; Rogers, Michael H. <MRogers@labaton.com<mailto:MRogers@labaton.com>>
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Can we leave para 8(n) the general way it is and protect the DOL through the express provision of para 12 limiting fees charged to ERISA allocation to $10.9 million?

Confidential: Produced Pursuant to Court Order.                                    TLF-SST-040635

From: Lynn Sarko [mailto:lsarko@KellerRohrback.com]
Sent: Wednesday, August 26, 2015 3:42 PM
To: Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock; Michael Thornton; Garrett J.
Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Sucharow, Lawrence; Zeiss, Nicole; Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

David
Thanks for sending this.  Sorry, I had misunderstood what you were saying on our call earlier today.

Two things:

1.  I do think the language you proposed for paragraph 12 works—but just change it to $10.9 million.
2. On paragraph 8(n)- the problem is the word "fees"—since the DOL has given us a hard number for ERISA fees—that
won't be going up or down.   So—question—can we get rid of the word "fees" in this paragraph—does it still work?

What do you think??

Lynn

Lynn Lincoln Sarko
Managing Partner

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>

From: Goldsmith, David [mailto:dgoldsmith@labaton.com]
Sent: Wednesday, August 19, 2015 2:59 PM
To: 'rlieff@lieff.com<mailto:rlieff@lieff.com>' <rlieff@lieff.com<mailto:rlieff@lieff.com>>; Daniel P. Chiplock
<DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>>; Michael Thornton
<MThornton@tenlaw.com<mailto:MThornton@tenlaw.com>>; Garrett J. Bradley
<gbradley@tenlaw.com<mailto:gbradley@tenlaw.com>>; Michael Lesser
<MLesser@tenlaw.com<mailto:MLesser@tenlaw.com>>; 'Evan Hoffman'
<EHoffman@tenlaw.com<mailto:EHoffman@tenlaw.com>>; Lynn Sarko
<lsarko@KellerRohrback.com<mailto:lsarko@KellerRohrback.com>>; 'Kravitz, Carl S.'
<ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>; 'Brian McTigue'
<bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>
Cc: Sucharow, Lawrence <LSucharow@labaton.com<mailto:LSucharow@labaton.com>>; Zeiss, Nicole
<NZeiss@labaton.com<mailto:NZeiss@labaton.com>>; Rogers, Michael H.
<MRogers@labaton.com<mailto:MRogers@labaton.com>>
Subject: SST--Proposed Revision to Term Sheet for DOL Deal

All:  The below reflects our proposed revisions to the Term Sheet (in red boldface) to reflect the imminent deal with the
DOL on fees and expenses as certain of us discussed this morning (DOL has advised that they want the deal
memorialized in the Term Sheet).  Please comment.  Thanks.

6

Confidential: Produced Pursuant to Court Order.                                                          TLF-SST-040636

8(n).      Plan of Allocation. . . . The amount allocated to the ERISA Plans and Investment Companies and other Settlement Class Members shall be increased or decreased by their proportional share (with respect to the Class Settlement Amount) of any interest, costs (including costs of notice and administration), expenses (including taxes), and fees and expenses of Plaintiffs' Counsel obtained or paid pursuant to permission of the Court.  However, notice and administration expenses attributable solely to the claims of Class Members categorized as Group Trusts shall be paid solely out of the ERISA allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and shall not be paid out of the Class Settlement Amount.

12.      Plaintiffs' Counsel's Attorneys' Fees and Expenses.      Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon award by the Court into an escrow account governed by an escrow agreement between Interim Lead Counsel, SSBT and a bank or other institution agreed upon by SSBT and Interim Lead Counsel (the "Interim Lead Counsel Escrow Account"), notwithstanding any appeals of the Settlement or the fee and expense award.  Plaintiffs' Counsel shall may apply for their fees and expenses and any service awards for Plaintiffs against the entire Class Settlement Amount, but in no event shall more than Ten Million Nine Hundred Thousand Dollars ($10,900,000.00) in fees be paid out of the $60 million portion of the Class Settlement Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.  In the event that the Effective Date does not occur or SSBT promptly provides written notice representing in good faith that the Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement, and/or SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be obliged to pay to SSBT all amounts paid to them from the Interim Lead Counsel Escrow Account within fourteen (14) business days.  The prevailing party in any action to collect any amount due under this paragraph shall be entitled to recover interest and all of its costs of collection, including attorneys' fees.  Should the fee and expense award be reduced by the Court or on appeal, all such fees and expenses received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid to the Class Escrow Account, along with interest at the Class Escrow Account rate of interest.

<image005.jpg><http://www.labaton.com/>
David J. Goldsmith | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>

<image006.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image006.jpg><https://twitter.com/LabatonSucharow>  <image006.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

Confidential: Produced Pursuant to Court Order.                                                                    TLF-SST-040637

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
<LCHB_iManage_1271399_1.DOC>
<LCHB_iManage_1271400_1.DOCX>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
<LCHB_iManage_1271399_1.DOC>
<LCHB_iManage_1271400_1.DOCX>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.                    TLF-SST-040638

# EX. 18

| From: | Sucharow, Lawrence <LSucharow@labaton.com> |
| Sent: | Friday, August 28, 2015 1:40 PM |
| To: | Daniel P. Chiplock |
| Cc: | Garrett J. Bradley; Michael Thornton; Robert L. Lieff |
| Subject: | Re: SST--Proposed Revision to Term Sheet for DOL Deal |

Also, I believe that there are other cases and other agreements which are influencing people's desire to either reach agreement now or later.

I don't have a dog in the hunt and don't want to be drawn into it.

I apologize for any mistakes but I am not in a place where I can edit my emails so I'm just dictating them I'm hoping that spell correct doesn't fuck me up too much.&

Sent from my iPhone

On Aug 28, 2015, at 2:21 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:

> I guess I don't understand the reluctance to square up the percentages.& What don't we understand about the firm's respective contributions that we will understand better 3-4 months from now?
> &
> **From:** Garrett Bradley [mailto:GBradley@tenlaw.com]
> **Sent:** Friday, August 28, 2015 2:11 PM
> **To:** Chiplock, Daniel P.
> **Cc:** Sucharow, Lawrence; Michael Thornton; Lieff, Robert L.
> **Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> I see no need for that at this time. & It can even be done after final approval.
>
> Garrett
>
> On Aug 28, 2015, at 2:00 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:
>
>> Those were the contours as I understood them, yes – after costs, 20% of the fee to be allocated to each of the three firms, with the remaining 40% to be allocated based on contributions to the outcome.& I don't think anyone would dispute that Labaton as lead counsel should get more of that 40% than the other two firms.& But it may be beneficial to figure out what the breakdown is going to be and get it down in writing now.
>> &
>> **From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
>> **Sent:** Friday, August 28, 2015 1:50 PM
>> **To:** Chiplock, Daniel P.
>> **Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
>> **Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
>> &
>> Dan, agreement among our three firms it's that after payment of all of the council I was three firms show each receive 20% with the 40% balance to be determined at a later

1

date. If this is the understanding you are referring to but I can't confirm it. Please advise.

Sent from my iPhone

On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:

> Mike, Garrett – Hope you're well – please see below.& If we can figure
> this out early next week that may help speed the process.
>
> Thanks,
> &
> Dan
> &
> ........................................................
> **From:** Chiplock, Daniel P.
> **Sent:** Friday, August 28, 2015 1:33 PM
> **To:** 'Sucharow, Lawrence'
> **Cc:** Zeiss, Nicole; Lieff, Robert L.
> **Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> The purpose of my email was just to get your reaction, Larry, since these
> are your drafts.& Thank you for responding quickly, and for giving me
> your reaction.& I would love to include them so we can move forward
> promptly.& I'll re-send.&
> &
> ........................................................
> **From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> **Sent:** Friday, August 28, 2015 1:28 PM
> **To:** Chiplock, Daniel P.
> **Cc:** Zeiss, Nicole; Lieff, Robert L.
> **Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> I don't know why you left the Thornton firm off this email since they are
> party to any understanding we have and are therefore he sensual to any
> memorialization of that understanding. & If you more willing to resend
> your email and include them,we can see if there is any disagreement as
> to what our understanding is/was.
> Larry
>
> Sent from my iPhone
>
> On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P.
> &<DCHIPLOCK@lchb.com&>wrote:
>
>> Larry and Nicole:
>> &
>> Attached are my redlines to the preliminary approval
>> order and final judgment.& These edits are consistent
>> with the Court's January 2012 order concerning
>> leadership structure.&
>> &
>> I'm emailing just you (and copying Bob) so as to try not
>> to make a big thing over this, but I do think it's
>> appropriate to memorialize what the fee allocation
>> amongst customer class counsel is going to be

2

(consistent with the understanding that the firms have been operating under for a couple years now) before we proceed much further.& & I think we'd be willing to support Lead Counsel having final authority over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united front against a perpetual troublemaker like McTigue—which should be in everyone's interest--provided we had some basic written comfort ourselves.& I don't think it's too early for that, given the interest in seeing the funds come in this year.

&

Thanks,

Dan

&

---

**From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
**Sent:** Friday, August 28, 2015 9:53 AM
**To:** Chiplock, Daniel P.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

Thank you!

&

&

&

&

&

&

&

&<image001.jpg&>

**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 |& F: (212) 883-7067
E: nzeiss@labaton.com& |& W: www.labaton.com
&
&<image002.gif&>& &<image003.gif&>& &<image004.gif&>

&

---

**From:** Chiplock, Daniel P.
[mailto:DCHIPLOCK@lchb.com]
**Sent:** Friday, August 28, 2015 9:29 AM
**To:** Sucharow, Lawrence
**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

OK, sounds good.& I will also get you whatever edits I have to the settlement docs by noon.

&

---

**From:** Sucharow, Lawrence
[mailto:LSucharow@labaton.com]

3

TLF-SST-053089

**Sent:** Friday, August 28, 2015 9:28 AM
**To:** Chiplock, Daniel P.
**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael
Thornton; Garrett J. Bradley; Michael Lesser; Evan
Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers,
Michael H.; Goldsmith, David
**Subject:** Re: SST--Proposed Revision to Term Sheet for
DOL Deal
&
I am speaking to Paine today at around 10 AM to both
report to him and get his update.
I'll report back and advise whether we should send the
revised term sheet. I expect we should but let's hold off
for another hour.

Sent from my iPhone

On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P.
&<DCHIPLOCK@lchb.com&>wrote:

> This looks OK to me, thanks.& I'm
> happy to send it (after you've done the
> other redline) to Paine, if you like.& Or
> someone else can, no matter.
> &
> _____
> **From:** Zeiss, Nicole
> [mailto:NZeiss@labaton.com]
> **Sent:** Thursday, August 27, 2015 3:27
> PM
> **To:** Lynn Sarko; 'rlieff@lieff.com';
> Chiplock, Daniel P.; Michael Thornton;
> Garrett J. Bradley; Michael Lesser; 'Evan
> Hoffman'; 'Kravitz, Carl S.'; 'Brian
> McTigue'
> **Cc:** Rogers, Michael H.; Sucharow,
> Lawrence; Goldsmith, David
> **Subject:** RE: SST--Proposed Revision to
> Term Sheet for DOL Deal
> &
> Dear all,
> &
> We've had some additional exchanges
> about the term sheet and, specifically,
> para 8(n).& I believe the attached draft
> resolves those issues and that there is
> consensus that the attached accurately
> reflects the basic DOL fee deal.& If you
> disagree, please let us know asap.
> &
> When someone wants to send this to
> Paine, or the DOL, I will need a run a
> different redline for them.
> &
> Thanks

4

&
&
&
&
&
&
&
&<image001.jpg&>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York
10005
T: (212) 907-0867 |& F: (212) 883-7067
E: nzeiss@labaton.com& |& W:
www.labaton.com
&
&<image002.jpg&>& &<image003.jpg&
>& &<image004.jpg&>
&

**From:** Zeiss, Nicole
**Sent:** Wednesday, August 26, 2015
5:09 PM
**To:** Sucharow, Lawrence; Lynn Sarko;
Goldsmith, David; 'rlieff@lieff.com';
Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan
Hoffman'; 'Kravitz, Carl S.'; 'Brian
McTigue'
**Cc:** Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to
Term Sheet for DOL Deal
&
Attached is the term sheet showing the
changes discussed below, plus one
additional change to para 8(n) that
might help.
&
Thanks
&
&
&
&
&
&
&
&<image005.jpg&>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York
10005
T: (212) 907-0867 |& F: (212) 883-7067
E: nzeiss@labaton.com& |& W:
www.labaton.com
&
&<image006.jpg&>& &<image007.jpg&
>& &<image008.jpg&>
&

5

**From:** Sucharow, Lawrence
**Sent:** Wednesday, August 26, 2015
4:34 PM
**To:** Lynn Sarko; Goldsmith, David;
'rlieff@lieff.com'; Daniel P. Chiplock;
Michael Thornton; Garrett J. Bradley;
Michael Lesser; 'Evan Hoffman'; 'Kravitz,
Carl S.'; 'Brian McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to
Term Sheet for DOL Deal
&
Then we can probably forget my
proposed changes.
&

---

**From:** Lynn Sarko
[mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015
4:26 PM
**To:** Sucharow, Lawrence; Goldsmith,
David; 'rlieff@lieff.com'; Daniel P.
Chiplock; Michael Thornton; Garrett J.
Bradley; Michael Lesser; 'Evan
Hoffman'; 'Kravitz, Carl S.'; 'Brian
McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to
Term Sheet for DOL Deal
&
Sure.& & If it works for them – its fine
with me
&
**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&

---

**From:** Sucharow, Lawrence
[mailto:LSucharow@labaton.com]
**Sent:** Wednesday, August 26, 2015 1:25
PM
**To:** Lynn Sarko
&<lsarko@KellerRohrback.com&>;
Goldsmith, David
&<dgoldsmith@labaton.com&>;
'rlieff@lieff.com' &<rlieff@lieff.com&>;
Daniel P. Chiplock
&<DCHIPLOCK@lchb.com&>; Michael
Thornton
&<MThornton@tenlaw.com&>; Garrett
J. Bradley &<gbradley@tenlaw.com&>;

6

Confidential: Produced Pursuant to Court Order.

TLF-SST-053092

Michael Lesser
&<MLesser@tenlaw.com&>; 'Evan
Hoffman'
&<EHoffman@tenlaw.com&>; 'Kravitz,
Carl S.' &<ckravitz@zuckerman.com&>;
'Brian McTigue'
&<bmctigue@mctiguelaw.com&>
**Cc:** Zeiss, Nicole
&<NZeiss@labaton.com&>; Rogers,
Michael H.
&<MRogers@labaton.com&>
**Subject:** RE: SST--Proposed Revision to
Term Sheet for DOL Deal
&
Can we leave para 8(n) the general way
it is and protect the DOL through the
express provision of para 12 limiting
fees charged to ERISA allocation to
$10.9 million?
&

**From:** Lynn Sarko
[mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015
3:42 PM
**To:** Goldsmith, David; 'rlieff@lieff.com';
Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan
Hoffman'; 'Kravitz, Carl S.'; 'Brian
McTigue'
**Cc:** Sucharow, Lawrence; Zeiss, Nicole;
Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to
Term Sheet for DOL Deal
&
David
Thanks for sending this.& Sorry, I had
misunderstood what you were saying
on our call earlier today.
&
Two things:
&
1.& I do think the language you
proposed for paragraph 12 works—but
just change it to $10.9 million.
2. On paragraph 8(n)- the problem is
the word "fees"—since the DOL has
given us a hard number for ERISA fees—
that won't be going up or
down.& & So—question—can we get
rid of the word "fees" in this
paragraph—does it still work?
&
What do you think??

7

Confidential: Produced Pursuant to Court Order.

TLF-SST-053093

&
Lynn
&
**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&

---

**From:** Goldsmith, David
[mailto:dgoldsmith@labaton.com]
**Sent:** Wednesday, August 19, 2015 2:59
PM
**To:** 'rlieff@lieff.com'
&<rlieff@lieff.com&>; Daniel P.
Chiplock &<DCHIPLOCK@lchb.com&>;
Michael Thornton
&<MThornton@tenlaw.com&>; Garrett
J. Bradley &<gbradley@tenlaw.com&>;
Michael Lesser
&<MLesser@tenlaw.com&>; 'Evan
Hoffman'
&<EHoffman@tenlaw.com&>; Lynn
Sarko
&<lsarko@KellerRohrback.com&>;
'Kravitz, Carl S.'
&<ckravitz@zuckerman.com&>; 'Brian
McTigue'
&<bmctigue@mctiguelaw.com&>
**Cc:** Sucharow, Lawrence
&<LSucharow@labaton.com&>; Zeiss,
Nicole &<NZeiss@labaton.com&>;
Rogers, Michael H.
&<MRogers@labaton.com&>
**Subject:** SST--Proposed Revision to
Term Sheet for DOL Deal
&
All:& The below reflects our proposed
revisions to the Term Sheet (in **red
boldface**) to reflect the imminent deal
with the DOL on fees and expenses as
certain of us discussed this morning
(DOL has advised that they want the
deal memorialized in the Term
Sheet).& Please comment.& Thanks.
&
&

      8(n).& & & & & & &  **Plan of
Allocation**. & . . . The amount allocated
to the ERISA Plans and Investment

8

Companies and other Settlement Class Members shall be increased or decreased by their proportional share (with respect to the Class Settlement Amount) of any interest, costs (including costs of notice and administration), expenses (including taxes), ~~and fees~~ and expenses of Plaintiffs' Counsel obtained or paid pursuant to permission of the Court.& **However, notice and administration expenses attributable solely to the claims of Class Members categorized as Group Trusts shall be paid solely out of the ERISA allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and shall not be paid out of the Class Settlement Amount.**
&

12.& & & & & & & & & **Plaintiff s' Counsel's Attorneys' Fees and Expenses.**& & & & & Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon award by the Court into an escrow account governed by an escrow agreement between Interim Lead Counsel, SSBT and a bank or other institution agreed upon by SSBT and Interim Lead Counsel (the "Interim Lead Counsel Escrow Account"), notwithstanding any appeals of the Settlement or the fee and expense award.& Plaintiffs' Counsel ~~shall~~ **may** apply for their fees and expenses and any service awards for Plaintiffs against the entire Class Settlement Amount, **but in no event shall more than Ten Million Nine Hundred Thousand Dollars ($10,900,000.00) in fees be paid out of the $60 million portion of the Class Settlement Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.** & In the event that the Effective Date does not occur or SSBT promptly provides written notice representing in good faith that the Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement,

9

TLF-SST-053095

and/or SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be obliged to pay to SSBT all amounts paid to them from the Interim Lead Counsel Escrow Account within fourteen (14) business days.& The prevailing party in any action to collect any amount due under this paragraph shall be entitled to recover interest and all of its costs of collection, including attorneys' fees.& Should the fee and expense award be reduced by the Court or on appeal, all such fees and expenses received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid to the Class Escrow Account, along with interest at the Class Escrow Account rate of interest.

&
&
&
&
&
&
&<image005.jpg&>
**David J. Goldsmith | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com&  |& W: www.labaton.com

&<image006.jpg&>& & &<image006.jpg&>& & &<image006.jpg&>
&

***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or

Confidential: Produced Pursuant to Court Order.

TLF-SST-053096

distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

&

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

&<LCHB_iManage_1271399_1.DOC&>

&<LCHB_iManage_1271400_1.DOCX&>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please

11

notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

&<LCHB_iManage_1271399_1.DOC&>

&<LCHB_iManage_1271400_1.DOCX&>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.

TLF-SST-053098

# EX. 19

**From:**      Michael Lesser
**Sent:**      Sunday, August 30, 2015 1:05 PM
**To:**        Evan Hoffman
**Subject:**   Fwd: State Street

Begin forwarded message:

> **From:** "Chiplock, Daniel P." <DCHIPLOCK@lchb.com>
> **Date:** August 30, 2015 at 12:49:38 PM EDT
> **To:** 'Michael Thornton' <MThornton@tenlaw.com>, Garrett Bradley <GBradley@tenlaw.com>
> **Cc:** "Lieff, Robert L." <RLIEFF@lchb.com>, "rlieff@lieff.com" <rlieff@lieff.com>, Michael
> Lesser <MLesser@tenlaw.com>
> **Subject: RE: State Street**
>
> Excellent and I would expect and anticipate nothing less, Mike. I just know what some of our
> colleagues can do when presented with an easy target in order to hold up the process, and we
> don't want to do that. Thanks.
>
> -----Original Message-----
> From: Michael Thornton [mailto:MThornton@tenlaw.com]
> Sent: Sunday, August 30, 2015 12:45 PM
> To: Chiplock, Daniel P.; Garrett Bradley
> Cc: Lieff, Robert L.; rlieff@lieff.com; Michael Lesser
> Subject: Re: State Street
>
> Thank you for the tip Dan. I did say something like that on the call, but preceded it by saying it
> was a guess and that I would have to ask Mike Lesser for the actual figure at that point which of
> course is not complete as with the other firms. I appreciate your concern and I guess I can only
> assure you that it generally our policy to truthful and accurate hour claims.
>
> Original Message
> From: Chiplock, Daniel P.
> Sent: Sunday, August 30, 2015 12:24 PM
> To: Garrett Bradley
> Cc: Lieff, Robert L.; Michael Thornton; rlieff@lieff.com
> Subject: RE: State Street
>
> No problem. It may be tomorrow since I have to go back to archives.
>
> In the meantime, while we're on the subject of credibility, I want to point out that we need to be
> consistent and credible with our lodestar reporting in State Street. We are gathering final lodestar
> reports now, but I heard third-hand that Mike recently said on a call (that I wasn't on) that
> Thornton Law Firm was showing $14 million. That number does not comport with the hours
> Mike Lesser told me for Thornton as of June 29 (around 12,750), which make more sense given

1

what we know about the work that was done. I am hopeful Mike T. simply misspoke or was guessing when he said $14 million and that we are not going to suddenly see an additional 12,000 hours mysteriously appear on Thornton Law Firm's behalf. I would expect that you would object if LCHB or Labaton tried something like that, and ERISA counsel certainly will (and tie up this process as long as possible) if they suspect anything remotely amiss on that front. Let's not make problems for ourselves that we don't need. Also recognize that your reviewers were all housed outside of your firm and their respective overhead and facilities expenses were paid for by others, which we were happy to do as a courtesy. Thanks.

-----Original Message-----
From: Garrett Bradley [mailto:GBradley@tenlaw.com]
Sent: Sunday, August 30, 2015 10:43 AM
To: Chiplock, Daniel P.
Cc: Lieff, Robert L.; Michael Thornton; rlieff@lieff.com
Subject: Re: State Street

That would be helpful thank you.

Garrett


On Aug 30, 2015, at 10:30 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:

> I don't look past that point, Garrett. But you need to also recognize that you are only in the BNYM class case because of us.

> I guess I'll gather the emails etc concerning the assignments that were given to your firm. As if that's going to change your position.

> Sent from my iPhone

> On Aug 30, 2015, at 10:19 AM, Garrett Bradley <GBradley@tenlaw.com<mailto:GBradley@tenlaw.com>> wrote:

> Dan,

> Thanks for the email. I think we will have to agree to disagree as you keep looking past the fact that but for Mike Thornton you would not be in the state street case just like Labaton is not in BONY.

> Can you clarify what you mean by we did not "get the work done" as you indicated. That has never been specified and really should be to be deemed credible. Thanks.

> Garrett

2

Confidential: Produced Pursuant to Court Order.                                          TLF-SST-031167

On Aug 30, 2015, at 9:04 AM, Chiplock, Daniel P.
<DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:

Garrett,

Thanks for your email and I actually think it's useful so that Mike and Bob can
participate in this.

This idea of "protection" in BNYM is where I think we keep talking past each
other. The bottom line is that LCHB is the least protected of all in that case. This
is the fact that has kept me up at night for 2.5 years while we've continued
pouring lodestar into that case (because we had to). We invested the most in order
to try to get a class certified there and to sufficiently man 110 depositions, defend
counterclaims, etc., but if Judge Kaplan takes a negative view of the value of
document review/analysis (our arguments to the contrary notwithstanding), then
LCHB will get hit the hardest. You are totally shielded from this because you
didn't invest in document review. In other words, LCHB has a real risk of actually
losing money in BNYM. You have virtually no risk of that. If Thornton is not
treated "fairly" in BNYM by the Court it will be because nobody (least of all
LCHB) was treated "fairly." It's not clear to me what it is you expect in that
circumstance.

The $10 million in State Street that you mention below also does not make up for
LCHB's investment in that case. And we've certainly contributed our share to the
result in State Street, having litigated BNYM (thus substantially increasing the
value of State Street) and developed the ch. 93A theory (the most readily
certifiable claim in State Street, and by far the most valuable).

Dan

From: Garrett Bradley [mailto:GBradley@tenlaw.com]
Sent: Friday, August 28, 2015 3:01 PM
To: Chiplock, Daniel P.
Cc: Lieff, Robert L.; Michael Thornton;
rlieff@lieff.com<mailto:rlieff@lieff.com>
Subject: Re: State Street

Dan,

I tried to call you but you are out. I think these things are best discussed rather
than emailed so please call my cell when you can 6174134892 as I do not have
yours.

3

                                    TLF-SST-031168

However a few points. I do not dismiss your efforts in Mellon but your guaranteed percentage was established years prior to a Mellon result. What I am pointing out is the inequities of our different positions. In Mellon, when we had created that case by developing the fx case all that we got was some work that resulted in $1.5 million in time. Also please elaborate on your statement that "the work was not getting done".

Now contrast that to state street where you had no client and no concept (and Mellon was years from setting) and Mike Thornton demands that you get a floor of 20% which is probably worth about $10 million.

You must agree you are in a much better position in state street than we are in Mellon. As I have said to Bob, we are only looking for a fair outcome in these matters. I think you would agree we have protected you better in state street than we are protected in Mellon. Once we have an idea of what our Mellon number looks like then we can discuss how to approach the balance of the 40% with Labaton .

Garrett

On Aug 28, 2015, at 2:34 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:

Garrett,

I know you didn't really mean to diminish LCHB's role in creating the result in BNY Mellon, at extraordinary risk to itself, which in turn doubled the value of State Street. You need to know that we advocated for you guys too, getting you a role in the BNYM class case (and pushing back against several co-counsel in the process) when you weren't actually owed one. I also gave your firm more assignments than others at the outset in BNYM, until it became clear that the work simply wasn't getting done. In other words, we've each tried to look out for the other in the past. This has been far from a one-way street.

As you know, Judge Kaplan controls everyone's fate in BNYM and LCHB has the most risk before him, having invested the most. We asked for a multiplier for your firm that is much larger than anyone else's, and I really, truly hope that he grants that request.

Thanks,

Dan

From: Garrett Bradley [mailto:GBradley@tenlaw.com]

4

Sent: Friday, August 28, 2015 2:18 PM
To: Lieff, Robert L.
Cc: Michael Thornton; Chiplock, Daniel P.;
rlieff@lieff.com<mailto:rlieff@lieff.com>
Subject: Re: State Street

Bob,

I am driving but took a quick look at your email and pulled over to type this. I think you are misunderstood. I have not agreed that it would be equitable to split the balance of the forty percent the way you described below. What I have said is that may be a fair approach depending on the outcome of our fee in the Mellon matter. If we are treated fairly there, then we will do all we can to treat you fairly in the state street matter. As I have said before, because of Mike Thornton's advocacy, you are guaranteed at least 20% of the State Street case in which you have no client and did not develop the concept. Yet, we have no corresponding protection in the Mellon matter. Happy to discuss further at any time.


Garrett


On Aug 28, 2015, at 2:05 PM, Lieff, Robert L.
<RLIEFF@lchb.com<mailto:RLIEFF@lchb.com>> wrote:
Garrett,


I called and suggested that we have a meeting together with the Labaton people to talk about putting in writing an understanding of the fee division in this case.


You, Mike and I have discussed the State Street fee division and have focused on the existing verbal understanding that was reached on November 9, 2010, with Chris Keller. We agreed that among the three firms we will each have a 20% interest in the fee with the balance to be divided later. Of course, we also have to factor in the 9% that ERISA counsel get pursuant to written agreement and a provision for Arkansas local counsel.


You and I have agreed that it would be equitable to divide the balance of the fee with Labaton getting 50% and each of our firms 25%. This would result in a fee division as follows:


Labaton 33.0 (20 + 13)

Thornton 26.5 (20 + 6.5)

Lieff Cabraser 26.5 (20 + 6.5)

ERISA 9.0

Arkansas Local 5.0

5

Confidential: Produced Pursuant to Court Order. TLF-SST-031170

100.0%

If we put the above into an agreement among the three firms, that would certainly provide protection for everyone.

Bob

<image001.gif>

Robert L. Lieff
Of Counsel
rlieff@lchb.com<mailto:rlieff@lchb.com>
t 415.956.1000
f 415.956.1008
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
www.lieffcabraser.com<http://www.lieffcabraser.com>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

Confidential: Produced Pursuant to Court Order.                          TLF-SST-031171

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

This message is intended for the named recipients only. It may contain information protected by

7

the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.


This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.                                    TLF-SST-031173

# EX. 20

**From:**             Michael Lesser
**Sent:**              Monday, August 24, 2015 3:24 PM
**To:**                 Evan Hoffman
**Subject:**         Re: STT Hours, Timeline, Mediations

Call my cell

On Aug 24, 2015, at 3:22 PM, Evan Hoffman <EHoffman@tenlaw.com> wrote:

> Here's the deal: I DO NOT have any other emails relating to a lodestar request from 2014 other than what we did in response to Goldsmith's request to have it done by "cob" on May 20[th]. You can see at the bottom of this email that you ask me for a bunch of stuff and I send it to you. You must have then compiled that and sent a final number to Goldsmith. I do not have that ultimate email.
>
> In any event, assuming you did not add to the entries of what I sent you back in May, 2014, the total hours calculation would have been: **1,683.9** (1004.4 hours for doc review + 679.5 for GJB, MPT, ERH, MAL hours relating to all non-doc review). I don't have a corresponding lodestar figure for this, but can do one if you want.
>
> The CURRENT calculation is:
>
> Hours: 13,324.65
>
> Lodestar: $6,344,062
>
> _____
>
> **From:** Evan Hoffman
> **Sent:** Wednesday, May 21, 2014 4:55 PM
> **To:** Michael Lesser
> **Subject:** RE: Hours for STT AR--WORK FROM THIS VERSION!!
>
> WORK FROM THIS ONE: has a few more new entries I just located.
>
> **From:** Evan Hoffman
> **Sent:** Wednesday, May 21, 2014 4:43 PM
> **To:** Michael Lesser
> **Subject:** Hours for STT AR
>
> Here is what you need to know about the chart:
>
> - All of the hours are taken from LCHB's chart where there were mentions of discussions with either "co-counsel" "team" or, of course, Mike Lesser and/orMPT, GJB. . .**EXCEPT** those hours that have annotations next to them (mediation; memo etc...).
> - Those hours are not from the LCHB chart and are based on the information I could gather from my own emails and/or files. They include historical records I took during the preparation of the

Confidential: Produced Pursuant to Court Order.                                                 TLF-SST-011246

complaint and the opp to MTD, as well as recent hours relating to the ppt presentations. I am sure these are not complete. I will continue to dig through my files and emails for more.

- I have added hours for MPT and/or GBJ where it was either indicated on the LCHB chart, or I have other documentary evidence of them being included. Obviously, there is going to be more hours for them; we need to determine how to estimate these.

- What YOU need to do:
  o Go back through all of your emails and/or word documents, excel sheets, presentations (look for the 'date created' meta data), doc review, etc. . . and add your time on the appropriate date.
  o If you see a date where I have already included hours for you, it is from the LCHB information. I would check your email or document against that date—and the LCHB chart and description—and make sure it is not duplicative.
  o If it is not, add the date into the excel chart; your hours; mine (if you think applicable); and a note of what you did (like I already have for mine) so we can have a basis to construct a larger and more complete timesheet later.

- Then, we can simply combine the total hours from this new chart with the doc review hours and give a total figure.

---

**From:** Evan Hoffman
**Sent:** Tuesday, May 20, 2014 3:57 PM
**To:** Michael Lesser
**Subject:** RE: STT Hours, Timeline, Mediations

Hours indicated are per person.

Sept. 11, 2012: NYC:  Mediation prep w/ co counsel
- Mike Lesser; Evan Hoffman; Mike Thornton; Garrett Bradley (?)
  o Mediation time: 4 hours
  o Travel time: 4 hours

Sept. 13, 2012: NYC:  Ex-parte meetings with mediator
- Mike Lesser; Evan Hoffman; Mike Thornton; Garrett Bradley (?)
  o Time: 3 hours
  o Travel time: 4 hours

Oct. 23-24, 2012:  Boston:  Mediation
- Mike Lesser; Evan Hoffman; Mike Thornton; Garrett Bradley
  o Time: 8 hours

November 15, 2012:  Wolf meeting re: status report
- Mike Thornton; Mike Lesser(?)
  o Time: 1 hour

January 24, 2013:  DC: Mediation
- Mike Lesser; Evan Hoffman; Mike Thornton
  o Time: 4 hours
  o Travel time: 4.5 hrs

June 13, 2013: NYC: ex-parte mediation meeting

2

- Mike Lesser; Mike Thornton
  - Time: 2.5 hours
  - Travel time: 4 hours

July 9, 2013: NYC: Mediation
- Mike Lesser; Evan Hoffman; Mike Thornton
  - Time: 2 hours
  - Travel time: 4 hours

September 17, 2013: NYC: Mediation
- Mike Lesser; Evan Hoffman; Mike Thornton
  - Time: 2 hours
  - Travel time: 4 hours

November 13, 2013: NYC: Mediation
- Mike Lesser; Evan Hoffman; Mike Thornton
  - Time: 3 hours
  - Travel time: 4 hours

December 18, 2013: Santa Barbara: internal mediation
- Mike Lesser; Mike Thornton
  - Time: ?
  - Travel time: 16 hours

March 4, 2014: NYC: Mediation
- Mike Lesser; Mike Thornton
  - Time: 2 hours
  - Travel time: 4 hours

May 9th, 2014: NYC: Mediation
- Mike Lesser; Evan Hoffman; Mike Thornton; Garrett Bradley
  - Time: 4 hours
  - Travel time: 4 hours

---

**From:** Michael Lesser
**Sent:** Tuesday, May 20, 2014 3:38 PM
**To:** Evan Hoffman
**Subject:** RE: STT Hours, Timeline, Mediations

Good – now total the hours for the crew for each of the mediations – travel and mediation time only. I have my other records for prep time and whatnot

---

**From:** Evan Hoffman
**Sent:** Tuesday, May 20, 2014 3:34 PM
**To:** Michael Lesser
**Subject:** STT Hours, Timeline, Mediations

DOC REVIEW:

Mike B.: 219.2

3

TLF-SST-011248

Andrea: 597.5

Jotham: 172.7

Evan: 15

Mike L:

**Total**: 1,004.4 hrs.


TIMELINE:

Initial Complaint Filed:  2/10/2011

Amended Complaint Filed:  4/15/2011

Opp to MTD Filed: 7/20/2011

MTD Hearing:  5/8/2012


MEDIATIONS:

Sept. 11, 2012:  NYC:  Mediation prep w/ co counsel
Sept. 13, 2012:  NYC:  Ex-parte meetings with mediator
Oct. 23-24, 2012:  Boston:  Mediation
November 15, 2012:  Wolf meeting re: status report
January 24, 2013: DC: Mediation
June 13, 2013: NYC: Internal mediation meeting
July 9, 2013: NYC: Mediation
September 17, 2013: NYC: Mediation
November 13, 2013: NYC: Mediation
March 4, 2014: NYC: Mediation
May 9th, 2014: NYC: Mediation

**Evan R. Hoffman, Esq.** │ **Thornton & Naumes, LLP**
100 Summer Street, 30th Floor │ Boston, MA 02110
-------------------------------------------------------------------------------------
t: (617) 720.1333 │ f: (617) 720.2445 │ ehoffman@tenlaw.com

Confidential: Produced Pursuant to Court Order.                                    TLF-SST-011249

# EX. 21

| | |
|---|---|
| **From:** | Kravitz, Carl S. <ckravitz@zuckerman.com> |
| **Sent:** | Saturday, August 22, 2015 2:59 PM |
| **To:** | 'Lieff, Robert L.'; Sucharow, Lawrence |
| **Cc:** | Michael Thornton; lsarko@kellerrohrback; Garrett J. Bradley; rlieff@lieff.com |
| **Subject:** | RE: State Street |

Thanks for the report. Not surprised that they have dug their heels in, but maybe DOL will compromise a little more. No harm in hoping.

<http://mm1.lettermark.net/zuckerman/card/ORBH_9.map>
[Description: Carl Kravitz  202.778.1873
ckravitz@zuckerman.com]<http://mm1.lettermark.net/zuckerman/card/ORBH_9.map>

-----Original Message-----
From: Lieff, Robert L. [mailto:RLIEFF@lchb.com]
Sent: Saturday, August 22, 2015 11:20 AM
To: Sucharow, Lawrence
Cc: Michael Thornton; lsarko@kellerrohrback; Kravitz, Carl S.; Garrett J. Bradley; rlieff@lieff.com
Subject: RE: State Street

I am uncertain as to whether we advised all of you of the results of our telephone call to Suzanne Riley. The call lasted one hour and Lynn and I did our best to convince a mid level government lawyer that compromise is the essence of negotiation without success. The problem is that she has no power to negotiate. We pushed for 290/10 split and she was at 280/20 with a willingness to agree to 282/18 , which was where we were when we began. She is going to speak to her superiors on Monday and we will talk to her one last time.    Bob

From: Sucharow, Lawrence [LSucharow@labaton.com]
Sent: Friday, August 21, 2015 7:56 AM
To: Lieff, Robert L.
Cc: Michael Thornton; Lynn Sarko; Carl S. Kravitz; Garrett J. Bradley; rlieff@lieff.com
Subject: Re: State Street

I have no problem with you guys trying one  additional time to secure a "better deal". I agree that consistency in the percentages is the best way forward and the only way of doing that is to give the DOL credit for a certain amount out of the 300 million and applying for an across the board percentage of 25% on the balance. This is what I thought we agreed to two conversations ago but I was taken aback in the recent conversation by the vehemence against the $18 million reduction which has been negotiated to to achieve the $10.5 million fee demand by DOL.
 Obviously any number lower than 18 million is a benefit to us. In any event now that you set the call up you might as well take a crack at it (without fracturing the relationship).

Sent from my iPhone

> On Aug 21, 2015, at 10:17 AM, Lieff, Robert L. <RLIEFF@lchb.com> wrote:

1

Confidential: Produced Pursuant to Court Order.

>

> Larry, I think the most important aspect of this is to achieve consistency in the fee percentage between the customer class and the Erisa class. That is 25% for both. In order to accomplish this we need to reduce our settlement to $282 M and to let the DOL take credit for 18M. If we are to make one more stab at it then it would be to try to make our settlement $290M and the DOL 10M. This would give us a fee request of 72.5 rather that 70.5. Is this worth the effort of one more call? I gather that you and Carl are saying "no" and Mike is saying "yes". The structure of the settlement would be the same as BNYM where we have 14M that the DOL got not being included for purposes of our fee request. Lynn and I have a call scheduled with the DOL at 11 PDT We can make a soft pitch for an extra 8M (from 282 to 290) This has been turned down by the DOL before. As lead counsel do you want us to proceed or not? The important thing to me is consistency of the fee request at 25% and not the extra 8M.

> _____

> From: Michael Thornton [MThornton@tenlaw.com]

> Sent: Friday, August 21, 2015 6:36 AM

> To: Sucharow, Lawrence; Lieff, Robert L.; Lynn Sarko; Carl S. Kravitz; Garrett Bradley

> Subject: Re: State Street

>

> Larry, I think that most of us have long ago have become pragmatists. I think that the concern with the negotiations now is not that they are unfair, but that the result might be something that with "reverse engineering" show a significant disparity between the way ERISA funds and the non are treated. Then the judge might be tempted to go with the low percentage for all.

>     The fact is the the DOL has left us at this point with no good choices. I don't think there is a downside to continue to negotiate.

>

>  Original Message

> From: Sucharow, Lawrence

> Sent: Friday, August 21, 2015 8:10 AM

> To: Michael Thornton; Robert L. Lieff; Lynn Sarko; Carl S. Kravitz; Garrett Bradley

> Subject: State Street

>

> Guys:

> I just want to let you know that I woke up with a very bad feeling this morning on how we left our negotiations with the DOL.

>

> While I too am unhappy that they are seeking to restrict our fees, I also understand their need and desire to take some credit for what was achieved. It's unfair, It's wrong, but completely understandable.

>

> We had negotiated in good faith with them to a point where it would cost us $4.5 million from our maximum fees in order to have complete peace.

>

> To me, this is a relatively small price to pay in order to have a united front before the court and protect the balance of our fees. Indeed the differential we had negotiated between their offer and our last offer is only about $600,000 on fees of 70,000,000+.

>

> Now that the heat of our conversation has cooled down, I am asking everyone to reconsider renegotiating with the DOL and accepting their latest proposal.

>

> Larry

>

> Sent from my iPhone

>

>

> ***Privilege and Confidentiality Notice***

2

>
> This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.
>
>
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.


This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.    TLF-SST-052696

# EX. 22

| | |
|---|---|
| **From:** | Sucharow, Lawrence <LSucharow@labaton.com> |
| **Sent:** | Wednesday, August 26, 2015 11:13 AM |
| **To:** | Lynn Sarko; Robert L. Lieff; Daniel P. Chiplock; Michael Thornton; 'Kravitz, Carl S.'; Brian McTigue; Goldsmith, David; Garrett J. Bradley |
| **Cc:** | Lynn Sarko |
| **Subject:** | RE: State Street FX-- ERISA atty fees |

Thanks for your and Bob's efforts.

&

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 11:30 AM
**To:** Sucharow, Lawrence; Robert L. Lieff; Daniel P. Chiplock; Michael Thornton; 'Kravitz, Carl S.'; Brian McTigue; Goldsmith, David; Garrett J. Bradley
**Cc:** Lynn Sarko
**Subject:** State Street FX-- ERISA atty fees

&

SUCCESS.

&

I am happy to report that we have a deal with the DOL on the amount of atty fees we can charge in the Class cases.

&

They have agreed that they are agreeable for us to charge the ERISA plans-& **$10.9 million atty fees.**& & To put it another way- that the settlement amount going to ERISA plans "**net of fees" will be $49.1 million**

&

They understand that we have not yet decided how we want to present the settlement—and they are agnostic on the structure.& & They would like to see how we are going to phrase it—to make sure that we are living up to this agreement---&

But they are fine with:

1.& We can ask the Court for whatever percentage fee we want- as long as the ERISA plans are only charged $10.9 million.

2.& We can phrase the settlement amount as whatever we want—although they are expecting us to say that the class **settlement amount was $300 million.**& However- if we want to say it is some lesser amount—or say that we are not seeking fees on the whole portion of the $60 million gross recovery- that is our business.

&

In other words—they & have given us a green light on how we describe it.& & & Based on this understanding they will not object to our fee application.

&

They also understand that "Litigation costs" will be charged pro rata on the whole $300 million.

&

**Next step---** they would like to see how we are going to phrase this----- ie: by putting something in our term sheet- or them putting something in their term sheet- or some other writing, etc.

&

Now that we know the numbers—let's go back to a discussion of how we are going to present this in the papers.

&

One last thing—please caution everyone in your firms—that we should not start having separate discussion with the DOL on how to phrase the ERISA fee issue.& Once we come up with the language, I will volunteer to deal with the DOL.

&

1

Confidential: Produced Pursuant to Court Order.

But the bottom line—we have a deal for $10.9 million ERISA fees.& & & & Let's not discuss this on today's "plan of allocation call" at 2 pm Eastern.& & The DOL will be circulating a new dial in number for that call = as the current number doesn't work.

&

Lynn

&

**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&

\*\*\*Privilege and Confidentiality Notice\*\*\*

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

&

Confidential: Produced Pursuant to Court Order.

TLF-SST-052698

# EX. 23

Message

| | |
|---|---|
| **From**: | Damon Chargois [damon@cmhllp.com] |
| **Sent**: | 4/25/2013 1:23:44 AM |
| **To**: | Garrett J. Bradley [gbradley@tenlaw.com] |
| **CC**: | Robert L. Lieff [RLIEFF@lchb.com]; Robert L. Lieff [rlieff@lieff.com]; Michael Thornton [MThornton@tenlaw.com]; Belfi, Eric J. [EBelfi@labaton.com]; Keller, Christopher J. [ckeller@labaton.com]; Daniel P. Chiplock [DCHIPLOCK@lchb.com] |
| **Subject**: | Re: State street fee regarding local counsel |


Thank you, Garrett.  Agreed.

Sent from my iPhone

On Apr 24, 2013, at 8:08 PM, "Garrett Bradley" <GBradley@tenlaw.com> wrote:

> Bob,
>
> As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to
the local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System.
Labaton has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to
Labaton in the State Street FX class case before Judge Wolf.  Currently this amount would be 4% because
of the agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the
balance to be decided upon at a later date.  Obviously this may go up should Labaton receive an amount
higher than 20%.
>
> We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be
paid off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant
to our agreement.
>
> The local asked that I copy him on this email so he will have confirmation of this agreement.  When we
spoke to him he was agreeable to this as well.
>
> Garrett
>
>
> _____
>
>
>
> This e-mail and any files transmitted with it are confidential and are
>
> intended solely for the use of the individual or entity to whom they are
> addressed.  This communication may contain material protected by the
> attorney-client privilege. If you are not the intended recipient or the person
> responsible for delivering the e-mail to the intended recipient, be advised that
> you have received this e-mail in error and that any use, dissemination,
> forwarding, printing, or copying of this e-mail is strictly prohibited. If you
> have received this e-mail in error; please immediately notify us by telephone at
> (800) 431-4600. You will be reimbursed for reasonable costs incurred in
> notifying us.
>
>
>
> Please consider the environment before printing this email.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                    LBS027776

# EX. 24

JOINT RESPONSE BY LABATON SUCHAROW LLP
AND CHARGOIS & HERRON, LLP


TO THE REQUEST FOR QUALIFICATIONS ("RFQ") FOR OUTSIDE LEGAL COUNSEL
SECURITIES LITIGATION, CLASS ACTION MONITORING AND ADVICE;
ASSET RECOVERY

July 30, 2008


LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone (212) 907-0700
Facsimile (212) 818-0477

Eric J. Belfi
Partner
Direct Dial (212) 907-0878
ebelfi@labaton.com

CHARGOIS & HERRON, LLP
2201 Timberloch Place
Suite 110
The Woodlands, Texas 77380
Telephone (281) 444-0604
Facsimile (281) 440-0124

Damon Chargois
Managing Partner
Dial (281) 444-0604
damon@cmhllp.com

**5.    Requested Information**

5.2    *If with a firm, provide a description of your law firm, including historical background, number and location of firm offices, number of attorneys, and major areas of practice.*

## Response of Labaton Sucharow

Labaton Sucharow LLP was established in 1963 in New York City.  At the firm's inception, the majority of the practice was commercial work and less than half the work was contingent litigation. Labaton Sucharow began providing securities litigation consulting services to public pension plans in 1995, the year of the passage of the Private Securities Litigation Reform Act (PSLRA).

Currently, two-thirds of the firm's approximately 55 lawyers are dedicated to the prosecution of securities class actions, institutional investor "opt out" cases, and other shareholder actions. Labaton Sucharow has one office location where the services discussed herein would be performed. The firm is located at 140 Broadway, New York, NY 10005; Tel: (212) 907-0700.  Labaton Sucharow currently has approximately 55 attorneys, 17 paralegals and 69 additional support staff. Class action securities litigation and related portfolio monitoring services represent Labaton Sucharow's principal practice area and source of revenue.  The firm also maintains an active antitrust class action practice.

## Response of Chargois & Herron

Chargois & Herron, LLP was established in 2005 by Timothy P. Herron and Damon J. Chargois after working together and separately in commercial, class action, mass tort and insurance defense litigation for fourteen (14) plus years.  Both attorneys, along with partner, Che Williamson are licensed in all federal and state courts in Arkansas and Texas.  Chargois & Herron began providing securities litigation services in 2006 and have been pleased to achieve significant monetary results for public pension plans since that time.

Currently, we have offices in Little Rock, Arkansas and The Woodlands, Texas with six full-time practicing attorneys who have held law licenses as follows:  (Timothy Herron – 28 years), (Che Williamson – 18 years), (Kamran Masheyekh – 18 years), (Damon Chargois – 14 years), (Carlos Fernandez – 5 years) and (Kirk Chargois – 2 years).  Our primary address is 2201 Timberloch Place, Suite 110, The Woodlands, Texas 77380; (281) 444-0604.

5.3    *State whether your response excludes any services contemplated by the RFQ set forth in the scope of services in section 3.2.*

Labaton Sucharow's and Chargois & Herron's responses do not exclude any services contemplated by the RFQ set forth in the scope of services in section 3.2.

5.4    *State whether your firm is able to conduct ongoing client portfolio monitoring (tracking portfolio trading and cross-referencing the trading against potential securities claims) by reviewing the System's portfolio losses on a regular basis, investigating potential claims, preparing detailed reports of findings; and presenting the findings to ATRS.*

## Response of Labaton Sucharow

Labaton Sucharow is committed to high-level client service.  A major component of the litigation and client services that we propose to the ATRS is our portfolio monitoring program, that utilizes a full compliment of professional analyses as well as out proprietary software system called LPAS$^{©}$.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                    LBS017739

We believe that a strong analysis and quick determination of possible financial exposure can be the first line of defense when corporate misconduct and fraud result in investment losses.

***Identification***   In its Case Evaluation Group, Labaton Sucharow has assembled several attorneys and other professionals with decades of combined experience distilling information in the marketplace in an effort to uncover and investigate instances of potential securities fraud on behalf of our clients.  Labaton Sucharow subscribes to and monitors sophisticated financial research services, including Bloomberg and Thomson Reuters, the same tools used by analysts at major financial services firms.  We use these information services to monitor news coverage and market activity throughout the day to identify potential securities law violations and analyze the impact of the claims on our clients' portfolios.  Among the other sources we monitor are: (i) the Federal Securities Law Reports published by CCH; (ii) the Securities Class Action Services database maintained by the Riskmetrics Group; (iii) Stanford Law School's Securities Class Action Clearinghouse; and (iv) other legal journals and newspapers.

The Group includes five attorneys, led by Christopher Keller, who have many years of experience performing this specialized function.  The Group also includes two Wall Street analysts, several damages analysts, and private investigators formerly with the Federal Bureau of Investigation. This group has been pivotal to enhancing Labaton's institutional shareholder services by being able to marshall the critical facts necessary to prevail in complex securities class action litigation.

***Analysis***   When a security suffers a significant decline in value or when litigation has been commenced against a company, we commence a multi-tiered analysis of the situation.  The analysis includes early identification and assembly of facts, legal and factual analysis and ranking (using a proprietary grading system that allows us to objectively rate the facts), determination of the magnitude of the alleged fraud (in terms of class-wide damages), and investigation of non-public information and sources.  This in-depth review yields a "grade" for the case that reflects our analysis of the strengths and weaknesses of the claim.  This grade is based upon a number of factors, including the size of the company, evidence of intentional or reckless wrongdoing, the types of issues involved (including any earnings restatements or other accounting issues), whether there is an ongoing governmental investigation, the potential liability of third-party defendants such as auditors or underwriters, the solvency of the defendant, and whether there was a significant stock price decline in reaction to the alleged wrongdoing.  The findings are captured in a summary report.  An example of such a review is attached as **Exhibit A**.

***Review of losses***   If we discover that the ATRS invested in a company that has engaged in allegedly fraudulent behavior, we quickly can assess the losses incurred.  This loss amount is an estimated loss as limited by the PSLRA, which is not the same as your legally compensable damages.  To that end, LPAS (further discussed in Section 5.5, below), allows us to quickly quantify our clients' financial exposure to the security at issue so that we may advise our clients on the strength of their position to pursue litigation, either individually or as a lead plaintiff on behalf of a class of investors.  This assessment can be made as soon as a situation has been identified, depending on the data that is available to us, and is an essential component of the advice we could provide to the ATRS on the likelihood of its success were the ATRS to move to be appointed Lead Plaintiffs.  Whether our advice is to pursue litigation or not, it is based on our client's true financial interest in the litigation and the merits of the case.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                    LBS017740

***Reporting***   Included in our analysis of the case, is an analysis of the options available to our clients. If a case meets certain criteria, we will inform the ATRS about the issues involved in the case, and we may request that the ATRS research their holdings so that we can provide an analysis of the ATRS's financial exposure.  On a case-by-case basis, we will provide a comprehensive legal analysis for the client's review.  An example of such a review is attached as **Exhibit B**.  Additionally we provide reports each quarter that recite our findings for the cases we have reviewed in prior periods and the results of our research.  Please refer to **Exhibit C** for an example of a Quarterly Report.

Many institutional clients expect and receive regular oral or written updates concerning matters of potential interest.  Typically, we would first discuss the issues of a specific case that we are analyzing with the ATRS before a report is submitted.  However, other reports – primarily our quarterly reports and any urgent/time-sensitive matter that we are bringing to the ATRS's attention – might be transmitted via e-mail to our contact at the ATRS without a formal discussion beforehand.  The decision to commence an action and overall litigation strategy are always made after close consultation between Labaton Sucharow and our client, and at a client's request, Labaton Sucharow will circulate drafts of court filings well in advance of filing dates for review and comment.  Monitoring services will be handled by partner, Christopher Keller, and the overall relationship would be managed by partner, Eric Belfi.  Matters connected to litigation would be managed by Mr. Belfi and chairman, Mr. Lawrence Sucharow.  Please see **Exhibit D**, to view the full resume of each attorney.

***Recommendation***   We are protective of our institutional clients and therefore proceed carefully before recommending legal action.  Quite often, the results of our analysis indicate that it is not advisable for the client to participate as a lead plaintiff, because the amount of the loss is not significant or participating as a lead plaintiff may not be in the client's best interests for other reasons.  If we determine that claims lack merit or are weak, we will so advise.  A law firm cannot guarantee success in securities litigation, but according to the annual securities class actions study published by Cornerstone Research, for the past three years Labaton Sucharow, on a percentage basis, recovers more than any other plaintiffs' class action firm.

In any case, our recommendation will be an informed one, suited to the needs of the client.  Labaton Sucharow recognizes that clients desire varying levels of involvement with these processes, and the firm certainly can provide training to effectively supervise and assist in these activities.

## Response of Chargois & Herron

Chargois & Herron has six attorneys and three paralegals with decades of combined experience in monitoring and researching corporations and the market in analyzing conduct with an eye toward discovering possible impropriety.  Additionally, we work closely with counsel in New York, including Labaton Sucharow, and California in order to stay abreast of trends and activities in the market.  We are free to utilize their resources and they ours – at any time in an effort to provide the best service to our institutional investor clients.

Chargois & Herron owns an Alabama company called 270 Discovery Solutions which provides document research, indexing and computer inputting of the millions of items of information contained in the documents that are routinely produced – usually under court order – in securities class action litigation.  Uniquely, our company is staffed almost entirely by licensed attorneys, numbering in excess of 25 attorneys.  This puts Chargois & Herron in a unique and special position to handle any securities litigation matter, regardless of size.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                          LBS017741

5.5     *State whether your firm has the ability to monitor the ATRS portfolio in this regard through access to the ATRS custodial account, rather than requesting ATRS staff for information regarding securities holdings.*

**Response of Labaton Sucharow**
Yes, Labaton Sucharow has the ability to monitor the ATRS portfolio through access to the ATRS custodial account. We have relationships with all of the major custodial banks in the U.S. and have handled multiple systems when retrieving our clients' data. Therefore, the necessary information is gathered without intrusion into our clients' day-to-day business. At the outset, a minimal effort is required to set up the authorization and permissions for our access to the ATRS portfolio. Beyond that, our team handles the rest of the communications with the custodian and the retrieval of the ATRS portfolio records.

Labaton Sucharow has invested significant resources to develop and maintain an infrastructure and software program to accomplish this for our clients. Labaton Portfolio Analysis System (LPAS) is a unique and proprietary database management and software application that allows us to capture our clients' trading information and over time build a historical record of the transactions, housed in our internal, secure database. In particular, with access to our clients' historic trading records, LPAS allows us to monitor the data and identify eligible losses. When a new situation is identified, LPAS identifies matches between the securities owned by ATRS and will perform an analysis of their financial exposure, using court-approved evaluation models. Please see **Exhibit E** for a description of LPAS.

Additionally, Labaton Sucharow has access to comprehensive information with respect to securities class action settlements. The firm can provide this information to the ATRS's custodian bank at no charge and make all necessary forms available to the custodian.

**Response of Chargois & Herron**
Chargois & Herron has the ability to monitor the ATRS through access to the ATRS custodial account, rather than requesting ATRS staff for information regarding securities holdings.

5.6     *Subject to the consent of clients as required by applicable ethics rules, provide a listing of representative clients. Responses may, with the consent of the clients, include names and phone numbers of specific references. Subject to the clients' consent, identify specifically any pension plans or other major institutional investors, either private or public, to which you render or have rendered significant legal services concerning the relevant subject area(s) during the past year. If no clients consent, or if you elect not to request such consent, please so state and describe the representative clients in general terms to support your firm's qualification and experience to represent ATRS.*

**Response of Labaton Sucharow**



CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                LBS017742



## Response of Chargois & Herron

Among others, Chargois & Herron has represented, along with co-counselors, Bristol County Retirement Systems, Inc., Plymouth County Retirement System and merchants in Class Action litigation against credit card companies based on hidden surcharges.

5.7     *Provide a very brief summary resume describing the education, legal or investment experience, recent speaking engagements, and a list of significant, relevant publications of the attorney or attorneys proposed to work as lead attorney(s).*

## Response of Labaton Sucharow

The number and identity of the Labaton Sucharow and Chargois & Herron attorneys and other legal professionals who would be assigned to a securities litigation matter on behalf of the ATRS would vary depending on the size, complexity and issues in any given case. Assuming that a particular case involved complex accounting issues, large numbers of documents, and dozens of fact and expert witnesses, the team likely would be comprised of the following attorneys from Labaton Sucharow: Eric J. Belfi, Lawrence A. Sucharow, Thomas A. Dubbs, Christopher J. Keller, Zachary M. Ratzman, Ann E. Gittleman, and Krista T. Rosen; and Damon J. Chargois, Timothy P. Herron, Kamran Mashayekh, and Che D. Williamson from Chargois & Herron. To view the full resume of each attorney, please see **Exhibit D**.

**Eric J. Belfi**, a partner with the firm, is an accomplished litigator in a broad range of commercial matters. He concentrates his practice in the investigation and initiation of securities and shareholder class actions, with an emphasis on the representation of major international and domestic pension funds and other institutional investors. Prior to entering private practice, Mr. Belfi served as an Assistant Attorney General for the State of New York and an Assistant District Attorney for the County of Westchester, New York. As a prosecutor, Mr. Belfi investigated and prosecuted numerous white-collar criminal cases, including securities law violations. In this capacity, he presented hundreds of cases to the grand jury and obtained numerous felony convictions after jury trials.

Mr. Belfi is a regular speaker and author on issues surrounding securities litigation, with a focus on international institutional investors. He was invited to speak at the prestigious Euroshareholders Annual Conference, in Brussels, in February 2008. Most recently, he spoke regarding securities class actions at the William H. Bowen School of Law at the University of Arkansas in June of 2008. Mr. Belfi is the co-author of *The Proportionate Trading Model: Real Science or Junk Science?* 52 Cleveland St. L.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                    LBS017743

Rev. 391 (2004-05) and "International Strategic Partnerships to Prosecute Securities Class Actions, Investment & Pensions Europe," *Investments & Pensions Europe*, 2005.

He received a B.A. from Georgetown University in 1992 and a J.D. from St. John's University School of Law in 1995.

**Lawrence A. Sucharow**, a nationally and peer recognized leader of the class action bar, is the chairman of Labaton Sucharow. In his capacity as chairman, he participates in developing the litigation and settlement strategies for virtually all of the class action cases Labaton Sucharow prosecutes. For more than three decades, Mr. Sucharow has devoted his practice to counseling clients and prosecuting cases on complex issues involving securities, antitrust, business transaction, product liability, and other class actions.

Mr. Sucharow is the co-author of "Executive Compensation -- Despite Reforms, Pay Is Less Transparent and Shareholder-Friendly Than in the Past," *New York Law Journal*, March 20, 2008, and "FIFO vs LIFO, Different ways to calculate shareholder losses for purposes of appointing lead plaintiff lead to different results," *Investment & Pensions Europe*, May 2006.

Mr. Sucharow earned a B.B.A., *cum laude*, from the Baruch School of the City College of the City University of New York in 1971 and a J.D., *cum laude*, from Brooklyn Law School in 1975.

**Thomas A. Dubbs**, a senior partner with the firm, specializes in the representation of institutional investors including pension funds in securities fraud and other types of litigation. A recognized leader in the field, Mr. Dubbs represented the first major private institutional investor to become a lead plaintiff in a class action under the Private Securities Litigation Reform Act. He was formerly Senior Vice President and Senior Litigation Counsel for Kidder, Peabody & Co. Incorporated ("Kidder") for seven years, where he represented Kidder in a variety of matters, including in many class actions. He is the only member of the plaintiffs' bar who has held a senior position at a major investment bank, and is, thus, uniquely able to advise on issues involving the underwriting process and due diligence requirements. Also, he is able to understand and anticipate the perspective and strategy of defense counsel in securities cases, a substantial tactical advantage in determining the proper approach to take in litigating, settling or trying a particular action.

Mr. Dubbs is the co-author of "US Focus: Time for Action," *Legal Week*, April 17, 2008. Mr. Dubbs frequently lectures to institutional investors and other groups such as the Government Finance Officers Association, the National Conference of Public Employee Retirement Systems and the Council of Institutional Investors. In March 2008, Mr. Dubbs participated in a roundtable discussion hosted by The Law Society in London regarding class actions lawsuits.

Mr. Dubbs received a B.A. and a J.D. from the University of Wisconsin in 1969 and 1974, respectively. In 1971, he earned an M.A. from the Fletcher School of Law and Diplomacy of Tufts University.

**Christopher J. Keller**, a partner with the firm, leads the firm's Case Evaluation Group and has been involved in investigating and initiating numerous securities class actions. He was a member of the trial team that successfully litigated the *In re Real Estate Associates Limited Partnership Litigation* in the United States District Court for the Central District of California. The six-week jury trial resulted in a landmark $184 million plaintiffs' verdict, which is one of the largest jury verdicts since the passage

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                LBS017744

of the Private Securities Litigation Reform Act of 1995. Most recently, he was instrumental in securing a $117.5 million settlement in *In re Mercury Interactive Securities Litigation*, which is one of the largest settlements to date in a securities options backdating class action.

Mr. Keller is the co-author of "Tellabs': PSLRA Pleading Test Comparative, Not Absolute," *New York Law Journal*, October 3, 2007, and "FIFO vs LIFO, Different ways to calculate shareholder losses for purposes of appointing lead plaintiff lead to different results," *Investment & Pensions Europe*, May 2006. Mr. Keller is a regular speaker at institutional investor gatherings. In June 2008, he spoke at a Continuing Legal Education course on subprime and mortgage related claims.

Mr. Keller received a B.S. from Adelphi University in 1993 and a J.D. from St. John's University School of Law in 1997.

**Zachary M. Ratzman**, Of Counsel to the firm, has been practicing in the area of securities fraud litigation for five years. Since early 2005, he has litigated the case *In re American International Group, Inc. Securities Litigation*, on behalf of three Ohio pension funds and a class of defrauded investors, and has played key roles in other noteworthy actions, including *In re Bristol-Myers Squibb Securities Litigation*. Prior to joining Labaton Sucharow, Mr. Ratzman practiced white-collar criminal defense and complex commercial litigation as an associate in the New York offices of Skadden Arps Slate Meagher & Flom LLP and Patterson Belknap Webb & Tyler LLP.

Mr. Ratzman received a B.A. from Ohio University, where he graduated *summa cum laude* and with Phi Beta Kappa honors. He earned a J.D. from the University of Michigan Law School, where he graduated, *magna cum laude,* and as a member of the Order of the Coif.

**Ann E. Gittleman**, an associate with the firm, is a Certified Public Accountant. Before becoming an attorney, she worked for PricewaterhouseCoopers LLP for more than two years, where she performed audits and interacted with governmental organizations, such as the SEC, IRS and Attorney General Office, in coordinating and facilitating investigations. As such, she is uniquely qualified to analyze complex fact patterns and utilize various principles of the accounting and auditing profession in actions involving accounting fraud.

Ms. Gittleman earned a B.S. and a B.A., both *magna cum laude*, from Bryant University in 1999, and received her J.D. from Brooklyn Law School in 2004, where she was a member of both the Moot Court Honor Society and the Securities Law Association.

**Krista T. Rosen**, an associate with the firm, focuses her practice in the area of securities class action litigation. She is a member of the team litigating the federal securities fraud class action against AIG, representing as Lead Plaintiff several Ohio pension funds.

Ms. Rosen earned a J.D. from the Benjamin N. Cardozo School of Law in 2006. During law school, she was selected to participate in the Securities Arbitration Clinic, where she represented investors in arbitration actions against securities brokers. Additionally, she served as the Articles Editor of the *Cardozo Law Review*. In March 2006, she was awarded third place in the 2005-2006 national writing competition sponsored by the Association of Securities and Exchange Commission Alumni (ASECA) for her Note entitled, *Staying in Court While Staying Discovery: Finding Exceptions for Government-Produced Documents Under the PSLRA*.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
LBS017745

**Damon J. Chargois** was born on December 26, 1966. He was admitted to the Texas Bar on November 4, 1994, and the Arkansas Bar in 2006. Mr. Chargois received his undergraduate degree in English Literature in 1991 and received his Doctor of Jurisprudence from the University of Houston Law Center in May 1994. Mr. Chargois is licensed to practice in all Texas and Arkansas Courts, as well as Federal District Courts and the U.S. 5th Circuit Court of Appeals. Additionally, he has successfully tried a federal case to unanimous positive verdict that was subsequently affirmed by the 5th Circuit Court of Appeals and, then, had writ of certiorari denied by the U.S. Supreme Court, resulting in a final ruling affirming Mr. Chargois' verdict.

Mr. Chargois has handled a variety of class action and mass tort litigation cases, including a commercial, occupational, mass torts, including business transactions, products liability, pharmaceutical, class action, asbestos and benzene chemical exposures.

Upon graduating as class captain from his law school, Mr. Chargois worked as a corporate and insurance defense attorney in Dallas, Texas, with the law firm Cowles & Thompson, P.C., while also serving as criminal prosecutor for the townships of Rockwall, Rowlette, and Heath, Texas. In 1996, he became a mass tort plaintiff's trial lawyer, ultimately rising to Head of Litigation for national law firm Foster & Sear, L.L.P.

In 2004, the law firm Chargois & Herron was founded with Damon Chargois and Timothy P. Herron. In 2006, Chargois, Mashayekh & Herron was formed to specialize in commercial and class action lawsuits, and expand the firm's commercial and financial business interests. Mr. Chargois' practice is multi jurisdictional and he oversees litigation in several states on the federal and state level. He is a member of the State Bar of Texas Litigation Section, the American Association for Justice, and Texas Trial Lawyers Association. Chargois, Mashayekh & Herron has offices in the Woodlands, Texas; Little Rock, Arkansas; and New York, New York.

Mr. Chargois is a member of the Board of Directors for the University of Houston Law Alumni Foundation. Additionally, he is a member of the Advisory Board of Directors for Houston Achievement Place, a charity specializing in caring for the needs of at risk foster children. He has also served as a guest lecturer on a number of legal topics, including mass tort litigation and bankruptcy to the University of Arkansas—Little Rock Law School.

**Timothy P. Herron** was born in Hot Springs, Arkansas, on October 18, 1952. He was admitted to the Texas Bar in 1980. Mr. Herron did his undergraduate and graduate education at Texas Christian University receiving a Bachelor of Fine Arts in Speech and Communication in 1974 and a Master of Science in Speech and Communication in 1975. He taught as a professor at Samford University before being awarded a Fulbright Scholarship to attend Baylor Law School in Waco, Texas where he obtained his Juris Doctor Degree in 1980 (*cum laude*).

In law school, he was voted the most outstanding trial advocate in the nation and was on Baylor's national winning mock trial team. Mr. Herron began as an attorney with Baker & Botts in Houston in the employment litigation section. He left Baker Botts, to become a partner in the firm of Hope & Mays and later Crews & Herron in Conroe, Texas. In 1990, along with Don Wetzel, he formed the law firm of Wetzel & Herron which specialized in insurance defense and commercial litigation.

After representing mainly defense and commercial clients for eighteen years, Mr. Herron changed his practice to handle only plaintiffs' mass torts. In 1998, he started the law firm of Hissey Kientz &

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                          LBS017746

Herron with Rob Kientz, and Mike Hissey, which since that time continues to handle mass tort litigation. Their cases include a wide range of occupational and mass torts, including asbestos and pharmaceutical litigation.

In 2004, the law firm Chargois & Herron was founded with Damon Chargois and Timothy P. Herron. In 2006, the firm expanded to specialize in commercial and class action lawsuits, and expand the firm's commercial and financial business interests. Mr. Herron's practice is multi jurisdictional and he oversees litigation in several states on the federal and state level. He is licensed in Texas and Arkansas. He is board certified in Civil Trial Litigation since 1989, is licensed to practice in the Federal Courts of Texas, and is a member of the State Bar of Texas in the Litigation Section and the AAJ and TTLA. In addition, he is chairman of the Unauthorized Practice of Law Committee of the State Bar of Texas, Region 5A. Chargois & Herron has offices in the Woodlands, Texas; Little Rock, Arkansas; and New York, New York.

Mr. Herron has expanded his business interests to include commercial banking and real estate. He was also involved in the founding of Post Oak Bank in Houston in 2003. He has been involved in the development and funding of commercial property development for the past four years in Texas, Oklahoma and Alabama.

Tim Herron has resided in Montgomery County, Texas for the past 26 years and has six children and one grandchild.

**Kamran Mashayekh** was admitted to the Texas State Bar on November 11, 1990. Mr. Mashayekh received his undergraduate degree in Political Science from Rice University in 1987 and received his Doctor of Jurisprudence from South Texas College of Law in August 1989.

In 2006, Kamran Mashayekh joined the law firm of Chargois & Herron to specialize in commercial and class action lawsuits and expand the firm's commercial and financial business interest. Mr. Mashayekh is fluent in English, Arabic, French and Spanish.

**Che D. Williamson** was born on November 25, 1964. She is married to Tim Herron and has 2 children and one grandchild. Ms. Williamson earned her Juris Doctor degree from South Texas College of Law in 1989. She has practiced law with her husband, Tim Herron since 1989. Ms. Williamson teaches mass torts at the William H. Bowen Law School at the University of Arkansas. She is also board certified in Civil Trial Litigation and holds a Ph.D. degree in criminal justice from Sam Houston State University and an L.L.M. in environmental law and policy from the University Houston Law School.

5.8     *Provide a very brief summary general description of your firm's practice in the subject matter areas covered by this RFQ, including the size and scope of the practice and any other resources of your firm which are relevant to your practice in those areas.*

## Response by Labaton Sucharow
Labaton Sucharow has developed its expertise in prosecuting securities class actions over decades, and litigation on behalf of injured institutional and individual investors represents the firm's principal practice area. Since passage of the PSLRA, the firm has been appointed lead counsel on numerous occasions, including cases involving the largest investor losses and most egregious frauds, such as the current *Countrywide, American International Group* and *HealthSouth* litigations.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                LBS017747

As noted above in response to question 5.4, Labaton Sucharow has a dedicated Case Evaluation Group comprised of attorneys and non-attorney professionals, who identify and evaluate cases of possible fraud, and who have developed proprietary criteria to rate such cases.

Labaton Sucharow has cultivated a specific expertise in enforcing accountability on the part of underwriters and accounting firms – entities that play an important role in the financial markets and, we believe, have special responsibility to ensure its proper functioning.  One partner of the firm, who practiced for many years in the financial services sector, has made litigation against underwriters a principal focus of his practice with the firm.  Two attorneys at Labaton Sucharow are certified public accountants, both with significant auditing experience.  Their expertise in both law and accounting provides the firm a special capacity to identify and analyze accounting-related fraud, coordinate expert testimony, and effectively depose financial personnel.

The firm also highly values its non-attorney professionals, and believes that the close integration of their financial and investigative expertise with the firm's legal work provides Labaton Sucharow an unusual ability to build well-developed, thoroughly researched, and analytically rigorous cases and present them effectively to judges and juries.

Distinctively, the firm has a demonstrated willingness to go to trial when necessary.  Since 2000, partners of the firm have served as lead or co-lead counsel in several major securities trials including, *In re Real Estate Associates Limited Partnerships Litigation*, No. 98-7035 (C.D. Cal.) and *Koppel v. 4987 Corp.*, 167 F.3d 125 (2d Cir. 1999).  In the *Real Estate Associates* litigation, Lawrence Sucharow co-led a month-long jury trial that resulted in a $92 million compensatory award and a $92 million punitive damages award (later reduced to the maximum allowed under California law).  In *Koppel*, the firm established a significant corporate governance precedent.  We see our record of taking cases to trial as critical to our ability to negotiate credibly and forcefully on behalf of the institutions and classes we represent.

Finally, Labaton Sucharow strongly believes that shareholder litigation provides important public benefits by insuring fair and efficient public markets, regulating corporate governance, and controlling other deceptive conduct by public companies.  The firm's senior partner, Edward Labaton, is a recognized authority on corporate governance issues, and is a member of the Advisory Committee of the University of Delaware's Weinberg Center for Corporate Governance and the New York City Bar Association's Task Force on the Role of Lawyers in Corporate Governance.  He has also been President of the Institute for Law and Economic Policy since its founding.

## Response by Chargois & Herron
Chargois & Herron has offices in Little Rock, Arkansas and The Woodlands, Texas, in addition to counsel affiliations with Labaton Sucharow in New York, Friedman Law Group in New York and Markun, Zussman & Compton in Los Angeles, California for the primary purpose of investigating and pursuing class action securities, commercial and consumer litigation which includes cases involving large investor losses and egregious fraud.  Chargois & Herron has an attorney who dedicates a major portion of his work week watching the market, scouring financials and personally speaking with clients, financial experts and business leaders in our continuing effort to discover and root out fraud and misrepresentations by corporate wrongdoers.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                              LBS017748

5.9     *Provide a very brief summary description of not more than ten (10) significant transactions or cases in which your firm has provided extensive legal services involving pension funds or other institutional clients relating to the subject matter areas covered by this RFQ.*

## Response by Labaton Sucharow

With respect to securities litigation, Labaton Sucharow has obtained substantial recoveries for institutional clients and associated classes in dozens of cases, and is recognized today as one of a small number of firms with the expertise and resources to prosecute the largest and most complex cases.

In one of the largest cases involving the recent subprime mortgage crisis, Labaton Sucharow serves as lead counsel representing Lead Plaintiffs the State of New York and the New York City Pension Funds (collectively, "the New York Funds") in *In re Countrywide Securities Litigation*, No. CV-07-5295 MRP (MANx) (C.D. Cal.), pending before U.S. District Judge Mariana R. Pfaelzer in the U.S. District Court for the Central District of California. This case is a consolidated class action asserting claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Countrywide Financial Corporation, certain of its current and former directors and officers, outside accountants, and underwriters of public offerings of Countrywide securities.

In *In re American International Group Inc. Securities Litigation*, Civ. No. 04-8141 (LTS) (S.D.N.Y.), Labaton Sucharow is lead counsel on behalf of Lead Plaintiffs the Ohio Public Employees Retirement System, and certain other Ohio state pension funds. Defendants include AIG, and its present and former senior executives, underwriters, auditor, and parties to various fraudulent transactions. In 2006, the court denied defendants' numerous motions to dismiss in substantially all respects. The document review will likely be one of the largest in the history of securities litigation; to date, we have reviewed more than 37 million pages of 40 million that defendants produced. Both fact depositions and class certification depositions have begun.

In *In re Mercury Interactive Corp. Securities Litigation*, Master File No. 05-3395, pending in the United States District Court for the Northern District of California, Labaton Sucharow is acting as co-lead counsel representing Lead Plaintiffs the Steamship Trade Association/International Longshoremen's Association Pension Fund, the City of Sterling Heights General Employees Retirement System, the City of Dearborn Heights Police and Fire Retirement System, and the Charter Township of Clinton Police & Fire Pension System. The allegations in Mercury concern backdated option grants used as unreported compensation to employees and officers of the Company. Mercury's former CEO, CFO, and General Counsel actively participated in and benefited from the options backdating scheme, which came at the expense of Mercury shareholders and the investing public. Labaton Sucharow and Hewlett-Packard's counsel reached an agreement in principle that will compensate injured plaintiffs in the total sum of $117.5 million, a figure representing the second largest known settlement or judgment in an options backdating suit to date. Labaton Sucharow and Hewlett-Packard's counsel executed a Stipulation of Settlement and the court granted preliminary approval of the settlement on June 2, 2008.

In *In re Bristol-Myers Squibb Securities Litigation*, Civ. No. 00-1990 (GEB) (D.N.J.), Labaton Sucharow, as sole lead counsel, prosecuted class claims on behalf of Lead Plaintiff, Longview Collective Fund of the Amalgamated Bank. The firm reviewed more than 5 million pages of documents, took 44 factual depositions and 18 expert depositions and defended 8 experts. The case settled in January 2006 for $185 million. The settlement also included the important public benefit of an agreement

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                          LBS017749

by Bristol-Myers Squibb to post results of its clinical trials, including all adverse events, for a period of ten years.

In *In re HealthSouth Corp. Stockholder Litigation*, No. CV-03-BE-1501-S (N.D. Ala.), Labaton Sucharow represents Lead Plaintiffs the New Mexico State Investment Council and the New Mexico Educational Retirement Board and serves as co-lead counsel. The litigation alleges a broad scheme by the company's former senior managers in the largest securities fraud in the healthcare industry. In January 2007, the court approved a settlement valued at $445 million with HealthSouth Corporation and several of the Company's former officers and directors. The partial settlement, comprised of cash and HealthSouth securities, is one of the largest in history. Lead Plaintiffs continue their prosecution of the litigation against HealthSouth's former CEO, Ernst & Young, and UBS.

In *In re Waste Management, Inc. Securities Litigation*, Civ. No. H-99-2183 (S.D. Tex.), Labaton Sucharow was retained by the Connecticut Retirement Plans and Trust Funds. The litigation resulted in a $457 million settlement, one of the largest securities class action recoveries ever obtained. On behalf of its client and the Class, Labaton Sucharow secured substantial corporate governance enhancements, including measures designed to strengthen the role and independence of the defendant's audit committee, declassify its board of directors, and encourage and safeguard whistleblowers among the company's employees.

In *In re Real Estate Associates Limited Partnerships Litigation*, No. 98-7035 (C.D. Cal.), Labaton Sucharow litigated and tried this case to a jury verdict in federal court in California in late 2002. The firm obtained a precedent setting award of $92 million in compensatory damages under various legal theories, including violations of Section 14(a) of the Exchange Act. The jury also awarded an additional $92 million for punitive damages on a breach of fiduciary duty claim (which was later reduced by the court on a motion for remittitur). The case was eventually settled for more than 100% of claimed damages.

Labaton Sucharow also represents institutional investors in a number of individual securities actions. For example, in *In re Adelphia Communications Corp. Securities & Derivative Litigation*, Civ. No. 03 MD 1529 (LMM) (S.D.N.Y.), the firm represents the New York City Employees' Retirement System (and certain other New York City pension funds) and the Division of Investment of the New Jersey Department of the Treasury in separate individual actions against Adelphia's officers, auditors, underwriters, and lawyers. To date, Labaton Sucharow has fully resolved certain of the claims brought by New Jersey and New York City for amounts that significantly exceed the percentage of damages recovered by the Class. New Jersey and New York City continue to prosecute their claims against the remaining defendants. In *In re WorldCom Inc. Securities Litigation*, Master File No. 02 Civ. 3288 (DLC) (S.D.N.Y.), Labaton Sucharow secured a substantial settlement in an individual action brought by our clients SunTrust Bank and Trusco Capital Management, Inc. against the former underwriters, auditors, and directors of WorldCom, Inc. In *In re Qwest Communications International Securities Litigation*, 01-cv-01451 (D. Col.), after a class action settlement was announced in September 2006, Labaton Sucharow was engaged by CalPERS to pursue all appropriate opt-out securities claims in connection with CalPERS' securities holdings in Qwest Communications Int'l Inc. We drafted complaints for use in both federal and state courts, obtained and extension of pre-existing polling agreement (which made it unnecessary for us to file complaints), represented CalPERS at two mediation sessions with Qwest and related defendants, and negotiated the final settlement

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                          LBS017750

which was far greater than what CalPERS would have obtained in the class action and was proportional to the largest other opt-out settlement obtained against Qwest that we know of.

## Response by Chargois & Herron
Chargois & Herron has represented a number of plaintiffs against corporations who have been proven to have acted fraudulently with respect to their shareholders or consumers.

In *Bristol County Retirement System vs. HCC Insurance Holdings, Inc.*, we served as liaison counsel representing the Massachusetts Public Pension Funds against HCC Holdings, Inc. arising out of its fraudulent options backdating practices we alleged. After almost two years of litigation, we are finalizing a significant settlement for our clients.

In *Holloway v. Countrywide*, we have co-counseled with Markun, Zussman & Compton against Countrywide arising out of its fraudulent subprime mortgage practices. Recently, our case received class certification status for the State of California.

Chargois & Herron owns an Alabama company called 270 Discovery Solutions which provides document research, indexing and computer inputting of the millions of items of information contained in the documents that are routinely produced – usually under court order – in securities class action litigation. Uniquely, our company is staffed almost entirely by licensed attorneys, numbering in excess of 25 attorneys. This puts Chargois & Herron in a unique and special position to handle any securities litigation matter, regardless of size.

5.10    *Please describe proposed billing arrangements, including contingency fees, for securities litigation. If other than contingency fees are contemplated, please state the range of hourly billing rates, by timekeeper status (paralegal, 1st to 3rd year associate, etc., staff attorney, shareholder or partner, of counsel, etc.), of all attorneys and paralegals proposed for assignment to ATRS matters. State what discount, if any, to these rates the firm proposes to provide to ATRS. While this RFQ primarily seeks the services of one lead attorney, the involvement of other firm attorneys may be required from time to time, depending on the matter.*

## Response of Labaton Sucharow
Labaton Sucharow confirms that monitoring and evaluating services provided under this Proposal would be carried out at no cost to the ATRS.

The range of contingency fees that Labaton Sucharow proposes with respect to securities class actions (and individual actions) that we successfully resolve as litigation counsel for the ATRS is dependent on several factors anticipated at the beginning of the case, including the likelihood of success, the likely size of any settlement or judgment from any or all defendants. For example, in a case involving a solvent company, hundreds of millions of dollars in damages, and a defendant company that has admitted wrongdoing and/or filed a restatement, the proposed contingency fee would be at the low end of the proposed range. In a case involving smaller damages, no admission, no restatement, and potential difficulties in funding a settlement or a judgment, the risks of litigation would be greater and therefore the proposed attorneys' fees would be at the higher end of the range.

On the basis described above, Labaton Sucharow proposes a range of fees generally conforming to the following:

Labaton Sucharow LLP                                                              Page 13

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

|  |  | STAGE OF LITIGATION | | | |
| --- | --- | --- | --- | --- | --- |
|  |  | Initiation of action to completed briefing of motion to dismiss (or, if no such motion, initiation of discovery) | Thereafter, to completed briefing of motion for summary judgment (or, if no such motion, to completion of discovery) | Thereafter, to trial and entry of judgment | Thereafter (including appellate proceedings), to ultimate resolution |
| AMOUNT OF RECOVERY | Up to $150 million | 5-7% | 12-17% | 18-22% | 21-24% |
| | Greater than $150 million, up to $250 million | 4-6% | 7-10% | 10-12% | 12-14% |
| | Greater than $250 million | 4-6% | 6-8% | 8-9% | 10% |

Labaton Sucharow would offer legal services to the ATRS outside the scope of the "evaluation counsel" and "litigation counsel" functions discussed in the RFQ at the discounted hourly rates set forth below. These rates represent a discount of 40%-60% of the Firms' standard billing rates for their attorneys.

Eric J. Belfi
Lawrence A. Sucharow
Thomas A. Dubbs          } $350
Christopher J. Keller
Other Partners

Zachary M. Ratzman       } $300
Other Of Counsel

Ann E. Gittleman
Krista T. Rosen          } $250
Other Associates

## Response by Chargois & Herron

Chargois & Herron, LLP confirms that monitoring and evaluating services provided under this Proposal would be carried out at no cost to the ATRS.

The range of contingency fees that Chargois & Herron proposes with respect to securities class actions (and individual actions) that we successfully resolve as litigation counsel for the ATRS is dependent on several factors anticipated at the beginning of the case, including the likelihood of success, the likely size of any settlement or judgment from any or all defendants. For example, in a case involving a solvent company, hundreds of millions of dollars in damages, and a defendant company that has admitted wrongdoing and/or filed a restatement, the proposed contingency fee would be at the low end of the proposed range. In a case involving smaller damages, no admission, no restatement, and potential difficulties in funding a settlement or a judgment, the risks of litigation would be greater and therefore the proposed attorneys' fees would be at the higher end of the range.

On the basis described above, Chargois & Herron proposes a range of fees generally conforming to the following:

Labaton Sucharow LLP                                                                 Page 14

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

|  | | STAGE OF LITIGATION | | | |
| --- | --- | --- | --- | --- | --- |
|  | | Initiation of action to completed briefing of motion to dismiss (or, if no such motion, initiation of discovery) | Thereafter, to completed briefing of motion for summary judgment (or, if no such motion, to completion of discovery) | Thereafter, to trial and entry of judgment | Thereafter (including appellate proceedings), to ultimate resolution |
| AMOUNT OF RECOVERY | Up to $150 million | 5-7% | 12-17% | 18-22% | 21-24% |
| | Greater than $150 million, up to $250 million | 4-6% | 6-10% | 10-12% | 12-14% |
| | Greater than $250 million | 4-6% | 4-6% | 7-8½% | 8-9½% |

Chargois & Herron would offer legal services to the ATRS outside the scope of the "evaluation counsel" and "litigation counsel" functions discussed in the RFQ at the discounted hourly rates set forth below. These rates represent a discount of 40%-60% of the Firms' standard billing rates for their attorneys.

Damon J. Chargois
Tim Herron
Kamran Mashayekh      } $350
Che Williamson
(Partners)

Kirk A. Chargois
Carlos A. Fernandez   } $250
(Associates)

**5.11**   *State any inability to comply with terms of the engagement described in Section 3.3 of this RFQ. If any inability exists, be specific.*

For both Labaton Sucharow and Chargois & Herron, there are no inabilities to comply with the terms of the engagement described in Section 3.3 of this RFQ.

**5.12**   *Identify any known relationship, either business or personal, which you or a member of your firm has with any ATRS Board member, investment consultant, investment manager, or key employee. If aware of none, state "None." (A list of ATRS Board members, investment consultants, investment managers, and key employees can be provided upon request. A formal conflicts check will be required prior to contracting.)*

Labaton Sucharow and Chargois & Herron are not aware of any known relationships.

**5.13**   *Identify any relationship, either business or personal, which you or a member of your firm has with a person known to you to have substantial business dealings with ATRS or its real estate title-holding corporation.*

To the best of our knowledge, Labaton Sucharow and Chargois & Herron do not have any relationships, either business or personal, with a person who has substantial dealings with the ATRS or its real estate title-holding corporation.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                        LBS017753

5.14 *State whether you or any firm attorney proposed to provide services for this engagement has ever had a formal grievance or complaint lodged against him or her pursuant to the applicable disciplinary rules or has ever been sued for malpractice or any civil or criminal regulatory enforcement action in connection with any type of legal representation, and whether any such attorneys have been sued individually with respect to any type of personal investment or other personal or business involvement concerning an underwriter or issuer of securities, investment adviser, investment company, securities broker-dealer, insurer, real estate transaction, or a lending institution.*

## Response by Labaton Sucharow

Labaton Sucharow (and its predecessor firms) have been in business for more than 45 years. For much of that time, the firm had a substantial general billable corporate practice as well as its contingent class action litigation practice. Labaton Sucharow currently has a very small general billable corporate practice. Throughout its existence, from time to time, issues have arisen which required notification of our malpractice insurance carrier. At the present time, the firm has provided notice of the following matters to its malpractice insurance carrier. (None of the matters of which our carrier has been notified involves class action litigation).

Labaton Sucharow is a defendant in a legal malpractice case brought by a former client who asserts the firm and others committed malpractice in representing him in civil and criminal matters, and that the firm inappropriately failed to compensate him in connection with a qui tam proceeding. The claim is for an unspecified amount of damages.

In a separate action, on March 19, 2008, the preliminary executors of the estate of Jack Maurer commenced an action in the Supreme Court of the State of New York against Labaton Sucharow, charging that the firm had committed malpractice in connection with estate planning services rendered in 2001. The firm has moved to dismiss and the motion is currently pending before the court.

Labaton Sucharow's attorneys have never been sued individually with respect to any type of personal investment or other personal or business involvement concerning an underwriter or issuer of securities, investment adviser, investment company, securities broker-dealer, insurer, real estate transaction, or a lending institution.

## Response by Chargois & Herron

Chargois & Herron has never been sued for malpractice, nor had a formal grievance or complaint lodged against it nor had any civil or criminal regulatory enforcement action brought against it; however, Damon J. Chargois, individually has had a grievance in the Dillard's discrimination litigation and a grievance in asbestos litigation brought against him, but both have been and were dismissed

5.15 *For your response to this RFQ, please indicate the firm's or attorney's professional liability insurance limits within the following ranges, and the name of the carrier or carriers.*

## Response of Labaton Sucharow
**$5 million to $ 10 million**

Labaton Sucharow's malpractice insurer is Lloyd's of London. Labaton Sucharow maintains professional malpractice insurance coverage in the amount of $10 million, representing both the

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                         LBS017754

aggregate and per-claim annual policy limits and it is applied to the firm as a whole.  Labaton Sucharow also maintains a fiduciary policy with a $2 million limit.

### Response of Chargois & Herron
### Under $5 million

Chargois & Herron's malpractice insurer is Texas Lawyers Insurance Exchange (TLIE).  Chargois & Herron maintains professional malpractice insurance coverage in the amount of $1 million.

> *Indicate below the range or the deductible or any self-insured retention with respect to the foregoing insurance.*

### Response of Labaton Sucharow
### Between $500,001 and $1 million

Labaton Sucharow's deductible is $1 million.

### Response of Chargois & Herron
### Between 0 and $100,000

Chargois & Herron's deductible is $25,000.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                          LBS017755

# EX. 25

| | |
|---|---|
| **From:** | Keller, Christopher J. </O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=KELLERC> |
| **Sent:** | Monday, October 13, 2008 3:38 PM |
| **To:** | Belfi, Eric J. <EBelfi@labaton.com>; Bankston, Jennifer S. <jbankston@labaton.com> |
| **Cc:** | Sucharow, Lawrence <LSucharow@labaton.com>; Dubbs, Thomas <TDubbs@labaton.com> |
| **Subject:** | Arkansas Teachers RFQ 2008-2 |

Great news.

Christopher J. Keller, Esq.
Partner
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Phone: (212) 907-0853
Fax: (212) 883-7053
e-mail: ckeller@labaton.com
www.Labaton.com

-----Original Message-----
From: Belfi, Eric J.
Sent: Monday, October 13, 2008 1:57 PM
To: Keller, Christopher J.; Bankston, Jennifer S.
Cc: Sucharow, Lawrence; Dubbs, Thomas
Subject: Fw: Arkansas Teachers RFQ 2008-2

Please see communication from ATRS below.

I have reached out to Damon & Tim - it should not be an issue.

Eric J. Belfi
Partner
Labaton Sucharow LLP
140 Broadway
New York, N.Y. 10005
Telephone: +1.212.907.0878
Facsimile: +1.212.883.7078
ebelfi@labaton.com
www.labaton.com

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                    LBS017455

----- Original Message -----
From: Christa Clark <christac@artrs.gov>
To: Belfi, Eric J.
Cc: Tamara Henderson <tamarah@artrs.gov>
Sent: Mon Oct 13 12:20:49 2008
Subject: Arkansas Teachers RFQ 2008-2

I am pleased to inform you that subject to final approval of the Attorney General's office, ATRS has selected Labaton
Sucharow as an additional monitoring counsel for our system.

I would like to speak with you regarding the additional firm on your submission Chargois & Herron. This is a little awkward,
but since your firms are not legally affiliated, we are unable to process the state contract form with both firms listed.

If your firm is doing the monitoring and providing the financial backing for the cases, I think it is most appropriate that we
add your firm independently to the list of approved firms. Your firm may affiliate that firm or utilize them as independent
contractors, if you deem is appropriate, on a case by case basis. There would be no requirement that you use them if it was
not a necessary and appropriate expense of a case. I don't know how to best handle this point but the state procurement
process is not conducive to a joint proposal.

Upon approval of the Attorney General, ATRS will send you a request for a form W-9, Arkansas Professional Services
contract form, and State grant/contract disclosure form for your completion.

Please call me if you have a minute to discuss.

Regards,

--
Christa S. Clark
Chief Counsel
Arkansas Teacher Retirement System
1400 W. 3rd St.
Little Rock, AR 72201
(501) 682-1266   Direct
(501) 682-6326   Fax
(501) 590-2869   MOBILE
email: christac@artrs.gov

Attorney-Client Privileged Communication. This electronic mail transmission, and any documents, files or messages
attached contain information that may be confidential or legally privileged. If you are not the intended recipient, you are
notified that the disclosure, copying, printing, or distribution of this transmission is strictly prohibited. If you received this
transmission in error, please notify the sender by telephone or return email and delete the original message.

 Thank you.

NOTICE: Any federal tax advice contained in this communication can not be used, or is not intended, for the purpose of
avoiding penalties under the IRS Code, or promoting or recommending to another party any tax-related matters herein.

LBS017456

# EX. 26

Message

| From: | Belfi, Eric J. [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE |
| | GROUP/CN=RECIPIENTS/CN=BELFIE] |
| Sent: | 5/10/2010 12:59:55 PM |
| To: | 'Tim Herron' [tim@cmhllp.com]; Damon Chargois [damon@cmhllp.com] |
| Subject: | FW: Goldman Sachs |
| Attachments: | Goldman Sachs Blue Ribbon Report (ATRS).pdf; Exhibit Nos. 1-9.pdf |

---

From: Belfi, Eric J.
Sent: Monday, May 10, 2010 8:39 AM
To: 'George Hopkins'
Subject: RE: Goldman Sachs

Dear George:

Please find our Blue Ribbon Report for Goldman Sachs.

If you have any questions, do not hesitate to contact us.

Best regards,

Eric

---

From: Belfi, Eric J.
Sent: Thursday, April 22, 2010 9:54 AM
To: 'George Hopkins'
Subject: Goldman Sachs

George:

Please find our case report on Goldman Sachs. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Since there are a number of outstanding issues with ATRS, please let us know if it would be beneficial
for us to come down and met with you to go over everything.

Best regards,

Eric J. Belfi
Partner || Labaton Sucharow LLP
140 Broadway
New York, N.Y. 10005
Telephone: +1.212.907.0878
Facsimile: +1.212.883.7078
ebelfi@labaton.com
<http://www.labaton.com/> www.labaton.com


***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR
OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named
herein. If you are not the Addressee(s), or the person responsible for delivering this to the
Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited.
If you have received this electronic mail message in error, please contact us immediately at 212-907-0700
and take the steps necessary to delete the message completely from your computer system. Thank you.

# EX. 27

| From: | Belfi, Eric J. </O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=BELFIE> |
|---|---|
| Sent: | Thursday, May 6, 2010 7:59 AM |
| To: | George Hopkins <georgeh@artrs.gov> |
| Bcc: | 'Tim Herron' <tim@cmhllp.com> |
| Subject: | The Hartford - ATRS - REVISED |
| Attach: | HIG Litigation Update.pdf; The Hartford Investigative Update #1.pdf |

Dear George:

Attached please find a memorandum summarizing the fruits of our internal research to date, particularly regarding evidence of scienter and areas of exploration into which our insurance and accounting experts are delving. Also attached hereto is our first investigative update, summarizing information provided by two confidential witnesses. We have a number of additional promising confidential witness leads, and look forward to providing ATRS with another progress update shortly, together with the initial findings of our experts.

Please do not hesitate to let me know if you have any questions relating to The Hartford securities class action -- or any other matters.

Best regards,

Eric J. Belfi
Partner || Labaton Sucharow LLP
140 Broadway
New York, N.Y. 10005
Telephone: +1.212.907.0878
Facsimile: +1.212.883.7078
ebelfi@labaton.com
www.labaton.com

***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# EX. 28

Message

| From: | Belfi, Eric J. [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=BELFIE] |
|---|---|
| Sent: | 5/17/2010 2:31:39 PM |
| To: | tim@cmhllp.com; 'damon@cmhllp.com' [damon@cmhllp.com] |
| Subject: | FW: Follow up |

This is one, now we need █████████

```
-----Original Message-----
From: George Hopkins [mailto:georgeh@artrs.gov]
Sent: Sunday, May 16, 2010 3:51 PM
To: Brad Beckworth
Cc: Belfi, Eric J.; ATRS Laura Gilson
Subject: Re: Follow up

I think this is a great plan with a great team. Ghop ------Original Message------
From: Brad Beckworth
To: Ghop
Cc: Eric J. Belfi
Cc: ATRS Laura Gilson
Cc: Ghop
Subject: Re: Follow up
Sent: May 16, 2010 2:37 PM

Thanks George.

Eric and I talked and we are willing to work together. We will get the papers prepared and be in touch.

Have a nice rest of the weekend.

Brad Beckworth
Nix, Patterson & Roach LLP
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333

On May 15, 2010, at 9:33 AM, "George Hopkins" <georgeh@artrs.gov> wrote:

> I think the decision is so close that I cannot make a choice between
> NP and Labaton. The strengths of both firms vary and the combined
> firms has great coverage of all concerns.  So I have decided to ask
> the two firms to seek a joint filing on behalf of ATRS. I have added
> both contacts by this email.  Let me know if each of you are willing
> to work with the other. Ghop ------Original Message------
> From: Brad Beckworth
> To: Ghop
> Subject: Follow up
> Sent: May 15, 2010 9:23 AM
>
> Hi George,
> It was good seeing you Wednesday. I know you had a busy day and
> appreciate you taking time out for us.
> I wanted to follow up and see where things stand regarding Hartford.
> We are a couple weeks out on the lead plaintiff deadline, so I want to
> make sure we are ready.
> I am available to talk this weekend if you'd like (903-235-7709)----I
> didn't want to call and bother you on a weekend.
>
> Otherwise, I will try you Monday.
>
> Take care,
> Brad
>
>
> Brad Beckworth
> Nix, Patterson & Roach LLP
> 205 Linda Drive
> Daingerfield, Texas 75638
```

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                                LBS018437

> (903) 645-7333
>
>
>
> ATRS Executive Director


ATRS Executive Director

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

LBS018438

# EX. 29

Message

| | |
|---|---|
| **From:** | Belfi, Eric J. [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=BELFIE] |
| **Sent:** | 5/17/2010 6:41:39 PM |
| **To:** | 'damon@cmhllp.com' [damon@cmhllp.com]; tim@cmhllp.com |
| **Subject:** | Colonial |
| **Attachments:** | 20100514163957.PDF |

Here was the letter to George

————

From: Johnson, James
Sent: Friday, May 14, 2010 5:39 PM
To: Johnson, James
Subject:

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# Labaton
# Sucharow

Eric J. Belfi
Partner
212 907 0878 direct
212 883 7078 fax
email ebelfi@labaton.com

CONFIDENTIAL
ATTORNEY-CLIENT PRIVILEGE

May 14, 2010

**Via Email**

George Hopkins, Executive Director
Arkansas Teachers Retirement System – Domestic
1400 West Third Street
Little Rock, AR 72201

Re:    In re Colonial BancGroup, Inc. Sec. Litig.
       Our File No. 016486.0001

Dear George:

I am writing to update you regarding recent developments in the *Colonial BancGroup* action.

Sincerely yours,

*Eric*

Eric J. Belfi

LBS020418

# EX. 30

Message

| | |
|---|---|
| **From**: | /o=Goodkin Labaton Rudoff Sucharow/ou=First Administrative Group/cn=Recipients/cn=belfie [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=BELFIE] |
| **Sent**: | 5/2/2013 9:03:50 PM |
| **To**: | George Hopkins (georgeh@artrs.gov) [georgeh@artrs.gov] |
| **BCC**: | Damon Chargois (damon@cmhllp.com) [damon@cmhllp.com] |
| **Subject**: | Facebook Motion to Dismiss - Email 2 of 2 |
| **Attachments**: | 2013-04-30 DECLARATION of Andrew B. Clubok in Support MOTION to Dismiss Dkt 91.pdf |

George:

Attached is the Declaration in support of the motion to dismiss.

Eric

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                        LBS017822

# EX. 31

Message

| | |
|---|---|
| **From:** | /o=Goodkin Labaton Rudoff Sucharow/ou=First Administrative Group/cn=Recipients/cn=belfie [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=BELFIE] |
| **Sent:** | 10/23/2013 7:36:59 PM |
| **To:** | Damon Chargois (damon@cmhllp.com) [damon@cmhllp.com] |
| **Subject:** | In re Facebook Securities Litigation |
| **Attachments:** | October 23, 2013 Ltr to ATRS.pdf; PowerPoint Presentation - Lead Plaintiffs' Opposition to the Motion to Dismiss.pdf; 2013-10-08 HEARING TRANSCRIPT Motion to Dismiss (WORD file) (1082701_1).DOC; Law 360 Article.pdf |

Here is the letter to George Hopkins together with all the attachments.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# EX. 32

Message

| | |
|---|---|
| **From**: | Belfi, Eric J. [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE |
| | GROUP/CN=RECIPIENTS/CN=BELFIE] |
| **Sent**: | 7/24/2013 11:06:56 AM |
| **To**: | George Hopkins [georgeh@artrs.gov] |
| **BCC**: | Damon Chargois [damon@cmhllp.com] |
| **Subject**: | Goldman |

George:

We have been following the trial - some interesting testimony.

Share us on:
<http://twitter.com/share?text=Player%20In%20Goldman%20Deal%20Says%20She%20Was%20Misled%20About%20Abacus&
url=http://www.law360.com/securities/articles/459453> Twitter
<http://www.facebook.com/share.php?u=http://www.law360.com/securities/articles/459453> Facebook
<http://www.linkedin.com/shareArticle?mini=true&url=http://www.law360.com/securities/articles/459453&summ
ary=A+key+government+witness+in+the+fraud+trial+against+former+Goldman+Sachs+Group+Inc.+trader+Fabrice+To
urre+said+Tuesday+that+she+was+misled+about+the+allegedly+built-to-
fail+Abacus+transaction%2C+though+stopped+short+of+saying+that+Tourre+himself+lied.&title=Player+In+Goldm
an+Deal+Says+She+Was+Misled+About+Abacus&source=Law360> LinkedInBy Richard Vanderford
<http://www.law360.com/securities/articles/459453?nl_pk=e815b2bc-ec37-4835-b586-
99356fa52f10&utm_source=newsletter&utm_medium=email&utm_campaign=securities#comments> 0 Comments

Law360, New York (July 23, 2013, 7:25 PM ET) -- A key government witness in the fraud trial against
former Goldman Sachs Group Inc <http://www.law360.com/companies/goldman-sachs-group-inc> . trader Fabrice
Tourre said Tuesday that she was misled about the allegedly built-to-fail Abacus transaction, though
stopped short of saying that Tourre himself lied.

Laura Schwartz, a former senior managing director at ACA Management LLC, said she was not told that a
hedge fund that helped structure the Abacus transaction, Paulson & Co., had actually bet against it. ACA
was formally in charge of picking a bundle of residential mortgage-backed securities that formed Abacus
2007-AC1, a collateralized debt obligation.

Paulson, which allegedly had significant influence on what RMBS were put into Abacus, made about $1
billion when the CDO collapsed along with the housing market, according to the U.S. Securities and
Exchange Commission <http://www.law360.com/agencies/securities-and-exchange-commission> . The commission
claims Tourre, the alleged "deal captain" for the Abacus deal, defrauded investors by failing to
disclose Paulson's intention to go short and also tricked ACA.

Schwartz, though, said she was not directly lied to and did not explicitly blame Tourre for her
misperception.

"I believed Paulson would be the equity investor in that transaction," Schwartz said.

But when asked where she got that belief, Schwartz responded that her early knowledge of the structure of
the deal came from a meeting with Gail Kreitman, a Goldman salesperson when the Abacus deal was being
worked out.

Kreitman, another SEC witness, has already testified that she believed Paulson was long on Abacus. She
said she did not know who in particular at Goldman gave her that impression.

Schwartz stressed under SEC questioning that, whatever the source of her belief about Paulson's role in
the transaction, ACA was allowed to maintain its misperception. No one at Goldman corrected Schwartz
after, in an email to Krietman, she referred to Paulson's "equity perspective" on Abacus, Schwartz
testified.

She added that Paulson was referred to as "transaction sponsor" in an email from Tourre, though later
conceded that term has no specific definition in the financial world.

Schwartz told jurors that Paulson was given the opportunity to put forward RMBS for inclusion in Abacus.
ACA would not have gone forward with the deal had it known the fund was an intended short investor,
Schwartz said.

"If somebody only wanted to go short that means it was designed to fail and that was not something we
would have done," Schwartz said.

Schwartz's testimony on that point echoed <http://www.law360.com/articles/459149/short-on-goldman-deal-kept-quiet-tourre-jury-told> that of her former boss, ex-ACA CEO Alan Roseman, who said knowledge of Paulson's intention to short would have stopped the transaction in its place.

On cross-examination, Schwartz conceded that ACA had detailed standards for deciding what RMBS were worthy of inclusion in a portfolio and would not have changed those standards based on input from a prospective investor.

"What if Joe had recommended it," Tourre's lawyer John P. Coffey asked, referring to the courtroom deputy. "Would that have affected whether it met the standards of being on the approved list?"

"No," Schwartz said.

"What if it's a long investor," Coffey said.

"No," she said.

Schwartz testimony is scheduled to resume Wednesday morning. Tourre is slated to testify Wednesday afternoon, according to U.S. District Judge Katherine B. Forrest, who is presiding over the case.

Goldman in 2010 agreed to pay $550 million to settle an SEC suit related to Abacus.

Tourre's lawyers have argued that he was one of many Goldman employees who had a hand in Abacus and that disclosures to clients were looked over by Goldman professionals.

Tourre is represented by Pamela R. Chepiga and Andrew Rhys Davies of Allen <http://www.law360.com/firms/allen-overy> & Overy LLP and the Law Office of John P. Coffey.

The case is SEC v. Goldman Sachs & Co. et al., case number 1:10-cv-03229 <http://www.law360.com/cases/4d43f5345002d10782000062> , in the U.S. District Court for the Southern District of New York.

--Editing by Andrew Park.

Related Articles

*       <http://www.law360.com/articles/458711/tourre-did-nothing-wrong-goldman-exec-testifies?article_related_content=1> Tourre Did Nothing Wrong, Goldman Exec Testifies

Eric Belfi
Partner
Labaton Sucharow LLP
140 Broadway
New York, N.Y. 10005
o: 1.212.907.0878
c: 1.516.509.5236

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                    LBS017826

# EX. 33

# Labaton
# Sucharow

Eric J. Belfi
Partner
212 907 0878 direct
212 883 7078 fax
ebelfi@labaton.com

September 24, 2010

**VIA E-MAIL**

Mr. George Hopkins
Arkansas Teacher Retirement System
1400 West Third Street
Little Rock, AR 72201

**Re:**   **State Street Corp.**

Dear Mr. Hopkins:

We are pleased that Arkansas Teacher Retirement System ("Arkansas Teacher") has asked Labaton Sucharow LLP ("Labaton") to represent it and pursue claims against its custodian, State Street Corporation ("State Street" or the "Company") in connection with State Street's foreign currency ("FX") pricing misconduct.  This representation includes the commencement of litigation against the Company's board of directors for breach of fiduciary duties.  We would like to confirm our arrangements with respect to this matter.

Labaton will be paid a fee of between 22.5% and 30% of any recovery or benefit conferred on the shareholder class, subject to court approval, plus expenses which will be advanced by Labaton. Expenses subject to reimbursement may include, among other things, expert witness fees, photocopying, computer research, long distance telephone charges, fax charges, court fees, travel expenses and delivery charges.  Labaton will also advance costs of Arkansas Teacher relating directly to the litigation, such as for travel.  Arkansas Teacher shall have no obligation to pay any fee or expense related to the action.  Typically, such fees or reimbursement of expenses are paid by or on behalf of State Street.  If nothing is recovered, Arkansas Teacher shall owe Labaton no fees or expense reimbursement.

Labaton Sucharow LLP   140 Broadway, New York, NY 10005   212 907 0700 main   212 818 0477 fax   www.labaton.com

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                                  LBS019948

# Labaton
# Sucharow

Arkansas Teacher agrees that Labaton may divide fees with other attorneys for serving as local counsel, as referral fees, or for other services performed in connection with the litigation. The division of attorneys' fees with other counsel may be determined upon a percentage basis or upon time spent in assisting the prosecution of an action. The division of fees with other counsel is Labaton's sole responsibility and will not increase the fees payable upon a successful resolution of the litigation.

Labaton will keep Arkansas Teacher timely apprised of significant developments and decisions in the case. Labaton will provide periodic written reports on a regular basis and will notify Arkansas Teacher in advance regarding court appearances, depositions or other significant proceedings. Labaton will consult with Arkansas Teacher to discuss legal issues and strategies and will seek prior approval regarding significant decisions; specifically, those decisions concerning settlement or fee proposals. Labaton agrees to provide Arkansas Teacher with copies of all pleadings pertaining to this matter and will provide significant pleadings to Arkansas Teacher in advance of submission to the court. Labaton agrees to meet with Arkansas Teacher, or its representatives, to discuss this matter, as required.

Arkansas Teacher hereby provides Labaton with authority to execute documents and agreements relating directly to the litigation on its behalf and to collect and hold on its behalf monies paid to it by way of settlement. Arkansas Teacher also agrees to cooperate fully with Labaton in its handling of the claims. Arkansas Teacher will make its representatives available for consultation and legal proceedings, promptly supply information and documents requested in a truthful and complete fashion, refrain from negotiating and settling the matter without the participation of Labaton and notify Labaton of any change of address.

It is hereby expressly recognized that Arkansas Teacher may at some future time choose to move to be lead plaintiff in an unrelated shareholder case and choose a firm other than Labaton as counsel. In such a case, Arkansas Teacher agrees that it is not a conflict if Labaton is retained by another investor also seeking to be lead plaintiff and hereby waives any possible conflict.

If the terms of this engagement letter meet with Your approval, please sign below and where indicated on the enclosed copy. Return one fully executed copy to us, keeping the second copy for your files.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER   LBS019949

# Labaton
# Sucharow

We are grateful for the opportunity to represent Arkansas Teacher in this matter, and look forward
to the prospect of a favorable resolution.


Very truly yours,


Eric J. Belfi


AGREED TO AND ACCEPTED

this _____ day of _____, 2010


_____
George Hopkins
Executive Director


3 of 3

LBS019950

# EX. 34

# Labaton
# Sucharow

Eric J. Belfi
Partner
212 907 0878 direct
212 883 7078 fax
ebelfi@labaton.com

February 8, 2011

**VIA E-MAIL**

Mr. George Hopkins
Arkansas Teacher Retirement System
1400 West Third Street
Little Rock, AR 72201

Re:      State Street Corporation

Dear Mr. Hopkins:

　　　We are pleased that the Arkansas Teacher Retirement System ("Arkansas Teacher" or the "System") has agreed to retain Labaton Sucharow LLP ("Labaton Sucharow" or the "Firm") in connection with the pursuit of claims against the System's custodian, State Street Corporation ("State Street"), as a result of State Street's misconduct as it relates to the pricing of foreign currency ("FX") transactions. The Firm's representation includes the commencement of class litigation against State Street and certain of its subsidiaries and/or officers or directors for, among other potential viable claims, breaches of fiduciary and other duties (the "Litigation"). The following confirms our arrangement with respect to the Litigation.

　　　Labaton Sucharow will prosecute this Litigation on a wholly contingent fee basis. In addition, any fee request will be based upon customary and ordinary fees for class actions and our lodestar and submitted to the Court for its approval. Labaton Sucharow will be entitled to receive only such fees as the Court determines to award, plus expenses, which will be advanced by the Firm. Expenses will include, among other things, expert witness fees, photocopying, computer research, long distance telephone charges, fax charges, court fees, travel expenses, and delivery charges. Labaton Sucharow will also advance any Arkansas Teacher's out-of-pocket costs relating directly to the Litigation, *e.g.*, travel costs.

1 of 3

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                   LBS005362

# Labaton
# Sucharow

Arkansas Teacher agrees that Labaton Sucharow may allocate fees to other attorneys who serve as local or liaison counsel, as referral fees, or for other services performed in connection with the Litigation. The division of attorneys' fees with other counsel may be determined upon a percentage basis or upon time spent in assisting with the prosecution of the Litigation. Any division of fees among counsel will be Labaton Sucharow's sole responsibility and will not increase the fees payable by Arkansas Teacher or the Class upon a successful resolution of the Litigation.

Labaton Sucharow will keep Arkansas Teacher timely apprised of significant developments and, on a regular basis, will provide periodic written reports  and will notify the System as to court appearances, depositions, and other significant proceedings in advance thereof. Labaton Sucharow will consult with Arkansas Teacher to discuss legal issues and strategies and will seek prior approval regarding significant decisions; specifically, decisions concerning settlement and fee proposals. Labaton Sucharow agrees to provide Arkansas Teacher with copies of all pleadings pertaining to the Litigation and will provide the System with significant pleadings in advance of submission to the court. Labaton Sucharow agrees to meet with the representatives of Arkansas Teacher to discuss this matter, from time to time as required.

Arkansas Teacher hereby provides Labaton Sucharow with authority to execute documents and agreements on its behalf relating directly to the Litigation. Arkansas Teacher also agrees to cooperate fully with the Firm in its handling of the Litigation. Arkansas Teacher will make its representatives available for consultation and legal proceedings, promptly supply information and documents requested in a truthful and complete fashion, refrain from negotiating and settling the matter without the participation of the Firm, and will notify Labaton Sucharow of any change of address and other administration changes relevant to the Firm's representation.

In the event that the Court does not certify the class and the Litigation is prosecuted individually, on behalf of Arkansas Teacher, Labaton Sucharow's fee will be negotiated in good faith based upon customary and ordinary fees for individual actions and our lodestar (the "Negotiated Fee"). Labaton Sucharow acknowledges that the Negotiated Fee will be subject to approval by the Arkansas Teacher's Board.

If the terms of this engagement letter meet with Arkansas Teacher's approval, please sign below where indicated on the enclosed copy. Please return one fully executed copy to us, and retain the second copy for the System's files.

We are grateful for the opportunity to represent Arkansas Teacher in this matter, and look forward to the prospect of a favorable resolution.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER   LBS005363

# Labaton
# Sucharow

Very truly yours,

*Eric J. Belfi*

Eric J. Belfi

AGREED TO AND ACCEPTED

this _____ day of _____, 2011

_____

George Hopkins
Executive Director

3 of 3

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

LBS005364

# EX. 35

# Labaton
# Sucharow

Eric J. Belfi
Partner
212 907 0878 direct
212 883 7078 fax
ebelfi@labaton.com

February 8, 2011

<u>VIA E-MAIL</u>

Mr. George Hopkins
Arkansas Teacher Retirement System
1400 West Third Street
Little Rock, AR 72201

Re:      State Street Corporation

Dear Mr. Hopkins:

We are pleased that the Arkansas Teacher Retirement System ("Arkansas Teacher" or the "System") has agreed to retain Labaton Sucharow LLP ("Labaton Sucharow" or the "Firm") in connection with the pursuit of claims against the System's custodian, State Street Corporation ("State Street"), as a result of State Street's misconduct as it relates to the pricing of foreign currency ("FX") transactions. The Firm's representation includes the commencement of class litigation against State Street and certain of its subsidiaries and/or officers or directors for, among other potential viable claims, breaches of fiduciary and other duties (the "Litigation"). The following confirms our arrangement with respect to the Litigation.

Labaton Sucharow will prosecute this Litigation on a wholly contingent fee basis.  In addition, any fee request will be based upon customary and ordinary fees for class actions and our lodestar and submitted to the Court for its approval.  Labaton Sucharow will be entitled to receive only such fees as the Court determines to award, plus expenses, which will be advanced by the Firm. Expenses will include, among other things, expert witness fees, photocopying, computer research, long distance telephone charges, fax charges, court fees, travel expenses, and delivery charges. Labaton Sucharow will also advance any Arkansas Teacher's out-of-pocket costs relating directly to the Litigation, *e.g.*, travel costs.

1 of 3

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                LBS011060

# Labaton
# Sucharow

Arkansas Teacher agrees that Labaton Sucharow may allocate fees to other attorneys who serve as local or liaison counsel, as referral fees, or for other services performed in connection with the Litigation. The division of attorneys' fees with other counsel may be determined upon a percentage basis or upon time spent in assisting with the prosecution of the Litigation. Any division of fees among counsel will be Labaton Sucharow's sole responsibility and will not increase the fees payable by Arkansas Teacher or the Class upon a successful resolution of the Litigation.

Labaton Sucharow will keep Arkansas Teacher timely apprised of significant developments and, on a regular basis, will provide periodic written reports  and will notify the System as to court appearances, depositions, and other significant proceedings in advance thereof. Labaton Sucharow will consult with Arkansas Teacher to discuss legal issues and strategies and will seek prior approval regarding significant decisions; specifically, decisions concerning settlement and fee proposals. Labaton Sucharow agrees to provide Arkansas Teacher with copies of all pleadings pertaining to the Litigation and will provide the System with significant pleadings in advance of submission to the court. Labaton Sucharow agrees to meet with the representatives of Arkansas Teacher to discuss this matter, from time to time as required.

Arkansas Teacher hereby provides Labaton Sucharow with authority to execute documents and agreements on its behalf relating directly to the Litigation. Arkansas Teacher also agrees to cooperate fully with the Firm in its handling of the Litigation. Arkansas Teacher will make its representatives available for consultation and legal proceedings, promptly supply information and documents requested in a truthful and complete fashion, refrain from negotiating and settling the matter without the participation of the Firm, and will notify Labaton Sucharow of any change of address and other administration changes relevant to the Firm's representation.

In the event that the Court does not certify the class and the Litigation is prosecuted individually, on behalf of Arkansas Teacher, Labaton Sucharow's fee will be negotiated in good faith based upon customary and ordinary fees for individual actions and our lodestar (the "Negotiated Fee"). Labaton Sucharow acknowledges that the Negotiated Fee will be subject to approval by the Arkansas Teacher's Board.

If the terms of this engagement letter meet with Arkansas Teacher's approval, please sign below where indicated on the enclosed copy. Please return one fully executed copy to us, and retain the second copy for the System's files.

We are grateful for the opportunity to represent Arkansas Teacher in this matter, and look forward to the prospect of a favorable resolution.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                          LBS011061

# Labaton
# Sucharow

Very truly yours,

*Eric J. Belfi*

Eric J. Belfi

AGREED TO AND ACCEPTED

this _____ day of _____, 2011

_____

George Hopkins
Executive Director

3 of 3

# EX. 36



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



LBS007090

# EX. 37

Message

| | |
|---|---|
| **From**: | Damon Chargois [damon@cmhllp.com] |
| **Sent**: | 4/25/2013 1:23:44 AM |
| **To**: | Garrett J. Bradley [gbradley@tenlaw.com] |
| **CC**: | Robert L. Lieff [RLIEFF@lchb.com]; Robert L. Lieff [rlieff@lieff.com]; Michael Thornton [MThornton@tenlaw.com]; Belfi, Eric J. [EBelfi@labaton.com]; Keller, Christopher J. [ckeller@labaton.com]; Daniel P. Chiplock [DCHIPLOCK@lchb.com] |
| **Subject**: | Re: State street fee regarding local counsel |

Thank you, Garrett.  Agreed.

Sent from my iPhone

On Apr 24, 2013, at 8:08 PM, "Garrett Bradley" <GBradley@tenlaw.com> wrote:

> Bob,
>
> As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to
the local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System.
Labaton has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to
Labaton in the State Street FX class case before Judge Wolf.  Currently this amount would be 4% because
of the agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the
balance to be decided upon at a later date.  Obviously this may go up should Labaton receive an amount
higher than 20%.
>
> We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be
paid off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant
to our agreement.
>
> The local asked that I copy him on this email so he will have confirmation of this agreement.  When we
spoke to him he was agreeable to this as well.
>
> Garrett
>
>
> _____
>
>
>
> This e-mail and any files transmitted with it are confidential and are
>
> intended solely for the use of the individual or entity to whom they are
> addressed.  This communication may contain material protected by the
> attorney-client privilege. If you are not the intended recipient or the person
> responsible for delivering the e-mail to the intended recipient, be advised that
> you have received this e-mail in error and that any use, dissemination,
> forwarding, printing, or copying of this e-mail is strictly prohibited. If you
> have received this e-mail in error; please immediately notify us by telephone at
> (800) 431-4600. You will be reimbursed for reasonable costs incurred in
> notifying us.
>
>
>
> Please consider the environment before printing this email.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                                LBS025771

# EX. 38

Message

| From: | Belfi, Eric J. [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE |
| | GROUP/CN=RECIPIENTS/CN=BELFIE] |
| Sent: | 5/6/2013 11:50:34 AM |
| To: | Robert L. Lieff [RLIEFF@lchb.com]; Garrett J. Bradley [gbradley@tenlaw.com]; =SMTP:rlieff@lieff.com; Michael |
| | Thornton [MThornton@tenlaw.com] |
| CC: | =SMTP:damon@cmhllp.com; Keller, Christopher J. [ckeller@labaton.com]; Daniel P. Chiplock |
| | [DCHIPLOCK@lchb.com] |
| Subject: | RE: State street fee regarding local counsel |

We are in full agreement.

Eric

-----Original Message-----
From: Lieff, Robert L. [mailto:RLIEFF@lchb.com]
Sent: Wednesday, April 24, 2013 9:18 PM
To: Garrett J. Bradley; Robert L. Lieff; Michael Thornton; Belfi, Eric J.
Cc: Damon Chargois Esq.; Keller, Christopher J.; Daniel P. Chiplock
Subject: RE: State street fee regarding local counsel

I am in full agreement.  Bob

From: Garrett Bradley [GBradley@tenlaw.com]
Sent: Wednesday, April 24, 2013 6:07 PM
To: Lieff, Robert L.; Robert L. Lieff; Michael Thornton; Eric Belfi
Cc: Damon Chargois Esq.; Christopher J. Keller Esq.; Chiplock, Daniel P.
Subject: State street fee regarding local counsel

Bob,

As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to the
local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System.  Labaton
has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to Labaton
in the State Street FX class case before Judge Wolf.  Currently this amount would be 4% because of the
agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the balance to be
decided upon at a later date.  Obviously this may go up should Labaton receive an amount higher than 20%.

We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be paid
off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant to our
agreement.

The local asked that I copy him on this email so he will have confirmation of this agreement.  When we
spoke to him he was agreeable to this as well.

Garrett

_____

This e-mail and any files transmitted with it are confidential and are

intended solely for the use of the individual or entity to whom they are addressed.  This communication
may contain material protected by the attorney-client privilege. If you are not the intended recipient or
the person responsible for delivering the e-mail to the intended recipient, be advised that you have
received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this
e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by
telephone at
(800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

Please consider the environment before printing this email.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                                                    LBS030997

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

LBS030998

# EX. 39

| From: | Chiplock, Daniel P. <DCHIPLOCK@lchb.com> |
|---|---|
| Sent: | Friday, August 28, 2015 3:02 PM |
| To: | 'Sucharow, Lawrence' |
| Cc: | Garrett J. Bradley; Michael Thornton; Lieff, Robert L. |
| Subject: | RE: SST--Proposed Revision to Term Sheet for DOL Deal |

If the Arkansas and ERISA fees didn't come off the top, I guess the split would look like this:

&
Labaton& - 20%
LCHB – 20%
Thornton – 20%
ERISA – 9%
Arkansas – 5%
Labaton/LCHB/Thornton – 26%
&
&
If the Arkansas and ERISA fees do come off the top, I guess the split looks like this:
&
ERISA – 9%
Arkansas – 5%
Labaton – 17.2%
LCHB – 17.2%
Thornton – 17.2%
Labaton/LCHB/Thornton – 34.4%
&
&
I'm not the math wizard, so please correct me if anyone comes up with different figures.
&

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 3:27 PM
**To:** Chiplock, Daniel P.
**Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
&

Just my own thinking on this but I think the deal with them would be that their percentage does come off the top (although what the top is is another question). I can't imagine how else it would be calculated since all the other fees are two customer counsel.

Sent from my iPhone

On Aug 28, 2015, at 2:11 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:

> Actually one wrinkle I'm not sure about is how ERISA and local Arkansas counsel fits in – I had thought
> that their payments would not come off the top and therefore would not result in a reduction of each
> customer firm's 20% - do you know what I mean?& You may be saying something different from that
> below, which may be why it'd be useful to iron it out.
> &

1

Confidential: Produced Pursuant to Court Order.                                                    TLF-SST-053117

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 1:59 PM
**To:** Chiplock, Daniel P.
**Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
&

Dan sorry for that last email that I didn't spellcheck.&
Basically what I'm trying to say is I understand the basic agreement to be that after payment of all other counsel, our three firms shall each receive 20%, with the distribution of the balance of 40% to be determined later.
&
If that is the agreement you are referring to, I can confirm it. Let me know.&

Larry


Sent from my iPhone

On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:

> Mike, Garrett – Hope you're well – please see below.& If we can figure this out early
> next week that may help speed the process.
>
> Thanks,
> &
> Dan
> &
> ---
> **From:** Chiplock, Daniel P.
> **Sent:** Friday, August 28, 2015 1:33 PM
> **To:** 'Sucharow, Lawrence'
> **Cc:** Zeiss, Nicole; Lieff, Robert L.
> **Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> The purpose of my email was just to get your reaction, Larry, since these are your
> drafts.& Thank you for responding quickly, and for giving me your reaction.& I would
> love to include them so we can move forward promptly.& I'll re-send.&
> &
> ---
> **From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> **Sent:** Friday, August 28, 2015 1:28 PM
> **To:** Chiplock, Daniel P.
> **Cc:** Zeiss, Nicole; Lieff, Robert L.
> **Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> I don't know why you left the Thornton firm off this email since they are party to any
> understanding we have and are therefore he sensual to any memorialization of that
> understanding. & If you more willing to resend your email and include them,we can see
> if there is any disagreement as to what our understanding is/was.
> Larry
>
>
> Sent from my iPhone
>
> On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:
>
>> Larry and Nicole:
>> &

2

Confidential: Produced Pursuant to Court Order.

Attached are my redlines to the preliminary approval order and final judgment.& These edits are consistent with the Court's January 2012 order concerning leadership structure.&

&

I'm emailing just you (and copying Bob) so as to try not to make a big thing over this, but I do think it's appropriate to memorialize what the fee allocation amongst customer class counsel is going to be (consistent with the understanding that the firms have been operating under for a couple years now) before we proceed much further.& & I think we'd be willing to support Lead Counsel having final authority over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united front against a perpetual troublemaker like McTigue—which should be in everyone's interest--provided we had some basic written comfort ourselves.& I don't think it's too early for that, given the interest in seeing the funds come in this year.

&

Thanks,

Dan

&

---

**From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
**Sent:** Friday, August 28, 2015 9:53 AM
**To:** Chiplock, Daniel P.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

Thank you!

&

&

&

&

&

&

&<image001.jpg&>

**Nicole M. Zeiss | Partner**

140 Broadway, New York, New York 10005

T: (212) 907-0867 |& F: (212) 883-7067

E: nzeiss@labaton.com& |& W: www.labaton.com

&<image002.gif&>& & <image003.gif&>& &<image004.gif&>

&

---

**From:** Chiplock, Daniel P. [mailto:DCHIPLOCK@lchb.com]
**Sent:** Friday, August 28, 2015 9:29 AM
**To:** Sucharow, Lawrence
**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

OK, sounds good.& I will also get you whatever edits I have to the settlement docs by noon.

&

---

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 9:28 AM
**To:** Chiplock, Daniel P.

3

Confidential: Produced Pursuant to Court Order.

**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
&
I am speaking to Paine today at around 10 AM to both report to him and get his update.
I'll report back and advise whether we should send the revised term sheet. I expect we should but let's hold off for another hour.

Sent from my iPhone

On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P.
&<DCHIPLOCK@lchb.com&>wrote:

> This looks OK to me, thanks.& I'm happy to send it (after you've done the other redline) to Paine, if you like.& Or someone else can, no matter.
> &
> **From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
> **Sent:** Thursday, August 27, 2015 3:27 PM
> **To:** Lynn Sarko; 'rlieff@lieff.com'; Chiplock, Daniel P.; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
> **Cc:** Rogers, Michael H.; Sucharow, Lawrence; Goldsmith, David
> **Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> Dear all,
> &
> We've had some additional exchanges about the term sheet and, specifically, para 8(n).& I believe the attached draft resolves those issues and that there is consensus that the attached accurately reflects the basic DOL fee deal.& If you disagree, please let us know asap.
> &
> When someone wants to send this to Paine, or the DOL, I will need a run a different redline for them.
> &
> Thanks
> &
> &
> &
> &
> &
> &
> &
> &<image001.jpg&>
> **Nicole M. Zeiss | Partner**
> 140 Broadway, New York, New York 10005
> T: (212) 907-0867 |&  F: (212) 883-7067
> E: nzeiss@labaton.com&  |&  W: www.labaton.com

4

Confidential: Produced Pursuant to Court Order.

TLF-SST-053120

&

&<image002.jpg>& & <image003.jpg>& & <image004
.jpg>&

&

---

**From:** Zeiss, Nicole
**Sent:** Wednesday, August 26, 2015 5:09 PM
**To:** Sucharow, Lawrence; Lynn Sarko; Goldsmith, David;
'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman';
'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for
DOL Deal

&

Attached is the term sheet showing the changes
discussed below, plus one additional change to para
8(n) that might help.

&

Thanks

&

&

&

&

&

&

&

&<image005.jpg>&

**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 |& F: (212) 883-7067
E: nzeiss@labaton.com&  |&  W: www.labaton.com
&

&<image006.jpg>& & <image007.jpg>& & <image008
.jpg>&

&

---

**From:** Sucharow, Lawrence
**Sent:** Wednesday, August 26, 2015 4:34 PM
**To:** Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com';
Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley;
Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian
McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for
DOL Deal

&

Then we can probably forget my proposed changes.

&

---

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 4:26 PM
**To:** Sucharow, Lawrence; Goldsmith, David;
'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman';
'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.

5

TLF-SST-053121

**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

Sure.& & If it works for them – its fine with me

&

**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com

&

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Wednesday, August 26, 2015 1:25 PM
**To:** Lynn Sarko &<lsarko@KellerRohrback.com&>; Goldsmith, David &<dgoldsmith@labaton.com&>; 'rlieff@lieff.com' &<rlieff@lieff.com&>; Daniel P. Chiplock &<DCHIPLOCK@lchb.com&>; Michael Thornton &<MThornton@tenlaw.com&>; Garrett J. Bradley &<gbradley@tenlaw.com&>; Michael Lesser &<MLesser@tenlaw.com&>; 'Evan Hoffman' &<EHoffman@tenlaw.com&>; 'Kravitz, Carl S.' &<ckravitz@zuckerman.com&>; 'Brian McTigue' &<bmctigue@mctiguelaw.com&>
**Cc:** Zeiss, Nicole &<NZeiss@labaton.com&>; Rogers, Michael H. &<MRogers@labaton.com&>
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

Can we leave para 8(n) the general way it is and protect the DOL through the express provision of para 12 limiting fees charged to ERISA allocation to $10.9 million?

&

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 3:42 PM
**To:** Goldsmith, David; 'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Sucharow, Lawrence; Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

&

David

Thanks for sending this.& Sorry, I had misunderstood what you were saying on our call earlier today.

&

Two things:

&

6

TLF-SST-053122

1.& I do think the language you proposed for paragraph 12 works—but just change it to $10.9 million.

2. On paragraph 8(n)- the problem is the word "fees"—since the DOL has given us a hard number for ERISA fees—that won't be going up or down.& & So—question—can we get rid of the word "fees" in this paragraph—does it still work?

&

What do you think??

&

Lynn

&

**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&

---

**From:** Goldsmith, David [mailto:dgoldsmith@labaton.com]
**Sent:** Wednesday, August 19, 2015 2:59 PM
**To:** 'rlieff@lieff.com' &<rlieff@lieff.com&>; Daniel P. Chiplock &<DCHIPLOCK@lchb.com&>; Michael Thornton &<MThornton@tenlaw.com&>; Garrett J. Bradley &<gbradley@tenlaw.com&>; Michael Lesser &<MLesser@tenlaw.com&>; 'Evan Hoffman' &<EHoffman@tenlaw.com&>; Lynn Sarko &<lsarko@KellerRohrback.com&>; 'Kravitz, Carl S.' &<ckravitz@zuckerman.com&>; 'Brian McTigue' &<bmctigue@mctiguelaw.com&>
**Cc:** Sucharow, Lawrence &<LSucharow@labaton.com&>; Zeiss, Nicole &<NZeiss@labaton.com&>; Rogers, Michael H. &<MRogers@labaton.com&>
**Subject:** SST--Proposed Revision to Term Sheet for DOL Deal

&

All:& The below reflects our proposed revisions to the Term Sheet (in **red boldface**) to reflect the imminent deal with the DOL on fees and expenses as certain of us discussed this morning (DOL has advised that they want the deal memorialized in the Term Sheet).& Please comment.& Thanks.

&
&

        8(n).& & & & & & &  **Plan of Allocation**. & . . . The amount allocated to the ERISA Plans and Investment Companies and other Settlement Class Members shall be increased or decreased by their proportional share (with respect to the Class Settlement

7

TLF-SST-053123

Amount) of any interest, costs (including costs of notice and administration), expenses (including taxes), and fees and expenses of Plaintiffs' Counsel obtained or paid pursuant to permission of the Court.&  **However, notice and administration expenses attributable solely to the claims of Class Members categorized as Group Trusts shall be paid solely out of the ERISA allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and shall not be paid out of the Class Settlement Amount.**

&

12.& & & & & & & &  **Plaintiffs' Counsel's Attorneys' Fees and Expenses.**& & & & & Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon award by the Court into an escrow account governed by an escrow agreement between Interim Lead Counsel, SSBT and a bank or other institution agreed upon by SSBT and Interim Lead Counsel (the "Interim Lead Counsel Escrow Account"), notwithstanding any appeals of the Settlement or the fee and expense award.&  Plaintiffs' Counsel ~~shall~~ **may** apply for their fees and expenses and any service awards for Plaintiffs against the entire Class Settlement Amount, **but in no event shall more than Ten Million Nine Hundred Thousand Dollars ($10,900,000.00) in fees be paid out of the $60 million portion of the Class Settlement Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.** & In the event that the Effective Date does not occur or SSBT promptly provides written notice representing in good faith that the Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement, and/or SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be obliged to pay to SSBT all amounts paid to them from the Interim Lead Counsel Escrow Account within fourteen (14) business days.& The prevailing party in any action to collect any amount due under this paragraph shall be entitled to recover interest and all of its costs of collection, including attorneys' fees.& Should the fee and expense award be reduced by the Court or on appeal, all such fees and expenses received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid to the Class Escrow Account, along with interest at the Class Escrow Account rate of interest.

&

&

&

&

&

8

TLF-SST-053124

&
&<image005.jpg&>
**David J. Goldsmith | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com&   | & W: www.labaton.com
&
&<image006.jpg&>& & &<image006.jpg&>& & &<image006.jpg&>
&

***Privilege and Confidentiality Notice***

This electronic message contains information that is
(a) LEGALLY PRIVILEGED, PROPRIETARY IN
NATURE, OR OTHERWISE PROTECTED BY
LAW FROM DISCLOSURE, and (b) intended only
for the use of the Addressee(s) named herein. If you
are not the Addressee(s), or the person responsible
for delivering this to the Addressee(s), you are
hereby notified that reading, copying, or distributing
this message is prohibited. If you have received this
electronic mail message in error, please contact us
immediately at 212-907-0700 and take the steps
necessary to delete the message completely from
your computer system. Thank you.

&

This message is intended for the named recipients
only. It may contain information protected by the
attorney-client or work-product privilege. If you
have received this email in error, please notify the
sender immediately by replying to this email. Please
do not disclose this message to anyone and delete
the message and any attachments. Thank you.

This message is intended for the named recipients only. It may
contain information protected by the attorney-client or work-
product privilege. If you have received this email in error, please
notify the sender immediately by replying to this email. Please do
not disclose this message to anyone and delete the message and
any attachments. Thank you.

This message is intended for the named recipients only. It may
contain information protected by the attorney-client or work-
product privilege. If you have received this email in error, please

9

notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

&<LCHB_iManage_1271399_1.DOC&>

&<LCHB_iManage_1271400_1.DOCX&>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

&<LCHB_iManage_1271399_1.DOC&>

&<LCHB_iManage_1271400_1.DOCX&>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.                                    TLF-SST-053126

# EX. 40

Message

| | |
|---|---|
| **From**: | Bradley, Garrett J. [GBradley@labaton.com] |
| **Sent**: | 7/8/2016 9:36:54 PM |
| **To**: | Keller, Christopher J. [ckeller@labaton.com] |
| **Subject**: | Re: State street fee. |

Thanks

Garrett

On Jul 8, 2016, at 5:31 PM, Keller, Christopher J. <ckeller@labaton.com> wrote:
great work getting this done.

Christopher Keller
Partner || Labaton Sucharow LLP
140 Broadway
New York, NY 10005
212-907-0853

Begin forwarded message:

**From:** "Robert L. Lieff" <RLIEFF@lchb.com>

**Date:** July 8, 2016 at 4:05:03 PM EDT

**To:** "Garrett J. Bradley" <gbradley@tenlaw.com>

**Cc:** Michael Thornton <MThornton@tenlaw.com>, "Sucharow, Lawrence" <LSucharow@labaton.com>, Robert Lieff <rlieff@lieff.com>, "Daniel P. Chiplock" <DCHIPLOCK@lchb.com>, "Keller, Christopher J." <ckeller@labaton.com>, "Belfi, Eric J." <EBelfi@labaton.com>, Damon Chargois Esq. <damon@cmhllp.com>

**Subject: Re: State street fee.**

We LCHB are in agreement with the 5.5 to Chargois. Now let's continue to resolve the split among us.

Sent from my iPhone

On Jul 8, 2016, at 9:06 PM, Garrett Bradley <GBradley@tenlaw.com> wrote:

Gentlemen,

As we discuss how to distribute the fee between ourselves, and of course the ERISA attorneys, I have had discussion with Damon Chargois, the local attorney in this matter who has played an important role. Damon and his firm are willing to accept 5.5% of the total fee awarded by the Court in the State Street class case now pending before Judge Wolf. As you know, we had a prior deal with him that his fee would be "off the top". He understands that ERISA counsel is now in the same pool of money. He has agreed to come done to this number with a guarantee that it will be off the court awarded fee number. Please reply all if you agree. Given that it is off the total number their is no need to add the ERISA counsel to this email chain.

Thank you,

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Garrett Bradley

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# EX. 41

Message

| | |
|---|---|
| **From:** | Garrett Bradley [GBradley@tenlaw.com] |
| **Sent:** | 7/9/2016 2:26:31 AM |
| **To:** | =SMTP:damon@cmhllp.com; Keller, Christopher J. [ckeller@labaton.com]; Belfi, Eric J. [EBelfi@labaton.com]; =SMTP:rlieff@lieff.com; Daniel P. Chiplock [DCHIPLOCK@lchb.com]; Sucharow, Lawrence [LSucharow@labaton.com] |
| **Subject:** | Fwd: State street fee. |

Garrett

Begin forwarded message:

From: Michael Thornton <MThornton@tenlaw.com <mailto:MThornton@tenlaw.com> >
Date: July 8, 2016 at 10:06:17 PM EDT
To: Garrett Bradley <GBradley@tenlaw.com <mailto:GBradley@tenlaw.com> >
Subject: Re: State street fee.

Sure. I agree.

Sent from my BlackBerry 10 smartphone.

From: Garrett Bradley
Sent: Friday, July 8, 2016 5:49 PM
To: Michael Thornton
Subject: Fwd: State street fee.

Mike can you reply and say you agree?

Garrett

Begin forwarded message:

From: "Lieff, Robert L." <RLIEFF@lchb.com <mailto:RLIEFF@lchb.com> >
Date: July 8, 2016 at 4:05:03 PM EDT
To: Garrett Bradley <GBradley@tenlaw.com <mailto:GBradley@tenlaw.com> >
Cc: Michael Thornton <MThornton@tenlaw.com <mailto:MThornton@tenlaw.com> >, "Lawrence A. Sucharow"
<LSucharow@labaton.com <mailto:LSucharow@labaton.com> >, Robert Lieff <rlieff@lieff.com
<mailto:rlieff@lieff.com> >, "Chiplock, Daniel P." <DCHIPLOCK@lchb.com <mailto:DCHIPLOCK@lchb.com> >,
"Christopher J. Keller Esq." <ckeller@labaton.com <mailto:ckeller@labaton.com> >, Eric Belfi
<ebelfi@labaton.com <mailto:ebelfi@labaton.com> >, Damon Chargois Esq. <damon@cmhllp.com
<mailto:damon@cmhllp.com> >
Subject: Re: State street fee.

We LCHB are in agreement with the 5.5 to Chargois. Now let's continue to resolve the split among us.

Sent from my iPhone

On Jul 8, 2016, at 9:06 PM, Garrett Bradley <GBradley@tenlaw.com <mailto:GBradley@tenlaw.com> > wrote:

Gentlemen,

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

As we discuss how to distribute the fee between ourselves, and of course the ERISA attorneys, I have had discussion with Damon Chargois, the local attorney in this matter who has played an important role. Damon and his firm are willing to accept 5.5% of the total fee awarded by the Court in the State Street class case now pending before Judge Wolf.  As you know, we had a prior deal with him that his fee would be "off the top".  He understands that ERISA counsel is now in the same pool of money.  He has agreed to come done to this number with a guarantee that it will be off the court awarded fee number.  Please reply all if you agree.  Given that it is off the total number their is no need to add the ERISA counsel to this email chain.


Thank you,


Garrett Bradley


This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.


This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.


This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# EX. 42

| | |
|---|---|
| **From:** | Sucharow, Lawrence <LSucharow@labaton.com> |
| **Sent:** | Tuesday, November 22, 2016 1:01 PM |
| **To:** | Goldsmith, David; Garrett J. Bradley; Keller, Christopher J.; Belfi, Eric J. |
| **Subject:** | RE: SST--DRAFT Letter to Co-Counsel re Fee Distribution_Undertaking.DOCX |

Need two letters with breakdown.

ERISA just gets sent to & ERISA counsel with 10% off top and then 1/3 each.

Class co-counsel gets one with:

ERISA 10% off top

Damon's percentage also off top

Then each of class co-counsel split with percentages agreed to.

&

In short, no reason for ERISA to see Damon's split.& They only need to see their 10% and then split 3 ways.

By the way I want to *Asterisk the 10% to ERISA with a footnote saying "Although our fee agreement with ERISA counsel only provides for a 9% allocation, & Class co-counsel have determined to increase that to 10% in light of the excellent work and contribution of ERISA counsel."

&

**From:** Goldsmith, David
**Sent:** Tuesday, November 22, 2016 11:49 AM
**To:** Garrett J. Bradley; Sucharow, Lawrence; Keller, Christopher J.; Belfi, Eric J.
**Subject:** RE: SST--DRAFT Letter to Co-Counsel re Fee Distribution_Undertaking.DOCX
&

We thought we'd do a separate letter to him.

&

**From:** Garrett Bradley [mailto:GBradley@tenlaw.com]
**Sent:** Tuesday, November 22, 2016 11:48 AM
**To:** Goldsmith, David; Sucharow, Lawrence; Keller, Christopher J.; Belfi, Eric J.
**Subject:** Fwd: SST--DRAFT Letter to Co-Counsel re Fee Distribution_Undertaking.DOCX
&

I think you should put Damon on this letter.

Garrett

Begin forwarded message:

> **From:** Lynn Sarko &<lsarko@KellerRohrback.com&>
> **Date:** November 22, 2016 at 11:40:23 AM EST
> **To:** "Lieff, Robert L." &<RLIEFF@lchb.com&>, "'Goldsmith, David'" &<dgoldsmith@labaton.com&>,
> Michael Thornton &<MThornton@tenlaw.com&>, "Garrett J. Bradley" &<gbradley@tenlaw.com&>,
> Michael Lesser &<MLesser@tenlaw.com&>, "Chiplock, Daniel P." &<DCHIPLOCK@lchb.com&>, 'Robert
> Lieff' &<rlieff@lieff.com&>, "'Kravitz, Carl S.'" &<ckravitz@zuckerman.com&>, "'Brian McTigue'"
> &<bmctigue@mctiguelaw.com&>
> **Cc:** "Sucharow, Lawrence" &<LSucharow@labaton.com&>, "Belfi, Eric J." &<EBelfi@labaton.com&>,
> "Stocker, Michael W." &<MStocker@labaton.com&>, "Zeiss, Nicole" &<NZeiss@labaton.com&>
> **Subject: RE: SST--DRAFT Letter to Co-Counsel re Fee Distribution_Undertaking.DOCX**
>
> Ditto for KR.& We will sign- but let's include the breakdown in a draft letter.
> Thanks

1

Confidential: Produced Pursuant to Court Order.                                                    TLF-SST-012272

Lynn
**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
&
Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&
CONFIDENTIALITY NOTE: This Electronic Message contains information belonging to the law firm of Keller Rohrback L.L.P., which may be privileged, confidential and protected from disclosure. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message is strictly prohibited. Questions should be directed to Charlene Engle (Executive Assistant to Lynn Lincoln Sarko) at 206-623-1900.
&

**From:** Lieff, Robert L. [mailto:RLIEFF@lchb.com]
**Sent:** Monday, November 21, 2016 4:25 PM
**To:** 'Goldsmith, David' &<dgoldsmith@labaton.com&>; Michael Thornton &<MThornton@tenlaw.com&>; Garrett J. Bradley &<gbradley@tenlaw.com&>; Michael Lesser &<MLesser@tenlaw.com&>; Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>; 'Robert Lieff' &<rlieff@lieff.com&>; Lynn Sarko &<lsarko@KellerRohrback.com&>; 'Kravitz, Carl S.' &<ckravitz@zuckerman.com&>; 'Brian McTigue' &<bmctigue@mctiguelaw.com&>
**Cc:** Sucharow, Lawrence &<LSucharow@labaton.com&>; Belfi, Eric J. &<EBelfi@labaton.com&>; Stocker, Michael W. &<MStocker@labaton.com&>; Zeiss, Nicole &<NZeiss@labaton.com&>; Lieff, Robert L. &<RLIEFF@lchb.com&>
**Subject:** RE: SST--DRAFT Letter to Co-Counsel re Fee Distribution_Undertaking.DOCX
&
David,
&
I have no concerns regarding the proposed letter.& I think that it is appropriate and I intend to sign it.
&
What I would like to see is a breakdown as to the fees and cost reimbursements going to each counsel listed in the letter.& I know that we have all agreed to the distribution; however, I think we should have a dollar breakdown to be paid December 8.
&
Thank you,
&
Bob
&

**From:** Goldsmith, David [mailto:dgoldsmith@labaton.com]
**Sent:** Monday, November 21, 2016 3:55 PM
**To:** Michael Thornton; Garrett J. Bradley; Michael Lesser; Chiplock, Daniel P.; 'Robert Lieff'; Lynn Sarko; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Sucharow, Lawrence; Belfi, Eric J.; Stocker, Michael W.; Zeiss, Nicole
**Subject:** SST--DRAFT Letter to Co-Counsel re Fee Distribution_Undertaking.DOCX
&
All:
&
Attached please find a draft letter setting out our plan with regard to the November 10 letter we filed with the Court and future distribution of fees and expenses.
&
Please let us know if you have any comments or concerns.& We'd like to circulate a final version and collect signatures before the holiday if possible.
&

2

Thanks,
David
&
&
&
&
&

**David J. Goldsmith | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com&   |& W: www.labaton.com
&
&  &  &  &
&
***Privilege and Confidentiality Notice***
&
This electronic message contains information that is (a) LEGALLY PRIVILEGED,
PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b)
intended only for the use of the Addressee(s) named herein. If you are not
the Addressee(s), or the person responsible for delivering this to the
Addressee(s), you are hereby notified that reading, copying, or distributing
this message is prohibited. If you have received this electronic mail message
in error, please contact us immediately at 212-907-0700 and take the steps
necessary to delete the message completely from your computer system. Thank
you.
&

This message is intended for the named recipients only. It may contain information protected by
the attorney-client or work-product privilege. If you have received this email in error, please
notify the sender immediately by replying to this email. Please do not disclose this message to
anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual
or entity to whom they are addressed. This communication may contain material protected by the attorney-client
privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended
recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding,
printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please
immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in
notifying us.
***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY
IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the
use of the Addressee(s) named herein. If you are not the Addressee(s), or the person
responsible for delivering this to the Addressee(s), you are hereby notified that
reading, copying, or distributing this message is prohibited. If you have received this
electronic mail message in error, please contact us immediately at 212-907-0700 and take
the steps necessary to delete the message completely from your computer system. Thank
you.

3

Confidential: Produced Pursuant to Court Order.                                         TLF-SST-012274

# EX. 43

| From: | Damon Chargois <damon@cmhllp.com> |
|-------|-----------------------------------|
| Sent: | Saturday, October 18, 2014 1:15 PM |
| To: | Belfi, Eric J. <EBelfi@labaton.com> |
| Subject: | Re: Eric, in reviewing your text regarding HP, it appe |

That helps, Eric. Thank you

Sent from my iPhone

> On Oct 18, 2014, at 12:14 PM, "Belfi, Eric J." <EBelfi@labaton.com> wrote:

>
> With Garrett and all referrers we deal with, it is done exactly in the same manner. As long as I have been with Labaton, we have never done it any other way. It is the only equitable way that we see dividing up the referral fees.

>
> -----Original Message-----
> From: Damon Chargois [mailto:damon@cmhllp.com]
> Sent: Saturday, October 18, 2014 12:59 PM
> To: Belfi, Eric J.
> Subject: Re: Eric, in reviewing your text regarding HP, it appe

>
> This isn't my understanding, but I will go over all of our correspondence before going further. Do you calculate Garrett's firm's fee split in the exact same manner (his referred client's percentage of loss relative to total loss alleged by all Labaton clients times Labaton's fee times 20%)?

>
> Sent from my iPhone

>
>> On Oct 18, 2014, at 11:08 AM, "Belfi, Eric J." <EBelfi@labaton.com> wrote:
>>
>> Damon:
>>
>> Unlike Colonial where there was a modification, here this is not a modification. Arkansas only represented 23 percent of the losses so you are only entitled to receive 23 percent of the 20 percent or 4.6%. In Colonial, after the fee split, we asked you to reduce the percentage below the pro rata split because the case was a loss to us. We could not afford to pay out 20 percent in that case.

>>
>> In this case, there were 4 different Labaton clients that we had obligations on all of them. As indicated to you yesterday, we would not have been appointed lead without those 3 other clients and our relationship with Motley Rice because their client had a much larger loss.

>>
>> Going forward, you should know that Arkansas is almost never sole lead so this is going to happen in almost every case. It is not a modification, it is just how the agreement works.

>>
>> I am around all day if you want to discuss further.
>>
>> Eric
>>
>> -----Original Message-----
>> From: Damon Chargois [mailto:damon@cmhllp.com]

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

>> Sent: Saturday, October 18, 2014 9:15 AM

>> To: Belfi, Eric J.

>> Subject: Eric, in reviewing your text regarding HP, it appe

>>

>> Eric, the call kept dropping, so I'm sending this email.  In reviewing your text regarding HP, it appears that Labaton is trying to use the fee calculation done as a special consideration for Garrett's 20% additional interest in the Colonial Bank settlement (since both ATRS and clients via Garrett are in that case) as a precedent to change our fee agreement in ALL of the pension fund cases in which ATRS is a plaintiff.  This is contrary to your express assurance to us that if we agreed to that accommodation in Colonial Bank, it would not be used as a precedent in cases where Garrett isn't involved.  I acknowledge that we have discussed, in the past, treating certain cases where Labaton has multiple fee split obligations to referring firms differently on a case by case basis, but only after we both discuss and agree, with you giving me advanced notice of your intentions so that I can handle it with my partners on my end; not what you have done here in the HP case.

>>

>> I am very concerned that you guys are attempting to significantly, substantially and materially alter our agreement.  Our deal with Labaton is straightforward-- we got you ATRS as a client (after considerable favors, political activity, money spent and time dedicated in Arkansas) and Labaton would use ATRS to seek lead counsel appointments in institutional investor fraud and misrepresentation cases.  Where Labaton is successful in getting appointed lead counsel and obtains a settlement or judgment award, we split Labaton's attorney fee award 80/20.  Period.

>>

>> As I said in my text to you regarding HP and your allocation, I understand the circumstances in this case and am ok with the fee split in this instance.  We are not changing our fee split agreement for all of the other pension fund cases.   You promised me that you would give me advanced notice of when you guys would seek a modification or accommodation on a given settlement and I want you to keep to that going forward.

>>
>>
>>
>>
>>
>>
>>
>>
>>
>> Sent from my iPhone
>>
>>
>> ***Privilege and Confidentiality Notice***
>>
>> This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

>>
>>

LBS017594

# EX. 44

# Labaton Sucharow

David J. Goldsmith
Partner
212 907 0879 direct
212 883 7079 fax
dgoldsmith@labaton.com

November 10, 2016

<u>By ECF</u>

Hon. Mark L. Wolf
United States District Judge
United States District Court
District of Massachusetts
John Joseph Moakley
  United States Courthouse
1 Courthouse Way
Boston, Massachusetts  02210

Re:    Arkansas Teacher Retirement System v. State Street Bank & Trust Co.,
       No. 11-CV-10230 MLW

Dear Judge Wolf:

We are writing respectfully to advise the Court of inadvertent errors just discovered in certain written submissions from Labaton Sucharow LLP, Thornton Law Firm LLP, and Lieff Cabraser Heimann & Bernstein LLP supporting Lead Counsel's motion for attorneys' fees, which the Court granted following the fairness hearing held on November 2, 2016. *See* Order Awarding Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs ("Fee Order," ECF No. 111).

These mistakes came to our attention during internal reviews that were conducted in response to an inquiry from the media received after the hearing.  The purpose of this letter is to disclose the error and provide a corrected lodestar and multiplier.  We respectfully submit that the error should have no impact on the Court's ruling on attorneys' fees.

As the Court is aware, the submissions supporting Lead Counsel's fee application included individual declarations submitted on behalf of Labaton Sucharow, Thornton, and Lieff Cabraser, reporting each firm's lodestar and number of hours billed.  *See* ECF Nos. 104-15, at 7-9; 104-16, at 7-8; 104-17, at 8-9; *see also* ECF No. 104-24 (Master Chart).

The professionals and paraprofessionals listed in these firms' respective lodestar reports include persons denoted as Staff Attorneys, or "SAs."  SAs are bar-admitted, experienced attorneys hired on a temporary, though generally long-term, basis, and are paid by the hour.  The SAs in this action

# Labaton
# Sucharow

Hon. Mark L. Wolf
United States District Judge
November 10, 2016
Page 2

were tasked principally with reviewing and analyzing the millions of pages of documents produced by State Street.

Seventeen (17) of the SAs listed on the Thornton lodestar report are also listed as SAs on the Labaton Sucharow lodestar report.[1] Six (6) of the SAs listed on the Thornton lodestar report are also listed as SAs on the Lieff Cabraser lodestar report.[2] Both sets of overlap reflect the fact that as the litigation proceeded, efforts were made to share costs among counsel, such that financial responsibility for certain SAs located at Labaton Sucharow's and Lieff Cabraser's offices was borne by Thornton.

We have now determined that:

- The hours of the Alper SAs reported in the Thornton lodestar report mistakenly were also reported in the Labaton Sucharow lodestar report.
- Certain hours reported by one of the Alper SAs (S. Dolben) in the Thornton lodestar report mistakenly duplicated certain hours of another Alper SA (D. Fouchong).
- A portion of the hours of two of the Jordan SAs reported in the Thornton lodestar report (C. Jordan and J. Zaul) mistakenly were also reported in the Lieff Cabraser lodestar report.
- The hours of two other Jordan SAs (A. Ten Eyck and R. Wintterle) mistakenly were included in the Lieff Cabraser lodestar report.[3]

Because of these inadvertent errors, Plaintiffs' Counsel's reported combined lodestar of $41,323,895.75, and reported combined time of 86,113.7 hours, were overstated. *See* ECF No. 104-24 (Master Chart).

---

[1] These SAs, listed alphabetically, are D. Alper, E. Bishop, N. Cameron, M. Daniels, S. Dolben, D. Fouchong, J. Grant, I. Herrick, D. Hong, C. Orji, D. Packman, A. Powell, A. Rosenbaum, J. Saad, B. Schulman, A. Vaidya, and R. Yamada (collectively, the "Alper SAs"). *Compare* ECF No. 104-16, at 7-8 (Thornton lodestar report) *with* ECF No. 104-15, at 7-8 (Labaton Sucharow lodestar report).

[2] These SAs, listed alphabetically, are C. Jordan, A. McClelland, A. Ten Eyck, V. Weiss, R. Wintterle, and J. Zaul (collectively, the "Jordan SAs"). *Compare* ECF No. 104-16, at 7 (Thornton lodestar report) *with* ECF No. 104-17, at 8 (Lieff Cabraser lodestar report).

[3] The lodestar reports in the individual firm declarations submitted by ERISA counsel (ECF Nos. 104-18 to 104-23) are unaffected.

# Labaton
# Sucharow

Hon. Mark L. Wolf
United States District Judge
November 10, 2016
Page 3

We have corrected these errors by removing the duplicative time. When a given SA had different hourly billing rates, we removed the time billed at the higher rate. Deducting the duplicative time from the $41.32 million reported combined lodestar results in a reduced combined lodestar of **$37,265,241.25**, and a reduced combined time of 76,790.8 hours.

Cross-checking the $37.27 million reduced combined lodestar against the $74,541,250 percentage-based fee awarded by the Court yields a lodestar multiplier of **2.00**.[4] This is higher than the 1.8 multiplier we proffered in our submissions and during the hearing.

Plaintiffs' counsel respectfully submits that a 2.00 multiplier remains reasonable and well-within the range of multipliers found reasonable for cross-check purposes in common fund cases within the First Circuit, and that such an enhancement of the reduced lodestar represented by the 24.85% fee awarded by the Court remains well-supported by the $300 million Settlement obtained and fees awarded in comparable cases. *See* Fee Brief, ECF No. 103-1, at 24-25.

Accordingly, Plaintiffs' counsel respectfully submits that the Court should adhere to its ruling on attorneys' fees. *See* Fee Order ¶¶ 4, 6 (ECF No. 111)[5]; Nov. 2, 2016 Hrg. Tr. at 36:1-2 (finding 1.8 multiplier "reasonable").

We sincerely apologize to the Court for the inadvertent errors in our written submissions and presentation during the hearing. We are available to respond to any questions or concerns the Court may have.

Respectfully submitted,

David J. Goldsmith

---

[4] The Court found it "appropriate in this case to use the percentage of the common fund approach in determining the amount of attorneys' fees that should be awarded." Nov. 2, 2016 Hrg. Tr. at 22:25-23:2; *see also id.* at 35:12-13 ("I have used the percentage of common fund method. I've used the reasonable lodestar to check on that.").

[5] The Fee Order, at Paragraph 6(d), references the approximately 86,000 combined hours and $41.32 million combined lodestar reported in our written submissions.

**Labaton Sucharow**

Hon. Mark L. Wolf
United States District Judge
November 10, 2016
Page 4


DJG/idi

cc:    All Counsel of Record
       (by ECF)

<u>Certificate of Service</u>

I certify that on November 10, 2016, I caused the foregoing Letter to be filed through the ECF system in the above-captioned action, and accordingly to be served electronically upon all registered participants identified on the Notices of Electronic Filing.

<div style="text-align: right">

*/s/ David J. Goldsmith*
David J. Goldsmith

</div>

# EX. 45

The Boston Globe Travel Show

SPOTLIGHT FOLLOW-UP

# Critics hit law firms' bills after class-action lawsuits

**By Andrea Estes** | GLOBE STAFF   DECEMBER 17, 2016

Attorneys at the Thornton Law Firm had just helped win a $300 million settlement from State Street Bank and Trust in a complicated lawsuit involving eight other law firms. Now, it was time to submit their legal fees to the judge so that they could get paid.

That's when the younger brother of Thornton managing partner Garrett Bradley emerged as a $500-an-hour "staff attorney" at the Boston firm.

Michael Bradley is a lawyer, but he normally works alone, often making $53 an hour as a court-appointed defender in Quincy District Court, records show. Yet, according to his older brother's sworn statement on Sept. 14, 2016, Michael Bradley's services were worth nearly 10 times that rate in the State Street case.

The elder Bradley said Michael worked 406.4 hours on the lawsuit, which centered on international currency trades, at a cost of $203,200.

Michael Bradley wasn't the only lawyerfor whose work Thornton claimed stratospheric — and questionable — legal costs in the filing to US District Court Judge Mark L. Wolf. Garrett Bradley listed 23 other staff attorneys, each with hourly rates of $425, who collectively accounted for $4 million in costs.



Comments

View Story

# Law firm 'bonuses' tied to political donations

A small Boston law firm became a top funder of the national Democratic Party by paying lawyers "bonuses" for their political donations.

### Candidates returning donations from Thornton Law Firm attorneys

#### Hassan to return law firm's donations

But one of the lawyers told the Globe he was actually paid just $30 an hour for his services — and not by Thornton. Like all the other staff attorneys on Garrett Bradley's list, except his brother, he worked for another firm in the case, which also counted his hours on its list of costs.

The sworn statement by Garrett Bradley — until recently an assistant House majority leader on Beacon Hill — raises troubling questions about the way Thornton and the other firms that brought the State Street lawsuit tallied legal costs to justify their enormous $75.8 million payday.



BRADLEY FOR SELECTMAN

**Michael Bradley, Quincy attorney.**

More than 80 percent of the costs that Thornton and two other law firms submitted
to Judge Wolf came from the work of staff attorneys — all of them assigned hourly
rates at least 10 times higher than the $25 to $40 an hour typical for these low-
level positions — which involves document review.

A spokesman for the lead law firm in the case acknowledged that hourly rates the
firms listed for staff attorneys were above the lawyers' actual wages, but argued
that, essentially, everyone does it. Diana Pisciotta, spokeswoman for the Labaton
Sucharow law firm in New York City, called it "commonly accepted practice
throughout the legal community."

Critics of the way lawyers are paid in class-action lawsuits acknowledge that firms
often dramatically mark up the rates of their lower-paid attorneys when seeking
legal fees in court, but they say Thornton has pushed the practice to an extreme.

"This happens all the time," said Ted Frank, a lawyer at the Competitive Enterprise
Institute in Washington and a leading national critic of legal fees in class-action
lawsuits. "Lawyers pad their bills with overstated hourly work to make their fee
request seem less of a windfall."

Lawyers in class-action lawsuits commonly receive a major share of any settlement
because they are taking the risk that, if they lose, they will be paid nothing.

In fact, plaintiffs in the State Street case, many of them public pension funds,
agreed in advance to set aside a quarter of any settlement for attorneys in their
lawsuit alleging that the Boston-based bank routinely overcharged clients for their
foreign currency exchanges, costing them more than $1 billion.

But, to actually collect the money, lawyers document their costs by filing affidavits
under penalty of perjury.

The accounting must be based on actual time records, listing the names and hourly
rates of the lawyers who worked on the case, and the total amount billed. The
hourly rate is supposed to be what the lawyer would charge a paying client for

similar work, including the lawyer's salary and a markup for office costs and other
expenses.

That's where, critics of contingency fee lawsuits say, lawyers have a built-in
opportunity to inflate their bills. And, for a variety of reasons, their bills often get
little scrutiny.

"Imagine you're a lawyer and you're allowed to write your own check for your fee,"
explained Lester Brickman, a Yeshiva University law professor and author of
"Lawyer Barons: What Their Contingency Fees Really Cost America."

"I could write $3,000, but I could add a zero and write $30,000 or add two zeroes
and charge $300,000," Brickman said. "That's the honor system."

Thornton officials insist that they did nothing wrong and that the 23 staff attorneys
who actually work for Labaton or a firm in San Francisco belonged on Thornton's
list.

Under a cost-sharing agreement between the firms, Thornton paid part of their
wages while they were reviewing millions of pages of documents in the State Street
case. These lawyers just receive their usual salary and don't share in the proceeds
from the settlement.

Garrett Bradley's brother, by contrast, will receive the $203,200 listed for him on
the filing to Judge Wolf, according to Thornton spokesman Peter Mancusi, who
noted that Michael Bradley, unlike the other staff attorneys, was not paid
previously for his work.

Neither Michael Bradley nor a spokesman for Thornton would say what he did on
the case, but the spokesman described him as an experienced prosecutor and fraud
investigator.

Globe questions about the legal bills prompted the lead law firm in the State Street
case to submit an extraordinary letter to Judge Wolf admitting that Thornton and

$4 million. The author, David Goldsmith of Labaton Sucharow, blamed the inflated
bills on "inadvertent errors."

According to Goldsmith's Nov. 10 letter, Labaton and another firm, Lieff Cabraser
Heimann & Bernstein, claimed the same staff attorneys that Thornton had listed on
its legal expenses, double-counting the lawyers' cost. Goldsmith said the double-
counted lawyers were employees of either Labaton or Lieff Cabraser, but their
hours and costs should have been counted only once — by Thornton Law.

To resolve the issue, he said, the other firms dropped the lawyers and Thornton
lowered the hourly rate it charged for numerous staff attorneys because it had
assigned a higher rate than the other firms.

Despite the resulting drop in combined legal fees, Goldsmith urged Wolf not to
reduce the lawyers' payment from the settlement. In class-action cases, lawyers
commonly receive a payment that not only covers costs, but a financial reward for
bringing a risky case that could have failed and paid nothing.

Goldsmith suggested that Wolf simply boost the reward to offset the reduced legal
fees so that the firms still split the same $74 million, including $14 million for
Thornton.

"We respectfully submit that the error should have no impact on the court's ruling
on attorneys' fees," wrote Goldsmith, whose firm often joins forces with Thornton.

That may not be enough to satisfy Wolf, who has a reputation for closely
questioning claims made in his court.

He called the legal fees "reasonable" at a Nov. 2 hearing and praised the plaintiffs'
lawyers for taking on a "novel, risky case." But he approved the fees in part based
on sworn statements that the lawyers now admit were in error. Wolf could reduce
their payments, which were issued earlier this month, or hold a hearing to
determine whether the lawyers knowingly submitted false information, a serious
breach of professional ethics.

"The double-counting was likely the result of sloppiness, assuming that there would be no objectors' or court scrutiny of the fee request," said Frank, who has successfully challenged several settlements and fee requests in other cases, recouping more than $100 million for class members.

---

Get **Fast Forward** in your inbox:
Forget yesterday's news. Get what you need today in this early-morning email.

Enter email address

Sign Up

---

Frank said the problems with the legal fees go beyond the double-counting of attorneys. Other law firms contacted by the Globe said it's common to list an hourly rate for an attorney several times higher than the attorney's own pay, because the law firm has many other expenses aside from the lawyer him or herself. However, Thornton listed attorneys' rates at up to 14 times the lawyer's wages.

Frank said his analysis suggests that the $75.8 million award to the nine law firms was excessive — by at least $20 million and as much as $48.3 million — in part because the lawyers asked too much in the first place. He said that the lawyers' own documents show that, in similarly sized settlements, the legal fees average only 17.8 percent.

Thornton Law Firm, a personal injury firm that specializes in asbestos-related cases, is already the target of three investigations for its controversial campaign contribution program in which the law firm paid millions of dollars in "bonuses" to partners that offset their political contributions.

Federal prosecutors as well as two other agencies are investigating whether the bonuses were an illegal "straw donor" scheme to allow the firm to vastly exceed limits on campaign contributions. Thornton officials have insisted they did nothing wrong, because the bonuses were paid out of the lawyers' own equity in the firm.

Twee  Share    75

Thornton's legal fees in the State Street case feed into a larger debate about how
lawyers get paid in class-action lawsuits. Defenders of paying lawyers on
contingency say the prospect of a high payoff encourages lawyers to take on
exceptionally difficult cases, such as suing a wealthy bank like State Street.

However, Frank said there's little oversight of lawyers' fee claims. Defendants
usually don't care what the plaintiffs' lawyers receive, because their costs don't
change regardless of how much the plaintiffs' lawyers receive.

And individual plaintiffs typically get too little money to have a strong incentive to
challenge legal fees. In the State Street case, the 1,300 plaintiffs would see
increases in their individual payments of only about $20,000 apiece if the lawyers'
fees were reduced by $20 million, Frank calculated. A plaintiff might have to spend
that much or more to hire another lawyer to investigate.

None of the plaintiffs in the State Street case objected to their lawyers' request for
legal fees. But neither the lawyers nor their clients apparently noticed that the exact
same hours for nearly two dozen staff attorneys were claimed by more than one law
firm.

"The mistakes came to our attention during internal reviews that were conducted
in response to an inquiry from the media," explained Labaton partner Goldsmith,
in his letter to Wolf.

Nor did they notice that Thornton consistently assigned a higher rate than the
other firms for the same attorneys — often a difference of $90 an hour.

Labaton officials, in a prepared statement, said the affidavits supporting the fee
request weren't as important as the percentage of the settlement fund the lawyers
sought — just over 25 percent, once expenses are added.

"This fee award is reviewed by the Court for fairness . . . we believe the fees
awarded are still fair," wrote Diana Pisciotta, a spokeswoman for Labaton.

Twee  Share     75

In addition to its fees from the State Street case, Thornton Law will receive a portion of the $20 million the Securities and Exchange Commission awarded a whistle-blower who alerted regulators to State Street's international currency practices.

**How low-paid lawyers can rack up big legal bills**
Comments

Law firms commonly hire junior-level "staff attorneys" to review documents for $25 to $40 an hour. Thornton Law Firm took advantage of these low-paid lawyers to make millions in its lawsuit against State Street Bank.

1    Thornton says it employed 24 staff attorneys in the State Street case.



staff attorneys

2    In court documents, Thornton listed the hourly rates for the staff attorneys at $425 to $500, more than ten times their actual pay.

One attorney's actual pay    $30
Rate listed by Thornton              $425

3    Thornton said the staff attorneys worked more than 10,000 hours on the case at a total cost of $4.5 million, accounting for 60 percent of the total costs of the case.

4    A federal judge approved Thornton's bills, and gave them a bonus for taking on such a risky lawsuit.

5    But there was a problem: 23 of Thornton's 24 staff attorneys were also listed as lawyers for other law firms working on the same case. Thornton and the other law firms double-counted the work of the staff attorneys, inflating their combined bills by $4 million.

6    The lawyers admitted the "inadvertent errors" to the judge and asked him not to reduce their legal fees.

**SOURCE: Court records**                                                GLOBE STAFF

## Related

- Welsh, Clinton join growing number of politicians returning donations from Thornton Law Firm

Twee   Share    75