# EX. 48

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br>    Plaintiff<br><br>       v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br>    Defendants. | C.A. No. 11-10230-MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN,WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br>    Plaintiff<br><br>       v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br>    Defendants. | C.A. No. 11-12049-MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND and all others similarly situated,<br>    Plaintiff<br><br>       v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br>    Defendants. | C.A. No. 12-11698-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                             March 8, 2017

In a February 6, 2017 Order the court gave notice that it was considering appointing, pursuant to Federal Rule of Civil Procedure 53, Retired United States District Judge Gerald Rosen as

a Master to investigate and submit a Report and Recommendation concerning issues that have emerged concerning the court's award of more than $75,000,000 in attorneys' fees, expenses, and service awards in this class action. The parties[1] responded to that Order. A hearing concerning this matter was held on March 7, 2017.

For the reasons described in detail at the March 7, 2017 hearing, it is hereby ORDERED that pursuant to Federal Rule of Civil Procedure 53:

1. Judge Rosen is appointed as Master (the "Master").[2] The Master may retain any firm, organization, or individual he deems necessary to assist him in the performance of his duties.

2. The Master shall investigate and prepare a Report and Recommendation concerning all issues relating to the attorneys' fees, expenses, and service awards previously made in this case. The Report and Recommendation shall address, at least: (a) the

---

[1] In this Order, the nine law firms that served as class counsel and the named plaintiffs are collectively referred to as the "parties."

[2] After the disclosure required by Federal Rule of Civil Procedure 53(a)(2)&(b)(3) and discussion at the hearing, each of the law firms representing members of the class agreed that Judge Rosen's disqualification is not required by 28 U.S.C. §455(a) or (b). The McTigue Law firm withdrew its earlier objection under §455(a). Each firm also waived any possible objection under §455(a) as permitted by §455(e). The court also found that Judge Rosen's disqualification is not required by §455.

2

accuracy and reliability of the representations made by the parties in their requests for awards of attorneys' fees and expenses, including but not limited to whether counsel employed the correct legal standards and had a proper factual basis for what was represented to be the lodestar for each firm; (b) the accuracy and reliability of the representations made in the November 10, 2016 letter from David Goldsmith, Esq. of Labaton Sucharow, LLP to the court (Docket No. 116); (c) the accuracy and reliability of the representations made by the parties requesting service awards; (d) the reasonableness of the amounts of attorneys' fees, expenses, and service awards previously ordered, and whether any or all of them should be reduced; (e) whether any misconduct occurred in connection with such awards; and, if so, (f) whether it should be sanctioned, see e.g. Fed. R. Civ. P. 11(b)(3)&(c); Massachusetts Supreme Judicial Court Rule of Professional Conduct 3.3(a)(1)&(3).

3. The Master shall proceed with all reasonable diligence, and either submit his Report and Recommendation by October 10, 2017 or request an extension of time to do so. See Fed. R. Civ. P. 53(b)(2).

4. The Master shall have the authority described in Federal Rule of Civil Procedure 53(c)(1) and (2). Therefore, among other things, the Master shall have the authority to compel, take, and record evidence. This includes the authority to: require the

3

production of documents and other records from the parties and third-parties; require responses to interrogatories, and other requests for information and admissions; conduct depositions; and conduct hearings.

5. The Master may communicate ex parte with any party. See Fed. R. Civ. P. 53(b)(2)(B).

6. The Master may communicate ex parte with the court on administrative matters. The Master may also, ex parte, request permission to communicate with the court ex parte on particular substantive matters. Requests for ex parte communications with the court on substantive matters should be minimized.[3]  See Fed. R. Civ. P. 53(b)(2)(B).

---

[3] In the February 6, 2017 Memorandum and Order the court proposed to permit the Master to communicate ex parte with the court only concerning administrative matters. At the March 7, 2017 hearing the court stated it might allow the Master to request an opportunity for an ex parte communication on a substantive matter. The court subsequently reviewed several orders appointing masters which all authorize ex parte communications with the court on any matter.  The court now finds that substantive communications should not be completely prohibited in this case because there may be some unforeseen need for them.

As the February 6, 2017 Order did not provide notice that the court may allow the Master to communicate with it ex parte regarding substantive matters, and the court did not state at the March 7, 2017 hearing that it would do so, the parties may, by March 16, 2017, object to the granting of this authority and explain the basis for their objection.  If any objection is made, the court will consider this issue further.

4

7. The Master may also request that a submission to the court which is being served on one or more parties be made under seal.

8. Any order issued by the Master shall be filed for entry on the docket of this case and served on each party. See Fed. R. Civ. P. 53(d). However, the Master may request that an order be filed under seal and/or not be served on any party or all parties.

9. Any objection to an order issued by the Master shall be filed within 10 days of service. Any responses shall be filed within 10 days of the service of such objection. Any such objection will be decided in the manner described in Federal Rule of Civil Procedure 53(f).

10. The Master's Report and Recommendation shall be served promptly on each party. See Fed. R. Civ. P. 53(e).

11. The Master shall make and preserve a complete record of the evidence concerning his recommended findings of fact and any conclusions of law. Such record shall be filed with the Master's Report and Recommendation. The Master may move to have the record filed under seal. If any such motion is made and granted, the court may require that a redacted version be filed for the public record. See Fed. R. Civ. P. 53(b)(2)(C)&(D).

5

12. Action on the Master's Report and Recommendation will be taken in the manner described in Federal Rule of Civil Procedure 53(f).

13. Labaton Sucharow, LLP, shall, by March 14, 2017, pay to the Clerk of the United States District Court for the District of Massachusetts $2,000,000.[4] This payment shall be made only from the award of attorneys' fees and expenses distributed to Labaton Sucharow, LLP, the Thornton Law Firm LLP, and Lieff, Cabrasser, Heimann & Bernstein LLP. See Fed R. Civ. P. 53(g)(3). This payment is without prejudice to any right such firms may have to seek contribution from other firms which received some of the attorneys' fees awarded on November 2, 2016 if that award is reduced in the future. It is the court's intention, however, that this $2,000,000 come solely from the funds distributed to the foregoing three firms that generated the issue that prompted the appointment of the Master.

14. From the fund established pursuant to paragraph 13 hereinabove, the court will pay the reasonable fees and the expenses of the Master and any firm, organization, or individual he may retain to assist him. The court understands that the Master

---

[4] If the expense of the Master's work exceeds $2,000,000, the court will order additional payments.

6

will charge $800 per hour for his services and finds that rate to be reasonable.

The Master shall submit monthly, ex parte and under seal, a request for payment with a description of the hours worked and the services rendered, as well as supporting documentation for any expenses to be reimbursed.

The court intends to disclose the cost of the Master at the conclusion of these proceedings.

15.  As the Master will be exercising judicial authority and performing judicial functions, the Master and those assisting him shall have the immunities of judicial officers of the United States.  See Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012).

16.  This Order may be modified upon request of the Master or a party, or by the court sua sponte, after providing notice and an opportunity to be heard.  See Fed. R. Civ. P. 53(b)(4).


UNITED STATES DISTRICT JUDGE

# EX. 49

[November 2017]

# STEPHEN GILLERS

Elihu Root Professor of Law
(vice dean 1999-2004)
New York University
School of Law
40 Washington Square South
New York, NY 10012

(212) 998-6264 (tel)
(212) 995-4658 (fax)
stephen.gillers@nyu.edu

**AREAS OF TEACHING**    Regulation of Lawyers and Professional Responsibility
Evidence; Law and Literature; Media Law

**PRIOR COURSES**    Civil Procedure, Agency, Advocacy of Civil Claims, Federal Courts

**PUBLICATIONS**    BOOKS AND ANTHOLOGIES:

Regulation of Lawyers:  Problems of Law and Ethics (Aspen Law &
Business, 11th ed., December 2017).  The first edition of this popular
casebook was published in 1985.  Norman Dorsen was a co-author on
the first two editions.  Stephen Gillers is the sole author of the third
through ninth editions.  The first four editions were published by
Little, Brown & Co., which then sold its law book publishing
operation to Aspen.

Regulation of Lawyers:  Statutes and Standards (with Roy Simon and
Andrew Perlman) (Aspen Law & Business) This is a compilation with
editorial comment.  The first volume was published in 1989.  Updated
versions have been published annually thereafter. As of the 2009
edition, Andrew Perlman has joined as a co-editor.

"The Legal Industry of Tomorrow Arrived Yesterday: How Lawyers
Must Respond," in The Relevant Lawyer (ABA 2015).

Regulation of the Legal Profession (Aspen 2009). This is 400+ page
book  in the Aspen "Essentials" series explains  ethics rules and laws
governing American lawyers and judges.

**PUBLICATIONS**
(continued)

Investigating the FBI (co-Editor with P. Watters) (Doubleday, 1973; Ballantine, 1974)

None of Your Business:  Government Secrecy in America (co-Editor with N. Dorsen) (Viking, 1974; Penguin, 1975).

Getting Justice:  The Rights of People (Basic Books, 1971; revised paperback, New American Library, May 1973).

I'd Rather Do It Myself:  How to Set Up Your Own Law Firm (Law Journal Press, 1977).

Looking At Law School:  A Student Guide From the Society of American Law Teachers (editor and contributor) (Taplinger, 1977; NAL, 1977; revised ed., NAL, 1984; third ed., NAL, 1990).

The Rights of Lawyers and Clients (Avon, 1979).

"Four Policemen in London and Amsterdam," in R. Schrank (ed.) American Workers Abroad (MIT Press, 1979).

"Dispute Resolution in Prison:  The California Experience," and "New Faces in the Neighborhood Mediating the Forest Hills Housing Dispute," both in R. Goldmann (ed.) Roundtable Justice:  Case Studies in Conflict Resolution (Westview Press, 1980).

"The American Legal Profession," in A. Morrison (ed.), Fundamentals of American Law (Oxford University Press 1996).

The Elsinore Appeal: People v. Hamlet (St. Martin's Press 1996).  This book contains the text of Hamlet together with briefs and oral argument for and against affirmance of Prince Hamlet's (imaginary) murder convictions.  The book arose out of a symposium sponsored by the Association of the Bar of the City of New York.

"In the Pink Room," in Legal Ethics: Law Stories (D. Rhode & D. Luban, eds.) (Foundation Press, 2006) (also published as a freestanding monograph).

Stephen Gillers

| PUBLICATIONS (continued) | ARTICLES: |
|---|---|

**ARTICLES:**

Uniform Legal Ethics Rules? No – An Elusive Dream Not Worth the Chase, 22 The Professional Lawyer __ (2014)

The Two-Year Law Degree: Undesireable but Perhaps Unavoidable, 2013 N.Y.U. J. Legis. & Pub. Pol'y Quorum 4 (2013)

How To Make Rules for Lawyers: The Professional Responsibility of the Legal Profession, 40 Pepperdine L. Rev. 365 (2013) (Symposium issue on *The Lawyer of the Future*).

A Profession, If You Can Keep It: How Information Technology and Fading Borders Are Reshaping the Law Marketplace and What We Should Do About It, 63 Hastings L.J. 953 (2012)

Guns, Fruit, Drugs, and Documents: A Criminal Defense Lawyer's Responsibility for Real Evidence, 63 Stan. L. Rev. 813 (2011)

Is Law (Still) An Honorable Profession?, 19 Professional Lawyer 23 (2009)(based on a talk at Central Synagogue in Manhattan).

Professional Identity: 2011 Michael Franck Award Acceptance Speech, 21 Professional Lawyer 6 (2011).

Choosing and Working with Estate and Foundation Counsel to Secure an Artistic and Philanthropic Legacy, in The Artist as Philanthropist, volume 2, page 293 (The Aspen Institute Program on Philanthropy and Social Innovation 2010)

Virtual Clients:  An Idea in Search of a Theory (with Limits),  42 Valparaiso L. Rev. 797 (2008)  (Tabor lecture).

The "Charles Stimson" Rule and Three Other Proposals to Protect Lawyers From Lawyers, 36 Hofstra L. Rev. 323 (2007)

A Tendency to Deprave and Corrupt:  The Transformation of American Obscenity Law from *Hicklin* to *Ulysses II*, 85 Washington U. L. Rev. 215 (2007)

Some Problem with Model Rule 5.6(a), Professional Lawyer (ABA 2007 Symposium Issue).

Monroe Freedman's Solution to the Criminal Defense Lawyer's Trilemma Is Wrong as a Matter of Policy and Constitutional Law, 34 Hofstra L. Rev. 821 (2006)

3

ARTICLES
(continued)

"In the Pink Room," TriQuarterly 124.

Free the Lawyers:  A Proposal to Permit No-Sue Promises in Settlement Agreements, 18 Georgetown J. Legal Ethics 291 (2005) (with Richard W. Painter).

Lessons from the Multijurisdictional Practice Commission: The Art of Making Change, 44 Ariz. L. Rev. 685 (2002).

Speak No Evil: Settlement Agreements Conditioned On Noncooperation Are Illegal and Unethical, 31 Hofstra L. Rev.  1 (2002) (reprinted at 52 Defense L.J. 769 (2003)).

 "If Elected, I Promise [_____]"–What Should Judicial Candidates Be Allowed to Say? 35 Ind. L. Rev. 735 (2002).

Legal Ethics: Art or Theory?, 58 Annual Survey Am. L. 49 (2001).

The Anxiety of Influence, 27 Fla. St. L. Rev. 123 (1999) (discussing rules that restrict multidisciplinary practice.

Can a Good Lawyer Be a Bad Person? 2 J. Inst. Study of Legal Ethics 131 (1999) (paper delivered at conference "Legal Ethics: Access to Justice" at Hofstra University School of Law, April 5-7, 1998).

More About Us: Another Take on the Abusive Use of Legal Ethics Rules, 11 Geo. J. Legal Ethics 843 (1998).

Caveat Client: How the Proposed Final Draft of the Restatement of the Law Governing Lawyers Fails to Protect Unsophisticated Consumers in Fee Agreements With Lawyers, 10 Geo. J. Legal Ethics 581 (1997).

Participant, Ethical Issues Arising From Congressional Limitations on Legal Services Lawyers, 25 Fordham Urban Law Journal 357 (1998) (panel discussion).

The Year: 2075, the Product: Law, 1 J. Inst. Study of Legal Ethics 285 (1996) (paper delivered on the future of the legal profession at Hofstra University Law School's conference "Legal Ethics: The Core Issues").

Getting Personal, 58 Law & Contemp. Probs. 61 (Summer/Autumn 1995) (contribution to symposium on teaching legal ethics).

ARTICLES
(continued)

Against the Wall, 43 J. Legal Ed. 405 (1993) (ethical considerations for the scholar as advocate).

Participant, Disqualification of Judges (The Sarokin Matter): Is It a Threat to Judicial Independence?, 58 Brooklyn L. Rev. 1063 (1993) (panel discussion).

The New Old Idea of Professionalism, 47 The Record of the Assoc Bar of the City of N.Y. 147 (March 1992).

The Case of Jane Loring-Kraft: Parent, Lawyer, 4 Geo. J. Legal Ethics 115 (1990).

Taking L.A. Law More Seriously, 98 Yale L.J. 1607 (1989) (contribution to symposium on popular legal culture).

Protecting Lawyers Who Just Say No, 5 Ga. St. L. Rev. 1 (1988) (article based on Henry J. Miller Distinguished Lecture delivered at Georgia State University College of Law).

Model Rule 1.13(c) Gives the Wrong Answer to the Question of Corporate Counsel Disclosure, 1 Geo. J. Legal Ethics 289 (1987).

The Compelling Case Against Robert H. Bork, 9 Cardozo L. Rev. 33 (1987).

Ethics That Bite:  Lawyers' Liability to Third Parties, 13 Litigation 8 (Winter 1987).

Can a Good Lawyer Be a Bad Person?, 84 Mich. L. Rev. 1011 (1986).

Proving the Prejudice of Death-Qualified Juries After Adams v. Texas:  An Essay Review of Life in the Balance, 47 Pitt. L. Rev. 219 (1985), cited in Lockhart v. McCree, 476 U.S. 162, 197, 201 (1986) (Marshall, J., dissenting).

What We Talked About When We Talked About Ethics: A Critical View of the Model Rules, 46 Ohio St. L.J. 243 (1985).

The Quality of Mercy:  Constitutional Accuracy at the Selection Stage of Capital Sentencing, 18 U.C. Davis L. Rev. 1037 (1985).

Berger Redux, 92 Yale L.J. 731 (1983) (Review of Death Penalties by Raoul Berger).

5

ARTICLES
(continued)

Selective Incapacitation:  Does It Offer More or Less?, 38 The Record of the Assoc. Bar City of N.Y. 379 (1983).

Great Expectations:  Conceptions of Lawyers at the Angle of Entry, 33 J. Legal Ed. 662 (1983).

Perspectives on the Judicial Function in Criminal Justice (Monograph, Assoc. Bar City of N.Y., 1982).

Deciding Who Dies, 129 U. Pa. L. Rev. 1 (1980) (quoted and cited as "valuable" in Spaziano v. Florida, 468 U.S. 447, 487 n.33 (1984) (Stevens, J., dissenting); also cited in Zant v. Stephens, 462 U.S. 862, 878 n.17, 879 n.19 (1983); Lockhart v. McCree, 476 U.S. 162, 191 (1986) (Marshall, J., dissenting); Callins v. Collins, 114 S.Ct. 1127, 1134 n.4 (1994) (Blackmun, J., dissenting); and Harris v. Alabama, 115 S.Ct. 1031, 1038-39 (1995) (Stevens, J., dissenting).

Numerous articles in various publications, including The New York Times, The Nation, American Lawyer, The New York Law Journal, The National Law Journal, Newsday, and the ABA Journal.  See below for selected bibliography.

**AWARDS**

**2015 Recipient of the American Bar Foundation Outstanding Scholar Award** for dedication to the regulation of and ethics in the legal profession.

**2011 Recipient, Michael Franck Award.** Michael Franck Award from the ABA's Center for Professional Responsibility. The Award is given annually for "significant contributions to the work of the organized bar….noteworthy scholarly contributions made in academic settings, [and] creative judicial or legislative initiatives undertaken to advance the professionalism of lawyers…are also given consideration."

**DVDS**

"Adventures in Legal Ethics and Further Adventures in Legal Ethics": videotape of thirteen dramatic vignettes professionally produced and directed and raising issues of legal ethics.  Author, Producer.  (1994)

"Dinner at Sharswood's Café," a videotape raising legal ethics issues. Author,  Producer. (1996)

6

"Amanda Kumar's Case," a 38-minute story raising more than two dozen legal ethics issues.  Author. (1998)

**TRIBUTES**

To Honorable Gus J. Solomon, printed at 749 Federal Supplement LXXXI and XCII (1991).

Truth, Justice, and White Paper, 27 Harv. Civ. R. Civ. Lib. L. Rev. 315 (1992) (to Norman Dorsen).

Irving Younger: Scenes from the Public Life, 73 Minn. L. Rev. 797 (1989).

**OTHER TEACHING**

Visiting Professor of Law, Harvard Law School, Winter 1988 Semester;

Adjunct Professor of Law, Yeshiva University, Cardozo Law School, Spring 1986, Spring 1987, and Fall 1988 Semesters.
Course:  The Legal Profession.

Adjunct Associate Professor of Law, Brooklyn Law School, 1976-78.

**PRIOR EMPLOYMENT**

1973 - 1978
Private practice of law
Warner and Gillers, P.C. (1975-78)

1974 - 1978
Executive Director
Society of American Law Teachers, Inc.

1971 - 1973
Executive Director, Committee for
Public Justice

1969 - 1971
Associate, Paul, Weiss, Rifkind,
Wharton & Garrison

1968 - 1969
Judicial Clerk to Chief Judge
Gus J. Solomon, Federal District Court
for the District of Oregon, Portland, Oregon

| | |
|---|---|
| **SELECTED TESTIMONY** | Testimony on "Nomination of Sandra Day O'Connor to the Supreme Court of the United States", Hearings, before the Senate Committee on the Judiciary, 97th Congress, 1st Sess., Sept. 11, 1981. |

Testimony on S. 2216, "Habeas Corpus Reform Act of 1982", Hearings, before the Senate Committee on the Judiciary,  97th Congress, 2d Sess.,  April 1, 1982.

Testimony on H.R. 5679, "Criminal Code Revision Act of 1981", Hearings, before the House of Representatives, Committee on the Judiciary, 97th Congress, 2d Sess., April 22, 1982.

Testimony on S. 653, "Habeas Corpus Procedures Amendment Act of 1981", Hearings, before the Senate Committee on the Judiciary, 97th Congress, 1st Sess., November 13, 1981.

Testimony on S. 8875 and A. 11279, "A Proposed Code of Evidence for the State of New York", before Senate and Assembly Codes and Judiciary Committees, February 25, 1983.

Testimony before A.B.A. Commission on Women in the Profession, Philadelphia, February 6, 1988.

Testimony on the nomination of William Lucas to be Assistant Attorney General for Civil Rights, before the Senate Committee on the Judiciary, 101st Congress, 1st Sess., July 20, 1989.

Testimony on the nomination of Vaughn Walker to be United States District Judge for the Northern District of California, before the Senate Committee on the Judiciary, 101st Congress, 1st Sess., November 9, 1989.

**PUBLIC LECTURES**
(partial list)

Tabor Lecture, Valparaiso University School of Law, April 12, 2007. This event consisted of two lectures. A public lecture was entitled "Here's the Gun: A Lawyer's Responsibility for Real Evidence."  The Bench and Bar lecture, which will be published in the school's law review, is entitled "Virtual Clients: An Idea in Search of a Theory (With Limits)."

Paul M. Van Arsdell, Jr., Memorial Lecture, University of Illinois, College of Law, March 7, 2005: "Do Lawyers Share Moral Responsibility for Torture at Guantanamo and Abu Ghraib?"

Howard Lichtenstein Distinguished Professorship of Legal Ethics Lecture Series, "In Praise of Confidentiality (and Its Exceptions)," delivered at Hofstra University School of Law, November 12, 2003.

8

Henry J. Miller Distinguished Lecture, Georgia State University College of Law, May 11, 1988.  "Protecting Lawyers Who Just Say No."

First Annual South Carolina Bar Foundation Lecture, April 9, 1992, University of South Carolina Law School, Columbia, South Carolina.  "Is the Legal Profession Dead?  Yearning to Be Special in an Ordinary Age."

Philip B. Blank Memorial Forum on Attorney Ethics, Pace University School of Law, April 8, 1992.  "The Owl and the Fox: The Transformation of Legal Work in a Commodity Culture."

Speaker on Judicial Ethics, ABA Appellate Judges' Seminar and Flaschner Judicial Institute, September 29, 1993, Boston, Massachusetts.

Baker-McKenzie Ethics Lecture, Loyola University Chicago School of Law, October 13, 1993, Chicago, Illinois ("Bias Issues in Legal Ethics:  Two Unfinished Dramas").

The Sibley Lecture, University of Georgia School of Law, Athens, Georgia, November 10, 1993 ("Telling Stories in School: The Pedagogy of Legal Ethics").

Participant,  "Ethics in America" series (to be) broadcast on PBS 2007, produced by Columbia University Seminars on Media and Society.

Participant, "Ethics in America" series, broadcast on PBS February and March 1989, produced by Columbia University Seminars on Media and Society.

 Participant, "The Constitution: That Delicate Balance, Part II" series, broadcast on PBS February and March 1992, produced by Columbia University Seminars on Media and Society.

Lecturer on legal ethics and allied subjects in the U.S. and abroad at hundreds of seminars, CLE events, and conferences organized by private law firms, corporate law departments, the District of Columbia, Second, Fourth, Sixth, Ninth and Federal Circuit Judicial Conferences; American Bar Association; Federal Bar Council; New York State Judiciary; New York City Corporation Counsel; American Museum of Natural History; Practicing Law Institute; Law Journal Seminars; state, local and specialty bar associations (including in Oregon, Nebraska, Illinois, New York, New Jersey, Pennsylvania, Rhode Island, Vermont, and Georgia); corporate law departments; law schools; and law firms.

**LEGAL AND**
**PUBLIC SERVICE**
**ACTIVITIES**

Member, ABA 20/20 Commission, 2009- 2013 (appointed by the ABA President to study the future of lawyer regulation).

Chair, American Bar Association Center for Professional Responsibility, Policy Implementation Committee, 2004-2008 (Member 2002-2010).

Member, American Bar Association Commission on Multijurisdictional Practice, 2000-2002.

Consultant, Task Force on Lawyer Advertising of the New York State Bar Association (2005).

Retained by the New Jersey Supreme Court, in connection with the Court's review of the lawyer disciplinary system in New Jersey, to provide an "analysis of the strengths and weaknesses of California's 'centralized' disciplinary system" and to "report on the quality, efficiency, timeliness, and cost effectiveness of the California system...both on its own and compared with the system recommended for New Jersey by the Ethics Commission."  Report filed December 1993.  Oral presentation to the Court, March 1994.

Reporter, Appellate Judges Conference, Commission on Judicial participation in the American Bar Association, (October 1990-August 1991).

Member, David Dinkins Mayoral Transition Search Committee (Legal and Law Enforcement, 1989).

Member, Committee on the Profession, Association of the Bar of the City of New York (1989-1992)

Member, Executive Committee of Professional Responsibility Section, Association of American Law Schools (1985-1991).

Chair, 1989-90 (organized and moderated Section presentation at 1990 AALS Convention on proposals to change the ABA Code of Judicial Conduct).

Counsel, New York State Blue Ribbon Commission to Review Legislative Practices in Relation to Political Campaign Activities of Legislative Employees (1987-88).

Administrator, Independent Democratic Judicial Screening Panel, New York State Supreme Court (1981).

Member, Departmental Disciplinary Committee, First Judicial Department  (1980 - 1983).

Member, Committee on Professional and Judicial Ethics, Association of the Bar of the City of New York (1979 - 1982).

**BAR MEMBERSHIPS**    STATE:

New York (1968)

FEDERAL:

United States Supreme Court (1972);
Second Circuit (1970);
Southern District of New York (1970);
Eastern District of New York (1970)

**LEGAL EDUCATION**    J.D. cum laude, NYU Law School, 1968
Order of the Coif (1968)
Dean's List (1966-68)
University Honors Scholar (1967-68)

**PRELEGAL
EDUCATION**    B.A. June 1964, City University of New York
(Brooklyn College)

**DATE OF BIRTH**    November 3, 1943

**OTHER ARTICLES**    (Selected Bibliography 1978-present)

1.    Carter and the Lawyers, The Nation, July 22-29, 1978.

2.    Standing Before the Bar, Bearing Gifts, New York Times, July 30, 1978.

3.    Judgeships on the Merits, The Nation, September 22, 1979.

4.    Entrapment, Where Is Thy Sting?, The Nation, February 23, 1980.

5.    Advice and Consent, New York Times, September 12, 1981.

Stephen Gillers

6.      Lawyers' Silence: Wrong . . . , New York Times, February 14, 1983.

7.      The Warren Court - It Still Lives, The Nation, September 17, 1983.

8.      Burger's Warren Court, New York Times, September 25, 1983.

9.      "I Will Never Forget His Face!", New York Times, April 21, 1984.

10.     Warren Court's Landmarks Still Stand, Newsday, July 29, 1984.

11.     Von Bulow, And Other Soap Operas, New York Times, May 5, 1985.

12.     Statewide Study of Sanctions Needed for Lawyers' Misconduct, New York Law Journal, June 6, 1985.

13.     Preventing Unethical Behavior - Something New in Model Rules, New York Law Journal, August 30, 1985.

14.     Proposed Model Rules Superior to State's Code, New York Law Journal, October 21, 1985.

15.     Five Ways Proposed to Improve Lawyer Discipline in New York, New York Law Journal, January 8, 1986.

16.     Poor Man, Poor Lawyer, New York Times, February 28, 1986.

17.     Proposals To Repair Cracks in Ethical Legal Behavior, New York Law Journal, April 17, 1986.

18.     Unethical Conduct: How to Deter It Through Education, Bar Leader (May/June 1986).

19.     The New Negotiation Ethics - Or Did Herb's Lawyer Do Wrong? New York Law Journal, June 2, 1986.

20.     The Real Stakes in Tort Reform, The Nation, July 19-26, 1986.

21.     Bernhardt Goetz: Vigilante Or Victim?, Toronto Star, September 10, 1986.

22.     The Message That the Goetz Trial Will Send, Newsday, August 31, 1986.

23.     Amending the Ethics Code - Solicitation, Pre-Paid Plans, Fees, New York Law Journal, November 10, 1986.

24.     Amending the Ethics Code - Conflicts of Interest, Screening, New York Law Journal, November 12, 1986.

25.     Amending the Ethics Code - Confidentiality and Other Matters, New York Law Journal,

12

November 13, 1986.

26.     No-Risk Arbs Meet Risk Justice, New York Times, November 23, 1986.

27.     The Meese Lie, The Nation, February 21, 1987.

28.     Amending State Ethics Code - Conflicts of Interest Gone Awry, New York Law Journal, May 18, 1987.

29.     "The Lawyers Said It Was Legal," New York Times, June 1, 1987.

30.     Feminists vs. Civil Libertarians, New York Times, November 8, 1987.

31.     Lessons for the Next Round in Picking a Justice, Newsday, November 11, 1987.

32.     We've Winked For Too Long, National Law Journal, December 21, 1987 (judicial membership in exclusionary clubs).

33.     No More Meeses, New York Times, May 1, 1988.

34.     In Search of Roy Cohn, ABA Journal, June 1, 1988 (book review).

35.     Do Brawley Lawyers Risk Serious Discipline?, New York Law Journal, June 22, 1988.

36.     Have the Brawley Lawyers Broken the Law?, New York Times, July 2, 1988.

37.     Report Demonstrates Why Meese is Unfit to Be Attorney General, Atlanta Journal and Constitution, July 24, 1988.

38.     Ethical Questions for Prosecutors in Corporate-Crime Investigations, New York Law Journal, September 6, 1988.

39.     Restoring Faith at Justice, National Law Journal, November 21, 1988.

40.     Is Bush Repeating Rockefeller's Folly?, New York Times, September 11, 1989.

41.     Standards Time, The Nation, January 29, 1990 (on the subject of legislative ethics).

42.     Abused Children vs. The Bill of Rights, New York Times, August 3, 1990.

43.     Words Into Deeds: Counselor, Can You Spare a Buck?, ABA Journal, November 1990.

44.     Bad Apples, ABA Journal at 96 (March 1991) (book review).

45.     The Gotti Lawyers and the Sixth Amendment, New York Law Journal, August 12, 1991.

46.     Justice or Just Us?  The Door to Dan Quayle's Courthouse Only Swings One Way, ABA

Journal (June 1992) at 109.

47.   Fighting Words (What was once comical is now costly), ABA Journal (August 1992) at 102.

48.   Sensitivity Training: A New Way to Sharpen Your Skills At Spotting Ethics Conflicts, ABA Journal (October 1992) at 107.

49.   Under Color of Law:  Second Circuit Expands Section 1983 Liability for Government Lawyers, ABA Journal (December 1992) at 121.

50.   Cleaning Up the S&L Mess: Courts Are Taking the Duty to Investigate Seriously, ABA Journal (February 1993) at 93.

51.   All Non-Refundable Fee Agreements Are Not Created Equal, New York Law Journal (February 3, 1993) at 1.  (Analyzing appellate decision prohibiting non-refundable fees.)

52.   The Packwood Case: The Senate Is Also on Trial, The Nation (March 29, 1993) at 404.

53.   Conflict of Laws: Real-World Rules for Interstate Regulation of Practice, ABA Journal (April 1993) at 111.

54.   Packwood II, The Nation (May 10, 1993) at 617.

55.   Generation Gap, ABA Journal (June 1993) at 101.  (On the use of a boycott in response to the Colorado anti-gay initiative.)

56.   Future Shocks, ABA Journal (August 1993) at 104.  (Looking back on the practice of law in the 21st century from the year 2103.)

57.   A Rule Without a Reason, ABA Journal (October 1993) at 118.  (Criticism of the prohibition in Rule 5.6(b) against a lawyer agreeing not to restrict future practice in connection with a settlement.)

58.   Too Old to Judge?, ABA Journal (December 1993) at 94.  (Supreme Court justices have life tenure.  Maybe they should not.)

59.   Truth or Consequences, ABA Journal (February 1994) at 103.  (Discovery obligations.)

60.   "Ethical Cannons," in Symposium - Twenty Years of Change, Litigation (Fall 1993).

61.   Stretched Beyond the Limit, Legal Times (March 21, 1994) at 37.  (Analysis of the office of Counsel to the President in light of Bernard Nussbaum's resignation.)  [Same article was reprinted in the Connecticut Law Tribune, the Fulton County (Atlanta) Daily Report, and the Recorder (San Francisco).]

62.   Putting Clients First, ABA Journal (April 1994) at 111. (Discussing cases on lawyers' fiduciary duty.)

14

63. Grisham's Law, The Nation (April 18, 1994) at 509.  (The effect of popular culture on Whitewater reporting.)

64. The Elsinore Appeal: "People v. Hamlet", New York Law Journal (October 11, 1994) at 3. (Brief for Appellee, State of Denmark).  (This was a mock appeal from Hamlet's conviction for the murder of Claudius, Polonius, Ophelia, Laertes, Rosencrantz & Gildenstern, held at the Association of the Bar of the City of New York on October 11, 1994.)

65. Billing for Costs and Disbursements: What Law Firms Can Charge and Clients Can Expect, monograph published 1995 by Pitney Bowes Management Services.

66. Clinton Has A Right To Privacy, N.Y. Times, 12/21/95, at ____.

67. "'Filegate' Was Bad Enough.  Now This?," N.Y. Times, 7/5/96, at A23. (Article criticizing proposal to privatize certain security investigations of government personnel.)

68. "Whitewater: How to Build a Case Using a Tainted Witness,"  Los Angeles Times, 2/16/97, at M1.

69. "Hillary Clinton Loses Her Rights," New York Times, 5/4/97, at E15.

70. "Shakespeare on Trials," IV Federal Bar Council News 16 (June 1997).

71. "Florida Backs Out On a Deal," New York Times, 10/10/97, at A23.

72. "The Perjury Loophole," New York Times, 2/18/98, at A21 (discussion of perjury in connection with Kenneth Starr's investigation of President Clinton).

73. "Any Method to Ginsburg's Madness?" Los Angeles Times, 3/15/98, at M1 (discussion of William Ginsburg's public defense of Monica Lewinsky).

74. "Whitewater Made Easy," The Nation, 6/1/98, at 8.

75. "A Highly Strategic Legal Chess Game," Los Angeles Times, June 7, 1998,  at M1 (Starr-Clinton legal maneuvers).

76. "To Sleep . . . Perchance, to Dream," New York Law Journal, July 8, 1998, at 2.  (Humorous article about bored jurors.)

77. "Clinton Is No Ordinary Witness," New York Times, 7/28/98, at A15.

78. "The High Cost of an Ethical Bar," The American Lawyer, July/August 1998, at 87.

79. "Clinton's Choice: Tell Truth or Dare to Gamble," Los Angeles Times, August 2, 1998, at M1.

80.     "Accurate Lies: The Legal World of Oxymorons," Los Angeles Times, August 30, 1998, at M1.

81.     "A Fool For a Client?" The American Lawyer, October 1998, at 74.  (President Clinton's legal representation in the Lewinsky representation.)

82.     "The Presidency: Out to End Clinton's Mess and Be Happy," Los Angeles Times, October 4, 1998, at M1.

83.     "Protecting Their Own," The American Lawyer, November 1998, at 118.

84.     "Can't We All Just Practice Together: Taking Down 'Trade Barriers' on Lawyers Here and Abroad," Legal Times, November 9, 1998, at 32.

85.     "Beyond the Impeachment Spectacle," Los Angeles Times, November 22, 1998, at M1.

86.     "The Perjury Precedent," New York Times, December 28, 1998, at A27.

87.     "From the Same Set of Facts: A Tale of Two Stories," Los Angeles Times, January 17, 1999, at M1 (about the Clinton impeachment trial).

88.     "The Decline and Fall of Kenneth Starr," Los Angeles Times, February 7, 1999, at M1.

89.     "The Truth About Impeachment," The American Lawyer, March 1999, p. 131.

90.     "The Double Standard," New York Times Book Review, March 21, 1999, at 13 (review of *No Equal Justice* by David Cole).

91.     "Four Officers, One Likely Strategy," New York Times, Saturday, April 3, 1999, at A15.

92.     "The Man in the Middle: Did George Ventura Step Over the Ethical Line?" The American Lawyer, May 1999, p. 80 (discussion of lawyer whistleblowing in light of *State v. George Ventura*). (Reprinted as "Whistleblower, Esq." in New York Law Journal, May 26, 1999 at page 2.)

93.     "Your Client Is A Corporation – Are Its Affiliates Clients Too?"  The New York Professional Responsibility Report, May 1999 , at 1.

94.     "Job Talk (Scenes from the Academic Life)," The American Lawyer, July 1999, at 161. (Satire about law school hiring.)

95.     "The Other Y2K Crisis," The Nation, July 26/August 2, 1999, at 4 (editorial about the year 2000 electoral races).

96.     "Walking the Confidentiality Tightrope," ACCA Docket 20 (September/October 1999) (remarks at ACCA's national conference in 1998).

97.  "Things Old & New – The Code Amendments," New York Professional Responsibility Report (September 1999), at 1.

98.  "Clinton's Chance to Play the King," New York Times,  Sept. 20, 1999 at A17.

99.  "Overprivileged," American Lawyer, October 1999 at 37.  (Discussion of First Amendment protection for journalists.)

100.  "Controlling Conflicts Between Old and New Clients,"  New York Professional Responsibility Report, January 2000 at 3.

101.  "How To Spank Bad Lawyers," American Lawyer, February 2000 at 41.

102.  "A Weak Case, But a Brave Prosecution," New York Times, Wednesday, March 1, 2000 at A23 (the Diallo case).

103.  "Conflicts of Interest in Malpractice Cases," New York Professional Responsibility Report, March 2000 at 1.

104.  "The Court's Picayune Power," New York Times, Thursday, April 20, 2000 at A29.

105.  "Some Misrepresentations Among Corporate Lawyers," New York Professional Responsibility Report, June 2000 at 1.

106.  "Was Hubbell Case About Getting Justice or Getting Even?" Los Angeles Times, June 18, 2000 at M2 (comment on the U.S. Supreme Court's decision in *United States v. Hubbell*, decided June 5, 2000).

107.  "Who Owns the Privilege After a Merger?" New York Professional Responsibility Report, July 2000 at 1.

108.  "Fighting the Future," The American Lawyer, July 2000 at 55.

109.  "Campus Visits Deconstructed," Newsweek: How To Get Into College, 2001 Edition at 46.

110.  "The Court Should Boldly Take Charge," New York Times, Tuesday, November 21, 2000 at A25 (Florida's presidential election recount).

111.  "Who Says the Election Has a Dec. 12 Deadline?"  New York Times, Saturday, December 2, 2000 at A19.

112.  "Motive Is Everything in the Marc Rich Pardon," New York Times, Saturday, February 17, 2001.

113.  "For Justice To Be Blind, Must Judges Be Mute?"  New York Times, Sunday, March 4, 2001 at Section 4, page 3.

114.   "Should Supreme Court Justices Have Life Tenure?" Reprinted in *The Supreme Court and Its Justices* (Choper J., ed.) (ABA 2001).

115.   Professionalism Symposium, 52 South Carolina L. Rev. 55 (2001) (closing remarks).

116.   "No Lawyers To Call," New York Times, Monday, December 3, 2001 at A19 (ethical and constitutional obligations that will prevent lawyers from participating in military tribunals).

117.   "Let Judicial Candidates Speak," New York Times, Thursday, March 28, 2002 at A31.

118.   "The Flaw in the Andersen Verdict," New York Times, Tuesday, June 18, 2002 at A23.

119.   "Why Judges Should Make Court Documents Public," New York Times, Saturday, November 30, 2002 at A17.

120.   "It's an MJP World," ABA Journal, December 2002 at 51.

121.   "Upholding the Law as Pretrial Publicity Goes Global," New York Times, Sunday, April 27, 2003,  Sec. 4 at 14.

122.   "Court-Sanctioned Secrets Can Kill," Los Angeles Times, Wednesday, May 14, 2003 (reprinted May 15, 2003 in Newsday).

123.   "Make a List," New York Times, June 11, 2003 at 31 (advocating changes in the methods of judicial selection).

124.   "Conflicted About Martha?" American Lawyer (September 2003) (analysis of Martha Stewart indictment).

125.   "The Prudent Jurist," Legal Affairs, January/February 2004.

126.   "On Knowing the Basic Rules of Advocacy," New York Times, February 8, 2004, Sec. 4 at 2 (cross-examination in the Martha Stewart trial).

127.   "The Prudent Jurist," Legal Affairs, March/April 2004.

128.   "Scalia's Flawed Judgment," The Nation, April 19, 2004 at 21.

129.   "Scholars, Hucksters, Copycats, Frauds," Washington Post, April 25, 2004 at B3  (Outlook) (discussion of ethics of academics who put their names on newspaper opinion pieces written by industry).

130.   "The Prudent Jurist," Legal Affairs, May/June 2004 at 17.

131.   "Multijurisdictional Practice of Law:  Merging Theory With Practice," 73 The Bar Examiner 28 (May 2004).

132.  "Tortured Reasoning," American Lawyer (July 2004) (analysis of government lawyer memos addressing the application of various treaties and laws to the treatment of Afghan prisoners).

133.  "Paying the Price of a Good Defense," New York Times, August 13, 2004.

134.  "Improper Advances:  Talking Dream Jobs with the Judge Out of Court," Slate.com, August17, 2005 (with D. Luban and S. Lubet).

135.  "Roberts' Bad Decision," Los Angeles Times, September. 13, 2005 (with D. Luban and S. Lubet).

136.  "No Privilege for Miers," The Nation, November 7, 2005

137.  "Senators, Don't Rubber-Stamp," USA Today, January 5, 2006 at 13A (discussing the Senate's advise and consent responsibility in connection with Alito nomination).

138.  Ethics Column, American Lawyer, page 61 (January 2006) (with Deborah Rhode).

139.  Ethics Column, American Lawyer, page 63 (April 2006) (with Deborah Rhode).

140.  "Bush Postpones 2008 Election," The Nation, August 14/21, 2006 (satire).

141.   "Free the Ulysses Two: Joyce's First U.S. Publishers Were Convicted of Obscenity. It's Time to Clear Them." The Nation, February 19, 2007.

142.  "Twenty Years of Legal Ethics: Past, Present, and Future," 20 Georgetown J. Legal Ethics 321 (2007) (symposium celebrating the 20th anniversary of the journal).

143.  "The Torture Memos," The Nation, April 28, 2008.

144.  "Bar None," American Lawyer (October 2008) (globalization of law practice and how it will effect regulation of the bar).

145.  2011 Michael Franck Award Acceptance Speech, 21 Professional Lawyer 6 (2011).

146.  "Time to Adapt to a Different Marketplace," New York Law Journal, March 27, 2012.

147.  "The Supreme Court Needs a Code of Ethics," Politico (Aug. 8, 2013) (with Charles Geyh).

# EX. 50

Message

| | |
|---|---|
| **From**: | Zeiss, Nicole [/O=GOODKIN LABATON RUDOFF SUCHAROW/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=ZEISSN] |
| **Sent**: | 12/7/2016 5:01:27 PM |
| **To**: | Ng, Cindy [CNg@labaton.com] |
| **CC**: | Goldsmith, David [dgoldsmith@labaton.com] |
| **Subject**: | final work on letter to Citibank |

Damon's allocation should come out of our IOLA. It is fine for that to happen on Friday.

Thanks

**From:** Zeiss, Nicole
**Sent:** Wednesday, December 07, 2016 11:30 AM
**To:** Ng, Cindy
**Cc:** Goldsmith, David
**Subject:** Chargois wire instructions are below

Below are his wire instructions, looks like they match the W-9 and undertaking. Sorry to be all over the place but I have to ask Larry something about whether Damon should be paid out of the Citibank escrow account

**From:** Belfi, Eric J.
**Sent:** Wednesday, December 07, 2016 8:58 AM
**To:** Zeiss, Nicole
**Subject:** Re: Damon

Please use this:

Wells Fargo Bank NA

121000248

Damon J. Chargois

ss#

Routing █████████

Acct. # ███████████

Wells Fargo

420 Montgomery Street

San Francisco, CA 94104


He needs a new undertaking for Damon Chargois, Esq.




Eric Belfi

Partner

Labaton Sucharow LLP

140 Broadway

New York, N.Y. 10005

o: 1.212.907.0878

c: 1.516.509.5236


On Dec 7, 2016, at 5:01 AM, Zeiss, Nicole <NZeiss@labaton.com> wrote:

Hi again, we have to pull the trigger on this this am so Cindy can finalize the bank letter. Thanks


Sent from my BlackBerry 10 smartphone.

**From:** Zeiss, Nicole

**Sent:** Tuesday, December 6, 2016 11:18 AM

**To:** Belfi, Eric J.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

LBS032882

**Subject:** Damon

I spoke with David. Do you think we will have time to process his allocation once he wants it, or will it be a rush? If it will be a rush, then I want to tell accounting to bring the money into our IOLA. Otherwise, it can stay in the settlement fund, but it will take some hoops to get it out (Keller AND Larry signature).

## Labaton
## Sucharow

**Nicole M. Zeiss | Partner**

140 Broadway, New York, New York 10005

T: (212) 907-0867 | F: (212) 883-7067

E: nzeiss@labaton.com | W: www.labaton.com

<image003.gif>

 LBS032883

# EX. 51

| From: | Bradley, Garrett J. |
|---|---|
| Sent: | Friday, August 28, 2015 5:53 PM |
| To: | Keller, Christopher J. |
| Cc: | Sucharow, Lawrence |
| Subject: | Re: SST--Proposed Revision to Term Sheet for DOL Deal |

I agree. They will threaten their own fee app which I say would invalidate the agreement we have.

Garrett

On Aug 28, 2015, at 4:42 PM, Keller, Christopher J. <ckeller@labaton.com> wrote:

> We should talk this through. The court absolutely need not understand what the allocation of fees is amongst counsel so that should not be included in any document to be filed with the court. I have to say, I am quite overwhelmed with the size genitals lief has in this case in which they have a no client or title. That said, an agreement on allocation will not happen until the fees are actually in and need to be distributed.
>
> Christopher Keller
> Partner || Labaton Sucharow LLP
> 140 Broadway
> New York, NY 10005
> 212-907-0853
>
> On Aug 28, 2015, at 2:49 PM, Sucharow, Lawrence <LSucharow@labaton.com> wrote:
>
>> See entire email stream
>>
>> Sent from my iPhone
>>
>> Begin forwarded message:
>>
>>> **From:** "Sucharow, Lawrence" <LSucharow@labaton.com>
>>> **Date:** August 28, 2015 at 2:39:27 PM EDT
>>> **To:** "Daniel P. Chiplock" <DCHIPLOCK@lchb.com>
>>> **Cc:** "Garrett J. Bradley" <gbradley@tenlaw.com>, Michael Thornton <MThornton@tenlaw.com>, "Robert L. Lieff" <RLIEFF@lchb.com>
>>> **Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal**
>>>
>>> Also, I believe that there are other cases and other agreements which are influencing people's desire to either reach agreement now or later.
>>>
>>> I don't have a dog in the hunt and don't want to be drawn into it.
>>>
>>> I apologize for any mistakes but I am not in a place where I can edit my emails so I'm just dictating them I'm hoping that spell correct doesn't fuck me up too much.

1

# EX. 52

| | |
|---|---|
| **From:** | Michael Lesser |
| **Sent:** | Monday, June 29, 2015 6:26 PM |
| **To:** | Chiplock, Daniel P. |
| **Cc:** | Evan Hoffman |
| **Subject:** | STT Hours |

Dan:  Since case inception, Thornton has the following:

-Thornton doc review external (Thornton reviewers working Lieff + Labaton paid by Thornton) = 8,889.25
-Thornton doc review internal = 1,262.5
-Mike Lesser: 1243.2
-Evan Hoffman: 827.6
-Mike Thornton: 502.1
-Garrett Bradley: ---

Garrett is still working on this time, but this should be enough to give you the flavor; we do not have a large crew of folks (like Labaton and Lieff) behind these numbers, so this is mostly it for us.  Of course, as we complete the detailed task coding and whatnot - we are still scrubbing and clarifying our records and these numbers may alter – but not too much, I expect.  I never received lodestar from the ERISA firms.  I thought I had sent you the Labaton stuff, but will send again in a minute.  They have 29,000.

M

**Michael A. Lesser, Esq.**
**Thornton Law Firm LLP**
**100 Summer St., 30th Floor**
**Boston, MA 02110**
**617-720-1333**
**800-431-4600**
**mlesser@tenlaw.com**

1

Confidential: Produced Pursuant to Court Order.

# EX. 53

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant | ) <br> ) <br> ) No. 11-cv-10230 MLW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND and those similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20 <br><br> Defendants. | ) <br> ) <br> ) No. 11-cv-12049 MLW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| THE ANDOVER COMPANIES EMPLOYEES SAVINGS AND PROFIT SHARING PLAN, on behalf of itself and JAMES PEHOUSHEK-STRANGELAND, and all others similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) No. 11-cv-11698 MLW <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF GEORGE HOPKINS

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

I, George Hopkins, hereby declare under penalty of perjury:

1.      Since December 29, 2008, I have served as Executive Director of the Arkansas Teacher Retirement System ("ATRS"). I am also a lawyer, and I understand the importance of a sworn declaration.

2.      ATRS is the class representative in the above-captioned matter.

3.      At all times during this matter, in ATRS' role as class representative I have been the primary contact between ATRS and attorneys for Labaton Sucharow ("Labaton") who represent ATRS. The majority of my communication with Labaton has been through Labaton partner Eric Belfi.

4.      Labaton has done an outstanding job representing ATRS in this matter. I am very pleased with the result that Labaton helped obtain for the class. Personally, I am not aware of another law firm that could have worked as tenaciously or produced as good a result on behalf of the class as Labaton did.

5.      Labaton has also represented ATRS in several other matters. In my opinion, Labaton's attorneys are talented and hard-working.

6.      The fee awarded by the Court to the attorneys representing the class in this matter, including Labaton, was about 25% of the total $300 million settlement fund. Given the excellent result that Labaton helped obtain in this case, and Labaton's exceptional work representing the class throughout this case, I believe that 25% of the total settlement fund was a fair and reasonable fee award. I strongly believe that Labaton earned it.

7.      I myself was not aware of Labaton's fee-sharing agreement with the Chargois & Herron law firm, or with Damon Chargois, until approximately August or September 2017.

1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

8.      I now understand that Labaton has had a fee-sharing agreement with Chargois &
Herron for a number of years. I understand that, according to this agreement, Chargois & Herron
believes that it is entitled to up to 20% of any fee Labaton earns as class counsel when
representing  ATRS as named Plaintiff. I further understand that this agreement was reached
between Labaton and Chargois & Herron largely because attorneys at Chargois & Herron
facilitated an introduction between ATRS and Labaton. This occurred prior to my service as
Executive Director of ATRS.

9.      I understand that, in the context of this matter, the "Customer Class Law Firms" –
Labaton and the two other firms representing the "Customer Class," Lieff Cabraser Heimann &
Bernstein, LLP and the Thornton Law Firm LLP – agreed that the three firms would fund from
their respective fee awards Chargois & Herron's portion of the fee, equivalent to 5.5% of the
total fee award, rather than Labaton paying 20% of its portion of the fee. I understand that, as a
result of this agreement, Chargois & Herron received $4.1 million in connection with this matter.

10.      In the past, Eric Belfi expressly offered to discuss with me how the plaintiffs'
lawyers divide up the attorneys' fees awarded by the court. I told Mr. Belfi that I did not want to
know the specifics of fee allocations between Labaton and other attorneys.  I also told Mr. Belfi
that if I ever wanted to know the details of Labaton's fee-sharing agreements, I would ask him.
Those were my instructions, and I believe that a lawyer should follow the client's instructions.

11.      My primary focus was, and has been, the amount awarded to the class, and the
aggregate amount of attorney's fees. Once the aggregate attorney's fee award has been
established by the Court, I am not concerned with how that aggregate fee is distributed among
lawyers or law firms, because – in my view – those distributions do not affect the class.

2

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

12. Moreover, I have no interest in becoming a referee between various law firms, including local counsel. I believe that my knowledge of and involvement with fee agreements between attorneys would inevitably distract from my focus, which is protecting the class.

13. My time on this matter was extensive, and it was appropriately spent on staying very involved, including throughout the lengthy mediation process, in matters that helped protect the interests of the class.

14. Because of my instructions to Mr. Belfi regarding my desire not to know or otherwise be involved with the specifics of Labaton's fee agreements, I do not feel misled by the fact that I was unaware of Labaton's agreement with Chargois & Herron. In fact, I believe that Mr. Belfi and Labaton were following my express instructions.

15. In my view, this payment had no effect on the interests of the class. Moreover, because Labaton believed that it had an obligation to share its fee with Chargois & Herron, I understand that the Labaton lawyers would feel the need to fulfill that obligation. Although I'm sorry to see Labaton and the other Customer Class Law Firms lose any portion of their own fee, I do not object to the $4.1 million payment, paid by the Customer Class Law Firms from their own fee award, to Chargois & Herron in this matter.

16. Given my clear instructions to Mr. Belfi, I have no problem with the fact that the details of Labaton's agreement with, and payment to, Chargois & Herron were not explained to me. I am now aware of that specific agreement, the parameters of which I describe above. I now ratify that agreement, with full knowledge of it.

17. I am ratifying Labaton's fee-sharing agreement with Chargois & Herron because I do not object to it. My ratification of Labaton's agreement with Chargois & Herron is not a result of pressure from anybody, nor is it a result of any desire to avoid: inconvenience in

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

obtaining new counsel; alienating ATRS' current counsel; any change in the quality of ATRS'

representation in this matter; ATRS' position in this matter being affected; or any other reason.

I declare under the pains and penalties of perjury under the laws of the United States of

America and the State of Arkansas that the foregoing is true and correct. Executed this $\underline{15}$^{th} day of

March, 2018 in Little Rock, Arkansas.

George Hopkins

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# EX. 54

**From:**          Keller, Christopher J. <ckeller@labaton.com>
**Sent:**          Monday, May 23, 2011 6:36 PM
**To:**            Garrett Bradley
**Subject:**       #755904 v1 - Letter Agreement -- State Street
**Attachments:**   G79C01!.DOC

What do you think of this?

 Please consider the environment before printing this email.

***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN
NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the
use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering
this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited.
If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and
take the steps necessary to delete the message completely from your computer system. Thank you.

1

Confidential: Produced Pursuant to Court Order.                                              TLF-SST-033910

Christopher J. Keller
Partner
212 907 0853 direct
212 883 7053 fax
email ckeller@labaton.com

May 4, 2011

**VIA ELECTRONIC MAIL**
Michael P. Thornton, Esq. (MThornton@tenlaw.com)
Garrett J. Bradley, Esq. (GBradley@tenlaw.com)
Thornton & Naumes LLP
100 Summer Street, 30th Floor
Boston, MA  02110

Steven E. Fineman, Esq. (sfineman@lchb.com)
Daniel P. Chiplock, Esq. (dchiplock@lchb.com)
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413

Richard M. Heimann, Esq. (rheimann@lchb.com)
Lexi J. Hazam, Esq. (lhazam@lchb.com)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

Re:     *Arkansas Teacher Retirement System v. State Street Corporation*
        Civil Action No. 11-cv-10230-MLW (D. Mass.)

Dear Counsel:

I am pleased we were able to come to terms and will be working together in this matter.  I have outlined below the terms of the agreement we have reached.

Arkansas Teacher Retirement System ("Arkansas Teacher") will be represented in the action by Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel, and Thornton & Naumes LLP ("Thornton & Naumes") and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") will serve as additional counsel for Arkansas Teacher in this action.

Arkansas Teacher has made an application to the Court for appointment of its selection of Labaton Sucharow as Interim Lead Counsel.  In the event that the Court appoints Labaton Sucharow as interim Lead Counsel and subsequently as Lead Counsel, we agree as follows:

Confidential: Produced Pursuant to Court Order.

May 4, 2011
Page 2

We agree that our firms will act in good faith to divide the work so that each of the firms performs at least 20% of the work and each will receive at least 20% of the fees awarded in this matter. The remaining 40% of the fees awarded shall be allocated in good faith at the conclusion of the case based on each firms' actual time spent on this matter..

There is an "off the top" obligation to referring counsel of 6% of the fees awarded. In addition, we agree to exchange on a quarterly basis our then current lodestar reports showing quarterly and aggregate billings in this matter.

We also agree that any dispute arising under this agreement or in this case may not be litigated in court and that all such disputes or claims shall be resolved, upon election of any party, through binding arbitration conducted pursuant to the applicable rules of the American Arbitration Association in any jurisdiction in which any of the firms reside.

Please sign below indicating your agreement to these terms.

Very truly yours,


Christopher Keller, Esq.


Accepted and agreed by:


Thornton & Naumes LLP


_____          Date: _____
Michael P. Thornton, Esq.




Lieff Cabraser Heimann & Bernstein, LLP

May 4, 2011
Page 3

_____         Date: _____

Steven E. Fineman, Esq.

Confidential: Produced Pursuant to Court Order.

# EX. 55

**From:**              Bradley, Garrett J.
**Sent:**              Tuesday, June 21, 2016 11:13 AM
**To:**                Stocker, Michael W.
**Cc:**                Belfi, Eric J.; Keller, Christopher J.
**Subject:**        Re: State Street

I think they should be two separate conversations by different people. I'll take a run at state street.

Garrett

On Jun 21, 2016, at 11:10 AM, Stocker, Michael W. <MStocker@labaton.com> wrote:

> So we are talking about have a global conversation at the same time as dealing with state street? Or start with state street, talk about how fact specific it is, and then reach future deals later (but soon)? I think that's risky, and that he will use state street for leverage.

**From:** Belfi, Eric J.
**Sent:** Tuesday, June 21, 2016 11:06 AM
**To:** Keller, Christopher J.; Stocker, Michael W.
**Cc:** Bradley, Garrett J.
**Subject:** RE: State Street
I agree on the historical stuff but for the future cases, I think we discussed something lower like 5% of lodestar and 10%. I also think we need to be a time limit on the agreement so we can reevaluate the situation.

**From:** Keller, Christopher J.
**Sent:** Tuesday, June 21, 2016 11:04 AM
**To:** Belfi, Eric J. <EBelfi@labaton.com>; Stocker, Michael W. <MStocker@labaton.com>
**Cc:** Bradley, Garrett J. <GBradley@labaton.com>
**Subject:** RE: State Street
We can't appear to be arbitrary. If we have a new deal for him then we have to discuss it. State Street can be a one off since it's not a securities class action and there are other relevant unique attributes. I like the idea of bringing him to the current best deal and that is 10% of our lodestar and 20% of our gravy. In most cases that will lead to a referral of about 15% and protects us in cases like spectrum where we only got a .7 on our time.



**Christopher J. Keller | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0853 | F: (212) 883-7053
E: ckeller@labaton.com | W: www.labaton.com



**From:** Belfi, Eric J.
**Sent:** Tuesday, June 21, 2016 11:00 AM
**To:** Keller, Christopher J.; Stocker, Michael W.
**Cc:** Bradley, Garrett J.
**Subject:** RE: State Street

1

TLF-SST-012527

I do not have a problem with that. However, we need to deal with other issue soon – it does not make sense to leave it outstanding.

We also have to deal with Spectrum. Since we are getting .68 on our time, should we reduce him to 14 percent – I will call to discuss this issue with him.

**From:** Keller, Christopher J.
**Sent:** Tuesday, June 21, 2016 10:58 AM
**To:** Stocker, Michael W. <MStocker@labaton.com>
**Cc:** Bradley, Garrett J. <GBradley@labaton.com>; Belfi, Eric J. <EBelfi@labaton.com>
**Subject:** RE: State Street

I'm fine with that



**Christopher J. Keller | Partner**

140 Broadway, New York, New York 10005

T: (212) 907-0853 | F: (212) 883-7053

E: ckeller@labaton.com | W: www.labaton.com



**From:** Stocker, Michael W.
**Sent:** Tuesday, June 21, 2016 10:45 AM
**To:** Keller, Christopher J.
**Cc:** Bradley, Garrett J.; Belfi, Eric J.
**Subject:** State Street

Chris I think Garrett should have a friendly convo with Damon just about SS without alluding directly to the global issues. I think it is not a good idea to inject the other stuff into this conversation.

When we get to the harder stuff I can go with whoever to talk about the rules, but let's wait for this to clear.

**Michael W. Stocker | Partner**

140 Broadway, New York, New York 10005

T: (212) 907-0882 | F: (212) 883-7082

E: mstocker@labaton.com | W: www.labaton.com

Confidential: Produced Pursuant to Court Order.                                                          TLF-SST-012528

# EX. 56

Message

| | |
|---|---|
| **From**: | Damon Chargois [damon@cmhllp.com] |
| **Sent**: | 4/25/2013 1:23:44 AM |
| **To**: | Garrett J. Bradley [gbradley@tenlaw.com] |
| **CC**: | Robert L. Lieff [RLIEFF@lchb.com]; Robert L. Lieff [rlieff@lieff.com]; Michael Thornton [MThornton@tenlaw.com]; Belfi, Eric J. [EBelfi@labaton.com]; Keller, Christopher J. [ckeller@labaton.com]; Daniel P. Chiplock [DCHIPLOCK@lchb.com] |
| **Subject**: | Re: State street fee regarding local counsel |

Thank you, Garrett.  Agreed.

Sent from my iPhone

On Apr 24, 2013, at 8:08 PM, "Garrett Bradley" <GBradley@tenlaw.com> wrote:

> Bob,
>
> As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to the local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System. Labaton has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to Labaton in the State Street FX class case before Judge Wolf.  Currently this amount would be 4% because of the agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the balance to be decided upon at a later date.  Obviously this may go up should Labaton receive an amount higher than 20%.
>
> We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be paid off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant to our agreement.
>
> The local asked that I copy him on this email so he will have confirmation of this agreement.  When we spoke to him he was agreeable to this as well.
>
> Garrett
>
>
> _____
>
>
>
> This e-mail and any files transmitted with it are confidential and are
>
> intended solely for the use of the individual or entity to whom they are
> addressed.  This communication may contain material protected by the
> attorney-client privilege. If you are not the intended recipient or the person
> responsible for delivering the e-mail to the intended recipient, be advised that
> you have received this e-mail in error and that any use, dissemination,
> forwarding, printing, or copying of this e-mail is strictly prohibited. If you
> have received this e-mail in error; please immediately notify us by telephone at
> (800) 431-4600. You will be reimbursed for reasonable costs incurred in
> notifying us.
>
>
>
> Please consider the environment before printing this email.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# EX. 57

Message
---

| **From**: | Lieff, Robert L. [RLIEFF@lchb.com] |
|---|---|
| **Sent**: | 4/25/2013 1:17:49 AM |
| **To**: | Garrett Bradley [GBradley@tenlaw.com]; Robert L. Lieff [rlieff@lieff.com]; Michael Thornton |
| | [MThornton@tenlaw.com]; Eric Belfi [ebelfi@labaton.com] |
| **CC**: | Damon Chargois Esq. [damon@cmhllp.com]; Christopher J. Keller Esq. [ckeller@labaton.com]; Chiplock, Daniel P. |
| | [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK] |
| **Subject**: | RE: State street fee regarding local counsel |

I am in full agreement.  Bob
_____

From: Garrett Bradley [GBradley@tenlaw.com]
Sent: Wednesday, April 24, 2013 6:07 PM
To: Lieff, Robert L.; Robert L. Lieff; Michael Thornton; Eric Belfi
Cc: Damon Chargois Esq.; Christopher J. Keller Esq.; Chiplock, Daniel P.
Subject: State street fee regarding local counsel

Bob,

As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to the
local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System.  Labaton
has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to Labaton
in the State Street FX class case before Judge Wolf.  Currently this amount would be 4% because of the
agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the balance to be
decided upon at a later date.  Obviously this may go up should Labaton receive an amount higher than 20%.

We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be paid
off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant to our
agreement.

The local asked that I copy him on this email so he will have confirmation of this agreement.  When we
spoke to him he was agreeable to this as well.

Garrett

_____

This e-mail and any files transmitted with it are confidential and are

intended solely for the use of the individual or entity to whom they are
addressed.  This communication may contain material protected by the
attorney-client privilege. If you are not the intended recipient or the person
responsible for delivering the e-mail to the intended recipient, be advised that
you have received this e-mail in error and that any use, dissemination,
forwarding, printing, or copying of this e-mail is strictly prohibited. If you
have received this e-mail in error; please immediately notify us by telephone at
(800) 431-4600. You will be reimbursed for reasonable costs incurred in
notifying us.


Please consider the environment before printing this email.


This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.

   LCHB-0053483

# EX. 58

| | |
|---|---|
| **From:** | Garrett Bradley |
| **Sent:** | Thursday, August 6, 2015 9:01 AM |
| **To:** | Robert L. Lieff |
| **Cc:** | Michael Thornton |
| **Subject:** | Fee discussions |

Bob,

I was thinking about our call this morning yesterday while working out and I thought it might be helpful to put things in writing so everyone can see what we at Thornton are thinking. As I have said, before we start being equal in state street we need to be on an even par in both cases. What I mean by that is, even though you had no client, jurisdiction or concept Mike Thornton went and fought for you, and Lieff the entity, by using his influence with Labaton to get you 20% of state street. As I said yesterday, who was looking out for his interests in Mellon? Where was the corresponding deal? There was discussion of the same deal when we were in CA but Hausfield, who you brought in, did not sign and then we got sent to the MDL. Then you brought in Ohio for leverage in the MDL and Mike asked you what our fee interests were. I know because I was pressing him on it. He told me you said "we are in it together". Let's put some numbers behind what I am saying.

Because of Mike's advocacy, and only Mike's advocacy, you have a minimum in State street.We both know what that number is will be subject to many factors. But even in a low scenario of a $60 million fee it could break down as follows:

$60 million fee:

$5,400,000 to Erisa
$3,000,000 to arkansas local

That leaves $51,600,000. For the sake of argument let's say Labaton sticks with the "we want half" that leaves $25,800,000. Under the deal we each get 20% of the $51,600,000 which is $10,320,000 each which equals $20,640,000. Leaving a balance of $5,160,000.

Your position is you want to give us 10% of Mellon but an equal split of the residual (and discussion with Labaton of coming off their "we want half"). In Mellon you have $20million in Lodestar and you want to get $30million. So we would get $2-3 million (plus our lodestar) in mellon only to give it back to you in state street by splitting the residual balance $5,160,000 50/50? Would you agree to this under these circumstances?

Here is how I propose we get to par. We fought for you to get at least $10,320,000 in state street and here is how I believe you should reciprocate:

Our lodestar $1.5 million- $2.5 million depending on Judge 20% of Lieff fee $4million-$6million depending on Judge (if you get Kessler to cover some that is your business) What we have or likely will get total from relator cases $1.5-$2 million

Gives us between $7 million and $9.5 million.

This gets us close enough to par with your $10,320,000 in state street. Then this is a basis for us to fight to get Labaton lower and certainly fair enough for us to split what ever the residual is. In our conversation, you keep trying to make up what you give us in Mellon back in state street and respectfully, that is unacceptable.

1

Confidential: Produced Pursuant to Court Order.

Also you raised that Chiplock said everything we provided in Mellon was already public.  It was public because of our filings in Virginia and Florida (which were copied by Kessler, a point we will need to make in our own fee application). You also said Dan was considering his own fee application in State Street.  The difference is we have real story to tell Judge Kaplan.  We did what he said, we changed an industry and the federal investigations followed not the other way around.  Lief can't tell a similar story to Judge Wolf in state street.  Also, we would have to take the position, and I suspect Labaton would as well, that if you do that the deal we have is invalidated.

I really do not want to have to do my own fee application as my friends at Lieff may get hurt and I don't want that. However I do want them to recall we are friends and hope they treat us accordingly.  I see no need to meet with Chiplock/Lesser but am happy to meet with you and Steve Fineman on Tuesday of next week perhaps for an early drink to see if we can come to a resolution and continue to work together on new projects in the future.  Mike T is available as well. Together our firms have done great work and I hope we can equally be respected for that.  Thanks for your time and effort.

Garrett

Confidential: Produced Pursuant to Court Order.                                                                    TLF-SST-040618

# EX. 59

Message

| From: | Garrett Bradley [GBradley@tenlaw.com] |
|---|---|
| Sent: | 8/6/2015 2:00:35 PM |
| To: | Lieff, Robert L. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=RLIEFF] |
| CC: | Michael Thornton [MThornton@tenlaw.com] |
| Subject: | Fee discussions |

Bob,

I was thinking about our call this morning yesterday while working out and I thought it might be helpful to put things in writing so everyone can see what we at Thornton are thinking.  As I have said, before we start being equal in state street we need to be on an even par in both cases.  What I mean by that is, even though you had no client, jurisdiction or concept Mike Thornton went and fought for you, and Lieff the entity, by using his influence with Labaton to get you 20% of state street.  As I said yesterday, who was looking out for his interests in Mellon?  Where was the corresponding deal?  There was discussion of the same deal when we were in CA but Hausfield, who you brought in, did not sign and then we got sent to the MDL.  Then you brought in Ohio for leverage in the MDL and Mike asked you what our fee interests were.  I know because I was pressing him on it.  He told me you said "we are in it together".  Let's put some numbers behind what I am saying.

Because of Mike's advocacy, and only Mike's advocacy, you have a minimum in State street.We both know what that number is will be subject to many factors.  But even in a low scenario of a $60 million fee it could break down as follows:

$60 million fee:

$5,400,000 to Erisa
$3,000,000 to arkansas local

That leaves $51,600,000.  For the sake of argument let's say Labaton sticks with the "we want half" that leaves $25,800,000.  Under the deal we each get 20% of the $51,600,000 which is $10,320,000 each which equals $20,640,000.  Leaving a balance of $5,160,000.

Your position is you want to give us 10% of Mellon but an equal split of the residual (and discussion with Labaton of coming off their "we want half").  In Mellon you have $20million in Lodestar and you want to get $30million.  So we would get $2-3 million (plus our lodestar) in mellon only to give it back to you in state street by splitting the residual balance $5,160,000 50/50?  Would you agree to this under these circumstances?

Here is how I propose we get to par.  We fought for you to get at least $10,320,000 in state street and here is how I believe you should reciprocate:

Our lodestar $1.5 million- $2.5 million depending on Judge
20% of Lieff fee $4million-$6million depending on Judge (if you get Kessler to cover some that is your business)
What we have or likely will get total from relator cases $1.5-$2 million

Gives us between $7 million and $9.5 million.

This gets us close enough to par with your $10,320,000 in state street.  Then this is a basis for us to fight to get Labaton lower and certainly fair enough for us to split what ever the residual is.  In our conversation, you keep trying to make up what you give us in Mellon back in state street and respectfully, that is unacceptable.

Also you raised that Chiplock said everything we provided in Mellon was already public.  It was public because of our filings in Virginia and Florida (which were copied by Kessler, a point we will need to make in our own fee application).  You also said Dan was considering his own fee application in State Street.  The difference is we have real story to tell Judge Kaplan.  We did what he said, we changed an industry and the federal investigations followed not the other way around.  Lief can't tell a similar story to Judge Wolf in state street.  Also, we would have to take the position, and I suspect Labaton would as well, that if you do that the deal we have is invalidated.

I really do not want to have to do my own fee application as my friends at Lieff may get hurt and I don't want that.  However I do want them to recall we are friends and hope they treat us accordingly.  I see no need to meet with Chiplock/Lesser but am happy to meet with you and Steve Fineman on Tuesday of next week perhaps for an early drink to see if we can come to a resolution and continue to work together on new projects in the future.  Mike T is available as well.  Together our firms have done great work and I hope we can equally be respected for that.  Thanks for your time and effort.

Garrett

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053492

# EX. 60

Message

| | |
|---|---|
| **From**: | Garrett Bradley [GBradley@tenlaw.com] |
| **Sent**: | 8/28/2015 6:17:58 PM |
| **To**: | Lieff, Robert L. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=RLIEFF] |
| **CC**: | Michael Thornton [MThornton@tenlaw.com]; Chiplock, Daniel P. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK]; rlieff@lieff.com |
| **Subject**: | Re: State Street |

Bob,

I am driving but took a quick look at your email and pulled over to type this. I think you are misunderstood. I have not agreed that it would be equitable to split the balance of the forty percent the way you described below. What I have said is that may be a fair approach depending on the outcome of our fee in the Mellon matter. If we are treated fairly there, then we will do all we can to treat you fairly in the state street matter. As I have said before, because of Mike Thornton's advocacy, you are guaranteed at least 20% of the State Street case in which you have no client and did not develop the concept. Yet, we have no corresponding protection in the Mellon matter. Happy to discuss further at any time.

Garrett

On Aug 28, 2015, at 2:05 PM, Lieff, Robert L. <RLIEFF@lchb.com> wrote:

Garrett,

I called and suggested that we have a meeting together with the Labaton people to talk about putting in writing an understanding of the fee division in this case.

You, Mike and I have discussed the State Street fee division and have focused on the existing verbal understanding that was reached on November 9, 2010, with Chris Keller. We agreed that among the three firms we will each have a 20% interest in the fee with the balance to be divided later. Of course, we also have to factor in the 9% that ERISA counsel get pursuant to written agreement and a provision for Arkansas local counsel.

You and I have agreed that it would be equitable to divide the balance of the fee with Labaton getting 50% and each of our firms 25%. This would result in a fee division as follows:

| | | |
|---|---|---|
| Labaton | 33.0 | (20 + 13) |
| Thornton | 26.5 | (20 + 6.5) |
| Lieff Cabraser | 26.5 | (20 + 6.5) |
| ERISA | 9.0 | |
| Arkansas Local | 5.0 | |
| | 100.0% | |

If we put the above into an agreement among the three firms, that would certainly provide protection for everyone.

Bob

&lt;image001.gif&gt;

**Robert L. Lieff**
Of Counsel
rlieff@lchb.com

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

t 415.956.1000
f 415.956.1008
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
www.lieffcabraser.com

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053494

# EX. 61

| | |
|---|---|
| **From:** | Chiplock, Daniel P. <DCHIPLOCK@lchb.com> |
| **Sent:** | Sunday, August 30, 2015 12:50 PM |
| **To:** | Michael Thornton; Garrett Bradley |
| **Cc:** | Lieff, Robert L.; rlieff@lieff.com; Michael Lesser |
| **Subject:** | RE: State Street |

Excellent and I would expect and anticipate nothing less, Mike. I just know what some of our colleagues can do when presented with an easy target in order to hold up the process, and we don't want to do that. Thanks.

-----Original Message-----
From: Michael Thornton [mailto:MThornton@tenlaw.com]
Sent: Sunday, August 30, 2015 12:45 PM
To: Chiplock, Daniel P.; Garrett Bradley
Cc: Lieff, Robert L.; rlieff@lieff.com; Michael Lesser
Subject: Re: State Street

Thank you for the tip Dan. I did say something like that on the call, but preceded it by saying it was a guess and that I would have to ask Mike Lesser for the actual figure at that point which of course is not complete as with the other firms. I appreciate your concern and I guess I can only assure you that it generally our policy to truthful and accurate hour claims.

 Original Message
From: Chiplock, Daniel P.
Sent: Sunday, August 30, 2015 12:24 PM
To: Garrett Bradley
Cc: Lieff, Robert L.; Michael Thornton; rlieff@lieff.com
Subject: RE: State Street

No problem. It may be tomorrow since I have to go back to archives.

In the meantime, while we're on the subject of credibility, I want to point out that we need to be consistent and credible with our lodestar reporting in State Street. We are gathering final lodestar reports now, but I heard third-hand that Mike recently said on a call (that I wasn't on) that Thornton Law Firm was showing $14 million. That number does not comport with the hours Mike Lesser told me for Thornton as of June 29 (around 12,750), which make more sense given what we know about the work that was done. I am hopeful Mike T. simply misspoke or was guessing when he said $14 million and that we are not going to suddenly see an additional 12,000 hours mysteriously appear on Thornton Law Firm's behalf. I would expect that you would object if LCHB or Labaton tried something like that, and ERISA counsel certainly will (and tie up this process as long as possible) if they suspect anything remotely amiss on that front. Let's not make problems for ourselves that we don't need. Also recognize that your reviewers were all housed outside of your firm and their respective overhead and facilities expenses were paid for by others, which we were happy to do as a courtesy. Thanks.

-----Original Message-----
From: Garrett Bradley [mailto:GBradley@tenlaw.com]
Sent: Sunday, August 30, 2015 10:43 AM
To: Chiplock, Daniel P.
Cc: Lieff, Robert L.; Michael Thornton; rlieff@lieff.com
Subject: Re: State Street

1

Confidential: Produced Pursuant to Court Order.

TLF-SST-038574

That would be helpful thank you.

Garrett

> On Aug 30, 2015, at 10:30 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:
>
> I don't look past that point, Garrett. But you need to also recognize that you are only in the BNYM class case because of us.
>
> I guess I'll gather the emails etc concerning the assignments that were given to your firm. As if that's going to change your position.
>
> Sent from my iPhone
>
> On Aug 30, 2015, at 10:19 AM, Garrett Bradley <GBradley@tenlaw.com<mailto:GBradley@tenlaw.com>> wrote:
>
> Dan,
>
> Thanks for the email. I think we will have to agree to disagree as you keep looking past the fact that but for Mike Thornton you would not be in the state street case just like Labaton is not in BONY.
>
> Can you clarify what you mean by we did not "get the work done" as you indicated. That has never been specified and really should be to be deemed credible. Thanks.
>
> Garrett
>
> On Aug 30, 2015, at 9:04 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
>
> Garrett,
>
> Thanks for your email and I actually think it's useful so that Mike and Bob can participate in this.
>
> This idea of "protection" in BNYM is where I think we keep talking past each other. The bottom line is that LCHB is the least protected of all in that case. This is the fact that has kept me up at night for 2.5 years while we've continued pouring lodestar into that case (because we had to). We invested the most in order to try to get a class certified there and to sufficiently man 110 depositions, defend counterclaims, etc., but if Judge Kaplan takes a negative view of the value of document review/analysis (our arguments to the contrary notwithstanding), then LCHB will get hit the hardest. You are totally shielded from this because you didn't invest in document review. In other words, LCHB has a real risk of actually losing money in BNYM. You have virtually no risk of that. If Thornton is not treated "fairly" in BNYM by the Court it will be because nobody (least of all LCHB) was treated "fairly." It's not clear to me what it is you expect in that circumstance.
>
> The $10 million in State Street that you mention below also does not make up for LCHB's investment in that case. And we've certainly contributed our share to the result in State Street, having litigated BNYM (thus substantially increasing the value of State Street) and developed the ch. 93A theory (the most readily certifiable claim in State Street, and by far the most valuable).
>
> Dan
>
> From: Garrett Bradley [mailto:GBradley@tenlaw.com]
> Sent: Friday, August 28, 2015 3:01 PM

2

Confidential: Produced Pursuant to Court Order.                          TLF-SST-038575

> To: Chiplock, Daniel P.
> Cc: Lieff, Robert L.; Michael Thornton; rlieff@lieff.com<mailto:rlieff@lieff.com>
> Subject: Re: State Street
>
> Dan,
>
> I tried to call you but you are out. I think these things are best discussed rather than emailed so please call my cell when you can 6174134892 as I do not have yours.
>
> However a few points. I do not dismiss your efforts in Mellon but your guaranteed percentage was established years prior to a Mellon result. What I am pointing out is the inequities of our different positions. In Mellon, when we had created that case by developing the fx case all that we got was some work that resulted in $1.5 million in time. Also please elaborate on your statement that "the work was not getting done".
>
> Now contrast that to state street where you had no client and no concept (and Mellon was years from setting) and Mike Thornton demands that you get a floor of 20% which is probably worth about $10 million.
>
> You must agree you are in a much better position in state street than we are in Mellon. As I have said to Bob, we are only looking for a fair outcome in these matters. I think you would agree we have protected you better in state street than we are protected in Mellon. Once we have an idea of what our Mellon number looks like then we can discuss how to approach the balance of the 40% with Labaton .
>
> Garrett
>
> On Aug 28, 2015, at 2:34 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
> Garrett,
>
> I know you didn't really mean to diminish LCHB's role in creating the result in BNY Mellon, at extraordinary risk to itself, which in turn doubled the value of State Street. You need to know that we advocated for you guys too, getting you a role in the BNYM class case (and pushing back against several co-counsel in the process) when you weren't actually owed one. I also gave your firm more assignments than others at the outset in BNYM, until it became clear that the work simply wasn't getting done. In other words, we've each tried to look out for the other in the past. This has been far from a one-way street.
>
> As you know, Judge Kaplan controls everyone's fate in BNYM and LCHB has the most risk before him, having invested the most. We asked for a multiplier for your firm that is much larger than anyone else's, and I really, truly hope that he grants that request.
>
> Thanks,
>
> Dan
>
> From: Garrett Bradley [mailto:GBradley@tenlaw.com]
> Sent: Friday, August 28, 2015 2:18 PM
> To: Lieff, Robert L.
> Cc: Michael Thornton; Chiplock, Daniel P.; rlieff@lieff.com<mailto:rlieff@lieff.com>
> Subject: Re: State Street
>
> Bob,
> I am driving but took a quick look at your email and pulled over to type this. I think you are misunderstood. I have not agreed that it would be equitable to split the balance of the forty percent the way you described below. What I have said is that may be a fair approach depending on the outcome of our fee in the Mellon matter. If we are treated fairly

3

Confidential: Produced Pursuant to Court Order.                                          TLF-SST-038576

there, then we will do all we can to treat you fairly in the state street matter. As I have said before, because of Mike Thornton's advocacy, you are guaranteed at least 20% of the State Street case in which you have no client and did not develop the concept. Yet, we have no corresponding protection in the Mellon matter. Happy to discuss further at any time.

>

> Garrett

>

> On Aug 28, 2015, at 2:05 PM, Lieff, Robert L. <RLIEFF@lchb.com<mailto:RLIEFF@lchb.com>> wrote:

> Garrett,

>

> I called and suggested that we have a meeting together with the Labaton people to talk about putting in writing an understanding of the fee division in this case.

>

> You, Mike and I have discussed the State Street fee division and have focused on the existing verbal understanding that was reached on November 9, 2010, with Chris Keller. We agreed that among the three firms we will each have a 20% interest in the fee with the balance to be divided later. Of course, we also have to factor in the 9% that ERISA counsel get pursuant to written agreement and a provision for Arkansas local counsel.

>

> You and I have agreed that it would be equitable to divide the balance of the fee with Labaton getting 50% and each of our firms 25%. This would result in a fee division as follows:

>

> Labaton 33.0 (20 + 13)

> Thornton 26.5 (20 + 6.5)

> Lieff Cabraser 26.5 (20 + 6.5)

> ERISA 9.0

> Arkansas Local 5.0

> 100.0%

>

> If we put the above into an agreement among the three firms, that would certainly provide protection for everyone.

>

> Bob

>

> <image001.gif>

>

> Robert L. Lieff

> Of Counsel

> rlieff@lchb.com<mailto:rlieff@lchb.com>

> t 415.956.1000

> f 415.956.1008

> Lieff Cabraser Heimann & Bernstein, LLP

> 275 Battery Street, 29th Floor

> San Francisco, CA 94111-3339

> www.lieffcabraser.com<http://www.lieffcabraser.com>

>

>

>

>

>

>

> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

4

Confidential: Produced Pursuant to Court Order.                    TLF-SST-038577

> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.


This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

Confidential: Produced Pursuant to Court Order.

TLF-SST-038578

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.

TLF-SST-038579

# EX. 62

| From: | Chiplock, Daniel P. <DCHIPLOCK@lchb.com> |
|---|---|
| Sent: | Friday, August 28, 2015 3:02 PM |
| To: | 'Sucharow, Lawrence' |
| Cc: | Garrett J. Bradley; Michael Thornton; Lieff, Robert L. |
| Subject: | RE: SST--Proposed Revision to Term Sheet for DOL Deal |

If the Arkansas and ERISA fees didn't come off the top, I guess the split would look like this:
&
Labaton& - 20%
LCHB – 20%
Thornton – 20%
ERISA – 9%
Arkansas – 5%
Labaton/LCHB/Thornton – 26%
&
&
If the Arkansas and ERISA fees do come off the top, I guess the split looks like this:
&
ERISA – 9%
Arkansas – 5%
Labaton – 17.2%
LCHB – 17.2%
Thornton – 17.2%
Labaton/LCHB/Thornton – 34.4%
&
&
I'm not the math wizard, so please correct me if anyone comes up with different figures.
&

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 3:27 PM
**To:** Chiplock, Daniel P.
**Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
&

Just my own thinking on this but I think the deal with them would be that their percentage does come off the top (although what the top is is another question). I can't imagine how else it would be calculated since all the other fees are two customer counsel.

Sent from my iPhone

On Aug 28, 2015, at 2:11 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:

Actually one wrinkle I'm not sure about is how ERISA and local Arkansas counsel fits in – I had thought that their payments would not come off the top and therefore would not result in a reduction of each customer firm's 20% - do you know what I mean?& You may be saying something different from that below, which may be why it'd be useful to iron it out.
&

1

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 1:59 PM
**To:** Chiplock, Daniel P.
**Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
&

Dan sorry for that last email that I didn't spellcheck.&

Basically what I'm trying to say is I understand the basic agreement to be that after payment of all other counsel, our three firms shall each receive 20%, with the distribution of the balance of 40% to be determined later.
&

If that is the agreement you are referring to, I can confirm it. Let me know.&

Larry


Sent from my iPhone

On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:

> Mike, Garrett – Hope you're well – please see below.& If we can figure this out early next week that may help speed the process.
>
> Thanks,
> &
> Dan
> &
>
> **From:** Chiplock, Daniel P.
> **Sent:** Friday, August 28, 2015 1:33 PM
> **To:** 'Sucharow, Lawrence'
> **Cc:** Zeiss, Nicole; Lieff, Robert L.
> **Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> The purpose of my email was just to get your reaction, Larry, since these are your drafts.& Thank you for responding quickly, and for giving me your reaction.& I would love to include them so we can move forward promptly.& I'll re-send.&
> &
>
> **From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> **Sent:** Friday, August 28, 2015 1:28 PM
> **To:** Chiplock, Daniel P.
> **Cc:** Zeiss, Nicole; Lieff, Robert L.
> **Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> I don't know why you left the Thornton firm off this email since they are party to any understanding we have and are therefore he sensual to any memorialization of that understanding. & If you more willing to resend your email and include them,we can see if there is any disagreement as to what our understanding is/was.
> Larry
>
>
> Sent from my iPhone
>
> On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P. &<DCHIPLOCK@lchb.com&>wrote:
>
>> Larry and Nicole:
>> &

2

Confidential: Produced Pursuant to Court Order.                    TLF-SST-053118

Attached are my redlines to the preliminary approval order and final judgment.& These edits are consistent with the Court's January 2012 order concerning leadership structure.&

&

I'm emailing just you (and copying Bob) so as to try not to make a big thing over this, but I do think it's appropriate to memorialize what the fee allocation amongst customer class counsel is going to be (consistent with the understanding that the firms have been operating under for a couple years now) before we proceed much further.& & I think we'd be willing to support Lead Counsel having final authority over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united front against a perpetual troublemaker like McTigue— which should be in everyone's interest--provided we had some basic written comfort ourselves.& I don't think it's too early for that, given the interest in seeing the funds come in this year.

&

Thanks,

Dan

&

**From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
**Sent:** Friday, August 28, 2015 9:53 AM
**To:** Chiplock, Daniel P.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
&

Thank you!

&

&

&

&

&

&

&<image001.jpg&>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 |&  F: (212) 883-7067
E: nzeiss@labaton.com&   |&  W: www.labaton.com
&<image002.gif&>& &<image003.gif&>& &<image004.gif&>

&

**From:** Chiplock, Daniel P. [mailto:DCHIPLOCK@lchb.com]
**Sent:** Friday, August 28, 2015 9:29 AM
**To:** Sucharow, Lawrence
**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
&

OK, sounds good.& I will also get you whatever edits I have to the settlement docs by noon.

&

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 9:28 AM
**To:** Chiplock, Daniel P.

3

Confidential: Produced Pursuant to Court Order.

**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal
&
I am speaking to Paine today at around 10 AM to both report to him and get his update.
I'll report back and advise whether we should send the revised term sheet. I expect we should but let's hold off for another hour.

Sent from my iPhone

On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P.
&<DCHIPLOCK@lchb.com&>wrote:

> This looks OK to me, thanks.& I'm happy to send it (after you've done the other redline) to Paine, if you like.& Or someone else can, no matter.
> &
> ---
> **From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
> **Sent:** Thursday, August 27, 2015 3:27 PM
> **To:** Lynn Sarko; 'rlieff@lieff.com'; Chiplock, Daniel P.; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
> **Cc:** Rogers, Michael H.; Sucharow, Lawrence; Goldsmith, David
> **Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
> &
> Dear all,
> &
> We've had some additional exchanges about the term sheet and, specifically, para 8(n).& I believe the attached draft resolves those issues and that there is consensus that the attached accurately reflects the basic DOL fee deal.& If you disagree, please let us know asap.
> &
> When someone wants to send this to Paine, or the DOL, I will need a run a different redline for them.
> &
> Thanks
> &
> &
> &
> &
> &
> &
> &
> &<image001.jpg&>
> **Nicole M. Zeiss | Partner**
> 140 Broadway, New York, New York 10005
> T: (212) 907-0867 |&  F: (212) 883-7067
> E: nzeiss@labaton.com&   |&  W: www.labaton.com

4

&
&<image002.jpg&>& &<image003.jpg&>& &<image004
.jpg&>
&

___

**From:** Zeiss, Nicole
**Sent:** Wednesday, August 26, 2015 5:09 PM
**To:** Sucharow, Lawrence; Lynn Sarko; Goldsmith, David;
'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman';
'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for
DOL Deal
&
Attached is the term sheet showing the changes
discussed below, plus one additional change to para
8(n) that might help.
&
Thanks
&
&
&
&
&
&
&
&<image005.jpg&>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 |& F: (212) 883-7067
E: nzeiss@labaton.com& |& W: www.labaton.com
&
&<image006.jpg&>& &<image007.jpg&>& &<image008
.jpg&>
&

___

**From:** Sucharow, Lawrence
**Sent:** Wednesday, August 26, 2015 4:34 PM
**To:** Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com';
Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley;
Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian
McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for
DOL Deal
&
Then we can probably forget my proposed changes.
&

___

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 4:26 PM
**To:** Sucharow, Lawrence; Goldsmith, David;
'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman';
'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.

5

**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
&
Sure.& & If it works for them – its fine with me
&
**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Wednesday, August 26, 2015 1:25 PM
**To:** Lynn Sarko &<lsarko@KellerRohrback.com&>; Goldsmith, David &<dgoldsmith@labaton.com&>; 'rlieff@lieff.com' &<rlieff@lieff.com&>; Daniel P. Chiplock &<DCHIPLOCK@lchb.com&>; Michael Thornton &<MThornton@tenlaw.com&>; Garrett J. Bradley &<gbradley@tenlaw.com&>; Michael Lesser &<MLesser@tenlaw.com&>; 'Evan Hoffman' &<EHoffman@tenlaw.com&>; 'Kravitz, Carl S.' &<ckravitz@zuckerman.com&>; 'Brian McTigue' &<bmctigue@mctiguelaw.com&>
**Cc:** Zeiss, Nicole &<NZeiss@labaton.com&>; Rogers, Michael H. &<MRogers@labaton.com&>
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
&
Can we leave para 8(n) the general way it is and protect the DOL through the express provision of para 12 limiting fees charged to ERISA allocation to $10.9 million?
&

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 3:42 PM
**To:** Goldsmith, David; 'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Sucharow, Lawrence; Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal
&
David
Thanks for sending this.& Sorry, I had misunderstood what you were saying on our call earlier today.
&
Two things:
&

6

TLF-SST-053122

1.& I do think the language you proposed for paragraph 12 works—but just change it to $10.9 million.

2. On paragraph 8(n)- the problem is the word "fees"— since the DOL has given us a hard number for ERISA fees—that won't be going up or down.& & So— question—can we get rid of the word "fees" in this paragraph—does it still work?

&

What do you think??

&

Lynn

&

**Lynn Lincoln Sarko**
Managing Partner
&
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com
&

---

**From:** Goldsmith, David [mailto:dgoldsmith@labaton.com]
**Sent:** Wednesday, August 19, 2015 2:59 PM
**To:** 'rlieff@lieff.com' &<rlieff@lieff.com&>; Daniel P. Chiplock &<DCHIPLOCK@lchb.com&>; Michael Thornton &<MThornton@tenlaw.com&>; Garrett J. Bradley &<gbradley@tenlaw.com&>; Michael Lesser &<MLesser@tenlaw.com&>; 'Evan Hoffman' &<EHoffman@tenlaw.com&>; Lynn Sarko &<lsarko@KellerRohrback.com&>; 'Kravitz, Carl S.' &<ckravitz@zuckerman.com&>; 'Brian McTigue' &<bmctigue@mctiguelaw.com&>
**Cc:** Sucharow, Lawrence &<LSucharow@labaton.com&>; Zeiss, Nicole &<NZeiss@labaton.com&>; Rogers, Michael H. &<MRogers@labaton.com&>
**Subject:** SST--Proposed Revision to Term Sheet for DOL Deal

&

All:& The below reflects our proposed revisions to the Term Sheet (in **red boldface**) to reflect the imminent deal with the DOL on fees and expenses as certain of us discussed this morning (DOL has advised that they want the deal memorialized in the Term Sheet).& Please comment.& Thanks.

&

&

        8(n).& & & & & & &  **Plan of Allocation**. & . . .
The amount allocated to the ERISA Plans and Investment Companies and other Settlement Class Members shall be increased or decreased by their proportional share (with respect to the Class Settlement

7

TLF-SST-053123

Amount) of any interest, costs (including costs of notice and administration), expenses (including taxes), and fees and expenses of Plaintiffs' Counsel obtained or paid pursuant to permission of the Court.& **However, notice and administration expenses attributable solely to the claims of Class Members categorized as Group Trusts shall be paid solely out of the ERISA allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and shall not be paid out of the Class Settlement Amount.**

&

12.& & & & & & & & **Plaintiffs' Counsel's Attorneys' Fees and Expenses.**& & & & & Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon award by the Court into an escrow account governed by an escrow agreement between Interim Lead Counsel, SSBT and a bank or other institution agreed upon by SSBT and Interim Lead Counsel (the "Interim Lead Counsel Escrow Account"), notwithstanding any appeals of the Settlement or the fee and expense award.& Plaintiffs' Counsel ~~shall~~ **may** apply for their fees and expenses and any service awards for Plaintiffs against the entire Class Settlement Amount, **but in no event shall more than Ten Million Nine Hundred Thousand Dollars ($10,900,000.00) in fees be paid out of the $60 million portion of the Class Settlement Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.** & In the event that the Effective Date does not occur or SSBT promptly provides written notice representing in good faith that the Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement, and/or SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be obliged to pay to SSBT all amounts paid to them from the Interim Lead Counsel Escrow Account within fourteen (14) business days.& The prevailing party in any action to collect any amount due under this paragraph shall be entitled to recover interest and all of its costs of collection, including attorneys' fees.& Should the fee and expense award be reduced by the Court or on appeal, all such fees and expenses received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid to the Class Escrow Account, along with interest at the Class Escrow Account rate of interest.

&

&

&

&

&

8

TLF-SST-053124

&

&<image005.jpg&>

**David J. Goldsmith | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com&   | & W: www.labaton.com
&

&<image006.jpg&>& & &<image006.jpg&>& & &<image006.jpg&>

&

***Privilege and Confidentiality Notice***

This electronic message contains information that is
(a) LEGALLY PRIVILEGED, PROPRIETARY IN
NATURE, OR OTHERWISE PROTECTED BY
LAW FROM DISCLOSURE, and (b) intended only
for the use of the Addressee(s) named herein. If you
are not the Addressee(s), or the person responsible
for delivering this to the Addressee(s), you are
hereby notified that reading, copying, or distributing
this message is prohibited. If you have received this
electronic mail message in error, please contact us
immediately at 212-907-0700 and take the steps
necessary to delete the message completely from
your computer system. Thank you.

&

This message is intended for the named recipients
only. It may contain information protected by the
attorney-client or work-product privilege. If you
have received this email in error, please notify the
sender immediately by replying to this email. Please
do not disclose this message to anyone and delete
the message and any attachments. Thank you.

This message is intended for the named recipients only. It may
contain information protected by the attorney-client or work-
product privilege. If you have received this email in error, please
notify the sender immediately by replying to this email. Please do
not disclose this message to anyone and delete the message and
any attachments. Thank you.

This message is intended for the named recipients only. It may
contain information protected by the attorney-client or work-
product privilege. If you have received this email in error, please

Confidential: Produced Pursuant to Court Order.

TLF-SST-053125

notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

&<LCHB_iManage_1271399_1.DOC&>

&<LCHB_iManage_1271400_1.DOCX&>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

&<LCHB_iManage_1271399_1.DOC&>

&<LCHB_iManage_1271400_1.DOCX&>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

Confidential: Produced Pursuant to Court Order.                              TLF-SST-053126

# EX. 63

Message

| | |
|---|---|
| **From**: | Garrett Bradley [GBradley@tenlaw.com] |
| **Sent**: | 8/28/2015 8:04:28 PM |
| **To**: | Chiplock, Daniel P. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK] |
| **CC**: | Sucharow, Lawrence [LSucharow@labaton.com]; Michael Thornton [MThornton@tenlaw.com]; Lieff, Robert L. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=RLIEFF] |
| **Subject**: | Re: SST--Proposed Revision to Term Sheet for DOL Deal |

The Arkansas fee is still being negotiated but we hope to have it down to 5%.

Garrett

On Aug 28, 2015, at 4:02 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:
If the Arkansas and ERISA fees didn't come off the top, I guess the split would look like this:

Labaton - 20%
LCHB – 20%
Thornton – 20%
ERISA – 9%
Arkansas – 5%
Labaton/LCHB/Thornton – 26%


If the Arkansas and ERISA fees do come off the top, I guess the split looks like this:

ERISA – 9%
Arkansas – 5%
Labaton – 17.2%
LCHB – 17.2%
Thornton – 17.2%
Labaton/LCHB/Thornton – 34.4%


I'm not the math wizard, so please correct me if anyone comes up with different figures.

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 3:27 PM
**To:** Chiplock, Daniel P.
**Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal

Just my own thinking on this but I think the deal with them would be that their percentage does come off the top (although what the top is is another question). I can't imagine how else it would be calculated since all the other fees are two customer counsel.

Sent from my iPhone

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053513

On Aug 28, 2015, at 2:11 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:

Actually one wrinkle I'm not sure about is how ERISA and local Arkansas counsel fits in — I had thought that their payments would not come off the top and therefore would not result in a reduction of each customer firm's 20% - do you know what I mean?  You may be saying something different from that below, which may be why it'd be useful to iron it out.

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 1:59 PM
**To:** Chiplock, Daniel P.
**Cc:** Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal

Dan sorry for that last email that I didn't spellcheck.
Basically what I'm trying to say is I understand the basic agreement to be that after payment of all other counsel, our three firms shall each receive 20%, with the distribution of the balance of 40% to be determined later.

If that is the agreement you are referring to, I can confirm it. Let me know.
Larry

Sent from my iPhone

On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:

Mike, Garrett – Hope you're well – please see below.  If we can figure this out early next week that may help speed the process.

Thanks,

Dan

**From:** Chiplock, Daniel P.
**Sent:** Friday, August 28, 2015 1:33 PM
**To:** 'Sucharow, Lawrence'
**Cc:** Zeiss, Nicole; Lieff, Robert L.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

The purpose of my email was just to get your reaction, Larry, since these are your drafts.  Thank you for responding quickly, and for giving me your reaction.  I would love to include them so we can move forward promptly.  I'll re-send.

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 1:28 PM
**To:** Chiplock, Daniel P.
**Cc:** Zeiss, Nicole; Lieff, Robert L.
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal

I don't know why you left the Thornton firm off this email since they are party to any understanding we have and are therefore he sensual to any memorialization of that understanding.  If you more willing to resend your email and include them,we can see if there is any disagreement as to what our understanding is/was.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Larry

Sent from my iPhone

On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:

Larry and Nicole:

Attached are my redlines to the preliminary approval order and final judgment.  These edits are consistent with the Court's January 2012 order concerning leadership structure.

I'm emailing just you (and copying Bob) so as to try not to make a big thing over this, but I do think it's appropriate to memorialize what the fee allocation amongst customer class counsel is going to be (consistent with the understanding that the firms have been operating under for a couple years now) before we proceed much further.  I think we'd be willing to support Lead Counsel having final authority over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united front against a perpetual troublemaker like McTigue—which should be in everyone's interest--provided we had some basic written comfort ourselves.  I don't think it's too early for that, given the interest in seeing the funds come in this year.

Thanks,
Dan

**From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
**Sent:** Friday, August 28, 2015 9:53 AM
**To:** Chiplock, Daniel P.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

Thank you!

<image001.jpg>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 | F: (212) 883-7067
E: nzeiss@labaton.com | W: www.labaton.com

<image002.gif> <image003.gif> <image004.gif>

**From:** Chiplock, Daniel P. [mailto:DCHIPLOCK@lchb.com]
**Sent:** Friday, August 28, 2015 9:29 AM
**To:** Sucharow, Lawrence
**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053515

OK, sounds good. I will also get you whatever edits I have to the settlement docs by noon.

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Friday, August 28, 2015 9:28 AM
**To:** Chiplock, Daniel P.
**Cc:** Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com; Michael Thornton; Garrett J. Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith, David
**Subject:** Re: SST--Proposed Revision to Term Sheet for DOL Deal

I am speaking to Paine today at around 10 AM to both report to him and get his update.
I'll report back and advise whether we should send the revised term sheet. I expect we should but let's hold off for another hour.

Sent from my iPhone

On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com> wrote:
This looks OK to me, thanks. I'm happy to send it (after you've done the other redline) to Paine, if you like. Or someone else can, no matter.

**From:** Zeiss, Nicole [mailto:NZeiss@labaton.com]
**Sent:** Thursday, August 27, 2015 3:27 PM
**To:** Lynn Sarko; 'rlieff@lieff.com'; Chiplock, Daniel P.; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Rogers, Michael H.; Sucharow, Lawrence; Goldsmith, David
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

Dear all,

We've had some additional exchanges about the term sheet and, specifically, para 8(n). I believe the attached draft resolves those issues and that there is consensus that the attached accurately reflects the basic DOL fee deal. If you disagree, please let us know asap.

When someone wants to send this to Paine, or the DOL, I will need a run a different redline for them.

Thanks

<image001.jpg>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 | F: (212) 883-7067
E: nzeiss@labaton.com | W: www.labaton.com

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**From:** Zeiss, Nicole
**Sent:** Wednesday, August 26, 2015 5:09 PM
**To:** Sucharow, Lawrence; Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

Attached is the term sheet showing the changes discussed below, plus one additional change to para 8(n) that might help.

Thanks

<image005.jpg>
**Nicole M. Zeiss | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0867 | F: (212) 883-7067
E: nzeiss@labaton.com | W: www.labaton.com

<image006.jpg> <image007.jpg> <image008.jpg>

**From:** Sucharow, Lawrence
**Sent:** Wednesday, August 26, 2015 4:34 PM
**To:** Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

Then we can probably forget my proposed changes.

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 4:26 PM
**To:** Sucharow, Lawrence; Goldsmith, David; 'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

Sure.  If it works for them – its fine with me

**Lynn Lincoln Sarko**
Managing Partner

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com

**From:** Sucharow, Lawrence [mailto:LSucharow@labaton.com]
**Sent:** Wednesday, August 26, 2015 1:25 PM
**To:** Lynn Sarko <lsarko@KellerRohrback.com>; Goldsmith, David <dgoldsmith@labaton.com>; 'rlieff@lieff.com' <rlieff@lieff.com>; Daniel P. Chiplock <DCHIPLOCK@lchb.com>; Michael Thornton <MThornton@tenlaw.com>; Garrett J. Bradley <gbradley@tenlaw.com>; Michael Lesser <MLesser@tenlaw.com>; 'Evan Hoffman' <EHoffman@tenlaw.com>; 'Kravitz, Carl S.' <ckravitz@zuckerman.com>; 'Brian McTigue' <bmctigue@mctiguelaw.com>
**Cc:** Zeiss, Nicole <NZeiss@labaton.com>; Rogers, Michael H. <MRogers@labaton.com>
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

Can we leave para 8(n) the general way it is and protect the DOL through the express provision of para 12 limiting fees charged to ERISA allocation to $10.9 million?

**From:** Lynn Sarko [mailto:lsarko@KellerRohrback.com]
**Sent:** Wednesday, August 26, 2015 3:42 PM
**To:** Goldsmith, David; 'rlieff@lieff.com'; Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
**Cc:** Sucharow, Lawrence; Zeiss, Nicole; Rogers, Michael H.
**Subject:** RE: SST--Proposed Revision to Term Sheet for DOL Deal

David
Thanks for sending this.  Sorry, I had misunderstood what you were saying on our call earlier today.

Two things:

1. I do think the language you proposed for paragraph 12 works—but just change it to $10.9 million.
2. On paragraph 8(n)- the problem is the word "fees"—since the DOL has given us a hard number for ERISA fees—that won't be going up or down.   So—question—can we get rid of the word "fees" in this paragraph—does it still work?

What do you think??

Lynn

**Lynn Lincoln Sarko**
Managing Partner

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
LCHB-0053518

**From:** Goldsmith, David [mailto:dgoldsmith@labaton.com]
**Sent:** Wednesday, August 19, 2015 2:59 PM
**To:** 'rlieff@lieff.com' <rlieff@lieff.com>; Daniel P. Chiplock <DCHIPLOCK@lchb.com>; Michael Thornton
<MThornton@tenlaw.com>; Garrett J. Bradley <gbradley@tenlaw.com>; Michael Lesser <MLesser@tenlaw.com>; 'Evan
Hoffman' <EHoffman@tenlaw.com>; Lynn Sarko <lsarko@KellerRohrback.com>; 'Kravitz, Carl S.'
<ckravitz@zuckerman.com>; 'Brian McTigue' <bmctigue@mctiguelaw.com>
**Cc:** Sucharow, Lawrence <LSucharow@labaton.com>; Zeiss, Nicole <NZeiss@labaton.com>; Rogers, Michael H.
<MRogers@labaton.com>
**Subject:** SST--Proposed Revision to Term Sheet for DOL Deal

All:  The below reflects our proposed revisions to the Term Sheet (in red boldface) to reflect the imminent deal with the
DOL on fees and expenses as certain of us discussed this morning (DOL has advised that they want the deal
memorialized in the Term Sheet).  Please comment.  Thanks.


      8(n).    **Plan of Allocation**.  . . . The amount allocated to the ERISA Plans and Investment Companies and other
Settlement Class Members shall be increased or decreased by their proportional share (with respect to the Class
Settlement Amount) of any interest, costs (including costs of notice and administration), expenses (including taxes), and
fees and expenses of Plaintiffs' Counsel obtained or paid pursuant to permission of the Court.  However, notice and
administration expenses attributable solely to the claims of Class Members categorized as Group Trusts shall be paid
solely out of the ERISA allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and
shall not be paid out of the Class Settlement Amount.


      12.    **Plaintiffs' Counsel's Attorneys' Fees and Expenses.**    Plaintiffs' Counsel's attorneys' fees and
expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon award by the Court
into an escrow account governed by an escrow agreement between Interim Lead Counsel, SSBT and a bank or other
institution agreed upon by SSBT and Interim Lead Counsel (the "Interim Lead Counsel Escrow Account"),
notwithstanding any appeals of the Settlement or the fee and expense award.  Plaintiffs' Counsel shall may apply for
their fees and expenses and any service awards for Plaintiffs against the entire Class Settlement Amount, but in no
event shall more than Ten Million **Nine** Hundred Thousand Dollars ($10,900,000.00) in fees be paid out of the $60
million portion of the Class Settlement Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.  In
the event that the Effective Date does not occur or SSBT promptly provides written notice representing in good faith
that the Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement, and/or
SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be obliged to pay to SSBT all
amounts paid to them from the Interim Lead Counsel Escrow Account within fourteen (14) business days.  The prevailing
party in any action to collect any amount due under this paragraph shall be entitled to recover interest and all of its
costs of collection, including attorneys' fees.  Should the fee and expense award be reduced by the Court or on appeal,
all such fees and expenses received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid
to the Class Escrow Account, along with interest at the Class Escrow Account rate of interest.

**David J. Goldsmith | Partner**
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com  |  W: www.labaton.com

[<image006.jpg>] [<image006.jpg>] [<image006.jpg>]

***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
<LCHB_iManage_1271399_1.DOC>
<LCHB_iManage_1271400_1.DOCX>

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
<LCHB_iManage_1271399_1.DOC>
<LCHB_iManage_1271400_1.DOCX>

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
LCHB-0053520

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.


This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053521

# EX. 64

Message

| | |
|---|---|
| **From**: | Lieff, Robert L. [RLIEFF@lchb.com] |
| **Sent**: | 8/28/2015 7:34:19 PM |
| **To**: | Chiplock, Daniel P. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK] |
| **CC**: | rlieff@lieff.com |
| **Subject**: | RE: SST--Proposed Revision to Term Sheet for DOL Deal |

1.4% of $70  Million (if we're lucky)  or $1Million. That assumes 34.4% (also if we're lucky).

From: Chiplock, Daniel P.
Sent: Friday, August 28, 2015 11:52 AM
To: Lieff, Robert L.
Cc: 'rlieff@lieff.com'
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Yes, it seems to result in our respective fees being a couple million dollars lower.  Oh well.

From: Lieff, Robert L.
Sent: Friday, August 28, 2015 2:40 PM
To: Chiplock, Daniel P.
Cc: 'rlieff@lieff.com'; Lieff, Robert L.
Subject: FW: SST--Proposed Revision to Term Sheet for DOL Deal

Dan - If you take ERISA and Arkansas local off the top, you end up with the following:

| | | | |
|---|---|---|---|
| Labaton | | 34.4 | |
| Thornton | | 25.8 | |
| Lieff Cabraser | 25.8 | | |
| ERISA | | | 9.0 |
| Arkansas Local | | 5.0 | |
| | | | 100.0 |

This is still predicated on dividing the remaining 25/25.  Labaton and Thornton have not agreed to that as you can see from Garrett's email of 2:17pm EDT.

Bob

From: Chiplock, Daniel P.
Sent: Friday, August 28, 2015 11:12 AM
To: 'Sucharow, Lawrence'
Cc: Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Actually one wrinkle I'm not sure about is how ERISA and local Arkansas counsel fits in - I had thought that their payments would not come off the top and therefore would not result in a reduction of each customer firm's 20% - do you know what I mean?  You may be saying something different from that below, which may be why it'd be useful to iron it out.

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Friday, August 28, 2015 1:59 PM
To: Chiplock, Daniel P.
Cc: Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

Dan sorry for that last email that I didn't spellcheck.
Basically what I'm trying to say is I understand the basic agreement to be that after payment of all other counsel, our three firms shall each receive 20%, with the distribution of the balance of 40% to be determined later.

If that is the agreement you are referring to, I can confirm it. Let me know.
Larry

Sent from my iPhone

On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                          LCHB-0053507

Mike, Garrett - Hope you're well - please see below.  If we can figure this out early next week that may help speed the process.

Thanks,

Dan

From: Chiplock, Daniel P.
Sent: Friday, August 28, 2015 1:33 PM
To: 'Sucharow, Lawrence'
Cc: Zeiss, Nicole; Lieff, Robert L.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

The purpose of my email was just to get your reaction, Larry, since these are your drafts.  Thank you for responding quickly, and for giving me your reaction.  I would love to include them so we can move forward promptly.  I'll re-send.

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Friday, August 28, 2015 1:28 PM
To: Chiplock, Daniel P.
Cc: Zeiss, Nicole; Lieff, Robert L.
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

I don't know why you left the Thornton firm off this email since they are party to any understanding we have and are therefore he sensual to any memorialization of that understanding.  If you more willing to resend your email and include them,we can see if there is any disagreement as to what our understanding is/was.
Larry

Sent from my iPhone

On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
Larry and Nicole:

Attached are my redlines to the preliminary approval order and final judgment.  These edits are consistent with the Court's January 2012 order concerning leadership structure.

I'm emailing just you (and copying Bob) so as to try not to make a big thing over this, but I do think it's appropriate to memorialize what the fee allocation amongst customer class counsel is going to be (consistent with the understanding that the firms have been operating under for a couple years now) before we proceed much further.   I think we'd be willing to support Lead Counsel having final authority over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united front against a perpetual troublemaker like McTigue-which should be in everyone's interest--provided we had some basic written comfort ourselves.  I don't think it's too early for that, given the interest in seeing the funds come in this year.

Thanks,
Dan

From: Zeiss, Nicole [mailto:NZeiss@labaton.com]
Sent: Friday, August 28, 2015 9:53 AM
To: Chiplock, Daniel P.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Thank you!


<image001.jpg><http://labaton.com/>
Nicole M. Zeiss | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0867  |  F: (212) 883-7067
E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>

<image002.gif><http://www.linkedin.com/company/labaton-sucharow-llp>
<image003.gif><https://twitter.com/LabatonSucharow>
<image004.gif><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

From: Chiplock, Daniel P. [mailto:DCHIPLOCK@lchb.com]
Sent: Friday, August 28, 2015 9:29 AM
To: Sucharow, Lawrence
Cc: Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com<mailto:rlieff@lieff.com>; Michael Thornton; Garrett J.
Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith,
David
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

OK, sounds good.  I will also get you whatever edits I have to the settlement docs by noon.

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Friday, August 28, 2015 9:28 AM
To: Chiplock, Daniel P.
Cc: Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com<mailto:rlieff@lieff.com>; Michael Thornton; Garrett J.
Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith,
David
Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal

I am speaking to Paine today at around 10 AM to both report to him and get his update.
I'll report back and advise whether we should send the revised term sheet. I expect we should but let's
hold off for another hour.

Sent from my iPhone

On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
This looks OK to me, thanks.  I'm happy to send it (after you've done the other redline) to Paine, if
you like.  Or someone else can, no matter.

From: Zeiss, Nicole [mailto:NZeiss@labaton.com]
Sent: Thursday, August 27, 2015 3:27 PM
To: Lynn Sarko; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Chiplock, Daniel P.; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Rogers, Michael H.; Sucharow, Lawrence; Goldsmith, David
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Dear all,

We've had some additional exchanges about the term sheet and, specifically, para 8(n).  I believe the
attached draft resolves those issues and that there is consensus that the attached accurately reflects
the basic DOL fee deal.  If you disagree, please let us know asap.

When someone wants to send this to Paine, or the DOL, I will need a run a different redline for them.

Thanks




<image001.jpg><http://labaton.com/>
Nicole M. Zeiss | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0867 |  F: (212) 883-7067
E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>

<image002.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image003.jpg><https://twitter.com/LabatonSucharow>
<image004.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

From: Zeiss, Nicole
Sent: Wednesday, August 26, 2015 5:09 PM
To: Sucharow, Lawrence; Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel
P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.';
'Brian McTigue'
Cc: Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Attached is the term sheet showing the changes discussed below, plus one additional change to para 8(n)
that might help.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                    LCHB-0053509

Thanks

<image005.jpg><http://labaton.com/>
Nicole M. Zeiss | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0867 |  F: (212) 883-7067
E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>

<image006.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image007.jpg><https://twitter.com/LabatonSucharow>
<image008.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>

From: Sucharow, Lawrence
Sent: Wednesday, August 26, 2015 4:34 PM
To: Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock;
Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Zeiss, Nicole; Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Then we can probably forget my proposed changes.

From: Lynn Sarko [mailto:lsarko@KellerRohrback.com]
Sent: Wednesday, August 26, 2015 4:26 PM
To: Sucharow, Lawrence; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P.
Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.';
'Brian McTigue'
Cc: Zeiss, Nicole; Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Sure.  If it works for them - its fine with me

Lynn Lincoln Sarko
Managing Partner

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>

From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
Sent: Wednesday, August 26, 2015 1:25 PM
To: Lynn Sarko <lsarko@KellerRohrback.com<mailto:lsarko@KellerRohrback.com>>; Goldsmith, David
<dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>>; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'
<rlieff@lieff.com<mailto:rlieff@lieff.com>>; Daniel P. Chiplock
<DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>>; Michael Thornton
<MThornton@tenlaw.com<mailto:MThornton@tenlaw.com>>; Garrett J. Bradley
<gbradley@tenlaw.com<mailto:gbradley@tenlaw.com>>; Michael Lesser
<MLesser@tenlaw.com<mailto:MLesser@tenlaw.com>>; 'Evan Hoffman'
<EHoffman@tenlaw.com<mailto:EHoffman@tenlaw.com>>; 'Kravitz, Carl S.'
<ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>; 'Brian McTigue'
<bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>
Cc: Zeiss, Nicole <NZeiss@labaton.com<mailto:NZeiss@labaton.com>>; Rogers, Michael H.
<MRogers@labaton.com<mailto:MRogers@labaton.com>>
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

Can we leave para 8(n) the general way it is and protect the DOL through the express provision of para 12
limiting fees charged to ERISA allocation to $10.9 million?

From: Lynn Sarko [mailto:lsarko@KellerRohrback.com]
Sent: Wednesday, August 26, 2015 3:42 PM
To: Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
Cc: Sucharow, Lawrence; Zeiss, Nicole; Rogers, Michael H.
Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal

David
Thanks for sending this.  Sorry, I had misunderstood what you were saying on our call earlier today.

Two things:

1.  I do think the language you proposed for paragraph 12 works-but just change it to $10.9 million.
2.  On paragraph 8(n)- the problem is the word  "fees" —since the DOL has given us a hard number for ERISA fees-that won't be going up or down.  So-question-can we get rid of the word  "fees"  in this paragraph-does it still work?

What do you think??

Lynn

Lynn Lincoln Sarko
Managing Partner

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>

From: Goldsmith, David [mailto:dgoldsmith@labaton.com]
Sent: Wednesday, August 19, 2015 2:59 PM
To: 'rlieff@lieff.com<mailto:rlieff@lieff.com>' <rlieff@lieff.com<mailto:rlieff@lieff.com>>; Daniel P. Chiplock <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>>; Michael Thornton <MThornton@tenlaw.com<mailto:MThornton@tenlaw.com>>; Garrett J. Bradley <gbradley@tenlaw.com<mailto:gbradley@tenlaw.com>>; Michael Lesser <MLesser@tenlaw.com<mailto:MLesser@tenlaw.com>>; 'Evan Hoffman' <EHoffman@tenlaw.com<mailto:EHoffman@tenlaw.com>>; Lynn Sarko <lsarko@KellerRohrback.com<mailto:lsarko@KellerRohrback.com>>; 'Kravitz, Carl S.' <ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>; 'Brian McTigue' <bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>
Cc: Sucharow, Lawrence <LSucharow@labaton.com<mailto:LSucharow@labaton.com>>; Zeiss, Nicole <NZeiss@labaton.com<mailto:NZeiss@labaton.com>>; Rogers, Michael H. <MRogers@labaton.com<mailto:MRogers@labaton.com>>
Subject: SST--Proposed Revision to Term Sheet for DOL Deal

All:  The below reflects our proposed revisions to the Term Sheet (in red boldface) to reflect the imminent deal with the DOL on fees and expenses as certain of us discussed this morning (DOL has advised that they want the deal memorialized in the Term Sheet).  Please comment.  Thanks.


8(n).        Plan of Allocation.  . . . The amount allocated to the ERISA Plans and Investment Companies and other Settlement Class Members shall be increased or decreased by their proportional share (with respect to the Class Settlement Amount) of any interest, costs (including costs of notice and administration), expenses (including taxes), and fees and expenses of Plaintiffs' Counsel obtained or paid pursuant to permission of the Court.  However, notice and administration expenses attributable solely to the claims of Class Members categorized as Group Trusts shall be paid solely out of the ERISA allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and shall not be paid out of the Class Settlement Amount.

12.        Plaintiffs' Counsel's Attorneys' Fees and Expenses.        Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon award by the Court into an escrow account governed by an escrow agreement between Interim Lead Counsel, SSBT and a bank or other institution agreed upon by SSBT and Interim Lead Counsel (the  "Interim Lead Counsel Escrow Account"), notwithstanding any appeals of the Settlement or the fee and expense award.  Plaintiffs' Counsel shall may apply for their fees and expenses and any service awards for Plaintiffs against the entire Class Settlement Amount, but in no event shall more than Ten Million Nine Hundred Thousand Dollars ($10,900,000.00) in fees be paid out of the $60 million portion of the Class Settlement Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.  In the event that the Effective Date does not occur or SSBT promptly provides written notice representing in good faith that the Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement, and/or SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be obliged to pay to SSBT all amounts paid to them from the Interim Lead Counsel Escrow Account within fourteen (14) business days.  The prevailing party in any action to collect any amount due under this

paragraph shall be entitled to recover interest and all of its costs of collection, including attorneys'
fees.  Should the fee and expense award be reduced by the Court or on appeal, all such fees and expenses
received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid to the
Class Escrow Account, along with interest at the Class Escrow Account rate of interest.


<image005.jpg><http://www.labaton.com/>
David J. Goldsmith | Partner
140 Broadway, New York, New York 10005
T: (212) 907-0879 | F: (212) 883-7079
E: dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>   |  W: www.labaton.com<http://www.labaton.com/>

<image006.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image006.jpg><https://twitter.com/LabatonSucharow>
<image006.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>


***Privilege and Confidentiality Notice***

This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR
OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named
herein. If you are not the Addressee(s), or the person responsible for delivering this to the
Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited.
If you have received this electronic mail message in error, please contact us immediately at 212-907-0700
and take the steps necessary to delete the message completely from your computer system. Thank you.


This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.


This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.


This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.
<LCHB_iManage_1271399_1.DOC>
<LCHB_iManage_1271400_1.DOCX>


This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.
<LCHB_iManage_1271399_1.DOC>
<LCHB_iManage_1271400_1.DOCX>


This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EX. 65

Message

| From: | Garrett Bradley [GBradley@tenlaw.com] |
|---|---|
| Sent: | 8/30/2015 2:48:28 PM |
| To: | Lieff, Robert L. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=RLIEFF] |
| CC: | Chiplock, Daniel P. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK]; |
| | lsucharow@labaton.com; Michael Thornton [MThornton@tenlaw.com]; rlieff@lieff.com |
| Subject: | Re: SST--Proposed Revision to Term Sheet for DOL Deal |

Bob I resent it to you awhile ago.  It is the agreement that whatever the obligation is to the Arkansas
firm it is off the top.  Everyone agreed several years ago.  I'll send it when I am at the office.  Your
assent is in the email string.

Garrett

> On Aug 30, 2015, at 10:25 AM, Lieff, Robert L. <RLIEFF@lchb.com> wrote:
>
> I don't  have the agreement  and have not seen it . I don't necessarily disagree but it is part of the
overall dynamic that we will have to deal with at the appropriate time.
> _____
> From: Garrett Bradley [GBradley@tenlaw.com]
> Sent: Sunday, August 30, 2015 7:16 AM
> To: Chiplock, Daniel P.
> Cc: Lieff, Robert L.; lsucharow@labaton.com; Michael Thornton
> Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Dan I can't until I get back to the office as I can't access the archived files on my phone.  However
Bob has it.
>
> Garrett
>
> On Aug 30, 2015, at 8:49 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
>
> Garrett — Can you send me this written agreement?  Thanks a lot.
>
> Dan
>
> From: Garrett Bradley [mailto:GBradley@tenlaw.com]
> Sent: Friday, August 28, 2015 2:22 PM
> To: Chiplock, Daniel P.
> Cc: Sucharow, Lawrence; Michael Thornton; Lieff, Robert L.
> Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Dan,
> There is a written agreement between all the parties that the Arkansas component would come off the
top. As for the ERISA piece, I see no other way than to have that come out as well. So yes, everyone's
20% would be out of the net after Arkansas and after ERISA. That is our understanding, and from my
conversations with Bob Lieff, that is his understanding as well as Larry's.
>
> Garrett
>
> On Aug 28, 2015, at 2:11 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
> Actually one wrinkle I'm not sure about is how ERISA and local Arkansas counsel fits in — I had thought
that their payments would not come off the top and therefore would not result in a reduction of each
customer firm's 20% - do you know what I mean?  You may be saying something different from that below,
which may be why it'd be useful to iron it out.
>
> From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> Sent: Friday, August 28, 2015 1:59 PM
> To: Chiplock, Daniel P.
> Cc: Garrett J. Bradley; Michael Thornton; Lieff, Robert L.
> Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Dan sorry for that last email that I didn't spellcheck.
> Basically what I'm trying to say is I understand the basic agreement to be that after payment of all
other counsel, our three firms shall each receive 20%, with the distribution of the balance of 40% to be
determined later.
>
> If that is the agreement you are referring to, I can confirm it. Let me know.
> Larry

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

```
>
> Sent from my iPhone
>
> On Aug 28, 2015, at 1:39 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
> Mike, Garrett — Hope you're well — please see below.  If we can figure this out early next week that
may help speed the process.
>
> Thanks,
>
> Dan
>
> From: Chiplock, Daniel P.
> Sent: Friday, August 28, 2015 1:33 PM
> To: 'Sucharow, Lawrence'
> Cc: Zeiss, Nicole; Lieff, Robert L.
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> The purpose of my email was just to get your reaction, Larry, since these are your drafts.  Thank you
for responding quickly, and for giving me your reaction.  I would love to include them so we can move
forward promptly.  I'll re-send.
>
> From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> Sent: Friday, August 28, 2015 1:28 PM
> To: Chiplock, Daniel P.
> Cc: Zeiss, Nicole; Lieff, Robert L.
> Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal
>
> I don't know why you left the Thornton firm off this email since they are party to any understanding we
have and are therefore he sensual to any memorialization of that understanding.  If you more willing to
resend your email and include them,we can see if there is any disagreement as to what our understanding
is/was.
> Larry
>
> Sent from my iPhone
>
> On Aug 28, 2015, at 1:10 PM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
> Larry and Nicole:
>
> Attached are my redlines to the preliminary approval order and final judgment.  These edits are
consistent with the Court's January 2012 order concerning leadership structure.
>
> I'm emailing just you (and copying Bob) so as to try not to make a big thing over this, but I do think
it's appropriate to memorialize what the fee allocation amongst customer class counsel is going to be
(consistent with the understanding that the firms have been operating under for a couple years now)
before we proceed much further.  I think we'd be willing to support Lead Counsel having final authority
over fee and expense allocations, etc., for purposes of the settlement stip, and thus present a united
front against a perpetual troublemaker like McTigue—which should be in everyone's interest--provided we
had some basic written comfort ourselves.  I don't think it's too early for that, given the interest in
seeing the funds come in this year.
>
> Thanks,
> Dan
>
> From: Zeiss, Nicole [mailto:NZeiss@labaton.com]
> Sent: Friday, August 28, 2015 9:53 AM
> To: Chiplock, Daniel P.
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Thank you!
>
>
>
>
>
>
>
> <image001.jpg><http://labaton.com/>
> Nicole M. Zeiss | Partner
> 140 Broadway, New York, New York 10005
> T: (212) 907-0867 |  F: (212) 883-7067
> E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>
>
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

> <image002.gif><http://www.linkedin.com/company/labaton-sucharow-llp>
<image003.gif><https://twitter.com/LabatonSucharow>
<image004.gif><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>
>
> From: Chiplock, Daniel P. [mailto:DCHIPLOCK@lchb.com]
> Sent: Friday, August 28, 2015 9:29 AM
> To: Sucharow, Lawrence
> Cc: Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com<mailto:rlieff@lieff.com>; Michael Thornton; Garrett J.
Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith,
David
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> OK, sounds good.  I will also get you whatever edits I have to the settlement docs by noon.
>
> From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> Sent: Friday, August 28, 2015 9:28 AM
> To: Chiplock, Daniel P.
> Cc: Zeiss, Nicole; Lynn Sarko; rlieff@lieff.com<mailto:rlieff@lieff.com>; Michael Thornton; Garrett J.
Bradley; Michael Lesser; Evan Hoffman; Kravitz, Carl S.; Brian McTigue; Rogers, Michael H.; Goldsmith,
David
> Subject: Re: SST--Proposed Revision to Term Sheet for DOL Deal
>
> I am speaking to Paine today at around 10 AM to both report to him and get his update.
> I'll report back and advise whether we should send the revised term sheet. I expect we should but let's
hold off for another hour.
>
> Sent from my iPhone
>
> On Aug 28, 2015, at 9:19 AM, Chiplock, Daniel P. <DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>> wrote:
> This looks OK to me, thanks.  I'm happy to send it (after you've done the other redline) to Paine, if
you like.  Or someone else can, no matter.
> From: Zeiss, Nicole [mailto:NZeiss@labaton.com]
> Sent: Thursday, August 27, 2015 3:27 PM
> To: Lynn Sarko; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Chiplock, Daniel P.; Michael Thornton;
Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
> Cc: Rogers, Michael H.; Sucharow, Lawrence; Goldsmith, David
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Dear all,
>
> We've had some additional exchanges about the term sheet and, specifically, para 8(n).  I believe the
attached draft resolves those issues and that there is consensus that the attached accurately reflects
the basic DOL fee deal.  If you disagree, please let us know asap.
>
> When someone wants to send this to Paine, or the DOL, I will need a run a different redline for them.
>
> Thanks
>
>
>
>
>
>
> <image001.jpg><http://labaton.com/>
> Nicole M. Zeiss | Partner
> 140 Broadway, New York, New York 10005
> T: (212) 907-0867 |  F: (212) 883-7067
> E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>  | W: www.labaton.com<http://www.labaton.com/>
>
> <image002.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image003.jpg><https://twitter.com/LabatonSucharow>
<image004.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>
>
> From: Zeiss, Nicole
> Sent: Wednesday, August 26, 2015 5:09 PM
> To: Sucharow, Lawrence; Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>';
Daniel P. Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl
S.'; 'Brian McTigue'
> Cc: Rogers, Michael H.
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>

> Attached is the term sheet showing the changes discussed below, plus one additional change to para 8(n)
that might help.
>
> Thanks
>
>
>
>
>
>
>
> <image005.jpg><http://labaton.com/>
> Nicole M. Zeiss | Partner
> 140 Broadway, New York, New York 10005
> T: (212) 907-0867 |  F: (212) 883-7067
> E: nzeiss@labaton.com<mailto:nzeiss@labaton.com>   |  W: www.labaton.com<http://www.labaton.com/>
>
> <image006.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image007.jpg><https://twitter.com/LabatonSucharow>
<image008.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>
>
> From: Sucharow, Lawrence
> Sent: Wednesday, August 26, 2015 4:34 PM
> To: Lynn Sarko; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock;
Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
> Cc: Zeiss, Nicole; Rogers, Michael H.
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Then we can probably forget my proposed changes.
>
> From: Lynn Sarko [mailto:lsarko@KellerRohrback.com]
> Sent: Wednesday, August 26, 2015 4:26 PM
> To: Sucharow, Lawrence; Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P.
Chiplock; Michael Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.';
'Brian McTigue'
> Cc: Zeiss, Nicole; Rogers, Michael H.
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Sure.   If it works for them – its fine with me
>
> Lynn Lincoln Sarko
> Managing Partner
>
> Keller Rohrback L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101
>
> Phone: (206) 623-1900
> Fax: (206) 623-3384
> E-mail: lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>
>
> From: Sucharow, Lawrence [mailto:LSucharow@labaton.com]
> Sent: Wednesday, August 26, 2015 1:25 PM
> To: Lynn Sarko <lsarko@KellerRohrback.com<mailto:lsarko@KellerRohrback.com>>; Goldsmith, David
<dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>>; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'
<rlieff@lieff.com<mailto:rlieff@lieff.com>>; Daniel P. Chiplock
<DCHIPLOCK@lchb.com<mailto:DCHIPLOCK@lchb.com>>; Michael Thornton
<MThornton@tenlaw.com<mailto:MThornton@tenlaw.com>>; Garrett J. Bradley
<gbradley@tenlaw.com<mailto:gbradley@tenlaw.com>>; Michael Lesser
<MLesser@tenlaw.com<mailto:MLesser@tenlaw.com>>; 'Evan Hoffman'
<EHoffman@tenlaw.com<mailto:EHoffman@tenlaw.com>>; 'Kravitz, Carl S.'
<ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>; 'Brian McTigue'
<bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>
> Cc: Zeiss, Nicole <NZeiss@labaton.com<mailto:NZeiss@labaton.com>>; Rogers, Michael H.
<MRogers@labaton.com<mailto:MRogers@labaton.com>>
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> Can we leave para 8(n) the general way it is and protect the DOL through the express provision of para
12 limiting fees charged to ERISA allocation to $10.9 million?
>
> From: Lynn Sarko [mailto:lsarko@KellerRohrback.com]
> Sent: Wednesday, August 26, 2015 3:42 PM

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053534

> To: Goldsmith, David; 'rlieff@lieff.com<mailto:rlieff@lieff.com>'; Daniel P. Chiplock; Michael
> Thornton; Garrett J. Bradley; Michael Lesser; 'Evan Hoffman'; 'Kravitz, Carl S.'; 'Brian McTigue'
> Cc: Sucharow, Lawrence; Zeiss, Nicole; Rogers, Michael H.
> Subject: RE: SST--Proposed Revision to Term Sheet for DOL Deal
>
> David
> Thanks for sending this.  Sorry, I had misunderstood what you were saying on our call earlier today.
>
> Two things:
>
> 1.  I do think the language you proposed for paragraph 12 works-but just change it to $10.9 million.
> 2. On paragraph 8(n)- the problem is the word "fees"-since the DOL has given us a hard number for ERISA
> fees-that won't be going up or down.   So-question-can we get rid of the word "fees" in this paragraph-
> does it still work?
>
> What do you think??
>
> Lynn
>
> Lynn Lincoln Sarko
> Managing Partner
>
> Keller Rohrback L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101
>
> Phone: (206) 623-1900
> Fax: (206) 623-3384
> E-mail: lsarko@kellerrohrback.com<mailto:lsarko@kellerrohrback.com>
>
> From: Goldsmith, David [mailto:dgoldsmith@labaton.com]
> Sent: Wednesday, August 19, 2015 2:59 PM
> To: 'rlieff@lieff.com<mailto:rlieff@lieff.com>' <rlieff@lieff.com<mailto:rlieff@lieff.com>>; Daniel P.
> Chiplock <DChiplock@lchb.com<mailto:DCHIPLOCK@lchb.com>>; Michael Thornton
> <MThornton@tenlaw.com<mailto:MThornton@tenlaw.com>>; Garrett J. Bradley
> <gbradley@tenlaw.com<mailto:gbradley@tenlaw.com>>; Michael Lesser
> <MLesser@tenlaw.com<mailto:MLesser@tenlaw.com>>; 'Evan Hoffman'
> <EHoffman@tenlaw.com<mailto:EHoffman@tenlaw.com>>; Lynn Sarko
> <lsarko@KellerRohrback.com<mailto:lsarko@KellerRohrback.com>>; 'Kravitz, Carl S.'
> <ckravitz@zuckerman.com<mailto:ckravitz@zuckerman.com>>; 'Brian McTigue'
> <bmctigue@mctiguelaw.com<mailto:bmctigue@mctiguelaw.com>>
> Cc: Sucharow, Lawrence <LSucharow@labaton.com<mailto:LSucharow@labaton.com>>; Zeiss, Nicole
> <NZeiss@labaton.com<mailto:NZeiss@labaton.com>>; Rogers, Michael H.
> <MRogers@labaton.com<mailto:MRogers@labaton.com>>
> Subject: SST--Proposed Revision to Term Sheet for DOL Deal
>
> All:  The below reflects our proposed revisions to the Term Sheet (in red boldface) to reflect the
> imminent deal with the DOL on fees and expenses as certain of us discussed this morning (DOL has advised
> that they want the deal memorialized in the Term Sheet).  Please comment.  Thanks.
>
>
> 8(n).        Plan of Allocation.  . . . The amount allocated to the ERISA Plans and Investment
> Companies and other Settlement Class Members shall be increased or decreased by their proportional share
> (with respect to the Class Settlement Amount) of any interest, costs (including costs of notice and
> administration), expenses (including taxes), and fees and expenses of Plaintiffs' Counsel obtained or
> paid pursuant to permission of the Court.  However, notice and administration expenses attributable
> solely to the claims of Class Members categorized as Group Trusts shall be paid solely out of the ERISA
> allocation, and the cost of any ERISA Independent Fiduciary shall be borne solely by SSBT and shall not
> be paid out of the Class Settlement Amount.
>
> 12.        Plaintiffs' Counsel's Attorneys' Fees and Expenses.        Plaintiffs' Counsel's attorneys'
> fees and expenses, as awarded by the Court, shall be paid from the Class Escrow Account immediately upon
> award by the Court into an escrow account governed by an escrow agreement between Interim Lead Counsel,
> SSBT and a bank or other institution agreed upon by SSBT and Interim Lead Counsel (the "Interim Lead
> Counsel Escrow Account"), notwithstanding any appeals of the Settlement or the fee and expense award.
> Plaintiffs' Counsel shall may apply for their fees and expenses and any service awards for Plaintiffs
> against the Class Settlement Amount, but in no event shall more than Ten Million Nine Hundred
> Thousand Dollars ($10,900,000.00) in fees be paid out of the $60 million portion of the Class Settlement
> Amount allocated to ERISA Plans, as referenced in Paragraph 8(n) above.  In the event that the Effective
> Date does not occur or SSBT promptly provides written notice representing in good faith that the
> Effective Date has not and cannot occur due to developments with the DOJ Settlement, DOL Settlement,
> and/or SEC Settlement and explaining the grounds for the notice, Plaintiffs' Counsel severally shall be
> obliged to pay to SSBT all amounts paid to them from the Interim Lead Counsel Escrow Account within

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

fourteen (14) business days.  The prevailing party in any action to collect any amount due under this paragraph shall be entitled to recover interest and all of its costs of collection, including attorneys' fees.  Should the fee and expense award be reduced by the Court or on appeal, all such fees and expenses received by Plaintiffs' Counsel in excess of those that are ultimately approved shall be repaid to the Class Escrow Account, along with interest at the Class Escrow Account rate of interest.

>
>
>
>
>
>
> <image005.jpg><http://www.labaton.com/>
> David J. Goldsmith | Partner
> 140 Broadway, New York, New York 10005
> T: (212) 907-0879 | F: (212) 883-7079
> E: dgoldsmith@labaton.com<mailto:dgoldsmith@labaton.com>  |  W: www.labaton.com<http://www.labaton.com/>
>
> <image006.jpg><http://www.linkedin.com/company/labaton-sucharow-llp>
<image006.jpg><https://twitter.com/LabatonSucharow>
<image006.jpg><https://www.facebook.com/pages/Labaton-Sucharow-LLP/443111702425065>
>
>
> ***Privilege and Confidentiality Notice***
>
> This electronic message contains information that is (a) LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not the Addressee(s), or the person responsible for delivering this to the Addressee(s), you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please contact us immediately at 212-907-0700 and take the steps necessary to delete the message completely from your computer system. Thank you.
>
>
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
> <LCHB_iManage_1271399_1.DOC>
> <LCHB_iManage_1271400_1.DOCX>
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
> <LCHB_iManage_1271399_1.DOC>
> <LCHB_iManage_1271400_1.DOCX>
>
>
> This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600.
You will be reimbursed for reasonable costs incurred in notifying us.
>
>
> This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.
> This e-mail and any files transmitted with it are confidential and are intended solely for the use of
the individual or entity to whom they are addressed. This communication may contain material protected by
the attorney-client privilege. If you are not the intended recipient or the person responsible for
delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error
and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited.
If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600.
You will be reimbursed for reasonable costs incurred in notifying us.
>
>
> This message is intended for the named recipients only. It may contain information protected by the
attorney-client or work-product privilege. If you have received this email in error, please notify the
sender immediately by replying to this email. Please do not disclose this message to anyone and delete
the message and any attachments. Thank you.
This e-mail and any files transmitted with it are confidential and are intended solely for the use of the
individual or entity to whom they are addressed. This communication may contain material protected by the
attorney-client privilege. If you are not the intended recipient or the person responsible for delivering
the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any
use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have
received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be
reimbursed for reasonable costs incurred in notifying us.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053537

# EX. 66

Message

| | |
|---|---|
| **From**: | Chiplock, Daniel P. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK] |
| **Sent**: | 6/14/2016 3:42:09 PM |
| **To**: | Lieff, Robert L. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=RLIEFF] |
| **Subject**: | FW: State street fee regarding local counsel |

Bob -- See below. I don't know how you get around this...

**From:** Garrett Bradley [mailto:GBradley@tenlaw.com]
**Sent:** Sunday, August 30, 2015 10:58 AM
**To:** Lieff, Robert L.; Chiplock, Daniel P.; Michael Thornton
**Subject:** Fwd: State street fee regarding local counsel

I found it in my sent email.

Garrett

Begin forwarded message:

**From:** <GBradley@tenlaw.com>
**Date:** July 28, 2015 at 5:55:24 PM EDT
**To:** "Robert L. Lieff" <RLIEFF@lchb.com>
**Subject: Fwd: State street fee regarding local counsel**

Here is the email we discussed tonight.

Garrett

Begin forwarded message:

**From:** "Robert L. Lieff" <RLIEFF@lchb.com>
**Date:** April 24, 2013 at 9:17:49 PM EDT
**To:** "Garrett J. Bradley" <gbradley@tenlaw.com>, "Robert L. Lieff" <rlieff@lieff.com>, Michael Thornton
<MThornton@tenlaw.com>, "Belfi, Eric J." <EBelfi@labaton.com>
**Cc:** Damon Chargois Esq. <damon@cmhllp.com>, "Keller, Christopher J." <ckeller@labaton.com>, "Daniel P. Chiplock"
<DCHIPLOCK@lchb.com>
**Subject: RE: State street fee regarding local counsel**

I am in full agreement. Bob

_____

From: Garrett Bradley [GBradley@tenlaw.com]

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER LCHB-0053538

Sent: Wednesday, April 24, 2013 6:07 PM
To: Lieff, Robert L.; Robert L. Lieff; Michael Thornton; Eric Belfi
Cc: Damon Chargois Esq.; Christopher J. Keller Esq.; Chiplock, Daniel P.
Subject: State street fee regarding local counsel

Bob,

As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to the local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System.  Labaton has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to Labaton in the State Street FX class case before Judge Wolf.  Currently this amount would be 4% because of the agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the balance to be decided upon at a later date.  Obviously this may go up should Labaton receive an amount higher than 20%.

We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be paid off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant to our agreement.

The local asked that I copy him on this email so he will have confirmation of this agreement.  When we spoke to him he was agreeable to this as well.


Garrett


_____


This e-mail and any files transmitted with it are confidential and are

intended solely for the use of the individual or entity to whom they are
addressed.  This communication may contain material protected by the
attorney-client privilege. If you are not the intended recipient or the person
responsible for delivering the e-mail to the intended recipient, be advised that
you have received this e-mail in error and that any use, dissemination,
forwarding, printing, or copying of this e-mail is strictly prohibited. If you
have received this e-mail in error; please immediately notify us by telephone at
(800) 431-4600. You will be reimbursed for reasonable costs incurred in
notifying us.



Please consider the environment before printing this email.


This message is intended for the named recipients only. It may contain information protected by the attorney-client or

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LCHB-0053540

# EX. 67

Message

| | |
|---|---|
| **From:** | Chiplock, Daniel P. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DCHIPLOCK] |
| **Sent:** | 6/14/2016 3:48:34 PM |
| **To:** | Lieff, Robert L. [/O=LCHB/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=RLIEFF] |
| **Subject:** | FW: State street fee regarding local counsel |

I had to go through archives to find this, but I guess Garrett sent me this email back in April 2013 as
well. I had no memory of it. In any event, it's useful because it confirms the 20-20-20 arrangement
going back more than 3 years ago. But I have to admit being confused as to how the local counsel's fee
gets calculated. I think what he is saying is that the local counsel's fee will be the equivalent of 20%
of Labaton's fee, but Labaton is sharing the responsibility for that fee with us and Thornton. The
challenging part is you don't know what local counsel's fee is until Labaton's fee has been decided upon.

-----Original Message-----
From: Garrett Bradley [mailto:GBradley@tenlaw.com]
Sent: Wednesday, April 24, 2013 9:08 PM
To: Lieff, Robert L.; Robert L. Lieff; Michael Thornton; Eric Belfi
Cc: Damon Chargois Esq.; Christopher J. Keller Esq.; Chiplock, Daniel P.
Subject: State street fee regarding local counsel

Bob,

As you, Mike and I discussed in Dublin last week, I am sending this email regarding the obligation to the
local counsel who assists Labaton in matters involving the Arkansas Teachers Retirement System. Labaton
has an obligation to this counsel, Damon Chargois copied on this email, of 20% of the net fee to Labaton
in the State Street FX class case before Judge Wolf. Currently this amount would be 4% because of the
agreement between Labaton, Thornton and Lieff of a division of 20% guaranteed each with the balance to be
decided upon at a later date. Obviously this may go up should Labaton receive an amount higher than 20%.

We have agreed that the amount due to the local, whatever it turns out to be (4%, 5% etc.), will be paid
off the top with the balance of the overall fee spilt between Lieff, Labaton and Thornton pursuant to our
agreement.

The local asked that I copy him on this email so he will have confirmation of this agreement. When we
spoke to him he was agreeable to this as well.

Garrett

_____

This e-mail and any files transmitted with it are confidential and are

intended solely for the use of the individual or entity to whom they are addressed. This communication
may contain material protected by the attorney-client privilege. If you are not the intended recipient or
the person responsible for delivering the e-mail to the intended recipient, be advised that you have
received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this
e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by
telephone at
(800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.


Please consider the environment before printing this email.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                    LCHB-0053541

# EX. 68

[March 2018]

# STEPHEN GILLERS

Elihu Root Professor of Law
(vice dean 1999-2004)
New York University
School of Law
40 Washington Square South
New York, NY 10012

(212) 998-6264 (tel)
(212) 995-4658 (fax)
stephen.gillers@nyu.edu

**AREAS OF TEACHING**   Regulation of Lawyers and Professional Responsibility
Evidence; Law and Literature; Media Law

**PRIOR COURSES**   Civil Procedure, Agency, Advocacy of Civil Claims, Federal Courts

**PUBLICATIONS**   BOOKS AND ANTHOLOGIES:

Journalism Under Fire: Protecting the Future of Investigative
Reporting (Columbia University Press, forthcoming 2018)

Regulation of Lawyers:  Problems of Law and Ethics (Aspen Law &
Business, 11th ed., December 2017).  The first edition of this popular
casebook was published in 1985.  Norman Dorsen was a co-author on
the first two editions.  Stephen Gillers is the sole author of the third
through ninth editions.  The first four editions were published by
Little, Brown & Co., which then sold its law book publishing
operation to Aspen.

Regulation of Lawyers:  Statutes and Standards (with Roy Simon and
Andrew Perlman) (Aspen Law & Business) This is a compilation with
editorial comment.  The first volume was published in 1989.  Updated
versions have been published annually thereafter. As of the 2009
edition, Andrew Perlman has joined as a co-editor.

"The Legal Industry of Tomorrow Arrived Yesterday: How Lawyers
Must Respond," in The Relevant Lawyer (ABA 2015).

1

Regulation of the Legal Profession (Aspen 2009). This is 400+ page book in the Aspen "Essentials" series explains  ethics rules and laws governing American lawyers and judges.

**PUBLICATIONS**
(continued)

Investigating the FBI (co-Editor with P. Watters) (Doubleday, 1973; Ballantine, 1974)

None of Your Business:  Government Secrecy in America (co-Editor with N. Dorsen) (Viking, 1974; Penguin, 1975).

Getting Justice:  The Rights of People (Basic Books, 1971; revised paperback, New American Library, May 1973).

I'd Rather Do It Myself:  How to Set Up Your Own Law Firm (Law Journal Press, 1977).

Looking At Law School:  A Student Guide From the Society of American Law Teachers (editor and contributor) (Taplinger, 1977; NAL, 1977; revised ed., NAL, 1984; third ed., NAL, 1990).

The Rights of Lawyers and Clients (Avon, 1979).

"Four Policemen in London and Amsterdam," in R. Schrank (ed.) American Workers Abroad (MIT Press, 1979).

"Dispute Resolution in Prison:  The California Experience," and "New Faces in the Neighborhood Mediating the Forest Hills Housing Dispute," both in R. Goldmann (ed.) Roundtable Justice:  Case Studies in Conflict Resolution (Westview Press, 1980).

"The American Legal Profession," in A. Morrison (ed.), Fundamentals of American Law (Oxford University Press 1996).

The Elsinore Appeal: People v. Hamlet (St. Martin's Press 1996).  This book contains the text of Hamlet together with briefs and oral argument for and against affirmance of Prince Hamlet's (imaginary) murder convictions.  The book arose out of a symposium sponsored by the Association of the Bar of the City of New York.

"In the Pink Room," in Legal Ethics: Law Stories (D. Rhode & D. Luban, eds.) (Foundation Press, 2006) (also published as a freestanding monograph).

2

PUBLICATIONS
(continued)

ARTICLES:

A Rule to Forbid Bias and Harassment in Law Practice: A Guide for State Courts Considering Model Rule 8.4(g), 30 Geo. J. Legal Ethics 195 (2017);

Uniform Legal Ethics Rules? No – An Elusive Dream Not Worth the Chase, 22 The Professional Lawyer #2 (2014)

The Two-Year Law Degree: Undesireable but Perhaps Unavoidable, 2013 N.Y.U. J. Legis. & Pub. Pol'y Quorum 4 (2013)

How To Make Rules for Lawyers: The Professional Responsibility of the Legal Profession, 40 Pepperdine L. Rev. 365 (2013) (Symposium issue on *The Lawyer of the Future*).

A Profession, If You Can Keep It: How Information Technology and Fading Borders Are Reshaping the Law Marketplace and What We Should Do About It, 63 Hastings L.J. 953 (2012)

Guns, Fruit, Drugs, and Documents: A Criminal Defense Lawyer's Responsibility for Real Evidence, 63 Stan. L. Rev. 813 (2011)

Is Law (Still) An Honorable Profession?, 19 Professional Lawyer 23 (2009)(based on a talk at Central Synagogue in Manhattan).

Professional Identity: 2011 Michael Franck Award Acceptance Speech, 21 Professional Lawyer 6 (2011).

Choosing and Working with Estate and Foundation Counsel to Secure an Artistic and Philanthropic Legacy, in The Artist as Philanthropist, volume 2, page 293 (The Aspen Institute Program on Philanthropy and Social Innovation 2010)

Virtual Clients:  An Idea in Search of a Theory (with Limits),  42 Valparaiso L. Rev. 797 (2008)  (Tabor lecture).

The "Charles Stimson" Rule and Three Other Proposals to Protect Lawyers From Lawyers, 36 Hofstra L. Rev. 323 (2007)

A Tendency to Deprave and Corrupt:  The Transformation of American Obscenity Law from *Hicklin* to *Ulysses II*, 85 Washington U. L. Rev. 215 (2007)

Some Problem with Model Rule 5.6(a), Professional Lawyer (ABA 2007 Symposium Issue).

Stephen Gillers

(continued)

Monroe Freedman's Solution to the Criminal Defense Lawyer's Trilemma Is Wrong as a Matter of Policy and Constitutional Law, 34 Hofstra L. Rev. 821 (2006)

Free the Lawyers:  A Proposal to Permit No-Sue Promises in Settlement Agreements, 18 Georgetown J. Legal Ethics 291 (2005) (with Richard W. Painter).

Lessons from the Multijurisdictional Practice Commission: The Art of Making Change, 44 Ariz. L. Rev. 685 (2002).

Speak No Evil: Settlement Agreements Conditioned On Noncooperation Are Illegal and Unethical, 31 Hofstra L. Rev.  1 (2002) (reprinted at 52 Defense L.J. 769 (2003)).

"If Elected, I Promise [          ]"–What Should Judicial Candidates Be Allowed to Say?  35 Ind. L. Rev. 735 (2002).

Legal Ethics: Art or Theory?, 58 Annual Survey Am. L. 49 (2001).

The Anxiety of Influence, 27 Fla. St. L. Rev. 123 (1999) (discussing rules that restrict multidisciplinary practice.

Can a Good Lawyer Be a Bad Person? 2 J. Inst. Study of Legal Ethics 131 (1999) (paper delivered at conference "Legal Ethics: Access to Justice" at Hofstra University School of Law, April 5-7, 1998).

More About Us: Another Take on the Abusive Use of Legal Ethics Rules, 11 Geo. J. Legal Ethics 843 (1998).

Caveat Client: How the Proposed Final Draft of the Restatement of the Law Governing Lawyers Fails to Protect Unsophisticated Consumers in Fee Agreements With Lawyers, 10 Geo. J. Legal Ethics 581 (1997).

Participant, Ethical Issues Arising From Congressional Limitations on Legal Services Lawyers, 25 Fordham Urban Law Journal 357 (1998) (panel discussion).

The Year: 2075, the Product: Law, 1 J. Inst. Study of Legal Ethics 285 (1996) (paper delivered on the future of the legal profession at Hofstra University Law School's conference "Legal Ethics: The Core Issues").

Getting Personal, 58 Law & Contemp. Probs. 61 (Summer/Autumn 1995) (contribution to symposium on teaching legal ethics).

ARTICLES
(continued)

Against the Wall, 43 J. Legal Ed. 405 (1993) (ethical considerations for the scholar as advocate).

Participant, Disqualification of Judges (The Sarokin Matter): Is It a Threat to Judicial Independence?, 58 Brooklyn L. Rev. 1063 (1993) (panel discussion).

The New Old Idea of Professionalism, 47 The Record of the Assoc Bar of the City of N.Y. 147 (March 1992).

The Case of Jane Loring-Kraft: Parent, Lawyer, 4 Geo. J. Legal Ethics 115 (1990).

Taking L.A. Law More Seriously, 98 Yale L.J. 1607 (1989) (contribution to symposium on popular legal culture).

Protecting Lawyers Who Just Say No, 5 Ga. St. L. Rev. 1 (1988) (article based on Henry J. Miller Distinguished Lecture delivered at Georgia State University College of Law).

Model Rule 1.13(c) Gives the Wrong Answer to the Question of Corporate Counsel Disclosure, 1 Geo. J. Legal Ethics 289 (1987).

The Compelling Case Against Robert H. Bork, 9 Cardozo L. Rev. 33 (1987).

Ethics That Bite:  Lawyers' Liability to Third Parties, 13 Litigation 8 (Winter 1987).

Can a Good Lawyer Be a Bad Person?, 84 Mich. L. Rev. 1011 (1986).

Proving the Prejudice of Death-Qualified Juries After Adams v. Texas:  An Essay Review of Life in the Balance, 47 Pitt. L. Rev. 219 (1985), cited in Lockhart v. McCree, 476 U.S. 162, 197, 201 (1986) (Marshall, J., dissenting).

What We Talked About When We Talked About Ethics: A Critical View of the Model Rules, 46 Ohio St. L.J. 243 (1985).

The Quality of Mercy:  Constitutional Accuracy at the Selection Stage of Capital Sentencing, 18 U.C. Davis L. Rev. 1037 (1985).

Berger Redux, 92 Yale L.J. 731 (1983) (Review of Death Penalties by Raoul Berger).

Stephen Gillers

ARTICLES
(continued)

Selective Incapacitation:  Does It Offer More or Less?, 38 The Record of the Assoc. Bar City of N.Y. 379 (1983).

Great Expectations:  Conceptions of Lawyers at the Angle of Entry, 33 J. Legal Ed. 662 (1983).

Perspectives on the Judicial Function in Criminal Justice (Monograph, Assoc. Bar City of N.Y., 1982).

Deciding Who Dies, 129 U. Pa. L. Rev. 1 (1980) (quoted and cited as "valuable" in Spaziano v. Florida, 468 U.S. 447, 487 n.33 (1984) (Stevens, J., dissenting); also cited in Zant v. Stephens, 462 U.S. 862, 878 n.17, 879 n.19 (1983); Lockhart v. McCree, 476 U.S. 162, 191 (1986) (Marshall, J., dissenting); Callins v. Collins, 114 S.Ct. 1127, 1134 n.4 (1994) (Blackmun, J., dissenting); and Harris v. Alabama, 115 S.Ct. 1031, 1038-39 (1995) (Stevens, J., dissenting).

"In the Pink Room," TriQuarterly 124.

Lowering the Bar: How Lawyer Discipline in New York Fails to Protect the Public, 17 J. Legis. & Public Policy 485 (2014)

Numerous articles in various publications, including The New York Times, The Nation, American Lawyer, The New York Law Journal, The National Law Journal, Newsday, and the ABA Journal.  See below for selected bibliography.

**AWARDS**

**2015 Recipient of the American Bar Foundation Outstanding Scholar Award** for dedication to the regulation of and ethics in the legal profession.

**2011 Recipient, Michael Franck Award.** Michael Franck Award from the ABA's Center for Professional Responsibility. The Award is given annually for "significant contributions to the work of the organized bar….noteworthy scholarly contributions made in academic settings, [and] creative judicial or legislative initiatives undertaken to advance the professionalism of lawyers…are also given consideration."

**DVDS**

"Adventures in Legal Ethics and Further Adventures in Legal Ethics": videotape of thirteen dramatic vignettes professionally produced and directed and raising issues of legal ethics.  Author, Producer.  (1994)

"Dinner at Sharswood's Café," a videotape raising legal ethics issues. Author,  Producer. (1996)

"Amanda Kumar's Case," a 38-minute story raising more than two dozen legal ethics issues.  Author. (1998)

**TRIBUTES**
To Honorable Gus J. Solomon, printed at 749 Federal Supplement LXXXI and XCII (1991).

Truth, Justice, and White Paper, 27 Harv. Civ. R. Civ. Lib. L. Rev. 315 (1992) (to Norman Dorsen).

Irving Younger: Scenes from the Public Life, 73 Minn. L. Rev. 797 (1989).

**OTHER TEACHING**
Visiting Professor of Law, Harvard Law School, Winter 1988 Semester;

Adjunct Professor of Law, Yeshiva University, Cardozo Law School, Spring 1986, Spring 1987, and Fall 1988 Semesters.
Course:  The Legal Profession.

Adjunct Associate Professor of Law, Brooklyn Law School, 1976-78.

**PRIOR EMPLOYMENT**
1973 - 1978
Private practice of law
Warner and Gillers, P.C. (1975-78)

1974 - 1978
Executive Director
Society of American Law Teachers, Inc.

1971 - 1973
Executive Director, Committee for
Public Justice

1969 - 1971
Associate, Paul, Weiss, Rifkind,
Wharton & Garrison

1968 - 1969
Judicial Clerk to Chief Judge
Gus J. Solomon, Federal District Court
for the District of Oregon, Portland, Oregon

Stephen Gillers

Stephen Gillers

| | |
|---|---|
| **SELECTED TESTIMONY** | Testimony on "Nomination of Sandra Day O'Connor to the Supreme Court of the United States", Hearings, before the Senate Committee on the Judiciary, 97th Congress, 1st Sess., Sept. 11, 1981. |

Testimony on S. 2216, "Habeas Corpus Reform Act of 1982", Hearings, before the Senate Committee on the Judiciary, 97th Congress, 2d Sess., April 1, 1982.

Testimony on H.R. 5679, "Criminal Code Revision Act of 1981", Hearings, before the House of Representatives, Committee on the Judiciary, 97th Congress, 2d Sess., April 22, 1982.

Testimony on S. 653, "Habeas Corpus Procedures Amendment Act of 1981", Hearings, before the Senate Committee on the Judiciary, 97th Congress, 1st Sess., November 13, 1981.

Testimony on S. 8875 and A. 11279, "A Proposed Code of Evidence for the State of New York", before Senate and Assembly Codes and Judiciary Committees, February 25, 1983.

Testimony before A.B.A. Commission on Women in the Profession, Philadelphia, February 6, 1988.

Testimony on the nomination of William Lucas to be Assistant Attorney General for Civil Rights, before the Senate Committee on the Judiciary, 101st Congress, 1st Sess., July 20, 1989.

Testimony on the nomination of Vaughn Walker to be United States District Judge for the Northern District of California, before the Senate Committee on the Judiciary, 101st Congress, 1st Sess., November 9, 1989.

**PUBLIC LECTURES**
(partial list)

Tabor Lecture, Valparaiso University School of Law, April 12, 2007. This event consisted of two lectures. A public lecture was entitled "Here's the Gun: A Lawyer's Responsibility for Real Evidence." The Bench and Bar lecture, which will be published in the school's law review, is entitled "Virtual Clients: An Idea in Search of a Theory (With Limits)."

Paul M. Van Arsdell, Jr., Memorial Lecture, University of Illinois, College of Law, March 7, 2005: "Do Lawyers Share Moral Responsibility for Torture at Guantanamo and Abu Ghraib?"

Howard Lichtenstein Distinguished Professorship of Legal Ethics Lecture Series, "In Praise of Confidentiality (and Its Exceptions)," delivered at Hofstra University School of Law, November 12, 2003.

9

Henry J. Miller Distinguished Lecture, Georgia State University College of Law, May 11, 1988.  "Protecting Lawyers Who Just Say No."

First Annual South Carolina Bar Foundation Lecture, April 9, 1992, University of South Carolina Law School, Columbia, South Carolina.  "Is the Legal Profession Dead?  Yearning to Be Special in an Ordinary Age."

Philip B. Blank Memorial Forum on Attorney Ethics, Pace University School of Law, April 8, 1992.  "The Owl and the Fox: The Transformation of Legal Work in a Commodity Culture."

Speaker on Judicial Ethics, ABA Appellate Judges' Seminar and Flaschner Judicial Institute, September 29, 1993, Boston, Massachusetts.

Baker-McKenzie Ethics Lecture, Loyola University Chicago School of Law, October 13, 1993, Chicago, Illinois ("Bias Issues in Legal Ethics:  Two Unfinished Dramas").

The Sibley Lecture, University of Georgia School of Law, Athens, Georgia, November 10, 1993 ("Telling Stories in School: The Pedagogy of Legal Ethics").

Participant,  "Ethics in America" series (to be) broadcast on PBS 2007, produced by Columbia University Seminars on Media and Society.

Participant, "Ethics in America" series, broadcast on PBS February and March 1989, produced by Columbia University Seminars on Media and Society.

 Participant, "The Constitution: That Delicate Balance, Part II" series, broadcast on PBS February and March 1992, produced by Columbia University Seminars on Media and Society.

Lecturer on legal ethics and allied subjects in the U.S. and abroad at hundreds of seminars, CLE events, and conferences organized by private law firms, corporate law departments, the District of Columbia, Second, Fourth, Sixth, Ninth and Federal Circuit Judicial Conferences; American Bar Association; Federal Bar Council; New York State Judiciary; New York City Corporation Counsel; American Museum of Natural History; Practicing Law Institute; Law Journal Seminars; state, local and specialty bar associations (including in Oregon, Nebraska, Illinois, New York, New Jersey, Pennsylvania, Rhode Island, Vermont, and Georgia); corporate law departments; law schools; and law firms.

**LEGAL AND PUBLIC SERVICE ACTIVITIES**

Member, ABA 20/20 Commission, 2009- 2013 (appointed by the ABA President to study the future of lawyer regulation).

Chair, American Bar Association Center for Professional Responsibility, Policy Implementation Committee, 2004-2008 (Member 2002-2010).

Member, American Bar Association Commission on Multijurisdictional Practice, 2000-2002.

Consultant, Task Force on Lawyer Advertising of the New York State Bar Association (2005).

Retained by the New Jersey Supreme Court, in connection with the Court's review of the lawyer disciplinary system in New Jersey, to provide an "analysis of the strengths and weaknesses of California's 'centralized' disciplinary system" and to "report on the quality, efficiency, timeliness, and cost effectiveness of the California system...both on its own and compared with the system recommended for New Jersey by the Ethics Commission."  Report filed December 1993.  Oral presentation to the Court, March 1994.

Reporter, Appellate Judges Conference, Commission on Judicial participation in the American Bar Association, (October 1990-August 1991).

Member, David Dinkins Mayoral Transition Search Committee (Legal and Law Enforcement, 1989).

Member, Committee on the Profession, Association of the Bar of the City of New York (1989-1992)

Member, Executive Committee of Professional Responsibility Section, Association of American Law Schools (1985-1991).

Chair, 1989-90 (organized and moderated Section presentation at 1990 AALS Convention on proposals to change the ABA Code of Judicial Conduct).

Counsel, New York State Blue Ribbon Commission to Review Legislative Practices in Relation to Political Campaign Activities of Legislative Employees (1987-88).

Administrator, Independent Democratic Judicial Screening Panel, New York State Supreme Court (1981).

Stephen Gillers

<u>Member</u>, Departmental Disciplinary Committee, First Judicial Department  (1980 - 1983).

<u>Member</u>, Committee on Professional and Judicial Ethics, Association of the Bar of the City of New York (1979 - 1982).

**BAR MEMBERSHIPS**   STATE:

New York (1968)

FEDERAL:

United States Supreme Court (1972);
Second Circuit (1970);
Southern District of New York (1970);
Eastern District of New York (1970)

**LEGAL EDUCATION**   J.D. <u>cum</u> <u>laude</u>, NYU Law School, 1968
Order of the Coif (1968)
Dean's List (1966-68)
University Honors Scholar (1967-68)

**PRELEGAL**   B.A. June 1964, City University of New York
**EDUCATION**   (Brooklyn College)

**DATE OF BIRTH**   November 3, 1943

**OTHER ARTICLES**   (Selected Bibliography 1978-present)

1. Carter and the Lawyers, The Nation, July 22-29, 1978.

2. Standing Before the Bar, Bearing Gifts, New York Times, July 30, 1978.

3. Judgeships on the Merits, The Nation, September 22, 1979.

4. Entrapment, Where Is Thy Sting?, The Nation, February 23, 1980.

5. Advice and Consent, New York Times, September 12, 1981.

12

6.      Lawyers' Silence: Wrong . . . , New York Times, February 14, 1983.

7.      The Warren Court - It Still Lives, The Nation, September 17, 1983.

8.      Burger's Warren Court, New York Times, September 25, 1983.

9.      "I Will Never Forget His Face!", New York Times, April 21, 1984.

10.     Warren Court's Landmarks Still Stand, Newsday, July 29, 1984.

11.     Von Bulow, And Other Soap Operas, New York Times, May 5, 1985.

12.     Statewide Study of Sanctions Needed for Lawyers' Misconduct, New York Law Journal, June 6, 1985.

13.     Preventing Unethical Behavior - Something New in Model Rules, New York Law Journal, August 30, 1985.

14.     Proposed Model Rules Superior to State's Code, New York Law Journal, October 21, 1985.

15.     Five Ways Proposed to Improve Lawyer Discipline in New York, New York Law Journal, January 8, 1986.

16.     Poor Man, Poor Lawyer, New York Times, February 28, 1986.

17.     Proposals To Repair Cracks in Ethical Legal Behavior, New York Law Journal, April 17, 1986.

18.     Unethical Conduct: How to Deter It Through Education, Bar Leader (May/June 1986).

19.     The New Negotiation Ethics - Or Did Herb's Lawyer Do Wrong? New York Law Journal, June 2, 1986.

20.     The Real Stakes in Tort Reform, The Nation, July 19-26, 1986.

21.     Bernhardt Goetz: Vigilante Or Victim?, Toronto Star, September 10, 1986.

22.     The Message That the Goetz Trial Will Send, Newsday, August 31, 1986.

23.     Amending the Ethics Code - Solicitation, Pre-Paid Plans, Fees, New York Law Journal, November 10, 1986.

24.     Amending the Ethics Code - Conflicts of Interest, Screening, New York Law Journal, November 12, 1986.

25.     Amending the Ethics Code - Confidentiality and Other Matters, New York Law Journal,

13

November 13, 1986.

26.     No-Risk Arbs Meet Risk Justice, New York Times, November 23, 1986.

27.     The Meese Lie, The Nation, February 21, 1987.

28.     Amending State Ethics Code - Conflicts of Interest Gone Awry, New York Law Journal, May 18, 1987.

29.     "The Lawyers Said It Was Legal," New York Times, June 1, 1987.

30.     Feminists vs. Civil Libertarians, New York Times, November 8, 1987.

31.     Lessons for the Next Round in Picking a Justice, Newsday, November 11, 1987.

32.     We've Winked For Too Long, National Law Journal, December 21, 1987 (judicial membership in exclusionary clubs).

33.     No More Meeses, New York Times, May 1, 1988.

34.     In Search of Roy Cohn, ABA Journal, June 1, 1988 (book review).

35.     Do Brawley Lawyers Risk Serious Discipline?, New York Law Journal, June 22, 1988.

36.     Have the Brawley Lawyers Broken the Law?, New York Times, July 2, 1988.

37.     Report Demonstrates Why Meese is Unfit to Be Attorney General, Atlanta Journal and Constitution, July 24, 1988.

38.     Ethical Questions for Prosecutors in Corporate-Crime Investigations, New York Law Journal, September 6, 1988.

39.     Restoring Faith at Justice, National Law Journal, November 21, 1988.

40.     Is Bush Repeating Rockefeller's Folly?, New York Times, September 11, 1989.

41.     Standards Time, The Nation, January 29, 1990 (on the subject of legislative ethics).

42.     Abused Children vs. The Bill of Rights, New York Times, August 3, 1990.

43.     Words Into Deeds: Counselor, Can You Spare a Buck?, ABA Journal, November 1990.

44.     Bad Apples, ABA Journal at 96 (March 1991) (book review).

45.     The Gotti Lawyers and the Sixth Amendment, New York Law Journal, August 12, 1991.

46.     Justice or Just Us?  The Door to Dan Quayle's Courthouse Only Swings One Way, ABA

Journal (June 1992) at 109.

47. Fighting Words (What was once comical is now costly), ABA Journal (August 1992) at 102.

48. Sensitivity Training: A New Way to Sharpen Your Skills At Spotting Ethics Conflicts, ABA Journal (October 1992) at 107.

49. Under Color of Law:  Second Circuit Expands Section 1983 Liability for Government Lawyers, ABA Journal (December 1992) at 121.

50. Cleaning Up the S&L Mess: Courts Are Taking the Duty to Investigate Seriously, ABA Journal (February 1993) at 93.

51. All Non-Refundable Fee Agreements Are Not Created Equal, New York Law Journal (February 3, 1993) at 1.  (Analyzing appellate decision prohibiting non-refundable fees.)

52. The Packwood Case: The Senate Is Also on Trial, The Nation (March 29, 1993) at 404.

53. Conflict of Laws: Real-World Rules for Interstate Regulation of Practice, ABA Journal (April 1993) at 111.

54. Packwood II, The Nation (May 10, 1993) at 617.

55. Generation Gap, ABA Journal (June 1993) at 101.  (On the use of a boycott in response to the Colorado anti-gay initiative.)

56. Future Shocks, ABA Journal (August 1993) at 104.  (Looking back on the practice of law in the 21st century from the year 2103.)

57. A Rule Without a Reason, ABA Journal (October 1993) at 118.  (Criticism of the prohibition in Rule 5.6(b) against a lawyer agreeing not to restrict future practice in connection with a settlement.)

58. Too Old to Judge?, ABA Journal (December 1993) at 94.  (Supreme Court justices have life tenure.  Maybe they should not.)

59. Truth or Consequences, ABA Journal (February 1994) at 103.  (Discovery obligations.)

60. "Ethical Cannons," in Symposium - Twenty Years of Change, Litigation (Fall 1993).

61. Stretched Beyond the Limit, Legal Times (March 21, 1994) at 37.  (Analysis of the office of Counsel to the President in light of Bernard Nussbaum's resignation.)  [Same article was reprinted in the Connecticut Law Tribune, the Fulton County (Atlanta) Daily Report, and the Recorder (San Francisco).]

62. Putting Clients First, ABA Journal (April 1994) at 111. (Discussing cases on lawyers' fiduciary duty.)

15

Stephen Gillers

63.     Grisham's Law, The Nation (April 18, 1994) at 509.  (The effect of popular culture on Whitewater reporting.)

64.     The Elsinore Appeal: "People v. Hamlet", New York Law Journal (October 11, 1994) at 3. (Brief for Appellee, State of Denmark).  (This was a mock appeal from Hamlet's conviction for the murder of Claudius, Polonius, Ophelia, Laertes, Rosencrantz & Gildenstern, held at the Association of the Bar of the City of New York on October 11, 1994.)

65.     Billing for Costs and Disbursements: What Law Firms Can Charge and Clients Can Expect, monograph published 1995 by Pitney Bowes Management Services.

66.     Clinton Has A Right To Privacy, N.Y. Times, 12/21/95, at ____.

67.     "'Filegate' Was Bad Enough.  Now This?," N.Y. Times, 7/5/96, at A23. (Article criticizing proposal to privatize certain security investigations of government personnel.)

68.     "Whitewater: How to Build a Case Using a Tainted Witness,"  Los Angeles Times, 2/16/97, at M1.

69.     "Hillary Clinton Loses Her Rights," New York Times, 5/4/97, at E15.

70.     "Shakespeare on Trials," IV Federal Bar Council News 16 (June 1997).

71.     "Florida Backs Out On a Deal," New York Times, 10/10/97, at A23.

72.     "The Perjury Loophole," New York Times, 2/18/98, at A21 (discussion of perjury in connection with Kenneth Starr's investigation of President Clinton).

73.     "Any Method to Ginsburg's Madness?" Los Angeles Times, 3/15/98, at M1 (discussion of William Ginsburg's public defense of Monica Lewinsky).

74.     "Whitewater Made Easy," The Nation, 6/1/98, at 8.

75.     "A Highly Strategic Legal Chess Game," Los Angeles Times, June 7, 1998,  at M1 (Starr-Clinton legal maneuvers).

76.     "To Sleep . . . Perchance, to Dream," New York Law Journal, July 8, 1998, at 2.  (Humorous article about bored jurors.)

77.     "Clinton Is No Ordinary Witness," New York Times, 7/28/98, at A15.

78.     "The High Cost of an Ethical Bar," The American Lawyer, July/August 1998, at 87.

79.     "Clinton's Choice: Tell Truth or Dare to Gamble," Los Angeles Times, August 2, 1998, at M1.

80.      "Accurate Lies: The Legal World of Oxymorons," Los Angeles Times, August 30, 1998, at M1.

81.     "A Fool For a Client?" The American Lawyer, October 1998, at 74.  (President Clinton's legal representation in the Lewinsky representation.)

82.     "The Presidency: Out to End Clinton's Mess and Be Happy," Los Angeles Times, October 4, 1998, at M1.

83.     "Protecting Their Own," The American Lawyer, November 1998, at 118.

84.     "Can't We All Just Practice Together: Taking Down 'Trade Barriers' on Lawyers Here and Abroad," Legal Times, November 9, 1998, at 32.

85.     "Beyond the Impeachment Spectacle," Los Angeles Times, November 22, 1998, at M1.

86.     "The Perjury Precedent," New York Times, December 28, 1998, at A27.

87.     "From the Same Set of Facts: A Tale of Two Stories," Los Angeles Times, January 17, 1999, at M1 (about the Clinton impeachment trial).

88.     "The Decline and Fall of Kenneth Starr," Los Angeles Times, February 7, 1999, at M1.

89.     "The Truth About Impeachment," The American Lawyer, March 1999, p. 131.

90.     "The Double Standard," New York Times Book Review, March 21, 1999, at 13 (review of *No Equal Justice* by David Cole).

91.     "Four Officers, One Likely Strategy," New York Times, Saturday, April 3, 1999, at A15.

92.     "The Man in the Middle: Did George Ventura Step Over the Ethical Line?" The American Lawyer, May 1999, p. 80 (discussion of lawyer whistleblowing in light of *State v. George Ventura*). (Reprinted as "Whistleblower, Esq." in New York Law Journal, May 26, 1999 at page 2.)

93.     "Your Client Is A Corporation – Are Its Affiliates Clients Too?"  The New York Professional Responsibility Report, May 1999 , at 1.

94.     "Job Talk (Scenes from the Academic Life)," The American Lawyer, July 1999, at 161. (Satire about law school hiring.)

95.     "The Other Y2K Crisis," The Nation, July 26/August 2, 1999, at 4 (editorial about the year 2000 electoral races).

96.     "Walking the Confidentiality Tightrope," ACCA Docket 20 (September/October 1999) (remarks at ACCA's national conference in 1998).

97.   "Things Old & New – The Code Amendments," New York Professional Responsibility Report (September 1999), at 1.

98.   "Clinton's Chance to Play the King," New York Times,  Sept. 20, 1999 at A17.

99.   "Overprivileged," American Lawyer, October 1999 at 37.  (Discussion of First Amendment protection for journalists.)

100.   "Controlling Conflicts Between Old and New Clients,"  New York Professional Responsibility Report, January 2000 at 3.

101.   "How To Spank Bad Lawyers," American Lawyer, February 2000 at 41.

102.   "A Weak Case, But a Brave Prosecution," New York Times, Wednesday, March 1, 2000 at A23 (the Diallo case).

103.   "Conflicts of Interest in Malpractice Cases," New York Professional Responsibility Report, March 2000 at 1.

104.   "The Court's Picayune Power," New York Times, Thursday, April 20, 2000 at A29.

105.   "Some Misrepresentations Among Corporate Lawyers," New York Professional Responsibility Report, June 2000 at 1.

106.   "Was Hubbell Case About Getting Justice or Getting Even?" Los Angeles Times, June 18, 2000 at M2 (comment on the U.S. Supreme Court's decision in *United States v. Hubbell*, decided June 5, 2000).

107.   "Who Owns the Privilege After a Merger?" New York Professional Responsibility Report, July 2000 at 1.

108.   "Fighting the Future," The American Lawyer, July 2000 at 55.

109.   "Campus Visits Deconstructed," Newsweek: How To Get Into College, 2001 Edition at 46.

110.   "The Court Should Boldly Take Charge," New York Times, Tuesday, November 21, 2000 at A25 (Florida's presidential election recount).

111.   "Who Says the Election Has a Dec. 12 Deadline?"  New York Times, Saturday, December 2, 2000 at A19.

112.   "Motive Is Everything in the Marc Rich Pardon," New York Times, Saturday, February 17, 2001.

113.   "For Justice To Be Blind, Must Judges Be Mute?"  New York Times, Sunday, March 4, 2001 at Section 4, page 3.

114. "Should Supreme Court Justices Have Life Tenure?" Reprinted in *The Supreme Court and Its Justices* (Choper J., ed.) (ABA 2001).

115. Professionalism Symposium, 52 South Carolina L. Rev. 55 (2001) (closing remarks).

116. "No Lawyers To Call," New York Times, Monday, December 3, 2001 at A19 (ethical and constitutional obligations that will prevent lawyers from participating in military tribunals).

117. "Let Judicial Candidates Speak," New York Times, Thursday, March 28, 2002 at A31.

118. "The Flaw in the Andersen Verdict," New York Times, Tuesday, June 18, 2002 at A23.

119. "Why Judges Should Make Court Documents Public," New York Times, Saturday, November 30, 2002 at A17.

120. "It's an MJP World," ABA Journal, December 2002 at 51.

121. "Upholding the Law as Pretrial Publicity Goes Global," New York Times, Sunday, April 27, 2003, Sec. 4 at 14.

122. "Court-Sanctioned Secrets Can Kill," Los Angeles Times, Wednesday, May 14, 2003 (reprinted May 15, 2003 in Newsday).

123. "Make a List," New York Times, June 11, 2003 at 31 (advocating changes in the methods of judicial selection).

124. "Conflicted About Martha?" American Lawyer (September 2003) (analysis of Martha Stewart indictment).

125. "The Prudent Jurist," Legal Affairs, January/February 2004.

126. "On Knowing the Basic Rules of Advocacy," New York Times, February 8, 2004, Sec. 4 at 2 (cross-examination in the Martha Stewart trial).

127. "The Prudent Jurist," Legal Affairs, March/April 2004.

128. "Scalia's Flawed Judgment," The Nation, April 19, 2004 at 21.

129. "Scholars, Hucksters, Copycats, Frauds," Washington Post, April 25, 2004 at B3 (Outlook) (discussion of ethics of academics who put their names on newspaper opinion pieces written by industry).

130. "The Prudent Jurist," Legal Affairs, May/June 2004 at 17.

131. "Multijurisdictional Practice of Law: Merging Theory With Practice," 73 The Bar Examiner 28 (May 2004).

132.  "Tortured Reasoning," American Lawyer (July 2004) (analysis of government lawyer memos addressing the application of various treaties and laws to the treatment of Afghan prisoners).

133.  "Paying the Price of a Good Defense," New York Times, August 13, 2004.

134.  "Improper Advances:  Talking Dream Jobs with the Judge Out of Court," Slate.com, August17, 2005 (with D. Luban and S. Lubet).

135.  "Roberts' Bad Decision," Los Angeles Times, September. 13, 2005 (with D. Luban and S. Lubet).

136.  "No Privilege for Miers," The Nation, November 7, 2005

137.  "Senators, Don't Rubber-Stamp," USA Today, January 5, 2006 at 13A (discussing the Senate's advise and consent responsibility in connection with Alito nomination).

138.  Ethics Column, American Lawyer, page 61 (January 2006) (with Deborah Rhode).

139.  Ethics Column, American Lawyer, page 63 (April 2006) (with Deborah Rhode).

140.  "Bush Postpones 2008 Election," The Nation, August 14/21, 2006 (satire).

141.   "Free the Ulysses Two: Joyce's First U.S. Publishers Were Convicted of Obscenity. It's Time to Clear Them." The Nation, February 19, 2007.

142.  "Twenty Years of Legal Ethics: Past, Present, and Future," 20 Georgetown J. Legal Ethics 321 (2007) (symposium celebrating the 20th anniversary of the journal).

143.  "The Torture Memos," The Nation, April 28, 2008.

144.  "Bar None," American Lawyer (October 2008) (globalization of law practice and how it will effect regulation of the bar).

145.  2011 Michael Franck Award Acceptance Speech, 21 Professional Lawyer 6 (2011).

146.  "Time to Adapt to a Different Marketplace," New York Law Journal, March 27, 2012.

147.  "The Supreme Court Needs a Code of Ethics," Politico (Aug. 8, 2013) (with Charles Geyh).