# EX. 239

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND and those similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20 <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEES SAVINGS AND PROFIT SHARING PLAN, on behalf of itself and JAMES PEHOUSHEK-STRANGELAND, and all others similarly situated, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) No. 11-cv-11698 MLW |

## EXPERT DECLARATION OF CAMILLE F. SARROUF

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

I, Camille F. Sarrouf, Sr., Esq., hereby declare:

1.      I am a senior partner at Sarrouf Law, LLP.  I have been retained by Labaton Sucharow LLP ("Labaton Sucharow" or the "Firm") to provide several opinions relevant to the Special Master's inquiry regarding the payment in this litigation (the "SST Litigation") to Chargois & Herron LLP from the portion of the fee award allocated to Labaton Sucharow and two other law firms, Lieff Cabraser Heimann & Bernstein, LLP ("Lieff") and the Thornton Law Firm ("Thornton").   My opinions, which are discussed more fully below, can be summarized as follows:

- The Massachusetts Rules of Professional Conduct did not require that Chargois & Herron perform work on the SST Litigation in order to receive a portion of the fee award allocated to Labaton Sucharow, Lieff and Thornton (collectively, "Customer Counsel").

- Customer Counsel had no obligation to disclose to counsel who brought the ERISA cases ("ERISA Counsel") the fact that Chargois & Herron would receive a payment from the portion of the fee award allocated to Customer Counsel.

- Customer Counsel had no obligation to disclose to ERISA plaintiffs the fact that Chargois & Herron would receive a payment from the portion of the fee award allocated to Customer Counsel.

- Customer Counsel had no obligation to disclose to the Court the fact that Chargois & Herron would receive a payment from the portion of the award allocated to Customer Counsel.

1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## Background And Qualifications[1]

2.      I graduated from Bowdoin College in 1955, and earned my Juris Doctorate from the University of Texas in 1960.  I served as Special Assistant Attorney General – Eminent Domain Division for the Commonwealth of Massachusetts from 1960-1961.  I have been engaged in the private practice of law since that time, in a number of law firms.  My professional areas of practice include personal injury, aviation law, products liability, medical and professional malpractice, general liability, contracts, securities, and commercial litigation.  Although I have handled a wide variety of civil litigation over the course of my almost six decades in practice, the vast majority of my work has involved plaintiffs' contingency fee work.

3.      Over the course of my career, I have served as Plaintiffs' counsel in many litigation matters that had multiple attorneys representing the same or different plaintiffs, and in many litigation matters in which there was a referral fee (sometimes called an origination fee or forwarding fee) or some other fee sharing arrangement.  I thus have extensive, personal experience interacting and negotiating with other attorneys in connection with the allocation of attorneys' fees and attorneys' fee awards.

4.      In addition to practicing law, I served as an Adjunct Professor of Law for the New England School of Law from 1974-1993, where I taught Trial Advocacy and Trial Preparation.  In 1980 the school awarded me an Honorary Doctor of Laws degree.

5.      I served as the President of the Massachusetts Bar Association from 1998-1999, Vice President in 1996, and Treasurer in 1995.  I became a Fellow of the American College of Trial Lawyers ("ACTL") in 1983, and served as the State Chair for Massachusetts from 1991-

---

[1] My curriculum vitae is attached as Exhibit A.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

1993, Regent for the Northeast Region from 1998-2002, and Trustee of the ACTL Foundation

from 2007-2014.  I was also selected as a Fellow of the International Academy of Trial Lawyers

in 1999, and an Advocate for the American Board of Trial Advocates in 1989.  I served as the

President of the Massachusetts Academy of Trial Lawyers from 1986-1988, as a member of the

Board of Governors of the Association of Trial Lawyers of America from 1982-1986, and I am a

Fellow of the Massachusetts Bar Foundation, the American Bar Foundation, and the Roscoe

Pound Foundation.

      6.      In 1999, I served as the Chair of the Magistrate Review Committee for the United

States District Court for the District of Massachusetts.  I served on the Massachusetts

Commission on Judicial Conduct from 1990-1996, on the Recall Committee of the

Massachusetts Supreme Judicial Court from 1986-1990, and on the Massachusetts Judicial

Nominating Commission from 1980-1984.

      7.      I have been appointed a Discovery Master and Special Master by the

Massachusetts Superior Court, and have served as Mediator and Arbitrator by agreement of

counsel and at the request of the Massachusetts Superior Court.  I have testified on issues of legal

negligence and legal fees for Plaintiffs and Defendants in Massachusetts Superior Courts.  *See,*

*e.g., Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 154 (2008) (discussing expert testimony

presented at trial).

      8.      I have been retained in this case to provide the opinions concerning the issues set

forth in the first paragraph, above.  I am being compensated for providing this expert opinion on

an hourly basis.  My compensation is in no way contingent upon the content of my opinion.

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

<u>**Summary of Facts Relevant to Opinions**</u>

9.      In analyzing these issues, I have discussed the case with the counsel who retained

me, and reviewed certain documents produced in this case as well as the applicable law and

secondary sources relevant to my opinions.  I understand and assume the accuracy of the

following background facts relevant to the opinions I offer.

10.      In mid-2008, Arkansas Teacher Retirement System ("ARTRS") issued a Request

for Qualifications ("RFQ") which invited firms to submit qualifications to become additional

securities monitoring counsel for the retirement fund.  Chargois & Herron partner Tim Herron

had previously facilitated the introduction of Labaton Sucharow partners to certain officials in

Arkansas who played a role with respect to ARTRS.  Labaton Sucharow and Chargois & Herron

submitted a joint response to the RFQ.  Labaton Sucharow witnesses have testified that they

expected that if selected, both firms would work on any litigation that may be filed on ARTRS's

behalf.  The plan was that Labaton Sucharow would serve as the monitoring counsel and lead

counsel on any litigation matters, and Chargois & Herron, with its Arkansas connections and

presence, would work with the client.

11.      On October 13, 2008, ARTRS's Chief Counsel, Christa Clark, emailed Labaton

Sucharow partner Eric Belfi and advised that ARTRS had selected Labaton Sucharow as

monitoring counsel, but that ARTRS was "unable to process the state contract form" with

Chargois & Herron also listed.  I understand that Labaton Sucharow witnesses have testified that

they believed, as a result of Ms. Clark's email and other communications with her, that the Firm

was authorized to affiliate with Chargois & Herron on ARTRS matters.

12.      Belfi, Labaton Sucharow partner Chris Keller and Damon Chargois agreed that

Chargois & Herron would receive 20% of the gross attorney fees that Labaton Sucharow earns in

4

any case brought on behalf of ARTRS in which ARTRS is a named plaintiff and Labaton

Sucharow is lead or co-lead plaintiffs' counsel, subject to certain exceptions.  The parties

exchanged emails and draft versions of a written agreement, but never signed a final contract.

13.     On September 24, 2010 and February 8, 2011, Belfi sent engagement letters to

George Hopkins relating to the SST Litigation.  Both versions of the letter advised that the Firm

may divide fees with, or allocate fees to, other attorneys, upon a percentage basis or based upon

time spent in assisting in the matter, and that the division is the Firm's sole responsibility and

will not increase fees payable by ARTRS.

14.     In February 2011, the three Customer Counsel filed a putative class action against

State Street Bank and Trust Company ("State Street") on behalf of ARTRS.  (This case is

commonly referred to as the "Customer" portion of the SST Litigation, which is why Labaton

Sucharow, Lieff and Thornton are defined above as "Customer Counsel.")  Labaton Sucharow

informed Lieff and Thornton that it had a fee sharing obligation to Chargois & Herron.  All three

firms agreed to share the burden equally for that obligation.  In June 2016, after a settlement

agreement-in-principle had been reached, Garrett Bradley of Thornton negotiated an agreement

with Damon Chargois that, rather than calculating the payment as 20% of Labaton Sucharow's

portion of a fee award, Chargois & Herron would receive an amount equal to 5.5% of the total

fee award, with the funds coming from the three Customer Counsel's respective shares.

15.     In November 2012, the ARTRS case was consolidated for pretrial purposes with

two cases filed on behalf of individuals and plans seeking to assert claims against State Street

pursuant to the ERISA laws (referred to hereafter as putative "ERISA class members").  ERISA

Counsel negotiated with Customer Counsel and in December 2013 reached an agreement that

ERISA Counsel would receive 9% of any fee award, should one be entered at the conclusion of

5

the case.  The 9% was based upon the estimated amount of losses allegedly suffered by putative

ERISA class members when compared to putative class members in the customer portion of the

litigation.  In the end, Customer Counsel voluntarily increased ERISA Counsel's allocation to

10% and reduced their own to 90%.  As explained above, the payment to Chargois & Herron

came from Customer Counsel's 90% share of the overall fee award, not from ERISA Counsel's

10% share.

16.     The Customer Counsel firms did not advise ERISA Counsel of the payment to

Chargois & Herron.  Labaton Sucharow witnesses have testified that they did not believe the

payment needed to be shared with ERISA Counsel, because it would be paid out of Customer

Counsel's share of any fee award and therefore did not impact the amount that the class or

ERISA Counsel received.

17.     The Customer Counsel firms did not disclose the Chargois & Herron relationship

to the Court in connection with the fee petition or otherwise.  The Court did not inquire as to the

allocation of fees among any counsel.

18.     Upon approval of the settlement, the Court approved the fee award that plaintiffs'

counsel had jointly requested.  Thereafter, each of the three main ERISA firms received 1/3 of

the 10% of the attorneys' fee award that was allocated for ERISA Counsel.  I understand that

these three firms, in turn, paid portions of their shares to other firms with which they had fee-

sharing agreements.

6

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## Opinions

**I.     The Massachusetts Rules of Professional Conduct did not require that Chargois & Herron perform work on the SST Litigation in order to receive a portion of the fee award allocated to Customer Counsel.**

19.     Massachusetts Rule of Professional Conduct 1.5(e), which governs all forms of fee sharing in connection with matters subject to the Massachusetts Rules of Professional Conduct, does not require a referring or originating attorney to work on a matter in order to share the fee.

20.     Over the years, there have been a number of proposals to change Massachusetts Rule of Professional Conduct 1.5(e) and impose additional requirements, including (for example) a requirement that attorneys sharing a fee must be paid "in proportion" to work they have performed or must jointly represent the client.  After hearing objections from members of the bar, including myself, the Supreme Judicial Court has consistently declined to impose these additional requirements.

21.     As a result, in Massachusetts, attorneys routinely are paid referral fees or origination fees for work that another attorney performs.  In my view, these arrangements benefit clients because they encourage attorneys to pass work along to attorneys who are better suited to handle the representation.

**II.    Customer Counsel had no obligation to disclose to ERISA Counsel the fact that Chargois & Herron would receive a payment from the portion of the fee award allocated to Customer Counsel.**

22.     I understand that the plaintiffs' attorneys agreed in 2013, after the ARTRS case was consolidated for pretrial purposes with the two ERISA cases, that (i) Customer Counsel would receive 91% of any fee award generated in the litigation; and (ii) ERISA Counsel would receive 9% of any fee award.  I understand that this distribution was based, at least in part, on

7

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

relative losses to putative class members as the attorneys understood them to be at that time.  I further understand that when the case settled, the Customer Counsel voluntarily agreed to increase the share to the ERISA Counsel to 10%.

23.     I do not believe in these circumstances that Customer Counsel had an obligation to inform ERISA Counsel about the existence of the fee sharing arrangement with Chargois & Herron.  The split of 91% and 9% appears to have resulted from arms' length negotiations among plaintiffs' counsel.  The fact that Labaton Sucharow had an obligation to pay a share of its allocation to a third party, Chargois & Herron, or the fact that Lieff and Thornton agreed to contribute from their allocations toward that amount, would not impact the 9% (or ultimately the 10%) that ERISA Counsel received pursuant to the agreement that they negotiated.

24.     In my experience, it is common for plaintiffs' attorneys to have referral or origination obligations to other lawyers.  Where, as here, the existence of such an obligation did not impact the amount paid to ERISA Counsel, I am aware of no explicit or implicit rule that would require Customer Counsel to share with ERISA Counsel the existence of the obligations.  In my experience, plaintiffs' attorneys do not typically disclose these obligations to each other in circumstances such as this.

25.     I understand that certain of the ERISA Counsel have said during depositions that if they knew about the payment to Chargois & Herron, they would have, or may have, declined to join Customer Counsel in submitting a common fee petition, or attempted to renegotiate their agreement with Customer Counsel.  This testimony does not change my opinion.  Regardless of what they now say, I do not believe that ERISA Counsel were entitled to know about the payment to Chargois & Herron, nor do I believe that Customer Counsel were required to inform them of the payment.

8

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### III.   Customer Counsel had no obligation to disclose to ERISA plaintiffs the fact that Chargois & Herron would receive a payment from the portion of the fee award allocated to Customer Counsel.

26.     I understand that at all times in this litigation, ERISA Counsel represented and advocated on behalf of their clients, the named ERISA plaintiffs, as well as the putative ERISA class members.  I understand that Labaton Sucharow did not have an engagement letter with the named ERISA plaintiffs and Labaton Sucharow attorneys handling the SST Litigation did not consider themselves to have an attorney-client relationship with those plaintiffs or the putative ERISA class members prior to the certification of a class at settlement.

27.     Labaton Sucharow attorneys had an obligation to disclose the fee sharing agreement with Chargois & Herron to the Firm's client, Arkansas Teacher Retirement System, pursuant to Massachusetts Rule of Professional Conduct 1.5(e).  I do not believe that Labaton Sucharow had an obligation to make a similar disclosure to the ERISA plaintiffs or the putative ERISA class members.

28.     I understand that a class was certified by the Court at the conclusion of the case when the settlement was accepted, and that Labaton Sucharow was designated as "lead counsel" (which in my experience is primarily done for the convenience of the Court, to bring order to the litigation).  Nevertheless, I do not believe that Rule 1.5(e) required disclosure to or approval in writing from the ERISA plaintiffs or the entire settlement class.  In my experience and in my view, in class actions such as this, Massachusetts Rule of Professional Conduct 1.5(e) does not require an attorney to make a disclosure to an entire class.  Based on my understanding of the facts and the applicable rules, I believe that Labaton Sucharow's disclosure and consent requirements under Rule 1.5(e) only required disclosure to, and consent from, its immediate client, the Arkansas Teacher Retirement System.  In addition, in this case there were separate

9

lawsuits—the ERISA lawsuit (which was actually two separate cases) and the Customer

lawsuit—which were consolidated for pre-trial matters.  Labaton Sucharow was not counsel in

the ERISA lawsuit, which removes them one more step from a traditional attorney-client

relationship.

**IV.    Customer Counsel had no obligation to disclose to the Court the fact that Chargois & Herron would receive a payment from the portion of the award allocated to Customer Counsel.**

29.    Fed. R. Civ. P. 54(d)(2)(B)(iv) provides that fee arrangements must be disclosed

to the court only if ordered.  To my knowledge, there is no local rule, standing order, or order in

this case that required the parties to disclose fee arrangements to the Court.  Accordingly,

Customer Counsel were not obligated to disclose to the Court the payment to Chargois &

Herron.  The fact that Chargois & Herron did not perform work on this litigation does not impact

this opinion because, as set forth in my first opinion above, Massachusetts law does not require

counsel to work on a matter in order to receive a share of the fee.

30.    I understand that there has been some question about whether the fee sharing

arrangement should nevertheless have been disclosed even in the absence of a requirement,

under a general theory of "candor to the tribunal."  I do not believe such disclosure was required,

particularly where (as here) the payment of a portion of the fee to Chargois & Herron did not

affect what the clients or class members received.  The rule cited above sets forth what

information must be provided in a fee petition, and judges are free to ask for more information or

ask follow-up questions if they wish to know details that the drafters of the rule chose not to

require.  In my view, a general principle like candor to the tribunal is not sufficiently specific to

overcome the application of Fed. R. Civ. P. 54(d)(2)(B)(iv), which so clearly governs in this type

of situation.

10

31.     My opinion is consistent with my experience.  Referral fees, or origination fees, are very common in connection with plaintiffs-side litigation work.  If the payment does not impact the total amount of a fee paid or awarded (which I understand to have been the case here), and if the court does not request this detail, in my experience referral or origination fee arrangements are not normally disclosed to the court.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 31st day of October, 2017 in Boston, Massachusetts.


*/s/ Camille F. Sarrouf, Sr.*
Camille F. Sarrouf, Sr.


8339975

11

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# EXHIBIT A

# CAMILLE F. SARROUF

---

**Sarrouf Law, LLP**
**115 Broad Street, 4th Floor**
**Boston, MA 02110**
**TEL: (617) 227-5800**
**FAX: (617) 227-5470**

## PERSONAL:

Date Of Birth:    April 23, 1933
North Adams, Massachusetts

Residence:
Belmont, MA 02478

## EDUCATION:
University of Texas (J.D., 1960)
Bowdoin College (A.B., 1955)
Wilbraham & Monson Academy (1951)
Drury High School, North Adams (1950)
St. Joseph Grammar School, North Adams (1946)

## MILITARY:
ROTC Bowdoin College (1951-1955)
Active Duty AA Surface to Air Missile, (1955-1957)
Executor Officer, Field Artillery Battery T/O Division (1957-1960)

## PROFESSIONAL:

Private Practice Of Law:
Sarrouf Law, LLP Senior Partner

Admitted To Practice:
State of Texas - 1960
Commonwealth Of Massachusetts/1961
Federal District Courts: Vermont/1961; Massachusetts/1962
Supreme Court of the United States/1980

Special Assistant Attorney General — Eminent Domain Division
Commonwealth of Massachusetts
1961-1962

Special Assistant District Attorney
Middlesex County; Commonwealth of Massachusetts/1975

Adjunct Professor of Law 1974-1993
New England School of Law
(Trial Advocacy and Trial Preparation)

Professional Areas of Practice:
Personal Injury; Aviation Law; Products Liability; Medical and Professional Malpractice; General Liability; Contracts; Securities; and Commercial Litigation.

## BAR ASSOCIATION MEMBERSHIPS:

Massachusetts Bar Association
President, 1998-1999 President-
Elect, 1997 Vice President, 1996
Treasurer, 1995

American College of Trial Lawyers
Trustee ACTL Foundation, 2007-2014
Regent for Northeast Region, 1998-2002
State Chair for Massachusetts, 1991-1993
Fellow, 1983

Fellow, International Academy of Trial Lawyers, 1999
Advocate, American Board of Trial Advocates, 1989
President, Massachusetts Academy of Trial Lawyers, 1986-1988
Member, Board of Governors, Association of Trial Lawyers of America, 1982-1986
Fellow, Massachusetts Bar Foundation
Fellow, American Bar Foundation
Fellow, The Roscoe Pound Foundation

## CIVIC AND CHARITABLE:

Chairman, Board of Governors
  St. Jude Children's Research Hospital, 1994-1998, 2008-2009
Chairman/Board of Directors, American Lebanese Syrian
  Associated Charities, Inc., 1988-1990, 1991-1992
St. Jude Children's Research Hospital/ALSAC, Board of Governors & Directors, 1984-2015
Memphis, Tennessee
Chairman, Board of Trustees
  St. Jude Graduate School of Biomedical Sciences, 2016 -

National Director
Kahill Gibran Foundation, 1990-1994

General Counsel Pro Bono
Diocese of Newton for the Melkite Catholics of the
   United States, 1966—

## JUDICIAL APPOINTMENTS:

Chair/Magistrate - Review Committee
  U.S. District Court - District of Massachusetts, 1999

Member, Massachusetts Commission on Judicial Conduct, 1990-1996
Member, Recall Committee, Massachusetts Supreme Judicial Court, 1986-1990
Member, Massachusetts Judicial Nominating Commission, 1980-1984

Appointed Discovery Master & Special Master by the Superior Court

## LEGAL EXPERT EXPERIENCE:

Have testified on issues of legal negligence and legal fees for Plaintiff and Defendant in
Mass. Superior Courts for Suffolk & Middlesex County.

Have served as Mediator and Arbitrator by Agreement of Counsel and at request of the
Superior Court.

## HONORS:

Honorary Doctor of Laws
New England School of Law, June 1980
      (Cited: "For bringing to the classroom the excitement of the courtroom")

Endowment Honoree - Camille F. Sarrouf Scholarship
Social Law Library of Massachusetts
November - 1990

Distinguished Service Award
Nicholas G. Beram Veterans Association
November 18, 1990
      (Cited: For humane work, devotion and unique service to
      the people of our community in promoting the spirit of brotherhood)

American ORT Jurisprudence Award - 1994
      (Cited: For his public spiritedness, community achievement and deep concern
      for human life)

3

Wilbraham & Monson Academy
Distinguished Alumni Award, 1996

Ellis Island Medal of Honor Recipient - 2001
> (Cited: For his dedication, preservation and enhancement of American values and extraordinary service to his heritage and to humanity)

Massachusetts Academy of Trial Lawyers
Lifetime Achievement Award, 2008
> (Cited: For his vast contributions to the legal community, his belief and constant support of the Academy and his incredible generosity of spirit)

Papal insigne- Awarded Gold Medal
Pro Ecclesia at Pontifice
By Pope Paul VI, 1975
> (Cited: For his pro-bono efforts in the transfer of properties from the Latin Ordinaries to the newly established Melkite Catholic Diocese)

Cross of Jerusalem
Patriach Maximos V Hakim - 1983
> (Cited for providing legal counsel for more than twenty years, seeking neither compensation nor recognition)

4