# EX. 259

| | |
|---|---|
| **From:** | William Sinnott |
| **Sent:** | Wednesday, May 24, 2017 10:58 AM |
| **To:** | Kelly, Brian |
| **Cc:** | Lukey, Joan; Heimann, Richard M.; Fuller, Anthony E.; Elizabeth McEvoy |
| **Subject:** | Revised RFPs & Ints. for Thornton |
| **Attachments:** | Rev. First Set of RFPs to Thornton- ANNOTATED (5-23-17).DOCX; Rev. First Set of Ints to Thornton-ANNOTATED (5-23-17).DOCX |

Hi Brian:

Thanks for sending over your objections to the written discovery propounded on May 18, 2017.

As noted in my previous correspondence to the group, our meeting addressed a number of concerns raised by Labaton and Lieff, which in large part overlapped with Thornton's objections. In addition to prioritizing the information most needed for depositions and eliminating many RFPs and Interrogatories altogether, we respond to Thornton's objections (and clarify the scope of the requests) as listed below.

In the event that Thornton continues to object or raises new objections to the revised RFPs and Interrogatories attached, please send us an email detailing the nature of each request and corresponding Ints/RFP by no later than **Friday, May 26, 2017**. Again, we will consider all timely objections and do our best to further narrow the scope of eliminate extraneous information, if appropriate.

If the Firm is unable to complete the search by the date provided due to a large volume of responsive documents, please inform me in writing of the proposed search terms and total number of "hits." Should this be the case, we will try to work together to provide a list of relevant timekeepers and/or narrowed search terms.

Finally, as stated previously, if the Firm has already produced information requested as part of its prior document productions, please respond in writing with the specific date(s) or production and Bates nos. of all responsive documents. Such information need not be produced a second time.

Interrogatories

No. 1- Reference to "other representative matters" includes publicly-available information commonly listed on the Firm's website or shared with new or prospective clients. This interrogatory does not seek proprietary information.

No. 2- Stricken in its entirety for now. The Special Master reserves the right to propound additional discovery specifically to address the subject matter, experience and/or expertise of the Law Firm prior to its involvement in the SST Litigation, involving FX-based claims.

No. 4- Stricken in its entirety for now. The Special Master reserves the right to propound additional discovery specifically to address potential double-billing of Staff Attorney and attorney time between the SST Litigation and other, concurrent litigations in which the Firm was involved.

*Objection to Nos. 8 & 9-* Interrogatories seek (i) a narrative overview describing the Firm's theory of damages and/or the potential monetary recovery to the class; and (ii) an explanation of the risks considered by the Firm and other factors

that impacted the Firm's strategy or damage calculation. ***This information is directly relevant to determining the appropriateness of attorney's fees, hours billed, and fairness of the settlement reached.***

Nos. 10-11, 14- Strike the portion of each interrogatory seeking a description of the "basic substance" of certain communications referenced therein.

***Objection to No. 10-*** This interrogatory seeks only those communications between and among Plaintiffs' Law Firms, as described therein, relating to the State Street Litigation or foreign-exchange-based claims. ***This information is directly relevant to understanding the dynamics and course of the complex class action (7 years in duration) as well as to determining the relationship between the Plaintiffs' Law Firms and the background giving rise to a cost-sharing agreement between Lieff/Labaton and Thornton sharing the costs of certain staff attorneys.***

***Objection to No. 11-*** This interrogatory seeks only the Firm's <u>understanding</u> of the role played by the listed government agencies. ***This information is directly relevant and probative of the hours billed/total attorney hours reported in the Fee Petition as well as bears on the timing and terms of the Final Settlement in the State Street Litigation.***

***Objection to No. 12-*** This interrogatory seeks information about any relationship between any Thornton attorneys, including but not limited to Garrett Bradley, and any persons at the USAO, including but not limited to the Boston office of the USAO. Please explain the scope and nature of any conversations between Thornton and the USAO. It is limited to the conversations ***relating to the State Street Litigation***.  ***This information is directly relevant to and probative of the role played by each firm, the hours billed/total attorney hours reported in the Fee Petition, and bears on the timing and terms of the Final Settlement in the State Street Litigation***

***Objection to Nos. 14 & 16-*** This interrogatory seeks only those communications between and among Plaintiffs' Law Firms and ERISA counsel, as described therein, relating to the State Street Litigation or foreign-exchange-based claims. ***This information is directly relevant to understanding the dynamics and course of the complex class action (7 years in duration) as well as to determining the relationship between the Plaintiffs' Law Firms and the ERISA firms, and how that impacted the course of discovery employed by each in the State Street Litigation, including the sharing and/or lack of sharing of resources between and among the firms.***

***Objection to No. 15-*** This interrogatory seeks an overview of the litigation strategy employed by Thornton throughout the course of the Litigation. To the extent that Thornton's strategy changed at any time, please identify, generally, the time period or relevant event (i.e. Lobby Conference, Motion to Dismiss, access to State Street production) that caused a change in said strategy. ***This information is directly relevant to determining the appropriateness of attorney's fees, hours billed, and fairness of the settlement reached.***

Nos. 16-17- If the answer is "none," so state in your response.

***Objection to No. 17-*** This interrogatory seeks a general description and/or explanation of how the inclusion of the ERISA firms in the State Street Litigation impacted, if at all, the litigation strategy for the consumer class. ***This information is directly relevant to provide context for the breadth and scope of the Litigation, impacting the hours billed and utilization of Staff Attorneys, as well as the fairness/appropriateness of the final outcome/Fee Award rendered in the case.***

No. 19- Figures need not be exact; approximations or ranges for the total number of pages or GB are acceptable. The reference to "general description of the information contained in the production" may include brief descriptions for the various categories of documents, such as "real time trading transactions"; "internal State Street emails between traders and compliance"; and/or "foreign exchange market spreadsheets of exchange rates."

Nos. 19/29- To the extent these interrogatories overlap in substance, the Firm need not answer twice. However, insofar as one or more interrogatories seeks information that is not included in the other two, please respond to <u>all</u> sub-questions presented.

No. 34- Reference to "all other matters in which the Firm entered into a similar arrangement [] to share costs with other firms" refers to any other matters in which the firm agreed to share the costs of the time spent/billed by another firm's staff or contract attorneys, and reimbursed that other firm either directly or indirectly for that staff attorney time. If none, so state in your response.

*Objection to No. 48* - This interrogatory seeks information about any situation and/or circumstances, whether or not arising to a true "dispute," in which the Firm has ended its representation of a client/class representative prematurely or otherwise before the anticipated conclusion of a matter, whether due to insistence of the client/class representative or the Firm, and where the Firm sought payment from the client or the client paid for the work already performed by the Firm. To the extent an hourly rate was paid to the Firm for services rendered, please identify that rate. If another sum was paid, please provide that figure and the basis for that payment. *Any proprietary and/or privileged client information may be redacted. Moreover, this information is directly relevant to and probative of the "hourly rates" charged by the Firm to its clients.*

*Objections to Nos. 49-56- Information about how the Firm arrives at the hourly billing rates submitted in the Fee Petitions, including the rates submitted for Staff Attorneys used and/or paid for by the Firm, is directly relevant to and probative of the central issue in this case—appropriateness of the representations in the Fee Petition (and attorney billing rates reported therein) and the Fee Award in the State Street Litigation. The Firm's hourly billing rates throughout the course of the State Street Litigation (a 7 year period) is essential to fully evaluating this issue. Moreover, the nature of billing rates charged in other matters as well as in non-class action matters is directly relevant to determining whether the hourly rates charged in the State Street Litigation are "regular rates charged for their services, which have been accepted in other complex class actions."*

No. 56- This interrogatory seeks identification/description only of those instances <u>in the State Street Litigation</u> where the Firm billed an attorney at a higher or lesser rate than the rate determined by the Firm. Please explain the deviation in any such instance.

*Objection to No. 57-* This interrogatory seeks the Firm's general observations and understandings about the role played by the listed government agencies in progressing from the settlement in principle to the Final Settlement resolving the Litigation. *This information is directly relevant to and probative of the role played by each firm, the hours billed/total attorney hours reported in the Fee Petition, and bears on the timing and terms of the Final Settlement in the State Street Litigation*

*Objection to No. 66-* This interrogatory does not call for speculation, *but asks the Firm to agree or dispute with a central contention in the case regarding the appropriateness of the hourly billing rates submitted in the Fee Petition.*


<u>RFPs</u>

No. 1- As proposed by Lieff/Labaton, a hard drive containing the Catalyst database is acceptable. If you contend such production is barred under the terms of the protective order entered into with State Street's counsel during the State Street Litigation, please respond stating with specificity the nature of such an objection.

No. 2- As discussed with counsel yesterday, production of all documents marked "hot" or "smoking hot" in the Catalyst database is sufficient; the phrase "bearing on material issues" is, therefore, stricken.

No. 3: This request seeks documents relating to representation of class representatives in the State Street Litigation only. The reference to all documents "referring, relating to, or evidencing terms of the law Firm's representation of class representatives" relates to any written communications, emails, notes that set out the terms of an agreement <u>that is not otherwise reflected in a formal written agreement previously produced</u>, or any documents that contain terms that amend a formal agreement and is <u>not otherwise contained in another written agreement produced therein</u>.

*Objection to Nos. 4 & 5 (6 is now stricken)* : These requests seek only information, as described therein, from 2009-2011. To the extent any such information is privileged and/or bears on the attorney-client privilege, you may redact such privileged information. *This information is directly relevant to and probative of the hourly billing rate charged by the Firm and review of the Fee Award, two central issues in this case.*

*Objection to Nos. 7, 8, 9* :  Requests nos. 8 and 9 seek only those documents referenced therein from 2010-2011 and 2015-2016. Moreover, each of these requests seeks information about the typical and regular billing rates charged by the Firm for providing legal services notwithstanding the rates charged here. To the extent any such information is privileged and/or bears on the attorney-client privilege, you may redact such privileged information. *This information is directly relevant to and probative of the hourly billing rate charged by the Firm and review of the Fee Award, two central issues in this case.*

*Objection to No. 10-* This request seeks only those emails and/or other communications or documents soliciting opinions and/or retaining an expert to provide an opinion as described therein *with regard to Staff Attorneys only*, as well as *all* opinions, reports or work product received by the Firm from said experts or third parties.

No. 17- To the extent that a single 1099 or W-2 captures all compensation paid by the Firm directly to a particular Staff Attorney, the Firm need not produce the individual paystubs reflected on those documents. However, in the event a Staff Attorney received individual or intermittent payments from the Firm that is/are not reflected on a 1099 and/or W-2, please produce both the appropriate 1099/W-2 and all records of payment made by Thornton directly, in order to provide a complete record of all payments made in connection with that particular Staff Attorney's work on the State Street Litigation. If none, so state.

*Objection to No. 22-* This request seeks information solicited and/or maintained by the Firm from a third-party with the express purpose of assisting the Firm in litigating the legal and factual issues in the State Street Litigation. *This information is directly relevant to provide context for the breadth and scope of the Litigation, including as the nature of the Litigation impacts the hours billed and utilization of Staff Attorneys, as well as the fairness/appropriateness of the final outcome/Fee Award rendered in the case.* If Thornton did not retain an expert, so state in your response. Moreover, If you contend such production is barred under the terms of the protective order entered into with State Street's counsel during the State Street Litigation, please respond clarifying the scope of the protective order and how this request violates it.

*Objections to Nos. 26 & 27-* These requests seek work product produced by the Staff Attorneys working on the State Street Litigation, the nature of which varied over the 7-year course of the litigation. *This information is extremely probative of the central issue in the case concerning the appropriate billing rate for staff attorneys and the appropriateness of the rates submitted in the firms' Fee Petitions.*

*Objection to No. 30-* This request seeks communications, or other documents evidencing communications, between Thornton attorneys (including but not limited to Garrett Bradley) and attorneys at the USAO Boston/other offices to further confirm or clarify Thornton's role in the multi-faceted negotiation of the Final Settlement in the State Street Litigation. It is limited to the conversations relating to the State Street Litigation.  *This information is directly relevant and probative of the role played by each firm in the Litigation, the hours billed/total attorney hours reported in the Fee Petition, and bears on the timing and the fairness of terms of the Final Settlement.*

*Objections to No. 52-* This request seeks all work product, if any, produced by Michael Bradley. Like the Staff Attorneys, Michael Bradley was a licensed attorney who performed document review as part of his work on the State Street Litigation, the nature of which varied over the 7-year course of the litigation. *This information is extremely probative of the central issue in the case concerning the appropriate billing rate for Michael Bradley and/or the appropriateness of the rates submitted by Thornton in its fee petition.*

All the best,

Bill



**William Sinnott, Esq.**

One Beacon Street
Suite 1320
Boston, MA 02108-3106
T 617-720-5090
F 617-720-5092
wsinnott@dbslawfirm.com
www.dbslawfirm.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM,<br>on behalf of itself and all others similarly situated, | ) ) ) | No. 11-cv-10230 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN,<br>WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND,<br>and those similarly situated, | ) ) ) | No. 11-cv-12049 MLW |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY,<br>STATE STREET GLOBAL MARKETS, LLC and<br>DOES 1-20, | ) ) ) ) | |
| Defendants. | ) ) | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS<br>AND PROFIT SHARING PLAN, on behalf of itself, and<br>JAMES PEHOUSHEK-STANGELAND, and all others<br>similarly situated, | ) ) ) ) ) | No. 12-cv-11698 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) | |

**SPECIAL MASTER HONORABLE GERALD E. ROSEN'S (RET.) FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS TO THORNTON LAW FIRM, LLP**

Pursuant to Rule 53(c) of the Federal Rules and the Court's March 8, 2017 Order (pp. 3-4), Special Master Honorable Gerald E. Rosen (Retired), by his undersigned counsel, hereby requests that Thornton Law Firm, LLP produce the documents described below for inspection and copying at the offices of Donoghue Barrett & Singal, P.C., One Beacon Street, Suite 1320, Boston, Massachusetts 02108, within fourteen (14) days from the date of service hereof.

## DEFINITIONS

1.  The terms "you", "your", "the Firm", "the Law Firm", or "Thornton" refer to Thornton Law Firm, LLP, formerly known as Thornton & Naumes, LLP, and all of its employees, contractors, affiliates, agents, counsels, and representatives.

2.  The term "Lieff" refers to Lieff Cabraser Heimann & Bernstein, LLP, and all employees, agents, counsels, attorneys, and representatives.

3.  The term "Labaton" or "Labaton Sucharow" refers to Labaton Sucharow LLP, and all of its employees, contractors, affiliates, agents, counsels, and representatives.

4.  The term "Plaintiffs' Law Firms" refers to Labaton, Lieff, and/or Thornton, and their respective employees, contractors, affiliates, agents, counsels, and representatives, collectively and/or individually.

5.  The term "ERISA firms" or "ERISA counsel" refers to Brian McTigue and/or the McTigue Law Firm, the Law Offices of Keller Rohrback, LLP, Zuckerman Spaeder, LLP, Beins Alexrod, P.C., and any firms retained by one or more of the above, and all employees, agents, counsels, attorneys, and representatives.

6.  The term "ARTRS" refers to the Arkansas Teacher Retirement System and/or its Executive Director, George Hopkins, Esq.

7.    The term "State Street Litigation", "SST Litigation" or "Litigation" refers to

*Arkansas Teacher Retirement System, et al. v. State Street Corporation, et al.*, C.A. No. 1:11-cv-

10230-MLW, pending in the United States District Court for the District of Massachusetts.

8.    The term "State Street Document Review", "SST Document Review" or "Document

Review" refers to the review of hard copy and electronic documents produced as part of

discovery in *Arkansas Teacher Retirement System, et al. v. State Street Corporation, et al.*, C.A.

No. 1:11-cv-10230-MLW, pending in the United States District Court for the District of

Massachusetts.

9.    The term "State Street" refers to State Street Bank and Trust Company and/or State

Street Global Markets, defendants in the SST Litigation.

10. The term "settlement in principle" refers to the settlement agreement reached in

substance between counsel by and through mediation.

11. The term "Court" refers to the United States District Court for the District of

Massachusetts.

12. The term "Fee Petition" or "Fee Application" refers to the *Declaration of Lawrence

A. Sucharow in Support of Plaintiffs' Assented-To Motion for Final Approval of Proposed Class

Settlement and Plan of Allocation and Final Certification of Settlement Class and Lead

Counsel's Motion for An Award of Attorneys' Fees, Payment of Litigation Expenses, and

Payment of Service Awards to Plaintiffs* (Docket #104), and Exhibits 1-32 attached thereto, filed

with the Court in the State Street Litigation. In particular, "Fee Petition" in conjunction with one

or more of the individual firms, refers to the respective Exhibit (and exhibits attached thereto) in

which an individual law firm sought approval for payment of its respective fee and expenses

incurred in the SST Litigation, including all declarations, affidavits, and/or the Lodestar reports filed therewith.

13. The term "Motion for Attorneys' Fees" refers to Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Litigation Expenses, including the Memorandum in Support and exhibits, filed with the Court on or about September 15, 2016 and October 21, 2016, respectively (Docket #102, 108).

14. The term "Final Settlement" refers to the Stipulation and Agreement of Settlement dated July 26, 2016 (Docket #89).

15. The term "Fee Award" refers to a certain award of attorneys' fees of $74,541,250.00 and expenses and costs of $1,257,697.94, as approved by the Court in the Lawsuit by Order dated November 2, 2016.

16. The term "November 10, 2016 Letter" refers to the letter from David Goldsmith to Judge Wolf dated November 10, 2016 (Exhibit A to Docket #117), advising the Court of inadvertent errors in the Fee Petitions and Fee Order.

17. The term "December 17, 2016 Article" refers to the Boston Globe article entitled *Critics hit law firms' bills after class-action lawsuits*, published on or about December 17, 2016.

18. The term "hourly rates charged" refers to the hourly billing rates corresponding to work of an individual attorney or staff member of the firm, appearing on a fee petition submitted to the Court or otherwise charged to a client for work performed on a legal matter, including the rates listed on the Fee Petitions submitted in the SST Litigation.

19. The term "Staff Attorneys" refers to licensed attorneys working on a part-time or full-time basis for Lieff/Labaton or other firm, but who are not deemed "associates" or otherwise on a traditional partnership track.

4

20. The term "hourly clients" refers to all past, present, and prospective clients who agree to pay and/or are charged for legal services rendered on an hourly basis, notwithstanding the actual amount paid or collected.

21. The term "non-hourly clients" refers to all past, present, and prospective clients who do not pay for legal services on an hourly rate, such as clients paying a flat fee, retained through a contingency arrangement and/or class action litigation, or other non-hourly fee structure, notwithstanding the actual amount paid or collected.

22. Any word written in the singular also includes the plural and vice-versa.

23. In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," or "every," the intended meaning is inclusive rather than exclusive.

24. The term "any" and the term "all" are intended to mean "any and all."

25. As used herein, the term "or" and the term "and" shall mean "and/or" and vice-versa.

26. As used herein, the terms "relating to" or "referring to" or "concerning" or "constituting" or the like mean and include all documents that in any manner or form are relevant in any way to or bear upon the subject matter in question, including, without limitation, all documents which contain, record, reflect, summarize, evaluate, comment upon, transmit, refer to, or discuss that subject matter or that in any manner state the background of, or were the basis or bases for, or that record, evaluate comment upon, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at, your conclusions, opinions, estimates, calculations, positions, decisions, beliefs, assertions or allegations, that undermine, contradict, or  conflict with your conclusions, opinions, calculations, estimates, positions, beliefs, assertions, or  allegations, concerning the subject matter in question.

27.    The term "date" means the exact day, month, and year, if ascertainable, or the best approximation thereof if not.

28.    The term "communication" as used herein includes, without limitation, the following: conversations, telephone conversations, e-mails, text messages, social media communications, and other electronic transmissions of any kind, statements, discussions, debates, arguments, disclosures, interviews, consultation and every other manner of oral utterance, correspondence, or electronic or written transmittals of  information or messages of any kind.

29.    The term "document" shall mean those things described in Rule 34(a) of the Federal Rules of Civil Procedure. The terms "document" and "documents" are used herein in the broadest possible sense and mean written, typed, printed, recorded or graphic matter, however produced or reproduced of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to, e-mails, papers, notes, accounts, books, advertisements, letters,  memoranda, notes of conversations, contracts, agreements, drawings, telegrams, tape recordings, communications (as defined in paragraph 28 hereof), including inter-office and intra-office  memoranda reports, studies, working papers, corporate records, minutes of meetings, notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk  calendars, photographs, transcriptions or sound recordings or any type of personal or telephone  conversations or negotiations, meetings or conferences, or things similar to any of the foregoing,  and to include any data, information or statistics contained within any data storage modules, tapes, discs or other memory device, or other information retrievable from storage systems,   including but not limited to, computer-generated reports and printouts. If any document has been prepared in multiple copies which are not identical, each modified copy or

non-identical copy is a separate "document." The word "document" also includes data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices in a reasonably usable form.

30.     The term "draft" shall mean any earlier, preliminary, preparatory, proposed, or tentative version of all or part of a document, whether or not such draft was superseded by a later draft or final document and whether or not the terms of the draft are the same or different from the terms of the final document.

## INSTRUCTIONS

A.     Unless otherwise specified, these requests seek documents for the period from January 1, 2010 until the present.

B.     This document request ("Request") requires you to produce all documents called for herein that were created or originated by you, or that came into your possession, custody or control, from all files or other sources that contain responsive documents, wherever located and whether active, in storage, or otherwise.

C.     This Request shall be deemed to include any document now or at any time in your possession, custody, or control.  A document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you: (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (iv) as a practical matter, have been able to use, inspect, examine, or copy such document when you sought to do so.  If any requested document was, but no longer is, in your control, state the disposition of each such document.

D.      The obligation to produce the documents specified below is of a continuing

nature; your production is to be supplemented if at any time you acquire possession, custody, or

control of any additional responsive documents, or otherwise discover additional responsive

documents, between the time of initial production and conclusion of the investigation, to the

fullest extent required by the Federal Rules of Civil Procedure, the March 8, 2017 Court order,

and the Local Rules of this Court.

E.      Where only a portion of a document relates or refers to the subject indicated, the

entire document is to be produced nevertheless, along with all attachments, appendices and

exhibits.

F.      Each document produced in response to the Requests below should be clearly

categorized to indicate which Request(s) it is responsive to.

G.      If any document or portion thereof is withheld under a claim of privilege, you

shall produce so much of the document as is not subject to the possible claim of privilege, and

shall furnish a statement, signed by an attorney representing you, which identifies each document

or portion thereof for which a privilege is claimed, including the following information:

  (i)      The date of the document;

  (ii)     The name and title of the person who sent, authored, prepared, signed, or
           originated the document, or of the person who knows about the
           information contained therein;

  (iii)    The name and title of the recipient of the document;

  (iv)     All persons to whom copies of the document were furnished, along with
           such persons' job titles or positions;

  (v)      A brief description of the subject matter or nature of the document
           sufficient to assess whether the assertion of privilege is valid;

  (vi)     The specific basis upon which the privilege is claimed;

(vii)   With respect to any claim of privilege relating to an attorney, or action or advice or work product of an attorney, the identity of the attorney involved; and

(viii)   The paragraphs of this request to which such document responds.

H.      All documents shall be produced as they are kept in the ordinary course of business and in their original file folders with any identifying labels, file markings, or similar identifying features.  If there are no documents responsive to a category specified below, you shall so state in a writing produced at the time and place that documents are demanded to be produced by this request.

I.       Documents created or stored electronically must be produced in their original electronic format, and not printed to paper or PDF.  All electronically stored information ("ESI") shall be produced in electronic form (the "production set").  Each document will have its own unique identifier ("Bates number"), which must be consistently formatted across the production, comprising of an alpha prefix and a fixed length number of digits (e.g., "PREFIX0000001").  The production set shall consist of, and meet, the following specifications:

1.  <u>Image Files</u>.  All ESI will be rendered to single-page, black and white, Group IV *tagged image file* (".tif" or ".tiff") images with a resolution of 300 dpi, the file name for each page is named after its corresponding Bates number.  Records in which a color copy is necessary to interpret the document (e.g., photographs, presentations, AUTOCAD, etc.) will be rendered to higher resolution, single-page *joint photographic experts group* (".jpg" or ".jpeg") format.  Endorsements must follow these guidelines:

    a.  Bates numbers must be stamped on the lower right hand corner of all images.

    b.  Confidentiality must be stamped on the lower left hand corner of all images.

    c.  Other pertinent language may be stamped on the bottom center, or top of the images, as deemed necessary.

2.  <u>Load Files</u>.  All ESI must be produced with appropriate data load files, denoting logical document boundaries.  The following files should be included within each production set.

    a.  A Concordance delimited ASCII text file (".dat").

     i.    The .dat file will contain metadata from the original native documents, wherein the header row (*i.e.*, the first line) of the .dat file must identify the metadata fields.

     ii.    The .dat file must be delimited with the standard Concordance delimiters (the use of commas and quotes as delimiters is <u>not acceptable</u>):

          ASCII 020 [¶] for the comma character;
          ASCII 254 [þ] for the quote character; and
          ASCII 174 [®] for new line.

     iii.    All attachments, or *child* records, should sequentially follow the *parent* record.

     iv.    The following fields and metadata will be produced:

          Beginning Bates; Ending Bates; Beginning Bates Attachment; Ending Bates Attachment; Custodian; File Name; From; Recipient; CC; BCC; Subject; Date Sent; Time Sent; Last Modified Date; Last Modified Time; Author; Title; Date Created; Time Created; Document Extension; Page Count; MD5Hash; Text Path; and Native File Path.

    b.    Image cross-reference files, *Opticon* image file ("*.opt*") and *IPRO View Load* file ("*.lfp*"), which link images to the database and identifies appropriate document breaks.

    J.    If any document requested herein has been lost, discarded, or destroyed, that document so lost, discarded, or destroyed shall be identified in writing (produced at the time and place that documents are demanded to be produced by this request) as completely as possible, together with the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal and person disposing of the document.

## <u>DOCUMENTS REQUESTED</u>

    1.    The Catalyst and Relativity document databases created or used in the SST Litigation, as annotated, compiled and used in the course of the litigation and/or document review, including instructions, software, and anything else necessary to access and analyze the data therein. **[JULY 10]**

    2.    All so-called "hot docs," as understood or identified by the Law Firm, ~~and any other documents or information identified during the SST Litigation bearing on the material issues in the Litigation, including but not limited to liability and damages~~. **[JUNE 9]**

3. All engagement letters, fee agreements, retention letters, and/or other documents referring to, relating to, or evidencing terms of the Law Firm's participation in the SST Litigation and/or representation of class representatives. **[JUNE 9]**

4. All engagement letters, fee agreements, retention letters, RFPs, and/or other documents referring to, relating to, or evidencing terms and/or hourly rates associated with the Law Firm's representation of hourly clients, from ~~2008 to the present~~ *2009-2011*. **[JULY 10]**

5. All engagement letters, fee agreements, retention letters, RFPs, and/or other documents referring to, relating to, or evidencing terms and/or hourly rates associated with the Law Firm's representation of non-hourly clients, from ~~2008 to the present~~ *2009-2011*. **[JULY 10]**

~~6. All documents and/or communications relating to how the Law Firm records, accounts for and/or seeks reimbursement for hours billed by Staff Attorneys for whom is shared the costs in other class action or contingency cases, including the hourly rates the Law Firm would charge if successful, from 2010 to the present.~~

7. Copies of all billing rate tables, spreadsheets, fee binders, or other collection of the Law Firm's annual billing rates, from 2010 to the present.

8. All minutes, notes, recordings, memoranda or other documents relating to or created by the Law Firm during meetings to determine annual billing rates, from ~~2008 to the present~~ *2010-2011 and 2015-2016*. **[JUNE 9]**

9. All documents and/or communications relating to Firm's review and adjustment of annual billing rates, from ~~2008 to the present~~ *2010-2011 and 2015-2016*. **[JUNE 9]**

10. All documents and/or communications relating to the Law Firm's internal classification of costs and expenses, including but not limited to any ethical, legal, or factual opinions solicited by the firm by third parties regarding the classification of Staff Attorneys as fees vs. expenses. **[JUNE 1]**

~~11. A complete set of time records for all attorneys, including Staff Attorneys allocated to the Firm, and other Law Firm staff who worked on or contributed to the SST Litigation, including but not limited to hand-written time sheets/ledgers, emails, electronic entries, pre-bills, and/or client bills, including the hourly rate billed and/or corresponding to the hours recorded.~~

12. A complete set of time records for Michael Bradley's work performed on the SST Litigation, including hand-written notes, emails, ledgers or other notations reflecting hours worked.

13. ~~All documents referring to, relating to, evidencing or constituting the basis for and amounts of any costs and expenses billed, incurred or charged by the Law Firm for legal or other services rendered as part of the SST Litigation including but not limited to documents pertaining to the terms under which Staff Attorneys and/or third parties provided services to the Law Firm in the Lawsuit.~~

14. ~~All documents and/or communications relating to or evidencing the Law Firm's use of Catalyst in connection with the SST Document Review, including all records of time spent in the Catalyst database, costs incurred, and coding of electronic documents.~~

15. All documents and/or communications relating to or evidencing Michael Bradley's use of Catalyst in connection with the SST Document Review, including all records of time spent in the Catalyst database, costs incurred, and coding of electronic documents.

16. ~~All W-2s, 1099s, paystubs, or other documentation of payments made to the Firm attorneys and non-legal staff assigned to or who contributed to the SST Litigation, for work performed on the Litigation.~~

17. All W-2s, 1099s, paystubs, or other documentation of payments made directly to Staff Attorneys assigned to Thornton under the cost-sharing agreement with Lieff and/or Labaton, for work performed on the Litigation. **[JUNE 1]**

18. All documents referring to, relating to, evidencing or constituting discussions between the Law Firm and the Plaintiffs' Law Firms relating to sharing costs and/or expenses of the SST Document Review/SST Litigation, including but not limited to sharing the cost of Staff Attorneys, hosting costs for Catalyst database, and other expenses consistent with conducting voluminous document review. **[JUNE 9]**

19. All agreements, contracts, and/or memorialization of an arrangement to share the costs of certain Staff Attorneys allocated to the Firm by Labaton and/or Lieff, including the compensation, reimbursement, and/or invoicing of costs associated with the same. **[JUNE 9]**

20. All documents referring to, relating to, evidencing or constituting discussions with Labaton regarding the Firm's plan or intention to include Staff Attorney time as part of the Firm's Fee Petition and/or Lodestar calculation. **[JUNE 9]**

21. All documents referring to, relating to, evidencing or constituting discussions with Lieff regarding the Firm's plan or intention to include Staff Attorney time as part of the Firm's Fee Petition and/or Lodestar calculation. **[JUNE 9]**

22. All expert reports, factual or legal opinions, or other work product solicited from a third-party by the Law Firm in connection with factual and/or legal issues arising in the SST

Litigation, including but not limited to the foreign-exchange market, foreign-exchange trading practices, and custodial management of retirement funds. **[JULY 10]**

~~23.     All documents and/or communications relating to or evidencing discussions between and among the Law Firm, the Plaintiffs' Law Firms, and/or ERISA counsel regarding the allocation of a certain percentage of the Fee Award among counsel, including but not limited to agreements to pay ERISA counsel a fixed percentage of the total Fee Award.~~

24.     All written guidance, training manuals, policies/procedures, search criteria, other documents provided by the Firm to any Staff Attorneys for whom it shared the costs, relating to the SST Document Review, including but not limited to materials related to use of Catalyst database. **[JUNE 1]**

25.     All other documents relating to the SST Litigation, other than those responsive to Request No. 24 above, that the Law Firm provided to any Staff Attorneys for whom it shared the costs, including but not limited to case pleadings, mediation reports, legal memoranda. **[JUNE 1]**

26.     All written work product produced by Staff Attorneys allocated to the Firm for the SST Litigation/Document Review, including all memoranda, factual summaries, deposition preparation, written analyses, witness kits, summaries. **[JUNE 1]**

27.     A complete copy of all binder(s) containing discursive memoranda pertaining to the SST Litigation/SST Document Review, including all attachments. **[JUNE 1]**

~~28.     All presentations, memoranda, or other submissions, including potential exhibits, any plaintiffs' counsel prepared for or submitted to the mediator, including all exhibits thereto.~~

~~29.     All communications between the Law Firm and counsel for State Street relating to the SST Litigation, including but not limited to document productions, mediations, and settlement.~~

30.     All communications with the U.S. Department of Labor, including all local field offices, the U.S. Attorney's Office, the U.S. Department of Justice, and/or the U.S. Securities and Exchange Commission relating to the SST Litigation. **[JULY 10]**

~~31.     All documents relating to, referring to or evidencing a secondary review or quality control process of the SST Document Review performed by Staff Attorneys allocated to the Firm.~~

32.     All documents and/or communications between and among the Law Firm and its accounting and/or billing personnel relating to the accounting for, recording, and/or invoicing of Staff Attorneys for whom the Firm shared the costs. **[JUNE 1]**

~~33.     All invoices, requests for payment, paystubs, proof of payment, and/or similar documents sent to or received from Labaton pursuant to the cost-sharing agreement between Labaton and Thornton to share the costs of certain Staff Attorneys, including all emails or other communications related to the same.~~

~~34.     All invoices, requests for payment, paystubs, proof of payment, and/or similar documents sent to or received from Lieff pursuant to the cost-sharing agreement between Lieff and Thornton to share the costs of certain Staff Attorneys, including all emails or other communications related to the same.~~

35.     All documents relied upon by the Law Firm in preparing and filing the Firm's Fee Petition, including but not limited to expense reports, billing records, emails, invoices, and/or other records. **[JUNE 9]**

36.     All documents, other than those requested in Request No. 35 above, reviewed or considered by the Law Firm in calculating the Firm's Lodestar calculation. **[JUNE 9]**

37.     All documents relating to, referring to, or constituting the Law Firm's Fee Petition, including all drafts, spreadsheets, outlines, notes, emails. **[JUNE 9]**

~~38.     All documents relating to, referring to, or constituting the Motion for Attorneys' Fees, including all drafts, spreadsheets, outlines, notes, emails.~~

~~39.     All communications between and among the Law Firm, the Plaintiffs' Law Firms, and the ERISA firms, relating to preparation of the Motion for Attorneys' Fees and/or the Fee Petitions filed in the SST Litigation.~~

40.     All documents and/or communications relating to the discovery of billing errors disclosed in the November 10, 2016 Letter filed with the Court, including but not limited to communications between and among you, the Plaintiffs' Law Firms, class representatives, and/or the ERISA firms. **[JUNE 9]**

~~41.     All documents, including notes, outline, drafts and exhibits, explaining or attempting to correct any part of the Fee Petition(s).~~

42. ~~All documents illustrating, demonstrating, or establishing any errors you or anyone identified in any part of the Fee Petition(s).~~

43. All documents relating to, referring to, evidencing, or constituting the November 10, 2016 Letter, including all drafts, outlines, notes, and communications relating to the filing of that correspondence. **[JUNE 9]**

44. ~~All documents and/or communications relating to, referring to or evidencing corrective actions or subsequent review taken by the Law Firm after discovery of the billing errors disclosed in the November 10, 2016 Letter.~~

45. All documents and/or communications relating to the December 17, 2016 Article, including but not limited to communications between and among the Law Firm, the Plaintiffs' Law Firms, class representatives, and/or the ERISA firms. **[JUNE 9]**

46. All documents relating to, reflecting, or evidencing an agreement between the Firm and Michael Bradley to participate in the SST Litigation/Document Review. **[JUNE 9]**

47. All documents relating to, reflecting, or evidencing an agreement to pay Michael Bradley $500/hour for all work performed by Michael Bradley in the SST Litigation/Document Review. **[JUNE 9]**

48. All documents and/or communications relating to Michael Bradley's work on the SST Document Review between January 2009 and November 2016. **[JUNE 9]**

49. ~~All documents and/or communications relating to the Firm's agreement to compensation Michael Bradley at an hourly rate of $500/hour for his work in the SST Litigation/Document Review.~~

50. All 1099s, W-2s, paystubs, or similar documents evidencing payments made to Michael Bradley for his work on the SST Litigation/SST Document Review. **[JUNE 9]**

51. All documents and/or communications relating to, reflecting, or evidencing all other instances in which Michael Bradley performed work for or on behalf of the Firm, other than in the SST Litigation, including the hourly rates charged, the total hours billed, and the total compensation paid to Michael Bradley, if any. **[JUNE 9]**

52. All written work product produced by Michael Bradley as part of his involvement in the SST Litigation/SST Document Review, including all memoranda, factual summaries, deposition preparation, written analyses, witness kits, summaries. **[JUNE 9]**

53.     All documents you may contend support your Fee Petition for reimbursement of fees and/or expenses, which you have not produced thus far. **[JUNE 9]**


Date:  May _____, 2017                    **SPECIAL MASTER HONORABLE**
                                          **GERALD E. ROSEN (RETIRED),**

                                          By his Attorneys,

                                          _____
                                          William F. Sinnott (BBO #547423)
                                          Elizabeth J. McEvoy 9BBO #683191)
                                          DONOGHUE BARRETT & SINGAL, P.C**.**
                                          One Beacon Street, Suite 1320
                                          Boston, MA 02108
                                          (617) 720-5090
                                          (617) 720-5092 Facsimile
                                          wsinnott@dbslawfirm.com
                                          emcevoy@dbslawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this _____ day of May, 2017 a copy of the foregoing document was sent by first class mail to the following counsel of record.

_____

William F. Sinnott

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) | No. 11-cv-10230 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) ) | |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, | ) ) ) | No. 11-cv-12049 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, | ) ) ) ) | No. 12-cv-11698 MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE STREET BANK AND TRUST COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

**SPECIAL MASTER HONORABLE GERALD E. ROSEN'S (RET.) FIRST SET OF INTERROGATORIES TO THORNTON LLP**

Pursuant to Rule 53(c) of the Federal Rules of Civil Procedure and the Court's March 8, 2017 Order (pp. 3-4), Special Master Honorable Gerald E. Rosen (Retired), by his undersigned counsel, hereby propounds the following Interrogatories upon Thornton, LLP. The Special Master requests that Thornton, LLP answer the Interrogatories herein under oath and provide responses within fourteen (14) days from the date of service hereof, to: William F. Sinnott, Esq., Donoghue Barrett & Singal, P.C., One Beacon Street, Suite 1320, Boston, Massachusetts 02108.

## **DEFINITIONS**

1.      The terms "you", "your", "the Firm", and "the Law Firm" refer to Thornton, LLP, formerly known as Thornton & Naumes, LLP, and all of its employees, contractors, affiliates, agents, counsels, and representatives.

2.      The term "Lieff" refers to Lieff Cabraser Heimann & Bernstein, LLP, and all employees, agents, counsels, attorneys, and representatives.

3.      The terms "Labaton" and "Labaton Sucharow" refer to Labaton Sucharow LLP, and all of its employees, contractors, affiliates, agents, counsels, and representatives.

4.      The term "Plaintiffs' Law Firms" refers to Labaton, Lieff, and/or Thornton, and their respective employees, contractors, affiliates, agents, counsels, and representatives, collectively and/or individually.

5.      The term "ERISA firms" or "ERISA counsel" refers to Brian McTigue and/or the McTigue Law Firm, the Law Offices of Keller Rohrback, LLP, Zuckerman Spaeder, LLP, Beins Alexrod, P.C., and any firms retained by one or more of the above, and all employees, agents, counsels, attorneys, and representatives.

6.      The term "ARTRS" refers to the Arkansas Teacher Retirement System and/or its Executive Director, George Hopkins, Esq.

2

7.      The term "State Street Litigation", "SST Litigation" or "Litigation" refers to

*Arkansas Teacher Retirement System, et al. v. State Street Corporation, et al.*, C.A. No. 1:11-cv-

10230-MLW, pending in the United States District Court for the District of Massachusetts.

8.      The term "State Street Document Review", "SST Document Review" or

"Document Review" refers to the review of hard copy and electronic documents produced as part

of discovery in *Arkansas Teacher Retirement System, et al. v. State Street Corporation, et al.*,

C.A. No. 1:11-cv-10230-MLW, as performed by the plaintiffs in that case, pending in the United

States District Court for the District of Massachusetts.

9.      The term "State Street" refers to State Street Bank and Trust Company and/or

State Street Global Markets, defendants in the SST Litigation.

10.     The term "settlement in principle" refers to the settlement agreement reached in

substance between counsel by and through mediation.

11.     The term "Court" refers to the United States District Court for the District of

Massachusetts.

12.     The term "California Action" refers to the qui tam lawsuits originally filed under

seal in California and other states against State Street that was unsealed on or about October 20,

2009 by the intervention of the Attorney General for the State of California.

13.     The term "BNY Mellon Action" refers to the investigation and prosecution of the

multidistrict litigation entitled *In re Bank of New York Mellon Corp.* and related actions,

including but not limited to Civil Action 12-MD-02335 filed in the United States District Court

for the Southern District of New York.

14.     The term "Fee Petition" or "Fee Application" refers to the *Declaration of

Lawrence A. Sucharow in Support of Plaintiffs' Assented-To Motion for Final Approval of

Proposed Class Settlement and Plan of Allocation and Final Certification of Settlement Class and*

*Lead Counsel's Motion for An Award of Attorneys' Fees, Payment of Litigation Expenses, and Payment of Service Awards to Plaintiffs* (Docket #104), and Exhibits 1-32 attached thereto, filed with the Court in the State Street Litigation. In particular, "Fee Petition" in conjunction with one or more of the individual firms, refers to the respective Exhibit (and exhibits attached thereto) in which an individual law firm sought approval for payment of its respective fee and expenses incurred in the SST Litigation, including all declarations, affidavits, and/or the Lodestar reports filed therewith.

15.     The term "Motion for Attorneys' Fees" refers to Lead Counsel's Motion for An Award of Attorneys' Fees and Payment of Litigation Expenses, including the Memorandum in Support and exhibits, filed with the Court on or about September 15, 2016 and October 21, 2016, respectively (Docket #102, 108).

16.     The term "Final Settlement" refers to the Stipulation and Agreement of Settlement dated July 26, 2016 (Docket #89).

17.     The term "Fee Award" refers to a certain award of attorneys' fees of $74,541,250.00 and expenses and costs of $1,257,697.94, as approved by the Court in the Lawsuit by Order dated November 2, 2016.

18.     The term "November 10, 2016 Letter" refers to the letter from David Goldsmith to Judge Wolf dated November 10, 2016 (Exhibit A to Docket #117), advising the Court of inadvertent errors in the Fee Petitions and Fee Order.

19.     The term "December 17, 2016 Article" refers to the Boston Globe article entitled *Critics hit law firms' bills after class-action lawsuits*, published on or about December 17, 2016.

20.     The term "hourly rates charged" refers to the hourly billing rates corresponding to work of an individual attorney or staff member of the firm, appearing on a fee petition submitted

to the Court or otherwise charged to a client for work performed on a legal matter, including the rates listed on the Fee Petitions submitted in the SST Litigation.

21.     The term "Staff Attorneys" refers to licensed attorneys working on a part-time or full-time basis for Labaton, Lieff, and/or a third-party agency, but who are not deemed "associates" or otherwise on a traditional partnership track.

22.     The term "hourly clients" refers to all past, present, and prospective clients who agree to pay and/or are charged for legal services rendered on an hourly basis, notwithstanding the actual amount paid or collected.

23.     The term "non-hourly clients" refers to all past, present, and prospective clients who do not pay for legal services on an hourly rate, such as clients paying a flat fee, retained through a contingency arrangement and/or class action litigation, or other non-hourly fee structure, notwithstanding the actual amount paid or collected.

24.     Any word written in the singular also includes the plural and vice-versa.

25.     In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," or "every," the intended meaning is inclusive rather than exclusive.

26.     The term "any" and the term "all" are intended to mean "any and all."

27.     As used herein, the term "or" and the term "and" shall mean "and/or" and vice-versa.

28.     As used herein, the terms "relating to" or "referring to" or "concerning" or "constituting" or the like mean and include all documents that in any manner or form are relevant in any way to or bear upon the subject matter in question, including, without limitation, all documents which contain, record, reflect, summarize, evaluate, comment upon, transmit, refer to, or discuss that subject matter or that in any manner state the background of, or were the basis or bases for, or that record, evaluate comment upon, or were referred to, relied upon, utilized,

generated, transmitted, or received in arriving at, your conclusions, opinions, estimates, calculations, positions, decisions, beliefs, assertions or allegations, that undermine, contradict, or conflict with your conclusions, opinions, calculations, estimates, positions, beliefs, assertions, or allegations, concerning the subject matter in question.

29.     The term "date" means the exact day, month, and year, if ascertainable, or the best approximation thereof if not.

30.     The term "communication" as used herein includes, without limitation, the following: conversations, telephone conversations, e-mails, text messages, social media communications, and other electronic transmissions of any kind, statements, discussions, debates, arguments, disclosures, interviews, consultation and every other manner of oral utterance, correspondence, or electronic or written transmittals of information or messages of any kind.

31.     The term "document" shall mean those things described in Rule 34(a) of the Federal Rules of Civil Procedure. The terms "document" and "documents" are used herein in the broadest possible sense and mean written, typed, printed, recorded or graphic matter, however produced or reproduced of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to e-mails, papers, notes, accounts, books, advertisements, letters, memoranda, notes of conversations, contracts, agreements, drawings, telegrams, tape recordings, communications (as defined in paragraph 30 hereof), including inter-office and intra-office memoranda reports, studies, working papers, corporate records, minutes of meetings, notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings or any type of personal or telephone conversations or negotiations, meetings or conferences, or things similar to any of the foregoing, and to include any data, information or statistics contained

6

within any data storage modules, tapes, discs or other memory device, or other information retrievable from storage systems,  including but not limited to, computer-generated reports and printouts. If any document has been prepared in multiple copies which are not identical, each modified copy or non-identical copy is  a separate "document." The word "document" also includes data compilations from which  information can be obtained and translated, if necessary, by the respondent through detection devices in a reasonably usable form.

32.     The term "draft" shall mean any earlier, preliminary, preparatory, proposed, or  tentative version of all or part of a document, whether or not such draft was superseded by a later  draft or final document and whether or not the terms of the draft are the same or different from  the terms of the final document.

## INSTRUCTIONS

A.     Pursuant to Rule 53(c) of the Federal Rules of Civil Procedure and the Court's March 8, 2017 Order (pp. 3-4), you are required to answer the  following Interrogatories under oath and within 14 days, or within the time otherwise required by Court order.

B.     For each of the Interrogatories listed below, please include the full name(s) of all persons from the Law Firm (attorneys, staff, agents, consultants, or affiliates) who have knowledge of the information provided.

C.     These Interrogatories are deemed to be continuing and to require supplemental responses, if you obtain  additional, contradictory, or different information. Such supplemental answers shall be  filed  promptly upon the discovery by you of such supplemental information. Each Interrogatory is to  be answered separately and as completely as possible. The fact that an investigation is  continuing and discovery is not complete shall not be used as a reason for failure to answer any Interrogatory as fully as possible.

D.      If you refuse to answer any Interrogatory or any part thereof on the grounds of privilege, please identify the claimed privilege (i.e., attorney-client) and the nature of any information you refuse to disclose, referring specifically to the Interrogatory or any part thereof to which the claimed privilege applies, the form in which said information exists, and the grounds for the claimed privilege.

E.      If the answer to all or any part of an Interrogatory is not presently known by or available to you, include a statement to that effect, specifying the portion of the Interrogatory which cannot be completely answered.

## **INTERROGATORIES**

1.      Describe each of the Law Firm's practice area(s), including areas of specialty, special services offered, the total number of attorneys and staff, and a brief description of any representative matters. **[JUNE 1]**

2.      ~~Identify all other class actions or other litigations in which the Firm has been or is currently engaged in relating to the foreign-exchange market, mismanagement of retirement funds, and/or any other subject matter overlapping the allegations in the SST Litigation. Please include all such matters on which the Firm has worked, as counsel of record or otherwise, the complete case caption, the docket number, and the outcome.~~

3.      Describe in detail the Firm's involvement in the California Action and how that involvement assisted the Firm in the SST Litigation. **[JUNE 1]**

4.      ~~Identify all other class actions or other litigation in which the Firm was engaged during the pendency of the SST Litigation. For each action:~~

a. ~~Please identify the timekeepers who worked on the matter and provide their hourly rate(s);~~

8

~~b.   Please provide the detailed, itemized hourly billing entries for each timekeeper.~~

5.       Explain how and when the Law Firm became involved in the SST Litigation, including any conversations between and among the Firm, the Plaintiffs' Law Firms, and/or the ERISA firms. **[JUNE 1]**

6.       Describe the role played by the Law Firm in filing the substantive claims alleged in the SST Litigation, including the filing of the Complaint (Docket #1) and/or the Amended Complaint (Docket #10), a description of any legal or factual research performed, consultations with State Street, legal drafting and/or review of pleadings. **[JUNE 1]**

~~7.       Summarize the factual basis for State Street's liability and your/plaintiffs' contention that State Street was legally liable for damages to the class members.~~

8.       Describe the Firm's theory of damages, including an estimate of total damages to the customer and/or ERISA classes, whether this theory changed during the course of the SST Litigation, and if so, what factors affected the Firm's theory and total calculation of estimated damages. **[JUNE 1]**

9.       Identify and describe all risk factors you considered prior to getting involved in the SST Litigation, including any "bad facts," meritorious defenses and/or unsettled legal issues, or other circumstances that affected the potential outcome and total damages recoverable in the case. **[JUNE 1]**

10.      Describe the frequency and nature of communications between the Plaintiffs' Law Firms over the course of the Litigation. Please specify the attorneys with whom you dealt ~~and the basic substance of those conversations~~. **[JULY 10]**

11.      Describe the role of the U.S. Department of Labor, including any field divisions or offices, the U.S. Attorney's Office, the U.S. Department of Justice, and/or the U.S. Securities and Exchange Commission, in the SST Litigation ~~and the basic substance of the Law Firm's~~

~~communications with each agency throughout the course of the Litigation.~~ **[JULY 10]**

12.      Explain the Firm's relationship with the U.S. Attorney's Office, including the local Boston office, and identify and describe any conversations between Thornton and the U.S. Attorneys' Office relating to the SST Litigation. **[JUNE 9]**

~~13.      Explain the role played by ARTRS and/or George Hopkins in the SST Litigation, including Mr. Hopkins' substantive contributions to the pleadings and/or case strategy, and what, if any, role he had in the negotiation and mediation of the Final Settlement.~~

14.      Describe the frequency and nature of communications with ERISA counsel over the course of the Litigation. Please specify the attorneys with whom you dealt ~~and the basic substance of those conversations~~. **[JULY 10]**

15.      Explain the Law Firm's litigation strategy in pursuing the claims raised in the SST Litigation, including the strategy employed in mediation. Identify and describe all events that impacted or caused the Firm to change that strategy. **[JULY 10]**

16.      Explain any tensions and/or adversarial positions assumed between the ERISA counsel, on the one hand, and the Plaintiffs' Law Firms, on the other, including differences in litigation strategy, legal theories, damages, and/or theories of liability asserted during the SST Litigation. **[JULY 10]**

17.      Explain how the adversarial positions described above impacted or did not impact the Law Firm's strategy, including its discovery, mediation, and/or the settlement of the SST Litigation. **[JULY 10]**

18.      Describe in detail all agreements between the Firm/Plaintiffs' Law Firms, on the one hand, and the ERISA firms, on the other, to allocate to the ERISA firms a fixed percentage of the total Fee Award rendered by the Court in the SST Litigation. As to any agreement that did not represent the final agreement for allocation of the Fee Award, explain the reason for modifying a

previous agreement, including all persons involved in these discussions and their affiliation/firm. **[JUNE 9]**

19.     Describe in detail the nature and the scope of the SST Document Review, including the total number of pages and/or size of the productions, the nature and date of each document production(s) received from State Street, all other document production(s) received in connection with the Litigation, and a general description of the information contained in each production. **[JUNE 1]**

20.     Describe in detail Law Firm's participation in the SST Document Review, including any input into the overall discovery strategy and any oversight, supervision, quality control, or training of the Staff Attorneys as to technical and/or substantive (i.e. legal theories, key witnesses, theories of liability, damages, and critical topics) information. **[JUNE 1]**

21.     Explain the nature and scope of your interactions and/or communication with the Staff Attorneys allocated to the Firm as part of the SST Litigation, including any communications relating to specific documents or "hot docs" reviewed as part of the SST Document Review, questions concerning legal theories of the case, and/or timekeeping methods. **[JUNE 1]**

22.     Describe how the Law Firm utilized the Catalyst database, including all persons who had access to the database, any electronic and/or technical training provided to those individuals, and a description of the information maintained in the Catalyst database during the course of the SST Document Review. **[JUNE 1]**

23.     Describe in detail all documents destroyed and/or deleted from the Catalyst database, including the date, and explain why each document was deleted/destroyed. **[JUNE 1]**

~~24.     Please list all class actions or other litigations in the past five years in which the Firm has shared the costs for Staff Attorneys assigned to work on the matter, whether or not such costs were reported on the Firm's Fee Petition. For each matter, please list the full case caption,~~

11

~~the docket number, a brief description of the case, the outcome, the hourly rates charged by the Firm.~~

25.     Please list the full name and firm/affiliation of each Staff Attorney for whom the Thornton paid costs and/or expenses as part of the cost-sharing agreement entered into in the SST Litigation/Document Review. **[JULY 10]**

26.     For each of the Staff Attorneys listed above, please describe all compensation paid by the Firm to the Staff Attorney (including the total number of hours recorded for work on the SST Litigation/Document Review). **[JULY 10]**

27.     Explain how you determined the hourly rates charged for Lieff/Labaton Staff Attorneys for whom you shared costs, as reported in the Firm's Fee Petition. **[JUNE 9]**

28.     Identify any other individuals the Firm hired to work on the SST Document Review who were not Staff Attorneys, and explain their affiliation with the Law Firm, their employment status, and how they were compensated for their time. **[JUNE 1]**

29.     Explain in detail the job responsibilities and tasks performed by the Staff Attorneys assigned to the Firm, including but not limited to, coding, deposition preparation, creation of witness kits and similar work. **[JUNE 1]**

30.     Describe the process for assigning and reviewing factual, legal, and/or discursive memoranda prepared by Staff Attorneys, including how such memoranda were relevant to, used, and/or shared among counsel in the SST Litigation. **[JUNE 1]**

31.     Describe the Firm's process for collecting and recording the hours and rates of Staff Attorneys allocated to Thornton as part of the cost-sharing agreement with Lieff and/or Labaton. Identify and describe all timekeeping records you received from Lieff and/or Labaton as well as those maintained by the Firm. **[JUNE 1]**

32.     Describe the Firm's understanding of how fees, costs and/or expenses associated

with performance of discovery in the SST Litigation/SST Document Review would be shared

among the Firm, the Plaintiffs' Law Firms, and/or the ERISA firms, including but not limited to

who would be responsible for: compensating Staff Attorneys for hours worked; hosting Catalyst

and/or other electronic database(s); compiling "hot docs" and other documents relative to the

liability and/or damages theories; and/or other expenses associated with the SST Document

Review. **[JULY 10]**

33.     For each of the categories listed above, explain the Firm's understanding of how

those fees, costs and/or expenses would be reported to the Court in the event of a successful

verdict and/or settlement. **[JULY 10]**

34.     Explain the origin of the cost-sharing agreement between the Firm and Labaton

through which Firm agreed to pay costs associated with a certain number of Labaton Staff

Attorneys, including the names and descriptions of all other matters in which the Firm has

entered into similar arrangements (whether or not documented) to share document review costs

with other firms, prior to or after the SST Litigation. **[JUNE 1]**

35.     Explain the origin of the cost-sharing agreement between the Firm and Lieff

through which Firm agreed to pay costs associated with a certain number of Lieff Staff

Attorneys. **[JUNE 1]**

36.     Describe the Firm's understanding in early 2015 as to how the Firm would

account for the allocation/sharing of costs for certain of the Labaton and/or Lieff Staff Attorneys

in its Fee Petition, including how those Staff Attorney hours would be or would not be

represented on Labaton's and/or Lieff's respective Fee Petitions as well as your understanding as

to which firm was responsible for reporting the total number of hours worked by shared Staff

Attorneys to the Court. **[JUNE 1]**

~~37.     Has the Firm's understanding described above changed since 2015? If yes,~~

~~explain when and what prompted the change in understanding.~~

~~38.     Explain the Firm's current understanding of the any cost-sharing agreements between Thornton, on the one hand, and Labaton and/or Lieff, on the other, to allocate and/or share costs for certain of the Staff Attorneys assigned to work on the SST Litigation, whether formal or informal.~~

39.     Describe in detail the process through which Thornton compensated or paid Labaton for costs associated with Staff Attorneys allocated to the firm as part of the SST Litigation/Document Review, including the frequency, dates of payment, and total amount paid. **[JUNE 1]**

40.     Describe in detail the process through which Thornton compensated or paid Lieff for costs associated with Staff Attorneys allocated to the firm as part of the SST Litigation/Document Review, including the frequency, dates of payment, and total amount paid. **[JUNE 1]**

~~41.     Identify and describe all communications between the Firm and Labaton relating to the firms' cost-sharing agreement to share the costs of certain Labaton Staff Attorneys, including discussions regarding how those costs would be incorporated into the firms' respective Fee Petitions.~~

~~42.     Identify and describe all communications between the Firm and Lieff relating to the firms' cost-sharing agreement to share the costs of certain Lieff Staff Attorneys, including discussions regarding how those costs would be incorporated into the firms' respective Fee Petitions.~~

43.     Explain how Michael Bradley, Esq. became involved in the SST Litigation/Document Review and summarize all communications between the Firm and Michael Bradley relating to his potential involvement in the matter. Please identify all individuals who

either participated in these discussions or had knowledge of Michael Bradley's involvement prior to preparing the Fee Petition. **[JUNE 9]**

44.     Explain how the Firm and Michael Bradley agreed that Michael Bradley would receive an hourly rate of $500/hour as compensation for work he performed in the SST Litigation/Document Review. Please identify all individuals who participated in these discussions and/or had knowledge of the $500/hour rate prior to preparing the Fee Petition. **[JUNE 9]**

45.     Identify and describe all work performed by Michael Bradley for or on behalf of the Firm, other than work performed as part of the SST Litigation, including the nature of that work, the total number of hours recorded, and the hourly rate/total compensation paid to Michael Bradley. **[JUNE 9]**

46.     Identify and describe all communications relating to Michael Bradley's participation in the SST Litigation/Document Review from January 2009 through November 2016, including relating to compensation or the hourly billing rate that the Firm would charge for Michael Bradley's time spent on the matter. **[JUNE 9]**

47.     Explain how the Firm supervised and/or performed quality control of the work performed by Michael Bradley in the SST Document Review, including the name, title, and nature of any supervising individual. **[JUNE 9]**

48.     Please describe any previous matters, whether based on a contingency, hourly, or other fee arrangement, in which the Firm engaged in a fee dispute with a client or class representative prior to the conclusion of the representation. For each such matter, explain how that fee dispute was resolved and any hourly rate/quantum meruit applied for work performed. **[JULY 10]**

49.     Explain how the Law Firm determines annual billing rates for all attorneys. Please identify and describe all factors considered and/or resources relied upon in making these

15

determinations. **[JUNE 9]**

50.     Please explain how the process described above does or does not vary in determining billing rates charged to hourly clients and why. **[JUNE 9]**

51.     Please explain how the Firm determines the hourly rates charged for Staff Attorneys employed or allocated to the Firm, Firm staff, independent contractors and/or other individuals who participate in legal matters but are not associates or partners at the Firm. **[JUNE 9]**

52.     Please list all of the Firm's hourly rates charged to hourly clients for each of the years 2010-2016. For each attorney, please list the relative experience level. **[JULY 10]**

53.     Please list all of the Firm's hourly rates charged to non-hourly clients (whether in class action or other contingency-fee litigation) for each of the years 2010-2016. For each attorney, please list the relative experience level. **[JULY 10]**

54.     Please list all of the hourly rates charged or associated with any matters in which the Firm has acted as local counsel for each of the years 2010-2016. For each attorney, please list the relative experience level. **[JULY 10]**

55.     Explain how the Firm adjusts its hourly rates to reflect the geographic region in which a matter is filed/pending. If the Firm does not adjust its rates, explain why not. **[JUNE 9]**

56.     Identify and describe all instances in which the Firm has billed an attorney at a lesser or higher rate than the annual rate previously determined for that particular year(s) and explain why that decision was made. **[JULY 10]**

57.     Describe in detail the process for finalizing the term sheet and Final Settlement in the SST Litigation, including the role of the U.S. Department of Labor, U.S. Attorney's Office, U.S. Department of Justice and/or the U.S. Securities and Exchange Commission in the negotiations. **[JULY 10]**

58.      Describe in detail how the Firm prepared its Fee Petition and identify all individuals who assisted in the preparation and the nature of their contribution(s). **[JUNE 9]**

59.      Describe in detail any review or steps taken to scrutinize or verify the time reported by the Law Firm, including time reported by Staff Attorneys allocated to the Firm, prior to submitting the Firm's Fee Petition/Lodestar calculation. If the answer is none, explain why. **[JUNE 9]**

60.      Describe what, if any, steps the Law Firm took to review, verify, or compare the Fee Petitions and/or Lodestar calculations prepared by the Plaintiffs' Firms or ERISA firms with the Firm's Fee Petition prior to filing its Fee Petition with the Court. If no action was taken, explain why not. **[JUNE 9]**

61.      Identify and describe all communication the Firm had with the Plaintiffs' Law Firms and/or ERISA counsel relating to the Firm's preparation of the Fee Petition, including but not limited to preparation of the Lodestar calculation, the inclusion of the Lieff and/or Labaton Staff Attorneys for whom the Firm had paid costs, calculation of a Lodestar multiplier, and reasonableness of attorneys' fees. **[JUNE 9]**

62.      Describe how the Law Firm and/or the Plaintiffs' Law Firms arrived at a total fee percentage roughly equal to 25% of the final Fee Award. Please explain whether the Firm prepared its Lodestar calculation to achieve a 25% award of the total settlement amount. **[JULY 10]**

63.      Identify all billing entries, costs and/or expenses incurred by the Firm during the SST Litigation that the Firm did <u>not</u> include in its Fee Petition/Lodestar calculation, and the reasons therefor. **[JUNE 9]**

64.      Explain the significance of the statement made in Paragraph 4 of the *Declaration of Garrett J. Bradley, Esq. On Behalf of Thornton Law Firm, LLP In Support of Lead Counsel's*

17

*Motion for An Award of Attorneys' Fees and Payment of Expenses (*Docket #104-16), affirming that the hourly rates included in Exhibit A to the *Declaration* are the Firm's "regular rates charged for their services, which have been accepted in other complex class actions." Please describe any other instances in which the Firm has submitted a Fee Petition with the same or similar language. **[JUNE 9]**

65.     Explain the significance of the above-quoted statement as it applies to Michael Bradley's rate of $500/hour. **[JUNE 9]**

66.     Do you contend that the rates listed in the Firm's Fee Petition represent the prevailing rates in the community for similar services performed by lawyers of reasonably comparable skill, experience and reputation for each of the respective tasks performed? Why or why not? **[JUNE 9]**

67.     Identify any errors in your Fee Petition, and explain each step or action taken to correct each error, including all documents or information consulted or relied upon in making the correction(s). **[JULY 10]**

68.     Describe when and how the Law Firm first learned about the Boston Globe's inquiry into the Fee Award and underlying billing practices employed by the Firm and other counsel in the SST Litigation that preceded the publication of the December 17, 2016 Article.

69.     Describe when and how the Law Firm first identified duplicative billing entries reflected in the Fee Petitions submitted by Lieff and/or Labaton and describe what actions, if any, the Firm took to review, confirm and/or correct those errors. **[JUNE 9]**

70.     Describe in detail the Law Firm's involvement in drafting the November 10, 2016 Letter, including the full names of all individuals who contributed to the Letter or underlying review in any way, internal review performed by the Firm, and all individuals outside the firm who reviewed and/or contributed to the Letter and the nature of their contribution(s). **[JUNE 9]**

71.     To the extent the Firm was involved in the drafting of the November 10, 2016 Letter, identify and describe all documents reviewed or relied upon by Firm as part of its involvement. **[JUNE 9]**

72.     ~~State the total number of class members and the estimated recovery or settlement amounts, net of fees and expenses, due to each class member.~~

73.     ~~Itemize the total estimated damages to the ERISA and non-ERISA plaintiffs and summarize the factual basis for the estimate.~~

74.     Identify, in detail, any additional errors in any communications with the Court or with the Special Master, since filing of the Fee Petition(s) and explain each step or action taken to correct each error, including all documents or information consulted or relied upon in making the correction(s). **[JUNE 9]**

75.     Identify and explain any mistakes you have identified in the any of the Fee Petitions, the Motion for Attorneys' Fees, and/or Fee Award, not described above. **[JUNE 9]**

76.     Identify any other individuals, not listed above, who have knowledge of the Interrogatories and/or the SST Litigation and explain the general nature of such knowledge. **[JUNE 9]**

77.     Identify and describe the steps taken by the Firm to identify documents responsive to the corresponding Requests for Production of Documents served by the Special Master including, without limitation, the name and title of those involved, the process undertaken, the database and documents searched, and the parameters of any electronic search including date range, timekeepers and search terms. **[JULY 10]**

78.     Identify with specificity sufficient to constitute a valid response to a request for production of documents, any documents identified by you as responsive to the Special Master's Request for Production of Documents but withheld from production to the Special Master on

grounds of any evidentiary or other privilege or otherwise including (a) the type of document; (b) its date if any; (c) any identifying marks such as bates stamp or other numeric designation; (d) the reason you withheld it from production; and (e) the current location of the document. To the extent any such document or other responsive document has been destroyed, identify (a) the type of document; (b) its date, if any; (c) the date of its destruction; (d) the circumstance thereof; and (e) the persons involved therein. For each such person, please provide their name, current or prior title or position with the Law Firm, the date, if any, of termination of employment with the Law Firm and the reason therefor, and the person's last known residential and business address. **[JULY 10]**

79.    Identify the timekeeping, accounting, and billing software systems utilized by the Law Firm to record and bill attorney time charges, costs and expenses associated with legal and other services rendered by the Law Firm in connection with the SST Litigation and the persons within the Law Firm with the most knowledge and responsibility for the system and operation. **[JULY 10]**

Date:  May 18, 2017                        Respectfully submitted,

                                           SPECIAL MASTER HONORABLE
                                           GERALD E. ROSEN (RETIRED),
                                           By his Attorneys,


                                           _____
                                           William F. Sinnott (BBO #547423)
                                           Elizabeth J. McEvoy (BBO #683191)
                                           DONOGHUE BARRETT & SINGAL, P.C.
                                           One Beacon Street, Suite 1320
                                           Boston, MA 02108
                                           Telephone:  (617) 720-5090
                                           Facsimile: (617) 720-5092
                                           wsinnott@dbslawfirm.com

emcevoy@dbslawfirm.com

## **CERTIFICATE OF SERVICE**

I, William F. Sinnott, hereby certify that I have caused a copy of the foregoing document to be served upon Brian T. Kelly, Esquire, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, by electronic mail and first class mail, postage prepaid, this 18th day of May, 2017.

_____

William F. Sinnott