# EX. 262

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br> Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 12-cv-11698 MLW |

## MEMORANDUM OF LABATON SUCHAROW LLP REGARDING RULE 11

Labaton Sucharow LLP ("Labaton" or the "Firm") respectfully responds to the Special

Master's suggestion, raised for the first time on April 20, 2018 after the completion of expert

8646291v1

disclosures and depositions, and after the final written submissions[1] and oral arguments, that

Labaton, through one of its partners, violated Fed. R. Civ. P. 11 ("Rule 11").  For the reasons

explained below, this suggestion is incorrect as a matter of law.

## I.      PROCEDURAL BACKGROUND

During the course of these lengthy proceedings, neither the Special Master nor his expert

Prof. Stephen Gillers ("Prof. Gillers") ever suggested that Labaton had violated Fed. R. Civ. P 11

("Rule 11"), including with regard to its payment of a bare referral fee to Damon Chargois (the

"Chargois Agreement").  As argued below, Labaton respectfully posits that this was not a matter

of oversight – indeed,  a charge of violation of Rule 11 was leveled against another Customer

Class Counsel firm – but was rather a recognition by the Special Master and Prof. Gillers that

Labaton had committed no such violation.

On February 23, 2018, Prof.  Gillers submitted an 85-page report (the "Gillers Report")

that painstakingly challenged conduct of the three Customer Class Counsel firms, and (unfairly)

accused Labaton of violating a variety of rules largely focused on the Massachusetts Rules of

Professional Conduct.  Not one sentence of the Gillers Report suggested that Labaton had

violated Rule 11.  In contrast,  Prof. Gillers devoted an entire section of his Report to explicating

his legal opinion[2] that a partner of The Thornton Law Firm violated MRCP 3.3(a) and 8.4(c) ***and***

---

[1]      Labaton appreciates the Special Master's acquiescence in the Firm's request that it be
permitted an opportunity to argue in opposition to this belated theory and apologies for the fact
that the required twenty-four hour turn-around obviates its ability to present a more fulsome
analysis.  In addition, the Special Master's Report is apparently on the verge of being submitted
to a vendor for the addition of hyperlinks requested by the Court, thereby throwing into question
whether the arguments contained in this Memorandum can or will be meaningfully considered.
[2]      From the time of the Special Master's revelation that he intended to use an academic to
express his legal opinions regarding alleged violations of the Federal Rules of Civil Procedure
and the Massachusetts Rules of Professional Conduct, Labaton has taken the position that expert
opinions cannot be proffered on matters of law, e.g., whether a Federal Rule or a rule of
professional conduct has been violated by a party.  If a Master cannot offer recommendations on

Rule 11. Gillers Rep. at 79. Accordingly, lacking notice that the Special Master viewed Labaton as a target of a Rule 11 finding, Labaton was deprived of the opportunity to cross-examine Prof. Gillers regarding Rule 11 during his deposition, to offer its own Rule 11 expert testimony, to include a Rule 11 argument in its written submissions, and to argue Rule 11 at the "closing arguments" hearing. Indeed, Labaton did not even examine Thornton's Rule 11 expert Prof. Vairo because the Special Master had not notified Labaton that he was considering finding Labaton's attorneys in violation of Rule 11 (and Labaton certainly had not drawn the inference on its own that such a risk existed).

On April 10, 2018, after the conclusion of all of the expert depositions, counsel for the Special Master distributed a list with eight bullet points under the heading "Chargois Payment." The bullet points related to areas that the Special Master suggested the parties address during their closing arguments to occur three days later. Ex. 1. Rule 11 was noticeably absent, while six rules of Professional Conduct– MRCP 1.2, 1.4, 1.5(a), 3.3, 7.2 (by implication), 7.3, and 8.4(c) – as well as *Saggese v. Kelly*, 445 Mass. 434 (2005), were specifically referenced.

On April 12, 2018, Labaton submitted a lengthy response to the Gillers Report (Labaton's "Response"), but did not address Rule 11 because Prof. Gillers had raised no such issue in relation to Labaton. At the April 13 "closing argument" hearing, the Special Master heard argument for approximately seven hours, but provided no indication that he was considering finding that Labaton had violated Rule 11 and never asked Labaton's counsel to address Rule 11, despite specifically asking Labaton's counsel to address other rules from the list. Hearing Tr. at 121-122. ("I want to give you an opportunity to address 7.2 and 7.3 . . . And I think we put 1.5(a) [on the list], too.").

---

such matters of law based upon his or her own knowledge and expertise, s/he should have tendered those issues back to the Court for determination.

## II.    ARGUMENT

### A.    The Special Master's Eleventh-Hour Finding of a Rule 11 Violation Is Unfair and Does Not Comport with Procedural Due Process.

The various rules that Labaton has been accused of violating have been moving targets throughout this investigation.  However, unlike the Special Master's other evolving theories – to which Labaton has been afforded to respond, albeit occasionally with abbreviated notice – the allegation of a Rule 11 violation came after the proceedings were concluded.  The belated nature of this serious allegation deprived Labaton of a meaningful chance to challenge it.  This is gravely unfair.  *See, e.g.*, *In re Ruffalo*, 390 U.S. 544, 552 (1968) ("This absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process."); *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997) ("We believe that a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter . . . An attorney must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.").

The Special Master's belated reliance upon Rule 11 stands in contrast to his own descriptions of fairness in this proceeding.  For example, in requesting an eight-week extension to file his Report and Recommendation (at Customer Class Counsels' request), the Special Master emphasized the need for notice and fairness in this high-stakes matter, both for the sake of the law firms and the soundness of his own Report and Recommendation:

> [I]n light of Professor Gillers' report, and its potential implications for the firms and the practicing bar in general, **I believe that it is important that the firms be allowed the fullest opportunity to respond**.[3]  And, I wish to have the benefit of

---

[3]     Again, Labaton expresses its appreciation for this opportunity to respond, granted by the Special Master in response to Labaton's urgent written plea to (a) understand what the alleged Rule 11 violation was, and (b) be provided an opportunity to respond.   But, twenty-four hours is

> this input as I believe it will provide more complete process to the firms and a better process and foundation for me to be able to make fair and complete findings and recommendations to you.

ECF 216-1 (emphasis added).

Likewise, during the April 13 closing argument, the Special Master again demonstrated his own view that Labaton is entitled to a chance to respond to his recommendations. Specifically, when the Special Master raised, for the first time, the possibility of reallocation of certain funds paid to Customer Class Counsel, he stated: "Unfortunately, I have to make a recommendation. And if I don't give you [Lieff Cabraser] an opportunity to weigh in, you would **rightly I think** say we didn't have a chance to address it . . . I'll give you [Labaton] a chance [to address the new issue]." 4/13 Hearing Tr. at 277-278 (emphasis added).

Any attorney knows that "a Rule 11 violation is [] a serious thing, and an accusation of such wrongdoing is equally serious." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (internal quotation omitted). In light of that seriousness, Labaton should have been provided with a meaningful opportunity to respond to the Special Master's allegation of a Rule 11 violation. Respectfully, it was not accorded such an opportunity.

> **B.** **The Absence of Any Suggestion That Labaton Had Violated Rule 11 During the Proceedings Is Indicative of the Weakness of Any Such Suggestion, and Reflective of Fashioning the Findings to Meet a Desired Outcome.**

Had Prof. Gillers formed the legal opinion that Labaton had violated Rule 11, as he did with regard to TLF, he would have said so. The broad picture factual predicate for the Rule 11 violation now belatedly asserted – i.e., the failure to disclose the Chargois referral fee to the

---

not enough time to comport with procedural due process requirements on an issue of this complexity and import. And, the fact that this Memorandum is being delivered on the same day that the Special Master is submitting his final report to vendors for preparation for filing suggests that little chance exists that the arguments contained herein can be given thoughtful, meaningful consideration.

8646291v1

Court – is similar to that for the alleged violation of Rule 3.3 of the Massachusetts Rules of Professional Conduct ("MRPC 3.3").   But, the specific factual requirements for a Rule 11 violation, including the necessity that the misrepresentation occur in a written pleading or submission to the Court, excluding discovery, differs from the requirements for a MRPC 3.3 violation.   Prof. Gillers obviously distinguished between the requirements of the two rules, and found only one of the two to have been violated by Labaton (a finding that Labaton also challenges).[4]

Labaton respectfully notes that the total failure to raise an allegation of a Rule 11 violation by Labaton is not a matter of inadvertence:  rather, it is because the Special Master and Prof. Gillers, fully apprised of the facts upon which they now apparently rely,[5] concluded that Labaton's attorneys had committed no such violation.

Respectfully, this unacceptably tardy addition of a finding of a serious rule violation appears to a case of the tail wagging the dog:  The Special Master has made his displeasure well known with the concept of a bare referral fee that would permit a substantial payment to an attorney who has performed no work in the case.   *See, e.g.,* Response at 12; 4/13 Hearing Tr. at 61:21-62:4, 86:7-12.  With a visceral reaction as strong as that which the Special Master has

---

[4]       If Prof. Gillers has been persuaded to alter his Report, the Special Master has not informed the parties of that occurrence, nor has he provided them with a copy of the altered Report.  Altering the expert report after the parties have concluded their cross-examination of the expert, proffered rebuttal expert testimony, and concluded their written and oral submissions would obviously raise its own set of due process and basic fairness issues.

[5]       The Special Master has yet to provide a written explanation for any alleged Rule 11 violation, but Labaton understands through oral comments from the Special Master's counsel that the violation is based on Lawrence Sucharow's execution of Labaton's Fee Declaration, which does not contain a disclosure that a portion of the requested fee would subsequently be paid as a bare referral fee to Damon Chargois.  It is unclear where the Special Master contends that this should have appeared in the Fee Declaration.  Chargois performed no work, such that he would not have appeared in the lodestar report, and the Fee Declarations did not address fee allocations generally.

demonstrated, the inference is certainly warranted, if not compelled, that additional purported violations have been sought to justify the remedies that the Special Master recommends be imposed.

**B.      Labaton Did Not Violate Rule 11.**

Rule 11 applies only to papers submitted to the Court.  *See* Fed. R. Civ. P. 11.  Although the specifics of the Special Master's Rule 11 argument remain somewhat amorphous, e.g., a designation of where within a fee declaration disclosure of a referral fee was required (highlighting the profound unfairness of this situation), Labaton understands that the Special Master's position is that Labaton violated Rule 11 because the Declaration of Lawrence Sucharow (the "Sucharow Declaration") did not disclose the Chargois referral fee.  ECF 104. This argument is off-base for several reasons.

**1.      The Federal Rules of Civil Procedure and common sense preclude a finding that Labaton violated Rule 11.**

First, stated simply and with all due respect, the Special Master's argument does not make sense.  As Labaton discussed in its Response (*see* § V), the Federal Rules of Civil Procedure do not require disclosure of information regarding the allocation of attorney fees. This is settled black-letter law, as reflected by the plain text of the Rules and the cases applying them.  Fed. R. Civ. P. 54(d)(2)(B) (petition for attorneys' fees must "disclose, *if the court so orders*, the terms of any agreement about fees for the services for which the claim is made") (emphasis added); *Id.*, 1993 Advisory Notes ("[i]f directed by the court, the moving party is also required to disclose any fee agreement . . . including those between . . . attorneys sharing a fee to be awarded . . ."); Fed. R. Civ. P. 23(h) ("A claim for an award must be made by motion under Rule 54(d)(2) . . ."); *Pierce v. Barnhart*, 440 F.3d 657, 664-65 (5th Cir. 2006) (district court abused its discretion in denying attorney's fees where the plaintiffs' attorney did not submit

- 7 -

information regarding "whether attorney's fees had been paid or were due to other counsel for representation"); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 137-38 n.2 (2d Cir. 2016) (Fed. R. Civ. P. 23(h) "does not mandate automatic disclosure of all fee-sharing arrangements in class actions in the absence of a local rule."); William B. Rubenstein, *Newberg on Class Actions* § 15:11 (5th ed. 2016) ("The third prong of Rule 54(d)(2)'s motion requirement – concerning disclosure of fee agreements – is discretionary with the court."); Report of William Rubenstein at 5 ("Rule 23(h) and Rule 54 are therefore clear in mandating the submission of fee agreements – including those concerning the allocation of fees among counsel – only upon court order."); 10-54 *Moore's Federal Practice - Civil* § 54.154 (2018) ("If the court so directs, the fee motion must also disclose the terms of any fee agreement with respect to the services implicated by the motion.").

Therefore, the Special Master has proffered the untenable argument that complying with the disclosure obligations set forth in Rules 54 and 23 simultaneously constitutes a non-disclosure that violates Rule 11.  In other words, by the Special Master's logic, the Federal Rules of Civil Procedure are internally inconsistent and directly contradict each other.  Such a conclusion would necessarily be premised on the notion that the drafters of the Rules, wittingly or through extraordinary carelessness, laid a trap for attorneys who followed the requirements of Rules 54 and 23 but failed to suss out a particular judge's desire for information that he had not requested.  This reading of the Rules cannot be squared with their essential purpose.  *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . They should be construed, administered, and employed by the court and the parties to secure the *just* . . . determination of every action and proceeding") (emphasis added).

**2.    Because Labaton was not on notice of a purported obligation to disclose fee allocations in the Sucharow Declaration, the omission of such information did not violate Rule 11.**

Any alleged "omission" regarding the Chargois bare referral fee from the Sucharow Declaration does not approach the level of a Rule 11 violation, because the "omission" was perfectly permissible under the Federal Rules of Civil Procedure and class action practice. Without any notice that disclosure of the Chargois bare referral fee was required, Rule 11 simply does not apply.

Finding a violation of Rule 11 requires "culpable" conduct by the attorney.  As the First Circuit has repeatedly admonished, a "lawyer who makes an inaccurate factual representation must, at the very least, be *culpably* careless to commit a violation [of Rule 11]."  *Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005) (emphasis added); *see also Roger Edwards, LLC v. Fiddes & Son, Ltd.*, 437 F.3d 140, 142 (1st Cir. 2006) (explaining that "some degree of fault is required" to find a violation of Rule 11); *see also McGee v. Town of Rockland*, 11-cv-10523, 2012 U.S. Dist. LEXIS 180197, *2 n.2 (D. Mass. Dec. 20, 2012) ("Rule 11 sanctions should be reserved for only the most egregious of lawyerly missteps.").  Moreover, the First Circuit has recently explained that whether an attorney violates Rule 11 "depends on the objective reasonableness of the [attorney's] conduct under the totality of the circumstances."  *Eldridge v. Gordon Bros. Grp., LLC*, 863 F.3d 66, 87-88 (1st Cir. 2017).

Here, Labaton is not culpable of committing any misstep, and its attorneys acted exactly as reasonable lawyers would.  Everything known to Labaton indicated that disclosure was *not* required.  At the time that Mr. Sucharow submitted the fee petition, the following was true:  (1) the Federal Rules of Civil Procedure did not require disclosure; (2) the Court's local rules did not require disclosure; (3) the Court did not order disclosure; (4) no judge in the District of

Massachusetts had ordered disclosure of fee agreements in well over a hundred class action cases since 2011 (*see* Rubenstein Rep. at 6); (4) no case within the First Circuit (or elsewhere, as far as Labaton's research has revealed) had found a violation of Rule 11 for non-disclosure of fee agreements; and (5) no BBA and MBA ethics opinions, or BBO ethics decisions, contained analogous guidance relative to the disclosure of fee agreements in connection with the Massachusetts Rules of Professional Conduct.  It was (and is) also true that referral fees are a "time-honored practice" in Massachusetts and perfectly permissible.  *Saggese*, 445 Mass. at 442.

In short, there was *literally no notice* that disclosure was required.  In fact, the opposite was true, i.e., the applicable federal rules stated that disclosure *was not* required in the absence of inquiry or an order.  Viewing the circumstances in their totality, a reasonable attorney – trained to rely on the Federal Rules of Civil Procedure, precedent, and standard practice – would not believe that disclosure was required.  *See Eldridge*, 863 F.3d at 87-88 (courts must assess the objective reasonableness of the attorney's conduct); *see also Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (explaining that in the Rule 11 context, "courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified.").  This is far from the "egregious" and "culpable" conduct that courts in the First Circuit require before finding a Rule 11 violation.  *See Young*, 404 F.3d at 39; *McGee*, 2012 U.S. Dist. LEXIS 180197, *2 n.2.

Prof. Gillers and the Special Master appear to share the view that the *Court*'s role as a fiduciary in a class action case at the fee petition stage, created an unspoken, uncodified disclosure requirement, which now apparently serves as the basis for a Rule 11 violation.[6]  This view was decisively rejected by the Second Circuit in *Bernstein*.  814 F.3d at 137-38.  There, the

---

[6]     This is somewhat speculative, as Labaton knows very little about the Special Master's Rule 11 finding at this point.

8646291v1

court unequivocally held that there was no obligation to disclose a fee paid to an attorney who

was not identified to the court and did not perform valuable work.  *Id.*  In addition to this recent

and directly on-point appellate decision, which Labaton respectfully suggests offers the best

available guidance on this issue, Prof. Rubenstein dismantled the notion that this case's status as

a class action supersedes the Federal Rules of Civil Procedure.  As he explained, there are "a

variety of situations in which the identities of counsel sharing in a fee award are routinely

unknown to the class action court."  Rubenstein Rep. at 11.  This is not by mistake; "the class

action experts who drafted Rule 23(h) were well aware that a class action case encompasses cast

and crew – and they nonetheless chose the default embodied in Rule 54:  that fee allocation

agreements need not be disclosed absent judicial request, that the judge must ask for the

playbill."  *Id.*  Prof. Rubenstein's exhaustive empirical analysis buttressed his opinions.  *Id.* at 6.

As a matter of law and practice, the Court's status as a fiduciary does not change the parties'

obligations, which are governed by Fed R. Civ. P.  54 and 23, which in turn do not require

disclosure.[7]

   To the extent that the Special Master believes that Labaton violated MRPC 3.3(a) and

therefore necessarily violated Rule 11, this argument is also incorrect.  As Labaton explained in

its Response at § VIII.A, MRPC 3.3(a) ( as well as Rule 8.4(c)) require a "knowing"

misrepresentation.  *See* Mass. R. Prof. C. 3.3(a) ("A lawyer shall not knowingly:  (1) make a

false statement of fact or law to a tribunal . . .").  A non-disclosure of information does not

violate these rules unless there is a known duty to disclose the information.  Joy Rep. at 43-44.

---

[7]     *See also* Rubenstein Dep. at 149:2-15 ("Rule 23 clearly sets out a process and the structure for the fee process in class action cases.  It's the governing rule.  In the case we're talking about it has a specific subpart directly on point . . . I feel like you all [The Special Master and his team] are trying very hard to find a way around that specific law . . . from where I sit there's a specific[] rule directly on point.  Just doesn't happen to say what you want it to say, but it's there.").

Again, because there was literally no notice that Labaton had an obligation to ignore Rules 54 and 23 and disclose information regarding fee allocations, there was no known duty to speak. Thus, there was no violation of Rule 3.3(a) or Rule 8.4(c) – and no derivative violation of Rule 11.  *See Obert v. Republic Western Ins. Co.*, 398 F.3d 138, 147 (1st Cir. 2005) (striking lower court's determination that attorneys violated Rhode Island Rules of Professional Conduct, including 3.3, and Fed. R. Civ. P. 11).

## III.    CONCLUSION.

For the forgoing reasons, any finding that Labaton violated Rule 11 would be incorrect as a matter of law and unfair as a matter of due process.

Dated: May 2, 2018                                    Respectfully submitted,


                                                By: */s/ Joan A. Lukey*
                                                    Joan A. Lukey (BBO No. 307340)
                                                    Justin J. Wolosz (BBO No. 643543)
                                                    Stuart M. Glass (BBO No. 641466)
                                                    Choate, Hall & Stewart LLP
                                                    Two International Place
                                                    Boston, MA 02110

                                                    *Counsel for Labaton Sucharow LLP*

8646291v1

# EXHIBIT 1

**From:** William Sinnott <wsinnott@barrettsingal.com>
**Date:** April 10, 2018 at 10:31:54 PM EDT
**Subject:** Friday's Oral Argument
**To:** Heimann, Richard M. <RHEIMANN@lchb.com>,Lukey, Joan <joan.lukey@choate.com>,Kelly, Brian <bkelly@nixonpeabody.com>,Fineman, Steven E. <sfineman@lchb.com>,Brian McTigue <bmctigue@mctiguelaw.com>,Lynn Sarko <lsarko@kellerrohrback.com>,Kravitz, Carl S. <ckravitz@zuckerman.com>,Kim Keevers <kkeevers@rpwb.com>,Cathy Campbell <cmc@fczlaw.com>,Jon Axelrod <jaxelrod@beinsaxelrod.com>,Fuller, Anthony E. <afuller@collorallp.com>,Harlan, Emily <eharlan@nixonpeabody.com>,Laura Gerber <lgerber@KellerRohrback.com>,lgraber@collorallp.com,dcopley@kellerrohrback.com,ggotto@kellerrohrback.com,dbond@mctiguelaw.com,Wolosz, Justin J. <jwolosz@choate.com>,Glass, Stuart M. <sglass@choate.com>
**Cc:** Brian Mulcahy <bmulcahy@barrettsingal.com>,Elizabeth McEvoy <emcevoy@barrettsingal.com>,Jennifer Tisi <jtisi@barrettsingal.com>,Linda Hylenski <lhylenski@att.net>

Counsel:

As discussed, oral arguments will begin <u>Friday at 9:30am</u> at JAMS in Boston. A stenographer will be present to create an official transcript of the hearing. Customer Class counsel will have 4 hours to present oral arguments to the Special Master. Counsel may allocate their time in whatever fashion they deem appropriate. At this time, ERISA counsel do not intend to offer oral arguments, but this is subject to change. If it does, ERISA counsel will argue <u>after</u> Customer Class counsel.

Counsel may present information on any topic they deem relevant to the Special Master's investigation. The topics below are merely suggested areas to address, and should not in any way be deemed exhaustive. Counsel are not limited to addressing the topics below or the topics previously circulated in the Special Master's Request for Supplemental Submission, dated July 31, 2017. However, in response to counsel's request for further guidance as to the substantive areas to address, the Special Master has suggested the following areas for counsel to cover at oral argument:

"Double Counting"

- Any evidence of an agreement, implicit or explicit, between and/or among Labaton, Lieff and TLF that TLF would submit the names of off-track associates (i.e. "staff attorneys") in its individual lodestar calculation.

- Address the justification or rationale for how firms billed off-track associates ("staff attorneys), including the differences, if any, between the firms' billing of off-track attorneys and contract attorneys employed by a third-party agency, and any legal decisions specifically addressing the propriety of marking up the hourly rates charged staff attorneys and/or contract attorneys in a fee petition submitted to the court.

- Any evidence concerning Garrett Bradley's state of mind in signing the Fee Declaration (Exh. 16 to Dkt #104) submitted to the Court, including but not limited to paragraphs 3 and 4 of that Declaration.

Chargois Payment

- Address what, if any, obligations lead counsel has (and if that duty applied in the State Street case) to inform co-counsel of information material to the case, including but not limited to fee allocation agreements and/or potential referral fees.

- Address how, if at all, Mass. R. Prof. C. 1.5(a) applies to payment of referral fees and/or the payments made to Damon Chargois as part of the Chargois Arrangement.

- What, if any, knowledge Lieff Cabraser and TLF attorneys had about the "Chargois Arrangement," as defined in Prof. Gillers' Report.

- Address the legal requirements for fee-sharing agreements entered into in Massachusetts in or about February 2011, including what, if any, effect the SJC's decision in <u>Saggese v. Kelley</u>, 455 Mass. 434 (2005) had on those requirements, and how, if at all, the Chargois Arrangement met those requirements.

- Please describe how you would characterize Chargois and Herron's contact with Paul Doane and/or Senator Farris, taken to secure an introduction to ATRS, including your view on whether the arrangement constitutes a solicitation, recommendation, introduction, referral, and/or endorsement.

- Please describe all legal and ethical duties that counsel owed to the class members, including who (if anyone) represented the class members, including the ERISA class members, as well as the nature and scope of that representation.

- Please describe what duties— ethical, contractual or otherwise—Customer Class counsel had to inform ERISA counsel about the Chargois Arrangement.

- To the extent you have not already addressed them, please describe how, if at all, the following Rules of Massachusetts Professional Conduct applied to counsel's actions (or lack thereof) taken with regard to the Chargois Arrangement, including counsel's knowledge

thereof or involvement with such arrangement:

- Rule 1.2
- Rule 1.4
- Rule 1.5(a)
- Rule 3.3
- Rule 7.3
- Rule 8.4(c)

Please contact me if you have any questions.

Bill



**William Sinnott, Esq.**
Partner
One Beacon Street
Suite 1320
Boston, MA 02108-3106
T 617-720-5090
F 617-720-5092
wsinnott@barrettsingal.com
www.barrettsingal.com

This electronic message and any files attached hereto contain confidential or privileged information from the law firm of Barrett and Singal. This information is intended to be for the use of the individuals or entities to whom it is addressed only. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender by reply email and destroy all copies of this message. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.