# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>    Defendant. | **FILED UNDER SEAL**<br><br>No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>    Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>    Defendant. | No. 12-cv-11698 MLW |

**[CORRECTED] TRANSMITTAL DECLARATION OF STUART M. GLASS IN SUPPORT OF LABATON SUCHAROW LLP'S SECOND SUPPLEMENTAL OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**

I, Stuart M. Glass, on oath, depose and say as follows:

1. I am an attorney at Choate, Hall & Stewart, LLP. I am one of the counsel of record representing Labaton Sucharow LLP in this matter.

2. I submit this declaration for the sole purpose of transmitting true and accurate copies of documents in support of Labaton Sucharow LLP's Second Supplemental Objections to Special Master's Report and Recommendations. I have personal knowledge of the facts set forth in this declaration.

3. Attached hereto as Exhibit A is a true and correct copy of a June 13, 1979 article authored by Prof. Stephen Gillers published in the New York Times, titled "Lawyers: Paid for Doing Nothing?".

4. Attached hereto as Exhibit B is a true and correct copy of excerpts from the July 12, 2018 deposition of Prof. Stephen Gillers.

5. Attached hereto as Exhibit C is a true and correct copy of excerpts from the March 20, 2018 deposition of Prof. Stephen Gillers.

6. Attached hereto as Exhibit D is a true and correct copy of excerpts from the March 21, 2018 deposition of Prof. Stephen Gillers.

7. Attached hereto as Exhibit E is a true and correct copy of excerpts from the September 20, 2017 deposition of David Goldsmith.

Signed under the penalties of perjury this 26th day of July 2018.

*/s/ Stuart M. Glass*
Stuart M. Glass

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to all counsel of record on July 27, 2018.

>/s/ *Joan A. Lukey*
>Joan A. Lukey

# Exhibit A

# *Lawyers: Paid for Doing Nothing?*

By STEPHEN GILLERS  JUNE 13, 1979



June 13, 1979, Page 25
The New York Times Archives

Professional self-regulation enables the members of a profession to write the rules governing their behavior. Lawyers, including New York lawyers, have enjoyed more self-regulation than most other professionals. This experience confirms the proverbial danger in allowing foxes to design security for the chicken coop. It is time to stop it.

Lawyers have used self-regulation to introduce minimum-fee schedules, prohibitions on lawyer advertising and restrictions on legal insurance, all of which have inflated legal fees and all of which the courts have invalidated. Now lawyers have a new proposal. It might be called the right to get paid for no work.

The American Trial Lawyers Association, the California State Bar and other lawyer groups want lawyers to be able to charge for the service of sending a client to another lawyer. This service goes under many names: referral fees, forwarding fees and feesplitting are the most common. A provision of the Code of Professional Responsibility of the American Bar Association makes referral fees unethical. Most states have adopted this provision. It says that a lawyer has no right to part of a client's. fee unless he does part of the client's work.

What reasons do proponents of referral fees give to support a change in the Code? First, they argue that despite the provision against it, fee-splitting is rampant so we must be realistic and validate it. Fee-splitting is certainly rampant. A lawyer who refers client will often receive a check from another lawyer, even though no referral fee was even discussed. But if referral fees are wrong, the answer is strict enforcement of the prohibition against them. Indeed, one of the reasons referral fees are rampant is that lawyer disciplinary bodies routinely ignore them.

The second reason advanced for referral fees is that they make it more likely that the client will get the best lawyer for his problem. If referral fees are unethical, a lawyer who is offered a case he does not feel competent to handle may take it anyway because he does not want to

lose money. But if the lawyer can get a referral fee, he is likely to send the case on to a more qualified lawyer and the client will get better representation.

This argument is a form of blackmail, unworthy of any profession, and should be rejected. In effect, the bar is saying to the client: you must pay us if you want us to tell you honestly whether you have the right lawyer to handle your problem.

Underlying this arugument is an assumption that will come as a surprise to many clients. The feeling is pervasive among lawyers that the person who attracts the business is entitled to generous compensation for that reason alone. He need do no work. How many clients realize that merely by calling a lawyer they give him a financial "position" in their case whether or not he provides a legal service?

"So what?" say the supporters of referral fees. The money does not come out of the client's pocket. This third argument assumes that the receiving lawyer will charge the same amount whether or not he pays a referral fee. This would be true if referral fees were small, but they rarely are. Often they are a third of the entire fee. Sometimes they are a flat amount of $1,000 or $1,500. Obviously, the receiving lawyer will have more room to negotiate lower fee if he does not have to for the case.

I came across a clear example of this recently. A client went to see Lawyer A, who had been referred by Lawyer B, who accompanied the client to A's office. Lawyer A told the client that his fee would be one-third of the recovery. Lawyer B then explained that he was related to the client and not interested in a referral fee. Lawyer A then reduced his fee exactly onethird, the amount he was assuming he would have to pay Lawyer B.

The example of referral fees and other rules devised under the aegis self-regulation teach an important lesson: if the foxes are given the task of providing security for the chicken coop, they will be mightily tempted to keep an extra set of keys.

The TimesMachine archive viewer is a subscriber-only feature.

We are continually improving the quality of our text archives. Please send feedback, error reports, and suggestions to archive_feedback@nytimes.com.

A version of this archives appears in print on June 13, 1979, on Page A25 of the New York edition with the headline: Lawyers: Paid for Doing Nothing?. Order Reprints | Today's Paper | Subscribe

# Exhibit B
# Redacted

# Exhibit C Redacted

# Exhibit D
# Redacted

# Exhibit E
# Redacted