## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br> Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 12-cv-11698 MLW |

**DECLARATION OF M. FRANK BEDNARZ IN SUPPORT
OF THE COMPETITIVE ENTERPRISE INSTITUTE'S
CENTER FOR CLASS ACTION FAIRNESS'S
RESPONSE TO THE COURT'S ORDER OF JULY 31, 2018**

**DECLARATION OF M. FRANK BEDNARZ**

I, Michael Frank Bednarz declare as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as witness, could and would testify competently thereto.

2.      I am an attorney licensed to practice law in the Commonwealth of Massachusetts and State of Illinois.

3.      **Exhibit A,** entitled "Minutes," and dated October 6, 2008, is a true and accurate document from Arkansas Teacher Retirements System's website as it appeared on August 6, 2018 at: https://www.artrs.gov/BoardMinutes/Minutes2008/10_6_08_BOT_MINUTES.pdf.

4.      **Exhibit B**, entitled "Campaign Contribution And Expenditure Report" is a document filed with the Arkansas Secretary of State; it is a true and accurate copy of the document as it appeared on August 4, 2018 at: https://www.sos.arkansas.gov/ce_search/index.php/search/save_pdf/6819.

5.      **Exhibit C** is a true and accurate archive copy of the following newspaper article: Michael Wickline, ARK. DEMOCRAT-GAZETTE (Nov. 10, 2011), *Shoffner returns donors' $10,000*, as it was filed in *Knurr v. Orbital ATK, Inc.*, No. 16-cv-1031, Dkt. 25-3 (E.D. Va. Oct. 27, 2016).

6.      **Exhibit D** is a true and accurate archive copy of the following newspaper article: Chad Day, ARK. DEMOCRAT-GAZETTE (May 22, 2013), *Shoffner lived rent-free near the Capitol for most of her first term, landlord says*, as it appeared on August 4, 2018 from the online archive available at: https://www.pressreader.com/usa/arkansas-democrat-gazette/20130522/281560878322249.

I declare under penalty of perjury under the laws of the United States of America that that the foregoing is true and correct.

Executed on August 6, 2018, in Chicago, Illinois.

M. Frank Bednarz

# Bednarz Decl.

# EXHIBIT A

**MINUTES**

**ARKANSAS TEACHER RETIRMENT SYSTEM**
**BOARD of TRUSTEES**
**1400 West Third Street**
**Little Rock, AR  72201**

**Monday, October 6, 2008**
**1:00 p.m.**

| ATTENDEES | |
|---|---|
| **Board Members Present** | **ATRS Staff** |
| Dr. Richard Abernathy | Gail Bolden, Chief Operating Officer |
| Monty Betts | Judy Brown, Supv. Retiree Payroll |
| Hazel Coleman, Vice Chair | Christa Clark, Chief Legal Counsel |
| Mike Creekmore designee for Martha Shoffner | Suzanne Davenport, Chief Financial Officer |
| Dr. Paul Fair | Paul Doane, Chief Executive Officer |
| John Fortenberry | Kim Godfrey, Deputy Legal Counsel |
| Steve Kelly designee for Jim Wood | Markay Grimmett, Investments |
| Beverly Leming | Wayne Greathouse, Dir. Public Sectors |
| Susannah Marshall designee for Candice Franks | Mullahalli Manjunath, Mgr. Data Processing |
| Robin Nichols, Chair | Willana Prince, Member Services |
| Linda Parsons | Michael Ray, Dir. Member Services |
| Janelle Riddle | Hugh Roberts, Dir. of Real Estate |
| | George Snyder, Chief Risk Management/Internal Audit |
| **Board Members Absent** | Jane Toledo, Secretary |
| Dr. Ken James | Leslie Ward, Dir. of Private Equity |
| Bobby Lester | |
| | **Guests** |
| **Consultants Present** | Bryant Cranford, Esq., Rose Law Firm |
| PJ Kelly, Ennis Knupp | Hellen Halloway, ARTA President Elect |
| Joe Marzano, Ennis Knupp | Richard Hutchison, AEA |
| | Mike Mertens, AAEA |
| | Matthew Miller, BLR |
| | Evelyn Nelson |
| | Warren Stephens, Stephens, Inc. |
| | Warren Simpson, Stephens, Inc. |
| | |
| | |

Board of Trustees - Minutes
October 6, 2008
Page 2

I.  **Call to Order/Roll Call.**  Chair, Robin Nichols, called the meeting to order at 1:05 p.m.  Roll call was taken and Dr. Ken James and Bobby Lester were noted as absent.

II.  **Adoption of Agenda.  THE MOTION FOR ADOPTION OF THE AGENDA WAS MADE BY DR. ABERNATHY AND SECONDED BY MS. PARSONS. CHAIR, ROBIN NICHOLS MADE TWO CHANGES TO THE AGENDA MOVING ITEM "IX. SELECTION OF OPPORTUNISTIC GLOBAL EQUITY MANGERS" TO BECOME ITEM V. AND ADDING AS NEW ITEM AS PART OF THE CHIEF EXECUTIVE OFFICER'S REPORT.  "PRESENTATION BY MR. WARREN STEPHENS".  THE AGENDA, AS AMENDED, WAS UNANIMOUSLY APPROVED BY THE BOARD.**

III.  **Approval of Board of Trustees Minutes from August 7, 2008.  THE MOTION FOR APPROVAL OF THE AUGUST 7, 2008 BOARD OF TRUSTEES MINUTES WAS MADE BY MS. LEMING, SECONDED BY MS. COLEMAN, AND UNANIMOUSLY APPROVED BY THE BOARD.**

IV.  **Committee Meeting Reports/"DRAFT" Minutes.**   The following Minutes (items A-E) were presented to the Board for review as an update of Committee actions and will be presented at future Committee meetings for approval.

    A.  **Combined Executive and Policies/Legislative Committee of August 7, 2008.**  Robin Nichols, BOT Chair
    B.  **Investment Committee of August 7, 2008 and September 23, 2008.** Beverly Leming, Chair
    C.  **Administrative Personnel Committee of September 22, 2008.** Janelle Riddle, Chair
    D.  **Executive Committee of September 22, 2008.**  Dr. Richard Abernathy, Chair
    E.  **Policies/Legislative Committee of September 23, 2008.**  Linda Parsons, Chair

        1)  **Approval of Certain Rules & Regulations Changes.** (Resolution No. 2008-60)  Christa Clark, Chief Legal Counsel gave a brief overview of this Resolution which authorizes staff to proceed with policy changes previously presented and approved by Committees.  Policy 9-1 clarifies the implementation of the Compound Cola, Policy 9-3 is technical corrections on Disability Retirement, Policy 8-7 clarifies the requirements for ATRS members who are establishing service credit for Free Military Service under A.C.A. §24-7-601, Policies 11-3 and 11-4 updates ATRS' model QDRO order (adopted in 1995) to include

Board of Trustees - Minutes
October 6, 2008
Page 3

legislative changes, address T-DROP, and make language
consistent with how our plan is currently operating.  These
QDRO changes are primarily technical and will assist staff in
performing calculations as well as avoiding the need to utilize
ATRS' actuary for calculations.

**THE MOTION FOR ADOPTION OF RESOLUTION NO. 2008-
60 WAS MADE BY MS. PARSONS, SECONDED BY MS.
COLEMAN, <u>AND UNANIMOUSLY APPROVED BY THE
BOARD</u>.**

V.    **Selection of Opportunistic Global Equity Managers.**  (Resolution No.
2008-64)  PJ Kelly of Ennis Knupp reviewed the presentation "Global Equity
Manager Finalists" dated October 2008 with the Board.  This is a request for
approval to retain a series of managers (at least three) that have been
recommended by the Investment Committee and who would offer
complementary yet unique strategies with their global portfolio platforms.
Funds would be drawn from other global and US active and passive
managers.

**THE MOTION THAT THE BOARD OF TRUSTEES APPROVE THE
RECOMMENDATION OF THE INVESTMENT COMMITTEE TO RETAIN
THE FOLLOWING THREE INVESTMENT FIRMS AS GLOBAL EQUIATY
MANAGERS:  _BEDLAM ASSET MANAGEMENT_, LONDON, UK ($200
MILLION ALLOCATION); _DE SHAW_, NEW YORK, NY ($300 MILLION
ALLOCATION) AND _LAZARD INVESTMENT MANAGEMENT_ ($300
MILLION ALLOCATION.  FUNDING IS TO COME FROM THE EXISTING
GLOBAL PORTFOLIO AS PROPOSED BY THE ENNIS GLOBAL EQUITY
MANAGER FINALISTS REPORT OF OCTOBER 2008 AND FURTHER TO
INSTRUCT THE STAFF TO UNDERTAKE ALL NECESSARY ACTIONS,
INCLUDING NEGOTIATION OF FEES, TO EFFECTUATE THIS MOTION.**

**AND**

**THE MOTION THAT THE BOARD OF TRUSTEES APPROVE THE
RECOMMENDATION OF THE INVESTMENT COMMITTEE TO CONVERT
THE EXISTING MANDATES OF _WELLINGTON_ MANAGEMENT'S
GLOBAL RESEARCH PORTFOLIO, _OPPENHEIMER_ CAPITAL'S
DOMESTIC LARGE CAP VALUE PORTFOLIO AND _T ROWE PRICE_
DOMESTIC LARGE CAP GROWTH PORTFOLIO INTO THE FOLLOWING
PORTFOLIO STRATEGIES OFFERED BY WELLINGTON MANAGEMENT,
BOTH ITS GLOBAL OPPORTUNITY FUND ($100 MILLION) AND ITS
GLOBAL PERSPECTIVES PORTFOLIO ($200 MILLION), AND T ROWE
PRICE, ITS GLOBAL PORTFOLIO ($200 MILLION).  FUNDING IS TO**

**COME FROM THE EXISTING PORTFOLIOS WITH EACH FIRM ACCORDING TO THE ENNIS KNUPP GLOBAL EQUITY MANAGER FINALISTS REPORT OF OCTOBER 2008 AND FURTHER TO INSTRUCT THE STAFF TO UNDERTAKE ALL NECESSARY ACTIONS, INCLUDING NEGOTIATION OF FEES WHERE POSSIBLE, TO EFFECTUATE THIS MOTION WAS MADE BY MS. LEMING, SECONDED BY MS. PARSONS, <u>AND UNANIMOUSLY APPROVED BY THE BOARD.</u>**

The Board requested negotiation of Lazard Investment Management's higher fees.

VI.   **Staff Reports.**

A.   **Medical Board Report.**  Willana Prince, Supervisor Benefits and Counseling, presented the July, August and September, 2008 Summaries of Disability Applications Submitted for Consideration by the Medical Committee to the Board.

**THE MOTION FOR APPROVAL OF THE MEDICAL BOARD REPORTS WAS MADE BY MS. COLEMAN, SECONDED BY MS. LEMING, <u>AND UNANIMOUSLY APPROVED BY THE BOARD.</u>**

B.   **Personnel Report.**  Gaye Swaim, Director of Human Resources, presented the Personnel Report, the Office of Personnel Management of the Department of Finance and Administration's Pay Plan Study and 2009-2011 Pay Plan Implementation Recommendations.  Ms. Swaim reviewed ATRS' Hiring Process, including OPM job classification (job description), advertisement/posting requirements, application review and selection process, candidate interview and selection process, the interview panel, the scoring of the candidate, the Position Disposition Form signed by the Executive Director, background checks and the Offer Letter.

C.   **Chief Fiscal Officer's Report.** Suzanne Davenport, Chief Financial Officer, provided the Financial Comparison versus Previous Year report for April and May of 2008 to the Board and reviewed details of the June 2008 Balance Sheet/Income Statement.

D.   **Payroll Report.** Judy Brown, Supervisor of Retiree Payroll, provided the March, April, May, June, July, August and September, 2008 Payroll Report and reviewed details with the Board.  The Board was also provided with a review of the Cost-of-Living increase comparing July 2007 and July 2008.

E.    **Investments Report.** Wayne Greathouse, Director of Public Sectors, reviewed the updated Public Securities status report for the ATRS portfolio as of September 30, 2008 indicating only two significant changes 1) most managers balances have gone down due to the market situation and funding some of the real estate and private equity draws are coming out of the public sectors, and 2) the addition of Lincoln Vale, was noted and will be funded with $15 million on November 1, 2008.  Per the Boards' request a 5-year review of manager fees was provided.  Fees and percentage of assets going towards fees and commissions remain the same over this time period.

F.    **Chief Operating Officer's Report.** Gail Bolden updated the Board on renovations, which included adding additional cubes on the second floor, are complete.  Plans to enhanced security measures are moving forward, Senior Staff members obtained and reviewed bids for security cameras to monitor the parking areas, Irwin Saviers will oversee the installation of the cameras.  The Pre-Retirement counselors are taking laptops with them out in the field.  In order to secure our member's data, all data is encrypted, only the counselors have the keys and if someone were to get into one of these laptops the only thing that could be done is to reformat the drive.

G.    **Chief Legal Counsel's Report.**  Christa Clark

Legal is currently reviewing the tax issue of withholdings on the lump sum death benefit.  ATRS has received materials, which are currently being reviewed.  A recommendation is expected from Policies/Legislative Committee for the December meeting.

The pending fiduciary insurance issue is also being reviewed.  One of the major carriers that had bid on the Boards fiduciary insurance changed their policy and developed their own form for the insurance. ATRS' insurance broker was not familiar with the new form and was not comfortable making a recommendation until was reviewed by specialists.  A recommendation is expected for the December meeting.

1)    **Selection of Alternatives Investment Counsel.**
With the growing demands on in house legal staff to address the expanding commitments to private markets, it is important to have a relationship with special investment counsel experienced in the subtleties and legal documents related to private equity, real estate, hedge fund partnerships and other vehicles that are part of the private market/alternatives investment arena.  The

firms will be billing in increments on a monthly basis, but their rates are very competitive.

**THE MOTION TO HIRE THE TWO FIRMS OF KUTAK ROCK, LLP AND MORGAN LEWIS, LLP AS ALTERNATIVES INVESTMENT COUNSEL WAS MADE BY MS. LEMING, SECONDED BY DR. ABERNATHY, <u>AND UNANIMOUSLY APPROVED BY THE BOARD</u>**.

2)      **Selection of Portfolio Monitoring Counsel.**

This request involves the area of class action counsel and the pursuit of fraud and other misdeeds by the management of public companies in which ATRS is invested.   Currently we employ the firm of Bernstein Litowitz Berger for such services. This firm will continue to be engaged by ATRS.   The general policy is to have several such firms who monitor our portfolio and when they determine that there is a potential claim or defensible action against a company, they will notify and seek to have ATRS serve in a lead plaintiff action to recover losses incurred due to fraudulent or other wrongly action.   A formal RFP process was undertaken. The firms are to be engaged on a purely contingent basis for Portfolio Monitoring Services.  ATRS will receive quarterly monitoring reports and recommendations for review by legal counsel.

**THE MOTION TO ADD THREE FIRMS TO THE ATRS APPROVED LIST OF MONITORING COUNSEL OF 1) KAPLAN FOX, LLP OF NEW YORK; 2) NIX, PATTERSON & ROACH, LLP OF DANGERFIELD, TEXAS; AND 3) LABATON SUCHAROW, LLP OF NEW YORK, WAS MADE BY MS. LEMING, SECONDED BY MS. RIDDLE, <u>AND UNANIMOUSLY APPROVED BY THE BOARD</u>**.

H.      **Chief Risk Management/Internal Audit Report.** George Snyder reported that as of September 22, 2008 ATRS is completely staffed. There is one person directly responsible for the Business Continuity Plan, which is moving along really well.  Will provide draft when available.  The Internal Audit has started doing the assessment of risk, breaking down from agency to division, to processes, to steps and figuring out what internal controls are in place, if any.  From that process a level of risk is assigned, then the materiality of the risk is accessed with recommendations of changes and processes with follow-ups to be monitored monthly.  Internal Audit is systematically

going through the System looking at every process and every department to create a complete flowcharted narrative design of how everything in the agency works.  From that Risk Management will determine levels of risk by examining what is in place to control potential errors that could happen and from that recommending changes dealing with the monitoring, set the levels of where we are going to do what we are going to look and design and entire audit plane.  It is anticipated that within 4-6 months there will be a draft available for Committee and Board review.

**VII**.   **Presentation by Warren Stephens, CEO of Stephens, Inc.**  Warren Stephens (CEO of Stephens, Inc. since 1986) and Warren Simpson presented their insights with regard to the current market situation.  Mr. Warren Stephens provided several handouts and charts to the Board for review, which details what is going on in the financial world and in the credit markets right now which is unprecedented.  Of the items reviewed was the VIX Index.  The VIX Index is a measure of volatility in the stock market created based on options trading at the Chicago Board of Options looking at a broad base of companies and the buying and selling in those options to create the VIX Index.  The U.S. Commercial Paper Market chart show the lack of loans to U.S. Companies in the U.S. Paper market making it hard time for companies to fund their day to day operations.  The Federal Reserve injected $900 Billion to get people lending again.  The London Inter-Bank Borrowing Rate (LIBOR) is the rate banks loan other banks and the chart indicates an almost straight up movement in the LIBOR rate meaning banks are not willing to lend to other banks largely due to the real estate backed securities and the derivatives on the books of other financial institutions not be properly priced on the books and the possibility that the bank may not be solvent.  Credit Default Slots indicating the increase in insurance premiums to secure returns on investments.  Lehman Brothers, Bear Sterns, Merrill Lynch will become part of Bank of American, JP Morgan and Goldman Sachs had to convert to bank holding companies to access to the Fed to be able to keep their operations going.  All of these firms are either gone or substantially changed in their format and going forward will mean a great deal of change to the employees and the way they operation.  Many of these companies were leveraged 30 to 1 since the 1990s.  Additionally, instead of having equities and traditional corporate bonds they had, as a group, 0 asset backed securities in 1990 to 25% of their assets in mortgage backed securities and derivatives (50/50).  Not pretty, not fun, will manage to get through current market situation which will require a fundamental change in the way our financial system operates, securitization and regulations.   This is not a "wall street bailout" but a way of unfreezing the system.

VIII.    **Chief Executive Officer's Report.**   Paul Doane, CEO discussed several areas including details related to the upcoming election of Board Members cycle set to commence later this year.   The recently approved Ennis Knupp contract was recently reviewed at the Legislative level and approved.   There an update on the earlier approved concept of implementation of a "paperless board meeting".

A.    **Discussion of Committee Reassignments/Appointments.**  The Board was provided with a summary of the current Committees listing.

B.    **Board Membership Discussion and Election Schedule.**  Summary of the projected timeframe for the upcoming elections for the three positions in the Spring taking office July 1, 2009 including the election vendor selection process.  The following corrections were noted on summary of term expirations, Ms. Parsons represents the 4th Congressional District and Ms. Riddle represents the 3rd Congressional District.

Legal Counsel is to provide the Board with a requested copy of the previously adopted rotation schedule regarding committee terms and expirations.

C.    **Code of Conduct.**   This is a suggested format for review and possible adoption by the Board at a future meeting of the Board.

D.    **Ennis Knupp Contract.**

E.    **Paperless Meetings Update.**  Still proceeding with the Paperless Board Meeting.  The Board was provided with a summary of the process as well as the pros and cons for review.  It is anticipated that this will be in place at the beginning of the next term (July 1, 2009).

CEO provided a report/summary to the Board regarding upcoming staff travel and will provide a summary at each Board meeting.  Trustees were reminded of the requirement (Resolution 2008-01) to provide a written/verbal report to the Board for any conferences attended.  CEO provided a brief summary of the allowable expense reimbursements for GSA guidelines, which was also outlined in a memo provided to the Board.

CEO provided an update to members to address some of the financial chaos and the benefits of a defined benefits plan vs. defined contribution plans.

CEO visited with Bernstein Litowitz while on due diligence visits in New York and requested a more user friendly/client sensitive report to be provided on

things specifically affecting ATRS.  This is expected at the next reporting
cycle.

Rodney Thomason, head of Fox Ridge management team at Woodland
Heights.  The lease up was started 4-5 months behind schedule and are now
on schedule with 14 units leased up on  the new building at a pace of 1-1/2
units per month.

IX.     **Authorization of Staff to Pursue Biennium Contract for Election Vendor.**
(Resolution No. 2008-61) Christa Clark, Chief Legal Counsel requested the
Board's to authorize the staff to proceed with the process and hiring of a
qualified vendor to handle the election of new Board members. To stay on
track with the December launch of the election cycle and given the fact that
the Board does not reconvene until early December, there would be
inadequate time for the Board to approve a vendor at that date.  Staff will
provide and keep the Board advised of its progress in lining up the firm to
conduct this role.  Also, it is important from a cost and time saving standpoint
to retain a firm that will be able to manage the election process (which will
involve a state wide effort for certain positions up for election) for both the
2009 and 2010 years.  Three seats are slated to expire each of the next two
years.

**THE MOTION FOR ADOPTION OF RESOLUTION NO. 2008-61 WAS
MADE BY MS. LEMING, SECONDED BY MS. RIDDLE, <u>AND
UNANIMOUSLY APPROVED BY THE  BOARD</u>.**

X.      **Approval of Investment Committee Policy Change to Add Two Non-
Board Members.**  (Resolution No. 2008-62) Paul Doane, CEO This action
would have the Investment Committee add two non-Board members to be
selected by the Investment Committee from a group with strong experience in
the investment community. There have been excellent candidates that have
indicated interest to serve without compensation.

**THE MOTION FOR ADOPTION OF RESOLUTION NO. 2008-62 WAS
MADE BY MS. LEMING, SECONDED BY MS. PARSONS, <u>AND
UNANIMOUSLY APPROVED BY THE BOARD</u>.**

XI.     **IRS Determination Letter Discussion.**  Paul Doane, CEO and Bryant
Cranford, Esq., outside Counsel and staff reviewed the merits of considering
the seeking of a Letter of Determination from the IRS that would be important
in insuring the continued tax qualified status of the Fund.  The last such Letter
was secured in 1972 by the Board.  There is considerable controversy and
differences of opinion about whether it is appropriate to volunteer for this type
of examination by the IRS versus taking a "wait and see" attitude.  There are

Board of Trustees - Minutes
October 6, 2008
Page 10

significant costs ($15-30K) to becoming involved in the process. Bryant Cranford provided a memo which he reviewed summarizing this issue for the Board. Mr. Cranford's final recommendation was to pursue an IRS Determination Letter, which would allow ATRS to reduce the percentage of any fines.

This will also be a topic of discussion at the upcoming NCTR conference being attended by the CEO and several Trustees. A decision needs to be made by January 2009 regarding the filing of an IRS Determination Letter.

This was a discussion only item and no decision was made at this time.

**XII.    Approval to Authorize the Undertaking of a System's Compliance Audit.** (Resolution No. 2008-63) Due to the exigent nature of this matter, if it was felt appropriate to pursue, this action would authorize the staff to enter into a process that would result in the selection of a firm to conduct an in-depth audit of the System to best insure its compliance with all appropriate tax laws and statutes. It would be an important step if the Board sought a Letter of Determination or not.

**THE MOTION FOR ADOPTION OF RESOLUTION 2008-63 WAS MADE BY MS. LEMING, SECONDED BY MS. RIDDLE, <u>AND UNANIMOUSLY APPROVED BY THE BOARD</u>**.

The Board requested to be kept informed as to the status of this process. CEO is to contact Nancy Williams of Ennis Knupp and/or our Actuary, GRS, regarding this item.

**XIII.   Other Business.**

Hugh Roberts, Director of Real Estate, provided the Board with information about a potential buyer, Mr. Snyder, to purchase ATRS' property located at 1500 West 3rd Street, Little Rock, AR (a vacant building), which had been a part of the ATRS portfolio for approximately 10 years. The appraisal of the property six months ago was $420K. Mr. Snyder's original offer was $360K, which was rejected. Mr. Snyder came back today with an offer of $390K and Mr. Roberts made a counter-offer of $405K cash deal for the 6,000 square feet of property, which was accepted by Mr. Snyder.

**THE MOTION TO ACCEPT MR. SNYDER'S OFFER OF $405K TO PURCHASE THE PROPERTY LOCATED AT 1500 WEST 3RD STREET WAS MADE BY MS. LEMING, SECONDED BY MS. PARSONS, <u>AND UNANIMOUSLY APPROVED BY THE BOARD</u>**.

Board of Trustees - Minutes
October 6, 2008
Page 11

Hugh Roberts, Director of Real Estate, updated the Board on the status of property insurance.  As of October 1, 2008 ATRS renewed the property insurance with Regions (previously Rebsaman) with same coverage, same excess coverage policy at a saving of approximately $16K.

**Chairman, Ms. Nichols, called an Executive Session to order at 4:20 p.m.**

XIV.   **Adjourn.**

**THE MOTION TO ADJOURN WAS MADE BY MR. BETTS, SECONDED UNANIMOUSLY, <u>AND UNANIMOUSLY APPROVED BY THE BOARD</u>.**

Chairman, Ms. Nichols, adjourned the Board of Trustees meeting at 5:00 p.m.


_____          _____
Jane Toledo, Recorder                           Paul Doane, Executive Director


_____          _____
Robin Nichols, Chair                            Date Approved
Board of Trustees

# Bednarz Decl.

# EXHIBIT B

# CAMPAIGN CONTRIBUTION AND EXPENDITURE REPORT
## State and District Candidates Only

**To be filed with:**
**Charlie Daniels, Secretary of State**
**State Capitol, Room 026**
**Little Rock, AR 72201**
**Phone (501) 682-5070**
**Fax (501) 682-3408**

☐ Check if this report is an amendment

For assistance in completing
this form contact:
Arkansas Ethics Commission
Post Office Box 1917
Little Rock, AR 72203-1917
Phone (501) 324-9600
Toll Free (800) 422-7773

**THIS FORM CANNOT BE USED FOR THE FINAL REPORT - ALL INFORMATION MUST BE COMPLETE**
**THIS REPORT MUST BE FILED WITH THE SECRETARY OF STATE**

**1.** Name of Candidate

Martha  Shoffner

Address

P.O. Box 3020

City, State and Zip                                             Phone Number:

Little Rock, AR 72201

Office Sought                                                    District Number:

State Treasurer                                                  0

Does the candidate have a campaign committee? (    )Yes  (X )No          *(Secretary of State File Stamp)*
If yes, complete the following:

Name of Chairperson/Treasurer:

Mailing Address:                          Phone Number:

**2. Type of Election:** (check one only)        Year of Election: 2010
☒ Primary  ☐ Primary Runoff  ☐ General  ☐ General Runoff  ☐ Special

**3. Type of Report:** (check one only)     This report covers what period? ( 10 / 01 / 09 ) through ( 12 / 31 / 09 )

☐10 Day Preelection          ☐January Monthly        ☐June Monthly         *Special Elections Only:*
☐First Quarter (due April 15)     ☐February Monthly       ☐July Monthly         ☐May Monthly
☐Second Quarter (due July 15)     ☐March Monthly          ☐August Monthly        ☐November Monthly
☐Third Quarter (due October 15)   ☐April Monthly          ☐September Monthly      ☐December Monthly
☒Fourth Quarter (due January 15)                          ☐October Monthly

| SUMMARY | FOR REPORTING PERIOD | CUMULATIVE TOTAL |
|---|---|---|
| **4.** Balance of campaign funds at beginning of reporting period | 43,295.00 | |
| **5.** Interest (if any) earned on campaign account | 0.00 | 0.00 |
| **6.** Total Loans (enter total from line 12) | 0.00 | 0.00 |
| **7.** Total Monetary Contributions (enter total from line 18) | 21,750.00 | 65,045.00 |
| **8.** Total Expenditures (enter total from line 27) | 829.00 | 1,847.00 |
| **9.** Balance of campaign funds at close of reporting period | 64,216.00 | |

**10. (   ) NO ACTIVITY** (check if you have not received contributions, loans, or made expenditures during this reporting period)

I certify to the best of my knowledge and belief that the information disclosed in this report is a complete, true, and accurate
financial statement of my (the candidate's) campaign contributions and expenditures.

_____
Signature of Candidate or Candidate's Representative

Sworn to and subscribed before me, a Notary Public, in and for_____, County, Arkansas, on this_____ day of _____, _____.
*(Legible Notary Seal)*                     Notary Signature_____

My Commission Expires:_____

**Note:  If faxed, notary seal must be legible (*i.e.,* either stamped or raised and inked) and the original must follow within ten (10) days.**

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to
comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227.  This report constitutes a public record.  This form has been approved by the Arkansas Ethics
Commission.

REVISED 08/09

# 11.  LOAN INFORMATION

Please Type or Print
Do not list loans previously reported

| DATE | NAME AND ADDRESS OF LENDING INSTITUTION | GUARANTOR(S) IF ANY | AMOUNT |
|------|------------------------------------------|---------------------|--------|
|      |                                          |                     |        |
|      |                                          |                     |        |
|      |                                          |                     |        |
|      |                                          |                     |        |
|      |                                          |                     |        |
|      |                                          |                     |        |
|      |                                          |                     |        |
| **12.  TOTAL LOANS DURING REPORTING PERIOD** | | | $          0.00 |

## IMPORTANT

The limits on campaign contributions do not apply to loans or contributions made by a candidate from his or her own personal funds to the campaign, or to personal loans made by financial institutions to the candidate and applied to his or her campaign.  Any loans made by a candidate to his or her campaign and any loans made by a financial institution to a candidate and applied to his or her campaign shall be reported in Section 11.

If a candidate desires to use or raise campaign funds to repay himself or herself for personal funds that he or she contributed to the campaign, then he or she would need to report those personal funds as a loan in Section 11.

If a candidate does not desire to use or raise campaign funds to repay himself or herself for personal funds that he or she contributed to the campaign, then those personal funds would not be reported in Section 11.   Instead, they would be reported as a campaign contribution either in Section 15 or on line 17, depending upon the amount.

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227.  This report constitutes a public record.  This form has been approved by the Arkansas Ethics Commission.

REVISED 08/09

## 13. NONMONEY CONTRIBUTIONS
### (Does not include volunteer services by individuals)

| Date of receipt | Full Name and Address of Contributor | Description of nonmoney item | Value of nonmoney item | Cumulative Total From This Contributor |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **14. TOTAL NONMONEY CONTRIBUTIONS** | | | 0.00 | |

## **IMPORTANT**

In addition to monetary contributions, candidates are required to report the receipt of any nonmonetary ("in-kind") contributions. A candidate receives an in-kind contribution whenever a person provides him with an item or service without charge or for a charge which is less than the fair market value of the item or service in question.

The value of an in-kind contribution is the difference between the fair market value and the amount charged. In-kind contributions are addressed in greater detail in Sections 205 and 206 of the Commission's Rules on Campaign Finance & Disclosure.

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227. This report constitutes a public record. This form has been approved by the Arkansas Ethics Commission.

## 15.  ITEMIZED MONETARY CONTRIBUTIONS OVER $50

Please Type or Print
(Use Additional Copies Of This Page If Necessary)

| Date | Full Name And Mailing Address Of Contributor | Place Of Business/ Employer/Occupation | Amount Of Contribution | Cumulative Total From This Contributor |
|---|---|---|---|---|
| 10/01/2009 | Bank of America<br>1100 North King Street<br>Wilmington, DE 19884 | Bank, Bank of America | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>2,000.00 | 2,000.00 |
| 10/12/2009 | Ark Monroe, III<br>425 West Capitol Ave. Suite 1800<br>Little Rock, AR 72201 | Bank, Bancorp South, Banker | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>250.00 | 250.00 |
| 10/13/2009 | The Capital Bank<br>12224 Chenal Pkwy<br>Little Rock, AR 72211 | Bank, The Capital Bank | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>1,000.00 | 1,000.00 |
| 10/19/2009 | Gary Canada, Sr.<br>105 Cherry Street<br>England, AR 72046 | Bank, Bank of England, President | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>100.00 | 100.00 |
| 10/26/2009 | James & Margaret Schenebeck<br>14904 Lamplight Way<br>Little Rock, AR 72211 | Central AR Gem, Mineral & Geology Society, President | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>100.00 | 100.00 |
| 10/30/2009 | Pat Norsworthy<br>1155 West HWY 165<br>England, AR 72046 | Federal Drier & Storage Co., Owner | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>200.00 | 200.00 |
| 10/02/2009 | Gerald & Anita Schenebeck<br>P.O. Box 11<br>Lonoke, AR 72086 | Self-Employed, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>100.00 | 100.00 |
| 11/12/2009 | Mason & Co. Realty<br>215 South 2nd Street<br>Jacksonville, AR 72076 | Mason & Co. Realty, Real Estate | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>500.00 | 500.00 |
| 11/10/2009 | Thomas & Elizabeth Dubbs<br>140 Broadway<br>New York, NY 10005 | Labaton Sucharow, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>1,000.00 | 1,000.00 |
| | **Subtotal of Contributions This Page** | | 5,250.00 | |

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227.  This report constitutes a public record.  This form has been approved by the Arkansas Ethics Commission.

REVISED 08/09

## 15. ITEMIZED MONETARY CONTRIBUTIONS OVER $50

Please Type or Print
(Use Additional Copies Of This Page If Necessary)

| Date | Full Name And Mailing Address Of Contributor | Place Of Business/ Employer/Occupation | Amount Of Contribution | Cumulative Total From This Contributor |
|---|---|---|---|---|
| 11/11/2009 | Bernard & Sandra Persky<br>170 East End Ave. Apt. 4B<br>New York, NY 10128 | Labaton Sucharow, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>1,000.00 | 1,000.00 |
| 11/11/2009 | Tim & Che Herron<br>45 Wedgewood Forest Drive<br>The Woodlands, TX 77381 | Self Employed, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>2,000.00 | 2,000.00 |
| 11/12/2009 | Eric & Tara Belfi<br>1707 Route 25A<br>Laurel Hollow, NY 11791 | Labaton Sucharow, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>750.00 | 750.00 |
| 11/12/2009 | Louis & Mickaelle Gottlieb<br>120-11 83rd Ave.<br>Kew Gardens, NY 11415 | Labaton Sucharow, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>750.00 | 750.00 |
| 11/12/2009 | Mark Arisohn<br>One Scarsdale Road Apt. 301<br>Tuckahoe, NY 10707 | Labaton Sucharow, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>500.00 | 500.00 |
| 11/13/2009 | Grasten Power Technologies, LLC<br>2201 Timberlock Place Suite 110<br>The Woodlands, TX 77380 | Grasten Power Technologies, LLC | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>1,500.00 | 1,500.00 |
| 12/02/2009 | Robert Kaplan<br>850 Third Avenue 14th Floor<br>New York, NY 10022 | Kaplan Fox & Kilsheimer LLP, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>2,000.00 | 2,000.00 |
| 12/02/2009 | Fred Fox<br>850 Third Ave. 14th Floor<br>New York, NY 10022 | Kaplan Fox & Kilsheimer, LLP, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>2,000.00 | 2,000.00 |
| 12/02/2009 | Richard Kilsheimer<br>850 Third Ave. 14th Floor<br>New York, NY 10022 | Kaplan Fox & Kilsheimer, LLP, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br>2,000.00 | 2,000.00 |
| | | **Subtotal of Contributions This Page** | 12,500.00 | |

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227.  This report constitutes a public record.  This form has been approved by the Arkansas Ethics Commission.

REVISED 08/09

# ITEMIZED MONETARY CONTRIBUTIONS OVER $50

Please Type or Print

| Date | Full Name And Mailing Address Of Contributor | Place Of Business/ Employer/Occupation | Amount Of Contribution | Cumulative Total From This Contributor |
|------|----------------------------------------------|----------------------------------------|------------------------|----------------------------------------|
| 12/02/2009 | Donald Hall<br>850 Third Ave. 14th Floor<br>New York, NY 10022 | Kaplan Fox & Kilsheimer, LLP, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>2,000.00 | 2,000.00 |
| 12/02/2009 | Joel Strauss<br>850 Third Ave. 14th Floor<br>New York, NY 10022 | Kaplan Fox & Kilsheimer, LLP, Attorney | ☒ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt<br><br>2,000.00 | 2,000.00 |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |
| | | | ☐ Primary Election<br>☐ Primary Run-Off<br>☐ General Election<br>☐ General Run-Off<br>☐ Debt | |

| | | |
|---|---|---|
| **16. TOTAL ITEMIZED MONETARY CONTRIBUTIONS OVER $50** | 21,750.00 | |
| **17. TOTAL NONITEMIZED MONETARY CONTRIBUTIONS** | 0.00 | |
| **18. TOTAL MONETARY CONTRIBUTIONS THIS REPORT**<br>(includes totals from lines 16 and 17) | 21,750.00 | |

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227. This report constitutes a public record. This form has been approved by the Arkansas Ethics Commission.

REVISED 08/09

## 19.  CAMPAIGN EXPENDITURES BY CATEGORY
Please Type or Print

| CATEGORY | TOTAL AMOUNT |
|---|---|
| Filing Fee | |
| Television Advertising | |
| Radio Advertising | |
| Newspaper Advertising | |
| Other Advertising | 253.00 |
| Office Supplies | 576.00 |
| Rent | |
| Utilities | |
| Telephone | |
| Postage | |
| Direct Mail | |
| Travel Expenses | |
| Entertainment | |
| Fundraising | |
| Repayment of Loans | |
| Returned Contributions | |
| Consultant Fees | |
| Polls | |
| Paid Campaign Workers | |
| Other (list) | |
| | |
| | |
| | |
| | |
| | |
| | |
| **20. TOTAL CAMPAIGN EXPENDITURES** | 829.00 |

## 21. PAID CAMPAIGN WORKERS
(Include any person you paid to work on your campaign, does not have to be full-time worker)

| NAME OF WORKER | AMOUNT PAID | NAME OF WORKER | AMOUNT PAID |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **22. TOTAL AMOUNT PAID CAMPAIGN WORKERS** | | | 0.00 |

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227.  This report constitutes a public record.  This form has been approved by the Arkansas Ethics Commission.

REVISED 08/09

## 23.  ITEMIZED CAMPAIGN EXPENDITURES OVER $100

Please Type or Print
(Use additional copies of this page if necessary)

| Name and Address of Supplier/Payee | Description of Expenditure | Date of Expenditure | Amount of Expenditure |
|---|---|---|---|
| CAMCO+<br>P.O. Box 6025<br>Sherwood, AR 72124 | Invitations, Envelopes & Return Envelopes | 10/19/2009 | 456.00 |
| CAMCO+<br>P.O. Box 6025<br>Sherwood, AR 72124 | Lapel Stickers | 10/19/2009 | 253.00 |
| CAMCO+<br>P.O. Box 72124<br>Sherwood, AR 72124 | Business Cards | 12/26/2009 | 120.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| 24.  TOTAL ITEMIZED EXPENDITURES THIS REPORT | 829.00 |
| 25.  TOTAL NONITEMIZED EXPENDITURES THIS REPORT | 0.00 |
| 26.  TOTAL PAID CAMPAIGN WORKERS THIS REPORT (enter total from line 22) | 0.00 |
| 27.  TOTAL EXPENDITURES THIS REPORT (includes lines 24, 25 and 26) | 829.00 |

### Note:  All Expenditures Reflected on Lines 24, 25, and 26 Should Be Totaled by Category In Section 19

The law provides for a maximum penalty of $2,000 per violation and/or imprisonment for not more than one year for any person who knowingly or willfully fails to comply with the provisions of A.C.A. § 7-6-201 through § 7-6-227.  This report constitutes a public record.  This form has been approved by the Arkansas Ethics Commission.

REVISED 08/09

# Bednarz Decl.

# EXHIBIT C

# Shoffner returns donors' $10,000  She says 1 check 5 separate gifts

Arkansas Democrat-Gazette (Little Rock)

November 10, 2011 Thursday

Copyright 2011 Little Rock Newspapers, Inc. All Rights Reserved

**Section:** FRONT SECTION

**Length:** 1648 words

**Byline:** MICHAEL R. WICKLINE ARKANSAS DEMOCRAT-GAZETTE

## Body

In 2009, state Treasurer Martha Shoffner accepted a New York law firm's $10,000 check to her campaign but facing recent questions about it, has decided to give the $10,000 back.

The single check was meant to be contributions of $2,000 each from five law partners at the firm, Shoffner's chief deputy said.

It's unclear whether Arkansas ethics rules allow multiple contributors who are not married and not sharing bank accounts to make their donations in a single check.

The firm - Kaplan, Fox & Kilsheimer LLP - has a securities monitoring contract with the Arkansas Teacher Retirement System. Shoffner is a member of the board of trustees for the system.

Shoffner also reimbursed $9,874 to her campaign carry-over account because campaign and carry-over funds were used to pay for a $900-a-month lease for a vehicle that was used for campaigning, for her office and for her personal use, said the chief deputy, Debbie Rogers.

During the past few weeks, the Arkansas Democrat-Gazette has questioned Shoffner and some of her employees about the $10,000 check and the $900-a-month lease.

In a campaign-finance report for Oct. 1-Dec. 31, 2009, Shoffner reported $2,000 contributions on Dec. 2, 2009, from Robert Kaplan, Fred Fox, Richard Kilsheimer, Donald Hall and Joel Strauss of the law firm. Fox could not be reached for comment at the firm Wednesday after a firm representative referred this newspaper's questions to him.

THE CHECK

The Democrat-Gazette last week asked how Shoffner knew that the check was intended to be five contributions, whether the check or any other document stated that, and, if so, would she show a copy of the check or document. She declined to do so.

Rogers said the contributions were put on one check at the instruction of Cord Rapert, who worked for Shoffner and went with her to New York.

Shoffner returns donors' $10,000 She says 1 check 5 separate gifts

However, Rapert, 24, of Jonesboro, now a student at Arkansas State University, said he advised an assistant at the firm that the maximum individual contribution to a state office candidate in Arkansas is $2,000 per election. It's "incorrect" to indicate that he suggested that the five contributions be made in one check, he said.

"I would have never instructed them to put it on one check, because we know it's not proper with the Ethics Commission," said Rapert.

Shoffner said she's not blaming Rapert. "I am not trying to get Cord in trouble at all," she said.

Rogers, who is a sister of former state Treasurer Jimmie Lou Fisher, said when asked whether it was proper to have five contributions in one check that "inquiries were made by the treasurer, and being unable to determine satisfactorily that such practice is allowable without question, the decision was made to return the contributions to the donors." Shoffner said she decided to return the $10,000 after consulting Graham Sloan, executive director of the Arkansas Ethics Commission. She said it is a gray area in the law.

"I just wanted to rectify the situation," she said.

In recounting his conversation with Shoffner, Sloan said, "My advice, if you had called before you deposited a check is I would have said, `Send it back and get a separate check from each of those individuals.'" "You can't really unring the bell," Sloan said, but "the only remedial action that I could think of would be to return [the check]." Rogers said the $10,000 was returned Friday.

Sloan said the state Ethics Commission has never considered whether accepting a $10,000 contribution from a firm intended to be five $2,000 contributions violates the ethics laws. The commission determines whether a violation has occurred, he said.

Under Arkansas Code Annotated 7-6-205 (b), "No contribution shall be made to or knowingly accepted by a candidate or his or her campaign committee ... unless the contribution is made in the name by which the person providing the funds for the contribution is identified for legal purposes." Sloan said he doesn't see a problem with a husband and wife who have a joint account and are both listed on the account giving a $4,000 check to represent two $2,000 contributions.

RETIREMENT SYSTEMS

George Hopkins, executive director of the Arkansas Teacher Retirement System, said the system is the lead plaintiff in one suit filed in 2010 by the law firm and lead plaintiff with two other institutional investors in another suit filed by the firm in 2009.

The firm has been working for the system since December 2008. The system has four securities monitoring firms. It doesn't pay them anything, Hopkins said. "The presiding judge decides what amount, if anything, that these firms are paid," he said.

Hopkins said he didn't know until recently that the firms contribute to state officials and he's never asked any of the firms to contribute to any trustees who are state officials and never had a trustee ask him to make such a request. State Auditor Charlie Daniels also serves on the system's board of trustees.

In the past several years, it's become common for attorneys for firms that were hired to monitor the investments of the Arkansas Public Employees Retirement System and/or the teacher retirement system to contribute to the state treasurer and the state auditor.

NEW YORK

Shoffner returns donors' $10,000 She says 1 check 5 separate gifts

Shoffner's contact with the law firm in 2009 came when, according to records in her office, she and Rapert were in New York on Nov. 29-Dec. 3 for a conference of the National Association of State Treasurers. The conference was actually Nov. 30-Dec. 2.

Asked why she decided to return to Little Rock on Dec. 3 rather than Dec. 2 since a copy of the conference agenda shows that the last event started at noon Dec. 2, Rogers said that the final luncheon of the conference concluded at 1:30 p.m. "and as the annual lighting ceremony of the Christmas tree in Rockefeller Center was scheduled for that evening, the decision had been made for the treasurer to attend that event on behalf of the state of Arkansas" and return to the state the next day.

Rogers said the cost to the state for Shoffner and Rapert to stay the evening of Dec. 2 in New York rather than return to Arkansas that day was $1,068.29, including $515 for Shoffner's hotel room and $415 for Rapert's.

The total cost of the trip was $6,219.26, Rogers said.

Rapert said he attended the tree-lighting ceremony with Shoffner but that they stayed an extra day in New York for a fundraiser at the law firm. That's when Shoffner received the $10,000 check, he said. He said attorneys at the firm offered to hold a fundraiser for her after she met one of them at a previous conference.

Shoffner said she didn't stay to attend a fundraiser and that there was no fundraiser. She visited the firm's office before she flew back to Arkansas on Dec. 3, didn't solicit funds, but did receive a $10,000 check, she said. "There was absolutely no reason for them to give it to me," Shoffner said.

THE VEHICLE

The $900-a-month vehicle lease was for a Ford Freestar, a minivan with seating for seven. Shoffner leased it using campaign carry-over funds and campaign funds. She acknowledged using the vehicle for personal use some of the time that she had it. She said she thought she was complying with state law.

The Democrat-Gazette asked whether Shoffner signed a lease agreement that included an option to purchase the vehicle, and whether she could provide a copy of the lease and purchase agreements. She declined to provide copies.

Rogers said the lease for the campaign use of the vehicle was paid for from campaign funds, which is allowed under law.

"Following the election, as the question of state vehicles was still in the courts awaiting resolution, she continued to lease the vehicle for her official duties using carry-over campaign funds, which is allowable under Arkansas state law," Rogers said.

"However, because the vehicle was subject to minimal personal use during that time that was not documented, Treasurer Shoffner made the decision to reimburse 100 percent of the lease expenditures out of personal funds to resolve any issues that may have arisen over her use of the leased vehicle," Rogers said.

Sloan of the Ethics Commission said he and commission chief legal counsel Rita Looney talked Tuesday with a Shoffner representative about Shoffner's vehicle lease.

Under state law, a candidate is allowed to use campaign funds to lease a vehicle for campaign use, but not for personal use, he said, and an officeholder can use carryover funds to lease a vehicle for office-related use, but not for personal use.

"If personal use did occur, you cannot go back and change [that]," Sloan said. "The only remedial action that came to mind was reimbursement to make up for personal usage." Whether it would be OK for Shoffner to travel from

her home to the Capitol and back home in the vehicle "is just an unanswered question," Sloan said. "It would depend on the facts of the situation." PAST PROBLEMS

Last week, Shoffner admitted that a report filed in January that showed that she had $97,349.67 in carry-over funds on May 19, 2010, from her campaign, and $47,356.29 on Dec. 30 was wrong.

State law limits officeholders' carry-over funds to an amount equal to the office's annual salary, which in this case is $54,305.

Shoffner acknowledged the errors by filing five amendments to campaign-finance reports last week, after the Democrat-Gazette questioned her about them.

In one amendment, she changed her reported carryover to show no balance on the May 19 and Dec. 30 dates in 2010 and no expenses during that period.

Shoffner, a Democrat from Newport, has been the treasurer since 2007 and was re-elected to her second four-year term in November 2010.

Her predecessor as treasurer, Delight Democrat Gus Wingfield, was reprimanded and fined $750 by the Arkansas Ethics Commission in 2004. The actions stemmed from his decisions to give promotions and pay increases to members of his family, actions that were disclosed by the Arkansas Democrat-Gazette.

This article was published 11/10/2011

**Load-Date:** November 10, 2011

---

**End of Document**

# Bednarz Decl.

# EXHIBIT D

# SHOFFNER LIVED rent-free near the Capitol for most of her first term, landlord says.

## Texas landlord: FBI asked about checks

Arkansas Democrat-Gazette   22 May 2013   CHAD DAY

Martha Shoffner stayed rent-free for most of her first term as state treasurer at a law office a few blocks from the state Capitol, her landlord confirmed Tuesday.

Tim Herron, a Texas lawyer, said Shoffner, 68, began staying at the two-story, gray brick house he used as an office at South Ringo and West Second streets shortly after she was elected in 2006.

Herron, who owned the building at the time, said Shoffner paid the utility bills at the office in exchange for living there until about two years ago, when he allowed the office to go into foreclosure because his firm didn't need it anymore.

broker.

Shoffner, whose primary home is in Newport, then moved into an apartment across downtown Little Rock, also owned by Herron and his wife, Che Williamson. This time, though, Shoffner was required to pay rent at the Rainwater Flats apartment, a little more than $800 per month, Herron said.

Herron's arrangement with his tenant has now become a large part of what federal agents say motivated Shoffner to begin soliciting cash bribes from a bond broker in exchange for her directing a large of part of the state's business to the

In federal court papers unsealed Monday, an FBI agent said the broker paid Shoffner $6,000 about every six months so she could pay for what she said was a $1,000-a-month apartment in Little Rock. In total, the agent accused Shoffner, who resigned Tuesday, of accepting cash payments of at least $36,000 over a period of years.

The payoff allegation was contained in a criminal complaint that accuses Shoffner of attempt and conspiracy to commit extortion under color of official right. The allegation came to light two days after FBI agents arrested Shoffner at her Newport home after an FBI informant secretly recorded her taking a $6,000 cash bribe hidden in a pie box in return for the lucrative state business she directed his way, the complaint says.

In the criminal complaint, Shoffner's living arrangement was

also cited by a cooperating witness, who told federal agents in April 2012 that Shoffner had begun using the unnamed broker more than others during the same time in 2011 that the treasurer was looking for a new place to live in Little Rock. The witness said Shoffner had just learned that a downtown building in which she had been living for free was about to be sold.

During this period, Shoffner made frequent remarks about not being able to afford a place in Little Rock to avoid commuting the 90 miles from Newport on a daily basis, the witness said. As treasurer, Shoffner was paid $54,304.80 a year.

In a phone interview Tuesday, Herron said that he didn't have a reason to ask Shoffner about the source of her rent payments. She has continued to pay rent for the apartment at the Rainwater Flats in the 500 block of East Capitol Avenue. He and his wife received a check just a week or so ago, which they deposited, he said.

Questions about Shoffner's living arrangement didn't come up until an FBI agent contacted Herron six months to a year ago, the lawyer said. The agent asked Herron to provide copies of Shoffner's monthly rent checks for the apartment, which Herron said he turned over. The agent also brought up the rent-free arrangement and Herron's campaign contributions to Shoffner in past elections.

"They wanted to know what the deal was," he said of the FBI.

Herron said he told the agent the story from the beginning.

He and his wife bought the building at 1021 W. Second St. in 2004, which county property records confirm.

Herron, whose practice is based outside Houston in a community called The Woodlands, needed the building for himself and his staff to use while handling federal civil cases re-

garding hormone-replacement therapy that were assigned to a judge in the Eastern District of Arkansas.

At first, Herron said, he and his wife periodically stayed at the office, which has a living quarters on the second floor. But Herron said they tired of that quickly, and after his wife began teaching summers as an adjunct professor at the University of Arkansas at Little Rock's W.H. Bowen School of Law, they decided to buy the condominium at The Rainwater Flats.

Sometime in 2006 or early 2007, Herron said, he began looking for someone to live in the office building so it would be occupied around the clock. The office is in a part of downtown Little Rock that often results in many homeless people congregating around the nearby properties, he said.

At this time, Herron said, he also had become involved in Arkansas politics, contributing to several of-

ficials including both of Shoffner's contribution from him and his wife in 2010, which state records confirm.

"When I moved to Arkansas, I was thinking about retiring there, so I thought, as usual, like I do in Texas, I needed to find out who's what and what's who and you need to contribute money to politicians," he said.

"I was interested in my wife getting a faculty job at UALR law school, so I gave money to politicians. That's what you do when you want something in any state, including Texas," he said. "I had no business relationship with the treasurer's office. She never gave me anything."

Herron said Steve Faris, a Democrat and then-state senator from the Malvern area, referred Shoffner, who had said she was looking for a place in Little Rock.

In an interview Tuesday, Faris, who is now serving on the state Lottery Commission, confirmed that he had referred Shoffner to Herron, whom Faris described as a friend.

"I just knew he had a place, and she was looking for one, and they worked something out," Faris said in an interview Tuesday, noting that he wasn't aware of any of the details of the arrangement between Herron and Shoffner.

Herron said he spoke with Shoffner, and they worked out the agreement for her to pay the utilities but no rent.

"Essentially, it killed two birds with one stone," Herron said. "We had somebody there every night, so it was a good deal for us, and I guess it was a great deal for her, too," he said.

Herron said the arrangement worked well even while his business in Arkansas was winding down. After his role in the federal cases

ended, he didn't need the office anymore and put it up for sale. He said it sat for two years without any takers.

"It was a good deal for me because I had the place for sale for two years listed with a Realtor," he said. "She kept it nice, and it looked better than if there hadn't been anybody there."

According to tax records, the Herrons also failed to pay property taxes in 2005, 2006, 2007 and 2008 on the home and the Arkansas commissioner of state lands began actions to file a quitclaim deed against the Herrons to eventually put the house up for auction to pay off the tax burden.

According to a redemption deed filed in Pulaski County Circuit Court, Herron paid off $6,652 in back taxes along with interest and penalties totaling $8,764.10 in March 2010.

Less than nine months later in January 2011, First National Bank filed a foreclosure claim on the property. Foreclosure proceedings have also been started on the apartment, court records show.

On Tuesday, Herron said that at that point, he and his wife were tired of Arkansas. (She also didn't get the faculty teaching job).

"We had that condo, and we no longer needed that because my wife had taught law school at UALR for six summers. She got sick and tired of it and got a teaching job in Texas, and our practice in Arkansas was virtually nonexistent," he said.

"So [Shoffner] needed a place because we no longer had that building, so we leased the condo to her," he said.

When the FBI agent called him, Herron said, the rent checks were the agent's foremost interest. The agent also questioned Herron regarding any business he had with

pressreader

the treasurer's office.

Other than a few follow-up calls concerning the checks, Herron said, that was last time he talked with the agent, whose name he couldn't re-call. Herron said he volunteered to testify before a grand jury but so far hasn't been called.

FBI spokesman Kim Brunell said Tuesday that she couldn't comment on whether Shoffner was being in-vestigated further regarding the ar-rangement with Herron.

"We're just going to follow the facts wherever they may lead," she said, noting the investigation was still considered to be ongoing.

Herron said he hasn't spoken to Shoffner recently.

"The only thing I hear from Martha is when I get a rent check, and there's usually a personal note that she wraps the check in a piece of pa-per. She writes, 'The weather's good

here, hope it's good there' and something like that," he said.

Since turning over copies of Shoffner's rent checks, Herron said, he has kept quiet at the FBI's re-quest but Shoffner's arrest made keeping the secret "moot."

He saw the news Monday on the In-ternet.

"I said, 'Well, we just lost a paying tenant," he said. Information for this article was contributed by Claudia Lauer and Noel Oman of the Arkansas Democrat-Gazette.



Write a comment...

Page View    Share    Comment    Save    More

Bump it    Dump it

https://www.pressreader.com/usa/arkansas-democrat-gazette/20130522/281560878322249