UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARKANSAS TEACHER RETIREMENT SYSTEM,
on behalf of itself and all others
similarly situated,

            Plaintiff,

                                          No. 11-cv-10230-MLW

vs.

STATE STREET BANK AND TRUST COMPANY,

            Defendant.

_____/

ARNOLD HENRIQUEZ, MICHAEL T. COHN,
WILLIAM R. TAYLOR, RICHARD A.
SUTHERLAND, and those similarly situated,

            Plaintiffs,

                                          No. 11-cv-12049-MLW

vs.

STATE STREET BANK AND TRUST COMPANY,

            Defendant.

_____/

THE ANDOVER COMPANIES EMPLOYEE
SAVINGS AND PROFIT SHARING PLAN, on
behalf of itself, and JAMES PEHOUSHEK-
STANGELAND and all others similarly situated,

            Plaintiffs,

                                          No. 12-cv-11698-MLW

vs.

STATE STREET BANK AND TRUST COMPANY,

            Defendant.

_____/

**SPECIAL MASTER'S SUPPLEMENT TO HIS REPORT
AND RECOMMENDATIONS AND PROPOSED PARTIAL RESOLUTION
OF ISSUES FOR THE COURT'S CONSIDERATION**

On September 18, 2018, the Special Master advised the Court that he had reached

tentative agreement with Labaton Sucharow ("Labaton") regarding its objections to 1) the

Special Master's Report and Recommendations dated June 28, 2018 (Dkt. # 357) and 2) the

exceptions to Labaton's objections filed by Keller Rohrback L.L.P., McTigue Law LLP, and

Zuckerman Spaeder LLP (individually and collectively, "ERISA Firms") (Dkt. # 387; Dkt. #

398; Dkt. # 392 ("Exceptions")).[1] The Special Master requested an additional two weeks, or until

October 2, 2018, for the parties to memorialize their agreements and submit the proposed

resolution to the Court for its consideration. On October 2, 2018, the Special Master requested an

additional week, or until October 9, 2018, to file a further report to the Court on the status of the

agreements, and the Court granted the request.

The Special Master's agreement with Labaton concerning Labaton's Objections to the

Report and Recommendations, except as concerns the ERISA Firms, is set forth in Section I

below. The Special Master's agreement with Labaton and the ERISA Firms concerning

Labaton's Objections to the Report and Recommendations concerning the ERISA firms and

concerning the ERISA Firms' Exceptions to Labaton's Objections is set forth in Section II

below.

## I.      Agreement Between Special Master and Labaton Concerning Proposed Resolution of Labaton's Objections, Except as Concerns ERISA Firms

On March 8, 2017, the Court appointed the Special Master to investigate and prepare a

Report and Recommendations "concerning all issues relating to the attorneys' fees, expenses,

and service awards previously made in this case." (Dkt. # 173, p. 2).  On May 14, 2018, after a

---

[1] Also, on September 18, 2018, the Special Master informed the Court that he was unable to reach a proposed resolution with Lieff Cabraser or the Thornton Law Firm ("Non-Settling Parties") consistent with how the Special Master views his responsibilities to the Court under the Court's March 8, 2017 Order and his Report and Recommendations. (Dkt. # 468).

fourteen-month investigation, the Special Master submitted to the Court his Report and
Recommendations ("Report"). The Report, in great detail, identified several significant legal
issues—the appropriate rules and policies governing attorney fee petitions, the appropriate
method for calculating a reasonable request for attorneys' fees from the Court, fee-sharing, and
the scope of obligations owed by lead counsel to act with candor and transparency to their
clients, co-counsel, the court, and most importantly, the class—and recommended various
remedies to address conduct by Law Firms, other than the ERISA Firms, whose conduct the
Master concluded fell short of emerging best practices in late 2016, when the Court considered
and awarded a $75 million fee award. *See* Report (Dkt. # 357, *in passim*, and pp. 362-377).
Upon the Court unsealing the Report, certain Law Firms, including Labaton, filed a series of
objections. *See* Dkt. # 359; Dkt. # 361; Dkt. # 367.

      After receiving, but before responding in writing to, the written objections to the Report,
the Special Master conferred at great length with Labaton to narrow, and ultimately to resolve,
the legal and factual issues raised in Labaton's objections. Throughout the discussions, the
Special Master has been conscious of the Court's mandate (as the Court highlighted in its August
28, 2018 Order) to provide his "candid views on the facts and the law," as presented in the
Report. *See* Dkt. # 460, pg. 6. He has balanced that important duty with his duty to consider
"reasonable suggestions that would, if adopted, reduce the length and expense of proceedings in
this matter," which has been ongoing since March 2017. *Id*.    The Special Master believes that,
in light of the laudable results achieved for the Class, and based upon what was known to the
Court at the time of the award, the $75 million attorneys' fee award to all counsel was
reasonable.

While Labaton has concerns with certain of the Special Master's recommended conclusions concerning its conduct, Labaton and the Special Master believe that the following steps and acknowledgements by Labaton addressing those areas of dispute are reasonable, confer a significant benefit upon the class, recognize the importance of the Court's role in presiding over class actions and the fundamental obligations of candor to the Court by class counsel, and are consistent with the Master's view of his obligations under the Court's March 8, 2018 Order and the Report. This includes, most importantly, Labaton's recognition of the great need for transparency and candor in the approval of Court-ordered fee awards, which lies in the sole discretion of the Court, and its failure to meet those needs in this case. The Special Master herein presents for the Court's consideration the following terms of resolution resolving remaining issues in dispute between himself and Labaton as described in Labaton's submission to the Court ("Exhibit A").

<u>Return of benefit earned from double-counted hours on the Fee Petition</u>

This investigation was triggered by the Customer Class Counsel's disclosure, following media inquiries, of an inadvertent double-counting error that accounted for an overstatement of 9,322.9 hours, or $4,058,654.50 in lodestar fees. Ex. 178 to Report (Dkt. # 357). As one of three firms responsible for this significant monetary error, Labaton agrees to reimburse the class 33.33% of the monetary value of the double-counting, up to $1,352,666.67. As the Special Master indicated in his Report, the double-counting was not the result of intentional misconduct on the part of Labaton.

Labaton has now discontinued its practice of allowing another firm to pay for the costs of Labaton's staff attorneys working at Labaton's office, and of allowing its staff attorneys to be included on another Firm's lodestar petition.

4

<u>Recognition of failure to follow emerging best practices</u>

Labaton acknowledges that its conduct in this case did not meet emerging best practices of transparency, candor, and reliability in its submission of the Fee Petition in this case. As a result, the Court could not fully discharge its fiduciary obligations to the class members. Labaton has accepted responsibility for its conduct in this case and expresses regret.

Specifically, Labaton acknowledges that its $4.1 million payment to Damon Chargois did not constitute a case-specific referral fee, as those are commonly understood across the legal industry. Labaton further acknowledges that Chargois did not commit to work on, nor accept responsibility for, the representation of ATRS in the prosecution of the State Street case, and that these factors should have led to a more robust discussion with its client, and the Court, prior to awarding attorneys' fees. Furthermore, failure to disclose these factors did not comport with emerging best practices at the time of the fee submission, which was to disclose in detail the terms of the Chargois Arrangement to the client, interested parties, the class, and to the Court. The Special Master finds, however, that the payment itself to Chargois did not violate the rules of professional misconduct or constitute intentional misconduct.

Nonetheless, Labaton recognizes that had the Court received full disclosure of the Chargois Arrangement, the Court may have awarded a lesser fee to Labaton, resulting in additional funds earmarked for the class.

<u>Continuation of Labaton's role as lead counsel for the class</u>

Given Labaton's efforts to address past shortcomings, including its recent efforts to enhance transparency with its current and future clients as to the nature of its representations, the Special Master recommends that Labaton continue in the role of Lead Counsel for the Settlement Class and ATRS as Class Representative. For the avoidance of any doubt that the class is

adequately represented moving forward, the Special Master will recommend to the Court that the ERISA Firms be appointed to serve alongside Labaton as additional Lead Counsel for the Settlement Class.  The seven current Class Representatives will remain. (ECF# 110, p. 4.)

### Money returned to the class

Labaton agrees to return $700,000 of the funds attributable to the Chargois payment to the class, as previously recommended.[2]

Labaton will continue to work closely with its settlement claims administrator in the case, AB Data, to identify class members and promptly distribute class funds.

### Entry of Bar Order

The Special Master requests that the Court enter an order consistent with Mass. Gen. Laws ch. 231B, § 4 (West 2018), barring any Non-Settling party from bringing an action against Labaton or the ERISA plaintiffs for contribution or indemnification regardless of how it is styled or denominated.

### Remedial and preventative measures taken by Labaton

As discussed above, Labaton recognizes the importance of having all individuals involved in a case participate in the preparation and filing of a fee petition requesting attorneys' fees for the firm, and recognizes that this did not occur in this case and that the "compartmentalization" or "siloing" of the firm detailed in the Special Master's Report contributed significantly to the problems in this case. To remedy this shortcoming in the process, the firm has created the new position of Head of Litigation, to whom it has appointed former

---

[2] The Special Master recommended in his Report and Recommendations that, of the $4.1 million payment to Chargois, Labaton pay $700,000 back to the Class and that the remaining $3.4 million be paid to the ERISA Firms. In addition to the $700,000 payment to the Class (set forth above), Labaton agrees to pay $2.75 million (of the original $3.4 million recommended) to the ERISA Firms.  See Section 2, below.  The Special Master agrees that this is an appropriate resolution of his recommendation as to the Chargois Arrangement.

General Counsel Jonathan Gardner. Labaton has also adopted a new practice of assembling a "settlement team" upon reaching a settlement in principle in a matter. The settlement team will routinely consist of Nicole Zeiss, Labaton's head of the settlement department, a client relationship attorney familiar with the client, and a member of the litigation team. In addition, the settlement team will circulate the full fee submission package, including information collected from all firms, to co-counsel for final review prior to submission to the Court.

To further insure the firm's compliance with ethical and legal standards moving forward, Labaton has formally appointed Michael Canty, Esq. as General Counsel, and Carol Villegas, Esq., as Chief Compliance Officer, to provide ethics advice arising at the firm. Under this structure, all engagement letters will be signed by General Counsel Canty and are required before litigation may commence.

With regard to division of attorneys' fees, Labaton has taken efforts to be in compliance with emerging best practices in order to achieve greater transparency vis-a-vis its clients and the Court. By way of example, Labaton has implemented a mandatory policy for executing retainer agreements, a Case Transition and Complaint Drafting Policy, and training for all partners, including senior level partners, explaining client disclosure and consent requirements. Each of these policies will incorporate New York's ethical rules as well as reflect emerging best practices in the field.

Labaton has already engaged an outside ethics expert to work with the firm to bring its existing fee arrangements with co-counsel into compliance. To this effect, Labaton has proactively created firm-wide templates addressing various types of retention agreements, including securities class actions, antitrust retentions, liaison counsel agreements, whistleblower

retentions, and fee allocation agreements with counsel, all of which reflect appropriate ethical standards and current emerging best practices.

To insure transparency with the Court in future cases, Labaton has also formally adopted a policy prohibiting "bare referral" arrangements with other attorneys. It has further agreed to adopt an internal policy requiring the firm to disclose to the court, regardless of the jurisdiction, any fee sharing arrangement between or among counsel, commensurate with the obligations set forth in the Local Rules of the Eastern and Southern Districts of New York.

Finally, within 60 days of signing this agreement, Labaton will retain James Holderman, former Chief Judge of the United States District Court, Northern District of Illinois, for one year to ensure that Labaton's retention, fee sharing agreements and other policies concerning fee applications are in compliance with applicable rules and emerging best practices. Judge Holderman will provide Labaton a report within 60 days of his retention. During the retention period, Labaton will fully cooperate with Judge Holderman's review. Labaton shall provide a copy, upon request, to the Special Master and the Court. Additionally, Judge Holderman will provide a letter to Labaton on or about one year from the date of the Court's approval of the Special Master's Proposed Partial Resolution, regarding the status of its compliance. Labaton will voluntarily provide a copy of the letter to the Special Master upon request.

II.     **Agreement Between the Special Master, Labaton and the ERISA Firms Concerning Labaton's Objection Regarding the ERISA Firms and The ERISA Firms' Exceptions to Labaton's Objections**

The ERISA Firms on behalf of themselves and their clients did not participate in the negotiations referenced in Section I and are not parties to the terms referenced in Section I above, except for the terms referring to additional Lead Counsel for the Settlement Class.[3]

The ERISA Firms on behalf of themselves engaged in separate negotiations with Labaton and the Special Master regarding the ERISA Firms' Exceptions, which generally stated that if the Chargois Arrangement had been disclosed to the ERISA Firms they would have filed their own fee petition instead of making a joint petition with Labaton and the other Non-Settling Firms, and they would not have agreed to the Claw Back Letter Agreement in November of 2016. Through the Special Master, Labaton, the Special Master and the ERISA Firms reached an agreement to resolve the Exceptions as provided in this Section II:

Labaton agrees to pay, within forty-five (45) days after the District Court's entry of an Order adopting the Special Master's recommendations as to the entire submission, the amount of $2.75 million to the ERISA Firms (in resolution of the Special Master's recommended $3.4 million payment; see footnote 2 above), based upon the Special Master's recommendation, and the ERISA Firms agree to accept this amount, and agree not to seek additional amounts from Labaton.    As reflected in footnote 2, the Special Master agrees that this is an appropriate resolution of his recommendation as to the Chargois Arrangement.

Labaton additionally agrees that it will not enforce the Claw Back Letter Agreement against the ERISA Firms; and, as to Labaton, the Claw Back Letter Agreement is null and void

---

[3] For the avoidance of any doubt, Exhibit A is not part of the agreement with the ERISA Firms; nothing in Exhibit A can cause ambiguity as to the meaning of Section II, and to the extent Exhibit A is inconsistent with Section II, Section II is the agreement with the ERISA Firms and it controls.

as to the ERISA Firms. Further, as part of this agreement, Labaton will not challenge any fees already paid and awarded to the ERISA Firms; nor will it support or cooperate with any such challenge by any Non-Settling Firm or others.

The ERISA Firms agree, individually and jointly, that they shall be deemed to have mutually, fully, finally and forever waived, released, discharged and dismissed any and all claims against Labaton and its partners for any attorneys' fees or expenses to date arising from *Arkansas Teachers Retirement System et al. v. State Street Corporation*, No. 11-cv-10230-MLW (D. Mass.) and related cases, as well as any attorneys' fees or expenses arising from the investigation to date by the Special Master.   Labaton agrees that it shall be deemed to have mutually, fully, finally and forever waived, released, discharged and dismissed any and all claims against the ERISA Firms and their partners for any attorneys' fees or expenses arising from *Arkansas Teachers Retirement System et al. v. State Street Corporation*, No. 11-cv-10230-MLW (D. Mass.) and related cases, as well as any attorneys' fees or expenses arising from the investigation to date by the Special Master.

As to the ERISA Firms, as previously set forth in Section 1, the Special Master requests that the Court enter an order consistent with Mass. Gen. Laws ch. 231B, § 4 (West 2018), barring any Non-Settling party from bringing an action against Labaton or the ERISA plaintiffs for contribution or indemnification regardless of how it is styled or denominated. By entering into this proposed agreement with the Special Master and Labaton, the ERISA Firms take no position on the proposed changes to the Special Master's Report and Recommendations (Dkt. # 357) other than the Special Master's recommendation as to the $3.4 million payment (now a recommended $2.75 million), Labaton's agreement not to enforce the Claw Back Letter Agreement against the ERISA Firms, and those other matters referenced in this Section II.

### III.     Conclusion

If the Court accepts the above-described terms, Labaton agrees to withdraw all pending motions, including its written objections to the Report, and waive its right to notice an appeal in any forum concerning these matters. Labaton also agrees to pay its proportionate share of the remaining amounts due to the Special Master and his team for their unpaid work. Labaton will also continue to cooperate in this investigation, and in any federal, state, administrative, or judicial inquiries initiated.

The parties point out that they each retain the right to revisit their objections, in whole or in part, should the Court not accept the Special Master's recommendations to resolve the matters as described herein. In the event the Court does not accept the terms as proposed, or issues an order that Labaton or the ERISA Firms  wish to contest, all parties, including the Special Master, shall be deemed reinstated, without prejudice, to the position held prior to reaching the terms presented herein, including the right of Labaton to have its objections to the Report heard and considered, the right of ERISA Firms to have their exceptions to Labaton's objections heard and considered, and the right of the Special Master to file and have heard and considered his responses to those objections and exceptions.

The Special Master believes that, on balance, the acknowledgments summarized above, along with the remedial actions described, and Labaton's sincere acceptance of responsibility and expression of regret, appropriately address the findings and recommendations made by the Special Master in his Report while promoting judicial efficiency and avoiding unnecessary cost. In sum, these terms comport with the spirit of the findings and recommendations of the Report.

Therefore, the Special Master respectfully presents it to the Court for the Court's consideration and approval.

Dated:  October 9, 2018

Respectfully submitted,

**SPECIAL MASTER HONORABLE GERALD E. ROSEN (RETIRED),**

By his attorneys,

   /s/  William F. Sinnott
William F. Sinnott (BBO #547423)
Elizabeth J. McEvoy (BBO #683191)
BARRETT & SINGAL, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Facsimile: (617) 720-5092
Email: wsinnott@barrettsingal.com
Email: emcevoy@barrettsingal.com

## ACKNOWLEDGEMENTS

**LABATON SUCHAROW LLP**

   /s/ Christopher Keller
Christopher Keller, Co-chairman
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

**MCTIGUE LAW LLP**

   /s/ J. Brian McTigue
J. Brian McTigue
MCTIGUE LAW LLP
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC 20016
Telephone: (202) 364-6900
Facsimile: (202) 364-9960
Email: bmctigue@mctiguelaw.com

**KELLER ROHRBACK L.L.P.**                    **ZUCKERMAN SPAEDER LLP**


  */s/ Lynn Lincoln Sarko*                      */s/ Carl S. Kravitz*
Lynn Lincoln Sarko                            Carl S. Kravitz
KELLER ROHRBACK L.L.P.                        ZUCKERMAN SPAEDER LLP
1201 3rd Avenue, Suite 3200                   188 M Street, NW
Seattle, WA 98101                             Suite 1000
Telephone: (206) 623-1900                     Washington, DC 20036
Facsimile: (206) 623-3384                     Telephone: (202) 778-1800
Email: lsarko@kellerrohrback.com              Email: ckravitz@zuckerman.com


Dated: October 9, 2018



## CERTIFICATE OF SERVICE

I hereby certify that this foregoing document was filed electronically on October 9, 2018 and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing ("NEF").  Paper copies were sent to any person identified in the NEF as a non-registered participant.


  */s/  William F. Sinnott*
William F. Sinnott