# Exhibit A

**EXHIBIT A**

**SUPPLEMENTAL RESPONSE OF LABATON SUCHAROW LLP TO THE SPECIAL
MASTER'S SUPPLEMENT TO HIS REPORT AND RECOMMENDATIONS AND
PROPOSED PARTIAL RESOLUTION OF ISSUES
FOR THE COURT'S CONSIDERATION**

After much work, dedication and exceptional effort in the discovery and mediation
process, the parties in the underlying State Street matter ultimately reached a $300 million
settlement. Given the risks, complexities and legal challenges inherent in the litigation, it must be
said that the $300 million settlement, procured by skilled and dedicated plaintiffs' counsel, was
an excellent result for the class. The Special Master has recognized the important role class
actions and plaintiffs' class action attorneys play in protecting and enforcing the rights of
consumers, injured parties and the public in general. To adequately fulfill this role, class action
plaintiffs require sophisticated, well-resourced attorneys who should be compensated at rates
comparable to those of the large, sophisticated, well-resourced defense firms who will in the vast
majority of cases be opposing them.

As explained by the Special Master, an important part of the class action framework is
ensuring the integrity of the fee petition process. Because the fee petition process is often non-
adversarial, as it was in this case, for the system to work properly, honesty, reliability and
transparency are essential to enable the Court to adequately fulfill its assigned gatekeeping and
fiduciary responsibilities to class members. As explained herein, Labaton acknowledges that it
did not fully meet these high standards here, and expresses its sincere regret to the Court, the
Class, its client, and to other interested parties in this case.

In order to assist in narrowing the work to be performed by the Master upon resubmission to him of his Report & Recommendations ("Report")[1], Labaton Sucharow LLP ("Labaton"), respectfully supplements and modifies its prior response to the Master's Report & Recommendations, ECF No. 357, as follows:

(1)     Labaton acknowledges that its fee agreement with the law firm of, and the fee paid in the captioned litigation (the "State Street case") to, Damon Chargois, Esq. ("Chargois") involved an agreement for the division of fees (the "Chargois fee agreement") that preceded the State Street case, rather than a traditional case-specific referral fee relating to a single matter. While the State Street case is governed by the Massachusetts Rules of Professional Conduct, which permit bare referral fees, Labaton acknowledges that the non-traditional nature of the Chargois fee agreement, and the facts that he neither worked on nor assumed responsibility for the State Street case,  constitute important factors that would likely have contributed to a more robust decision-making process by the Court in the fee award process.  The emerging best practices, then and now, as evidenced in part by the Local Rules of the Eastern and Southern Districts of New York where Labaton has extensively practiced, would have included a fulsome disclosure of the Chargois fee agreement to the client, to the Class by proposed notice or otherwise, and to the Court.

Labaton, which seeks to follow emerging best practices in the class action field, deeply regrets that it did not adopt these emerging best practices in this case and accepts responsibility for the shortcomings addressed herein and in the Special Master's Report and Recommendations.

---

[1] To the extent that a capitalized term is not defined herein but is defined in the Special Master's Supplement to His Report and Recommendations and Proposed Partial Resolution of Issues ("Proposed Resolution"), the definition in the Proposed Resolution applies.

(2)     Labaton understands that the Special Master agrees that the Court-awarded fees of approximately $75 million of the Settlement Fund was reasonable in light of the settlement result and the factors known to the Court at the time.  Labaton acknowledges that the Court, in awarding attorneys' fees from a settlement in a class action, has the authority to determine the allocation of settlement funds between counsel and the class.  Labaton acknowledges that the Court may have allocated a lesser fee to Labaton and more settlement funds to the Class, had the Court been apprised of the Chargois fee agreement.

(3)     Labaton understands that the Special Master agrees that there was no intentional misconduct associated with the double counting error or with Labaton's failure to follow emerging best practices with regard to disclosure of the Chargois fee agreement.  Nonetheless, Labaton, while complying with its disclosure obligations under the strict letter of the Federal Rules of Civil Procedure and the Massachusetts Rules of Professional Conduct, acknowledges that it did not follow emerging best practices relating to disclosure to the client, ERISA co-counsel, the class, and the Court.

(4)     Labaton believes that resolving these issues is in the best interests of the Class and counsel.  Therefore, if the Master recommends and the Court accepts the remedies proffered by Labaton below in lieu of formal action and reduction of the fee previously held to be reasonable (other than those reductions recommended herein, and those reductions in the Special Master's Report and Recommendations as to the Non-Settling firms), Labaton agrees to the Resolution and agrees to adopt, or where indicated, has already adopted, the following emerging best practices as its policies going forward:

3

With regard to the "Double Counting" Issue:

(a)     Labaton has already discontinued, and commits not to renew, the practice of housing staff attorneys within Labaton's premises while allowing another firm to pay the cost of such staff attorneys or carry such attorneys on their lodestar fee petitions.

(b)     Labaton has created, and commits to maintaining, the position of Head of Litigation to provide proper oversight of all litigation teams and to allow for continuity in administering cases from beginning to end with proper accountability.  Labaton has appointed Jonathan Gardner, the former General Counsel of the Firm, as the first partner to fill that role.

(c)     With regard to the issues of "compartmentalization" or "siloing", Labaton acknowledges that these practices have contributed to certain of the concerns identified in the Report and Recommendations and Labaton has implemented, and commits to continuing, additional requirements to provide greater continuity and scrutiny of settlement submissions to the court.  These additional requirements include the following: Once a settlement is achieved, a settlement team will be created consisting of the head of the Settlement Litigation Group (currently Nicole Zeiss), a client relationship attorney with knowledge of the client, and a member of the litigation team that prosecuted the action.  Each member of the settlement team shall review all submissions before filing.  In addition, when other firms are involved in prosecuting a case, the Settlement Litigation Group will circulate all fee submissions from all firms to each of the other firms to review for potential errors before submission to the Court.

With regard to the fee division issue:

(d)     In order to provide for greater transparency to its client, co-counsel, the class and the Court, and to adopt best practices in the area of division of fees, Labaton has implemented and will codify the following improvements:

(e)     Labaton will develop a Policy and Procedure for Retainer Agreements Manual with which all of the Firm's practicing attorneys must familiarize themselves;

(f)     Labaton will develop additional requirements for inclusion in its Case Transition and Complaint Drafting Policy to the effect that, before the filing of a Complaint or the transition to Labaton of a case already filed by another firm, every attorney involved must review the Ethics Rules for the jurisdiction in which the case will be or has been filed as well as the New York Ethics Rules, and will flag any potential ethics issues for the partner assigned to run the case.

(g)     Labaton will require training for all partners, regardless of seniority, regarding client disclosure and consent requirements.  To that end, the Firm has retained the services of an expert practitioner to provide the training on a bi-annual basis.

(h)     Within 60 days of signing this agreement, Labaton will retain James Holderman, former Chief Judge of the United States District Court, Northern District of Illinois, for one year to ensure that Labaton's retention and fee sharing agreements and other policies concerning fee applications are in compliance with applicable rules and emerging best practices. Judge Holderman will provide Labaton a report within 60 days of his retention. During the retention period, Labaton will fully cooperate with Judge Holderman's review.

(i)     Labaton shall provide a copy, upon request, to the Special Master and the Court. Additionally, Judge Holderman will provide a letter to Labaton on or about one year from the date of the Court's approval of the Special Master's Proposed Partial Resolution, regarding the status of its compliance. Labaton will voluntarily provide a copy of the letter to the Special Master upon request.

(j)     Labaton will formally appoint Michael Canty as General Counsel and Carol Villegas as Chief Compliance Officer.  In these roles, Canty and Villegas will provide advice on ethical issues and will coordinate with Labaton's outside ethics expert to provide prompt responses to any ethical questions raised within the Firm.

(k)     Labaton shall require each engagement letter to be reviewed and signed by its General Counsel, and no litigation can be undertaken without a signed, approved engagement letter.

(l)     Labaton shall implement and codify a policy requiring that all fee sharing arrangements are to be disclosed in writing to the client at the time of the retention and consented to in writing by the client, regardless of whether the relevant jurisdiction has less stringent standards.

(m)     Labaton shall adopt and codify a policy to comply with the Local Rules of the Eastern and Southern Districts of New York requiring disclosure to the Court of fee sharing arrangements, regardless of the jurisdiction in which litigation is to be filed or is pending.

(n)     Notwithstanding the permissibility of "bare referral" agreements in certain jurisdictions, Labaton shall implement and codify a policy prohibiting such agreements.

In addition, Labaton confirms that it has adopted, and will continue to abide by, the following requirements:

(o)     Labaton has formally reviewed, and revised where necessary, its fee division arrangements in all current cases involving such agreements, with the assistance of an outside ethics expert in order to ensure that all such arrangements comply with applicable ethics requirements.

(p)     To ensure compliance with applicable ethics requirements, Labaton has created templates for new cases that clearly outline fee division arrangements and the role and responsibility of the referring attorney. These templates include securities class action retention agreements, antitrust retention agreements, direct action retention agreements, liaison counsel agreements, case-specific fee allocation agreements, and whistleblower retainer agreements.

<u>With regard to this case generally</u>:

(q)     Labaton will cooperate with any federal, state or judicial inquiry that may arise relating to this case.

(r)     Labaton will continue to work on behalf of the class in assisting AB Data with the distribution of funds to the class.

<u>With regard to financial terms</u>:

(s)     As to sums attributable to so-called "double counting" as described in the Special Master's Report and Recommendations, Labaton will pay to the class 33.33% of the determined amount, up to a maximum of $1,352,666.67.

(t)     As to sums attributable to the fee agreement with Chargois, Labaton shall pay $700,000 to the Class as previously recommended by the Master.

<u>With regard to the ERISA Firms</u>:

(u)     Labaton agrees to pay, within forty-five (45) days after the District Court's entry of an Order adopting the Special Master's recommendations as to the entire submission, the amount of $2.75 million to the ERISA Firms (in resolution of the Special Master's recommended $3.4 million payment; see footnote 2 above), based upon the Special Master's recommendation, and the ERISA Firms agree to accept this amount, and agree not to seek additional amounts from

Labaton.    As reflected in footnote 2, the Special Master agrees that this is an appropriate

resolution of his recommendation as to the Chargois Arrangement.

(v)      Labaton additionally agrees that it will not enforce the Claw Back Letter

Agreement against the ERISA Firms; and, as to Labaton,, the Claw Back Letter Agreement is

null and void as to the ERISA Firms.

Upon the District Court's entry of a final order accepting the terms of the proposed

resolution, as set forth in the Special Master's contemporaneous submission, the parties agree to

waive their rights to appeal any issue related to the ERISA Firms.

(w)      The ERISA Firms agree, individually and jointly, that they shall be deemed to

have mutually, fully, finally and forever waived, released, discharged and dismissed any and all

claims against Labaton, and its partners for any attorneys' fees or expenses to date arising from

*Arkansas Teachers Retirement System et al. v. State Street Corporation*, No. 11-cv-10230-MLW

(D. Mass.) and related cases, as well as any attorneys' fees or expenses arising from the

investigation to date by the Special Master.   Labaton agrees that it shall be deemed to have

mutually, fully, finally and forever waived, released, discharged and dismissed any and all

claims against the ERISA Firms and their partners for any attorneys' fees or expenses to date

arising from *Arkansas Teachers Retirement System et al. v. State Street Corporation*, No. 11-cv-

10230-MLW (D. Mass.) and related cases, as well as any attorneys' fees or expenses arising

from the investigation to date by the Special Master.

With regard to miscellaneous issues:

(x)      As to Non-Settling parties, Labaton and the Special Master request that the Court

enter an order consistent with Mass. Gen. Law. ch. 231B, § 4 (West 2018), barring any Non-

8

Settling party from bringing an action against Labaton or the ERISA plaintiffs for contribution or indemnification regardless of how it is styled or denominated.

(y)     Labaton will defray remaining actual fees and expenses of the Master and his team in an amount not to exceed 33.33% of the fees and costs of the Special Master and his counsel billed for work performed and approved by the Court until the Court's final acceptance of the Proposed Resolution

(z)     In the event the Court accepts the Proposed Resolution, Labaton will withdraw all pending motions, agree to waive its right to appeal, and agree to pay its above-referenced proportionate share of any remaining amounts due to the Special Master and his team for their unpaid work. In the event the Court does not accept the terms as proposed, or issues an order that Labaton or the ERISA Firms wish to contest, all parties, including the Special Master, shall be deemed reinstated, without prejudice, to the position held prior to reaching the terms represented herein, including the right of Labaton to have its objections to the Report heard and considered, the right of the ERISA Firm to have their exceptions to Labaton's objections to the Report heard and considered, and the right of the Special Master to file and have heard and considered his responses to those objections and exceptions.

(aa)    Given Labaton's efforts to address past shortcomings -- including its recent efforts to enhance transparency with its current and future clients as to the nature of its representations -- and its acceptance of responsibility and expression of regret, the Special Master recommends that Labaton continue in the role of Lead Counsel for the Settlement Class and ATRS as a Class Representative. For the avoidance of any doubt that the Class is adequately represented moving forward, the Special Master will recommend to the Court that the ERISA Firms be appointed to serve alongside Labaton as additional Lead Counsel for the Settlement

Class.  The other six Class Representatives already appointed by the Court will remain.  (ECF #110, p. 4.).

      (ab)    Labaton acknowledges that any final proposed resolution is subject to the Court's approval, but also understands that the Special Master will use his best efforts to secure such approval.

Dated:  October 9, 2018

Respectfully submitted,

SPECIAL MASTER HONORABLE
GERALD E. ROSEN (RETIRED),

By his attorneys,


  /s/ William F. Sinnott
William F. Sinnott (BBO #547423)
Elizabeth J. McEvoy (BBO #683191)
BARRETT & SINGAL, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Facsimile: (617) 720-5092
Email: wsinnott@barrettsingal.com
Email: emcevoy@barrettsingal.com


LABATON SUCHAROW LLP

By its attorneys,


  /s/ Christopher Keller
Christopher Keller, Co-chairman
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this foregoing document was filed electronically on October 9, 2018 and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing ("NEF").  Paper copies were sent to any person identified in the NEF as a non-registered participant.

*/s/  William F. Sinnott*
William F. Sinnott