**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>                  Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>                  Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>                  Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>                  Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>                  Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>                  Defendant. | No. 12-cv-11698 MLW |

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP'S OBJECTION TO SHARING RESPONSIBILITY WITH LABATON SUCHAROW LLP FOR THE PROPOSED ADDITIONAL PAYMENT TO THE SPECIAL MASTER, AND TO ANY FURTHER <u>PAYMENTS ABSENT A FULL AND FINAL ACCOUNTING</u>**

In its Order dated August 28, 2018 (ECF No. 461), the Court proposed the issuance of an Order "amending its prior orders to require that Labaton Sucharow, LLP ('Labaton') pay from fees it previously received an additional $750,000 to the Clerk to provide a fund for payment of past and possible future fees and expenses" of the Special Master. The Court requested that the parties file any objections to such a proposed order by September 7, 2018, a deadline that was then extended to September 18, 2017 (ECF No. 465). Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") filed its initial objection and request for clarification of that proposed order on September 18, 2018 (ECF No. 466) ("Initial Objection").

In its Initial Objection, Lieff Cabraser stated that to the extent the Court intended Lieff Cabraser to share in the obligation to pay an additional $750,000 for the benefit of the Special Master,[1] Lieff Cabraser objected to the proposed additional payment as excessive in itself, as well as to the Special Master's fees and expenses as excessive in their totality, and that any additional payments to the Special Master should be deferred until a full and final accounting can be done, which the Court has indicated may come only at the conclusion of the *de novo* review of the Special Master's Report. *Id.* (citing Hearing Tr., August 9, 2018, at 53).[2] Lieff Cabraser further stated that, at a minimum, any order regarding additional payments to the Special Master should be deferred until the terms of any proposed partial resolution of issues raised by the

---

[1] Lieff Cabraser sought, in the first instance, clarification as to whether the proposed payment of additional fees to the Special Master was to be made by Labaton alone, as the August 28 Order plainly appeared to state. *Id.*

[2] Although in its August 10, 2018 Order (ECF No. 445), the Court denied Customer Class Counsel's Motion for an Accounting and Clarification that the Special Master's Role has Concluded (ECF No. 302), it did so "[f]or the reasons stated in Court" the day prior. And during the August 9, 2018 hearing, the Court stated that it was "planning to leave any issues concerning the master's cost to the end of the proceedings," and that such "issues" accordingly were not ripe. Hearing Tr., August 9, 2018, at 53. The Court did not state, as the Special Master suggests, that such an accounting would not be done eventually and at the appropriate time. *See* Special Master's Response to Objections of Lieff Cabraser and Thornton Law Firm to Sharing Responsibility with Labaton for Payment of an Additional $750,000 (ECF No. 486) at 4.

Special Master's Report and Recommendations insofar as they relate to Labaton and the ERISA Firms were disclosed to the Court and to Lieff Cabraser. *Id.*

On September 21, 2018, after clarifying that, contrary to the August 28 Order's apparent terms, the Court's intention was that all Customer Class Counsel (*i.e.*, Labaton, Lieff Cabraser, and the Thornton Law Firm LLP ("Thornton")) share responsibility for the proposed additional fee payment on the same basis as prior payments for the Special Master, the Court ordered that Lieff Cabraser be afforded the opportunity to "amplify" its reasons for its objections to sharing in that proposed fee payment "after the terms of the Master's proposal concerning a possible agreed resolution of issues relating to Labaton is disclosed." ECF No. 470. The Court set deadlines of October 2, 2018 for the Special Master to file his proposal, and October 9, 2018 for Lieff Cabraser to file its additional objection, and set a hearing date for October 15, 2018. *Id.* The Court subsequently granted an extension to the Special Master for filing his proposal to October 9, 2018 (ECF No. 480), and extended the deadline for Lieff Cabraser's additional objection to sharing in the proposed fee payment to October 11, 2018. (ECF No. 483).

On October 10, 2018, the Special Master filed his supplemental report concerning the proposed partial resolution of issues between himself, Labaton, and the ERISA Firms for the Court's consideration. ECF No. 485 ("Proposed Resolution"). Attached as Exhibit A to the Proposed Resolution is Labaton's "Supplemental Response," which sets forth Labaton's understanding of the proposed terms. ECF No. 485-1 ("Labaton Response"). Most pertinent, for present purposes, among the terms proposed by the Special Master and Labaton is that Labaton pay only a portion of the Special Master's proposed $750,000 additional fee. The Special Master and Labaton also appear to have diverging views as to what Labaton's share should be.

The Special Master states that Labaton "agrees to pay its ***proportionate share*** of the remaining amounts due to the Special Master and his team for their unpaid work." Proposed

Resolution at 11 (emphasis added). To date, and throughout this investigation, Labaton's proportionate share of the Special Master's costs has been 47%, which directly corresponds to the amount of fees that Labaton received out of the fees that were previously paid to Customer Class Counsel (separate from the fees delineated for the ERISA Firms or Chargois). Lieff Cabraser, which was paid 24% of the fees previously paid to Customer Class Counsel (separate from the fees paid to the ERISA Firms or Chargois), has accordingly paid 24% of the Special Master's fees and costs to date. *See* Response and Objections to the Special Master's Report and Recommendations (ECF No. 367) ("LCHB Response") at 3, 7-8, 41, 64-65, 75, 77, 96. However, Labaton now states that it agrees to pay only a reduced share of 33 1/3% of the Special Master's outstanding costs, which at present would be just $250,000. Labaton Response at 9.

All else being equal, there simply is no justification for Labaton taking on a reduced responsibility (*i.e.*, less than 47%) for the Special Master's fees and costs at this time. That said, it is Lieff Cabraser's position that it should not be required to share in the proposed payment for the Special Master at all. In further support of its initial objection to sharing in the proposed $750,000 payment for the Special Master, Lieff Cabraser states as follows:

*First*, as has been true since August 2017 when the Chargois issue first came to light, the Special Master's work in connection with this most recent fee request appears primarily (if not exclusively) to have concerned Labaton-specific issues in these proceedings. Lieff Cabraser has to date paid $912,000 towards the fees and expenses of the Special Master's investigation.[3] *See* LCHB Response (ECF No. 367) at 3, 7, 41, 64-65, 75, 77. As the Special Master's Report itself acknowledges, Lieff Cabraser itself was not privy to the actual details of the "Chargois Arrangement" as described in that Report, and was itself directly (and inaccurately) told by co-

---

[3] This is *in addition* to the $2.39 million in attorney time and costs incurred by Lieff Cabraser in responding to the Special Master's investigation between February 2017 and June 2018. *Id.* at 6-7, 64-66, 99.

counsel that Chargois was performing an "important role" as local counsel for Labaton and/or ATRS. *Id.* at 2, 5, 8, 49-57, 63-64. Based on that erroneous description, and its resulting belief as to the role Mr. Chargois was performing in the litigation, Lieff Cabraser agreed to a reduction in its own proposed allocated fee (on the order of $1 million) in order to compensate Mr. Chargois for his valuable services as "local counsel." *Id.* at 5-6, 97. Lieff Cabraser's position is that it quite simply has paid enough for an investigation that long ago went far beyond examining the basic inadvertent lodestar reporting error that precipitated this investigation, and moved into matters concerning which—according to the findings of the Special Master—Lieff Cabraser itself was "misled." *See* LCHB Response (ECF No. 367) at 96 (citing Special Master's Report at 352). For that reason alone, Lieff Cabraser should not be required to pay any portion of the $750,000 proposed additional payment for the Special Master, or any future payment.

In addition, Lieff Cabraser should not be required to pay for the time that the Special Master has spent negotiating and documenting the Proposed Resolution with Labaton and the ERISA Firms, which involved no consultation with Lieff Cabraser. Indeed, throughout the entire time that negotiations (initiated sometime prior to August 9, 2018, *see* ECF No. 444) to "resolve" issues surrounding the Special Master's report were ongoing, Lieff Cabraser was directly engaged by the Special Master for less than ***one hour*** regarding the aspects of Special Master's Report and Recommendations that apply specifically to Lieff Cabraser—including a "face to face" meeting that two of Lieff Cabraser's senior attorneys traveled to and attended in Boston on September 11, 2018.[4]

---

[4] Lieff Cabraser takes specific exception to the Special Master's claims that Lieff Cabraser played a "central role" along with the other firms "in the Special Master's investigation and the settlement process," and that Lieff Cabraser has also "contributed significantly to the Master's workload and to the concomitant costs of the Investigation." *See* Special Master's Response to Objections of Lieff Cabraser and Thornton Law Firm to Sharing Responsibility with Labaton for Payment of an Additional $750,000 (ECF No. 486) at 5. These statements are not factual, for the reasons amply explained in Lieff Cabraser's Response (ECF No. 367) to the Special Master's

***Second,*** in the alternative, having vacated the prior fee award, the Court has indicated that it intends to award the attorneys' fees in this matter at a future time, and that it may itself allocate the fees awarded to plaintiffs' counsel.  *See* Orders dated June 22, 2018 (ECF No. 331) and August 10, 2018 (ECF No. 445); Hearing Tr., August 9, 2018, at 33.  Any allocation of responsibility for the Special Master's $750,000 proposed additional payment (as well as any future payments) accordingly should be decided in conjunction with the allocation of the attorneys' fees in this case, as well as the ultimate allocation of responsibility for the costs of the Special Master.  *See* Hearing Tr., August 9, 2018, at 33:14-19.[5]  Having already received payments totaling $3.8 million to date, it is only fair at this point for the Special Master to wait to be paid in accordance with the Court's direction along these lines, rather than for the Special Master to be paid immediately.

***Third***, in connection with the final accounting of the Special Master's fees and expenses, Lieff Cabraser may challenge the fees and expenses charged by the Special Master to date, which may result in their reduction.  No additional payments should be ordered before that accounting has been completed and any challenges decided.

***Fourth***, and finally, should the Court require (notwithstanding all of the above) that Lieff Cabraser share in the proposed $750,000 payment to the Special Master and that this payment be made now, there is no basis to require Labaton to bear any less than 47% of that cost, as Labaton has done with all prior payments to the Special Master to date.

In addition to and apart from the foregoing, the Proposed Resolution impacts Lieff

---

Report, and as exemplified by Lieff Cabraser having been almost entirely excluded from the purported "settlement process."

[5] THE COURT: So if you look at the 1987 application note to Rule 53(b), it says, The party whose unreasonable behavior has occasioned the need to appoint a master may properly be charged all or a major portion of the master's fees. It may be proper to revise an interim allocation after decision on the merits.

...

Cabraser in several ways on which we will wish to comment at the appropriate time.

Dated: October 11, 2018                Respectfully submitted,

By: */s/ Richard M. Heimann*
   Richard M. Heimann (*pro hac vice*)
   Robert L. Lieff (*pro hac vice*)
   275 Battery Street, 29th Floor
   San Francisco, California  94111
   Tel:  (415) 956-1000
   Fax:  (415) 956-1008

   Steven E. Fineman
   Daniel P. Chiplock (*pro hac vice*)
   250 Hudson Street, 8th Floor
   New York, New York  10013
   Tel:  (212) 355-9500
   Fax:  (212) 355-9592

   *Counsel for Lieff Cabraser Heimann & Bernstein, LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will thereby be served on this date upon counsel of record for each party identified on the Notice of Electronic Filing.

October 11, 2018                */s/ Richard M. Heimann*
                Richard M. Heimann