**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 12-cv-11698 MLW |

**THE COMPETITIVE ENTERPRISE INSTITUTE'S MOTION ON BEHALF
OF THE CENTER FOR CLASS ACTION FAIRNESS, SEEKING
<u>CLARIFICATION ON PARTICIPATION AT THE UPCOMING HEARING</u>**

The Competitive Enterprise Institute ("CEI") and the Center for Class Action Fairness ("CCAF") filed a memorandum in support of a baseline $50,000,000 (16.75%) attorneys' fee award on November 20, 2018. Dkt. 522 ("CCAF Memo"). Since then, Class Counsel collectively filed over 1000 pages of briefs and exhibits, including three briefs that specifically quarrel with the CCAF Memo. *See* Dkts. 530 (Thornton Law Firm), 532 (Joint Class Counsel), and 534 (Labaton).

The Court has scheduled a hearing for June 24 (and subsequent days as necessary), and the first topic on the agenda is "argument on whether the initial fee award of $74,541,250, constituting approximately 25% of the common fund, is reasonable." Dkt. 543 ("Agenda Order") at 2. CCAF can prepare to speak the hearing, but the Court's May 31 orders do not say whether CCAF is invited to participate. The issue is especially unclear to CCAF given its intervening relocation to the Hamilton Lincoln Law Institute, and resolution of this ambiguity affects where it devotes scarce resources on its shoestring budget and extensive docket.[1] **To be clear, CCAF does not seek to cross-examine witnesses at the hearing.** It would not seem proper to elicit testimony given that CCAF has not been appointed to any official role in this case.

CCAF can instead make itself available to answer questions and present argument in support of its prior filings—if the Court would find this helpful. Because the parties and Special Master do not disagree on the overall 25% attorneys' fee award, CCAF would represent the interests of absent class members and assist the Court by defending the CCAF Memo in support of a more reasonable (though

---

[1] CCAF left CEI and became part of the Hamilton Lincoln Law Institute ("HamLinc") as of February 1, 2019. However, the Competitive Enterprise Institute is formally party to this motion because only CEI has been granted leave to participate as *amicus*. CEI fully supports HamLinc's substitution for CEI as *amicus,* as it previously moved on April 22, 2019. Dkt. 540. As a reminder, the parties and Special Master do not oppose this prior motion to the extent it seeks "the substitution of HamLinc for CEI as a technical matter for purposes of the docket." *Id.* at 2. Substitution would reduce the workload of both nonprofit organizations—HamLinc and CEI—because it would eliminate the need for coordination between the two organizations.

still lucrative) percentage of a $300 million megafund. CCAF would also defend arguments that it has previously advanced concerning "whether: contract attorneys should be treated as an expense . . . reasonable rates for staff attorneys in their fee petition; and . . . errors other than double-counting in their fee petitions." Agenda Order at 3. Finally, CCAF would expand on its prior argument that the structural changes proposed by the Partial Resolution between the Special Master and Labaton provide no relief to the class, nor even future classes. Dkt. 515 at 10-12 (CCAF Response to Partial Resolution). In particular, the "'Phase I Report' concerning Labaton" (Agenda Order at 4, hearing topic 5) suggests that Labaton has not even complied with the local rules of the Southern District of New York, which it represents as requiring disclosure of all referral fees. While the Phase I Report identifies *In re Petrobras Securities Litigation*, No. 14-cv-9662 (S.D.N.Y.) as a referral fee case, no disclosure to that court appears to have been made, and Labaton's outside counsel twice failed to respond to CCAF's requests for clarification on the issue.

Therefore, CEI seeks clarification whether CCAF may participate once again as an *amicus curiae*. If granted, CCAF will send at least one attorney to attend the hearing scheduled June 24-26 prepared to answer the Court's questions and rebut Class Counsel's arguments.

All three Class Counsel firms oppose CCAF's participation in the upcoming hearing, although Lieff and Labaton do not oppose seeking <u>clarification</u> from the Court *per se*. The remaining plaintiffs' firms, defendant, and the Special Master take no position on the motion.

WHEREFORE, CEI respectfully requests that the Court grant its motion for clarification regarding CCAF's further participation in this case.[2]

---

[2] Due to its move to the newly-created Hamilton Lincoln Law Institute, CCAF also has the capacity to accept appointment as guardian *ad litem* on behalf of the class. Therefore, contrary to a prior representation (Dkt. 496 (Tr. 10/15/2018) at 57), CCAF could accept an appointment as guardian *ad litem* with Burch Porter pursuant to its motion (Dkt. 126) and the memorandum detailing the terms of such appointment (Dkt. 515). The Court has previously taken CCAF's motion for appointment under advisement. Dkt. 192; Tr. 8/9/18 at 20; Tr. 11/7/18 at 96.

## MEMORANDUM IN SUPPORT OF MOTION

CCAF wishes to address Class Counsel's various responses to the CCAF Memo (Dkt. 522) in support of a baseline $50,000,000 (16.75%) attorneys' fee award. CCAF drafted its memorandum in just twelve days from the Court's order authorizing its filing (Dkt. 518), and so was not able to illustrate Class Counsel's strategic churn of contract and staff attorneys as vividly as it would have preferred. Class Counsel collectively filed three responses to the CCAF Memo. *See* Dkts. 530, 532, and 534.

CCAF had always intended to discuss responses to its Memo and the Report of Hon. Garrett E. Brown ("Phase I Report," Dkt. 539-1) at the next hearing, which was initially planned to occur in January following submission of the Phase I Report. *See* Dkt. 519 (Tr. 11/7/18) at 110. CCAF was contacted by outside counsel for Labaton concerning its availability for hearing dates in January—which confirms CCAF's understanding that it was invited—but in response to this proposed motion Class Counsel now insists CCAF may not attend the upcoming hearing. CEI, on behalf of CCAF, would like to clarify whether CCAF may participate in the June 24-26 hearing.

CCAF's past participation in this case has been helpful to the Court. *See* Dkt. 192 (finding amicus brief "helpful"); Dkt. 460 at 8 (same); Dkt. 448 (Pub. Tr. 8/13/2018) at 20 ("I found the memoranda you've submitted both in 2017 [and recently] to be helpful. For example, you're the one who identified the Rule 60(b) issue, which was helpful; and some of the authorities in your recent briefs were -- recent brief were helpful, citing cases that I read with care, citing of the statement were helpful."); Dkt. 519 (Tr. 11/7/2018) at 96 ("very helpful" submissions). And CCAF has been the only participant in these proceeding raising certain issues.

Therefore, CEI seeks clarification of whether CCAF will again be permitted to participate. CCAF would make itself available for questions from the Court and to present counterarguments to Class Counsel, as outlined below. Additionally, CCAF could focus any subsequent memorandum to issues the Court wishes to explore at the hearing, preserving judicial and private nonprofit resources.

### A. Outline of Arguments CCAF Could Present June 24-26

CCAF hopes to participate in three topics the Court has identified (1, 2, and 5), all of which directly pertain to prior CCAF filings. For most of these arguments, CCAF is the only participant opposing Class Counsel and in favor of enhancing recovery for innocent absent class members.

First, the primary subject of the CCAF Memo was "whether the initial fee award of $74,541,250, constituting approximately 25% of the common fund, is reasonable." Agenda Order at 2. CCAF argues this was an excessive figure for a $300 million megafund and that Class Counsel misrepresented Brian T. Fitzpatrick's article in order to get it approved. CCAF Memo at 4-6. The Special Master did not recommend adjusting the overall fee award, so without CCAF participation, no adversarial argument on this topic will occur at the hearing.

Second, the "rates for staff attorneys" and contract attorneys, and erroneous overbilling were the secondary subject of the CCAF Memo. Agenda Order at 3; *compare* CCAF Memo at 12-20, 35-37. CCAF has been the lead entity seeking judicial scrutiny of this practice, which has overbilled shareholders and other class members by billions of dollars. Jennifer Smith, *Dispute Arises Over Cost of Temp-Help Lawyers*, Wall St. J. (Apr. 14, 2013). CCAF's experience on the question was what led to its being interviewed by the *Boston Globe* for the news story that led to these hearings. While the Special Master mostly agrees with CCAF that contract attorneys should be billed at cost, only CCAF advocates realistic market rates for staff attorneys. And CCAF flags apparent churn and erroneous billing that no other party has raised, so CCAF's participation on this topic would also benefit the Court.

Finally, CCAF remains a skeptic of the proposed Partial Resolution between Labaton and the Special Master. While some plaintiffs' counsels also oppose the proposed Partial Resolution because it implicitly places too much responsibility on Lieff and TLF for the double counting error, CCAF uniquely opposes it for the lack of remediation for the class. Dkt. 515 (CCAF Opposition), at 10-12. The "Phase I Report" appears to illustrate this problem by highlighting how widespread referral

agreements are, while proposing a token work requirement to avoid being classified as a bare referral fee. The Report also identifies a referral fee arrangement that Labaton appears not to have disclosed to the Southern District of New York in 2018.

The Court may benefit from CCAF's advocacy on all of these issues. Without it, the adversarial process might break down, because no other participant will advance these arguments. The lack of adversarial advocacy often harms the class. *E.g., Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) (discussing the limits of the adversarial system of justice in in this context).

### 1. Argument on Overall Fee Award

CCAF intends to argue in favor of a 16.75% overall fee award, which is generous for a settlement of this size reached before a single deposition was taken. (Indeed, a 16.75% fee award probably understates the degree of churn and overstates the degree of risk, but the special master did not pursue lines of inquiry that CCAF would have if it had been appointed guardian *ad litem* in 2016.[3]

Class Counsel argue that the First Circuit–out-of-step with the rest of the country and rejects the proposition that the reasonable percentage of attorneys' fees awarded from a common fund settlement tends to decline as the fund size increases (often called the "sliding scale"). But the First Circuit has not rejected the "megafund" analysis. Class Counsel cites individual district court decisions allegedly rejecting the sliding scale approach, but none rely on any First Circuit law in doing so. Moreover, one of the cases Class Counsel cites in fact credited the sliding scale approach—expressly reducing a fee award in part based on the percentage being excessive for the fund size. *See In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) ("The sizes of fee

---

[3] For example, the Special Masters R&R evidences no inquiry into whether Class Counsel received third-party litigation funding or executed a risk-transfer agreement, which would have disclosed internal understandings of the *ex ante* risk of the litigation. The R&R does not disclose the degree to which it was understood that State Street would settle once government investigations concluded, nor the degree to which billing reflects risk-fee churn.

awards in similar mega-cases suggest that 33 1/3% of the settlement fund is too high a percentage."). The First Circuit has not addressed the issue one way or another, but overwhelming authority nationwide supports the sliding scale approach for percentage-of-fund fee awards.

The sliding scale has a sound basis because it mimics market-rate contingency fees negotiated by sophisticated clients. When securities clients actually monitor attorneys' fees—which ATRS admittedly refused to do—the resulting fee is generally set using a sliding scale because knowledgeable clients understand that larger cases take proportionally less work. For example, the New York Comptroller, acting on behalf of the New York State Common Retirement Fund (NYSCRF), recently objected to the fee request in another securities settlement. *See Knurr v. Orbital ATK, Inc., et al.*, Dkt. 459-1, No. 16-cv-1031 (E.D. Va. May 24, 2019), attached as Exhibit A to the contemporaneously-filed Declaration of M. Frank Bednarz ("Bednarz Decl."). NYSCRF, which has represented shareholders in several megafund settlements, objected to a fee request of 28% (with 1.8 lodestar multiplier) in a settlement worth $108 million and suggested that the court in that case instead use a fee of about 17.46%. *Id.* at 2. In its own cases, NYSCRF requires counsel to agree to a fee grid capping percentage fees based on the size of the fund. For a $300 million settlement reached after a motion to dismiss but before motion for certification or summary judgment, NYSCRF's fee grid would provide fees of $32.5 million—about 10.8%. *See id.* at 4 ("Tier III," second column, $28.5 million + 8% of amount over $250 million). Because ATRS refused to control or even monitor attorneys' fees, the Court must pick up the slack on behalf of absent class members. *See* Dkt. 362-21 (Hopkins testifying, "I always have tried to leave it up to the federal judge to say what's fair and reasonable.").

Class Counsel further argue that CCAF's generous suggested fee should not be approved because "[t]he lodestar multiplier resulting from the 16.7% fee award [CCAF] proposes would be the lowest lodestar multiplier ever awarded in a similarly-sized case in the First Circuit." Dkt. 532 at 3. In fact, the First Circuit affirmed a multiplier less than 0.5 where Judge Young discerned that most of

the work had been performed in other litigation. *Heien v. Archstone*, 837 F.3d 97, 99 (1st Cir. 2016). *Heien* is not "similarly-sized" only because it was a much *smaller* settlement. Gerrymandering cannot substitute for legal analysis.

There's simply nothing sacrosanct about generous fee multipliers applied to already-generous billing rates, especially given the "strong presumption that the lodestar is sufficient" without a multiplier. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010). Moreover, as CCAF explained in its Memo (Dkt. 522 at 20-24), a 16.75% fee award constitutes a healthy 1.82 multiplier on realistic market billing rates for contract and staff attorney (see below). Even if Class Counsel's claimed $37 million lodestar were credible, "only" compensating Class Counsel 1.34 times $515/hour for the time of contract attorneys paid $50/hour could not imaginably constitute an abuse of discretion.

## 2. Argument on Attorney Rates and Excess Billing

CCAF intends to argue in favor of more realistic billing rates for contract and staff attorneys. It will further produce charts demonstrating that most of the billing in this case occurred in the months following agreement-in-principle in the "template" *BONY Mellon* action, when little risk remained—including 10 days of extraordinary churn after the agreement-in-principle in *this* case was reached.

Class Counsel fails to show that their lodestar rates for contract and staff attorneys approximate actual market rates, and instead cites to generally-unopposed approval of above-market rates in other cases. Unable to deny that private clients don't pay $415-515/hour for contract or staff attorneys, Lieff invents wholly fictional distinctions between their staff attorneys and those employed by sophisticated clients. "Most Big Law firms use staff attorneys (or contract attorneys) for first-level document review, mostly devoted to determining whether documents are relevant and are privileged or should otherwise be withheld from production." Dkt. 534 at 22. In fact, Big Law firms use contract and staff attorneys for exactly the same sorts of tasks Lieff identifies: preparing memos for witness and issue depositions. Contrary to Lieff, sophisticated clients do not pay ten times as much for

contract attorneys to review an opponent's documents as the party's own documents. For example, in patent litigation, Big Law firms often represent non-practicing plaintiffs with very few documents who seek voluminous discovery from accused infringers with mountains of production records and email (often in foreign languages). Because Class Counsel continues to deny that the market rate for contract attorneys is cost and that the rate for staff attorneys is lower than the rate for mid-level associates, these propositions should be proved by discovery from defense counsel or a third party knowledgeable of market rates actually paid by clients. Actual market rates—not awards approved by other courts—are the benchmark for lodestar analysis.

Of course, Big Law clients would not spend 51,594.3 hours for staff and contract attorneys to prepare witness and memoranda in a case where not a single deposition was taken. The *quantity* of hours billed in this case is as excessive as the rates.

Class Counsel employed a platoon of reviewers after the $300 million settlement was already in hand. Class Counsel criticizes CCAF for stating that the settlement-in-principle was reached on June 21, 2015 rather than June 30, the date Lawrence Sucharow swore it was reached. Dkt. 532 at 19 n.23 ("CEI erroneously claims that the settlement in principle was reached in the State Street litigation on June 21, 2015 . . . In actuality, however, the agreement in principle to settle was not reached until June 30, 2015"). But on *June 21*, 2015, Garrett Bradley emailed Damon Chargois: "We have reached a settlement in principle for $300,000,000 with the defendant but it involves not just our consumer class case, but also obligations to SEC and DOL as well as the Erisa class case which was merged with ours by the Judge for settlement discussions." Dkt. 401-271 (R&R Ex. 260).

> **From:** Garrett Bradley
> **Sent:** Tuesday, June 21, 2016 3:26 PM
> **To:** Damon Chargois
> **Subject:** Fwd: State street fee regarding local counsel
>
> Damon,
>
> As always it was a pleasure to speak with you today. & As requested, I am laying out to you where we are on the State Street matter and below is the email that we referenced on the call. & That email established that Lieff, Thornton and Labaton would "share" your obligation whatever it turned out to be. & The status of the case has gotten better but yet more confusing when it comes to fees.
>
> We have reached a settlement in principle for $300,000,000 with the defendant but it involves not just our consumer class case, but also obligations to SEC and DOL as well as the Erisa class case which was merged with ours by the Judge for settlement discussions. & DOJ also has a separate settlement that is timed to be announced with ours. & As we spoke this morning, a few matters got screwed up today but we are hoping to have a status conference with the court on Thursday (he is on vacation all July) with a preliminary approval hearing sometime in August. & Given that we have to do a CAFA notice, we are still hoping for a final date this late this year. & We also have to post bonds or wait the 30 day appeal period to take fees ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ & It is going to be tight.
>
> Since our last conversation some things have changed. & The fee we will apply for is $70,900,000. This will be for Lief, Thornton, Labaton, you and now three Erisa firms. & We are attempting to hold the Erisa firms to 10%

Dkt. 401-271 (R&R Ex. 260) at 1 (highlighting added).

The settlement did not get larger after this date. In fact, the most noticeable difference between the email and the eventual settlement is that Class Counsel sought $75 million in attorneys' fees instead of the $70.9 million figure Bradley advised. Coincidentally—or not—this reduction of $4.1 million in class relief corresponds exactly to the fee Class Counsel agreed to divert to Chargois.

Between June 21 and June 30, 2015 (inclusive), an additional 2096.2 hours were billed by Class Counsel, which continued to employ an astonishing 33 contract and staff attorneys working full-time on document review and unnecessary memos for a case that had already settled in principle according to Garrett Bradley.

While the Special Master evaluated the *quality* of the work performed by the contract and staff attorneys, it is not clear whether the reasonableness of the *quantity* of hours expended was evaluated. Unreasonable hours may not be compensated even if the time resulted in detailed (but pointless) legal

9

memoranda. Given that none of the law firms nor the Special Master flagged the obviously-erroneous billing entry charging 45 hours from a single attorney in one day (Dkt. 522 (CCAF Memo) at 36), skepticism is warranted when Class Counsel attempts to shield its hours behind the Special Master's high-level finding that the reports were "reasonable and accurate." Dkt. 534 at 16. To the extent that Class Counsel hides behind "portions of the record that remain under seal" (Dkt. 532 at 22), CCAF offers to execute the protective orders and seek targeted discovery to show that these hours were not directed to benefit the class, but were intended to "jack up" the lodestar of a case certain to settle.[4]

### 3. Opposition to Partial Resolution Bolstered by Phase I Report

Finally, CCAF would like to respond to the Report of Hon. Garrett E. Brown, which confirms CCAF's argument against the adequacy of purported relief provided by the proposed Partial Resolution with Labaton. Dkt. 515 (CCAF Response to Proposed Partial Resolution), at 10-12.

First, CCAF notes the incredibly low threshold for Labaton to avoid paying "bare" referral fees going forward. A lawyer who simply "review[s] the complaint and/or theories of the case" is deemed not to have received a bare referral fee. Dkt. 539-1 at 15. Chargois himself could have easily done this, if he wanted; in other cases (and possibly in this case) he was sent copies of pleadings. *E.g.*, Dkt. 357 (Special Master's R&R) at 102. If Chargois had spent a few dozen hours reviewing the pleadings, his windfall would still be grossly disproportionate and possibly unethical, yet this would

---

[4] Thornton (TLF) takes exception to the Special Master's use of this quote (Dkt. 530 at 7), but by agreement among Class Counsel, the fee division for TLF depended on the relative lodestars of the three firms. *See* Dkt. 357 (Special Master's R&R) at 51. More generally, attorneys' fee awards—even those based on a percentage of fund—are informed and cross-checked by lodestar, which provides ample incentive to pad the lodestar, contrary to Class Counsel. Dkt. 532 at 20. (Incredibly, Class Counsel argues that it cannot be awarded what it alleges to be "only" a 1.34 multiplier of its claimed hours, yet a few pages later argues it would have no possible to incentive to bill excessive hours!) The incentive was peculiarly strong in this case, where Class Counsel had agreed to split fees based on lodestar, leading to a land rush between the firms that was well underway when Mr. Bradley discussed jacking up his firm's lodestar in February 2015. *See* Dkt. 522 (CCAF Memo) at 30 n.16.

10

not constitute a "bare" referral as Labaton understands it. *Cf. Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 137-38 (2d Cir. 2016) (describing alleged scheme to assign unnecessary work to politically-connected referring firm so that it could be paid undisclosed $112,500 "kickback"). The narrow definition of bare referral fees suggests that Labaton's review may have glossed over problematic arrangement and also suggests the proposed injunction on Labaton will not meaningfully protect future securities classes.

Second, the list of settlements where Labaton had a referral obligation raises a further questions about the extent these referral arrangements have been disclosed before the appropriate courts. For example, it appears that Labaton did not inform the court presiding over *In re Petrobras Securities Litigation*, No. 14-cv-9662 (S.D.N.Y.) that it had a referral fee obligation, although Labaton correctly understands "Rule 23.1 of the Local Rules of the United States District Courts For the Southern Districts of New York, . . . requires disclosure of 'any fee sharing agreements with anyone.'" Dkt. 428 (Johnson Decl.) at 2.[5] CCAF inquired about this with counsel for Labaton on April 17, 2019 when seeking assent for CCAF's pending motion to substitute: "please advise whether the referral arrangement Labaton discloses for *In re Petrobras Securities Litigation*, No. 14-cv-9662 (S.D.N.Y.) (see Dkt. 536-2 at 8) was noticed to the class in that case pursuant to S.D.N.Y. Local Civil Rule 23.1." Bednarz Decl. Ex. B (email exchange). While counsel for Labaton provided its position to CCAF's

---

[5] Lead counsel for the *Petrobras* settlement, Pomerantz LLP, advised only that it "has fee-sharing agreements with the firms representing other named plaintiffs in the Action, Labaton Sucharow LLP and Motley Rice LLC, which provide that Class Counsel will compensate these firms from the attorneys' fees that Class Counsel receives in this Action in amounts commensurate with those firms' efforts in this litigation." A Labaton partner filed a declaration in support of the *Petrobras* fee request, but it did not identify any fee sharing agreement. *See Petrobras*, No. 14-cv-9662, Dkt. 789-17 (S.D.N.Y. Apr. 23, 2018), attached as Bednarz Decl. Ex. A.

CCAF is familiar with this settlement because it filed an objection that resulted in a "$46 million reduction in Class Counsel's fee award," which instead benefited the class. *In re Petrobras Sec. Litig.*, 320 F. Supp. 3d 597, 600 (S.D.N.Y. 2018).

11

pending motion, he seemingly ignored the inquiry about *Petrobras* and did not respond to a direct follow-up email on April 23. *Id.* Upon information and belief, CCAF believes no disclosure of Labaton's referral fee arrangement has been provided to the *Petrobras* court. The existence of such a recent apparent failure to disclose further calls into question the thoroughness of Labaton's internal review and the value of the purported injunctive relief to resolve Labaton's claims.

### B. Conclusion

CEI supports CCAF's offer to participate in the upcoming hearing to discuss Class Counsel's fee award and related issues. CCAF would not cross-examine witnesses, but instead make itself available for questions and for presenting counterarguments to rebut Class Counsel. CEI seeks clarification from the Court whether CCAF may do so. If Class Counsel is correct that CCAF is *not* invited to speak at the hearing, it would like to know ahead of time to avoid unnecessary expense.

Respectfully submitted,

Dated: June 7, 2019                 */s/ M. Frank Bednarz*
                                    M. Frank Bednarz (BBO No. 676742)
                                    HAMILTON LINCOLN LAW INSTITUTE
                                    CENTER FOR CLASS ACTION FAIRNESS
                                    1145 E Hyde Park Blvd. Unit 3A
                                    Chicago, IL 60615
                                    Telephone: 801-706-2690
                                    Email: frank.bednarz@hlli.org

>Theodore H. Frank (*pro hac vice*)
>HAMILTON LINCOLN LAW INSTITUTE
>CENTER FOR CLASS ACTION FAIRNESS
>1629 K Street NW
>Suite 300
>Washington, DC 20006
>Telephone: 202-331-2263
>Email: ted.frank@hlli.org
>
>Gary S. Peeples (*pro hac vice*)
>BURCH, PORTER & JOHNSON, PLLC
>130 North Court Avenue
>Memphis, TN 38103
>Telephone: 901-524-5127
>gpeeples@bpjlaw.com
>
>*Attorneys for Amicus Curiae*
>*Competitive Enterprise Institute and*
>*Proposed Amicus Curiae*
>*Hamilton Lincoln Law Institute*
>*Center for Class Action Fairness*

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I certify that on June 3, 2019, CCAF emailed counsel for the parties and counsel for the Special Master in a good faith effort to narrow or resolve the issues raised in this motion. All three Class Counsel firm oppose CCAF's participation in the hearing and therefore the objective of the motion (although Lieff and Labaton say they do not oppose clarification from the court *per se*). The remaining plaintiffs firms, defendant, and the Special Master take no position on the motion.

Dated: June 7, 2019

>*/s/ M. Frank Bednarz*
>M. Frank Bednarz

## CERTIFICATE OF SERVICE

I certify that on June 7, 2019, I served a copy of the forgoing on all counsel of record by filing a copy via the ECF system.

Dated: June 7, 2019

                                                    */s/ M. Frank Bednarz*
                                                    M. Frank Bednarz