# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20, <br><br> Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE STREET BANK AND TRUST COMPANY, <br><br> Defendant. | No. 12-cv-11698 MLW |

## THE HAMILTON LINCOLN LAW INSTITUTE'S
## CENTER FOR CLASS ACTION FAIRNESS'S MOTION AND
## <u>MEMORANDUM FOR AN ATTORNEYS' FEES AWARD</u>

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ ii

Table of Authorities ................................................................................................... iii

Introduction ................................................................................................................. 1

Summary of the Argument ........................................................................................ 2

Memorandum in Support of the Motion .................................................................. 3

I.      Background ......................................................................................................... 3

        A.    CCAF's early participation as an *amicus* to the proceedings. .......... 3

        B.    The Court requests CCAF's continued participation in the case. ....... 5

        C.    The Court repeatedly finds CCAF's contributions helpful. ................ 8

        D.    At its new home at HLLI, CCAF remains a § 501(c)(3) non-profit qualified to
              receive attorneys' fees for its legal work. ............................................... 8

II.     Argument ............................................................................................................ 9

        A.    Two independent basis exist to award CCAF fees in this case. ......... 10

              1.    CCAF was effectively appointed *amicus* for some of its filings and its efforts
                    benefit the Court. ..................................................................... 10

              2.    CCAF's numerous filings produced a substantial common benefit ...... 12

        B.    CCAF conservatively requests a fee award of its discounted lodestar for work
              performed at the Court's suggestion that *also* resulted in a substantial common
              benefit. ............................................................................................... 14

        C.    A $60,690 attorneys' fee award is eminently reasonable and below what CCAF
              could legally request .......................................................................... 17

        D.    Class Counsel should pay CCAF's attorneys' fees, but they may also be taken
              from the common fund CCAF has enhanced. .................................... 19

Conclusion ................................................................................................................. 20

Certificate of Service ............................................................................................... 22

TABLE OF AUTHORITIES

<u>Cases</u>

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975) ........................................................................................ 12, 13

*Blum v. Stenson,*
    465 U.S. 886 (1984) ............................................................................................... 9

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ........................................................................................ 12, 13

*Cuellar v. Joyce,*
    603 F.3d 1142 (9th Cir. 2010) .............................................................................. 10

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    2 F. Supp. 2d 175 (D. Mass. 1998) ....................................................................... 20

*Hendricks v. Ference,*
    754 Fed. Appx. 510 (9th Cir. 2018) ...................................................................... 20

*Hendricks v. Starkist Co.,*
    2016 U.S. Dist. LEXIS 134872, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ....................... 20

*Hutchinson ex rel. Julien v. Patrick,*
    636 F. 3d 1 (1st Cir. 2011) ..................................................................................... 9

*In re Ikon Office Solutions, Inc., Secs. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................ 20

*Kaufman v. American Express Travel Related Servs., Co.,*
    2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ............................................................ 18

*Lan v. Ludrof,* No. 1:06-cv-114,
    2008 WL 763763 (W.D. Pa. Mar. 21, 2008) ......................................................... 18

*McDonough v. Toys "R" Us, Inc.,*
    80 F. Supp. 3d 626 (E.D. Pa. 2015) ................................................................18-19, 20

*MillerWohl Co., Inc. v. Comm'r of Labor & Indus. State of Mont.,*
    694 F.2d 203 (9th Cir.1982) .................................................................................. 12

*Morales v. Turman,*
    820 F.2d 728 (5th Cir. 1987) ...................................................................... 10, 11, 19

*Neslin v. Wells*,
  104 U.S. 428 (1882) ........................................................................................20

*In re Neurontin Mktg. & Sales Practices Litig.*,
  58 F. Supp. 3d 167 (D. Mass. 2014) ...............................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ..........................................................................13

*In re Petrobras Secs. Litig.*,
  320 F. Supp. 3d 597 (S.D.N.Y. 2018),
  *vacated on other grounds* 786 Fed. Appx. 274 (2d Cir. 2019) .......................20

*In re Primus*,
  436 U.S. 412 (1978) ..........................................................................................9

*Radcliffe v. Experian Info Solutions*,
  794 F. App'x 605 (9th Cir. 2019) ....................................................................20

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ..........................................................................19

*Rougvie v. Ascena Retail Group*, No. 15-cv-724,
  2019 U.S. Dist. LEXIS 28229 (E.D. Pa. Feb. 21, 2019) ................................18

*Schneider v. Lockheed Aircraft Corp.*,
  658 F.2d 835 (D.C. Cir. 1981) ...................................................................10, 11

*In re Southwest Airlines Voucher Litigation*,
  898 F.3d 740 (7th Cir. 2018) ..........................................................................13

*In re Southwest Airlines Voucher Litig.*,
  898 F.3d 740 (7th Cir. 2018) .............................................................13, 18, 19

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) .............................................................................17

*United Steelworkers of Am. v. Sadlowski*,
  435 U.S. 977 (1978) ........................................................................................19

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013) ..........................................................................................12

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ..........................................................................12

*In re Volkswagen & Audi Warranty Extension Litig.*,
  692 F.3d 4 (1st Cir. 2012) ...............................................................................13

**Rules and Statutes**

Fed. R. Civ. P. 6(b)(1)(A) ................................................................................................................. 1

Fed. R. Civ. P. 54(d) .................................................................................................................... 1, 20

Fed. R. Civ. P. 60(b) ....................................................................................................................... 8

Rev. Proc. 92-59, 1992-2 C.B. 411 ................................................................................................. 8

**Other Authorities**

4 Am.Jur.2d Amicus Curiae § 7 ..................................................................................................... 10

**INTRODUCTION**

In accordance with Local R. 7.1, Fed. R. Civ. P. 6(b)(1)(A), and this Court's September 29 Order (Dkt. 646), *amicus curiae* the Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") moves for an award of $60,690 in attorneys' fees under Fed. R. Civ. P. 54(d). The request represents a significantly discounted lodestar award for certain legal work in 2018, which was requested by the Court and which led to a $6.2 million common benefit for class members. The modest request represents a small fraction of the award CCAF is entitled to under common benefit principles. It does not include any lodestar for time spent beyond responding to the Court's requests. CCAF's renewed motion for guardian *ad litem* will be filed separately.

The Court previously granted CCAF's motion to extend the time it could timely move for a fee award. Dkt. 613. This order merely extended the time for the present motion; the Court has *not* decided whether such "award is permissible and appropriate." *Id.* at 3. While CCAF had hoped to extend the motion until all work on this case concludes (*id.* at 2), it understands the Court's concern that doing so may render the forthcoming order non-final and therefore extend uncertainty in the case. Dkt. 642, Tr. 9/22/2020 ("Tr.") at 19-20. To avoid this, the Court granted leave for CCAF to move for all past attorneys' fees by October 7 (Dkt. 641 & 646), so that the Court could resolve all fee matters with entry of a final judgement.

In an effort to secure a final order as quickly as possible, CCAF files its motion 8 days early, and does not oppose the Court changing the remaining briefing schedule accordingly. CCAF will not appeal any determination on this motion. Tr. 30. To avoid uncertainty, CCAF will not apply for fees for any other past work in this case besides the hours identified in this application.

CCAF attempted to confer and specifically asked whether parties would "would not oppose the motion under certain circumstances." Thornton, Labaton, and Lieff Cabraser oppose the motion. The defendant and three ERISA firms take no position on the motion. The Special Master takes no position except to the extent that he opposes payment from the common fund.

## SUMMARY OF THE ARGUMENT

In its Memorandum and Order setting plaintiffs' fee award ("Fee Order," Dkt. 590), the Court observed that it "would consider ordering that CCAF be compensated for its work if it had the authority to do so." Fee Order at 12 n.3.

Two lines of authority support such an award. CCAF bases its fee motion on (1) the Court's orders, which effectively appointed CCAF to participate as *amicus* for certain purposes, and (2) the substantial common benefit that CCAF's participation generated. CCAF advocated for a reduced fee award that no other party—not even the Special Master—thought warranted. Through multiple filings, "CCAF brought expertise to the proceedings, which was often very helpful to the court." *Id.* at 12. The Court ultimately awarded counsel a little more than $60 million collectively, which will allow nearly $15 million to return to the common fund for distribution to class members—which is $6.2 million more than the Special Master's most expansive recommendation.

In an abundance of caution, the present fee requests seeks only *discounted* lodestar time for work that satisfies both bases for the award. CCAF limits its request to work performed between certain dates in 2018 when the Court unexpectedly called CCAF back to the case after a sixteen-month hiatus. This work totals only $60,690 or *less than 1%* of the common benefit attributable to CCAF's responsive and thorough participation, a sliver of the 25% ($1.55 million) fee award that might be justified from common fund principles.

CCAF believes that its fees should be paid by Class Counsel in proportion to each of their fee awards. *Cf.* Dkt.494 at 3 (ordering payment for the Special Master from Labaton, Thornong, and Lieff in the ratio 47/29/24). But the common benefit basis for the fee award certainly also allows payment from the common fund, which was improved by CCAF's efforts.

WHEREFORE, CCAF respectfully requests that the Court award it $60,690 for past work in this case under Fed. R. Civ. P. 54(d).

### MEMORANDUM IN SUPPORT OF THE MOTION

I.      **Background**

    A.      **CCAF's early participation as an *amicus* to the proceedings.**

CCAF has played an active role in investigating the November 2, 2016 fee order (Dkt. 111), since even before the reconsideration process formally began.

On November 10, 2016, David Goldsmith filed a letter which for the first time informed this Court that errors had caused the time of certain "staff attorneys" to be incorrectly included on the billing for both Thornton and one of the other Class Counsel firms. Dkt. 116 at 2. The extent of this double-counting was approximately $4 million. *Id.* at 3. While Class Counsel reviewed their declarations prior to filing this letter, Mr. Goldsmith did *not* then advise the Court that neither Thornton nor Labaton bill "regular rates charged" to any paying client. Fee Order at 104. Nor did the letter accurately advise that many of the supposed "staff attorneys" were not staff at all, but temporary contract attorneys hired at rates of about $50/hour. *Id.* at 65. Much less did the letter disclose that Class Counsel—unknown to ERISA counsel—had paid $4.1 million to a politically-connected Texas attorney who performed no work in the case. The Goldsmith letter provides just one example of Labaton and Thornton's "cavalier indifference to their duty to provide the court with the accurate and complete information necessary to make a properly informed decision concerning the most appropriate amount to award in attorneys' fees." Fee Order at 127.

CCAF's involvement with this case began *prior* to the misleading November 10, 2016 letter. The double-counting error was discovered by *Boston Globe* reporter Andrea Estes, who then contacted CCAF director Theodore H. Frank on or about November 4, 2016 to ask questions about the billing and class actions in general. Dkt. 125-1 ¶ 30. Frank reviewed the fee papers and docket, and wrote a detailed five-page letter memo concerning the billing, and the November 10, 2016 Goldsmith letter. Dkt. 125-2 ("Frank Memo"). The Frank Memo flagged several issues that Goldsmith failed to address, including the misleading use of temporary contract attorneys at greatly inflated rates,

the declining percentages generally awarded in "megafunds," and the misrepresentation of the Fitzpatrick article in the fee papers. *Id.* at 3, 5. Andrea Estes and *Boston Globe* further investigated and reported on several of these issue in a thorough December 17, 2016 story on the erroneous billing. The article quotes Frank extensively; Frank correctly inferred that the underlying double-counting error was inadvertent, but that the misrepresentation of contract-attorney rates was pervasive. Dkt. 117 at 27. On February 6, 2017, the Court ordered the parties to respond to its suggestion to appoint Judge Rosen as Special Master to investigate issues raised by the *Boston Globe* report, including "whether the hourly rates plaintiffs' counsel attributed to the staff attorneys in calculating the lodestar are, as represented, what these firms actually charged for their services or what other lawyers in their community charge paying clients for similar services." *Id.* at 6-7.

On February 17, 2017, CCAF appeared and moved to be appointed guardian *ad litem* on behalf of the class, or alternatively to participate as an *amicus*. Dkt. 126-1. In its initial *amicus* brief, CCAF flagged a jurisdictional problem that might occur if the Special Master's investigation extended beyond November 2, 2017—which it did. *Id.* at 12. CCAF argued that even if it were not appointed guardian, the scope of the Special Master's investigation should expand to encompass other issues from the Frank Memo, including the misrepresentation of the Fitzpatrick study. *Id.* at 11. CCAF further flagged the issue of declining percentages being awarded in megafunds and unnecessary churn being performed in a case with relatively little discovery. Dkt. 154 at 13-15. CCAF additionally pointed out that the undisclosed fee-sharing arrangement between the firms appeared to have misled the court because ERISA counsel had actually received much less than the 1.8 multiplier Class Counsel claimed for the case. *Id.* at 15. In fact, Class Counsel had paid themselves much more than the "corrected" 2.0 multiplier they claim, while giving ERISA counsel a relative pittance, unbeknownst to the Court. *Id.*

At the March 7, 2017, the Court granted leave for CCAF to participate and particularly discussed the "intriguing issue" regarding the Court's continuing jurisdiction beyond November 2, 2017. Dkt. 176 (Tr. 3/7/17) at 19. The Court therefore directed the parties to draft a Rule 60 motion

to reopen the fee award. *Id.* at 20. The Court also directed Class Counsel to provide notice to the class, as CCAF had suggested. *Id.* at 24. On March 8, 2017, the Court granted CCAF leave to file as an *amicus*, and took its motion for appointment as guardian *ad litem* under advisement. Dkt. 172 at 2. The Court has repeatedly confirmed that the motion for appointment as guardian *ad litem* **remains** pending and under advisement. Dkts. 410 at 3; 445 at 2; 460 at 8; 549 at 2; 519 at 96; Tr. at 18.

On the same date, the Court appointed Judge Rosen to act as Special Master, and to prepare a report addressing items including: "the accuracy and reliability of the representations made by the parties in their requests for awards of attorneys' fees and expenses," and "the accuracy and reliability of the representations made in the November 10, 2016 letter from David Goldsmith." Dkt. 173 at 1-2. CCAF filed another brief on March 20, 2017 concerning the stipulated Rule 60 motion and notice plan, which the Court found "helpful" and allowed. Dkt. 192 at 2. The Court suggested a revised form of notice on March 24, 2017, and invited CCAF to comment on it, which it did. Dkts. 187, 189.

The Special Master's investigation was complicated by Class Counsel's apparent concealment of the Chargois arrangement, which did not come to light until the after close of depositions, buried in Thornton's (but not Lieff's or Labaton's) document production. Dkt. 357 at 87 n.66. The Special Master's 377-page Report and Recommendation was filed in lightly redacted form on June 28, 2018 (Dkt. 357, "Report"), and the voluminous exhibits became available in the following months.

## B.  The Court requests CCAF's continued participation in the case.

On July 31, 2018, CCAF had not participated in the case for over sixteen months. On that date, due to controversy about whether the Special Master could respond to class counsel's objections, the Court *sua sponte* directed that CCAF "shall, by 12:00 noon on August 6, 2018" state whether it remains able to serve as guardian *ad litem*, state financial and other terms for doing so, and opine on "the Court's authority to permit the Master to address objections to his Report and related issues." Dkt. 410 at 3. CCAF provided this information, explaining that it would need to associate with outside for-profit counsel and seek (discounted) compensation in order to accept appointment at that time.

Dkt. 420. While CCAF initially offered in early 2017 to act as a guardian *ad litem* "at whatever rate this Court sets in advance" including *pro bono* "if the Court feels it to be the best course" (Dkt. 126-1 at 6), the case became unexpectedly complicated and delayed by discovery of the Chargois arrangements, and class counsel's scorched-earth litigation tactics, and CCAF's resources were stretched thin in 2018 because it had taken on other cases once it became clear that it would not be participating in the 2017 investigation. *Id.* at 25. Nevertheless, CCAF attorneys put in their best effort in answering the Court's order and finding co-counsel, and discussed authority that supported asking the Special Master to answer class counsel's voluminous objections. *Id.* at 8-10. The Court adopted this procedure. The same filing also observed that a named partner of Chargois & Herron LLP provided free rent to former Arkansas State Treasurer and ATRS trustee Martha Shoffner, who was later convicted political corruption, and that several Labaton partners had contributed to her political campaigns. *Id.* at 18-20. These facts did not previously surface in the case; CCAF attorneys discovered them through their research. The Court later inquired further into these topics through direct examination, and ultimately made findings about them. Fee Order at 61. CCAF also argued that the Special Master's recommendations did not go far enough in reducing fees to class counsel. Dkt. 126-1 at 21.

On October 11, 2018, the Court surprised CCAF again by asking whether it would participate in a hearing four days later "in person or, if necessary, by telephone." Dkt. 488. CCAF's director Theodore H. Frank attended that hearing and raised concerns about the proposed partial resolution between the Special Master and Labaton, which would not resolve objections by all Class Counsel and would arguably treat the other firms unfavorably relative to Labaton, creating unnecessary appeal risk. Dkt. 496 (Tr. 10/15/2018) at 54-57. The Court advised Mr. Sinnott that it was "moving in his [Frank's] direction" regarding the proposed partial resolution. *Id.* at 93. The Court permitted CCAF—along with Lieff and Thornton—to respond to the partial resolution before the next hearing on November 7, 2018, which CCAF was also allowed to participate in. *Id.* at 94. In its 23-page response filed

November 5, 2018, CCAF took issues with several aspects of the partial resolution and the fundamental approach to allocating the new fee award. Dkt. 515. CCAF objected that the Special Master only advocated for $7.4 to $8.1 million to be reallocated to the class in the form of "remedies" or sanctions, while otherwise endorsing the original 25% award. *Id.* at 18-19. CCAF argued that baseline fee award in the case was too high, and that it should be adjusted to a reasonable fee award *before* applying any sanctions. *Id.*

CCAF attorney Frank Bednarz attended the next hearing on November 7, 2018, where the Court recalled one of CCAF's earliest filings in the case—the Frank Memo filed February 24, 2017—concerning the declining percentage award in megafund settlements. Dkt. 519 (Tr. 11/7/2018) at 103. The Court asked CCAF to file on this topic. "Actually, I'd like to hear from CEI if it's willing on this. Because I believe I'm correct that you cited some study that ended ten years ago about what is done in mega fund cases. … Why don't you file it when the master is filing on the 20th." *Id.* at 107-08.

Thirteen days later, CCAF filed its 38-page memo in support of a reduced $50 million fee award, which discussed (1) empirical studies, including the misrepresented Fitzpatrick study, (2) corrected lodestar crosscheck rates for contract and staff attorneys, (3) the overbilling apparent, especially in comparison to the *BONY Mellon* matter, which had much more discovery, (4) the inappropriate disparity in lodestar between Class Counsel and ERISA Counsel, (5) the relative lack of risk when most of the billing was undertaken. Dkt. 522. All of these topics are discussed and analyzed in the Court's Fee Order awarding just over $60 million.

CCAF moved from the Competitive Enterprise Institute to the Hamilton Lincoln Law Institute in February 2019 and continued participating. The Court granted CCAF leave to file two memoranda in advance of the hearings on June 24-26, 2019 and also participate in these hearings. Dkts. 549; 552. CCAF drafted a post-hearing memo that provided a detailed comparison between the *BONY Mellon* and *State Street* billing and a detailed look at the billing descriptions of staff attorneys, accompanied with nearly 500 pages of exhibits arranging this billing by timekeeper. Dkts. 583, -1, -2.

In the Fee Order itself, the Court required the Special Master and CCAF to confer regarding class notice. Dkt 590 at 155. More recently, CCAF flagged then-recent reporting that former ATRS director George Hopkins had donated to a local politician, and then seven Labaton attorneys donated thousands of dollars to the same politician ten days later—on the same days Hopkins was attending mediation at Labaton's New York offices. Dkt. 592-1 at 16-17.

## C.     The Court repeatedly finds CCAF's contributions helpful.

Each time CCAF sought leave to file a brief, the Court allowed it, and the Court specifically found several helpful to the court. *E.g.,* Dkt. 445 at 3; Dkt. 448 (Pub. Tr. 8/13/2018) at 20 ("I found the memoranda you've submitted both in 2017 [and recently] to be helpful. For example, you're the one who identified the Rule 60(b) issue, which was helpful; and some of the authorities in your recent briefs were -- recent brief were helpful, citing cases that I read with care, citing of the statement were helpful."); Dkt. 460 at 8; Dkt. 519 (Tr. 11/7/2018) at 96. The Count explained it allowed CCAF to participate over three days of live testimony in part because "I found what Mr. Frank and you submitted to be helpful." *See* Dkt. 560 (Tr. 6/24/2019) at 15. *See also* Tr. (9/22/19) 17.

The Court confirmed these findings in the Fee Order itself, which found that "CCAF brought expertise to the proceedings, which was often very helpful to the court." Fee Order at 12.

## D.     At its new home at HLLI, CCAF remains a § 501(c)(3) non-profit qualified to receive attorneys' fees for its legal work.

Fees to CCAF would assist its non-profit mission to advocate on behalf of class members. CCAF is a sub-unit of the non-profit HLLI, which precludes CCAF attorneys from personally profiting from any fee award. *See* Attached Declaration of M. Frank Bednarz ("Bednarz Decl."), ¶ 6. *See also* Dkt. 125-1 at 4 (describing identical rules governing CCAF as part of CEI).

While Hamilton Lincoln Law Institute ("HLLI"), as a non-profit, is limited in the total awards of fees it may receive in any given five-year period, Rev. Proc. 92-59, 1992-2 C.B. 411, its non-profit status does not preclude it from being awarded fees as any other counsel. Pro bono and/or non-profit

representation does not preclude a request for attorneys' fees of the same size that a for-profit firm could recover. *E.g., In re Primus*, 436 U.S. 412, 429-31 (1978) (ACLU and NAACP); *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (pro bono publico representation not grounds for reducing attorneys' fees); *Cuellar v. Joyce*, 603 F.3d 1142 (9th Cir. 2010) ("The fact that Cuellar's lawyers provided their services pro bono does not make a fee award inappropriate."); *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011) (affirming award to nonprofit Center for Public Interest).

## II.    Argument

Two bases exist to justify an award of attorneys' fees. First, an *amicus* may be awarded attorneys' fees for beneficial service provided *at the Court's request*. Second, attorneys' fees to CCAF may be justified for the same reason class attorneys receive attorneys' fees even in cases where no statutory basis for fees exists: because of common benefit doctrine. CCAF acknowledges that a Court has never awarded fees in similar circumstances, but it believes authority under both bases supports its motion. Unlike most other courts to have decided whether to award an *amicus* attorneys' fees, CCAF's contributions resulted in an enormous *common benefit* to class members.

CCAF has conservatively pared down its request to only encompass greatly-discounted rates for time spent *both* at the Court's request *and* produced a common benefit for the class as reflected in the Fee Order. These hours cover only the time spent (1) from July 31 to August 6, 2018—because on the former date, the Court directed CCAF to respond to issues concerning the Special Master's participation by the latter date, Dkt. 410, and (2) from October 11 to November 20, 2018—because the Court invited CCAF to participate in hearings on the former date, which led to it requesting a memorandum addressing particular issues raised at the hearings and filed on the latter date: CCAF's 38-page memorandum recommending an overall fee award of $50 million. Dkt. 522 ("Fee Memorandum"). CCAF does not request fees for before or after these dates—unless and until it is appointed guardian *ad litem* pursuant to its forthcoming renewed motion for appointment for the limited purpose of defending the Court's finalized Fee Order on appeal (and in that event will not

seek fees for work before the date of appointment). For the sake of clarity and finality, CCAF irrevocably waives any entitlement to fees for any past work not included in this request.

CCAF's request amounts to only $60,690 for 218.4 hours worked, using deeply-discounted hourly rates. The award equals a blended lodestar rate of $277.88, which is lower than the rate for the least expensive associate billed by any Class Counsel firm—rates which were fully credited for the purpose of conducting the lodestar crosscheck. Report at 173 (endorsed by Fee Order at 134).

CCAF believes its fees should be paid by the parties responsible: Class Counsel. That said, a fee award premised on common benefit principles could also be paid by the beneficiaries. Given that CCAF's involvement conservatively resulted in an additional $6.2 million benefit for the class, its fee request represents **less than one percent** of the effective common fund—an eminently reasonable fee by any measure.

### A.  Two independent basis exist to award CCAF fees in this case.

#### 1.  CCAF was effectively appointed *amicus* for some of its filings and its efforts benefit the Court.

While *amicus* CCAF is not formally a party to the suit, it helped confer a multi-million dollar benefit though this Court's adoption of several key arguments to award an overall attorneys' fee award just over $60 million.

The Court requested CCAF's participation, so CCAF may be awarded fees for the appointed work it performed. "[A] federal court may charge the legal fees of *amici curiae* to a party for services rendered" if two conditions are met. *Morales v. Turman*, 820 F.2d 728, 731 (5th Cir. 1987). "First, 'the court must appoint an amicus curiae who renders services which prove beneficial . . . [and] Second, the court may then 'direct [the fee] to be paid by the party responsible for the situation that prompted the court to make the appointment.'" *Id.* (quoting 4 Am.Jur.2d Amicus Curiae § 7); *see also Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 853 (D.C. Cir. 1981) (finding similar standard to award fees where *amicus* was also appointed guardian *ad litem*). A pure volunteer, however, is not entitled to

fees. *Morales*.

Much of CCAF's participation had a voluntary character, but the Court directed certain work. For example, CCAF could have chosen to withdraw from the case entirely when the Court postponed its ruling on the motion for guardian *ad litem*. Further, in February 2017 CCAF further offered to forgo fees as a condition of appointment if the Court believed its motives were impure. Dkt. 126-1 at 6. Thus, this case falls between the pure-volunteer case of *Morales*, where fees were precluded, and the pure-appointment case of *Schneider*, where the court formally appointed a guardian *ad litem*.

The Court invited CCAF to serve as an *amicus* and to draft briefs responsive to the proceedings. The Court's July 31, 2018 offers among the clearest examples of appointment, because the Court not only inquired whether CCAF would still serve as guardian *ad litem* and under what terms, it also directed CCAF to "address the Court's authority to permit the Master to address objections to his Report and related issues." Dkt. 410 at 3. The Court then moved *sua sponte* to invite CCAF to participate at hearings. Dkts. 488. At the November 7, 2018 hearing, it effectively appointed CCAF as amicus again by requesting briefing on the overall fee award, to be filed within just 13 days. Dkt. 519 (Tr. 11/7/19) at 107. CCAF had not yet written or even planned to write the Fee Memorandum when the Court contemplated its filing. Dkt. 518. Instead, the Court commissioned the Fee Memorandum in advance, and directed other parties to respond to it. *Id.* at 2. Arguments in Fee Memorandum shaped subsequent proceedings, and the Court ultimately adopted several of CCAF's suggestions.

Most *amicus* briefs are written unsolicited by outside parties who choose their own topics. But CCAF's filings August 6, November 5, and November 20 were made at the request of and with advance permission from the Court. While the Court never appointed CCAF under pains of contempt, the Court did *request* briefing that CCAF delivered professionally and in short amounts of time. For this reason, CCAF believes the time spent from July 31 to August 6 and October 11 to November 20, 2018 falls within *Morales*' requirements because this participation has substantial character of the

appointment of "an amicus curiae who renders services which prove beneficial." 820 F.2d at 731.

The class (and the Court) derived benefit from this service. This class will receive $6.2 million more under the Fee Order than what the class would have enjoyed if all the Special Master's initial Report were adopted and the maximum recommended sanctions imposed. Dkt. 590-1.

### 2.    CCAF's numerous filings produced a substantial common benefit

Unlike most *amici*, CCAF's work in this case also generated a valuable common benefit for third parties. This distinguishes CCAF from fee applicants who simply assisted courts. *Contrast MillerWohl Co., Inc. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 205 (9th Cir. 1982) ("These amici performed a valuable service for the court. Admirably fulfilling the role of amicus does not, however, entitle them to compensation."). Here, CCAF's valuable service to the Court *led to* valuable benefits for third parties whose common benefit fund has been enhanced by $14.38 million over the original fee award and at least $6.2 million over the Special Master's recommendation. Dkt. 590-1.

Attorneys who create common benefits for others are entitled to fees based on general equitable principles—the same principles that entitle plaintiffs' attorneys to recover fees in spite of the American rule in the absence of fee shifting statutes. "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *accord Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund doctrine is a "well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees." *Boeing*, 444 U.S. at 478 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund,

thus spreading fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478 (citations omitted).

In order to receive common benefits fees, a court must have some "reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting." *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012) (quoting *Alyeska*, 421 U.S. at 264 n.39). "These criteria are easily met where each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*PJAH*") (cleaned up) (quoting *Boeing*, 444 U.S. at 497). This condition applies here because the underlying settlement and plan of distribution establish a common benefit fund which will pay all qualified class members a proportional *pro rata* share based on their recognized claim amount. *See* Dkt. 89 at 83.

Thus, by successfully arguing that the overall fee award should be reduced, CCAF proportionally benefit *all* class members and is entitled to a share of this benefit.

While CCAF does not represent a class member in this case, its fee award is justified for the same reason that objectors' fees may be awarded to attorneys that materially improve class benefits though objection. For example, in *In re Southwest Airlines Voucher Litigation*, the Seventh Circuit held that the district court erred in denying fees to a class-action objector. 898 F.3d 740, 745 (7th Cir. 2018) (directing the award of attorneys' fees to CCAF for representing an objector who negotiated a side-settlement that tripled relief available to class members). In *Southwest*, the district court denied fees to the objector, finding that awarding fees to objector would somehow "undo" the settlement agreement. *Id.* at 742. The Seventh Circuit held that class action settlement agreements should not be read to bar objectors from requesting fees for their efforts in adding value. *Id.* Instead, such fee awards apply general "common-fund doctrine to avoid wreaking unintended consequences" because it would be inequitable for the objector's lawyer to receive nothing despite tripling relief for the class. *Id.* at 746 (internal quotations omitted); *accord PJAH,* 886 F.2d at 271 (finding that attorneys should have been

awarded fees above contingency agreement with their two estate clients because they recovered common fund for the benefit of a class).

Here, CCAF alone argued for an overall fee award substantially lower than the $75 million award Class Counsel obtained. While the Court did not reduce overall fees to $50 million as CCAF recommended, it did reduce the fee award to $60 million, making available about $6.2 million more available to class members than even the Special Master had recommended. The Special Master's recommendations largely left the originally $75 million award intact but applied other remedies and sanctions to the 2017 fee award, which might have returned at most $8.1 million to the class. *See* Report at 364-368, 376; Dkt. 590-1.

The $6.2 million figure is conservative: CCAF's benefit is likely closer to the $14.4 million difference from the original fee award and the ultimate Fee Order. This is because Special Master's partial resolution with Labaton diluted the original recommendations, and if the Court had adopted the partial resolution, it would have needed to proportionally reduce sanctions against firms less culpable for the underlying errors and misconduct than Labaton. Thus, if the Court followed the Special Master's recommendations, the class benefit likely would have been substantially less than the maximum $7.4 to $8.1 million benefit the Report suggested. In any event, the Special Master's sanctions recommendations were *not* adopted, and the Court instead set an overall fee award of 20%, more in line with CCAF's approach. *See* Dkt. 522 at 5-6.

Therefore, CCAF provided a common benefit of *at least* $6.2 million over the Special Master's recommendations. It is entitled to an award from this common benefit fund.

**B.    CCAF conservatively requests a fee award of its discounted lodestar for work performed at the Court's suggestion that *also* resulted in a substantial common benefit.**

Though CCAF is legally entitled to much more, CCAF limits its fee application to seek only discounted lodestar, and only for work that could be classified as *both* appointed *and* generated a

common benefit for the class. CCAF confines its application to work performed from July 31 to August 6, 2018 and October 11 to November 20, 2018, inclusive, as shown in the table below:

| Attorney | Position (class year) | Hours 7/31 to 8/6 | Hours 10/11 to 11/20 | Discount Rate | Lodestar |
|---|---|---|---|---|---|
| Melissa A. Holyoak | Former President (2003) | 1.5 | 2 | $365/hr | $1,277.50 |
| Anna St. John | Senior Attorney (2006) | 3.2 | 3.1 | $325/hr | $2,047.50 |
| M. Frank Bednarz | Attorney (2009) | 51.7 | 121.9 | $275/hr | $47,740.00 |
| Adam E. Schulman | Attorney (2010) | 18.3 | 16.7 | $275/hr | $9,625.00 |
| | Totals | 74.7 | 143.7 | - | $60,690.00 |

To limit any collateral litigation,[1] CCAF seeks much less than its ordinary lodestar rates—limiting hourly rates to the discounted rates it offered when applying for appointment as guardian *ad litem*. Dkt. 451 at 15. These rates are much lower than rates class counsel billed the class for similarly experienced attorneys. They are lower that rates CCAF attorneys have been awarded in other cases; for example, if CCAF were paid based on its ordinary 2018 rates (*id.*), the lodestar would be $83,055. Bednarz Decl. ¶¶ 21. And even these rates are modest; if CCAF billed at the rates Lieff merely billed their contract attorneys ($415 and $515/hour for those longer out of law school), the lodestar would be $90,986.00, and billing for Lieff Cabraser associates and partners with similar experience would be $95,781.00. *Id.* at ¶¶ 22-23.

Work over the two periods that CCAF identifies had the most character of being performed at the Court's request, whereas work before and after these dates was more voluntary in nature. The

---

[1] At last week's hearing, Thornton and Labaton argued that CCAF "told the court that one of the advantages of allowing their participation was they did it for free" (Tr. 28) and "it does seem a bit inequitable that they've invited themself into this case sua sponte by filing an amicus brief and saying they're not going to get paid, and yet, here we are, they're forcing the issue on the court at the 11th hour." *Id.* at 30-31. The premise is false. In February 2017 CCAF stated it was "willing to serve as guardian at whatever rate this Court **sets in advance**, be it lodestar, a blended court-appointed rate below lodestar, a single-digit percentage of any class recovery, or even, if the Court feels it to be the best course, *pro bono* without compensation." Dkt. 126-1 at 6 (emphasis added). The Court never set terms in advance for CCAF's work. *See* Bednarz Decl. ¶¶ 27-30.

Court unexpectedly summoned CCAF on July 31, 2018 to report on whether it would still serve as guardian *ad litem* and under what terms *and* to "address the Court's authority to permit the Master to address objections to his Report and related issues." Dkt. 410 at 3.

CCAF does not request fees for time spent between August 7 and October 10, 2018, because most of these hours were dedicated to filing its amended motion for appointment as guardian *ad litem* (Dkt. 451), which did not result in a clear common benefit to the class.[2]

On October 11, 2018,  the Court again unexpectedly directed that CCAF "shall" answer by the next day "whether it wishes to participate in the October 15, 2018 hearing in person or, if necessary, by telephone." Dkt. 488. CCAF understood from the *sua sponte* nature of the order and the clause "if necessary by telephone," that its presence was strongly desired. Theodore H. Frank attended this hearing, where the Court invited CCAF to attend the November 7 hearing and file a written response to the Special Master's proposed partial resolution. Dkt. 496 (Tr. 10/18/18) at 62.

During the November 7 hearing, the Court asked CCAF to file a memorandum discussing a topic it had not addressed in detail since 2017—the appropriate size of an overall fee award. Dkt. 519 (Tr. 11/7/19) at 107. While the accompanying minute order says that CCAF "**may** … submit a memorandum addressing the reasonableness of the award of approximately $75,000,000 in attorneys' fees," Dkt. 518 (emphasis added), *the Court* requested that CCAF write memorandum it did not previously plan to write with a focus on any appropriate overall fee award. Dkt. 519  at 107. These filings, and especially the Fee Memorandum also resulted in significant common benefit to the class.

Even though Theodore H. Frank attended the October 15 hearing, and even though his attendance was found "helpful" (*id.* at 93), in an abundance of caution CCAF does not seek *any* fees for Mr. Frank's time. By 2018, he had delegated most responsibility for this case to Frank Bednarz given the time commitments he then had preparing a Supreme Court case for argument. (Mr. Frank

---

[2] Likewise, CCAF does not request payment for the Court's directive for it to confer with the Special Master on notice (Fee Order at 155).

covered the October 15 hearing because he happened to be already scheduled to speak at a local law school in Cambridge that evening.) CCAF voluntarily removes Frank's time to avoid any collateral dispute over staffing issues. Additionally, CCAF seeks no fees for the hours spent by Burch Porter, the private law firm CCAF worked with to help prepare its filings in 2018. Each of these reductions decrease the lodestar request by thousands of dollars.

### C.  A $60,690 attorneys' fee award is eminently reasonable and below what CCAF could legally request.

Courts may award fees from a common fund "either on a percentage of the fund basis or by fashioning a lodestar." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). Under either rubric, CCAF's request for $60,690 is well below what it could reasonably request.

CCAF reckons its request based on an unmultiplied lodestar calculation: "the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *Id.* at 305. But its request is independently justified by a percentage of the fund.

As for the rates, CCAF submits much lower rates than each of the four CCAF attorneys has been awarded or used as a crosscheck by other courts. *See* Bednarz Decl. ¶ 21. CCAF has submitted discounted rates—ranging from $275 to $365/hour—much lower than the rates accepted by the Court to cross-check Class Counsel's fee award. *Id.* ¶ 23.

As for the 218.4 hours claimed, this figure greatly undercount the time CCAF reasonably expended. CCAF efficiently filed three substantive briefs in this period. Its attorneys prepared for and attend two hearings in this period. CCAF, which had done little work on the case for sixteen months before July 31, 2018, wrote a 25-page response to the Court's order in just 7 days, which flagged the political contribution issue no other party had examined. Dkt. 420. CCAF's 23-page November 5 filing argued against the partial resolution, which would have ill-served the class. Dkt. 515. And CCAF's 38-page Fee Memorandum and supporting declaration was written in less than two weeks. Dkt. 522. The

hours requested do not include the time of two contributing attorneys and does not seek payment for *years* of other work that the Court repeatedly found helpful.

As for the percentage, CCAF seeks *less than 1%* from a $6.2 million common benefit. When objectors produce a common benefit their fees may be awarded as a percentage of that benefit like plaintiffs' attorneys. *Southwest*, 898 F.3d at 746 (characterizing CCAF's 10% request of the market value of the benefit as "modest"); *Rougvie v. Ascena Retail Group*, No. 15-cv-724, 2019 U.S. Dist. LEXIS 28229, at *50 (E.D. Pa. Feb. 21, 2019) (applying 25% benchmark to benefit conferred by objectors); *Kaufman v. American Express Travel Related Servs., Co.*, 2016 WL 806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector 34% of the value added to the class, nearly the same as counsel's 34.8% award); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector 25% of the increase in benefit to the class). Based on the $6.2 million benefit, CCAF would be entitled to as much as a $1.55 million fee award.

Other factors further confirm the award's reasonableness. While the First Circuit has no list of factors itself, district courts often consider: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014). Here, CCAF's skill and efficiency have earned it repeated praise.

Another factor stands out: the risk of non-recovery from this litigation. No "awards in similar cases" exist because no award like the one CCAF requests has been requested—in part because CCAF's role in policing attorney-fee requests is unique. Even though CCAF has provided millions of dollars of benefit to the class, it cannot be certain that this fee motion will succeed: as this case demonstrates, even after outside work results in improvement in direct benefit to the class, class counsel routinely still oppose an objector's entitlement to fees. *E.g. McDonough v. Toys "R" Us*, 80

F. Supp. 3d 626, 660 (E.D. Pa. 2015); *Southwest.* While CCAF does not request a lodestar risk multiplier, it would be entitled to one given the risk it bore given the risk of non-recovery.

> **D.**     **Class Counsel should pay CCAF's attorneys' fees, but they may also be taken from the common fund CCAF has enhanced.**

As suggested by *Morales*, Class Counsel should ideally foot the bill for CCAF attorneys' fees. *Morales*, 820 F.2d at 731. Class Counsel may complain that the costs of the Special Master's investigation has reduced their effective award below lodestar, but as the Court found, this is appropriate because their "unreasonable behavior has occasioned the need to appoint a master." Fee Order at 151-52. Class Counsel's own conduct—including their failure to disclose the existence of the Chargois arrangement until near the end of the discovery—necessitated the investigation, expanded its length and complexity, and drove up its costs. For similar equitable reasons, CCAF's fee award should preferably be borne solely by Class Counsel rather than the innocent absent class.

"[T]he 'common benefit' theory is premised on a court's equity power" *United Steelworkers of Am. V. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez v. Disner*, 688 F.3d 645, 654 (9th Cir. 2012). Where Class Counsel: (1) concealed a fee-sharing arrangement from co-counsel, the client and the Court, (2) misrepresented their regularly "charged" rates, (3) greatly inflated the rates of temporary attorneys if falsely suggested to have been billed at regular rates "charged" by the firms, (4) misrepresented an empirical study in support of their request, (5) failed to timely correct their declarations even after review, (6) concealed the fee-sharing arrangement from the Special Master appointed to investigate the billing, (7) ran up fact discovery costs by retaining *seven* experts to opine about matters of law, (8) engaged in bellicose and frivolous motion practice in an effort to derail the Court, (9) repeatedly ran up their own costs by opposing helpful *amicus* briefs, and (10) lied under oath in live testimony concerning their conduct—it would be highly inequitable to require the class to foot the bill for **both** class counsel **and** again for HLLI, when class counsel alone created the necessity of CCAF's participation through their own conduct. *See Southwest*, 898 F.3d at 747 (ordering objector

fee payable from class counsel); *In re Petrobras Secs. Litig.*, 320 F. Supp. 3d 597, 601-02 (S.D.N.Y. 2018) (debiting objector's fees from class counsel's award), *vacated on other grounds* 786 Fed. Appx. 274 (2d Cir. 2019); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016), *aff'd on this point sub. nom Hendricks v. Ference*, 754 Fed. App'x 510, at 513 n.1 (9th Cir. 2018) (finding it "appropriate and justified" to pay objector's counsel from class counsel's fee); *McDonough*, 80 F. Supp. 3d at 651 (decreasing class counsel's fee award to pay objector's counsel because class counsel's fiduciary responsibility was only fulfilled "on the second try"); *In re Ikon Office Solutions*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (taking objector's fee "from class counsel's award to avoid dilution of the settlement fund"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) ("because his objections improved the settlement for the class, [objector's] attorneys in fact shared with class counsel the work of producing a beneficial settlement. It is appropriate that they also share in the fund awarded to recognize the cost of producing the benefit to the class."); *cf. also Radcliffe v. Experian Info Solutions*, 794 F. App'x 605, 608 (9th Cir. 2019) ("Settling Counsel were duty-bound to reimburse the class for the waste of settlement funds caused by the ethical conflict in *Radcliffe I*"). As between the class members (or ERISA counsel) and Class Counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882).

That said, while CCAF believes its fees are more equitably taxed to Class Counsel, it does not disclaim attorneys' fees awarded from the common fund on common benefit principles. Giving that the fee is approximately 1% of the benefit obtained, the Court would be well within its discretion to order fees from the common fund.

## CONCLUSION

*Amicus* CCAF respectfully requests that the Court award it $60,690 in attorneys' fees under Fed. R. Civ. P. 54(d).

Respectfully submitted,


Dated: September 29, 2020          */s/ M. Frank Bednarz*

M. Frank Bednarz (BBO No. 676742)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Telephone: 801-706-2690
Email: frank.bednarz@hlli.org

Theodore H. Frank (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW
Suite 300
Washington, DC 20006
Telephone: 202-331-2263
Email: ted.frank@hlli.org

*Attorneys for Amicus Curiae*
*Hamilton Lincoln Law Institute*
*Center for Class Action Fairness*

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I certify that on September 27, 2020, CCAF emailed counsel for the parties and counsel for the Special Master in a good faith effort to narrow or resolve the issues raised in this motion. Thornton, Labaton and Lieff Cabraser opposes CCAF's motion. McTigue Law, Keller Rohrback, Zuckerman Spaeder, and the defendant take no position on the motion. At the time of filing, counsel for CCAF has not heard the position of defendant or the remaining plaintiffs firms. The Special Master advised he takes no position on the fee motion, "except to the extent that he opposes any payment from the common fund."

Dated: April 27, 2020

*/s/ M. Frank Bednarz*
M. Frank Bednarz

### CERTIFICATE OF SERVICE

I certify that on September 29, 2020, I served a copy of the forgoing on all counsel of record by filing a copy via the ECF system.

Dated: September 29, 2020

*/s/ M. Frank Bednarz*
M. Frank Bednarz