# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 11-cv-10230 MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br><br>Defendants. | No. 11-cv-12049 MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself, and JAMES PEHOUSHEK-STANGELAND, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | No. 12-cv-11698 MLW |

**THE HAMILTON LINCOLN LAW INSTITUTE'S
CENTER FOR CLASS ACTION FAIRNESS'S REPLY IN SUPPORT
OF ITS MOTION FOR AN ATTORNEYS' FEES AWARD**

**INTRODUCTION**

Customer Class Counsel filed an Opposition ("Fee Opp.," Dkt. 650) to CCAF's Motion for Attorneys' Fees Award. Dkt. 647 ("Fee Mot."). And the Special Master filed a Consolidated Response setting forth his views that any fee award ought not be paid from the common fund. Dkt. 652 ("Master's Resp.").

Neither filing quibbles with CCAF's deeply discounted hourly rates no higher than $365/hour. Nor do the filings argue that the hours or $60,690 lodestar for tasks related to Court-requested filings are excessive in view of the work product that CCAF produced, which indisputably helped the Court.

Class Counsel does not dispute the substantial common benefit attributable to CCAF's work. In fact, Class Counsel's brief includes a lengthy footnote concluding that "[w]hile no recovery is warranted, to the extent that Court does grant an award, the fees may be paid from the common fund based on the common benefit of $6.2 million that CCAF claims to have added to it." Fee Opp. at 5 n.6 (citing *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013)). Plaintiffs instead argue that CCAF could not receive fees as an *amicus*. Special Master takes the reverse position—citing the same cases that CCAF flagged—that the party responsible ought to pay and *not* the class. *Compare* Master Resp. at 3-4 *with* Fee Mot. at 10-11.

CCAF candidly admitted that such an award has not been granted before. But this case is unlike prior precedents. As an *amicus* CCAF not only helped the court, but it produced a substantial common benefit. While CCAF agrees with the Master that its fees ought to be paid by Class Counsel (not by the innocent class nor ERISA counsel), the common benefit exists and distinguishes this case from those where the *amicus* provided only judicial benefit.

**I.     Class Counsel mischaracterizes CCAF's motion: it does not contend that it was appointed for all purposes, but only for specific work in 2018 identified in its application.**

Class Counsel does not deny that the Court's July 31, 2018 Order (Dkt. 410) summoned CCAF back to the case after over sixteen months of inactivity. Fee Mot. at 5. Class Counsel instead minimizes the order's scope and mischaracterizes CCAF's argument.

Class Counsel incorrectly say that the Court's July 31 Order only pertained to CCAF's pending motion for appointment as guardian *ad litem*. The July 31 Order dealt with several open questions in the wake of Labaton's unsuccessful application for writ of mandamus to have the case reassigned (Dkt. 402) and Class Counsel's pending Motion For Clarification that the Master's Role Has Concluded. Dkts. 302 & 310. Class Counsel took the position that the Special Master could *not* continue to participate and Special Master took the reverse position. Dkt. 377. The Court therefore solicited a third opinion from CCAF in an order that also directed the parties to address whether the Special Master *could* be reappointed to respond to objections to his Report and Recommendation. Dkt. 410 at 3. At the time of this order, CCAF knew almost nothing about this dispute given that several the documents pertaining to it (including the memoranda) were filed under seal, so on the next day CCAF promptly moved to unseal the documents so it could reply to the Court within six days as it had been ordered. Dkt. 413. The Court granted this motion (Dkt. 414), and on August 7, 2018 CCAF provided its third opinion, citing substantial authority and recommending that the Court can and *should* reappoint the Master to respond to the objections, but also cautioning that the Master's role should be clearly defined to avoid collateral objections about his neutrality. Dkt. 420 at 7-14.

Class Counsel ignores this history—one of their own tendentious making—and instead argues using scare quotes that the Court's "'request' was merely further inquiry into the motion that CCAF submitted when it voluntarily inserted itself into the proceedings." Fee Opp. at 4. No—it was related to a motion that *Class Counsel* filed in an effort to get the Master kicked out of the case. Class Counsel argues in a footnote that "[t]he Court's request for CCAF to opine on the Court's authority to permit

the Master to address the objections related directly to CCAF's pending motion. If the Special Master could not respond to the objections, the purported need for court-appointed amicus or a guardian *ad litem* may have increased." *Id.* at n.5. But this is only true insofar that any tactic employed by Class Counsel might tend to increase or decrease the need for a Special Master, and the argument falls apart considering that *Class Counsel*—not CCAF—thought the Master should be excused, and they certainly were not trying to have CCAF appointed guardian *ad litem* when they staked out their opportunistic position. Contrariwise, CCAF was not angling for appointment by providing the Court with its candid third opinion recommending that the Master be explicitly tasked with responding to Class Counsel's objections.

Class Counsel also mischaracterize CCAF's position. They argue "[i]t is inconceivable that the Court's request for CCAF to provide more information regarding why an appointment should be made could be construed to effectively make such an appointment." Fee Opp. at 5. CCAF does not ask the court to make this leap. CCAF agrees it was not appointed guardian *ad litem*, and it further agrees that most of its participation in the case has taken a predominantly voluntary character. This is why CCAF's fee application covers only work performed from July 31 to August 6 and October 11 to November 20, 2018. In actuality, CCAF has helpfully participated for years—since Ted Frank spoke to a *Boston Globe* reporter in 2016, and later in 2017 when it pointed out a potentially dangerous Rule 60 issue. Fee Mot. at 5. And after 2018, CCAF attended three days of live hearings and filing post-hearing briefs with over 500 pages of exhibits assembled from Class Counsel's voluminous detailed billing. *Id.* at 7; Dkt. 584. CCAF seeks payment for *none* of these earlier or later tasks and has forever waived its entitlement to fees for that work.[1]

---

[1] The Master finds it "unclear whether HLLI intends to bill for prospective hours worked." To be clear: CCAF will not move in the future for attorneys' fees unless and until it becomes appointed by the Court or the First Circuit, and if it does move for such fees, it will not request any fees for time worked before such appointment.

CCAF agrees that the Court has heretofore declined its motion to participate as guardian *ad litem*, but the Fee Motion accounts for this by only proposing to award fees for activity done at least in part at the Court's *sua sponte* suggestion. The resulting common benefit for the class makes CCAF's motion unlike requests by *amici* for statutory fee shifting awards as in *Morales v. Turman*, 820 F.2d 728 (5th Cir. 1987) and *A. Hirsh, Inc. v. United States*, 948 F.2d 1240 (Fed. Cir. 1991). Class counsel do not deny that CCAF helped generate a substantial common benefit. And unlike statutory fees available only for a "prevailing *party*," the reasonable attorneys' fees under common benefit doctrine extends to any "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013); Fee Opp. 5 n.6.

CCAF has limited its fee request to time where the Court directed it to do some work (albeit short of formal appointment) where the same work also resulted in a substantial common benefit. Its request may be alternately justified under either approach.

II. **CCAF provided a common benefit to class members by recommending a fee award lower than any party suggested—including the Special Master.**

The Special Master does not oppose an award of fees from Class Counsel (Master Resp. 2), but it attacks the suggestion that CCAF could be awarded fees from the common fund. While the Court clearly relied heavily on the excellent work of the Master to investigate the unexpectedly complicated practices of Class Counsel, CCAF respectfully disagrees with the Master's denial "that HLLI added such substantial value to this case, financially or legally, such that it qualifies for compensation under the common benefit theory." Master Resp. at 5.

The Master does not dispute that the Court's February 27 Order (Dkt. 590, "Fee Order") returned over $6.2 million more to the class than would have occurred under the Master's most aggressive recommendation. The Master cites no law suggesting this sum is somehow legally inadequate to classify as a common benefit. While the Court certainly "relied heavily on the Special Master's factual findings and legal analysis in identifying the issues" (Master Resp. at 6) the Court also

4

relied on CCAF's arguments and authority. In particular, the Court's conducted extensive analysis of the megafund issue (Fee Order at 72-79), studies of other fee awards (*id.* at 129-30), the relationship between Chargois and convicted Arkansas Treasurer Martha Schoffner (*id.* at 61), the misrepresentation of the Fitzpatrick study (*id.* at 148-50), and a comparison to the *BoNY Mellon* settlement (*id.* at 81-84). CCAF briefed all of these issues on November 20, 2018 and argued for a lower overall fee award than the Master recommended. Dkt. 522. The Special Master does not dispute that none of these topics were the focus of his filings. In fact, on the same date, the Master argued that the $75 million overall fee award was appropriate and that any adjustments from that high megafund baseline should be imposed as sanctions. Dkt. 523. While CCAF's advocacy was less time-consuming than the Master's discovery work, it was also much less costly. The Fee Order draws significantly on arguments raised by CCAF, so it appears the 218.4 hours spend over certain dates in 2018 greatly benefit the class. The common benefit is real.[2]

The apparent $6.2 million benefit is more than monetary: as CCAF pointed out in its motion, the Court's approach to the fee award tracked CCAF's suggestion to set appropriate fee awards *ab initio*, thus eliminating the need to deem transfers to ERISA counsel as "sanctions." Mot. at 14. The benefit of this approach should be obvious in view of Lieff Cabraser's opening First Circuit brief, which attacks sanctions exclusively. Certainly sanctions being paid from Class Counsel to ERISA counsel would have raised serious questions on appeal. Instead, the Court adopted CCAF's recommended approach of setting fees to every firm in view of the overall fee award. ERISA counsel was paid more under the Fee Order not because of "sanctions," but because the original fee award

---

[2] The Master has no opposition to paying CCAF from the *cy pres* residual (Master Resp. 3 n.2), but CCAF hopes the funds will be distributed as planned in at least three waves of payments. This should either result in a very small residual amount less than $60,690, or uncashed checks large enough that CCAF recommends further attempts at distribution.

inappropriately paid them a much smaller multiplier than Class Counsel unbeknownst to the Court. While not a monetary benefit, the conceptual clarity of CCAF's approach helps ensure finality.[3]

Certainly the Master provided substantial benefit in preparing a detailed factual record, and CCAF does not intend to detract from that work. CCAF simply contends its legal arguments *also* provided a common benefit. The undisputed record shows that the Fee Order provides $6.2 million more for the class than any party recommended except for CCAF. The Fee Order employs lower percentage of the fund, also as CCAF alone recommended. Certainly the Master and the Court itself deserve credit for this result—but that does not vitiate the common benefit CCAF is also partially responsible for. And even if CCAF is only 50% or 10% or *even 4%* responsible for the benefit— CCAF's fee request is *less than 1%* of the $6.2 million benefit, so it is reasonable.

While CCAF did not represent an objector in this case, an analogy can be drawn to objectors' fees award, which are also justified under "the common-fund doctrine." *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740, 746 (7th Cir. 2018) (reversing and remanding district court and finding that CCAF's fee request for 10% of the settlement improvement was "modest"). About securities objections, the First Circuit long ago held that courts should not assume that they would have reached the same result even in the absence of meritorious objections. "We think it unfair to counsel when, seeking to protect his client's interest and guided by facts apparent on the record, he spends time and effort to prepare and advance an argument which is ultimately adopted by the court, but then receives no credit therefor because the court was thinking along that line all the while." *Green v. Transitron Elec. Corp.*, 326 F.2d 492, 499 (1st Cir. 1964). So too here; the Court certainly recognized the relevant legal issues, and it may have researched a similar result on its own, but CCAF advocated on behalf of a position that no one else adopted—that the $75 million baseline fee award was excessive.

---

[3] The Master does not disagree that his proposed partial resolution may have made the maximum sanctions against the arguably less culpable Thornton and Lieff firms untenable. Mot. at 14. Therefore, $6.2 million is a *low* estimate of the common benefit that CCAF generated.

For this reason, CCAF soundly claims to have helped create a common benefit on behalf of others, and this common benefit alternatively justifies its motion for attorneys' fees.

## CONCLUSION

*Amicus* CCAF respectfully requests that the Court award it $60,690 in attorneys' fees under Fed. R. Civ. P. 54(d).

Respectfully submitted,

Dated: October 27, 2020
/s/ *M. Frank Bednarz*
M. Frank Bednarz (BBO No. 676742)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Telephone: 801-706-2690
Email: frank.bednarz@hlli.org

Theodore H. Frank (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW
Suite 300
Washington, DC 20006
Telephone: 202-331-2263
Email: ted.frank@hlli.org

*Attorneys for Amicus Curiae*
*Hamilton Lincoln Law Institute*
*Center for Class Action Fairness*

CERTIFICATE OF SERVICE

I certify that on October 27, 2020, I served a copy of the forgoing on all counsel of record by filing a copy via the ECF system.

Dated: October 27, 2020

                                                              */s/ M. Frank Bednarz*
                                                              M. Frank Bednarz