UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br>　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 11-10230-MLW |
| ARNOLD HENRIQUEZ, MICHAEL T. COHN, WILLIAM R. TAYLOR, RICHARD A. SUTHERLAND, and those similarly situated,<br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>STATE STREET BANK AND TRUST COMPANY, STATE STREET GLOBAL MARKETS, LLC and DOES 1-20,<br>　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 11-12049-MLW |
| THE ANDOVER COMPANIES EMPLOYEE SAVINGS AND PROFIT SHARING PLAN, on behalf of itself and all others similarly situated, and JAMES PEHOUSHEK-STANGELAND, on behalf of himself and all others similarly situated,<br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>STATE STREET BANK AND TRUST COMPANY,<br>　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 12-11698-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                         January 19, 2021

I.   SUMMARY

As stated in the February 27, 2020 Memorandum and Order awarding and allocating attorneys' fees in this class action:

> The Court did not appoint [the Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF")] as guardian ad litem for the class or authorize it to participate in proceedings before the Master [that the court appointed to investigate the reliability of representations made to the court in the original request for attorneys' fees].   The court did, however, allow CCAF to make submissions to the court and participate in hearings it conducted. CCAF brought expertise to the proceedings, which was often very helpful to the court.

Dkt. No. 590 at 12; Arkansas Teachers Retirement System v. State Street Bank and Trust Company, 2020 WL 949885, at *4 (D. Mass. Feb. 27, 2020).   The court noted that it "would consider ordering that CCAF be compensated for its work if it had the authority to do so."   Id., n.3.

CCAF, which is now part of the Hamilton-Lincoln Law Institute ("HLLI"), has moved, under Federal Rule of Civil Procedure 54(d), for an award of attorneys' fees in the amount of $60,690 as compensation for work that it performed as amicus at the invitation of the court.   See Dkt. No. 647.   CCAF does not seek compensation for the additional work it did as amicus at its own initiative.[1]

---

[1] For consistency with the February 27, 2020 Memorandum and Order, among other things, the court refers to HLLI as CCAF in this Memorandum.

CCAF requests that its fee be paid from the fees awarded to Labaton Sucharow LLP ("Labaton"), The Thornton Law Firm ("Thornton"), and Lieff Cabraser Heiman & Bernstein ("Lieff") (collectively "Class Counsel"). Id. at 19. However, CCAF asks that, if necessary, its fee be paid from the common fund. Id.

Class Counsel argue that the court did not appoint CCAF to serve as amicus and CCAF is not entitled to compensation for the work that it did on a voluntary basis. See Dkt. No. 650. However, Class Counsel state that if the court awards CCAF attorneys' fees, they should be paid from the common fund.

The Master takes no position on whether CCAF should be awarded attorneys' fees. See Dkt. No. 652 at 3. The Master argues, however, that if an award to CCAF is made, it should be paid by Class Counsel. Id. at 3-6.

As explained below, the court concludes that it has the equitable authority to award attorneys' fees to CCAF and that it is appropriate to award $60,690 as compensation solely for work performed in response to court orders inviting CCAF's advice. As the court did not appoint CCAF as amicus, there is a question whether the court has the authority to reduce the award made to Class Counsel to compensate CCAF even though their conduct prompted the court to seek CCAF's assistance. It is, however, permissible and appropriate to make the award from the common fund because

CCAF's work contributed to increasing it.  Therefore, the court is doing so.

In the February 27, 2020 Memorandum and Order, the court awarded a total of $60,000,000 in attorneys' fees, $15,000,000 less than the original, vacated $75,000,000 award.  It allocated $15,399,163 to Lieff, which is $1,139,457 less than Lieff initially received pursuant to an agreement between Class Counsel.  Lieff appealed the reduction of its fee.  On September 3, 2020, the First Circuit dismissed the appeal without prejudice because it found that there was not yet a definitive, appealable final judgment concerning attorneys' fees.  See Case No. 20-1365, Judgment (Dkt. No. 8).

Following argument at a September 22, 2020 hearing, on September 29, 2020, the court ordered Class Counsel to make payments into escrow on January 4 and March 30, 2021, and ordered those funds be distributed on January 15 and April 30, 2021.  See Dkt. Nos. 646, 646-1.  On January 4, 2021, the court decided that the first payment into escrow did not have to be made until a final judgment concerning attorneys' fees is entered.  See Dkt. No. 657.

Lieff then reiterated its intent to renew its appeal and objected to its escrowed funds being distributed until the appeal is decided.  See Dkt. No. 658.  The Master argues that those funds should be distributed as previously ordered.  See Dkt. No. 661.

4

The court finds that it is most appropriate to order that the funds escrowed by Lieff be distributed with the escrowed funds of other Class Counsel unless Lieff obtains a stay pending appeal. Lieff is being ordered to file its appeal and motion to stay in this court by January 27, 2021.

In addition, CCAF has moved to be appointed guardian ad litem to represent the interests of the class in Lieff's appeal. The issues addressed in the February 27, 2020 Memorandum and Order arose in meaningful measure because the usual adversary process did not operate to test representations made by Class Counsel in their request for an award of $75,000,000 as attorneys' fees. There is no party to represent the interests of the class in responding to Lieff's appeal. The court will ask the First Circuit to invite it, as fiduciary for the class, to retain counsel to appear at public expense. Therefore, CCAF's motion to be appointed guardian ad litem is being denied without prejudice to being renewed if the First Circuit denies the court's request.

II.  DISCUSSION

A.  CCAF'S Request for Attorneys' Fees

As indicated earlier, CCAF requests an award of attorneys' fees in the amount of $60,690 for work performed in 2018, at the request of the court. It does not request compensation for work performed previously or subsequently solely at its own initiative. The court finds that, in the unique circumstances of this case, it

5

is permissible and appropriate to compensate CCAF reasonably for the work it performed in response to the court's invitation; that $60,690 will provide reasonable compensation for that work; and that the payment should be made from the common fund, rather than by Class Counsel.

CCAF is a non-profit organization that describes its mission as representing the interests of shareholders in connection with the settlement of class action lawsuits, often by challenging requests for attorneys' fees. Center for Class Action Fairness, HAMILTON LINCOLN LAW INSTITUTE, https://hlli.org/class-action-fairness/. CCAF states on its website that "[w]hen CCAF prevails, lawyers get less, class members get more, and the rule of law is strengthened." Id.

On February 6, 2017, the court gave notice that it was considering appointing a Master to investigate the accuracy and reliability of information provided by Class Counsel in support of their successful request for an award of attorneys' fees in the amount of $75,000,000. See Dkt. No. 117.

After the February 6, 2017 Order, CCAF filed a motion to be appointed guardian ad litem for the class or to serve as amicus, and a supporting memorandum. See Dkt. Nos. 126, 126-1. CCAF asked the court to expand the scope of the Master's investigation to include, among other things, whether Class Counsel had misrepresented a study by Brian Fitzpatrick (the "Fitzpatrick

6

Study") in their request that the court award 25% of the $300,000,000 common fund as attorneys' fees. See Dkt. No. 126-1 at 13. It also argued that the court should order that Class Counsel pay the cost of the Master's work. The court did both. See Dkt. No. 173.

In addition, CCAF noted that unless the original award of attorneys' fees was vacated, Class Counsel might later argue that the court lacked jurisdiction to reduce it. CCAF asked to be appointed guardian ad litem for the class, to serve pro bono if necessary, in part to permit it to move under Federal Rule of Civil Procedure 60 to vacate the $75,000,000 award. Class counsel opposed CCAF's request to be appointed guardian ad litem, but agreed to move to vacate the original award itself. See Dkt. No. 178. The court granted the motion to vacate. See Dkt. No. 331.

On March 7, 2017, the court heard argument on CCAF's request to be appointed guardian ad litem, or to serve as amicus before the Master. See Dkt. No. 172. It took these requests under advisement.

CCAF is not seeking attorneys' fees for any of the foregoing work.

The Master conducted a thorough investigation, which became protracted after he discovered that Labaton had paid $4,100,000 to Damien Chargois, a lawyer who helped obtain the Arkansas Teacher Retirement System ("ATRS") as a client for Labaton, but did not

work on this case.  See Dkt. No. 590 at 62-68.  In his voluminous

Report, the Master recommended, among other things, that the court

award about $6,200,000 less than the $75,000,000 initially

awarded, including disgorgement by Labaton of the $4,100,000 paid

to Chargois, and reallocate the attorneys' fees awarded.  Id. at

67.  Class Counsel then asked the court to rule that the Master

could not respond to the many objections to his Report.  See Dkt.

No. 302, 310.

On July 31, 2018, the court issued an Order that stated, in

part:

> The Report, with its Executive Summary, is more than 400
> pages.   The objections to it are comparably lengthy.
> The record to date, which is not complete, includes
> thousands of pages.   Ordinarily in such matters the
> operation of an adversary process promotes well-informed
> decision-making.

> When the Master was appointed the court took under
> advisement the Motion of the Competitive Enterprise
> Institute's Center for Class Action Fairness ("CCAF") to
> participate as a guardian ad litem for the class or,
> alternatively, an amicus to the court.  See Mar. 8, 2017
> Order (Docket No. 172), ¶1.  That request is now relevant
> to the Motion [for an Order that the Master could not
> respond to objections to the Report].

Dkt. No. 410.  The court, therefore, asked CCAF whether it remained

willing to serve as guardian ad litem or amicus, and, if so, the

financial and other terms on which it was willing to serve.  Id.

The court also invited CCAF to address the court's authority to

permit the Master to respond to the objections to the Report and

8

related issues. Id. It is for work performed in response to this Order and subsequent orders that CCAF requests attorneys' fees.

In a 28-page Memorandum, CCAF stated that it remained willing to serve as guardian ad litem, but could not afford to do so pro bono, in part because the complexity of the matter would require the retention of co-counsel. See Dkt. No. 420. Nevertheless, CCAF joined the Master in arguing that the court had the authority, under Federal Rule of Civil Procedure 53(f)(1), to instruct the Master to respond to objections to the Report, and provided caselaw supporting that contention. See id. at 8-13. Its position proved to be persuasive.

CCAF also argued that the court should award less in attorneys' fees than the Master recommended. Id. The court ultimately agreed. See Dkt. No. 590-1, Ex. A. The court did not, however, decide CCAF's motion to be appointed guardian ad litem.

In an October 11, 2018 Order the court invited CCAF to participate in an October 15, 2018 hearing to address whether the court should approve a proposed settlement between the Master and Labaton. See Dkt. No. 488. CCAF did participate and opposed approving the settlement. It subsequently filed a 23-page memorandum in opposition to the proposed settlement. See Dkt. No. 515. CCAF also argued that the fee award recommended by the Master in the Report was excessive, and that a compensated guardian ad litem should be appointed to advocate a lesser fee award, which

9

would result in more money for the class. Id. at 19. The court did not accept the proposed partial settlement and ultimately awarded about $6,200,000 less in attorneys' fees than the Master recommended. See Dkt. No. 590-1, Ex. A.

CCAF also participated in a November 7, 2018 hearing at which the court asked CCAF to address the Fitzpatrick Study, which CCAF referenced in February 2017, concerning awards in megafund cases. See Nov. 7, 2018 Tr. (Dkt No. 519) at 103-08. On November 20, 2018, CCAF filed a 38-page memorandum discussing, among other things, the Fitzpatrick Study that showed that for settlements between $250,000,000 and $500,000,000 the mean fee awarded was 17.8%. See Dkt. No. 522 at 4-5. CCAF amplified its argument that Class Counsel had mischaracterized the Fitzpatrick study as supporting an award of 25% of the common fund, $75,000,000. Id. at 7-8. CCAF also pointed out that, in a treatise, Class Counsel's expert Professor William Rubinstein, wrote that for settlements over about $45,000,000 the average award was about 21%, rather than 25%. See id. at 7.

The court found that CCAF properly characterized the Fitzpatrick Study and Rubinstein's treatise. It relied, in part, on them in finding that an award of 20% of the common fund -- $60,000,000 -- was reasonable and most appropriate in this case. See Dkt. No. 590 at 129-30.

CCAF offered to participate as amicus in hearings on June 24, 25, and 26, 2019, to advocate for a lesser fee award than Class Counsel requested and the Master recommended. See Dkt. No. 545. Despite the objection of Class Counsel, the court permitted CCAF to participate. CCAF also filed a Memorandum arguing that proposed testimony by Fitzpatrick was irrelevant to whether his study had been mischaracterized and should not be permitted. See Dkt. No. 553. The court agreed. See Dkt. No. 554. CCAF also made a post-hearing submission analyzing voluminous time records for Class Counsel's staff attorneys. See Dkt. No. 583.

In the February 27, 2020 Memorandum and Order, the court ordered the Master to consult CCAF concerning notice to the class of the new, $60,000,000 fee award. See Dkt. No. 590 at 158.

In essence, as the court wrote in the February 27, 2020 Memorandum and Order, "CCAF brought expertise to the proceedings, which was often very helpful to the court." See Dkt. No. 590 at 12. Its contributions began in 2017 and continued into 2020. It served as amicus without requesting compensation for its services. The court introduced the possibility of compensating CCAF, stating in the February 27, 2020 Memorandum and Order that it would "consider ordering that CCAF be compensated for its work if it had the authority to do so." Id. at 12, n.3. After discussion at the September 22, 2020 hearing, the court ordered CCAF to file a motion

for attorneys' fees in order to permit the court to enter a definitive, appealable order concerning fees. See Dkt. No. 646.

CCAF's work was not only helpful to the court, it also contributed to a decision by the court that provided an additional almost $15,000,000 for the benefit of the class. CCAF deserves to be reasonably compensated.

As indicated earlier, CCAF requests compensation only for work performed in 2018 in response to explicit invitations by the court. See Dkt. No. 647-1 at 5. It does not seek attorneys' fees for any other work.

It is unclear whether the court has the authority to order Class Counsel to, in effect, pay an award to CCAF. Under the established "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). As a related rule, "fees of amici curiae employed and paid by persons who are not parties to the action ordinarily will not be allowed." Wright & Miller, Federal Practice and Procedure, §2675 (4th ed. 2020). These general rules are subject to certain statutory exceptions, none of which are implicated here. See, e.g., Alyeska at 257-58. With regard to its request that Class Counsel be ordered to pay any award to it, CCAF relies on the common law Appointed Amicus Exception. See Dkt. No. 647 at 10-12.

The Appointed Amicus Exception to the American Rule allows an amicus to recover attorneys' fees under certain conditions. As one leading treatise has explained:

> Ordinarily, an amicus curiae who participates in a proceeding by leave of court or by court appointment is not entitled to compensation when he or she serves the interests of litigants, witnesses or any other private party....However, where the court appoints an amicus curiae who renders services which prove beneficial to a resolution of the questions presented, the court may properly award compensation and direct it to be paid by the party responsible for the situation which prompted the court to make the appointment.

4 Am. Jur. 2d Amicus Curiae § 12.

Neither the Supreme Court nor the First Circuit has yet decided whether or when a court may award attorneys' fees to an amicus for assistance it renders to the court under the Appointed Amicus Exception. However, other Courts of Appeals have held that "[c]ommon law permits such an award if (1) a court-appointed amicus rendered services that helped resolve the question presented, and (2) the party taxed caused the situation prompting the appointment." Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont., 694 F.2d 203, 205 (9th Cir. 1982) (citing Schneider v. Lockheed Aircraft Corp., 658 F.2d 835, 853-54 (D.C. Cir. 1981), cert. denied, 455 U.S. 994 (1982)); see also Morales v. Turman, 820 F.2d 728, 731 (5th Cir. 1987) (accord).

Courts have construed this exception narrowly and denied attorneys' fees to amici who were not formally appointed. For

13

example, in Morales, the Fifth Circuit denied attorneys' fees to volunteer amici despite the significant aid they rendered to the district court. See Morales, 820 F.2d at 731. There, amici were granted leave to participate "as fully and to the same extent as though they were actual parties in interest." Id. at 730. They interviewed expert witnesses, participated in depositions, prepared pretrial memoranda, presented witnesses at trial, and cross-examined parties' witnesses. See id. Nevertheless, the Fifth Circuit concluded that the district court erred in granting the amici attorneys' fees because "amici were volunteers . . . not appointees," and "the district court did not seek the aid of amici, but allowed them to participate at their request." See id. at 731 (emphasis added). Therefore, regardless of the benefits that amici provided to the court, they did not satisfy the first condition of the Appointed Amicus Exception. See id.; see also Miller-Wohl Co., 694 F.2d at 205 (fees denied because "amici fail to satisfy the underlying requirement: they were volunteers, not appointees.")

In contrast, in the instant case the court did seek the aid of CCAF with regard to the work for which it is seeking compensation. Although the court did not state in 2018 that it was "appointing" CCAF as amicus, arguably that is a formality that should not preclude imposing the cost of CCAF's services on Class Counsel who prompted the court's request for those services.

14

However, as it is uncertain whether the court has the authority to do so, and there is an available, appropriate alternative that will not inject another issue to be further litigated in this contentious case, the court is making an award to CCAF to be paid from the common fund instead.

The court's "authority to order reimbursement from a common fund has its origins in equity . . ." In re Fidelity Micron, 167 F.3d 735, 737 (1st Cir. 1999); see also Dkt. No. 520 at 77-79. Under the Common Fund doctrine, "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). The Common Fund doctrine "is founded on the equitable principle that those who have profited from litigation should share its costs." In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995). This rule "reflect[s] the traditional practice in courts of equity" and has been applied "in a wide range of circumstances as part of [courts'] inherent authority." US Airways, Inc. v. McCutchen, 569 U.S. 88, 104 (2013) (internal citations and quotations omitted).

Amici who render services voluntarily to the court generally "have been unsuccessful in collecting fees under the common fund/unjust enrichment theory." See William Rubinstein, 5 Newberg

15

on Class Actions §15:35 (5th ed. 2020); see also Miller-Wohl Co,

694 F.2d at 204 (accord). This is consistent with the Restatement

(Third) of Restitution and Unjust Enrichment, §29 Common Fund

(2011), which states that "a beneficiary is liable in restitution

only if . . . (c) the claimant has neither acted gratuitously nor

received full compensation from others."

Here, CCAF did not act gratuitously in rendering the services

for which it seeks compensation. Rather, it was responding to

court orders requesting its assistance. Its work complemented,

rather than duplicated, the work of the Master. CCAF's expertise

and efforts strengthened the adversary process. Its efforts

contributed to the court's conclusion that an award of attorneys'

fees in the amount of $60,000,000 was appropriate, providing the

class with almost $15,000,000 more than the original fee award,

and about $6,200,000 more than the Master recommended.

Objectors have been awarded attorneys' fees under the Common

Fund doctrine for their efforts that enhanced a common fund for a

class. See, e.g., In re Sw. Airlines Voucher Litig., 898 F.3d

740, 746 (7th Cir. 2018); Federal Judicial Center, Awarding

Attorneys' Fees and Managing Fee Litigation 72 (3d ed. 2015); Lobur

v. Parker, 378 F. App'x 63, 65 (2d Cir. 2010); Elliott v. Sperry

Rand Corp., 680 F.2d 1225, 1227 (8th Cir. 1982); Reynolds v.

Beneficial Nat'l Bank, 288 F.3d 277, 288 (7th Cir. 2002); Duhaime

v. John Hancock Mut. Life Ins. Co., 2 F. Supp. 2d 175, 176 (D.

16

Mass. 1998). See also McCoy v. UPS, 222 F. App'x 87 (2d Cir. 2007) (denying fee award to objectors who "failed to show that the settlement was improved as a result of their efforts") (internal quotation marks omitted).  It is similarly appropriate to make an award to CCAF from the common fund in this case.

Even though the court did not state that it was exercising its inherent equitable authority to appoint CCAF as amicus, the court need not "exal[t] form over substance." Russell v. Bd. of Plumbing Examiners of Cty. of Westchester, 74 F. Supp. 2d 349, 351, n.2 (S.D.N.Y. 1999), aff'd, 1 F. App'x 38 (2d Cir. 2001). For example, in Russell, the court awarded attorneys' fees to an amicus as if it were an intervenor. See id. at 351.  The court noted that amicus's "counsel contributed to the Plaintiffs' victory," which "justif[ied] reasonable compensation and blurr[ed] any technical distinction between intervenors and amici." See id. The court noted that in the particular circumstances of that case, awarding fees to the amicus would not "open the flood-gates to litigious meddlers as the Wilder court feared." See id.

In Wilder v. Bernstein, 965 F.2d 1196, 1203 (2d Cir. 1992), the Second Circuit held that treating intervenors as prevailing parties for the purpose of fee shifting in a civil rights case would "not open the flood-gates to amicus curiae, good Samaritans, or even litigious meddlers" seeking compensation.  In the unique

circumstances of this case, nor will awarding attorneys' fees from the common fund to CCAF.

It is reasonable and appropriate to award CCAF the $60,690 that it requests. In the July 20, 2020 Notice sent to the class, the court stated that:

> The Court has not yet decided whether an award will be made to CCAF and, if so, whether it will be made from funds that would otherwise be distributed to the class. However, any award to CCAF will not materially reduce the additional more than $14,000,000 the class will receive as a result of the Court's February 27, 2020 decision.

Dkt. No. 623 at 5.  No class member objected.  Nor has Class Counsel or anyone else involved in this case argued that a $60,690 fee award would be excessive.

The First Circuit has held that courts may award fees from a common fund "either on a percentage of the funds basis or by fashioning a lodestar." Thirteen Appeals, 56 F.3d at 307.  CCAF has based its fee request on its lodestar, which is most appropriate. See Dkt. No. 647 at 17.  The lodestar is the number of hours productively spent on the case multiplied by reasonable hourly rates. Id. at 305.  CCAF seeks compensation for 218.4 hours worked in response to court orders.  CCAF worked efficiently and it is reasonable to compensate it for working 218.4 hours.  The hourly rates used in calculating the lodestar -- $275 to $365 per hour -- are less than have been approved for the same lawyers in other cases. See Bednarz Decl. (Dkt. No. 647-1) ¶¶16, 21-23.  They

18

are far less than the court found to be reasonable for Class Counsel.  See, e.g., Dkt. No. 590 at 65, 134-35 (rates ranging from $535 to $1000 per hour for partners was reasonable).   In contrast to Class Counsel, CCAF has not requested compensation for a multiplier of its lodestar.   Therefore, CCAF's lodestar is reasonable.

Awarding CCAF attorneys' fees in the amount of $60,690 is also reasonable in view of its contribution to the court's decision to award $60,000,000 in attorneys' fees and to thus increase the common fund by almost $15,000,000.   The Master's work and the court's independent analysis also contributed greatly to this decision.   However, "[c]ourts have [] awarded fees to objectors for benefits that defy easy conversion into dollars . . . ." Federal Judicial Center, Awarding Attorneys' Fees and Managing Fee Litigation 72 (3d ed. 2015) (citing Lobur, 378 F. Appx. at 65). In the context of making an award to objectors, the Seventh Circuit stated that "[t]he principles of restitution that authorize such a result also require, however, that the objectors produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." Reynolds, 288 F.3d at 288.

In this case, as advocated by CCAF, the court not only reduced the original fee award, but awarded about $6,200,000 less than recommended by the Master.   Although CCAF was not solely

19

responsible for this decision, its work was worth to the class many multiples of the $60,690 it is seeking.

Therefore, the court is ordering that CCAF be awarded $60,690 from the common fund.

## B.   The Distribution of Lieff's Escrowed Funds

As explained earlier, the court has previously ordered that Class Counsel make two payments into escrow to reimburse the class as a result of the court's decision to vacate the original $75,000,000 fee award and to award $60,000,000 instead.   Lieff is being ordered to escrow about $1,139,457, one half on January 27, 2021, and the other half on March 30, 2021.   The court has previously ordered that the funds escrowed by Class Counsel, including Lieff's, be distributed about two weeks after they are received.

Lieff does not object to making the required payments into escrow.   As it intends to appeal the reduction of its fees, however, Lieff objects to the distribution of its escrowed funds before its appeal is decided.

At the September 22, 2020 hearing, CCAF argued without contradiction that if Lieff's $1.14 million were not distributed until after the February 27, 2020 decision is affirmed, "about half the class would get checks under $10," and that it would not be economically feasible to issue them.   Sept. 22, 2020 Tr. (Dkt. No. 642) at 22.   In any event, as the court indicated at the

hearing, it is most appropriate that, after final judgment is entered pursuant to this Order, Lieff file a motion for a stay pending appeal.

Federal Rule of Appellate Procedure 8 requires in pertinent part that in order to move for a stay in the Court of Appeals, the movant must "show that moving first in the district court would be impracticable" or "state that, a motion having been made, the district court denied the motion or failed to afford the relief requested." See also In re Montes, 677 F.2d 415, 416 (5th Cir. 1982) (dismissing application for failure to first apply to district court); Whole Woman's Health v. Paxton, 972 F.3d 649, 653-54 (5th Cir. 2020) (same); Walker v. Lockhart, 678 F.2d 68, 70 (8th Cir. 1982) ("Rule 8 of the Federal Rules of Appellate Procedure directs that [an application for an injunction pending appeal] should ordinarily be made in the first instance in the district court"); Hirschfeld v. Bd. of Elections in City of New York, 984 F.2d 35, 38 (2d Cir. 1993) ("Rule 8(a) of the Federal Rules of Appellate Procedure specifies that an application for a stay of a judgment or order must generally be made first to the district court").

At the September 22, 2020 hearing, Lieff stated that after a final judgment entered, it would promptly file its notice of appeal and raise the same issues on appeal that it raised in its original appellate brief. See Sept. 22, 2020 Tr. (Dkt. No. 642) at 15.

21

Therefore, in a September 22, 2020 Order, the court stated that "Lieff should be prepared to appeal and move for a stay pending appeal as soon as [CCAF]'s request for attorneys' fees is decided." Dkt. No. 646 at 4. Lieff is now being ordered to appeal and file in this court, by January 27, 2021, its motion for a stay pending appeal and a memorandum addressing the applicable standard.  See Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Common Cause Rhode Island v. Gorbea, 970 F.3d 11, 14 (1st Cir. 2020); Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 149 (D. Mass. 1998).

The court will decide Lieff's motion to stay and, if it denies it, provide a reasonable period of time for Lieff to attempt to obtain a stay from the First Circuit.  The court is ordering that Class Counsel make their first payments into escrow by January 27, 2021.  It intends to order that the first distribution from escrow be made 14-days after it is determined whether Lieff's payment into escrow will be included in that distribution.

C. CCAF's Motion for Appointment as Guardian Ad Litem to Represent the Class in Lieff's Appeal

As indicated earlier, CCAF has moved to be appointed guardian ad litem to represent the interests of the class in Lieff's appeal. The issues addressed in the February 27, 2020 Memorandum and Order arose in meaningful measure because the usual adversary process did not operate to test the representations made by Class Counsel

in their request for an award of $75,000,000 as attorneys' fees.
There is no party to represent the interests of the class in
responding to Lieff's appeal.

> However, as the court stated in a June 18, 2020 Order:

> As described in detail in the February 27, 2020 Order,
> the issues it addresses arose in meaningful measure
> because a petition for attorneys' fees in a class action
> is essentially an ex parte matter and the usual adversary
> advocacy does not operate to educate the court. Having
> read Lieff's June 9, 2020 appellate brief, the court
> believes that the First Circuit would benefit from an
> adversarial presentation by counsel to be retained by
> this court to represent the court and the February 27,
> 2020 Order.

Dkt. No. 611 at 2-3. On June 28, 2020, the court asked the First
Circuit to invite it, as fiduciary for the class, to retain counsel
at government expense "to address issues of fact and law that will
be important to the First Circuit's ability to make a properly
informed decision concerning Lieff's appeal." Dkt. No. 615 at 6.

The court intends to renew this request after Lieff appeals
the final judgment now being entered. Lieff has stated that it
would be a "good idea" for this court to retain counsel concerning
Lieff's appeal and that it would not oppose the request to do so.
Sept. 22, 2020 Tr. (Dkt. No. 642) at 271. Lieff reiterated this
in opposing CCAF's request to be appointed guardian ad litem,
writing that "Lieff Cabraser has already stated that it does not
oppose the Court's request to hire new counsel to defend the
February 27 Order." Dkt. No. 651 at 2.

The court continues to find that the First Circuit would benefit from the operation of the adversary process in deciding Lieff's appeal and that it is preferable that the court, as fiduciary for the class, be authorized to retain counsel, at government expense, who "hasn't been part of this battle for years."

Accordingly, CCAF's motion to be appointed guardian ad litem is being denied without prejudice. It may be renewed if the First Circuit does not invite the court to retain counsel.

III. ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    CCAF's Motion for Attorneys' Fee Award (Dkt. No. 647) is ALLOWED.  CCAF is awarded $60,690, to be paid from the common fund in two installments, on the dates stated in Exhibit 1 hereto.

2.    Class Counsel shall make payments into escrow on the dates, and in the amounts, stated in Exhibit 1.

3.    Distributions from the funds escrowed by Class Counsel shall be made on the dates, and in the amounts, stated in Exhibit 1.

4.    Lieff shall file its appeal and motion to stay in this court by January 27, 2021.

5.    Final Judgment concerning the award of attorneys' fees shall enter in accordance with the February 27, 2020 Memorandum and Order (Dkt. No. 590) and, with regard to CCAF, this Order.

24

6.    CCAF's Renewed Motion to be Appointed Guardian Ad Litem for the Class (Dkt. No. 649) is DENIED without prejudice.


UNITED STATES DISTRICT JUDGE