UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARKANSAS TEACHER RETIREMENT SYSTEM,
on behalf of itself and all others
 similarly situated,

                Plaintiff,

                              No. 11-cv-10230-MLW

vs.

STATE STREET BANK AND TRUST COMPANY,

                Defendant.
_____/

ARNOLD HENRIQUEZ, MICHAEL T. COHN,
WILLIAM R. TAYLOR, RICHARD A.
SUTHERLAND, and those similarly situated,

                Plaintiffs,

                              No. 11-cv-12049-MLW

vs.

STATE STREET BANK AND TRUST COMPANY,

                Defendant.
_____/

THE ANDOVER COMPANIES EMPLOYEE
SAVINGS AND PROFIT SHARING PLAN, on
behalf of itself, and JAMES PEHOUSHEK-
STANGELAND and all others similarly situated,

                Plaintiffs,

                              No. 12-cv-11698-MLW

vs.

STATE STREET BANK AND TRUST COMPANY,

                Defendant.
_____/

**SPECIAL MASTER'S MEMORANDUM IN RESPONSE TO THE COURT'S
JANUARY 27, 2021 ORDER AND TO LIEFF CABRASER HEIMANN & BERNSTEIN'S
MOTION TO STAY EXECUTION ON JUDGMENT, PENDING APPEAL**

Pursuant to the Court's January 27, 2021 (Dkt. # 669) and February 4, 2021 (Dkt. # 673) Orders, the Special Master hereby submits this Memorandum and supporting Declaration of Eric J. Miller, A.B. Data Ltd., attached as Exhibit A, in response to Lieff Cabraser Heimann & Bernstein's (Lieff Cabraser's) Motion to Stay Execution on Judgement, Pending Appeal.

## I.    **Background**

On January 19, 2021, the Court entered a Final Judgment Concerning Attorneys' Fees and Service Awards allocating the $60 million judgement among counsel, CCAF, and various service awardees (Dkt. # 663), as previously set forth in its February 27, 2020 Fee Order ("2020 Fee Order"). (Dkt # 590).

Also on January 19, 2021, the Court issued a Memorandum and Order and a Second Revised Payment Plan ("Revised Payment Plan") (Dkt. # 662, 662-1). The Revised Payment Plan ordered the Customer Class Counsel to pay into escrow $8,607,807.51, including $569,728.50 by Lieff Cabraser, by January 27, 2021. The Revised Payment Plan directed that the funds deposited in escrow be distributed to the class, and to ERISA Counsel, fourteen days after a final decision was entered on "whether funds from Lieff will be distributed." (Dkt. # 663, p. 3)

On January 26, 2021, Lieff Cabraser filed a new Notice of Appeal (Dkt. # 664) appealing from the 2020 Fee Order. The next day, January 27, 2021, Lieff Cabraser moved for a stay of execution of the 2020 Fee Order and execution of the Revised Payment Plan, pending appeal, insofar as implementing the Plan would require the firm to make payments to be distributed to the Class prior to the First Circuit deciding Lieff Cabraser's appeal. The basis claimed for the stay was that Lieff Cabraser would suffer irreparable harm if it prevails on appeal after its payments have already been distributed to ERISA and to the Class; and therefore, a stay of execution was necessary.

On January 27, 2021, the Court directed the Special Master to respond to Lieff Cabraser's Motion for Stay and address, among other things, whether Lieff Cabraser is likely to be irreparably harmed if it prevails on appeal. Lieff Cabraser's motion for a stay presupposes that ERISA Counsel and the Class will bear the burden 50/50 if it wins in the First Circuit. Lieff Cabraser argues that, to the extent it has to pay the $1.1 million now, it would be irreparably harmed, because it could not get the money back from ERISA Counsel and the Class. The Special Master does not agree that it would be appropriate to dock ERISA Counsel or the Class in the event the Lieff Cabraser prevails. Both were blameless and victims of the conduct identified by the Court. If ERISA Counsel's Motion to Clarify or Reconsider the Second Revised Payment Plan (Dkt. # 670) is granted, as the Special Master urges the Court to do, then the basis for Lieff's irreparable harm argument, that it could not get money back from ERISA Counsel or the Class, would be eliminated.

For the reasons set forth herein, the Special Master responds that Lieff Cabraser would not suffer irreparable harm upon a favorable result on appeal, nor can Lieff Cabraser satisfy the other factors for injunctive relief, and the Special Master recommends that the funds be distributed to the Class and ERISA counsel pursuant to the Court's earlier orders.[1]

## II.   Legal Argument

Lieff Cabraser argues in its Motion to Stay that implementing the Revised Payment Plan prior to adjudication of its appeal poses a substantial risk of harm to the firm, a risk that substantially outweighs any potential harm to interested parties, namely ERISA and the Class

---

[1] On January 29, 2021, ERISA counsel filed a Motion to Clarify, or in the Alternative, for Reconsideration of Exhibit 1 to the Court's January 19, 2021 Decision and Order (Dkt. # 670) and a Memorandum in Support of the Motion to Clarify (Dkt. # 671) in response to the Court's Second Revised Payment Plan (Dkt. # 662-1) which ERISA counsel postulate could be interpreted as indicating that if Lieff Cabraser prevails on appeal, payments to ERISA counsel and to the Class should be reduced by a total of $569,728.50 each.  The Special Master, like ERISA counsel, does not believe that this was the Court's intent.

(Memorandum in Support of Motion to Stay, Dkt. # 668, p. 12). This position is based in large part on Lieff Cabraser's ~~view~~ contention that any harm posed to ERISA Counsel and the Class if the *status quo* is maintained is minimal, while the harm to Lieff Cabraser – who it argues would be left without a remedy to recover funds distributed to ERISA Counsel and/or the Class – is irreparable. *Id.*

As Lieff correctly explains, the factors that guide whether a motion to stay pending appeal is warranted include:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*SEC v. BioChemics, Inc.*, 435 F. Supp. 3d 281, 296 (D. Mass. 2020) (Wolf, J.) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020).

As explained more fully below, Lieff Cabraser fails to satisfy any of the four factors, or to demonstrate that, on balance, the equities militate in favor of a stay. It has neither shown it will suffer irreparable harm if a stay is not granted, nor has it shown that any potential harm to Lieff Cabraser will outweigh the ongoing harm to the Class, or to ERISA Counsel. As the Court has directed the Special Master to address whether Lieff Cabraser will suffer irreparable harm if it prevails on appeal, the Special Master will first address this element, and then proceed to address the remaining three factors under the *Hilton* test.

**a. Lieff Cabraser has not demonstrated that it will suffer irreparable harm if it prevails on appeal.**

The crux of Lieff Cabraser's argument is that a stay pending appeal is necessary in this instance because, once the funds are distributed, the firm will have no recourse through which it

can recover the $1.1 million in the event it prevails on appeal. In essence, Lieff Cabraser asserts that once its share is remitted to the Class, recovery is impossible.

On this point, the Special Master and Lieff Cabraser partially agree. As a matter of both law and practicality, Lieff Cabraser cannot claw back funds paid to the Class under the February 2020 Fee Order, nor should it be permitted to do so.[2] But this case, and the complex claims administration process that has prompted Lieff Cabraser to file its instant request, is not a binary litigation between Lieff Cabraser and the Class. It is, rather, a class action initiated by no less than six different law firms to benefit the class members who now stand to finally share in the $300 million recovery achieved in the underlying settlement. The 2020 Fee Award, therefore, is not a legal judgment but an award of reasonable fees earned by the counsel (and service fee awards to compensate class representatives active in the litigation). As such, Lieff Cabraser is not without recourse to recover funds elsewhere; nothing prevents Lieff Cabraser from attempting to claw back funds paid to ERISA counsel. Nor is Lieff Cabraser barred from pursuing recourse from the other two Customer Class law firms, Labaton and Thornton – whom the Court found to be equally, if not more, responsible for the actions leading to the re-allocation of the fee award – should it ultimately be entitled to the recover the full, or any, of the $1.1 million ordered for re-allocation under the 2020 Fee Award.

---

[2] Although there is authority in both Massachusetts state court and MA federal court that a party seeking a stay or injunction can demonstrate irreparable harm in cases involving pure monetary damages when there is a risk of insolvency of the other party, and therefore an inability to recover the monetary damages, that is not the case here. *See e.g. Boston Athletic Ass'n v. International Marathons, Inc.,* 392 Mass. 356 (1984) (granting preliminary injunction where the party seeking injunction would have little or no ability to collect the funds at issue); *see also University of Notre Dame (USA) in England v. TJAC Waterloo, LLC,* 2016 WL 1384777, at * 6 (D. Mass. 2016) (finding plaintiff did not establish it would suffer irreparable harm when it presented no evidence the defendants were insolvent, or would soon be insolvent). These cases are distinguishable from the present case. This is not a simple civil action between two parties concerning a set sum of money. This is a complex class action with a number of parties, with the Court is acting as a fiduciary to the Class and overseeing the distribution of funds. Lieff Cabraser is not the only party to the fee award, so even if Lieff Cabraser is successful upon appeal, there are other legal remedies available to it, including seeking compensation from the other Customer Class law firms, who were also responsible for the misconduct that resulted in the decreased fee award.

Perhaps more fundamentally, the Special Master sharply disagrees with Lieff Cabraser's contention that, on balance, the harm endured by Lieff Cabraser if the Fee Order is executed will grossly outweigh the harm to the Class or to ERISA Counsel. This argument ignores the "well-established principle that quantifiable money damages cannot be deemed irreparable harm." *Harris v. Butler*, 961 F. Supp. 61, 63 (S.D.N.Y. 1997) (rejecting defendants' claim of irreparable injury if stay not granted due to plaintiff's incarceration). Irreparable harm exists where the damages suffered by a party are not compensable, such that an award of monetary damages would not make it whole. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 18–19 (1st Cir. 1996); *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004); *see also Oxford Immunotec Ltd. V. Qiagen, Inc.*, 271 F.Supp.3d 358, 368 (D. Mass. 2017) (declining to find irreparable harm to justify a preliminary injunction in a patent infringement case where monetary damages could likely cover the losses sustained by potential loss of market share); *McMann v. Selene Finance LP for Wilmington Savings Fund Society, FSB*, 281 F.Supp.3d 218, 220 (D. Mass. 2017) (denying emergency motion for injunctive relief to postpone the foreclosure of plaintiff's property where statutory monetary damages were available for their FDCPA claim).[3]

The harm Lieff Cabraser faces is purely monetary. Lieff Cabraser has failed to demonstrate that its legal remedies, i.e. its right to recover damages, are at all inadequate. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18–19 (1st Cir. 1996); citing Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982)

---

[3] Stays of injunctive orders, such as for reinstatement, are evaluated under the traditional four-part standard applied to injunctions. *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002). *See also Buntzman v. Springfield Redevelopment Auth.,* 918 F. Supp. 29, 29–30 (D. Mass. 1996)(the criteria to be satisfied in a motion to stay under Fed.R.Civ.P. 62 are "essentially equivalent to those required for a[] [preliminary] injunction.")

(collecting cases); *Lopez v. Garriga*, 917 F.2d 63, 68 (1st Cir. 1990). Should it prevail at the First Circuit – and that result requires a return of the disputed payment – Lieff Cabraser may seek redress from its Co-Customer Class Counsel. In other words, repayment of the $1.1 million will fully rectify its claim to harm. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)("[a] monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation."). These firms stand in the same position as any recipient of a judgment in a disputed monetary award.

Should Lieff Cabraser prevail on appeal after the entirety of its $1.1 million has been distributed, it will then have a quantifiable, monetary debt. But Lieff Cabraser has not shown how the possible deprivation of $1.1 million of purely private firm funds will irreparably harm the firm or the public. Nor could it make such a substantial showing. *See Cayuga Indian Nation of New York v. Pataki*, 188 F.Supp.2d 223, 253 (N.D.N.Y. 2002) (No irreparable harm shown despite affidavits attesting to loss of taxable income if dispute judgment paid out).

Even assuming Lieff Cabraser could show it runs the risk of facing irreparable harm down the line – which we contest – the anticipated harm is far too speculative for it to be deemed irreparable and a stay ordered. *See Ross-Simons of Warwick*, 102 F.3d at 19*; Narragansett Indian Tribe*, 934 F.2d 4, 6–7 (1ˢᵗ Cir. 1991); *Public Serv. Co. v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir.1987)(injunctive relief on is not warranted by "a tenuous or overly speculative forecast of anticipated harm."); *see also Gately v. Commonwealth of Mass.,* 2 F.3d 1221, 1232 (1st Cir.1993) (noting the same phenomenon and suggesting that irreparable harm is subject to a "sliding scale" analysis). A claim to purely monetary damages does not suffice here.[4]

---

[4] In light of the fact that the penalty it seeks to avoid was purely monetary, Lieff Cabraser could have moved under Fed. R. Civ. P. 62(d) for an automatic stay pending appeal by remitting an appeal bond. While the amount of that bond is determined by the Court in its discretion, *see Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir.1987), payment

### b. Lieff Cabraser has not presented a substantial case on the merits of its appeal warranting a stay of the 2020 Fee Award.

As described above, Lieff Cabraser's assertion of irreparable harm is speculative at best. For Lieff Cabraser to prevail, the First Circuit must first rule in Lieff Cabraser's favor on appeal. Then, given the intricacies of the Final Judgment and 2020 Fee Order, the issue of an attorneys' fee award would likely be remanded to the District Court for further proceedings consistent with that ruling. It is only if, and after, both contingencies occur that Lieff Cabraser will have "prevailed."

On the record in this case, Lieff Cabraser has not demonstrated that the substantive arguments it has advanced on appeal are likely to result in a favorable ruling at the First Circuit. Nor has Lieff Cabraser offered any evidence to support its view that, should it succeed in arguing that it is not responsible for reallocating $1.1 million, repayment of that disputed amount can only come directly from the recovery awarded to the Class or ERISA Counsel,

While this first *Hilton* factor – whether the stay applicant has made a strong showing that he is likely to succeed on the merits – need not be interpreted literally, the party seeking the stay must still "present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (citing *Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979)). The party seeking the stay must show that the "appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." *Canterbury Liquors & Pantry v. Sullivan*, 999 F.Supp. 144, 150 (D. Mass. 1998) (citing *Exxon Corp. v. Esso Worker's Union, Inc.*, 963 F.Supp. 58, 60 (D.Mass.1997)).

---

of a supersedeas bond services a critical function of protecting creditors' rights – here, the Class – during the pendency of an appeal. Here, Lieff Cabraser did not petition the Court for relief from such a requirement.

Here, Lieff Cabraser has failed to demonstrate, or plead any facts to support, a substantial case that it will prevail on the merits of its *entire* appeal. While broadly Lieff Cabraser challenges the "penalty assessed against Lieff," those penalties are not confined to the Rule 11 violations that it highlights in its Memorandum. (Dkt. # 668, pp. 16-17). Lieff Cabraser appeals from the Court's fee award with respect to three separate findings that it now argues were incorrect as a matter of law: "1) the finding that it violated Rule 11(b);  2) [] categoriz[ing] its submissions as improper; and 3) [] impos[ing] [] a $1,138,917 million penalty for its 'deficiencies.' " (Dkt. # 668, p. 5; Appellant Brief, p. 33). To succeed in its Motion to Stay, Lieff Cabraser must show a "substantial case" that it will be successful in overturning each of those three grounds, and in a way that requires the stay of the 2020 Fee Order, rather than a reallocation among the parties to that order.

This is a substantial burden, and one Lieff Cabraser has not met through its appellate challenge. A substantial case is proven, in part, through the existence of "serious and difficult questions of law" in an unsettled area of the law. While Lieff Cabraser contends it has made a substantial case that the Court's February 27, 2020 Order, upon which the 2020 Fee Award is based, runs contrary to the prevailing law governing Rule 11, and in particular Rule 11(c)(3)'s notice provisions, it has not argued that the Court improperly concluded its submissions in support of the fee petition were improper or that the Court incorrectly assessed deficiencies against it.

Putting aside whether Lieff Cabraser's challenge of the Rule 11 finding identifies a difficult question of law-- or even whether it's fee reduction would be justified even in the absence of a finding of a Rule 11 violation-- Lieff Cabraser misses the fact that the Court did not

order a reduction of Lieff Cabraser's fees based directly on its finding that Lieff violated Rule

11. It held more fulsomely:

> Lieff was deficient in its performance as counsel in this case. As explained earlier, Lieff was a signatory to the false and misleading memorandum filed in support of the request for attorneys' fees (Dkt. No. 103-1) that it had read and edited. Thus, Lieff contributed to the misrepresenting of the number of hours worked by more than 9,000 and to providing a misleading description of the Fitzpatrick Study. In addition, by using the template provided by Labaton, Lieff made false and misleading representations concerning the regular hourly rates charged for the attorneys who worked on this case. The failure of Lieff to probe the reasons for what should have been viewed as a suspicious payment of $4,100,000 by Labaton to Chargois before agreeing to underwrite $1,000,000 of that payment facilitated Labaton's violation of the Massachusetts Rules of Professional Conduct 7.2(c), 1.5(e), 1.4(a)(1) and (b) by failing to disclose the Chargois payment to ERISA Counsel and their clients. These deficiencies in Lieff's conduct justify reducing the original fee award to Lieff by about $1,140,000.[5]

(Dkt. # 590, pp. 148-149). While Lieff Cabraser's conduct underlying the findings of a Rule 11

violation was one part of the Court's decision to reduce Lieff Cabraser's fee award, it was not the

only misconduct or ill-advised action upon which that allocation was based.

Ultimately, the decision to reduce Lieff Cabraser's fee was based in the District Court's

authority and discretion to allocate fee awards in class action cases. Dkt. # 590, pp. 144-149; *see*

*In re Fidelity/Micron Securities Litigation*, 167 F.3d 735, 737 (1ˢᵗ Cir. 1999). The Court vacated

the original $75 million fee award (a 25% award) on June 22, 2018. (Dkt. # 331). Thus, in

issuing the February 27, 2020 Order, the Court issued a new fee award of 20% and allocated the

attorneys' fees accordingly. (Dkt. # 590, p. 77). It did so after making detailed factual findings

about the inadequacies of Lieff Cabraser's conduct as counsel for the class. *See Latorraca v.*

---

[5] In particular, as the Special Master noted in his Report and Recommendation to the Court, Lieff Cabraser contributed significantly to the approximately 9000 double-counted hours by, among other things, signing and submitting the misleading memorandum filed in support of attorneys' fees and by making misrepresentations concerning the regular hourly rates charged for the attorneys who worked on the case. Lieff Cabraser also failed to investigate the $4.1 million dollar payment to Damon Chargois. Special Master's Report and Recommendations, Dkt. # 357, pp. 350-351, 364-365, 367-368.

*Centennial Technologies Inc.*, 834 F.Supp.2d 25, 27 (D. Mass. 2011) ("Courts have wide discretion when awarding attorneys' fees.") (citing *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295, 307 (1st Cir.1995)).[6]

In short, even if Lieff Cabraser's central argument that the Court erred by failing to follow the procedural requirements of Rule 11(c) or by finding that Lieff Cabraser's conduct constituted a violation of Rule 11(b) were sufficient to show a substantial case for its appeal on those narrow issues, it would be insufficient to show a substantial case on the merits that the Court erred in exercising its discretion to reduce Lieff's fee award by $1,138,917 based on the litany of poor judgment and misconduct outlined by the Court. Moreover, Lieff does not challenge – nor can it –the Court's discretionary authority to allocate a new fee award.  As such, it has failed to advance a serious legal question favoring a stay of the 2020 Fee Award.

### c.   The Class and ERISA Counsel will be substantially injured if a stay of judgment is issued.

Despite Lieff's arguments to the contrary, both the Class and ERISA counsel will be substantially injured in the event a stay of judgment is issued. Lieff supports its argument that there will not be substantial injury endured by the Class and ERISA counsel by pointing to a previous iteration of the Payment Plan. While it is true that a previous iteration of the Payment Plan contemplated holding back Lieff's repayment from distribution, during the September 23, 2020 hearing before the Court, no decision was made as to whether such a hold-back could result in harm to the Class or ERISA counsel. *See* Dkt. # 642. Lieff Cabraser's contention that "[n]othing changed between then and now" making maintaining the *status quo* 'harmful'" is

---

[6] The Special Master notes that even with this reduction of attorneys' fees to 20% of the Class settlement, Lieff Cabraser still received all of its lodestar (albeit at a reduced rate for its contract attorneys) and a substantial multiplier.

disingenuous, because there was never any determination that it would not be harmful when it was first implemented.

A delay in releasing the payment for distribution *will* have an injurious effect on both the Class and ERISA counsel. As recognized by the Court in its February 27, 2020 Order, ERISA counsel did not act in a "deficient" manner, and were, in fact, victimized by the misconduct of Customer Class Counsel, and as such were owed not only the original award figure, but an increased award based on the fees and expenses they incurred during the investigation process. (Dkt. # 590, pp. 145-146). Despite being victims in the process, ERISA counsel have had to continue to expend time and resources throughout the entirety of the investigative process, up to and through the present. Further delaying the full payment of the fees and expenses they have incurred as a result of the misconduct by Customer Class Counsel will unnecessarily penalize an innocent party. These funds have been correctly awarded to ERISA counsel for their efforts, and a stay on judgment will deprive them of funds necessary to compensate them for their efforts.

In arguing that the Class will not be harmed by a delay in release of the payment, Lieff discusses the process by which settlement funds are traditionally paid out in a class action. (Dkt. # 668, pp. 13-15). Lieff details that the payment process is a lengthy and complex process, with multiple steps required by the claims administrator to ensure that the money is paid out to the class members. *Id*. This argument by itself supports the notion that the Class members will be harmed by further delay. Assuming that Lieff's funds are held-back, that will further extend the delay that already exists within the claims administration system. In the event that the stay is granted and Lieff subsequently loses its appeal, a process which could take months or even years, when the stay is lifted, the money will not automatically be available to be sent to Class members. Instead, there is a lengthy process by which the funds must be accounted for and

processed, which would continue to add to the delay in payment. The process involves a multi-step process in which the claims administrator must assess the total amount of funds to determine how much are available for distribution, determine the tax implications and status, and then determine the specific allocation amounts. *See* Declaration of Eric J. Miller of AB Data, Ltd., the claims administrator, attached at Exh. A, at ¶ 7. For funds that are not deposited in the initial distribution, there is an additional repayment and distribution process that can take anywhere from several months to a year to all known class members. *Id*., ¶ 8. After the incremental repayment process, there is a final accounting of remaining funds for a *pro rata* distribution, which can take an additional 3-6 months. *Id*., ¶ 9. The longer there is a delay in releasing the funds, the less likely it becomes that all rightful Class members will be paid their full portion of the settlement.

> **d.  The considerations of public interest support denying Lieff's motion for stay on judgment pending appeal.**

The first two *Hilton* factors favor denying the motion to stay judgment, so "little more needs to be said as to the second two…" *See Picone v. Shire, LLC*, 2020 WL 3051871, at *3 (D. Mass. 2020) (quoting *Duka v. S.E.C.*, 2015 WL 5547463, at *7 (S.D.N.Y. Sept. 17, 2015)). However, despite that, the public interest also favors denying the motion for stay. There is a public interest in resolving matters quickly, and judicial economy is not served if the issue on appeal will not be dispositive of the entire case. *Strougo v. Barclays PLC*, 194 F.Supp.3d, 230, 235 (S.D.N.Y. 2016) (citing Sutherland v. Ernst & Young LLP, 856 F.Supp.2d 638, 644 (S.D.N.Y. 2012)). As discussed *supra*, the primary issues raised on appeal concern the Court's decision to find Rule 11 violations and how they relate to the repayment, and there is no guarantee that the appeal will be dispositive of all issues in the case. Additionally, should the stay on judgment be granted, the entire payment process for the class will be held up for an

unknown period of time, which will result in extended delays to the ultimate resolution of the case for the class members.

Another public interest consideration is that the appeal and the motion to stay judgment pending appeal effectively place Lieff Cabraser, a Class Co-Counsel, directly at odds with the interests of the Class. As Class Co-Counsel, Lieff Cabraser was, and is still, responsible for acting in the best interests of the Class. Despite this, as noted above, and described in the Special Master's Report and Recommendation and as summarized in the Court's February 27, 2020 Order, Lieff Cabraser, at a bare minimum, knew or should have known that misconduct was happening, and did not act to counteract it in the best interests of the Class. Now, in moving to stay judgment on appeal, Lieff Cabraser is compounding the damage to the Class by attempting to prolong the payment process of the settlement, which will likely result in Class members missing out on timely payment. Considerations of public interest would not support Lieff – whose responsibility is to protect the interests of the Class – actively taking a position against the interests of the Class.[7]

III.    Conclusion

The Court should deny Lieff Cabraser's Motion to Stay.  Lieff Cabraser has entirely failed to satisfy the *Hilton* test or any of its four elements.  It will not suffer irreparable harm if it prevails on appeal, as the Court retains the authority and discretion to re-allocate awards of other counsel to make Lieff whole.  Lieff Cabraser has not made a strong showing that it is likely to succeed on the merits, as its particularized claims on appeal cannot rebut the broad discretion which the Court has to re-allocate fee awards, especially where the Court has articulated significant failings

---

[7] Lieff Cabraser's position would be particularly concerning if, in addition to advocating a position detrimental to the Class by supporting a further delay in distribution of funds to the Class, it also advocates a position in which, if Lieff Cabraser prevails on appeal, a re-allocation of funds should be taken from the funds of the Class, as opposed to being taken from the other two Customer Class Counsel.  Such positions are certainly not in the public interest.

by Lieff Cabraser in this matter.  The Class, to whom Lieff Cabraser owes a fiduciary duty, and

ERISA counsel, whom the Court has found to be blameless for Customer Class Counsel actions

leading to re-allocation of the fee award, will both suffer further delay in what has been an

exasperating and lengthy payment process of funds to which they are entitled.  Finally, the public

interest will not be served by further delay of payments to the Class and ERISA, as judicial

economy and prompt payment to the Class and counsel who have earned them are important

goals of actions such as this one.  The funds should be distributed to the Class members and to

ERISA counsel pursuant to the Court's earlier Orders and payment should not be stayed pending

appeal.

Dated:  February 8, 2021                          Respectfully submitted,

                                                 **SPECIAL MASTER HONORABLE**
                                                 **GERALD E. ROSEN (RETIRED),**

                                                 By his attorneys,


                                                 ___/s/  William F. Sinnott_____
                                                 William F. Sinnott (BBO #547423)
                                                 Elizabeth J. McEvoy (BBO #683191)
                                                 HINCKLEY ALLEN
                                                 28 State Street
                                                 Boston, MA 02109
                                                 Tel.: (617) 378-4159
                                                 wsinnott@hinckleyallen.com
                                                 emcevoy@hinckleyallen.com

                        <u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-participants on February 8, 2021.


                                        ___/s/___William F. Sinnott_____
                                        William F. Sinnott